1   DONGXIAO YUE
    2777 ALVARADO ST., SUITE C
2   SAN LEANDRO, CA 94577
3   Telephone:    (510) 396-0012
    Facsimile:    (510) 291-2237
4   E-Mail:    ydx@netbula.com

5   *Pro Se*

6

7

8

9

10  DONGXIAO YUE,

11          Plaintiff,

12      v.

13

14  STORAGE TECHNOLOGY
    CORPORATION, a Delaware corporation;
15  SUN MICROSYSTEMS Inc., a Delaware
    corporation; Michael Melnick, an individual;
16  Julie DeCecco, an individual; Michael P.
    Abramovitz, an individual; Lisa K. Rady, an
17  individual; Jonathan Schwartz, an individual;
18  and DOES 1-1000, inclusive,

19
            Defendants.
20

FILED

DEC 04 2007

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

Case No. C07-05850-SI

FIRST AMENDED COMPLAINT FOR
COMPENSATORY DAMAGES,
DISGORGEMENT OF PROFITS,
INJUNCTIVE RELIEF AND
ATTORNEYS' FEES AND COSTS FOR:
Direct, Contributory, and Vicarious
Copyright Infringement Under 17 U.S.C.
Section 101 *et seq.*

DEMAND FOR JURY TRIAL

21                          **COMPLAINT**

22

23      Plaintiff Dongxiao Yue ("Yue" or "Plaintiff") complains and alleges against

24  defendants STORAGE TECHNOLOGY CORPORATION ("StorageTek"), a Delaware

25  corporation; SUN MICROSYSTEMS, Inc ("SUN"), a Delaware corporation; Michael Melnick

26  ("Melnick"), an individual; Julie DeCecco ("DeCecco"), an individual; Michael P. Abramovitz

27

28                                      -1-

1  ("Abramovitz"), an individual; Lisa K. Rady ("Rady"), an individual; Jonathan Schwartz

2  ("Schwartz"), an individual; and Does 1-1000  (collectively, "Defendants") as follows:

3  ## INTRODUCTION

4      1.    Since 1994, Plaintiff had been developing software he later named "PowerRPC." In

5  July 1996, Plaintiff founded a Delaware Limited Liability Company named "Netbula, LLC"

6  ("Netbula") to market the PowerRPC software. Defendants have willfully infringed Plaintiff's

7  copyrights in the software by making and distributing unauthorized copies of the software,

8  creating and distributing unauthorized derivative works, and other direct and indirect infringing

9  activities.

10      2.    The copyrights infringed by Defendants in the instant action are: "Netbula

11  PowerRPC PWRPC32.DLL 00-SDK-STK" registered October 3, 2006 with U.S. registration

12  number TX 6-437-847, a copy of which is attached as Exhibit A ("the 00-SDK copyright");

13  "NETBULA POWERRPC 2K4" registered on December 15, 2006 with U.S. registration number

14  TX 6-491-697, a copy of which is attached as Exhibit B to this complaint ("the 2K4 copyright");

15  and the copyrights in unpublished works Plaintiff created before July 1996, with pending

16  copyright registration at the U.S. Copyright Office.

17      3.    In September 2007, Plaintiff acquired all exclusive copyrights in the versions of

18  PowerRPC created before January 1, 2007 by written assignment, along with all accrued and

19  prospective claims arising from infringement of these copyrights. A copy of the copyright

20  assignment is attached as Exhibit C.

21

22      4.    In December 2006, Netbula filed a civil action (Case No. C-06-07391-MJJ) against

23  defendants in the Northern District of California alleging infringement of the copyrights in

24  "Netbula PowerRPC" published in 1996, with U.S. registration number TX 6-211-063. Part of the

25  evidence used in this complaint was from discovery of that case.

26

27

28  -2-

## JURISDICTION

5.    This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1338(a), as this action arises out of the laws of the United States of America. More specifically, the claims for copyright infringement founded upon the Copyright Act at 17 U.S.C. § 101 *et seq*.).

6.    This Court has personal jurisdiction over Defendants in this action and venue is proper in this judicial district under 28 U.S.C. § 1391(b) because, as alleged below: (a) at least one of the Defendants resides in the State of California and in this judicial district; (b) Defendants, and each of them, have intentionally engaged in substantial business and related communications within this forum, amounting to sufficient minimum contacts - including, but not limited to, the sale of their offending products and/or services into California and, on information and belief, into this judicial district; (c) the harm caused to Plaintiff by the acts of Defendants was targeted by Defendants at Plaintiff and designed to impact Plaintiff, which is located in this judicial district; and (d) a substantial part of the acts giving rise to the asserted claims occurred or had effects in this judicial district. Furthermore, on information and belief, Defendants have infringed Plaintiff's copyrights via the Internet and otherwise, in every jurisdiction of the United States, including this judicial district.

## INTRADISTRICT ASSIGNMENT

7.    Because this action is an Intellectual Property Action as specified in Northern District of California Civil L.R. 3-2(c), it is to be assigned on a district-wide basis.

## THE PARTIES

8.    Plaintiff Dongxiao Yue ("Yue" or "Plaintiff"), is an individual residing in Alameda County, California, within this judicial district. Plaintiff is the sole owner of the exclusive copyrights in dispute and has been assigned all past and future claims arising from infringement of the copyrights.

-3-

1    9.    On information and belief, defendant STORAGE TECHNOLOGY

2   CORPORATION ("StorageTek") is a Delaware corporation with its principal place of business

3   located at One StorageTek Drive, Louisville, Colorado 80028, and is now wholly-owned by Sun

4   Microsystems, Inc ("SUN") effective as of August 31, 2005.

5    10.    On information and belief, defendant SUN MICROSYSTEMS, INC. ("SUN") is a

6   Delaware Corporation with its principal place of business located at 4150 Network Circle,

7   Santa Clara, CA 95054 within this judicial district, which finalized its complete acquisition of

8   StorageTek on August 31, 2005. SUN develops and sells computer systems for the enterprise

9   market. SUN acquired StorageTek in an attempt to access StorageTek's customers to sell other

10   SUN products, such as enterprise servers, workstations and software. SUN, as the acquirer and

11   successor-in-interest of StorageTek, is fully responsible for legal claims brought against

12   StorageTek.

13    11.    On information and belief, Jonathan Schwartz (Chief Executive Officer and

14   President of SUN), Julie DeCecco, Michael Melnick, Michael Abramovitz and Lisa Rady are

15   current or former employees of StorageTek or SUN, who directly infringed, or knowingly and

16   materially contributed, caused, induced, supported, facilitated, aided or abetted the infringement of

17   Plaintiff's copyrights, or have an obvious financial interest in the infringing actions and have the

18   right and capability to control them.

19

20    12.    Plaintiff does not know the true names and capacities, whether individual,

21   corporate, associate, or otherwise, of defendant DOES 1 through 1000, inclusive. Plaintiff is

22   informed and believes, and based upon such information and belief alleges, that each DOE

23   defendant was in some way responsible for, participated in, or contributed to the matters and

24   things of which Plaintiff complains herein, and in some fashion, has legal responsibility therefore.

25   Certain of defendant DOES 1 through 1000 are resellers, service providers, customers and/or

26   potential customers of the other named Defendants. When the exact nature and identity of such

27   fictitious defendants and their responsibility for participation and contribution to the matters and

28    -4-

Case No. C07-05850-SI                                                    FIRST AMENDED COMPLAINT

1    things herein alleged is ascertained by Plaintiff, Plaintiff will amend this Complaint to set forth the
2    same.

3                                    **FACTUAL DETAILS**

4

5                         *PLAINTIFF"S COPYRIGHTED SOFTWARE*

6        13.    From 1994 to July 1996, as an individual, Plaintiff had been developing a software
7    technology which he later named as "PowerRPC". PowerRPC was a technology that enabled a
8    program on a computer to execute a command on a remote computer over a network and get
9    results back. PowerRPC was developed for UNIX, Microsoft Windows NT and Windows 95
10   platforms. Plaintiff also developed software called ONC RPC for Microsoft Windows NT/95,
11   which incorporated most of the program files and modules in PowerRPC.

12       14.    In July 1996, Plaintiff founded Netbula, LLC, a Delaware Limited Liability
13   Company, to market the aforementioned RPC software that he was developing at the time.

14       15.    Plaintiff did not assign or transfer the copyrights in his earlier works created before
15   July 24, 1996 to Netbula, LLC. The PowerRPC software products were derivative works of these
16   earlier unpublished works.

17       16.    On September 26, 2007, Netbula executed a written copyright assignment,
18   transferring all exclusive rights in all PowerRPC and ONC RPC for Windows software created
19   before January 1, 2007 back to Dr. Dongxiao Yue -- Plaintiff. The copyright assignment further
20   assigned all past and future claims of infringement to Plaintiff.

