1   LAURENCE F. PULGRAM (CSB NO. 115163)
    *lpulgram@fenwick.com*
2   JEDEDIAH WAKEFIELD (CSB NO. 178058)
    *jwakefield@fenwick.com*
3   ALBERT L. SIEBER (CSB NO. 233482)
    *asieber@fenwick.com*
4   LIWEN A. MAH (CSB NO. 239033)
    *lmah@fenwick.com*
5   FENWICK & WEST LLP
    555 California Street, 12th Floor
6   San Francisco, CA  94111
    Telephone:     (415) 875-2300
7   Facsimile:     (415) 281-1350

8   Attorneys for Defendants
    STORAGE TECHNOLOGY CORPORATION,
9   SUN MICROSYSTEMS, INC., MICHAEL
    MELNICK, JULIE DECECCO, MICHAEL P.
10  ABRAMOVITZ, LISA K. RADY, and
    JONATHAN SCHWARTZ

11

12              UNITED STATES DISTRICT COURT

13            NORTHERN DISTRICT OF CALIFORNIA

14              SAN FRANCISCO DIVISION

15

16  DONGXIAO YUE,                          Case No.  C-07-05850-MJJ

17              Plaintiff,                 **DEFENDANTS' NOTICE OF MOTION
                                           AND MOTION TO DISMISS COMPLAINT**
18  v.

19  STORAGE TECHNOLOGY                     Date:       March 4, 2008
    CORPORATION, a Delaware corporation;   Time:       9:30 a.m.
20  SUN MICROSYSTEMS, INC., a Delaware     Dept:       11, 19th Floor
    corporation; MICHAEL MELNICK, an       Judge:      Hon. Martin J. Jenkins
21  individual; JULIE DECECCO, an
    individual; MICHAEL P. ABRAMOVITZ,     Filed:      November 19, 2007
22  an individual; LISA K. RADY, an        Trial Date: No date set
    individual; JONATHAN SCHWARTZ, an
23  individual; and DOES 1-1000, inclusive,

24              Defendants.

25

26

27

28

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

# TABLE OF CONTENTS

**Page**

NOTICE OF MOTION AND MOTION ................................................................................... 1

MEMORANDUM OF POINTS AND AUTHORITIES ......................................................... 1

I.    INTRODUCTION .......................................................................................................... 1

II.   STATEMENT OF ISSUE PRESENTED ...................................................................... 2

III.  FACTUAL BACKGROUND .......................................................................................... 2

    A.    The Lawsuit Filed in the Name of Netbula, LLC ................................................. 2

    B.    The Present, Duplicative Lawsuit Filed in the Name of Netbula's Owner, Dongxiao Yue ......................................................................................................... 6

IV.   ARGUMENT ................................................................................................................... 7

    A.    The Court Has Broad Authority to Dismiss Complaints That Are Duplicative of Earlier-Filed Lawsuits ................................................................. 8

        1.    The First Factor Relevant to Duplicativeness—Whether the Causes of Action and Relief Are the Same—Is Easily Met Here .......................... 8

        2.    The Second Factor Relevant to Duplicativeness—Privity Among Parties—Is Also Easily Met ..................................................................... 15

            a.    Netbula and Dr. Yue – Plaintiffs in the Successive Actions – Are in Privity ..................................................................................... 16

            b.    Defendants in the Successive Actions Are Also in Privity .......... 18

    B.    Additional Equitable Factors Also Support Dismissal of This Action ................. 19

    C.    This Duplicative Action Should Be Dismissed With Prejudice ........................... 22

V.    CONCLUSION ............................................................................................................... 25

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Adams v. Cal. Dep't of Health Servs.*,
487 F.3d 684 (9th Cir. 2007)........................................ 8, 9, 12, 14, 15, 18, 19, 21, 22, 23, 24

*Beals v. Washington Int'l, Inc.*,
386 A.2d 1156 (Del. Ch. 1978)............................................................... 3

*Bell v. South Bay European Corp.*,
486 F. Supp. 2d 257 (S.D.N.Y. 2007)....................................................... 7

*Brush Creek Media, Inc. v. Boujaklian*,
Copy. L. Rep. (CCH) P28,499 (C.D. Cal. 2002) ................................ 14

*Chinn v. Giant Food, Inc.*,
100 F. Supp. 2d 331 (D. Md. 2000) ............................................. 19, 21

*Costantini v. Trans World Airlines*,
681 F.2d 1199 (9th Cir. 1992)................................................................. 9

*Curtis v. Citibank, N.A.*,
226 F.3d 133 (2d Cir. 2000)................................................................. 13

*Damon Alarm Corp. v. American Dist. Tel. Co.*,
304 F. Supp 83 (S.D.N.Y. 1969) ............................................................. 3

*Durney v. Wavecrest Labs, LLC*,
441 F. Supp. 2d 1055 (N.D. Cal. 2005) ................................................. 9

*Ellison v. Autozone, Inc.*,
Case No. C-06-07522-MJJ, 2007 U.S. Dist. LEXIS 47547
(N.D. Cal. June 20, 2007) ............................................................... 20, 22

*Fantasy, Inc. v. LaFace Records*,
1998 U.S. Dist. LEXIS 20931 (E.D. Cal. 1998) ............................. 12, 19

*General Battery Corp. v. Globe-Union, Inc.*,
100 F.R.D. 258 (D. Del. 1982)............................................................. 16

*Headwaters Inc. v. United States Forest Serv.*,
399 F.3d 1047 (9th Cir. 2005) ............................................................. 16

*In re Gottheiner*,
703 F.2d 1136 (9th Cir. 1983)....................................................... 17, 18

*International Nutrition Co. v. Horphag Research, Ltd.*,
220 F.3d 1325 (Fed. Cir. 2000)........................................................... 16

*Irwin v. Mascott*,
370 F.3d 924 (9th Cir. 2004)............................................................... 18

*Kreager v. General Electric Co.*,
497 F.2d 468 (2d Cir. 1974)................................................................. 17

*Loree Rodkin Mgmt. Corp. v. Ross-Simons, Inc.*,
315 F. Supp. 2d 1053 (C.D. Cal. 2004) ............................................... 14

1

2

# TABLE OF AUTHORITIES
## (continued)

Page(s)

*Mullis v. United States Bank. Ct.*,
828 F.2d 1385 (9th Cir. 1987).................................................................................. 2

*Ryan v. Carl Corp.*,
1998 U.S. Dist. LEXIS 9012 (N.D. Cal. 1998)...................................................... 14

*Sevits v. McKiernan-Terry Corp.*,
264 F. Supp. 810 (S.D.N.Y. 1966)........................................................................... 3

*Single Chip Systems Corp. v. Intermec IP Corp.*,
459 F. Supp. 2d 1052 (S.D. Cal. 2007) ........................................................ 8, 9, 15

*United States v. High Country Broadcasting Co.*,
3 F.3d 1244 (9th Cir. 1993)....................................................................................... 7

*United States v. ITT Rayonier, Inc.*,
627 F.2d 996 (9th Cir. 1980)................................................................................... 15

*W. Coast Home Builders, Inc. v. Aventis Cropscience USA, Inc.*,
Case No. 04-02225-SI, 2006 U.S. Dist. LEXIS 48021
(N.D. Cal. July 6, 2006) ............................................................................................ 2

*Walton v. Eaton Corp.*,
563 F.2d 66 (3rd Cir. 1977) .................................................................................... 22

*Western Sys., Inc. v. Ulloa*,
958 F.2d 864 (9th Cir. 1992).................................................................................... 9

**STATUTES**

Del. Corp. Code § 259 ................................................................................................... 3

**RULES**

Civil Local Rule 3-12................................................................................................... 21

Fed. R. Civ. P. 12(b)(6)................................................................................................. 1

Fed. R. Civ. P. 17(b) ..................................................................................................... 3

3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

## NOTICE OF MOTION AND MOTION

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that Defendants Storage Technology Corp. ("StorageTek"), Sun Microsystems, Inc. ("Sun"), Michael Melnick, Julie DeCecco, Michael P. Abramovitz, Lisa K. Rady, and Jonathan Schwartz will and hereby do move the Court, pursuant to Federal Rule of Civil Procedure 12(b)(6) and/or the Court's inherent power, to dismiss Plaintiff's Complaint for Compensatory Damages, Disgorgement of Profits, Injunctive Relief and Attorneys' Fees and Costs for Direct, Contributory and Vicarious Copyright Infringement Under 17 U.S.C. Section 101 *et seq.* (the "*Yue* Complaint"), on the ground that it is duplicative of the earlier-filed case of *Netbula, LLC v. Storage Technology Corp.*, Case No. C-06-07391-MJJ (N.D. Cal.). This motion is currently set to be heard at 9:30 a.m. on March 4, 2008 in Department 11 of the above Court before the Honorable Martin J. Jenkins. Sun's motion is based upon this Notice and Motion and the accompanying Memorandum of Points and Authorities, the pleadings and other papers on file with the Court in this matter and the related cases of *Netbula, LLC v. Storage Technology Corp.*, Case No. C-06-07391-MJJ (N.D. Cal.) and *Netbula, LLC v. BindView Development Corp.*, Case No. 06-0711-MJJ-WDB (N.D. Cal.), and such further argument and evidence as may be presented at or before the hearing.

1    **MEMORANDUM OF POINTS AND AUTHORITIES**

2    **I.    INTRODUCTION**

3         This copyright action filed by Plaintiff Dongxiao Yue ("Yue" or "Plaintiff") is identical to

4    the earlier-filed copyright claims he initiated on behalf of his company, Netbula, LLC

5    ("Netbula"),[1] in every material respect:

6    - It alleges infringement of the same software, Netbula's PowerRPC product, in
         both runtime versions of components and a software development kit (SDK);

7

8    - It alleges that Defendants Storage Technology Corporation ("StorageTek") and
         Sun Microsystems, Inc. ("Sun") infringed copyrights in PowerRPC by use
9        purportedly beyond the terms of two license agreements entered into between
         StorageTek and Netbula;

10   - It recites the same communications between Netbula and StorageTek/Sun
         representatives as "evidence" of the infringement;
11

12   - It seeks identical relief under the Copyright Act based on the same conduct of
         Defendants.

13   This follow-on action quite plainly arises from the same transactional nucleus of facts and

14   involves the same parties or their privies.

15        Dr. Yue (and/or Netbula) is not entitled to sue on the same causes of action multiple

16   times; whatever claims he wishes to pursue had to be pursued only in the first action.  Under well-

17   established authority, recently-reaffirmed by the Ninth Circuit, this duplicative action is subject to

18   dismissal with prejudice.  Indeed, this Court has already determined as a matter of law that

19   StorageTek and Sun's license precludes a claim that their use of the PowerRPC product

20   constitutes copyright infringement.  Dr. Yue is not entitled to a "do-over" with respect to this

21   finding by now recasting claims he brought through Netbula as his own personal ones.

22        Dr. Yue may argue that his second action is different because he brings it in his individual

23   capacity, asserts different copyrights in the same software, and/or adds additional defendants.  He

24   is wrong.  These supposed distinctions make no difference.  The additional facts and theories of

25   liability asserted in this action could have (and should have) been brought, if at all, in the earlier

26   action.  Furthermore, the record conclusively establishes that Dr. Yue—as the sole employee and

27

28   _____
     [1] *See Netbula, LLC v. Storage Technology Corp.*, Case No. 06-07391-MJJ (N.D. Cal.).

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

1  owner controlling Netbula—is Netbula's privy, bound by the proceedings in the *Netbula v. Sun*

2  action.  The record also conclusively establishes that the additional defendants named in this

3  action—employees or officers of Sun and/or StorageTek—are in privity with their employer,

4  entitled to the same license defense, and cannot now be sued in a separate lawsuit for the same

5  alleged acts.

6       Shortly before initiating this lawsuit, Dr. Yue sought a stipulation to allow him to replace

7  Netbula as party-plaintiff of the earlier-filed action and to amend the prior complaint to include

8  additional claims.  Defendants refused, pointing out that amendment at that late date, ten months

9  after the lawsuit was filed, and when a dispositive motion was already pending, was untimely and

10  inappropriate.  To the extent that Netbula or Dr. Yue disagreed, they did not, however, move for

11  leave to amend, as is the appropriate means to join additional claims arising from the same

12  transaction or occurrence.  Instead, Dr. Yue started this new action, attempting to sidestep the

13  adverse results in the prior proceeding.  Dr. Yue's duplicative action is an improper attempt to

14  evade procedural rules and the orders of the Court.  It should be dismissed with prejudice.

15  **II.  STATEMENT OF ISSUE PRESENTED**

16       Should Plaintiff's present lawsuit, which duplicates the copyright claims raised and

17  rejected by this Court in his company's prior lawsuit against Sun and StorageTek, be dismissed

18  with prejudice in its enitirety?