21

22       17.    In the following, Plaintiff will use "PowerRPC" to refer to both "PowerRPC
23   software" and "ONC RPC for Windows software". Both were written by Plaintiff, and both had
24   the same program modules with one exception -- they used different Interface Description
25   Language ("IDL") compilers.

26       18.    The PowerRPC software contained two parts: (1) the "Software Development Kit"
27   ("SDK") that consists of the software tools which allow programmers to create applications based

28                                          -5-

1  on PowerRPC technology, including the "powerrpc.h", "pwrpcapi.h", "pwrpc32.lib",

2  "pwrpc32.dll", "powerrpc.exe", "pmapsvc.exe", "rpcgen.exe" and other files; and (2) the "runtime

3  software" that consists of files providing the core remote call functionality to applications

4  developed with PowerRPC , including the "pwrpc32.dll", "pmapsvc.exe", "portmap.exe" and

5  other program files. The pwrpc32.dll is a binary file that contains the computer instructions for

6  PowerRPC. The "pwrpc" in "pwrpc32.dll" is an abbreviation of "PowerRPC". The "pwrpc32.dll",

7  "pmapsvc.exe" and other PowerRPC program files are unique and original copyrighted software

8  written by Plaintiff.

9       19.     A purchaser of PowerRPC software must buy one type of license (an "SDK"

10  license) for each computer programmer who will use the "powerrpc.h", "rpcgen.exe",

11  "pwrpc32.lib", "pwrpc32.dll" and/or other PowerRPC files to develop RPC applications. A

12  purchaser must also buy a separate license for the right to copy the runtime software files, also

13  including the "pwrpc32.dll" file. The license for the right to copy the runtime software to a single

14  computer is called a "runtime license." Each SDK license and runtime license is only granted for

15  a single computer and might only be granted for use in one specific operating system environment,

16  for example, Windows NT but not Windows 2000, depending upon the specific license grant.

17       20.     Although the filenames were the same, the "pwrpc32.dll" and "pmapsvc.exe" files

18  in the SDK software were not identical to the corresponding files in the runtime software. The

19  files in the SDK were marked as for software development purposes only.

20

21                       ***DEFENDANTS' ACCESS TO PLAINTIFF'S WORKS***

22       21.     Defendant StorageTek develops and sells computer data storage and recovery

23  hardware and software products. StorageTek's main products are called "tape libraries". A tape

24  library (also called a tape silo or tape jukebox) contains one or more tape drives, a number of slots

25  to hold tape cartridges, and a robotic mechanism for loading and unloading tape cartridges to and

26  from tape drives.

27

28                              -6-

1    22.    In a typical StorageTek tape library system, a separate computer controls the tape
2    library's operation, such as the loading/unloading of the tapes. According to its product literature,
3    StorageTek has several software products for controlling tape libraries, including "Automated
4    Cartridge System Library Software"( "ACSLS"), "Library Manager" and "LibraryStation".

5    23.    On information and belief, StorageTek's ACSLS, Library Manager and
6    LibryStation software use RPC as the communication mechanism. StorageTek's software which
7    enables communication with "ACSLS" on Microsoft Windows is called "Library Attach software"
8    or "LibAttach".

9    24.    On February 7, 2000, Michael Melnick of StorageTek emailed Netbula, inquiring
10   about "the purchase of 8 developer licenses" and "a limited application distribution agreement."

11
12   25.    From January 2000 to December 2006, Netbula sold RPC runtime licenses in
13   "paks" of different sizes, each pak granted a customer the right to make or distribute certain
     number of copies of the Netbula runtime software.
14

15   26.    In February 2000, the 20-pak, which granted a customer the right to make 20
16   copies of the runtime software, cost about $1000.

17   27.    In February 2000, a "limited application distribution license" for PowerRPC
18   granted a customer the right to install 1000 copies of the runtime software for one operating
19   system.

20   28.    In a series of email exchanges, Plaintiff provided Mr. Melnick the following
21   information for licenses: (1) "ONC RPC Win32 developer license: $895 per developer per
22   machine", (2) "ONC RPC Win32 limited distribution license: $5995", and (3) "The limited
23   distribution license is for distributing the DLLs and support programs to 1,000 machines."

24
25   29.    Plaintiff also provided a license agreement template to StorageTek in the email
     communications referenced above. Mr. Melnick then made various changes to the agreement.
26

27   30.    In March 2000, Mr. Melnick and Plaintiff executed the final agreement (the "2000

28                                                    -7-

1 | Agreement"). The 2000 Agreement was governed by the laws of California and "may not be

2 | assigned by either party or amended without the written consent of both parties…"

3 | 31.   Among other things (such as provisions on copyright), the 2000 Agreement

4 | contained the following terms (with the portions drafted by Michael Melnick underlined):

NETBULA grants STORAGETEK, a non-exclusive, perpetual, irrevocable license for use by STORAGETEK's employees, consultants and subsidiaries for up to ONE user(s), for each of the licenses purchased, to use the PowerRPC SDK Product under Windows NT and 95/98 platforms; each user can only use the software on one computer….

The license is not transferable without written permission of Nebula…

You must treat the software as copyrighted material. You may not copy and redistribute the software except as permitted under this Agreement.

…

Limited Distribution. You agree to maintain reasonable records of the number of copies of the Supporting Programs distributed hereunder and to pay NETBULA as set forth in Exhibit C for such copies….

…

Payment. You agree to pay NETBULA the amounts set forth in Exhibit C in full payment for the rights and licenses granted herein, thirty (30) days after receipt of an invoice referencing a valid purchase order number.

…..

Support is for SDK Products and Supporting Programs on the specific platforms only…

EXHIBIT B

NETBULA COMPONENTS PERMITTED TO BE DISTRIBUTED

…

* Pmapsvc.exeThe portmapper service for Windows NT

-8-

Case No. C07-05850-SI                                    FIRST AMENDED COMPLAINT

1

2          . . . .

3                                    EXHIBIT C

4                                    PAYMENT

5
            STORAGETEK shall pay NETBULA a one-time fee of $895 per
6           license for all rights granted under this Agreement with respect to
            the SDK Product, and one-time fee of $5,995 for the right to
7           distribute up to 1000 units of software containing the Supporting
            Programs, thirty (30) days after receipt of an invoice referencing a
8           valid purchase order number. NETBULA agrees that future SDK
            license purchases will be at a mutually agreed to price.
9           NETBULA agrees to offer STORAGETEK additional units of
10          Supporting Program licenses for the limited distribution license,
            at the cumulative license purchased prices as provided listed
11          below. Pricing is based on cumulative purchases, not single
            purchase events. Additional licenses purchased are subject to the
12          terms and conditions of this Agreement.

13

14      32.    Pursuant to the 2000 Agreement, StorageTek issued a purchase order for the

15   purchasing of eight (8) developer licenses and 1000 runtime licenses. Plaintiff then created a

16   customized copy of the PowerRPC software embedded with license information and delivered the

17   software to StorageTek on a CD with the following information on the CD label: name of the

18   software, name of licensee ("StorageTek"), invoice number ("1605"), license type and license

19   quantity ("8 Developers 1000 runtime").

20      33.    StorageTek later paid invoice 1605 in full, as required by the 2000 Agreement.

21      34.    On May 1, 2000, Scott Painter, an engineer at StorageTek, emailed Netbula about

22   customizing Netbula's "PowerRPC Portmapper" software, that email was copied to Michael

23   Abramovitz, who was also a StorageTek engineer.

24      35.    In June 2001, a StorageTek developer named Anton Vatcky requested a Windows

25   2000 version of PowerRPC for testing a software product called REELs.

26      36.    In May 2001, Netbula sent a license usage audit request to StorageTek.

27                           *COPYRIGHT INFRINGEMENT FACTS*
                                            -9-
28

1    37.    On June 21, 2001, Tracy Gagnon, Program Manager of the Backup & Recovery

2    Software at StorageTek, sent an email to Mr. Melnick with the subject title "Netbula License

3    Report for Audit 06/21 – REELNT Product". She wrote:

4    Enclosed are the Netbula licenses for the REELNT product I
     am showing to date. I arrived at these numbers by going
5    through the history report from SCH. I am not sure if I have
     caught all the data points...
6

7    38.    On June 22, 2001, Mike Melnick responded to Netbula's audit request via email,

8    stating:

9    The license count you request is 107, this leaves us the rights
     to distribute 893...
10

11   Mr. Melnick did not inform Netbula that the report for REELNT was probably incomplete.

12   39.    On September 9, 2002, responding to another audit request, Mike Melnick sent an

13   email stating that StorageTek ceased distributing PowerRPC in 2002. Mr. Melnick wrote:

14   We no longer distribute the runtimes with our products. Our
     count remains the same as provided to you in June of 01.
15

16   40.    In fact, StorageTek had been developing and distributing PowerRPC with other

17   StorageTek products, including LibAttach and LibAttach Integrators' Kit. On March 2, 2004, Lisa

18   Rady, the program manager at StorageTek in charge of LibAttach development, wrote in an

19   internal StorageTek email:

20   As you can see, we have exceeded the 1,000 distributions that
     we had right to with Netbula.... I think it is obvious that
21   engineering has not and did not monitor the distributions on
     this product.
22

23   In another email to Mr. Melnick, Lisa Rady wrote:

24   I have a CD in my hand called "Netbula ONC RPC for Win32
     Development Toolkit", licensed to StorageTek (1605) 8
25   Developers 1000 runtime. Inside the CD was the Receipt that
     included the PO number CCOL122576, your name as the buyer,
26   and a date of 3/24/2000.