19  **III.  FACTUAL BACKGROUND**[2]

20  **A.  The Lawsuit Filed in the Name of Netbula, LLC.**

21  On December 4, 2006, Netbula filed a complaint against StorageTek[3] and Sun

22

23  [2] Defendants request judicial notice of the records in the related cases of *Netbula, LLC v. Storage Technology Corp.*, Case No. 06-07391-MJJ (N.D. Cal.), and *Netbula, LLC v. BindView*

24  *Development Corp.*, Case No. 06-0711-MJJ-WDB (N.D. Cal.).  These cases will be referred to as the *Netbula-Sun* and *Netbula-BindView* cases, respectively.  A court may take judicial notice of

25  its own records or those of other courts.  *See, e.g., Mullis v. United States Bank. Ct.*, 828 F.2d 1385, 1388 n.9 (9th Cir. 1987)); *see also W. Coast Home Builders, Inc. v. Aventis Cropscience*

26  *USA, Inc.*, Case No. 04-02225-SI, 2006 U.S. Dist. LEXIS 48021, at *2 n.5 (N.D. Cal. July 6, 2006) ("Plaintiff contends that the Court should not take judicial notice of Mr. Rosenzweig's

27  deposition testimony because that testimony was filed under seal in the *Ashland* case. However, in light of the fact that the instant litigation is, in effect, 'part two' of the *Ashland* case, the Court

28  takes judicial notice of Mr. Rosenzweig's deposition testimony.").

Microsystems, Inc. ("Sun") alleging copyright infringement (as well as various state law claims). *See Netbula-Sun* Docket No. 1 [Complaint ("*Netbula-Sun* Complaint")]. The same day Netbula also filed an application for a temporary restraining order, preliminary injunction, and for impoundment of allegedly infringing materials. *Netbula-Sun* Docket No. 2 [Application for Temporary Restraining Order]. The crux of that complaint was that StorageTek and Sun (which had acquired StorageTek), after having licensed Netbula's PowerRPC components and SDK for inclusion in StorageTek products, allegedly committed copyright infringement by distributing more copies and for different platforms than permitted by the terms of two license agreements. *See Netbula-Sun* Complaint ¶¶ 17, 28, 35, 58-83.

Magistrate Judge Zimmerman heard argument on Netbula's application for preliminary relief on December 5, 2006. Defendants argued that, even assuming that they owed royalties for copies made under the license agreements, this could not give rise to a claim of copyright infringement. At that hearing, Magistrate Judge Zimmerman expressed doubt about Netbula's claims in the face of Defendants' license defense. *See Netbula-Sun* Docket No. 18 [Reporter's Transcript of Proceedings Held December 5, 2006, at p.25:6-8 ("I don't quite understand . . . . This agreement says that they can go up to any number of copies as long as they're willing to pay.")]. Netbula ultimately withdrew its motion in the face of the Court's skepticism regarding its merits. *See id.* at p.30:25-31:5.

Netbula filed its First Amended Complaint ("*Netbula-Sun* FAC") on December 18, 2006,

---

[3] As a formal matter, named Defendant Storage Technology Corporation ("StorageTek"), formerly a Delaware corporation, no longer has a separate corporate existence. On December 22, 2006, Sun filed with the Delaware Secretary of State a "Certificate of Ownership and Merger Merging Storage Technology Corporation Into Sun Microsystems, Inc.," pursuant to which StorageTek was merged into Sun effective January 1, 2007 and at which point it ceased to exist as a separate corporation. *See Netbula-Sun,* Docket No. 118 [Declaration of Julie DeCecco in Support of Reply Regarding Motion for Summary Judgment ¶ 6 & Ex. E]. Under Federal Rule of Civil Procedure 17(b) and Delaware Corporations Code Section 259, StorageTek lacks capacity to be sued. *See, e.g., Sevits v. McKiernan-Terry Corp.*, 264 F. Supp. 810, 811-12 (S.D.N.Y. 1966) (granting motion to dismiss complaint against corporate defendant and quashing service of process against it where documentary evidence showed that corporation had merged into another corporation under Delaware law); *Damon Alarm Corp. v. American Dist. Tel. Co.*, 304 F. Supp 83, 84 (S.D.N.Y. 1969); *Beals v. Washington Int'l, Inc.*, 386 A.2d 1156-1161-62 (Del. Ch. 1978). To the extent plaintiff asserts claims against StorageTek as a division of Sun, Sun brings this motion to dispose of such claims.

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

adding as defendants four StorageTek customers. *See Netbula-Sun* Docket No. 15. The Complaint also purported to assert claims against 100 "Doe" defendants. *Id.*

The Initial Case Management Conference was held on May 8, 2007. *See Netbula-Sun* Docket No. 50 [Minute Entry re Initial Case Management Conference]. In the parties' Joint CMC Statement, Defendants argued that Netbula's copyright claims could be disposed of in their entirety based on the fact that Netbula had granted Defendants a license to use PowerRPC and requested that discovery be conducted in phases, with discovery in the first phase limited to the license defense. *See Netbula-Sun* Docket No. 44. At the Case Management Conference, the Court agreed, ordering the parties initially to focus on Defendants' license defense. *See Netbula-Sun* Docket No. 51 [Pretrial Order]. The Pretrial Order further directed that non-expert discovery in the first phase of the case was to close on August 31, 2007, and it set a last day to hear dispositive motions that effectively established an October 23 deadline for filing dispositive motions. *See id.* Defendants filed their motion for summary judgment that day. *See Netbula-Sun* Docket Nos. 63-67.

On October 1, 2007, over a month after the scheduled close of fact discovery, and shortly before the summary judgment filing deadline, Netbula filed a motion seeking to substitute Dr. Yue, who desired to appear *pro se*, as the party-plaintiff for Netbula's copyright claims. *See Netbula-Sun* Docket No. 56 [Motion to Substitute Party]. This motion was based on Netbula's purported assignment to Dr. Yue (by and through its "President," also Dr. Yue) of all of Netbula's copyright registrations in its PowerRPC product, as well as all past and future claims of infringement thereon. *See id.* The purported assignment had been signed on September 26, 2007. *See Yue-Sun* FAC ¶ 3 & Ex. C. When, at the November 20 hearing on this motion, Netbula's counsel admitted that this assignment was motivated at least in part by Dr. Yue's desire to pursue Netbula's infringement claims *pro se*, *see Netbula-Sun* Docket No. 139 [Transcript of Proceedings Held November 20, 2007 at p.11:9-10], the Court denied the motion to substitute without prejudice, as a violation of the requirement that a fictitious entity appear only through counsel. *See Netbula-Sun* Docket No. 111 [Minute Entry re Motion Hearing].

Before the Court had even decided the substitution motion, Dr. Yue had already pursued

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

1    an alternative way to participate individually in the *Netbula-Sun* action.  On October 22, 2007,

2    one day before the deadline for filing dispositive motions, Dr. Yue filed a *pro se* "Motion to

3    Intervene and Join as Plaintiff, for Injunctive Relief, and for Copyright Impoundment."  *Netbula-*

4    *Sun* Docket No. 68.  This motion was again brought on the basis of Dr. Yue's assignment of

5    Netbula's copyrights to himself, but otherwise regurgitated much of the argument from Netbula's

6    application for a temporary restraining order, which had been abandoned more than ten months

7    before.  *See id*.  The Court ordered Dr. Yue's motion taken off calendar pending further

8    developments in the *Netbula-Sun* Litigation, including the dispositive motion that the Court had

9    scheduled over five months earlier.  *Netbula-Sun* Docket No. 94 [Order on Various

10   Administrative Matters].

11       Defendants' motion for summary judgment on Netbula's copyright claim was heard on

12   December 14, 2007, and was granted in full in an order dated January 17, 2008.  *See Netbula-Sun*

13   Docket No. 138 [Order Granting Summary Judgment Motion as to Copyright Claim (determining

14   that Defendants' use of Netbula's software was within the scope of the license agreements

15   entered into between Netbula and StorageTek, precluding claims for copyright infringement)].

16       Dr. Yue personally initiated, controlled, directed, and oversaw (in Netbula's name) the

17   proceedings leading to the Court's entry of summary judgment on the license defense.  Dr. Yue is

18   Netbula's founder, owner and only employee.  *See Yue-Sun* FAC ¶ 1; *Netbula-BindView* Docket

19   No. 257 [Joint Statement of Undisputed Facts for Defendants' Motion for Summary Judgment

20   ("Joint Statement") at p.1:15-16].  Though he refers to himself by many different titles (including

21   President, Chief Office of Sales and Marketing, and Vice President of Sales), Netbula's counsel

22   in the *Netbula-Sun* Litigation admitted what is obvious:  Dr. Yue "essentially, is Netbula."  *See*

23   Joint Statement at p.1:16-18; *Netbula-Sun* Docket No. 139 [Transcript of Proceedings Held

24   November 20, 2007 at p.10:24-25].[4]  All of the non-attorney declarations filed by Netbula in that

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

---

[4] *See also Netbula-BindView* Docket No. 221-2 [Exhibit A to Declaration of Jedediah Wakefield in Support of Defendants' Motion for Summary Judgment (Deposition of Dongxiao Yue (June 27, 2007) at p.59:15-18 (A:  "I'm everything.  I'm chief Netbula."  Q:  "So you're the owner of the company?"  A:  "That's correct."); *see also id.* at p.79:19-25 ("Since I'm the owner of the company, I licensed the source code to the company.")).

1    action (as well as the earlier *Netbula-BindView* Litigation) were by Dr. Yue.[5]

2        Dr. Yue personally sought a stipulation from Defendants' counsel in the *Netbula-Sun*

3    Litigation (after Defendants had already filed their motion for summary judgment) allowing him

4    to be named party-plaintiff in that case and to file additional claims by amendment.  *See Netbula-*

5    *Sun* Docket No. 91 [Intervenor Dongxiao Yue's Opposition to Defendants' Motion for

6    Administrative Relief to Vacate Hearing at p.4:10-18 ("Dr. Yue informed Mr. Pulgram defense

7    counsel, that he was ready to file a separate action . . . .  For judicial economy, he asked Mr.

8    Pulgram for a stipulation to allow Dr. Yue to substitute Netbula *as to the copyright claim* and

9    amend the complaint in the instant action." (emphasis in original)); *Netbula-Sun* Docket No. 99

10   [Declaration of Dongxiao Yue in Support of Plaintiff's Motion to Substitute Party as to the

11   Copyright Claim ¶ 13 & Ex. C (attaching communications); *see also* Declaration of Albert L.

12   Sieber in Support of Motion to Dismiss ("Sieber Decl.") ¶ 4 & Ex. C (attaching communications

13   for Court's convenience).  When Defendants stated that they would not stipulate to an amendment

14   at that time, *see* Sieber Decl. Ex C, no motion, much less a timely one, was made to amend that

15   complaint.

16   **B.    The Present, Duplicative Lawsuit Filed in the Name of Netbula's Owner,**
         **Dongxiao Yue.**

17

18       Instead of seeking to amend the *Netbula-Sun* complaint, on November 19, 2007—a day

19   before the hearing on the motion to substitute Dr. Yue in the *Netbula-Sun* case, and a month after

20   the Court-ordered deadline for filing summary judgment motions on the license defense—Dr.

21   Yue filed the instant action on a *pro se* basis, again alleging copyright infringement against Sun

22   and StorageTek.  *Yue-Sun* Docket No. 1.  On December 10, Dr. Yue amended this complaint to

23   add five current and/or former StorageTek/Sun officers or employees (the "*Yue-Sun* FAC").  *Yue-*

24   _____

25   [5] *See, e.g.*, *Netbula-BindView* Docket No. 238 [Don Yue's Declaration in Opposition to
     Defendants' Motions for Summary Judgment]; *Netbula-Sun* Docket No. 102 [Declaration of

26   Dongxiao Yue in Opposition to Defendants' Motion for Summary Judgment]. Dr. Yue was also
     deposed by Sun during the *Netbula-Sun* Litigation, and Dr. Yue was present at both of the

27   depositions of Sun witnesses taken by Netbula.  *See Netbula-Sun* Docket No. 102 [Declaration of
     Dongxiao Yue in Opposition to Defendants' Motion for Summary Judgment ¶¶ 4, 86]; *Netbula-*

28   *Sun* Docket No. 107 Ex. 44 [30(b)(6) Deposition of Michael Abramovitz (Oct. 23, 2007), at p.3].

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

1  *Sun* Docket No. 9.  His FAC was in large part a rehash of materials filed in the *Netbula-Sun* case,

2  and the crux of the lawsuit was identical:  basing his claims on Netbula's assignment of its claims

3  to Dr. Yue, he asserts that StorageTek and Sun (by and through certain named employees)

4  infringed various copyrights in Netbula's PowerRPC product when StorageTek and later Sun

5  allegedly violated the terms of the same two license agreements with Netbula.  *See generally*

6  Section IV.A.1, *infra*.

7        The only wrinkle in this successive action was Dr. Yue's assertion that StorageTek and

8  Sun's use of Netbula's PowerRPC software infringed two newly-identified copyright registrations

9  owned by Netbula—whereas Netbula had asserted for the first year of the litigation that the same

10  conduct infringed a different Netbula registration.  *See* Sun-Yue FAC ¶ 2 & Exs. A-B.  Dr. Yue

11  also claims infringement of "the copyrights in unpublished works Plaintiff created before July

12  1996, with pending copyright registration at the U.S. Copyright Office."  *See id.* ¶ 4.  In short, Dr.

13  Yue now takes the position that the same PowerRPC software he sued on in the *Netbula-Sun* case

14  is actually derivative of these alleged earlier works he owned personally, giving rise to separate

15  claims for infringement of the same software.  *See id.* ¶ 15.