27

28                                                   -10-

     Case No. C07-05850-SI                                          FIRST AMENDED COMPLAINT

1    Responding to Ms. Rady's email message, Mr. Melnick wrote:

2           The agreement is specific to platform (Win NT and 95/98
      platforms) types of Netbula software (PowerRPC SDK). This
3      concerns me greatly as we have already told them we are no
      longer shipping it with our product.
4

5
6    41.    After the above internal discussion, Mr. Melnick sent an email to Netbula, stating:

7           Could you provide me with the StorageTek sales
      representative or if possible give me a quote on distributing
8      an additional 1000 units of RPC? The platform used will
      need to be Windows 2003.
9

10          Mr. Melnick concealed from Netbula the fact that StorageTek had been distributing

11    PowerRPC, had exceeded the purchased license count, and had used and distributed PowerRPC on

12    unauthorized platforms.

13    42.    Since 2000, Netbula increased its prices. In 2003, the price for a 1000-copy client

14    runtime license was about $18,000, while the price for a server runtime license was about $800.

15    43.    In March 2004, Netbula and StorageTek negotiated an agreement for the 2004

16    version of PowerRPC. Netbula provided the then current license agreement template with the

17    price of $18,000 for 1000 client runtime licenses, and $800 for one server runtime license.

18    Michael Melnick represented that StorageTek's use of the PowerRPC software was for client only

19    and deleted the server license portion of the agreement and changed the prices.

20    44.    Netbula and StorageTek signed a second license agreement (the "2004

21    Agreement") in March 2004. Because StorageTek previously represented that it only used 107

22    licenses out of the 1000 licenses purchased (thus with 893 licenses wasted), Netbula gave

23    StorageTek price much lower than the standard pricing at the time.

24    45.    Pursuant to the 2004 Agreement, StorageTek issued a purchase order for one (1)

25    developer license and 1000 runtime licenses.

26    46.    Pursuant to the 2004 Agreement and this purchase order, Plaintiff mailed the 2004

27    version of the RPC software to StorageTek on a CD which had a label with the license type and

28                                              -11-

1  license quantity information similar to the CD delivered to StorageTek in 2000.

2      47.     Netbula invoiced StorageTek for the amount on the purchase order. StorageTek

3  later paid the invoiced amount in full.

4      48.     StorageTek made no other license purchases for PowerRPC licenses.

5      49.     On information and belief, Lisa Rady and other StorageTek employees devised a

6  new scheme of selling LibAttach in large blocks, including a 1000-license package and an

7  unlimited package.

8      50.     On October 25, 2004, Michael Abramovitz, an engineer involved in the

9  development of REEL and LibAttach software, sent an email to Netbula, stating that StorageTek

10 bundled PowerRPC into several StorageTek products. On the same day, Netbula emailed

11 StorageTek requesting a license usage report. StorageTek did not provide any report for this

12 request.

13     51.     On June 15, 2005, Netbula emailed StorageTek again for an audit of license usage

14 and inquired about the impending SUN- StorageTek merger. Mr. Melnick responded:

15
                As for Sun, it should be completed by the end of summer... The
16              only thing that you and I may have to do is for you to allow
                assignment of the agreement to Sun. The agreements calls [sic]
17              for your approval. I assume you would sallow [sic] this as if you
                did not the agreement would be terminated.
18

19     52.     On June 20, 2005, Holly Wagner, a Software Product Planner at StorageTek,

20 emailed Michael Melnick, Lisa Rady, Michael Abramovitz and others, stating:

21
                The SAP query I ran this morning shows 2,386 models shipped.
22              This number is low due to the fact that the query does not have
                the capability of pulling the client feature quantities that were
23              released in November of last year.

24     Responding to this email, Mr. Melnick wrote on June 28, 2005:

25
                The number that Holly has provided and thought it may be low
26              causes quite a problem for you. We have only made 2
                purchases for the rights to distribute a total of 2000 licenses.
27

28                                  -12-

1    53.    StorageTek initially refused to provide Netbula a license usage report. After
2    numerous exchanges, StorageTek finally provided a purported PowerRPC runtime usage report in
3    August 2005, which showed that StorageTek made 7455 copies. According to the report, the
4    StorageTek products that include PowerRPC runtime code are LibAttach (model code 1191NLC)
5    and INTGRTRS LIBATTACH (model code 1191NLI). The report also shows that StorageTek
6    copied and distributed PowerRPC on Windows 2000 before it purchased any license for that
7    operating system.

8    54.    After performing some statistics, Plaintiff raised numerous issues with StorageTek,
9    including the use of PowerRPC on unauthorized platforms before March 2004, the unauthorized
10   copies distributed in excess of the purchased quantities, and a 10-fold increase of licenses in the
11   fourth quarter of 2004. Plaintiff believed that StorageTek under-reported the licenses before Q4
12   2004.

13   55.    LibAttach is a key software technology for using StorageTek's tape products on
14   Windows. Most of StorageTek's revenue comes from tape products. From StorageTek's financial
15   reports, its revenue was quite stable over the years, averaging approximately $2 billion per year
16   from products and services. Tape products generated about 77% of StorageTek's product revenue,
17   totaling approximately $1 billion per year. There were no major fluctuations that could explain the
18   10-fold increase in LibAttach license usages since the fourth quarter of 2004.
19
20   56.    On August 31, 2005, StorageTek became wholly owned subsidiary of SUN.
21   Afterwards, the dispute relating to PowerRPC was handled by SUN.

22   57.    Unable to reconcile the differences after many rounds of communication with
23   SUN/StorageTek, Plaintiff requested SUN StorageTek to provide one final report on PowerRPC
24   license usage. From StorageTek's customer testimonials on the internet, Plaintiff learned that there
25   were customers with hundreds of Windows servers before 2004. Plaintiff chose two such
26   customers and requested SUN StorageTek to identify which lines in its royalty report
27   corresponded to these two customers and perform verification of the number of copies.

28   -13-

58.    On or about December 16, 2005, Sun StorageTek Legal Department sent Plaintiff a revised license usage report and a six-page letter (titled "Letter to Don Yue") setting forth the bases of the report. In this letter, Sun StorageTek refused to identify the two customers on its report. As a result, Plaintiff was unable to get minimum verifiable information.

59.    The December 2005 StorageTek license usage report showed it continued to sell LibAttach software which included PowerRPC components after it became a subsidiary of Sun Microsystems in August 2005. StorageTek also admitted that it had sold unlimited licenses for LibAttach software containing Plaintiff's code to multiple customers.

60.    Subsequently, Plaintiff made numerous attempts to resolve the dispute with SUN as a business matter. In June 2006, Plaintiff had a telephone conference with Julie DeCecco (Sun's Assistant General Counsel), Michael Melnick and other SUN employees. At the conference call, DeCecco claimed that SUN and StorageTek did not infringe copyright and threatened Plaintiff with counter-action. The parties nevertheless agreed to have further discussions. DeCecco asked for additional information such as pricing information for PowerRPC, Plaintiff agreed to provide the information. However, SUN did not respond to any of Plaintiff's followup communications, such as emails to Julie DeCecco.

61.    Without getting any response from DeCecco or anyone else from SUN, in August and September 2006, Plaintiff twice emailed SUN's CEO and President, Jonathan Schwartz, informing him about the infringement. No SUN employee responded to the two email messages.

62.    On information and belief, Julie DeCecco and Jonathan Schwartz, instead of stopping the infringement, employed delay tactics to continue the infringement. Schwartz and DeCecco forwarded Plaintiff's email messages and related documents to other SUN employees (including Melnick) and potentially SUN's outside counsel, preparing for lawsuit while permitting

-14-

the infringement to continue at SUN and its customers. One of SUN's planned strategies was to

sue Plaintiff personally by alleging trademark infringement on the JAVA and SUN marks.

63.    On information and belief, Schwartz owned millions shares of SUN stocks and

derivative securities and was involved in the day-to-day management of SUN's operations,

including operating a blog and answering questions from customers or prospective customers.

64.    On information and belief, after Michael Abramovitz learned of the dispute

between Netbula and SUN/StorageTek, he and potentially other StorageTek employees,

presumably under direction of SUN's managing agents, systematically erased the Netbula SDK

software from their computers, thus destroying part of the evidence.