16        On January 28, 2008, Elena Rivkin of the Rivkin Legal Group filed a notice of

17  substitution to begin representing Dr. Yue in this litigation.  *Sun-Yue* Docket No. 34.[6]

18  **IV.**    **ARGUMENT**

19        Dr. Yue and his wholly-owned company are entitled to pursue only one action on the

20  same claims.  That action, like any other, could be subject to amendment or joinder if timely

21  motions were made and if diligence and good cause were shown.  But that action may only be

22  pursued in accordance with applicable rules, with respect for the decisions of the Court, and

23  without duplication or multiplication of the proceedings. Because Dr. Yue attempts exactly to

24

25  [6] Because Ms. Rivkin has indicated that she will be representing Dr. Yue in this litigation, Sun does not now raise the issue of Dr. Yue's ability to prosecute claims that originally belonged to

26  Netbula.  There is substantially authority that he cannot, at least not on a *pro se* basis.  *See United States v. High Country Broadcasting Co.*, 3 F.3d 1244 (9th Cir. 1993); *Bell v. South Bay*

27  *European Corp.*, 486 F. Supp. 2d 257 (S.D.N.Y. 2007) (conditionally dismissing complaint brought by individual where claims were assigned to him by a trust before filing of the

28  complaint).  Sun reserves the right to revisit this issue if this motion to dismiss is denied.

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

1    circumvent the result in the prior action, this case should be dismissed with prejudice.

2      **A.**  <u>**The Court Has Broad Authority to Dismiss Complaints That Are Duplicative**</u>

3         <u>**of Earlier-Filed Lawsuits.**</u>

4       The Ninth Circuit recently reaffirmed and clarified the scope of district courts' authority

5    to dismiss actions that are duplicative of earlier filed actions.  *See Adams v. Cal. Dep't of Health*

6    *Servs.*, 487 F.3d 684 (9th Cir. 2007).  Whether an action is duplicative depends on an examination

7    of two factors:  (1) whether causes of action and relief sought are the same; and (2) whether the

8    parties in the successive action are in privity.  *See id.* at 688-89.  After determining that an action

9    is duplicative, a district court has three options:  (i) dismiss the later-filed action, with or without

10   prejudice; (ii) stay the later-filed action; or (iii) consolidate both actions.  *See id.* at 688, 692.  The

11   circumstances here overwhelmingly support a finding that the *Netbula-Sun* Litigation and the

12   *Yue-Sun* Litigation are duplicative, and that this action should be dismissed with prejudice.  *See*

13   *id.* at 693 (affirming dismissal with prejudice of later-filed duplicative complaint).[7]

14      Significantly, the earlier-filed action need not be reduced to final judgment in order to

15   dismiss the later-filed complaint.  Rather, faced with successive, apparently duplicative lawsuits,

16   district courts are "required . . . to *assume* that the first suit was final, and then determine whether

17   the second suit should be precluded."  *Single Chip Systems Corp. v. Intermec IP Corp.*, 459 F.

18   Supp. 2d 1052, 1059 (S.D. Cal. 2007) (emphasis in original); *see generally id.* at 1059-61

19   (collecting and reviewing cases, including *Adams*, in determining that no final judgment

20   necessary for dismissal of duplicative action).  In that circumstance, as here, the earlier-filed case

21   proceeds as the sole action in play, unaffected by the duplicative action's dismissal.

22     **1.**  **The First Factor Relevant to Duplicativeness—Whether the Causes of**

23        **Action and Relief Are the Same—Is Easily Met Here.**

24      The Ninth Circuit has adopted a transactional approach to determining whether causes of

26   ---

[7] Indeed, authority to dismiss duplicative lawsuits is sufficiently broad that the court *sua sponte*

27   may issue an order to show cause why the later-filed action should not be dismissed.  This is
exactly what occurred at the district-court level in *Adams*, before the order dismissing the action

28   with prejudice was affirmed by the Ninth Circuit.  *See* Sieber Decl. ¶ 2 & Ex. A (attaching e-filed
version of district court order dismissing *Adams* complaint).

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

1    action in successive lawsuits are the same. "'Whether two events are part of the same transaction

2    or series depends on whether they are related to the same set of facts and whether they could be

3    conveniently tied together.'" *Adams*, 487 F.3d at 689 (quoting *Western Sys., Inc. v. Ulloa*, 958

4    F.2d 864, 871 (9th Cir. 1992)).  Stated more simply, "where the two suits derive from the same

5    facts from the same time period, the same cause of action would be found." *Single Chip*, 459 F.

6    Supp. 2d at 1061 (citing *Durney v. Wavecrest Labs, LLC*, 441 F. Supp. 2d 1055, 1060 (N.D. Cal.

7    2005)).

8         This analysis, in turn, depends on an examination of four criteria:

9         (1) whether rights or interests established in the prior judgment would be
          destroyed or impaired by prosecution of the second action; (2) whether
10        substantially the same evidence is presented in the two actions; (3) whether the
          two suits involve infringement of the same right; and (4) whether the two suits
11        arise out of the same transactional nucleus of facts.

12   *Id.* (quoting *Costantini v. Trans World Airlines*, 681 F.2d 1199, 1201-02 (9th Cir. 1992)).  It is the

13   last criteria—whether the two suits arise out of the same transactional nucleus of facts—that is the

14   most important, *see id.*, and for that reason it will be discussed first.

15        There can be no legitimate dispute that this action arises from the same nucleus of facts as

16   the *Netbula-Sun* Litigation.  Both cases allege infringement of the same product licensed by

17   Netbula, referred to in the complaints as PowerRPC.  *Compare, e.g.*, *Netbula-Sun* FAC ¶ 14 *with*

18   *Yue-Sun* FAC ¶¶ 13, 17  Both allege infringement of both "parts" of the PowerRPC product, the

19   Software Development Kit and the runtime software, each of which require the licensee to

20   purchase a separate license.  *Compare Netbula-Sun* FAC ¶¶ 18-19 *with Yue-Sun* FAC ¶¶ 18, 22.

21   Both allege that StorageTek and/or Sun violated the terms of two license agreements entered into

22   between Netbula and Sun, one in 2000 and the other in 2004, by the same sale of the same

23   products embedding the same PowerRPC software.  *Compare, e.g.*, *Netbula-Sun* FAC ¶¶ 32, 39,

24   73-77 *with Yue-Sun* FAC ¶¶ 30, 44, 84-86, 88-90, 94-95, 98, 101-03, 108.  Understandably, since

25   they challenge exactly the same conduct, both refer to many of the same communications

26   between StorageTek/Sun and Netbula.  *Compare, e.g.*, *Netbula-Sun* FAC ¶¶ 35 (describing June

27   2001 e-mail from Mr. Melnick), 36 (describing September 2002 e-mail from Mr. Melnick) *with*

28   *Yue-Sun* FAC ¶¶ 38 describing June 2001 e-mail from Mr. Melnick), 39 (describing September

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

1  2002 e-mail from Mr. Melnick).

2       The similarity between the two cases is probably best illuminated by comparing Dr. Yue's

3  declaration in opposition to Defendants' motion for summary judgment in the *Netbula-Sun* case

4  with the complaint in the *Yue-Sun* action.  *Compare generally Netbula-Sun* Docket No. 102

5  [Declaration of Dongxiao Yue in Support of Opposition to Defendants' Motion for Summary

6  Judgment] *with Yue-Sun* FAC.  They are substantially identical – indeed, often verbatim:

| **Yue-Sun FAC** | **Declaration of Dongxiao Yue in Support of Netbula's Opposition to Defendants' Motion for Summary Judgment** |
|---|---|
| ¶ 24.  On February 7, 2000, Michael Melnick of StorageTek emailed Netbula, inquiring about "the purchase of 8 developer licenses" and "a limited application distribution agreement." | ¶ 19.  On February 7, 2000, Michael Melnick of StorageTek emailed Netbula, inquiring about "the purchase of 8 developer licenses" and "a limited application distribution agreement." . . . . |
| ¶ 26.  In February 2000, the 20-pak, which granted a customer the right to make 20 copies of the runtime software, cost about $1000. | ¶ 21.  In February 2000, the 20-pak, which granted a customer the right to make 20 copies of the runtime software, was priced at $1000. . . . . |
| ¶ 36.  In May 2001, Netbula sent a license usage audit request to StorageTek. | ¶ 42.  In May 2001, Netbula sent a license usage audit request to StorageTek. |
| ¶ 37.  On June 21, 2001, Tracy Gagnon, Program Manager of the Backup & Recovery Software at StorageTek, sent an email to Mr. Melnick with the subject title "Netbula License Report for Audit 06/21 — REELNT Product". She wrote:<br><br>Enclosed are the Netbula licenses for the REELNT product I am showing to date. I arrived at these numbers by going through the history report from SCH. I am not sure if I have caught all the data points... | ¶ 43.  On June 21, 2001, Tracy Gagnon, whose signature identifies her as "Program Manager, Backup & Recovery Software", sent an email to Mr. Melnick with the subject title "Netbula License Report for Audit 06/21 — REELNT Product":<br><br>Enclosed are the Netbula licenses for the REELNT product I am showing to date. I arrived at these numbers by going through the history report from SCH. I am not sure if I have caught all the data points...<br><br>. . . . |
| ¶ 38.  On June 22, 2001, Mike Melnick responded to Netbula's audit request via email, stating:<br><br>The license count you request is 107, this leaves us the rights to distribute 893 . . . .<br><br>. . . . | ¶ 44.  On June 22, 2001, Michael Melnick responded to Netbula's audit request via email, stating,<br><br>The license agreements requires [sic] us to provide the number of licenses distributed... The license count you request is 107, this leaves us the rights to distribute 893. . .<br><br>. . . . |

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

| ¶ 39.    On September 9, 2002, responding to another audit request, Mike Melnick sent an email stating that StorageTek ceased distributing PowerRPC in 2002. Mr. Melnick wrote:<br><br>We no longer distribute the runtimes with our products. Our count remains the same as provided to you in June of 01. | ¶ 45.    Attached **Exhibit 16** (Melnick, Ex. 26) is a true copy of an email message Michael Melnick sent Netbula on September 9, 2002, stating that StorageTek ceased distributing Netbula RPC. Mr. Melnick wrote:<br><br>Jon, We no longer distribute the runtimes with our products. Our count remains the same as provided to you in June of 01. |
|---|---|
| ¶ 41.    After the above internal discussion, Mr. Melnick sent an email to Netbula, stating:<br><br>Could you provide me with the StorageTek sales representative or if possible give me a quote on distributing an additional 1000 units of RPC? The platform used will need to be Windows 2003.<br><br>. . . . | ¶ 51.    After the above internal discussion, Mr. Melnick sent an email to Netbula on March 2, 2004 at 3:29 PM, stating:<br><br>Could you provide me with the StorageTek sales representative or if possible give me a quote on distributing an additional 1000 units of RPC? The platform used will need to be Windows 2003.<br><br>. . . . |
| ¶ 44.    Netbula and StorageTek signed a second license agreement (the "2004 Agreement") in March 2004. Because StorageTek previously represented that it only used 107 licenses out of the 1000 licenses purchased (thus with 893 licenses wasted). Netbula gave StorageTek price much lower than the standard pricing at the time. | ¶ 54.    Because StorageTek previously represented that it only used 107 licenses out of the 1000 licenses purchased (thus with 893 licenses wasted) and ceased distributing the product, and because Mr. Melnick did not inform Netbula that StorageTek had in fact been distributing Netbula RPC from 2000 to 2004 and had in fact exceeded the purchased license count, Netbula gave StorageTek a price much lower than the standard pricing at the time. |
| ¶ 50.    On October 25, 2004, Michael Abramovitz, an engineer involved in the development of REEL and LibAttach software, sent an email to Netbula, stating that StorageTek bundled PowerRPC into several StorageTek products. On the same day, Netbula emailed StorageTek requesting a license usage report. StorageTek did not provide any report for this request. | ¶ 60.    On October 25, 2004, Michael Abramovitz . . . sent an email to Netbula, stating: "We bundle your PowerRPC into several of our products." On the same day, Netbula emailed Mr. Melnick, requesting a license usage report: "As we understand, several StorageTek applications are using Netbula RPC... Could you please do audit of the RPC license usage and fill in the attached audit form?" StorageTek did not provide any report for this request. |
| ¶ 51.    On June 15, 2005, Netbula emailed StorageTek again for an audit of license usage and inquired about the impending SUN- StorageTek merger. Mr. Melnick responded:<br><br>As for Sun, it should be completed by the end of summer... The only thing that you and I may have to do is for you to | ¶ 61.    In June 2005, Netbula noticed the news about SUN'S planned acquisition of StorageTek. On June 15, 2005, Netbula emailed StorageTek again for an audit of license usage and inquired about the impending SUN- StorageTek merger. Mr. Melnick responded:<br><br>As for Sun, it should be completed by |

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

| | |
|---|---|
| allow assignment of the agreement to Sun. The agreements calls [sic] for your approval. I assume you would sallow [sic] this as if you did not the agreement would be terminated. | the end of summer... The only thing that you and I may have to do is for you to allow assignment of the agreement to Sun. The agreements calls [sic] for your approval. I assume you would sallow [sic] this as if you did not the agreement would be terminated.<br><br>. . . . |

These similarities are just the tip of the iceberg.  *See* Appendix A to Motion to Dismiss

Complaint (attached).  ***These two pleadings show that the facts on which Dr. Yue purports to***

***rely to state a claim for infringement are almost wholly the same facts Netbula relied on in***

***(unsuccessfully) trying to defeat summary judgment.***  It is difficult to imagine a more

compelling example of duplicative litigation.

Of course, there are some slight differences between the two actions.  None, however,

changes the result.  Specifically, it makes no difference that Dr. Yue alleges infringement of

different copyright registrations allegedly existing in the same software.  *Compare Netbula-Sun*

FAC ¶ 21 & Ex. A *with Yue-Sun* FAC ¶¶ 2 & Exs. A-B.  The alleged infringement in both cases

is the same:  StorageTek and Sun's alleged use of the same PowerRPC software in violation of

the 2000 and 2004 license agreements.  In *Fantasy, Inc. v. LaFace Records*, 1998 U.S. Dist.