65.    On information and belief, the LibAttach software is a crucial technology for SUN

and StorageTek's tape products. LibAttach allows a Windows application to control a tape library

by executing RPC commands on an ACSLS server (or Library Station/Library Manager) over a

network, which is essential for utilizing the StorageTek tape libraries from Windows.

66.    On further information and belief, LibAttach versions 1.1 to 1.4 were developed

with PowerRPC. The PowerRPC source code was incorporated into the LibAttach software, the

"pwrpc32.dll" and "pmapsvc.exe" software were bundled with the LibAttach software. LibAttach

was thus based on PowerRPC.

67.    Defendants sell LibAttach licenses to end users under the "1191NLC" main

product code. According to StorageTek's pricing list, it sells the single LibAttach license under

the code 1191NLC-S001, 500 licenses under the code 1191NLC-S500, or 1,000 licenses under the

code 1191NLC-S1K0. As Netbula later discovered, Defendants also sold unlimited LibAttach

licenses under the code 1191NLC-SENT.

68.    StorageTek also develops and sells software called "LibAttach Integrator's Kit"

under the product code "1191NLI" to software developers who develop data backup software for

-15-

Case No. C07-05850-SI                                                FIRST AMENDED COMPLAINT

1 StorageTek tape libraries. On information and belief, the 1991NLI product also includes

2 "pwrpc32.dll", "pmapsvc.exe" and PowerRPC generated code.

3      69.    On information and belief, numerous third parties acquired various versions of the

4 "REELS", "LibAttach" and/or "LibAttach Integrators' Kit" from StorageTek and copied these

5 products (which included the "pwrpc32.dll" and "pmapsvc.exe" files) in their use of StorageTek

6 tape libraries and/or in development of their own software.

7                        **CLAIMS FOR RELIEF**

8                    **COPYRIGHT INFRINGEMENT**

9            **(DIRECT, CONTRIBUTORY, AND VICARIOUS)**

10                      (17 U.S.C. § 101 et seq.)

11

12      70.    Plaintiff has invested substantial time, effort, intellectual labor and resources in the

13 creation and public distribution of his PowerRPC software, based in part upon the opportunity to

14 recover his investment from the copyrighted content, and to obtain the revenues and business

15 advantages the copyrighted content provides in connection with Plaintiff's offering of computer

16 software programs and licenses to the public.

17      71.    Defendants' LibAttach, LibAttach Integrator's Kit, REELS and other products

18 contain copies of significant material portions of the content of Plaintiff's technology and

19 products, including Plaintiff's "pwrpc32.dll", "pmapsvc.exe" files and the code generated by

20 "rpcgen.exe". Defendants' LibAttach and REEL software incorporates the source code generated

21 by Plaintiff's "rpcgen.exe" program and includes the "pwrpc32.dl" and "powerrpc.h" files, they

22 are derivative works of Plaintiff's software.

23      72.    Defendants intentionally reproduced, displayed, adapted, exhibited, and/or publicly

24 distributed Plaintiff's software and other copyrighted content in Defendants' "LibAttach",

25 "REELS" and other products without Plaintiff's authorization, consent, license or out of the scope

26 of licenses.

27

28                              -16-

1    73.    On further information and belief, Defendants have also each knowingly and
2    systematically participated in, facilitated, supported, materially contributed to, and/or encouraged
3    the unauthorized copying, reproducing, displaying, adapting, exhibiting, and/or public distributing
4    of Plaintiff's copyrighted software by each other and by third parties, with actual and constructive
5    knowledge of the infringements committed by and through each other and the third parties.  On
6    further information and belief, at all relevant times, each of the Defendants had the right, ability,
7    and opportunity to halt and/or control the unlawful conduct of each of the other Defendants and
8    third parties as alleged herein.

9    74.    On information and belief, each of the Defendants, through: (a) their active
10   participation in the infringing conduct of each other and of third parties; (b) their assistance of and
11   material contribution to each other and third parties in the infringing conduct; (c) their supervision
12   of and ability to control or halt the infringing conduct of each other and third parties; and (d) the
13   substantial, direct financial benefits that each of the Defendants has derived and continues to
14   derive from all of the aforesaid acts, all with full knowledge of their unlawfulness, is
15   contributorily and vicariously liable for the unlawful infringing conduct of each of the other
16   Defendants and each third party as alleged hereinabove.

17   75.    Plaintiff is informed and believes, and on that basis alleges, that StorageTek's and
18   SUN's acts of infringements as alleged herein were committed knowingly, intentionally,
19   maliciously, willfully, and in blatant disregard of, and indifference to, the rights and property of
20   Plaintiff.

21
22   76.    By means of the unauthorized conduct alleged herein, Defendants have deprived
23   and will continue to deprive Plaintiff of gains, revenues, royalties, business advantages, and/or the
     opportunity to recover his investment in his intellectual creation, both direct and indirect.  As
24   such, Defendants have created and continue to create a disincentive for similar investments in the
25   arts.  On information and belief, Defendants have also derived substantial financial benefit from
26
27
28                                              -17-

1 their unlawful conduct with respect to Plaintiff's copyrighted materials, as well as from the
2 unlawful and infringing conduct of each other and of third parties.

3      77.    Each infringing act of copying, reproducing, displaying, adapting, exhibiting,
4 and/or distributing the content of Plaintiff's RPC technology (including the "pwrpc32.dll" and
5 "pmapsvc.exe" files), as well as the continuing threat of the same, constitutes a separate claim
6 against Defendants, and each of them, under the Copyright Act.

7      78.    Each post, copy, reproduction, adaptation, exhibition, display, and/or distribution of
8 Plaintiff's copyrighted materials on and through Defendants' products, or by any other means,
9 constitutes a separate and distinct act of infringement, whether committed by individual
10 Defendants or combinations of them, and including acts of third parties for which Defendants are
11 contributorily and/or vicariously liable.
12

13      79.    Defendants have realized unlawful and unjust profits from the unauthorized and
14 illegal copying, reproduction, adaptation, exhibition, and/or displaying of the above-referenced
15 content of Plaintiff's copyrighted works.  As a result of Defendants' acts of intentional direct,
16 contributory, and/or vicarious infringement, Plaintiff is without an adequate remedy at law, in that
17 actual damages are difficult to ascertain.  Accordingly, Plaintiff requests that this Court grant the
18 injunctive relief prayed for herein.

19      80.    Plaintiff is entitled to recover from Defendants the damages he has sustained and
20 will sustain, and any gains, profits, and advantages obtained by Defendants as a result of
21 Defendants' acts of infringement alleged above, be they direct or indirect.  At present, the amount
22 of such damages to Plaintiff and the gains, profits, and advantages Defendants have obtained by
23 reason of the unlawful conduct described herein cannot be fully ascertained by Plaintiff, but are
24 likely to exceed $20,000,000.

25      81.    Furthermore, Plaintiff has no adequate remedy at law.  Unless Defendants are
26 preliminarily and permanently enjoined from committing the unlawful acts described herein,
27 Plaintiff will continue to suffer irreparable harm.  Plaintiff's harm is irreparable because

28                                        -18-

1  Defendants are in possession of Plaintiff's software and it is extremely difficult control their
2  copying and distribution unless they are enjoined by a court from doing so.  Plaintiff is entitled,
3  pursuant to 17 U.S.C. § 502, to injunctive relief in the form of a temporary restraining order, a
4  preliminary injunction, and/or a permanent injunction restraining Defendants and all persons
5  acting in concert with them, from engaging in any further such acts in violation of the Copyright
6  Act and from distributing Defendants' products which are the unlawful fruits of their unlawful
7  conduct.

8      82.    On information and belief, Defendants' unlawful conduct includes but not limited
9  to the acts of infringement described below.

**COUNT I: COPYRIGHT INFRINGEMENT BY MAKING UNAUTHORIZED COPIES
OF THE WINDOWS NT/98/95 VERSION OF THE SDK**
(Copyright registration No. TX 6-437-847)
*(Against StorageTek and SUN.  For Damages and Profits, and Injunctive Relief)*

13      83.    Plaintiff re-alleges and incorporates herein by reference the allegations of
14  paragraphs 1 through 82, inclusive, of this Complaint.

15      84.    In March 2000, pursuant to the 2000 Agreement, StorageTek purchased eight (8)
16  SDK licenses for Microsoft Windows NT/98/95 (the "NT SDK"). Each SDK license granted one
17  user the right to use the NT SDK on one computer to develop applications for Windows NT/98/95.

18      85.    On information and belief, multiple groups in StorageTek and SUN had copied and
19  used the NT SDK, without internal control of the copying.

21      86.    On further information and belief, many StorageTek employees, including Anton
22  Vatcky and Scott Painter, made numerous copies of the NT SDK onto many computers without
23  licenses, in violation of Plaintiff's copyright in the NT SDK.