LEXIS 20931 (E.D. Cal. 1998), for example, the court held that a later-filed suit alleging

common-law copyright violations was duplicative of an earlier case alleging federal copyright

violations:  "[B]oth suits [were brought] to vindicate [Plaintiff's] economic right to compensation

for defendants' use" of the plaintiff's copyrighted song.  *Id.* at *12.  The identical analysis applies

here:  both suits seek copyright damages for precisely the same allegedly unlicensed use of the

PowerRPC software.  And, of course, the defense that the software was licensed equally disposes

of both suits, regardless of which registration in the same licensed software is invoked.

Any alleged infringement of these additional copyright registrations could have and

should have been brought, if at all, in the *Netbula-Sun* Litigation.  The test for duplicativeness

requires a court to consider not only the issues actually raised in the first litigation, but also

"'issues that should have been brought.'"  *Adams*, 487 F.3d at 689 (quoting *Curtis v. Citibank*,

-12-   CASE NO. C-07-05850-MJJ

*N.A.*, 226 F.3d 133, 139-40 (2d Cir. 2000)).  Netbula (not Dr. Yue) was named as the original author of both of the works in the additional copyright registrations.  *See Yue-Sun* FAC Exs. A-B (listing Netbula as author of copyrights asserted in *Sun-Yue* Litigation).  Moreover, the registration for the first of these copyrights—which Dr. Yue refers to as the "00-SDK copyright"—issued on October 3, 2006, almost two months *before* Netbula filed its original complaint in the *Netbula-Sun* Litigation.  *See id.* ¶ 2 & Ex. A.  The second registration—for what Dr. Yue refers to as the "2K4 [2004] copyright"—issued on December 15, 2006, *before* Netbula filed its First Amended Complaint.  *See id.* ¶ 2 & Ex. B.  Netbula could have but did not seek leave to amend its complaint to add these additional registrations at any time over the first ten months of its litigation.  Instead, it let the litigation proceed, through the close of discovery and through summary judgment on the license defense, without ever doing so.  Dr. Yue cannot now decide he wants to raise them in a separate action addressing the same conduct, and same licenses, of the same Defendants.  *See* Section IV.A.2.a, *infra*.

Dr. Yue also has now added a claim for infringement of "the copyrights in unpublished works Plaintiff created before July 1996, with pending copyright registration at the U.S. Copyright Office."  *See* FAC ¶ 4.  Dr. Yue claims he will own these "pending registrations" personally, and wants to take the position that PowerRPC is actually derivative of these alleged earlier, unpublished drafts that he claims he never conveyed to Netbula.  *See id.* ¶ 15.  Of course, none of the Netbula registrations for PowerRPC asserted in this case, or the *Netbula-Sun* Litigation, identify PowerRPC as derived from pre-existing works owned by Dr. Yue.[8] Nonetheless Dr. Yue hopes to find a "Gotcha" by asserting, in separate litigation, that he has rights Netbula never acquired.

This gambit will not work; these alleged pre-July 1996 materials provide no basis for allowing this suit to proceed.  As an initial matter, actual registration—not just a pending

---

[8] Both of the registrations at issue in this litigation state that the works are derived from *Sun's* open-source software and from "Netbula PowerRPC (Registered:  TX-6-211-063)."  *See* Sun-Yue FAC ¶ 2 & Exs. A-B.  Registration TX-6-211-063, in turn, identifies only Sun's open-source software and does not indicate that it was derived from other works.  *See Netbula-Sun* FAC ¶ 21 & Ex. A.

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

1   application—is a prerequisite to filing suit.  *See, e.g.*, *Brush Creek Media, Inc. v. Boujaklian*,

2   Copy. L. Rep. (CCH) P28,499, at *5-*7 (C.D. Cal. 2002); *Ryan v. Carl Corp.*, 1998 U.S. Dist.

3   LEXIS 9012, at *8 (N.D. Cal. 1998); *Loree Rodkin Mgmt. Corp. v. Ross-Simons, Inc.*, 315 F.

4   Supp. 2d 1053, 1054-55 (C.D. Cal. 2004).

5          Moreover, even if a registration on these alleged additional copyrights had issued, this

6   action would still be duplicative.  The second suit still derives from the same transactional

7   nucleus—the exact same uses by Storage Tek and Sun of the PowerRPC products.  Dr. Yue

8   formed Netbula for the purpose of marketing and distributing the RPC software.  *See Yue-Sun*

9   FAC ¶ 3.  Indeed, Netbula's complaint alleges that ***Netbula was the holder of the exclusive***

10  ***rights in the PowerRPC product***.  *See Netbula-Sun* FAC ¶ 69 ("At all relevant times, Plaintiff

11  [Netbula] has been and still is the holder of the exclusive rights under the Copyright Act to

12  reproduce, adapt, perform, distribute, display, exhibit, and license the reproduction, adaptation,

13  performance, distribution, display, exhibition, and other use *of its RPC technology and*

14  *products . . . .*" (emphasis added)).  Furthermore, Dr. Yue testified under oath (in both his

15  individual and representative capacity) that he granted an oral license in these alleged pre-July

16  1996 works to Netbula, and no one else, that "gave Netbula all the rights to use the software for

17  creating any derivative work."  *See Netbula-BindView* Docket No. 221-2 [Exhibit A to

18  Declaration of Jedediah Wakefield in Support of Defendants' Motion for Summary Judgment

19  (Deposition of Dongxiao Yue (June 27, 2007) at p.85:14-20; *see also id.* at p.79:19-25 ("Since

20  I'm the owner of the company, I licensed the source code to the company.").  Accordingly, it is

21  beyond dispute that the Netbula license to Storage Tek and Sun included any pre-July 1996

22  unpublished materials included in the PowerRPC software; the potential for a separate copyright

23  registration does nothing to make this action any different from the *Netbula-Sun* copyright claims

24  this Court held barred by the existence of that very license.

25         Furthermore, both lawsuits seek "substantially the same relief."  *See Adams*, 487 F.3d at

26  691.  Dr. Yue, like Netbula, seeks:

27      •   Injunctive relief enjoining Defendants from further allegedly infringing uses of
            "Plaintiff's RPC technology and products," *compare Netbula-Sun* FAC Prayer
28          for Relief ¶ 7 *with Yue-Sun* FAC Prayer for Relief ¶ 3;

- Impoundment of allegedly "illegal, unlicensed copies of Plaintiff's software," *compare Netbula-Sun* FAC Prayer for Relief ¶ 8 *with Yue-Sun* FAC Prayer for Relief ¶ 4;

- Disgorgement of "any direct or indirect profits or gains . . . attributable to the infringement of the Plaintiff's copyrights," *compare Netbula-Sun* FAC Prayer for Relief ¶ 11 *with Yue-Sun* FAC Prayer for Relief ¶ 7;

- "[S]tatutory damages pursuant to 17 U.S.C. § 504(c) when . . . appropriate and desirable," *compare Netbula-Sun* FAC Prayer for Relief ¶ 12 *with Yue-Sun* FAC Prayer for Relief ¶ 8;

- "[A]n accounting of all gains, profits, and advantages realized by Defendants . . . from their unlawful conduct," including "an accounting of all usages and copies" of software received by Defendants and their "revenues and profits related thereto," *compare Netbula-Sun* FAC Prayer for Relief ¶ 15 *with Yue-Sun* FAC Prayer for Relief ¶ 9;

This virtual identity of relief further compels a finding of duplicativeness.

Finally, there is no question that the Sun's rights and interests established in the *Netbula-Sun* Litigation would be impaired by this second suit. The Court's order granting Defendants' Motion for Summary Judgment establishes that, as a result of the 2000 and 2004 licenses, StorageTek and Sun's use of Netbula's PowerRPC product does not constitute copyright infringement. *See generally Netbula-Sun* Docket No. 138 [Order Granting Motion for Summary Judgment].[9] Dr. Yue's copyright claims depend on the Court reaching the opposite result in his second action—an inconsistent ruling that would impair Defendants' interests.

### 2.    The Second Factor Relevant to Duplicativeness—Privity Among Parties—Is Also Easily Met.

Privity among successive parties is the second element used to determine whether a subsequent action is duplicative. The Ninth Circuit has "expanded the concept [of privity] to include a broad[] array of relationships which fit under the title of 'virtual representation.'" *Adams*, 487 F.3d at 691; *see also, e.g., United States v. ITT Rayonier, Inc., Inc.*, 627 F.2d 996, 1003 (9th Cir. 1980) ("[C]ourts are no longer bound by rigid definitions of parties and their privies for purposes of applying … res judicata.").

---

[9] As noted above, for the purposes of this motion, it is irrelevant that this order is not a final judgment. *See* Section IV.A, *infra*; *Single Chip Systems Corp. v. Intermec IP Corp.*, 459 F. Supp. 2d 1052, 1059-61 (S.D. Cal. 2007) (claim-splitting analysis requires a court "to *assume* that the first suit was final" (emphasis in original)).

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

1

2

**a.    Netbula and Dr. Yue – Plaintiffs in the Successive Actions –
Are in Privity.**

3     Under any definition, Dr. Yue and Netbula—the plaintiffs in the successive actions—are

4   in privity with one another.  First, it is hornbook law that an assignee is in privity with his

5   assignor.  *See, e.g.*, *Headwaters Inc. v. United States Forest Serv.*, 399 F.3d 1047, 1052-53 (9th

6   Cir. 2005) ("Privity, traditionally, arose from a limited number of legal relationships in which two

7   parties have . . . transferred rights with respect to a particular legal interest, chiefly: [among

8   others,] assignors and assignees . . . ."); *see also, e.g.*, *International Nutrition Co. v. Horphag*

9   *Research, Ltd.*, 220 F.3d 1325,  1329 (Fed. Cir. 2000) (parties are in privity when they hold

10   successive interests in same property).  This is, in part, because an assignment of claims leaves

11   the assignee in exactly the same legal position as the assignor.  *See, e.g.*, *General Battery Corp. v.*

12   *Globe-Union, Inc.*, 100 F.R.D. 258, 263 (D. Del. 1982).  This also makes perfect sense, as

13   without such a rule, parties (like Sun) might be forced to defend against successive lawsuits

14   asserting the same claims and covering the same transactions due to the procedural device of

15   assignment.

16     This rule dispositively establishes privity between Netbula and Dr. Yue.  As set forth in

17   the FAC, on September 26, 2007, Netbula (by and through its "President," Dr. Yue) assigned all

18   of its copyrights in the PowerRPC product to Dr. Yue "by written assignment, along with all

19   accrued and prospective claims arising from infringement of those copyrights."  FAC ¶ 3 &

20   Ex. C.  Assuming the validity of the assignment,[10] Dr. Yue now stands in Netbula's shoes for the

21   purpose of infringement actions arising from the assigned copyrights, including the two

22   registrations at issue in this litigation—enjoying no greater rights than Netbula had at the time of

23   the assignment.

24     Dr. Yue and Netbula are also in privity in other ways.  As discussed above, Dr. Yue

25   "essentially, is Netbula," its founder, owner and only employee.  *See Yue Sun* FAC ¶ 1; *Netbula-*

26   *BindView* Docket No. 257 [Joint Statement of Undisputed Facts for Defendants' Motion for

27

28   [10] Should the Court permit this case to proceed, Sun reserves its right to conduct discovery
regarding this purported assignment and make any further legal argument thereupon.

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

1    Summary Judgment ("Joint Statement") at p.1:15-18]; *Netbula-Sun* Docket No. 139 [Transcript

2    of Proceedings Held November 20, 2007 at p.10:24-25].[11]  As the principal in a one-man shop,

3    Dr. Yue controlled all aspects of the *Netbula-Sun* case; indeed, all of the non-attorney

4    declarations filed by Netbula in that action (as well as the earlier *Netbula-BindView* Litigation)

5    were written by Dr. Yue.  *See, e.g.*, *Netbula-BindView* Docket No. 238 [Don Yue's Declaration in

6    Opposition to Defendants' Motions for Summary Judgment]; *Netbula-Sun* Docket No. 102

7    [Declaration of Dongxiao Yue in Opposition to Defendants' Motion for Summary Judgment].[12]

8         Dr. Yue's ownership and control of Netbula, as well as his direction and participation of

9    the *Netbula-Sun* Litigation, establish privity.  For example, in *Kreager v. General Electric Co.*,

10    497 F.2d 468 (2d Cir. 1974), the court affirmed the dismissal of a complaint brought by the

11    president and sole shareholder of the corporate defendant in an earlier-filed action.  *Id.* at 470.

12    The court noted that although the corporate owner was "not denominated a party, [he]

13    participated in and effectively controlled the first action. He was present in court throughout the

14    trial, attended conferences in chambers and was the corporation's principal witness." *Id.* at 472.

15    Because the individual "had an identity of interest" with his company, he was bound by the

16    earlier litigation by his company.  *Id.*

17         The Ninth Circuit has adopted this approach as well, holding that "[w]hen a person owns

18    most or all of the shares in a corporation and controls the affairs of the corporation, it is presumed

19    that in any litigation involving that corporation, the individual has sufficient commonality of

20    interest" to find privity.  *See In re Gottheiner*, 703 F.2d 1136, 1139-40 (9th Cir. 1983) (affirming

21    dismissal of claim brought by sole shareholder of company that had brought an earlier lawsuit,

22

23    _____
     [11] Not surprisingly, Dr. Yue identified Netbula as an entity with an interest in the outcome of his
     lawsuit.  *See Yue-Sun* Docket No. 2 [Certification of Interested Parties and Entities].