-19-

1
2
3

**COUNT II: COPYRIGHT INFRINGEMENT BY MAKING UNAUTHORIZED DERIVATIVE WORKS OF THE NT SDK**
*(Copyright registration No. TX 6-437-847)*
*(Against All Defendants. For Damages and Profits, and Injunctive Relief)*

4      87.    Plaintiff re-alleges and incorporates herein by reference the allegations of

5   paragraphs 1 through 86, inclusive, of this Complaint.

6      88.    On information and belief, StorageTek developed REELS, LibAttach and

7   LibAttach Integrators' Kit products with unauthorized copies of the NT SDK.

8      89.    On further information and belief, the REELS, LibAttach and LibAttach

9   Integrators' Kit products incorporated header files, "pwrpc32.dll" runtime library, "pmapsvc.exe"

10  program and other software written by Plaintiff.

11     90.    The REELS, LibAttach and LibAttach Integrators' Kit products developed with

12  unauthorized copies of NT SDK were thus infringing derivative works of Plaintiff's copyrighted

13  software.

14

15     91.    On further information and belief, numerous third parties also used infringing

16  LibAttach Integrators' Kit to create derivative works without authorization.

17  **COUNT III: COPYRIGHT INFRINGEMENT BY CREATING UNAUTHORIZED DERIVATIVE WORKS FOR WINDOWS 2000**

18      *(Copyright registration No. TX 6-437-847)*
      *(Against All Defendants. For Damages and Profits, and Injunctive Relief)*
19

20     92.    Plaintiff re-alleges and incorporates herein by reference the allegations of

21  paragraphs 1 through 91, inclusive, of this Complaint.

22     93.    The 2000 Agreement was restricted to the Windows NT/98/95 operating systems.

23     94.    StorageTek's engineers and managers knew the 2000 Agreement was for Windows

24  NT/98/95 only. In March 2004, Michael Melnick wrote in an internal email stating that the 2000

25  Agreement was specific to Windows NT and 95/98 platforms). In July 2005, Michael Melnick

26  acknowledged that the 2000 Agreement was for Windows NT/98/95 only. Lisa Rady and Michael

27

28                                           -20-

1  Abramovitz also knew that the PowerRPC software on the CD StorageTek received was for

2  Windows Nt/98/95 only.

3      95.    But, Defendants developed LibAttach and LibAttach Integrators' Kit software for

4  Windows 2000 with the NT SDK, without a license for Windows 2000.

5      96.    On further information and belief, numerous third parties also used the LibAttach

6  Integrators' Kit to create derivative works for unauthorized platforms.

7

8  **COUNT IV: COPYRIGHT INFRINGEMENT BY DISTRIBUTING OR COPYING
   INFRINGING DERIVATIVE WORKS OF THE NT SDK**
9  *(Copyright registration No. TX 6-437-847)*
   *(Against All Defendants. For Damages and Profits, and Injunctive Relief)*

10     97.    Plaintiff re-alleges and incorporates herein by reference the allegations of

11  paragraphs 1 through 96, inclusive, of this Complaint.

12
       98.    On information and belief, Defendants, and each of them, made, offered to sell,
13
   sold, and/or distributed copies of the infringing derivative works of the NT SDK, or contributed to
14
   these activities.
15
       99.    Each copy, each distribution of the infringing derivative works and each
16
17  authorization to do the same constitutes an act of infringement.

18  **COUNT V: COPYRIGHT INFRINGEMENT BY DISTRIBUTING MORE THAN
    1000 COPIES OF THE WINDOWS NT VERSION OF THE RUNTIME SOFTWARE**
19  *(Copyright registration No. TX 6-437-847)*
    *(Against All Defendants. For Damages and Profits, and Injunctive Relief)*
20

21     100.   Plaintiff re-alleges and incorporates herein by reference the allegations of

22  paragraphs 1 through 99, inclusive, of this Complaint.

23     101.   StorageTek only made one license purchase for the right to distribute 1000 copies

24  of the runtime software under the 2000 Agreement.

25
       102.   StorageTek knew it only had the right to distribute 1000 copies under the 2000
26
   Agreement.
27

28                                        -21-

1   103.   StorageTek violated Plaintiff's copyright by distributing more than 1000 copies of

2   the Windows NT version of Plaintiff's software.

3   104.   StorageTek further violated Plaintiff's copyright by granting "floating" licenses

4   which permitted its customers to make unlimited number of copies of Plaintiff's software.

5   105.   In a document attached to a March 12, 2004 internal StorageTek email, Lisa Rady

6   wrote the following about LibAttach: "There is no license key in the product, and it is apparent

7
    that the software has been copied, uncontrolled, for several years" and "engineering has not and
8
    did not monitor the distributions."
9

10   106.   Defendants thus further violated Plaintiff's copyright by willfully failing to monitor

11   the copying of Plaintiff's software and willfully permitting others to make unauthorized copies.

12   **COUNT VI: COPYRIGHT INFRINGEMENT BY MAKING UNAUTHORIZED**
     **COPIES OF THE WINDOWS 2003 VERSION OF THE SDK**
13   *(Copyright registration No. TX 6-491-697)*

14   *(Against All Defendants. For Damages and Profits, and Injunctive Relief)*

15
     107.   Plaintiff re-alleges and incorporates herein by reference the allegations of
16
     paragraphs 1 through 106, inclusive, of this Complaint.
17

18   108.   In March 2004, pursuant to the 2004 Agreement, StorageTek purchased one (1)

19   SDK license to use the 2004 version of the PowerRPC software for Microsoft Windows 2003 and

20   lower (the "2003 SDK"). Each SDK license granted one user the right to use the 2003 SDK on one

21   computer.

22   109.   On information and belief, multiple StorageTek or SUN employees, including

23   Abramovitz, had copied the 2003 SDK on multiple computers, without internal control of inside

24   copying, violating Plaintiff's copyright in the 2003 SDK.

25   **COUNT VII: COPYRIGHT INFRINGEMENT BY CREATING UNAUTHORIZED**
     **DERIVATIVE WORKS OF THE WINDOWS 2003 VERSION OF THE SDK**
26   *(Copyright registration No. TX 6-491-697)*

27   *(Against All Defendants. For Damages and Profits, and Injunctive Relief)*

28   -22-

110. Plaintiff re-alleges and incorporates herein by reference the allegations of paragraphs 1 through 109, inclusive, of this Complaint.

111. On information and belief, StorageTek developed LibAttach and LibAttach Integrators' Kit products with unauthorized copies of the 2003 SDK.

112. On further information and belief, the LibAttach and LibAttach Integrators' Kit products incorporated header files, "pwrpc32.dll" runtime library, "pmapsvc.exe" program and other software in the 2003 SDK written by Plaintiff.

113. The LibAttach and LibAttach Integrators' Kit products developed with unauthorized copies of 2003 SDK were thus infringing derivative works of Plaintiff's copyrighted software.

114. On further information and belief, numerous third parties also used the LibAttach Integrators' Kit to create derivative works without authorization.

**COUNT VIII: COPYRIGHT INFRINGEMENT BY DISTRIBUTING MORE THAN 1000 COPIES OF THE 2004 VERSION OF RUNTIME SOFTWARE**
*(Copyright registration No. TX 6-491-697)*
*(Against All Defendants.  For Damages and Profits, and Injunctive Relief)*

115. Plaintiff re-alleges and incorporates herein by reference the allegations of paragraphs 1 through 114, inclusive, of this Complaint.

116. In March 2004, pursuant to the 2004 Agreement, StorageTek purchased a license to distributed 1000 copies of the 2004 version of the runtime software (the "2004 Runtime").

117. StorageTek knew it only had the right to distribute 1000 copies of the 2004 Runtime.

118. On information and belief, Defendants distributed more than 1000 copies of the 2004 Runtime, without the proper licenses and in violation of Plaintiff's "2K4 copyright."

119. Defendants further violated Plaintiff's copyright by willfully failing to monitor the copying of Plaintiff's software and willfully permitting others to make unauthorized copies.

-23-

Case No. C07-05850-SI                                                FIRST AMENDED COMPLAINT

1   120.    On further information and belief, numerous third parties also used the infringing
2   LibAttach Integrators' Kit which contained the 2004 Runtime to create derivative works without
3   authorization.

4   **COUNT IX: COPYRIGHT INFRINGEMENT BY SELLING AND/OR OFFERING TO SELL UNLIMITED LIBATTACH LICENSES**
5   *(Against All Defendants.  For Damages and Profits, and Injunctive Relief)*
6

7   121.    Plaintiff re-alleges and incorporates herein by reference the allegations of
8   paragraphs 1 through 120, inclusive, of this Complaint.

9   122.    Defendants knew that each copy of Plaintiff's software required a license.

10  123.    Defendants offered to sell unlimited licenses for LibAttach software which
11  contained Plaintiff's copyrighted software, in violation of Plaintiff's copyright.