24    [12] Dr. Yue was designated as the 30(b)(6) witness on all topics by Netbula and deposed by Sun
     during the *Netbula-Sun* Litigation, and Dr. Yue was present at both of the depositions of Sun

25    witnesses taken by Netbula.  *See Netbula-Sun* Docket No. 102 [Declaration of Dongxiao Yue in
     Opposition to Defendants' Motion for Summary Judgment ¶¶ 4; 86]; *Netbula-Sun* Docket

26    No. 107 Ex. 44 [30(b)(6) Deposition of Michael Abramovitz (Oct. 23, 2007) at p.3].  He also
     claims to have drafted motions filed with the Court.  *See Netbula-Sun* Docket No. 129 [Letter to

27    Honorable Martin J. Jenkins Regarding Motion for Summary Judgment and Relating Cases at p.1
     ("In the *Netbula v. BindView* case, I drafted the oppositions to BindView defendants' 12(b)(6)

28    and 12(b)(2) motions to dismiss a few days before the due date.")].

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

1  even *without* evidence that the shareholder had "actually controlled the prior litigation and had a

2  direct financial interest in the outcome of that lawsuit"); *see also Irwin v. Mascott*, 370 F.3d 924,

3  929 (9th Cir. 2004) (favorably citing *Gottheiner* for the proposition that a "close relationship

4  between the named party and the non-party supports a finding of virtual representation" and thus

5  sufficient privity).

6              **b.      Defendants in the Successive Actions Are Also in Privity.**

7              While the *Yue-Sun* FAC adds five additional individuals to the parties named in the

8  *Netbula-Sun* FAC, each of them are officers and/or employees of Sun and/or StorageTek.

9  Specifically, the FAC names as party-defendants (1) Jonathan Schwartz, Sun's Chief Executive

10  Officer and President; (2) Julie DeCecco, Sun's Assistant General Counsel, who negotiated with

11  Dr. Yue; and (3) Michael Melnick, Michael Abramovitz, and Lisa Rady, each of whom formerly

12  worked for StorageTek, is now an employee at Sun, and gave declarations in support of summary

13  judgment in the *Netbula-Sun* case.  *See, e.g.*, FAC ¶¶ 11, 24, 49-50, 60-64; *see also Netbula-Sun*

14  FAC ¶¶ 24, 35-37, 57 (identifying Mr. Schwartz, Mr. Melnick, and Ms. DeCecco as Sun or

15  StorageTek officers or employees); *Netbula-Sun* Docket Nos. 116-118, 120 [Declarations of

16  Michael Abramovitz, Michael Melnick, Julie DeCecco, and Lisa Rady in Support of Defendants'

17  Reply in Support of Summary Judgment (describing their relationships to Sun and/or StorageTek

18  at the time of the events described in the successive complaints)].

19             That Dr. Yue chose (frivolously) to name these additional Defendants does not destroy

20  privity among the defendants in the two actions.  *Adams*, again, proves the point.  In *Adams*,

21  plaintiff in the successive lawsuit named four individual defendants in addition to the entity-

22  defendant that had been named in the first action.  236 F.3d at 691-92.  Three of these individuals

23  were employees of the entity-defendant at the time of the events described in both of the

24  complaints; the other was an agent hired to conduct a background investigation.  *See id.*  The

25  Ninth Circuit determined that these individuals were in privity with the entity-defendant named in

26  both actions, noting that their employer-employee relationship constituted the requisite "close

27  relationship."  *Id.*  The court further noted that the interests of the employees were aligned with

28  the corporation, because the entity's liability "was predicated largely upon a finding of

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

1    wrongdoing by its employees" and that no conflict existed among the defendants because the

2    employing entity had defended itself on the ground that its actions were legal and proper. *Id.* at

3    691.[13]

4         The facts sufficient to create privity in *Adams* are present here as well. Each of the

5    employees named in the *Yue-Sun* Litigation is accused merely of participating in Sun's alleged

6    infringement. CEO Schwartz, for example, is accused of receiving, and not responding to, two e-

7    mails from Dr. Yue. *Yue* FAC ¶ 61. The individuals' interests are aligned with their employer's,

8    and there is no conflict between them: Sun has at all times maintained that its actions (and the

9    actions of its employees) did not constitute copyright infringement, a conclusion adopted by the

10   Court in its order dismissing the copyright claims against Sun. *See generally Netbula-Sun* Docket

11   Nos. 63, 138 [Defendants' Motion for Summary Judgment; Order Granting Motion for Summary

12   Judgment]. Moreover, Plaintiff does not identify any different facts from the first action forming

13   a basis of liability against the named individual defendants. Rather, each is merely alleged to

14   have participated in precisely the same allegedly unauthorized copying that was at issue in the

15   *Netbula-Sun* lawsuit.

16        **B.    Additional Equitable Factors Also Support Dismissal of This Action.**

17        Additional factors warranting dismissal arise if a party or privy files a successive lawsuit

18   in order to evade a court order in the earlier-filed action or to forum-shop. *See, e.g.*, *Chinn v.*

19   *Giant Food, Inc.*, 100 F. Supp. 2d 331, 333 (D. Md. 2000) (plaintiff's failure to identify other

20   pending actions as related cases when filing subsequent action "was a transparent effort to 'judge-

21   shop,'" and supported dismissal of later-filed complaint). *Fantasy, Inc. v. LaFace Records*, 1998

22   U.S. Dist. LEXIS 20931, at *17, 49 U.S.P.Q.2d 1148 (E.D. Cal. 1998) (dismissing later-filed

23   complaint; "Plaintiff's attempt to multiply the litigation, forum shop, and circumvent [an] order

24

25   [13] The Ninth Circuit also observed that each of the employees named in the successive action had
     participated in the earlier action by submitting declarations in support of the entity's motion for
26   summary judgment. *See id.* at 691. Similarly, four of the five individuals named in the *Yue-Sun*
     Litigation filed declarations in support of Sun's motion for summary judgment and otherwise
27   participated in the litigation, such as acting as corporate-designated deponents. *See, e.g.*, *Netbula-*
     *Sun* Docket Nos. 116-18, 120 [Declarations of Michael Abramovitz, Michael Melnick, Julie
28   DeCecco, and Lisa Rady in Support of Defendants' Reply in Support of Summary Judgment].

1    [in the prior case] must be rejected"); *Ellison v. Autozone, Inc.*, Case No. C-06-07522-MJJ, 2007

2    U.S. Dist. LEXIS 47547, at *6 n.2 (N.D. Cal. June 20, 2007) (addressing allegations of forum-

3    shopping and circumvention of a prior court order). Dr. Yue's lawsuit implicates both of these

4    concerns.

5        Permitting Dr. Yue's successive lawsuit to proceed would undercut at least two orders of

6    the Court in the *Netbula-Sun* case: (1) the Court's Order Granting Summary Judgment; (2) the

7    Court's Pretrial Order, setting the parameters for discovery and motion practice in that action.

8        First, and most obviously, Dr. Yue's lawsuit seeks to relitigate issues that were decided on

9    summary judgment in the *Netbula-Sun* case—specifically, that StorageTek and Sun's use of

10   Netbula's PowerRPC product does not constitute copyright infringement. *See generally Netbula-*

11   *Sun* Docket No. 138 [Order Granting Motion for Summary Judgment]. As Netbula's privy,

12   Dr. Yue is not entitled to a do-over on this issue.[14]

13       Second, Defendants in the *Netbula-Sun* case argued that it was appropriate to conduct

14   discovery in stages, focusing first on the issues related to Defendants' license defense, to avoid

15   "burden[ing] defendants with sweeping, wide ranging discovery before adjudication of a

16   straightforward question of contract interpretation." *Netbula-Sun* Docket No. 44 [Joint Case

17   Management Conference Statement at pp.18:24-19:5]. The Court agreed with this approach, and

18   ordered the parties to focus on the license issues in a first phase of discovery, and then to tee up

19   motions for partial summary judgment. *Netbula-Sun* Docket No. 45 [Pretrial Order]. The parties

20   proceeded with discovery on the license defense, Defendants filed their motion for summary

21   judgment within the framework established by the Court, and the infringement question was

22   resolved without the massive (and messy) discovery into issues related to copyright damages or

23   originality. Dr. Yue's new complaint attempts to undo the efficient framework set by this Court

24   for resolving the copyright issues raised by StorageTek and Sun's use of Netbula's PowerRPC

25   product, apparently hoping to redo discovery even after summary judgment was entered. This,

26

27   ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯
     [14] But even if summary judgment had not been granted, Dr. Yue's new lawsuit had not been
28   granted, it would still be duplicative of the Netbula's earlier pending action and still subject to
     dismissal.

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

1    too, supports dismissal of the FAC. *See, e.g.*, *Chinn*, 100 F.3d at 334 (where "action was

2    instituted to avoid the 'constraints' established by the scheduling order issued by this court" in

3    earlier-filed cases, "scheduling and other management orders issued by a court would be entirely

4    without force and effect" if case were permitted to proceed).

5            Dr. Yue's commencement of a new lawsuit, rather than amending the Netbula claims,

6    may also have been motivated by judge-shopping. Even before he filed the *Yue-Sun* complaint,

7    Dr. Yue claims he had already begun to believe that Judge Jenkins was biased against him. *See*

8    *Netbula-Sun* Docket No. 129 [Letter of Dr. Yue to Honorable Martin J. Jenkins Regarding

9    Motion for Summary Judgment and Relating Cases at p.1 (citing this Court's order granting

10   summary judgment to defendants in the related *Netbula-BindView* Litigation as evidence of

11   bias)]. Despite the obviously related nature of these cases, Dr. Yue declined to file an

12   Administrative Motion to Consider Whether Case Should Be Related, as required by the Local

13   Rules. *See* Civil L-R 3-12; *see also Chinn*, 100 F. Supp. 2d at 331. Rather, Judge Susan

14   Illston—to whom the matter originally had been assigned—*sua sponte* referred the question to

15   Judge Jenkins. *See Yue-Sun* Docket No. 5. One day later, unaware of Judge Illston's referral,

16   Sun filed its own motion to consider whether the two cases were related. *See Netbula-Sun* Docket

17   No. 123. Dr. Yue nevertheless sought leave from the Court to file a response to the related case

18   motion, in apparent disagreement that the matter should be transferred from Judge Illston. *See*

19   Sieber Decl. ¶ 5 & Ex. D [December 6, 2007 Letter to Honorable Martin J. Jenkins].

20           Ultimately, Judge Jenkins ordered the two suits ordered related on December 14, 2007.

21   Sun-Netbula Docket No. 135 [Order Relating and Order Reassigning Case]. It is hardly relevant,

22   however, that Dr. Yue's effort to have a second lawsuit directed to another judge did not succeed.

23   Whether to dismiss a duplicative complaint requires "weighing of the equities." *See Adams*, 487

24   F.3d at 688. In this case Dr. Yue's efforts to have the infringement claims against Sun re-heard

25   by a different judge than the one already fully familiar with his claims further tilts the equities in

26   favor of dismissal.

27

28

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

C.    **This Duplicative Action Should Be Dismissed With Prejudice**.

Faced with a duplicative complaint, a district court has three options:  (1) consolidate both actions; (2) stay the later-filed action; or (3) dismiss the later-filed action, with or without prejudice.  *See Adams*, 487 F.3d at 688, 692.  Its decision on the best course of action is reviewed for abuse of discretion.  *See id.* (finding no abuse of discretion where district court dismissed case with prejudice).

The first course of action—consolidation of the two complaints—is appropriate only if "the plaintiff does not use the tactic of filing two substantially identical complaints to expand the procedural rights he would have otherwise enjoyed," particularly "the incorrect procedure of filing duplicative complaints for the purpose of circumventing the rules pertaining to the amendment of complaints."  *Walton v. Eaton Corp.*, 563 F.2d 66, 71 (3rd Cir. 1977); *see also, e.g.*, Ellison v. Autozone, Inc., Case No. C-06-07522-MJJ, 2007 U.S. Dist. LEXIS 47547 (N.D. Cal. June 20, 2007) (Jenkins, J.) (quoting *Walton* for identical proposition).  Here, Dr. Yue's duplicative complaint pursues precisely the prohibited purpose.  Netbula had every opportunity to seek leave timely to amend the complaint to assert its additional copyrights or to add additional defendants before the close of discovery in the *Netbula-Sun* case.  Netbula had even advised the Court that "[a]fter it completes its initial round of discovery, Netbula may seek to add as defendants those who are liable for infringement . . . ."  *Netbula-Sun* Docket No. 44 [Joint Case Management Conference Statement at p.17:21-23].

Netbula did not seek leave to amend its complaint to add either the additional copyrights identified in this action or additional defendants—even though Dr. Yue understood that it would be appropriate to amend to add these additional, interrelated theories of liability.  Specifically, on October 26, 2007, Dr. Yue asked defendants in the Sun-Netbula litigation for a stipulation that would allow him to assert additional claims, stating that

> I am writing to seek a stipulation regarding Netbula's substitution of party as to the copyright claim in the Netbula v. StorageTek case.  As the copyright owner of the relevant software and related claims, I am about to assert additional claims against StorageTek. *This can be done via an amended complaint in the C06-07391-MJJ case*, or I can file a separate infringement action . . . .