12  124.    Defendants sold unlimited licenses for LibAttach software which contained
13  Plaintiff's copyrighted software to multiple customers, in violation of Plaintiff's copyright.
14

15  **COUNT X: COPYRIGHT INFRINGEMENT BY CONTINUING TO COPY AND/OR DISTRIBUTE PLAINTIFF'S SOFTWARE AFTER STORAGETEK BECAME A SUBSIDIARY OF SUN**
16  *(Against All Defendants.  For Damages and Profits, and Injunctive Relief)*
17

18  125.    Plaintiff re-alleges and incorporates herein by reference the allegations of
19  paragraphs 1 through 124, inclusive, of this Complaint.

20  126.    Both the 2000 Agreement and 2004 Agreement were not transferable. Michael
21  Melnick, representing StorageTek, stated that the agreements were not transferable and "would be
22  terminated" upon SUN's acquisition of StorageTek.
23

24  127.    On August 31, 2005, StorageTek became a subsidiary of SUN. StorageTek
    employees became SUN employees; StorageTek employees' email addresses changed to sun.com
25  domain; StorageTek became "Sun StorageTek."
26

27

28                                      -24-

1    128.    On information and belief, Defendants continued to use, copy, distribute, offer to

2    sell and sell LibAttach and LibAttach Integrator's Kit software (which contained Plaintiff's

3    software) after StorageTek became a subsidiary of SUN.

4    129.    Defendants further authorized others to copy, distribute and/or sell products which

5    contained Plaintiff's software after SUN acquired StorageTek.

6    130.    Each copying and distribution of Plaintiff's software by Defendants and the

7    authorization to do the same after August 31, 2005 was an act of infringement of Plaintiff's

8    copyrights.

9

10                              **PRAYER FOR RELIEF**

11         WHEREFORE, Plaintiff prays for judgment to be entered against Defendants as

12    follows:

13    1.    That Defendants, and each of them, for each Count listed above, be held

14    liable for direct, contributory, and/or vicarious infringement of Plaintiff's copyrights in violation of

15    the federal Copyright Act, 17 U.S.C. § 501 *et seq*., as alleged herein;

16    2.    That the Court find a substantial likelihood that Defendants will continue to

17    infringe, or contribute to or vicariously support the infringement of, Plaintiff's copyrights in the

18    content of Plaintiff's RPC technology and products, unless enjoined from doing so;

19    3.    That Defendants and their officers, employees, agents, servants, attorneys,

20    and representatives, and all other persons, firms, or corporations in active concert or privity or in

21    participation with them, be preliminarily, and thereafter permanently, enjoined and restrained in

22    the form of a temporary restraining order, a preliminary injunction, and/or a permanent injunction,

23    pursuant to the Court's inherent equitable powers and pursuant to 17 U.S.C. § 502, from:

24         (a)    directly or indirectly engaging in any manner in the unauthorized

25              copying, reproduction, adaptation, exhibition, distribution, display, or other

26              infringement of Plaintiff's protected works and/or exclusive copyright rights

27

28                                    -25-

(whether now in existence or hereafter created), including, without limitation, those involving the original content of and works on and in Plaintiff's RPC technology and products and from continuing to market, offer, sell, dispose of, license, lease, transfer, display, advertise, reproduce, develop, or manufacture any works derived or copied from the content of Plaintiff's copyrighted works, all as described in this Complaint;

(b)    causing, contributing to, enabling, facilitating, supporting, aiding, or participating in any manner in the infringement of Plaintiff's protected works and/or exclusive copyright rights (whether now in existence or hereafter created), including, without limitation, the content of Plaintiff's RPC technology and products, all as described in this Complaint; and

(c)    otherwise engaging in any conduct that unlawfully, unfairly, and/or fraudulently competes with Plaintiff and Plaintiff's RPC technology and products (including, without limitation, through the unauthorized use and infringement of Plaintiff's original works of authorship), all as described in this Complaint;

4.    That Defendants and their officers, employees, agents, servants, attorneys, and representatives, and all other persons, firms, or corporations in active concert or privity or in participation with them, be ordered to immediately deliver to the Court for impoundment (and destruction upon entry of final judgment against Defendants) all illegal, unlicensed copies of Plaintiff's software in their possession, custody or control together with an accounting, to be provided to Plaintiff, of: (1) the number of such copies in Defendants' possession, custody or control; (2) where each copy was found; (3) the identity of the individual or individuals having possession, custody or control of each copy at the time it was found; and (4) a sworn explanation of how each copy was obtained, duplicated or distributed, including the identity of all persons involved in such activity for each such copy;

-26-

1         5.     That Defendants' unlawful conduct as alleged herein be deemed a willful

2    violation of Plaintiff's copyrights;

3         6.     That Plaintiff be awarded its actual compensatory damages according to

4    proof for Defendants' acts of copyright infringement;

5         7.     That Defendants be ordered to disgorge any direct or indirect profits or

6    gains in Defendants' possession attributable to the infringement of Plaintiff's copyrights;

7
8         8.     That Plaintiff be awarded statutory damages pursuant to 17 U.S.C. § 504(c)

9    when statutory damages are appropriate and desirable;

10         9.     That the Court order an accounting of all gains, profits, and advantages

11    realized by Defendants, or others acting in concert or participation with them, from their unlawful

12    conduct (including an accounting of all usages and copies of Plaintiff's software and Defendants'

13    revenues and profits related thereto), and that all such gains, profits, and advantages be deemed to

14    be in constructive trust for the benefit of Plaintiff, at the sole cost and expense of Defendants, by

15    means of an independent accountant;

16         10.     That the Court order an accounting of licenses of Plaintiff's software

17    distributed by Defendants and of all related license usages and/or copies by StorageTek and

18    SUN's customers and other third parties , as well as the disclosure of the identities of all such

19    customers, and allow Plaintiff to amend this Complaint to name such customers and third parties

20    in this action for their infringement of Plaintiff's copyrights;

21         11.     That Plaintiff recover its reasonable attorneys' fees pursuant to any

22    applicable laws and/or rules;

23         12.     That Plaintiff recover its costs of this suit, including expert witness costs,

24    pursuant to 17 U.S.C. § 505 and any other applicable laws and/or rules; and

25
26         13.     That Plaintiff be granted such other and further relief as this Court deems

27    just and proper.

28

Case No. C07-05850-SI             FIRST AMENDED COMPLAINT

1

2  Dated:   December 10, 2007

3

4                                          By:        Dongxiao Yue
                                                        *Pro Se*
5

6

7

8                          **DEMAND FOR JURY TRIAL**

9          Plaintiff Dongxiao Yue demands a jury trial in this action.

10  Dated:   December 10, 2007

11

12                                         By:        Dongxiao Yue
                                                        *Pro Se*
13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28                                          -28-

Case No. C07-05850-SI

# EXHIBIT A

# Certificate of Registration



This Certificate issued under the seal of the Copyright Office in accordance with title 17, United States Code, attests that registration has been made for the work identified below. The information on this certificate has been made a part of the Copyright Office records.

*Marybeth Peters*

Register of Copyrights, United States of America

**Form TX**
For a Nondramatic Literary Work
UNITED STATES COPYRIGHT OFFICE

**TX 6-437-847**

EFFECTIVE DATE OF REGISTRATION

| 10 | 3 | 06 |
|---|---|---|
| March | Day | Year |

---

**DO NOT WRITE ABOVE THIS LINE. IF YOU NEED MORE SPACE, USE A SEPARATE CONTINUATION SHEET.**

## 1

**TITLE OF THIS WORK ▼**
NETBULA PowerRPC PWRPC32.DLL 00-NT-SDK-STK

**PREVIOUS OR ALTERNATIVE TITLES ▼**
NETBULA PowerRPC Runtime DLL 00-NT-SDK-STK

**PUBLICATION AS A CONTRIBUTION** If this work was published as a contribution to a periodical, serial, or collection, give information about the collective work in which the contribution appeared.    **Title of Collective Work ▼**

If published in a periodical or serial give:  Volume ▼     Number ▼     Issue Date ▼     On Pages ▼

## 2

**a**

**NAME OF AUTHOR ▼**
NETBULA, LLC

**DATES OF BIRTH AND DEATH**
Year Born ▼     Year Died ▼

Was this contribution to the work a "work made for hire"?
☑ Yes
☐ No

**AUTHOR'S NATIONALITY OR DOMICILE**
Name of Country
OR { Citizen of ▶ U.S.A.
Domiciled in ▶

**WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK**
If the answer to either of these questions is "Yes," see detailed instructions.
Anonymous?    ☐ Yes ☑ No
Pseudonymous?    ☐ Yes ☑ No

**NATURE OF AUTHORSHIP** Briefly describe nature of material created by this author in which copyright is claimed. ▼
COMPUTER PROGRAM

**NOTE**

Under the law, the "author" of a "work made for hire" is generally the employer, not the employee (see instructions). For any part of this work that was "made for hire" check "Yes" in the space provided, give the employer (or other person for whom the work was prepared) as "Author" of that part, and leave the space for dates of birth and death blank.