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

1     *Netbula-Sun* Docket No. 99 [Declaration of Dongxiao Yue in Support of Plaintiff's Motion to

2     Substitute Party as to the Copyright Claim, Ex. C (emphasis added)]; *see also* Sieber Decl. ¶ 4 &

3     Ex. C. This request was clearly untimely, having been made after the close of discovery and

4     shortly after Defendants had filed their motion for summary judgment (on October 23). Indeed,

5     Dr. Yue's tacitly accepted that it was too late to amend, as he never asked the Court for leave to

6     do so, instead simply filing his second action. *Id.*[15] Accordingly, at this point, consolidation of

7     these two actions—indeed, any action short of dismissal with prejudice—would reward Dr. Yue

8     for his improper end-run around rules requiring timely amendment of complaints in a manner not

9     prejudicial to other litigants in the action.

10       The appropriate response to Dr. Yue's duplicative complaint is to dismiss it, with

11     prejudice. As noted by the Ninth Circuit,

12         [d]ismissal of the duplicative lawsuit, more so than the issuance of a stay, or the
            enjoinment of the proceedings, promotes judicial economy . . . . In dismissing the

13         duplicative suit with prejudice, the district court acted to protect the parties from
            vexatious and expensive litigation and to serve the societal interest in bringing an

14         end to disputes.

15     *Adams*, 487 F.3d at 692-93. The matter that is at the root of both actions has now been decided as

16     a matter of law—the actions of StorageTek and Sun with respect to software licensed from

17     Netbula do not constitute copyright infringement. Of course, if Dr. Yue desires, he may have

18     Netbula appeal this ruling in the *Netbula-Sun* action. But there is no possible basis to litigate the

19     issue twice in the trial court.

20       Over the course of a series of lawsuits initiated against Netbula's customers, Dr. Yue has

21     also proven himself to be capable of the sort of vexatious litigation the Ninth Circuit warned

22     against in *Adams*. Most recently, for example, after filing this duplicative action and resisting its

23     being related to the prior cases, Dr. Yue then filed a motion for entry of default judgment—in

24     knowing violation of this Court's order that no answer would be due, and no default would be

25

26     [15] In the earlier *Netbula-BindView* case, Netbula also attempted to disrupt Defendants' motions
      for summary judgments, there filing a Motion for Leave to File Second Amended Complaint on

27     June 26, 2007, shortly before the deadline for filing dispositive motions (on July 17, 2007).
      Given its obvious untimeliness, the motion was denied. *See Netbula-BindView* Docket Nos. 207,

28     215, 244.

1    entered, until after ruling on the *Netbula-Sun* motion for summary judgment motion.  *See*

2    *Netbula-Sun* Docket No. 129 [December 17, 2007 Letter to Honorable Martin J. Jenkins

3    Regarding Motion for Summary Judgment and Relating Cases at p.2 (in which Dr. Yue

4    acknowledges that the Court had "granted [Sun's] request for extension in filing an answer in the

5    C07-05850 case" and stated that "no default will be taken")]; *Yue-Sun* Docket No. 13 [Motion for

6    Entry of Default Judgment].

7        As another example, after he was directed by this Court not to file pleadings in actions to

8    which he was not a party, Dr. Yue filed a petition for writ of mandamus with the Ninth Circuit,

9    along with an emergency motion to stay the summary judgment hearing in *Netbula-Sun.*  *See*

10   *Yue v. U.S. Dist. Court*, Case No. 07-74701 (9th Cir.).  After the Ninth Circuit denied the writ,

11   Dr. Yue made a motion that it issue a "reasoned decision."  *Id.*  The Ninth Circuit subsequently

12   issued an extraordinary order denying Dr. Yue's further motion, commanding that "[n]o motions

13   for reconsideration, rehearing, clarification, stay of the mandate, or any other submissions shall be

14   filed or entertained on this closed docket."  *Id.*  Dr. Yue also pursued a Rule 11 motions against

15   Defendants in the *Netbula-BindView* case that resulted in the Court's awarding attorneys' fees in

16   the amount of $20,000 *against Netbula*.  *See Netbula-BindView* Docket Nos. 103, 193, 210.  And

17   Dr. Yue filed a complaint the state bar against Defendants' counsel for communicating with him

18   directly (rather than through Netbula's counsel) while he was pursuing this action *pro se*, a

19   complaint that was peremptorily dismissed as unsubstantiated.  Sieber Decl. ¶ 6 & Ex E.

20       There is no reason to now allow Dr. Yue to further consume the resources of this Court

21   and the parties.  This action should be dismissed in its entirety, with prejudice.[16]

22   / / /

23   / / /

24   / / /

25   / / /

26

27   _____

     [16] As the Ninth Circuit explained in *Adams*, dismissal with prejudice of a duplicative action, even
28   while the first action remains pending, will not constitute *res judicata* as to the first action, and
     hence is entirely appropriate.  *See* 487 F.3d at 692 n.2.

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

1    **V.    <u>CONCLUSION</u>**

2           For the reasons stated above, this action—a duplicative and abusive rehash of the earlier-

3    filed case of *Netbula, LLC v. Storage Technology Corp.*, Case No. 07-07391 (N.D. Cal.)—should

4    be dismissed with prejudice.  Following the resolution of this motion by the Court, Defendants

5    reserve the right to seek compensation for their attorneys' fees in this action under applicable law.

6    Dated: January 29, 2008                          FENWICK & WEST LLP

7

8                                                     By:_____/s/ Laurence F. Pulgram_____
                                                              Laurence F. Pulgram
9
                                                     Attorneys for the named Defendants:
10                                                   SUN MICROSYSTEMS, INC., STORAGE
                                                     TECHNOLOGY CORPORATION,
11                                                   MICHAEL MELNICK, JULIE DECECCO,
                                                     MICHAEL P. ABRAMOVITZ, LISA K.
12                                                   RADY, and JONATHAN SCHWARTZ

13   25689/00405/LIT/1277360.11

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

1   LAURENCE F. PULGRAM (CSB NO. 115163)
    *lpulgram@fenwick.com*
2   JEDEDIAH WAKEFIELD (CSB NO. 178058)
    *jwakefield@fenwick.com*
3   ALBERT L. SIEBER (CSB NO. 233482)
    *asieber@fenwick.com*
4   LIWEN A. MAH (CSB NO. 239033)
    *lmah@fenwick.com*
5   FENWICK & WEST LLP
    555 California Street, 12th Floor
6   San Francisco, CA  94111
    Telephone:      (415) 875-2300
7   Facsimile:      (415) 281-1350

8   Attorneys for Defendants
    STORAGE TECHNOLOGY CORPORATION,
9   SUN MICROSYSTEMS, INC., MICHAEL
    MELNICK, JULIE DECECCO, MICHAEL P.
10  ABRAMOVITZ, LISA K. RADY,  and
    JONATHAN SCHWARTZ

11

12              UNITED STATES DISTRICT COURT

13            NORTHERN DISTRICT OF CALIFORNIA

14                SAN FRANCISCO DIVISION

15

16  DONGXIAO YUE,                          Case No. C-07-05850-MJJ

17                     Plaintiff,          **APPENDIX A TO DEFENDANTS'
                                           MOTION TO DISMISS**
18       v.

19  STORAGE TECHNOLOGY CORPORATION, a
    Delaware corporation; SUN MICROSYSTEMS,
20  INC., a Delaware corporation; MICHAEL
    MELNICK, an individual; JULIE DECECCO, an
21  individual; MICHAEL P. ABRAMOVITZ, an
    individual; LISA K. RADY, an individual;
22  JONATHAN SCHWARTZ, an individual; and
    DOES 1-1000, inclusive,
23
                       Defendants.
24

25

26

27

28

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

| *Yue v. Storage Technology Corp.*, N.D. Cal., Case No. 07-05850-MJJ: Selected Allegations Contained in First Amended Complaint | *Netbula, LLC v. Storage Technology Corp.*, N.D. Cal., Case No. 06-07391-MJJ: Selected Paragraphs Contained in Dongxiao Yue Declaration in Support of Plaintiff's Opposition to Defendants' Motion for Summary Judgment |
|---|---|
| 13.  From 1994 to July 1996, as an individual, Plaintiff had been developing a software technology which he later named as "PowerRPC".  PowerRPC was a technology that enabled a program on a computer to execute a command on a remote computer over a network and get results back.  PowerRPC was developed for UNIX, Microsoft Windows NT and Windows 95 platforms. Plaintiff also developed software called ONC RPC for Microsoft Windows NT/95, which incorporated most of the program files and modules in PowerRPC. | 6.  From 1994 to July 1996, as an individual, I had been developing a software technology which I later named and trademarked as "PowerRPC".  PowerRPC was a technology that enabled a program on a computer to execute a command on a remote computer over a network and get results back.  PowerRPC was developed for UNIX, Microsoft Windows NT/95 platforms.  I also developed software called ONC RPC for Microsoft Windows NT/95, which incorporated most of the program files and modules in PowerRPC. |
| 14.  In July 1996, Plaintiff founded Netbula, LLC, a Delaware Limited Liability Company, to market the aforementioned RPC software that he was developing at the time. | 8.  In July 1996, I founded Netbula, LLC ("Netbula"), a Delaware Limited Liability Company, to market the aforementioned RPC software that I was developing at the time. Based on the records from the state of Delaware, Netbula, LLC was registered on July 24, 1996.  About two months later, Netbula offered its RPC software products for licensing by other companies. |
| 15.  Plaintiff did not assign or transfer the copyrights in his earlier works created before July 24, 1996 to Netbula, LLC.  The PowerRPC software products were derivative works of these earlier unpublished works. | 12.  I did not assign or transfer the copyrights in my earlier works created before July 24, 1996 to Netbula, LLC.  The Netbula RPC software products were derivative works of these earlier unpublished works that I authored. |
| 16.  On September 26, 2007, Netbula executed a written copyright assignment, transferring all exclusive rights in all PowerRPC and ONC RPC for Windows created before January 1, 2007 back to Dr. Dongxiao Yue -- Plaintiff.  The copyright assignment further assigned all past and future claims of infringement to Plaintiff. | 16.  On September 26, 2007, Netbula executed a written copyright assignment, transferring all exclusive rights in all Netbula PowerRPC and Netbula ONC RPC created before January 1, 2007 back to Dr. Dongxiao Yue -- me. Attached **Exhibit 2** is a true copy of the copyright assignment.  The copyright assignment further assigned all related claims to me. |
| 24.  On February 7, 2000, Michael Melnick of StorageTek emailed Netbula, inquiring about "the purchase of 8 developer licenses" and "a limited application distribution agreement." | 19.  On February 7, 2000, Michael Melnick of StorageTek emailed Netbula, inquiring about "the purchase of 8 developer licenses" and "a limited application distribution agreement." Attached **Exhibit 4** is a true copy of this email. |

| *Yue v. Storage Technology Corp.*, N.D. Cal., Case No. 07-05850-MJJ: Selected Allegations Contained in First Amended Complaint | *Netbula, LLC v. Storage Technology Corp.*, N.D. Cal., Case No. 06-07391-MJJ: Selected Paragraphs Contained in Dongxiao Yue Declaration in Support of Plaintiff's Opposition to Defendants' Motion for Summary Judgment |
|---|---|
| 25.  From January 2000 to December 2006, Netbula sold RPC runtime licenses in "paks" of different sizes, each pak granted a customer the right to make or distribute certain number of copies of the Netbula runtime software. | 20.  In 2000, Netbula's only way of marketing its RPC software was on its website, which provided price and license information for its products.  Netbula's sales records show that from January 2000 to December 2006, Netbula sold RPC distribution licenses in "paks" of different sizes, each pak granted a customer the right to make or distribute certain number of copies of the Netbula runtime software. |
| 26.  In February 2000, the 20-pak, which granted a customer the right to make 20 copies of the runtime software, cost about $1000. | 21.  In February 2000, the 20-pak, which granted a customer the right to make 20 copies of the runtime software, was priced at $1000.  Attached Exhibit 5 contains true copies of business records (with confidential information such as credit card numbers redacted) evidencing the $1000 price for the 20-pak. One such record was a purchase order submitted by a customer on February 28, 2000, which showed that a customer made an order for "Netbula ONCRPC for WIN32 Runtime license (for 20 machines runtime) – Platforms: Windows NT workstation V 4.0)", the price was "US $1,000.00". |
| 27.  In February 2000, a "limited application distribution license" for PowerRPC granted a customer the right to install 1000 copies of the runtime software for one operating system. | 22.  Netbula's sales records also show  that in February 2000, the "limited application distribution license", which granted the right to make 1000 copies of the runtime software, was priced at $5995.  Attached **Exhibit 6** (NBS2624-2626, CONFIDENTIAL) is a true copy of a purchase order sent by a customer on February 10, 2000 via fax.  This fax was a print out of Netbula's web form at the time, which had the following description of the licensing terms (bold face and italics original):<br><br>**One development license is for one developer to use Netbula RPC (PowerRPC or ONC RPC) to develop client/server applications on one machine running one operating system (each UNIX flavor is a different OS).**<br><br>**A Netbula ONC RPC limited application distribution license is for**<br><br>• installing applications developed using Netbula RPC tools and supporting |