**b**

**NAME OF AUTHOR ▼**

**DATES OF BIRTH AND DEATH**
Year Born ▼     Year Died ▼

Was this contribution to the work a "work made for hire"?
☐ Yes
☐ No

**AUTHOR'S NATIONALITY OR DOMICILE**
Name of Country
OR { Citizen of ▶
Domiciled in ▶

**WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK**
If the answer to either of these questions is "Yes," see detailed instructions.
Anonymous?    ☐ Yes ☐ No
Pseudonymous?    ☐ Yes ☐ No

**NATURE OF AUTHORSHIP** Briefly describe nature of material created by this author in which copyright is claimed. ▼

**c**

**NAME OF AUTHOR ▼**

**DATES OF BIRTH AND DEATH**
Year Born ▼     Year Died ▼

Was this contribution to the work a "work made for hire"?
☐ Yes
☐ No

**AUTHOR'S NATIONALITY OR DOMICILE**
Name of Country
OR { Citizen of ▶
Domiciled in ▶

**WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK**
If the answer to either of these questions is "Yes," see detailed instructions.
Anonymous?    ☐ Yes ☐ No
Pseudonymous?    ☐ Yes ☐ No

**NATURE OF AUTHORSHIP** Briefly describe nature of material created by this author in which copyright is claimed. ▼

## 3

**a** **YEAR IN WHICH CREATION OF THIS WORK WAS COMPLETED** This information must be given ONLY if this work has been published.
2000 ◄ Year in all cases.

**b** **DATE AND NATION OF FIRST PUBLICATION OF THIS PARTICULAR WORK**
Month ▶ March    Day ▶ 7    Year ▶ 2000
U.S.A. ◄ Nation

## 4

**COPYRIGHT CLAIMANT(S)** Name and address must be given even if the claimant is the same as the author given in space 2. ▼
NETBULA, LLC
2777 ALVARADO STREET, SUITE C
SAN LEANDR, CA 94577, U.S.A.

**TRANSFER** If the claimant(s) named here in space 4 is (are) different from the author(s) named in space 2, give a brief statement of how the claimant(s) obtained ownership of the copyright. ▼

APPLICATION RECEIVED
OCT - 3 2006
ONE DEPOSIT RECEIVED
OCT - 3 2006
TWO DEPOSITS RECEIVED

FUNDS RECEIVED

*DO NOT WRITE HERE OFFICE USE ONLY*

---

**MORE ON BACK ▶**  • Complete all applicable spaces (numbers 5-9) on the reverse side of this page.    • See detailed instructions.    • Sign the form at line 8.

**DO NOT WRITE HERE**
Page 1 of _____ pages

| EXAMINED BY | E27 | | FORM TX |
|---|---|---|---|
| CHECKED BY | | | |
| ☐ | CORRESPONDENCE Yes | | FOR COPYRIGHT OFFICE USE ONLY |

**DO NOT WRITE ABOVE THIS LINE. IF YOU NEED MORE SPACE, USE A SEPARATE CONTINUATION SHEET.**

**PREVIOUS REGISTRATION** Has registration for this work, or for an earlier version of this work, already been made in the Copyright Office?
☑ Yes  ☐ No  If your answer is "Yes," why is another registration being sought? (Check appropriate box.) ▼

a. ☐ This is the first published edition of a work previously registered in unpublished form.

b. ☐ This is the first application submitted by this author as copyright claimant.

c. ☑ This is a changed version of the work, as shown by space 6 on this application.

If your answer is "Yes," give: **Previous Registration Number ▶** TX-6-211-063     **Year of Registration ▶** 2005

**5**

**DERIVATIVE WORK OR COMPILATION**

**Preexisting Material** Identify any preexisting work or works that this work is based on or incorporates. ▼

Netbula PowerRPC (Registered: TX-6-211-063), SUN RPC SRC 4.0

**Material Added to This Work** Give a brief, general statement of the material that has been added to this work and in which copyright is claimed. ▼

revisions and additional text of computer program, new programming text

**a  6**
**b**

See instructions before completing this space.

**DEPOSIT ACCOUNT** If the registration fee is to be charged to a Deposit Account established in the Copyright Office, give name and number of Account.

**Name ▼**                    **Account Number ▼**

**a  7**

**CORRESPONDENCE** Give name and address to which correspondence about this application should be sent.  Name/Address/Apt/City/State/ZIP ▼

DON YUE
2777 ALVARADO STREET, SUITE C
SAN LEANDRO, CA 94577

**b**

Area code and daytime telephone number ▶ 510-351-7672     Fax number ▶ 510-291-2237

Email ▶ ydx@netbula.com

**CERTIFICATION*** I, the undersigned, hereby certify that I am the

Check only one ▶

☐ author
☐ other copyright claimant
☐ owner of exclusive right(s)
☑ authorized agent of  NETBULA, LLC

Name of author or other copyright claimant, or owner of exclusive right(s) ▲

of the work identified in this application and that the statements made by me in this application are correct to the best of my knowledge.

**8**

Typed or printed name and date ▼ If this application gives a date of publication in space 3, do not sign and submit it before that date.

DONG XIAO YUE                    Date ▶ October 1, 2006

Handwritten signature (X) ▼

X _____

| Certificate will be mailed in window envelope to this address: | **Name ▼** DON YUE | • Complete all necessary spaces • Sign your application in space 8 |
|---|---|---|
| | **Number/Street/Apt ▼** 2777 ALVARADO STREET, SUITE C | 1. Application form 2. Nonrefundable filing fee in check or money order payable to Register of Copyrights 3. Deposit material |
| | **City/State/ZIP ▼** SAN LEANDRO, CA 94577 | Library of Congress Copyright Office - TX 101 Independence Avenue, S.E. Washington, D.C. 20559-6222 |

**9**

*17 U.S.C. § 506(e): Any person who knowingly makes a false representation of a material fact in the application for copyright registration provided for by section 409, or in any written statement filed in connection with the application, shall be fined not more than $2,500.

Rev. July 2003—xxx  Web Rev. July 2003  ⊛ Printed on recycled paper     U.S. Government Printing Office: 2000-461-113/20.021

# EXHIBIT B

# Certificate of Registration



This Certificate issued under the seal of the Copyright
Office in accordance with title 17, United States Code,
attests that registration has been made for the work
identified below. The information on this certificate has
been made a part of the Copyright Office records.

*Marybeth Peters*

Register of Copyrights, United States of America

**Form TX**
For a Nondramatic Literary Work
UNITED STATES COPYRIGHT OFFICE

TX 6-491-697

**EFFECTIVE DATE OF REGISTRATION**

Dec 15 2004
Month  Day  Year

---

**DO NOT WRITE ABOVE THIS LINE. IF YOU NEED MORE SPACE, USE A SEPARATE CONTINUATION SHEET.**

**1** **TITLE OF THIS WORK ▼**
NETBULA POWERRPC 2K4

**PREVIOUS OR ALTERNATIVE TITLES ▼**
NETBULA PowerRPC

**PUBLICATION AS A CONTRIBUTION** If this work was published as a contribution to a periodical, serial, or collection, give information about the collective work in which the contribution appeared.    **Title of Collective Work ▼**

If published in a periodical or serial give: Volume ▼     Number ▼     Issue Date ▼     On Pages ▼

---

**2**

**a** **NAME OF AUTHOR ▼**
NETBULA, LLC

**DATES OF BIRTH AND DEATH**
Year Born ▼    Year Died ▼

Was this contribution to the work a "work made for hire"?
☑ Yes
☐ No

**AUTHOR'S NATIONALITY OR DOMICILE**
Name of Country
OR { Citizen of ▶ U.S.A.
Domiciled in ▶

**WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK**
Anonymous?   ☐ Yes  ☑ No
Pseudonymous?  ☐ Yes  ☑ No
If the answer to either of these questions is "Yes," see detailed instructions.

**NOTE**
Under the law, the "author" of a "work made for hire" is generally the employer, not the employee (see instructions). For any part of this work that was "made for hire" check "Yes" in the space provided, give the employer (or other person for whom the work was prepared) as "Author" of that part, and leave the space for dates of birth and death blank.

**NATURE OF AUTHORSHIP** Briefly describe nature of material created by this author in which copyright is claimed. ▼
COMPUTER PROGRAM

**b** **NAME OF AUTHOR ▼**

**DATES OF BIRTH AND DEATH**
Year Born ▼    Year Died ▼

Was this contribution to the work a "work made for hire"?
☐ Yes
☐ No

**AUTHOR'S NATIONALITY OR DOMICILE**
Name of Country
OR { Citizen of ▶
Domiciled in ▶

**WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK**
Anonymous?   ☐ Yes  ☐ No
Pseudonymous?  ☐ Yes  ☐ No
If the answer to either of these questions is "Yes," see detailed instructions.