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

| *Yue v. Storage Technology Corp.,* N.D. Cal., Case No. 07-05850-MJJ: Selected Allegations Contained in First Amended Complaint | *Netbula, LLC v. Storage Technology Corp.,* N.D. Cal., Case No. 06-07391-MJJ: Selected Paragraphs Contained in Dongxiao Yue Declaration in Support of Plaintiff's Opposition to Defendants' Motion for Summary Judgment |
|---|---|
|  | infrastructure (DLLs, portmapper, etc) <br> • for one operating system <br> • on up to 1,000 (one thousand) machines for any number of users. <br><br> **Netbula may request you to conduct an audit to account the number of runtimes installed** |
| 28.  In a series of email exchanges.  Plaintiff provided Mr. Melnick the following information for licenses: (1) "ONC RPC Win32 developer license: $895 per developer per machine", (2) "ONC RPC Win32 limited distribution license: $5995", and (3) "The limited distribution license is for distributing the DLLs and support programs to 1,000 machines." | 23.  In February 2000, Netbula responded to Michael Melnick's inquiries; the two sides exchanged several email messages.  Netbula gave the following price quote for licenses: (1) "ONC RPC Win32 developer license: $895 per developer per machine", (2) "PowerRPC limited distribution license: $6995 per platform", (3) "ONC RPC Win32 limited distribution license: $5995", and (4) "The limited distribution license is for distributing the DLLs and support programs to 1,000 machines." Attached **Exhibit 7** is a true copy of the string of emails between Netbula and StorageTek which contained the above license information and communications.  Although the email did not specify per platform restriction for the ONC RPC Win32 limited distribution license, it was an accidental omission.  The platform restrictions were on both PowerRPC and ONC RPC limited distribution licenses, as shown from the web page faxed back by a customer on February 10, 2000 (Exhibit 6). |
| 29.  Plaintiff also provided a license agreement template to StorageTek in the email communications referenced above.  Mr. Melnick then made various changes to the agreement. | 24.  Per Mr. Melnick's request, Netbula also provided a license agreement template to StorageTek in the email communications referenced above.  The license agreement reflected Netbula's license purchase terms described above.  Mr. Melnick then made changes to the agreement and sent the modified version back to me on February 23, 2000.  Attached **Exhibit 8** (Melnick, Ex.8) is a true copy of the redlined version of the license agreement Mr. Melnick drafted.  The texts with solid underline were added by Mr. Melnick.  The texts in the boxes on the right side of the page were those deleted by Mr. Melnick.  Mr. Melnick was the only |

Fenwick & West LLP
ATTORNEYS AT LAW
SAN FRANCISCO

| *Yue v. Storage Technology Corp.*, N.D. Cal., Case No. 07-05850-MJJ: Selected Allegations Contained in First Amended Complaint | *Netbula, LLC v. Storage Technology Corp.*, N.D. Cal., Case No. 06-07391-MJJ: Selected Paragraphs Contained in Dongxiao Yue Declaration in Support of Plaintiff's Opposition to Defendants' Motion for Summary Judgment |
|---|---|
| | StorageTek employee who drafted the changes. |
| 30.  In March 2000, Mr. Melnick and Plaintiff executed the final agreement (the "2000 Agreement").  The 2000 Agreement was governed by the laws of California and "may not be assigned by either party or amended without the written consent of both parties..." | 25.  After more exchanges of communication, I accepted the proposed changes to the agreement drafted by Mr. Melnick.  Both Mr. Melnick and I signed the final agreement.  Attached **Exhibit 9** is a true copy of the license agreement between Netbula and StorageTek signed on March 1, 2000 (the "2000 Agreement").  The 2000 Agreement was governed by the laws of California and "may not be assigned by either party or amended without the written consent of both parties..." Page A0035. |
| 31.  Among other things (such as provisions on copyright), the 2000 Agreement contained the following terms (with the portions drafted by Michael Melnick underlined): | 26.  Among other things (such as provisions on copyright), the 2000 Agreement contained the following terms (with the portions drafted by Michael Melnick underlined and italicized): |
| NETBULA grants STORAGETEK, a non-exclusive, perpetual, irrevocable license for use by STORAGETEK's employees, consultants and subsidiaries for up to ONE user(s), for each of the licenses purchased, to use the PowerRPC SDK Product under Windows NT and 95/98 platforms; each user can only use the software on one computer.... | NETBULA grants STORAGETEK, a non-exclusive, perpetual, irrevocable license for use by STORAGETEK's employees, consultants and subsidiaries for up to ONE user(s), *for each of the licenses purchased*, to use the PowerRPC SDK Product under Windows NT and 95/98 platforms; each user can only use the software on one computer.... |
| The license is not transferable without written permission of Nebula... | The license is not transferable *without written permission of Nebula...* |
| You must treat the software as copyrighted material.  You may not copy and redistribute the software except as permitted under this Agreement. | You must treat the software as copyrighted material.  You may not copy and redistribute the software except as permitted under this Agreement. |
| … | … |
| Limited Distribution.  You agree to maintain reasonable records of the number of copies of the Supporting Programs distributed hereunder and to pay NETBULA as set forth in Exhibit C for such copies.... | Limited Distribution.  You agree to maintain reasonable records of the number of copies of the Supporting Programs distributed hereunder and to pay NETBULA as set forth in Exhibit C for such copies.  Netbula *may, with reasonable notice, and at times that do not interfere with STORAGETEK's business*, request STORAGETEK to conduct an |
| ….. | |
| Payment.  You agree to pay NETBULA | |

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

| *Yue v. Storage Technology Corp.*, N.D. Cal., Case No. 07-05850-MJJ: Selected Allegations Contained in First Amended Complaint | *Netbula, LLC v. Storage Technology Corp.*, N.D. Cal., Case No. 06-07391-MJJ: Selected Paragraphs Contained in Dongxiao Yue Declaration in Support of Plaintiff's Opposition to Defendants' Motion for Summary Judgment |
|---|---|
| the amounts set forth in Exhibit C in full payment for the rights and licenses granted herein, thirty (30) days after receipt of an invoice referencing a valid purchase order number.<br><br>Support is for SDK Products and Supporting Programs on the specific platforms only...<br><br>EXHIBIT B<br><br>NETBULA COMPONENTS PERMITTED TO BE DISTRIBUTED<br><br>...<br><br>* Pmapsvc.exe  The portmapper service for Windows NT<br><br>....<br><br>EXHIBIT C<br><br>PAYMENT<br><br>STORAGETEK shall pay NETBULA a one-time fee of $895 per license for all rights granted under this Agreement with respect to the SDK Product, and one-time fee of $5,995 for the right to distribute up to 1000 units of software containing the Supporting Programs, thirty (30) days after receipt of an invoice referencing a valid purchase order number.  NETBULA agrees that future SDK license purchases will be at a mutually agreed to price.  NETBULA agrees to offer STORAGETEK additional units of Supporting Program licenses for the limited distribution license, at the cumulative license purchased prices as provided listed below.  Pricing is based on cumulative purchases, not single purchase events.  Additional licenses purchased are subject to the terms and conditions of this Agreement. | internal audit to count the number of copies distributed.  *However, Netbula may not request more than one audit in a twelve (12) month period*.<br><br>Payment.  You agree to pay NETBULA the amounts set forth in Exhibit C in full payment for the rights and licenses granted herein, *thirty (30) days after receipt of an invoice referencing a valid purchase order numbe*r.<br><br>..…<br><br>Support is for SDK Products and Supporting Programs on the specific platforms only...<br><br>EXHIBIT B<br><br>NETBULA COMPONENTS PERMITTED TO BE DISTRIBUTED<br><br>...<br><br>* Pmapsvc.exe  The portmapper service for Windows NT<br><br>....<br><br>EXHIBIT C<br><br>PAYMENT<br><br>STORAGETEK shall pay NETBULA a one-time fee of *$895 per license* for all rights granted under this Agreement with respect to the SDK Product, and one-time fee of $5,995 for the right to distribute up to *1000* units of software containing the Supporting Programs, *thirty (30) days after receipt of an  invoice referencing a valid purchase order number.  NETBULA agrees that future SDK license purchases will be at a mutually agreed to price*.  NETBULA agrees to offer STORAGETEK additional units of Supporting Program licenses for the limited distribution license, *at the cumulative license purchased prices as provided listed below.  Pricing is based on cumulative purchases, not single purchase events.  Additional licenses purchased are* |

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

| *Yue v. Storage Technology Corp.*, N.D. Cal., Case No. 07-05850-MJJ: Selected Allegations Contained in First Amended Complaint | *Netbula, LLC v. Storage Technology Corp.*, N.D. Cal., Case No. 06-07391-MJJ: Selected Paragraphs Contained in Dongxiao Yue Declaration in Support of Plaintiff's Opposition to Defendants' Motion for Summary Judgment |
|---|---|
| | *subject to the terms and conditions of this Agreement.* |
| 32.  Pursuant to the 2000 Agreement, StorageTek issued a purchase order for the purchasing of eight (8) developer licenses and 1000 runtime licenses.  Plaintiff then created a customized copy of the PowerRPC software embedded with license information and delivered the software to StorageTek on a CD with the following information on the CD label: name of the software, name of licensee ("StorageTek"), invoice number ("1605"), license type and license quantity ("8 Developers 1000 runtime"). | 35.  Pursuant to the 2000 Agreement, StorageTek issued a purchase order to Netbula for the purchase of eight (8) developer licenses and 1000 runtime licenses.  Attached **Exhibit 10** (Melnick, Ex. 10) is a true copy of this purchase order dated March 3, 2000 (the "2000 Purchase Order").  I recorded the requested Netbula RPC software onto a CD-RW media.  After the software was recorded, I affixed a label on the CD-RW media with the following information: name of the software, name of licensee ("StorageTek"), invoice number ("1605'), license type and license quantity ("8 Developers 1000 runtime").  The CD was described in an email written by a StorageTek manager named Lisa Rady (See Exhibit 14, A0056): <br><br> I have a CD in my hand called "Netbula ONC RPC for Win32 Development Toolkit", licensed to StorageTek (1605) 8 Developers 1000 runtime.  Inside the CD was the Receipt that included the PO number CCOL122576... <br><br> Netbula mailed StorageTek the CD and invoiced StorageTek pursuant to the purchase order.  The invoice number was 1605.  StorageTek later paid invoice 1605 in full. |
| 34.  On May 1, 2000, Scott Painter, an engineer at StorageTek, emailed Netbula about customizing Netbula's "PowerRPC Portmapper" software, that email was copied to Michael Abramovitz, who was also a StorageTek engineer. | 37.  On May 1, 2000, a person named Scott Painter emailed Netbula about customizing Netbula's "PowerRPC Portmapper" software; that email was copied to abrammp@louisville.stortek.com which was the email for Mr. Michael Abramovitz.  Attached **Exhibit 11** (Melnick Depo., Ex. 15) is a true copy of this email. |
| 35.  In June 2001, a StorageTek developer named Anton Vatcky requested a Windows 2000 version of PowerRPC for testing a software product called REELs. | 38.  Attached **Exhibit 12** (Melnick, Ex. 21) is a true copy of an email message dated June 11, 2001 from a StorageTek developer named Anton Vatcky, whose telephone number indicated that he was in Australia.  Mr. Vatcky wrote: |

| *Yue v. Storage Technology Corp.*, N.D. Cal., Case No. 07-05850-MJJ: Selected Allegations Contained in First Amended Complaint | *Netbula, LLC v. Storage Technology Corp.*, N.D. Cal., Case No. 06-07391-MJJ: Selected Paragraphs Contained in Dongxiao Yue Declaration in Support of Plaintiff's Opposition to Defendants' Motion for Summary Judgment |
|---|---|
| | We at StorageTek currently use the NT version of PowerRPC in our product called REELs.  We have a license agreement with Netbula for this specific version. |
| | Would it be possible to obtain a copy of the Win2K version of PowerRPC, to determine if our software will port OK to Win2K. |
| | … |
| | A separate licensing agreement would follow up if StorageTek determines that we will be able to sell our REEL software product for Win2K platforms. |
| 36.  In May 2001, Netbula sent a license usage audit request to StorageTek. | 42.  In May 2001, Netbula sent a license usage audit request to StorageTek. |
| 37.  On June 21, 2001, Tracy Gagnon, Program Manager of the Backup & Recovery Software at StorageTek, sent an email to Mr. Melnick with the subject title "Netbula License Report for Audit 06/21 — REELNT Product".  She wrote: <br><br> Enclosed are the Netbula licenses for the REELNT product I am showing to date.  I arrived at these numbers by going through the history report from SCH.  I am not sure if I have caught all the data points... | 43.  On June 21, 2001, Tracy Gagnon, whose signature identifies her as "Program Manager, Backup & Recovery Software", sent an email to Mr. Melnick with the subject title "Netbula License Report for Audit 06/21 — REELNT Product": <br><br> Enclosed are the Netbula licenses for the REELNT product I am showing to date.  I arrived at these numbers by going through the history report from SCH.  I am not sure if I have caught all the data points... <br><br> Attached **Exhibit 14** (Melnick, Ex. 25) contains a true copy of this email message. A0057. |
| 38.  On June 22, 2001, Mike Melnick responded to Netbula's audit request via email, stating <br><br> The license count you request is 107, this leaves us the rights to distribute 893... <br><br> Mr. Melnick did not inform Netbula that the report for REELNT was probably incomplete. | 44.  On June 22, 2001, Michael Melnick responded to Netbula's audit request via email, stating, <br><br> The license agreements requires [*sic*] us to provide the number of licenses distributed...  The license count you request is 107, this leaves us the rights to distribute 893... <br><br> Attached **Exhibit 15** is a true copy of this email message. |