**NATURE OF AUTHORSHIP** Briefly describe nature of material created by this author in which copyright is claimed. ▼

**c** **NAME OF AUTHOR ▼**

**DATES OF BIRTH AND DEATH**
Year Born ▼    Year Died ▼

Was this contribution to the work a "work made for hire"?
☐ Yes
☐ No

**AUTHOR'S NATIONALITY OR DOMICILE**
Name of Country
OR { Citizen of ▶
Domiciled in ▶

**WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK**
Anonymous?   ☐ Yes  ☐ No
Pseudonymous?  ☐ Yes  ☐ No
If the answer to either of these questions is "Yes," see detailed instructions.

**NATURE OF AUTHORSHIP** Briefly describe nature of material created by this author in which copyright is claimed. ▼

---

**3**

**a** **YEAR IN WHICH CREATION OF THIS WORK WAS COMPLETED** This information must be given ONLY if this work in all cases. has been published.
2004 ◀ Year

**b** **DATE AND NATION OF FIRST PUBLICATION OF THIS PARTICULAR WORK**
Month ▶ January   Day ▶ 15   Year ▶ 2004
U.S.A ◀ Nation

---

**4**

**COPYRIGHT CLAIMANT(S)** Name and address must be given even if the claimant is the same as the author given in space 2. ▼
NETBULA, LLC
2777 ALVARADO STREET, SUITE C
SAN LEANDRO, CA 94577, U.S.A

**TRANSFER** If the claimant(s) named here in space 4 is (are) different from the author(s) named in space 2, give a brief statement of how the claimant(s) obtained ownership of the copyright. ▼

See instructions before completing this space.

**APPLICATION RECEIVED**
DEC 15 2006
**ONE DEPOSIT RECEIVED**
DEC 15 2006
**TWO DEPOSITS RECEIVED**

**FUNDS RECEIVED**

DO NOT WRITE HERE
OFFICE USE ONLY

---

**MORE ON BACK ▶** • Complete all applicable spaces (numbers 5-9) on the reverse side of this page.
• See detailed instructions.   • Sign the form at line 8.

DO NOT WRITE HERE
Page 1 of _____ pages

EXAMINED BY

CHECKED BY

☐ CORRESPONDENCE
Yes

FORM TX

FOR
COPYRIGHT
OFFICE
USE
ONLY

DO NOT WRITE ABOVE THIS LINE. IF YOU NEED MORE SPACE, USE A SEPARATE CONTINUATION SHEET.

**PREVIOUS REGISTRATION** Has registration for this work, or for an earlier version of this work, already been made in the Copyright Office?
☑ Yes ☐ No If your answer is "Yes," why is another registration being sought? (Check appropriate box.) ▼
a. ☐ This is the first published edition of a work previously registered in unpublished form.
b. ☐ This is the first application submitted by this author as copyright claimant.
c. ☑ This is a changed version of the work, as shown by space 6 on this application.
If your answer is "Yes," give Previous Registration Number ▶ TX-6-211-063    Year of Registration ▶ 2005

**5**

**DERIVATIVE WORK OR COMPILATION**
Preexisting Material Identify any preexisting work or works that this work is based on or incorporates. ▼

SUN RPCSRC 4.0, Netbula PowerRPC (Registered: TX-6-211-063)

Material Added to This Work Give a brief, general statement of the material that has been added to this work and in which copyright is claimed. ▼

revisions and additional text of computer program, new programming text

**a**

**6**

**b**

See instructions
before completing
this space.

**DEPOSIT ACCOUNT** If the registration fee is to be charged to a Deposit Account established in the Copyright Office, give name and number of Account.
Name ▼                                        Account Number ▼

**a**

**7**

**CORRESPONDENCE** Give name and address to which correspondence about this application should be sent. Name/Address/Apt/City/State/ZIP ▼

**DON YUE**
**2777 ALVRADO STREET, SUITE C**
**SAN LEANDRO, CA 94577**

Area code and daytime telephone number ▶ 510-396-0012        Fax number ▶ 510-291-2237
Email ▶ ydx@netbula.com

**b**

**CERTIFICATION** I, the undersigned, hereby certify that I am the
☐ author
☐ other copyright claimant
☐ owner of exclusive right(s)
☑ authorized agent of NETBULA, LLC
Check only one ▶
Name of author or other copyright claimant, or owner of exclusive right(s) ▲
of the work identified in this application and that the statements made
by me in this application are correct to the best of my knowledge.

Typed or printed name and date ▼ If this application gives a date of publication in space 3, do not sign and submit it before that date.

**DONGXIAO YUE**                                                Date ▶ December 7, 2006

Handwritten signature (X) ▼

X _____

**8**

**9**

Certificate
will be
mailed in
window
envelope
to this
address:

Name ▼
**DON YUE**

Number/Street/Apt ▼
**2777 ALVRADO STREET, SUITE C**

City/State/ZIP ▼
**SAN LEANDRO, CA 94577**

• Complete all necessary spaces
• Sign your application in space 8

SEND ALL 3 ELEMENTS
IN THE SAME PACKAGE:
1. Application form
2. Nonrefundable filing fee in check or money
order payable to Register of Copyrights
3. Deposit material

MAIL TO:
Library of Congress
Copyright Office - TX
101 Independence Avenue, S.E.
Washington, D.C. 20559-6222

*17 U.S.C. § 506(e): Any person who knowingly makes a false representation of a material fact in the application for copyright registration provided for by section 409, or in any written statement filed in connection with the application, shall be fined not more than $2,500.

Rev. July 2003—xxx   Web Rev. July 2003   ☺ Printed on recycled paper

U.S. Government Printing Office: 2000-461-113/90,021

# EXHIBIT C

# COPYRIGHT ASSIGNMENT

This Copyright Assignment is made by **NETBULA, LLC**, a Delaware Limited Liability Company (hereafter **NETBULA** or **Assignor**) with its principal address of business at 2777 ALVARADO STR, SUITE C, SAN LEANDRO, CA 94577, USA to **Dr. DONGXIAO YUE** (hereafter **DR. YUE** or **Assignee**), an individual currently residing in Union City, California, USA.

For valuable consideration, receipt and sufficiency of which are hereby acknowledged, NETBULA transfers and assigns to DR. YUE, his successors and assigns, in perpetuity, all rights, ownership, title, and interest, throughout the world, including any copyrights and renewals or extensions thereto, in the works with U.S. copyright registration numbers TX 6-211-063, TX 6-446-398, TX 6-459-456, TX 6-437-847, TX 6-491-697 and all Netbula PowerRPC and Netbula ONC RPC software created before January 1, 2007 (collectively "THE POWERRPC COPYRIGHTS"). The Assignor acknowledges that DR. YUE was the founder of Netbula, LLC and the natural person who created the works protected by the THE POWERRPC COPYRIGHTS. The description of the works protected by the THE POWERRPC COPYRIGHTS is provided in Exhibit A of this copyright assignment document.

NETBULA further assigns to DR. YUE, his successors and assigns, the right to collect payment for any past, current and future use of the works protected by THE POWERRPC COPYRIGHTS in any part of the world. NETBULA further assigns to **DR. YUE,** his successors and assigns, any and all claims assertable under copyright against any infringement of THE POWERRPC COPYRIGHTS in any part of the world which may have heretofore arisen or which may hereafter arise as well as the right to investigate, prosecute, settle or otherwise control such accrued, ongoing or prospective claims except the claims that had been resolved before the signing date of this Agreement.

IN WITNESS THEREOF, Assignor has duly executed this Copyright Assignment.

NETBULA, LLC

By: _____

Dongxiao Yue, in his capacity as the President of Netbula, LLC

Title: President, Netbula, LLC

Date: 09-26, 2007

## EXHIBIT A

## THE POWERRPC COPYRIGHTS ASSIGNED TO DR. YUE

| Title of Copyrighted Work | U.S. Copyright Registration No. | Date of Registration |
|---|---|---|
| Netbula PowerRPC | TX 6-211-063 | October 18, 2005 |
| Netbula PowerRPC Runtime DLL 98-NT-SDK-NTCT | TX 6-446-398 | October 6, 2006 |
| Netbula powerRPC-98 | TX 6-459-456 | October 6, 2006 |
| Netbula PowerRPC PWRPC32.DLL 00-SDK-STK | TX 6-437-847 | October 3, 2006 |
| NETBULA POWERRPC 2K4 | TX 6-491-697 | December 15, 2006 |
| All Netbula PowerRPC and ONC RPC software created before January 1, 2007 | | |

## NOTARIZATION

Before me this _September 26, 2007_ personally appeared: <u>Dongxiao Yue,</u> to me known to be the person who is described in and who executed the foregoing copyright assignment instrument and acknowledged to me that he executed the same in his capacity as President of Netbula, LLC for the purpose therein expressed.

_LeRoy E. Hollingworth_

Notary Public



LE ROY E. HOLLINGWORTH
Commission # 1689060
Notary Public - California
Alameda County
My Comm. Expires Sep 18, 2010