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

| *Yue v. Storage Technology Corp.,* N.D. Cal., Case No. 07-05850-MJJ: Selected Allegations Contained in First Amended Complaint | *Netbula, LLC v. Storage Technology Corp.,* N.D. Cal., Case No. 06-07391-MJJ: Selected Paragraphs Contained in Dongxiao Yue Declaration in Support of Plaintiff's Opposition to Defendants' Motion for Summary Judgment |
|---|---|
| 39. On September 9, 2002, responding to another audit request, Mike Melnick sent an email stating that StorageTek ceased distributing PowerRPC in 2002.  Mr. Melnick wrote:<br><br>We no longer distribute the runtimes with our products.  Our count remains the same as provided to you in June of 01. | 45.  Attached **Exhibit 16** (Melnick, Ex. 26) is a true copy of an email message Michael Melnick sent Netbula on September 9, 2002, stating that StorageTek ceased distributing Netbula RPC.  Mr. Melnick wrote:<br><br>Jon, We no longer distribute the runtimes with our products.  Our count remains the same as provided to you in June of 01. |
| 40.  In fact, StorageTek had been developing and distributing PowerRPC with other StorageTek products, including LibAttach and LibAttach Integrators' Kit.  On March 2, 2004, Lisa Rady, the program manager at StorageTek in charge of LibAttach development, wrote in an internal StorageTek email:<br><br>As you can see, we have exceeded the 1,000 distributions that we had right to with Netbula.... I think it is obvious that engineering has not and did not monitor the distributions on this product.<br><br>In another email to Mr. Melnick, Lisa Rady wrote:<br><br>I have a CD in my hand called "Netbula ONC RPC for Win32 Development Toolkit", licensed to StorageTek (1605) 8 Developers 1000 runtime.  Inside the CD was the Receipt that included the PO number CCOL122576, your name as the buyer, and a date of 3/24/2000.<br><br>Responding to Ms. Rady's email message, Mr. Melnick wrote:<br><br>The agreement is specific to platform (Win NT and 95/98 platforms) types of Netbula software (PowerRPC SDK).  This concerns me greatly as we have already told them we are no longer shipping it with our product. | 49.  On March 2, 2004 at 10:52AM, Lisa Rady emailed Michael Melnick again:<br><br>I have a CD in my hand called "Netbula ONC RPC for Win32 Development Toolkit", licensed to StorageTek (1605) 8 Developers 1000 runtime.  Inside the CD was the Receipt that included the PO number CCOL122576, your name as the buyer, and a date of 3/24/2000...<br><br>Engineering will need to provide what specific platform they require.<br><br>A0056.  Responding to Ms. Rady's email message, Mr. Michael Melnick wrote at 11:21AM:<br><br>The agreement is specific to platform (Win NT and 95/98 platforms) types of Netbula software (PowerRPC SDK).  This concerns me greatly as we have already told them we are no longer shipping it with our product.<br><br>Exhibit 14 (Melnick Depo., Ex. 25) referenced above is a true copy of the sting [sic] of email messages. |
| 41.  After the above internal discussion, Mr. Melnick sent an email to Netbula, stating:<br><br>Could you provide me with the StorageTek sales representative or if | 51.  After the above internal discussion, Mr. Melnick sent an email to Netbula on March 2, 2004 at 3:29 PM, stating:<br><br>Could you provide me with the |

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

| ***Yue v. Storage Technology Corp.*, N.D. Cal., Case No. 07-05850-MJJ: Selected Allegations Contained in First Amended Complaint** | ***Netbula, LLC v. Storage Technology Corp.*, N.D. Cal., Case No. 06-07391-MJJ: Selected Paragraphs Contained in Dongxiao Yue Declaration in Support of Plaintiff's Opposition to Defendants' Motion for Summary Judgment** |
|---|---|
| possible give me a quote on distributing an additional 1000 units of RPC? The platform used will need to be Windows 2003. Mr. Melnick concealed from Netbula the fact that StorageTek had been distributing PowerRPC, had exceeded the purchased license count, and had used and distributed PowerRPC on unauthorized platforms. | StorageTek sales representative or if possible give me a quote on distributing an additional 1000 units of RPC? The platform used will need to be Windows 2003. Attached **Exhibit 20** (Melnick, Ex.40) is a true copy of this email message.  On March 3, 2004, Netbula replied by email, stating: "The original agreement covers Windows NT/98/95 only".  (Netbula's response was on page STK00000368, exhibit 12 to Yue deposition on September 12, 2007). |
| 43.  In March 2004, Netbula and StorageTek negotiated an agreement for the 2004 version of PowerRPC.  Netbula provided the then current license agreement template with the price of $18,000 for 1000 client runtime licenses, and $800 for one server runtime license.  Michael Melnick represented that StorageTek's use of the PowerRPC software was for client only and deleted the server license portion of the agreement and changed the prices. | 53.  In March 2004, Netbula and StorageTek negotiated for a second agreement.  Netbula provided the then-current license agreement template with the price of $18,000 for 1000 client runtime licenses, and $800 for one server runtime license.  Michael Melnick then modified the template and emailed back the word document with drafted changes.  Attached **Exhibit 22** is a true print out of the word document drafted by Mr. Melnick.  The underlined texts were added by Mr. Melnick, the texts in the boxes on the right side of the page were the ones deleted by Mr. Melnick. |
| 44.  Netbula and StorageTek signed a second license agreement (the "2004 Agreement") in March 2004.  Because StorageTek previously represented that it only used 107 licenses out of the 1000 licenses purchased (thus with 893 licenses wasted), Netbula gave StorageTek price much lower than the standard pricing at the time. | 54.  Because StorageTek previously represented that it only used 107 licenses out of the 1000 licenses purchased (thus with 893 licenses wasted) and ceased distributing the product, and because Mr. Melnick did not inform Netbula that StorageTek had in fact been distributing Netbula RPC from 2000 to 2004 and had in fact exceeded the purchased license count, Netbula gave StorageTek a price much lower than the standard pricing at the time. |
| 45.  Pursuant to the 2004 Agreement, StorageTek issued a purchase order for one (1) developer license and 1000 runtime licenses. 46.  Pursuant to the 2004 Agreement and this purchase order, Plaintiff mailed the 2004 version of the RPC software to StorageTek on a CD which had a label with the license type | 56.  Attached **Exhibit 23** (Melnick, Ex. 48) is a true copy of a fax from StorageTek which included the executed 2004 Agreement (A0096-103) and a StorageTek purchase order (A104-105) dated March 17, 2004 (the "2004 Purchase Order") pursuant to the 2004 Agreement.  In the 2004 Purchase Order, StorageTek ordered one (1) developer license |

| *Yue v. Storage Technology Corp.*, N.D. Cal., Case No. 07-05850-MJJ: Selected Allegations Contained in First Amended Complaint | *Netbula, LLC v. Storage Technology Corp.*, N.D. Cal., Case No. 06-07391-MJJ: Selected Paragraphs Contained in Dongxiao Yue Declaration in Support of Plaintiff's Opposition to Defendants' Motion for Summary Judgment |
|---|---|
| and license quantity information similar to the CD delivered to StorageTek in 2000.<br><br>47.  Netbula invoiced StorageTek for the amount on the purchase order.  StorageTek later paid the invoiced amount in full. | and 1000 runtime licenses.  Pursuant to the 2004 Agreement and the 2004 Purchase Order, Netbula delivered the 2004 version of the RPC software on a CD to StorageTek and invoiced StorageTek for the amount on the purchase order.  Like the CD delivered in 2000, the CD delivered in 2004 was also labeled with license type and quantity information.  StorageTek later paid the invoiced amount in full. |
| 50.  On October 25, 2004, Michael Abramovitz, an engineer involved in the development of REEL and LibAttach software, sent an email to Netbula, stating that StorageTek bundled PowerRPC into several StorageTek products.  On the same day, Netbula emailed StorageTek requesting a license usage report.  StorageTek did not provide any report for this request. | 60.  On October 25, 2004, Michael Abramovitz (using email address abrammp@louisville.stortek.com) sent an email to Netbula, stating: "We bundle your PowerRPC into several of our products." On the same day, Netbula emailed Mr. Melnick, requesting a license usage report: "As we understand, several StorageTek applications are using Netbula RPC...  Could you please do audit of the RPC license usage and fill in the attached audit form?" StorageTek did not provide any report for this request. |
| 51.  On June 15, 2005, Netbula emailed StorageTek again for an audit of license usage and inquired about the impending SUN-StorageTek merger.  Mr. Melnick responded:<br><br>As for Sun, it should be completed by the end of summer...  The only thing that you and I may have to do is for you to allow assignment of the agreement to Sun.  The agreements calls [*sic*] for your approval.  I assume you would sallow [*sic*] this as if you did not the agreement would be terminated. | 61.  In June 2005, Netbula noticed the news about SUN'S planned acquisition of StorageTek.  On June 15, 2005, Netbula emailed StorageTek again for an audit of license usage and inquired about the impending SUN- StorageTek merger.  Mr. Melnick responded:<br><br>As for Sun, it should be completed by the end of summer...  The only thing that you and I may have to do is for you to allow assignment of the agreement to Sun.  The agreements calls [sic] for your approval.  I assume you would sallow [sic] this as if you did not the agreement would be terminated.<br><br>Attached **Exhibit 24** (Melnick, Ex. 51) is a true copy of this email message. |
| 52.  On June 20, 2005, Holly Wagner, a Software Product Planner at StorageTek, emailed Michael Melnick, Lisa Rady, Michael Abramovitz and others, stating:<br><br>The SAP query I ran this morning shows | 62.  Attached **Exhibit 25** (Melnick, Ex. 52) is a string of email messages produced by StorageTek.  On June 16, 2005, Mr. Melnick wrote to Thomas Murray:<br><br>Can you give ne an update of how many |

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

| Yue v. Storage Technology Corp., N.D. Cal., Case No. 07-05850-MJJ: Selected Allegations Contained in First Amended Complaint | Netbula, LLC v. Storage Technology Corp., N.D. Cal., Case No. 06-07391-MJJ: Selected Paragraphs Contained in Dongxiao Yue Declaration in Support of Plaintiff's Opposition to Defendants' Motion for Summary Judgment |
|---|---|
| 2,386 models shipped.  This number is low due to the fact that the query does not have the capability of pulling the client feature quantities that were released in November of last year.<br><br>Responding to this email, Mr. Melnick wrote on June 28, 2005:<br><br>The number that Holly has provided and thought it may be low causes quite a problem for you.  We have only made 2 purchases for the rights to distribute a total of 2000 licenses. | Netbula RPC licenses we have distributed? We need to make sure we have not exceeded what we have been licensed for.<br><br>A0111.  On June 16, 2005, Michael P. Abramovitz wrote: "To the best of my memory, we have a license to redistribute 2000 copies." A0110.<br><br>On June 20, 2005, Holly Wagner, a Software Product Planner at StorageTek, emailed Mr. Michael Melnick, Ms. Lisa Rady, Mr. Michael Abramovitz and others, stating:<br><br>The SAP query I ran this morning shows 2,386 models shipped.  This number is low due to the fact that the query does not have the capability of pulling the client feature quantities that were released in November of last year.<br><br>A0109.  Responding to this email, Mr. Melnick wrote on June 28, 2005:<br><br>The number that Holly has provided and thought it may be low causes quite a problem for you.  We have only made 2 purchases for the rights to distribute a total of 2000 licenses. |
| 53.  StorageTek initially refused to provide Netbula a license usage report. After numerous exchanges, StorageTek finally provided a purported PowerRPC runtime usage report in August 2005, which showed that StorageTek made 7455 copies. According to the report, the StorageTek products that include PowerRPC runtime code are LibAttach (model code 1191NLC) and INTGRTRS LIBATTACH (model code 1191NLI). The report also shows that StorageTek copied and distributed PowerRPC on Windows 2000 before it purchased any license for that operating system. | 71.  After numerous exchanges, StorageTek finally agreed to provide a detailed license report. Attached **Exhibit 31** is a purported PowerRPC runtime usage report made by StorageTek in August 2005 showing that StorageTek made 7455 copies. This is a printout of a large Excel spreadsheet, only the first five pages and the last page are included. As shown on the printout, the StorageTek products that include Netbula PowerRPC runtime code are LibAttach (model code 1191NLC) or INTGRTRS LIBATTACH (model code 1191NLI). The report also shows that StorageTek copied and distributed PowerRPC on Windows 2000 before it purchased any license for that operating system. |

| *Yue v. Storage Technology Corp.,* N.D. Cal., Case No. 07-05850-MJJ: Selected Allegations Contained in First Amended Complaint | *Netbula, LLC v. Storage Technology Corp.,* N.D. Cal., Case No. 06-07391-MJJ: Selected Paragraphs Contained in Dongxiao Yue Declaration in Support of Plaintiff's Opposition to Defendants' Motion for Summary Judgment |
|---|---|
| 59.  The December 2005 StorageTek license usage report showed it continued to sell LibAttach software which included PowerRPC components after it became a subsidiary of Sun Microsystems in August 2005. StorageTek also admitted that it had sold unlimited licenses for LibAttach software containing Plaintiff's code to multiple customers. | 74.  The file "FinalCount-RoyaltyItemsOnly.xls" was the report Sun StorageTek emailed me on December 16, 2005, it was a Microsoft Excel spreadsheet. The report showed that StorageTek continued to sell LibAttach software which included Netbula RPC components after it became a subsidiary of Sun Microsystems in August 2005. **Exhibit 34** is the last two pages of the spreadsheet, evidencing the purported license sales after August 31, 2005. |

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO