LAURENCE F. PULGRAM (CSB NO. 115163)
lpulgram@fenwick.com
JEDEDIAH WAKEFIELD (CSB NO. 178058)
jwakefield@fenwick.com
ALBERT L. SIEBER (CSB NO. 233482)
asieber@fenwick.com
LIWEN A. MAH (CSB NO. 239033)
lmah@fenwick.com
FENWICK & WEST LLP
555 California Street, 12th Floor
San Francisco, CA 94111
Telephone: (415) 875-2300
Facsimile: (415) 281-1350

Attorneys for the Named Defendants
SUN MICROSYSTEMS, INC.,
STORAGE TECHNOLOGY CORPORATION,
MICHAEL MELNICK, JULIE DECECCO,
MICHAEL P. ABRAMOVITZ,
LISA K. RADY, and JONATHAN SCHWARTZ

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| DONGXIAO YUE,<br><br>　　　　Plaintiff,<br><br>v.<br><br>STORAGE TECHNOLOGY CORPORATION, a Delaware corporation; SUN MICROSYSTEMS, INC., a Delaware corporation; MICHAEL MELNICK, an individual; JULIE DECECCO, an individual; MICHAEL P. ABRAMOVITZ, an individual; LISA K. RADY, an individual; JONATHAN SCHWARTZ, an individual; and DOES 1-1000, inclusive,<br><br>　　　　Defendants. | Case No. C-07-05850-MJJ<br><br>**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS**<br><br>Date:　　March 4, 2008<br>Time:　　9:30 a.m.<br>Dept:　　11, 19th Floor<br>Judge:　　Hon. Martin J. Jenkins<br><br>Filed:　　November 19, 2007<br>Trial Date:　No date set |

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ........................................................................................................................... 1

ARGUMENT .................................................................................................................................. 2

I.   NO FINAL JUDGMENT IN THE *NETBULA-SUN* CASE IS NECESSARY TO DISMISS THIS DUPLICATIVE ACTION ...................................................................... 2

II.  CLAIMS THAT STORAGETEK AND SUN INFRINGED MULTIPLE COPYRIGHTS IN NETBULA'S SOFTWARE SHOULD HAVE BEEN BROUGHT, IF AT ALL, IN THE *NETBULA-SUN* CASE ................................................ 4

III. NETBULA AND DR. YUE ARE IN PRIVITY ................................................................... 6

IV.  LEAVE TO AMEND THE COMPLAINT IS NOT APPROPRIATE ................................ 9

V.   PLAINTIFF'S MOTION TO STRIKE PORTIONS OF DEFENDANTS' MOTION TO DISMISS—WHICH APPEARS TO BE A OPPOSITION TO DEFENDANTS' REQUEST FOR JUDICIAL NOTICE—DOES NOTHING TO CHANGE THE RESULT ............................................................................................... 10

CONCLUSION ............................................................................................................................. 14

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Adams v. Cal. Dep't of Health Servs.*,
    487 F.3d 684 (9th Cir. 2007) ............................................................................... 1, 2, 3, 4, 5, 6, 9, 10

*Ellison v. Autozone, Inc.*,
    Case No. C-06-07522-MJJ, 2007 U.S. Dist. LEXIS 47547
    (N.D. Cal. June 20, 2007) ........................................................................................................ 12

*Fantasy, Inc. v. LaFace Records*,
    Case No. CIV-S-98-0856, 1998 U.S. Dist. LEXIS 20931
    (E.D. Cal. 1998) ......................................................................................................................... 5

*Graham-Humphreys v. Memphis Brooks Museum of Art, Inc.*,
    209 F.3d 552 (6th Cir. 2000) ................................................................................................... 10

*Harstel Springs Ranch of Colorado, Inc. v. Bluegreen Corp.*,
    296 F.3d 982 (10th Cir. 2002) ................................................................................................... 3

*Headwaters Inc. v. U.S. Forest Service*,
    399 F.3d 1047 (9th Cir. 2005) ................................................................................................... 7

*Hells Canyon Preservation Council v. U.S. Forest Service*,
    403 F.3d 683 (9th Cir. 2005) ..................................................................................................... 2

*In re Dynamic Random Access Memory Antitrust Litig.*,
    516 F. Supp. 2d 1072 (N.D. Cal. 2007) .................................................................................. 13

*In re Gottheiner*,
    703 F.2d 1136 (9th Cir. 1983) ................................................................................................... 8

*In re Teltronics Services, Inc.*,
    762 F.2d 185 (2d Cir. 1985) ...................................................................................................... 8

*Jacobs v. Patent Enforcement Fund, Inc.*,
    230 F.3d 565 (2d Cir. 2000) ...................................................................................................... 8

*MacNeil v. United States*,
    508 U.S. 106 (1993) ................................................................................................................ 10

*Mullis v. United States Bankr. Court*,
    828 F.2d 1385 (9th Cir. 1987) ............................................................................................ 12, 13

*Serlin v. Arthur Andersen & Co.*,
    3 F.3d 221 (7th Cir. 1993) ......................................................................................................... 3

*Single Chip Systems Corp. v. Intermec IP Corp.*,
    495 F. Supp. 2d 1052 (S.D. Cal. 2007) ................................................................................. 2, 3

*United Computer Sys. v. AT&T Info. Sys.*,
    298 F.3d 756 (9th Cir. 2002) ..................................................................................................... 9

# TABLE OF AUTHORITIES
### (continued)

**Page(s)**

**OTHER AUTHORITIES**

Restatement (Second) Judgments § 36 .................................................................................... 7

Restatement (Second) Judgments § 44 .................................................................................... 6

Restatement (Second) Judgments § 59(1) ............................................................................... 6

Restatement (Second) Judgments § 59(3)(a) .......................................................................... 7

# INTRODUCTION

Bluntly stated, Plaintiff Dongxiao Yue ("Yue," or "Plaintiff") has failed to oppose the motion that Defendants actually filed. Defendants moved to dismiss this action as duplicative of the earlier-filed action initiated by Plaintiff on behalf of his company, Netbula, LLC ("Netbula") (the "*Netbula-Sun* case"), relying on clear Ninth Circuit authority recently reaffirmed in the case of *Adams v. Cal. Dep't of Health Servs.*, 487 F.3d 684 (9th Cir. 2007). Plaintiff makes no argument that *Adams* should not control the outcome of this case, or that his lawsuit is not duplicative under the framework set forth in *Adams*.

Instead, he acts as if *Adams* does not exist (failing to cite it in his opposition) and substitutes a different, and inapplicable, test for *res judicata* in lieu of the test for duplicative actions. In doing so, Plaintiff ignores established law that a final judgment is *not* required to dismiss a duplicative action. The prohibition on duplicative actions rests not on the premise that the first action has already been finally resolved, but rather on the impermissibility of splitting a cause of action into two different lawsuits. The fact that the first action is not concluded does not allow Plaintiff to pursue the same claims in a parallel proceeding.

But that is exactly what Plaintiff is trying to do here. Plaintiff has already once brought a lawsuit for Defendants' allegedly infringing acts—exceeding the scope of two licenses covering Netbula's "RPC" software—when he initiated and directed a lawsuit brought by Netbula, the company he founded and of which he is the sole owner. His present argument—that Defendants also infringed additional copyrights in the *same software* through the *same acts* allegedly exceeding the scope of the *same two licenses*—is a distinction without a difference. These additional copyright registrations existed throughout the *Netbula-Sun* action and could have been asserted in that action. They were not. Plaintiff cannot now—by virtue of a collusive assignment between himself and his wholly-owned company, or by claiming to own personally a copyright application in the same software that he did not assign to his company— renew claims that should have been brought in the earlier action. Because Plaintiff is in privity with Netbula, he cannot split the copyright cause of action in order to relitigate or avoid the result in the first action.

Plaintiff's argument for leave to amend "to correct any deficiencies the Court may find" is

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1  also unavailing.  The problem with Plaintiff's new complaint is not that it was inartfully drafted

2  by a *pro se* litigant and is therefore "deficient" or fails to state a claim, but rather that it *does*

3  assert a claim, and that claim is indisputably duplicative of the claim Plaintiff's company has

4  pursued for over a year.

5  In short, *Adams* controls.  The two lawsuits unquestionably arise from the same set of

6  facts.  The parties in the successive actions are in privity with one another.  And under the

7  circumstances, this action should be dismissed with prejudice—as any other result would reward

8  Plaintiff for circumventing the rules for amendment of complaints and otherwise undo the

9  scheduling order issued by the Court in the *Netbula-Sun* action.

## ARGUMENT

11  *Adams* teaches a basic lesson:  A party, or its privy, has "no right to maintain two separate

12  actions involving the same subject matter at the same time in the same court and against the same

13  defendant."  487 F.3d at 688-89.  The test for whether a lawsuit is duplicative under *Adams*,

14  already explained at length in Defendants' opening brief, is "whether the causes of action and

15  relief sought, as well as the parties or privies to the action, are the same."  *Id.* at 689.

16  Plaintiff's brief, however, argues and applies a different standard—the one for claim

17  preclusion, not duplicativeness.  *See* Opposition to Motion to Dismiss ("Opposition") at 8:10-17

18  (citing, *inter alia*, *Hells Canyon Preservation Council v. U.S. Forest Service*, 403 F.3d 683, 686

19  (9th Cir. 2005)).

### I. NO FINAL JUDGMENT IN THE *NETBULA-SUN* CASE IS NECESSARY TO DISMISS THIS DUPLICATIVE ACTION.

22  Although the test for duplicativeness borrows from the test for claim preclusion, *see*

23  *Adams*, 487 F.3d at 688-89, they are different in at least one respect important to the present

24  motion:  No final judgment in the earlier-filed case is necessary to dismiss a later-filed duplicative

25  case involving the same facts and parties.  In *Adams* itself, the district court had dismissed the

26  later-filed action even though the earlier-filed action was still pending—a dismissal the Ninth

27  Circuit upheld on appeal.  487 F.3d at 684; *see also Single Chip Systems Corp. v. Intermec IP*

28  *Corp.*, 495 F. Supp. 2d 1052, 1059 (S.D. Cal. 2007) (reviewing *Adams* and determining that it

DEFENDANTS' REPLY IN SUPPORT OF
MOTION TO DISMISS COMPLAINT            -2-                CASE NO. C-07-05850-MJJ

requires no final judgment on the merits before dismissal of a duplicative lawsuit).  In *Adams*, the panel discussed whether dismissal of a later-filed duplicative action would have *res judicata* effect over the earlier-filed case and determined that it would not—a discussion that would be wholly unnecessary if the earlier-filed action had already been reduced to a final judgment. *See Adams*, 487 F.3d at 692 n.2.  *Adams* also cites approvingly to at least two cases, *Serlin v. Arthur Andersen & Co.*, 3 F.3d 221 (7th Cir. 1993), and *Harstel Springs Ranch of Colorado, Inc. v. Bluegreen Corp.*, 296 F.3d 982 (10th Cir. 2002), expressly stating that no final judgment is necessary to dismiss a later-filed action.  *See Adams*, 487 F.3d at 689 (citing *Hartsel Springs*, a case holding that "[i]t is clear that a motion to dismiss based on improper claim-splitting need not—indeed, often cannot—wait until the first suit reaches final judgment"); *Adams*, 487 F.3d at 688, 689 (citing *Serlin*, a case in which the Seventh Circuit determined district court did not abuse its discretion in dismissing duplicative action while earlier-filed action was still pending).

      Under *Adams*, therefore, Plaintiff is wrong when he argues that his lawsuit cannot be dismissed because there is no final judgment in the *Netbula-Sun* case.  *See* Opposition at 8:18-22, 10:9-13; 11:6-22.  A duplicative action is dismissed not because the first action has been decided, but because it is inappropriate for a party and its privies to litigate separately the same cause of action in two separate actions.  *Adams*, 487 F.3d at 689; *see also id.* at 693 ("In dismissing the duplicative suit with prejudice, the district court acted to protect the parties from vexatious and expensive litigation and to serve the societal interest in bringing an end to disputes.").  This is why, as already stated in Defendants' opening brief, the correct test requires a district court "to *assume* that the first suit was final, and then determine if the second suit could be precluded." *Single Chip*, 495 F. Supp. 2d at 1059 (emphasis in original).[1]  The effect is to ensure that no second proceeding may proceed if it would be subsumed within any *ultimate* judgment of the first.

      Under this standard, this action could and should be dismissed even though the *Netbula-*

---

[1] Plaintiff's attempt to distinguish *Single Chip* by claiming that it does not apply to "a party who is 'appearing in a second action in another capacity' as permitted by the Restatement Second of Judgments" is misguided.  *See* Opposition at 11:8-10.  *Adams* and *Single Chip* apply whenever parties in successive actions are in privity with one another—and Plaintiff and Netbula are plainly in privity with one another.  *See* Section III, *infra*.

1  *Sun* action is still pending.  If Plaintiff does not like the result of his copyright claims in the

2  *Netbula-Sun* case, he can appeal it, and, if successful, pursue copyright remedies on remand.  But

3  he cannot litigate his copyright claims twice in two separate actions.

4  **II.    CLAIMS THAT STORAGETEK AND SUN INFRINGED MULTIPLE
         COPYRIGHTS IN NETBULA'S SOFTWARE SHOULD HAVE BEEN BROUGHT,
5        IF AT ALL, IN THE *NETBULA-SUN* CASE.**

6  Plaintiff errs in claiming that his successive lawsuit is factually distinguishable from the

7  earlier case because Plaintiff here asserts different copyrights against Defendants.  *See* Opposition

8  at 10:19-21 ("In *Netbula-Sun*, Dongxiao Yue was acting a representative [sic] for Netbula;

9  although he was involved in the action, he was not representing his individual interests in the two

10 copyrights which are the subject of the *Yue-Sun* action."); *see also id.* at 9:25-26 ("Plaintiff filed

11 this action to pursue two copyrights, registration number TX 6-437-847 and TX-491-697.").

12 These additional registrations asserted in this action identify Netbula as the author and were

13 owned by Netbula until Dr. Yue effected a collusive transfer between himself and his company

14 on September 27, 2007.  Any claims on them should have been brought, if at all, in the *Netbula-*

15 *Sun* case—which arises from exactly the same allegedly infringing acts by StorageTek and Sun

16 officers and employees in this case.  *See generally* Motion to Dismiss at 12:24-13:13.

17 Plaintiff's argument would entitle a licensor to initiate concurrently as many separate

18 lawsuits as it wishes against the same licensee, each claiming that portions of the licensed work

19 are protected by different copyrights.  Taken to its logical end, this theory means that if a party

20 licenses a work that happens to be covered by 50 separate registrations, it is entitled to bring 50

21 different lawsuits and force the licensee to defend against each—unduly burdening the licensee-

22 defendant and the courts, as well as creating a great risk of inconsistent outcomes.  Indeed, under

23 Plaintiff's theory, if Dr. Yue (or Netbula) were now to obtain additional copyright registrations

24 over some segment of the software provided to StorageTek in 2000 and 2004, he would be able to

25 bring yet a third (or fourth, or fifth) lawsuit against StorageTek and Sun over the exact same acts.

26 This is not the law.  Under *Adams*, a district court may dismiss a later-filed action that

27 raises "issues that should have been brought" in the earlier-filed action.  487 F.3d at 689 (internal

28 quotation marks omitted); *see also id.* at 694 (dismissal with prejudice appropriate where plaintiff

in successive actions attempts to "litigat[e] piecemeal . . . issues that could have been resolved in one action"). Claims "that should have been brought" in an earlier-filed action include those that arise "from a common transactional nucleus of operative facts" and "seek substantially the same relief." *Id.* at 691. This standard has been applied in dismissing later-filed actions in cases just like this one, where a plaintiff brings a second lawsuit claiming different copyright interests in a single, allegedly-infringed work. *See, e.g.*, *Fantasy, Inc. v. LaFace Records*, Case No. CIV-S-98-0856, 1998 U.S. Dist. LEXIS 20931 (E.D. Cal. 1998) (later-filed action claiming infringement of common-law copyright subject to dismissal as constituting the same cause of action as earlier action claiming federal copyright infringement, where both complaints arose from defendants' alleged unlicensed use and distribution of plaintiff's musical composition).

Plaintiff's argument that the two cases here are transactionally unrelated grasps at straws. Plaintiff states that "additional evidence may be shown [in this case] to substantiate Plaintiff's copyright infringement action where Plaintiff may show additional steps he took to modify software provided to Storage Technology, subsequently transferred to Sun." Opposition at 9:17-21. But the fact that Plaintiff (or Netbula) modified the software first published in 1996 (which Netbula sued on in the first action) before licensing it to Storage Tech in 2000 and 2004 is irrelevant. Whatever registration exists, the lawsuits arise from the same licensing transaction and the same use by Sun and Storage Tech of the same software. Indeed, Plaintiff concedes the "significant overlap" in the evidence presented in the two actions. *See* Opposition at 9:19. Plaintiff's real desire is simply to relitigate the finding that the license defense bars all copyright claims. Indeed, he specifically suggests that "the parties proceed in a similar fashion [to *Netbula v. Sun* to bifurcate the issues and address the license issue first] by outlining a similar Order governing discovery and motion practice." Opposition at 13:5-7.

In any event, Plaintiff is wrong when he claims that dismissal is not appropriate unless there is an "identity of evidence [that] will be presented." *See* Opposition at 9:17. This standard is too exacting—*Adams* requires only "substantially the same evidence was and would be presented in the two actions," and the fact that "some different evidence" might be presented is not enough to salvage a successive action based on the same general set of facts. *See* 487 F.3d at

690-91. This standard is more than adequately met here, where (for example) the evidence relied on by Plaintiff in attempting to defeat summary judgment in the *Netbula-Sun* case is so similar to the allegations in the complaint in this action. *See generally* Motion to Dismiss at 9:15-10:12.

### III. NETBULA AND DR. YUE ARE IN PRIVITY

To determine whether an otherwise duplicative lawsuit is binding on subsequent parties, *Adams* asks a simple question: Are the successive parties in privity? *See* 487 F.3d at 689, 691-92. The answer in this case is a resounding yes, for the reasons already explained in Defendants' opening brief: (1) Plaintiff is the assignee of claims that Netbula should have been brought in the earlier-filed action, and (2) Plaintiff is Netbula's owner and only officer and employee, and controlled and actively participated in the *Netbula*-Sun case. *See generally* Motion to Dismiss at 16:3-18:5.[2] Either basis is sufficient for a finding of privity, and both pertain here.

Although not the controlling authority, it is worth noting that the Restatement (Second) of Judgments, on which Plaintiff heavily relies, is in accord with both of these principles—even assuming that the standards for *res judicata* were applicable. First, according to the Restatement, successors-in-interest to property—as is Dr. Yue by virtue of the assignment between himself and his company—are bound by earlier proceedings related to that property. *See* Restatement (Second) Judgments § 44 ("A successor in interest of property that is the subject of a pending action is bound by . . . the rules of *res judicata* to same extent as his transferor, unless" he lacks knowledge of the underlying action); *see also id.* § 59(1) (officer or director who is successor-in-interest to company's property is bound by rule relating to successors-in-interest). Second, officers of closely-held corporations (such as Netbula) are bound by prior litigation undertaken by their company in which they played an active role:

> If the corporation is closely held, in that one or a few persons hold substantially the entire ownership in it . . . the judgment in an action by or against the corporation is conclusive upon the holder of its ownership if he actively participated in the action on behalf of the corporation, unless his interests and those of the corporation are so different that he should have the opportunity to relitigate the issue.

---

[2] Plaintiff's opposition does not address, and presumably concedes, the second part of this analysis—whether Defendants in the successive actions are in privity. For the reasons stated in their opening brief, Defendants submit that they are. *See* Motion to Dismiss at 18:17-19:15.

Restatement (Second) Judgments § 59(3)(a).

Plaintiffs' Opposition barely addresses these points. First, Plaintiff admits that he is Netbula's assignee, but nevertheless claims that "Netbula's assignment of certain copyrights to Plaintiff does not preclude Plaintiff from pursuing separate infringement actions." *See* Opposition at 12:2-3. However, the case cited in support of this proposition, *Headwaters Inc. v. U.S. Forest Service*, 399 F.3d 1047, 1054 (9th Cir. 2005), is the very case cited *by Defendants* as recognizing the well-established proposition that an assignor-assignee relationship establishes privity. *See id.* at 1052-53. *Headwaters* did not alter this rule; rather, it found that privity had not been established because there was nothing in the record "about the relationship between the present plaintiffs and the former ones," other than that they had once been co-plaintiffs in a wholly unrelated action. *Id*. at 1056. Here, on the other hand, the record conclusively establishes privity under multiple theories, including the fact that Plaintiff is Netbula's assignee for claims related to the alleged infringement of the copyrights brought in this action, and that Plaintiff alone controls his closely-held company.

Second, Plaintiff does not (and could not) dispute that he is Netbula's sole owner, and that he was an active participant controlling the underlying *Netbula-Sun* case. *See* Opposition at 5:11-12 ("Netbula is wholly-owned by Plaintiff."); *id.* at 10:19-21 (agreeing that Plaintiff participated in the *Netbula-Sun* case). Plaintiff nevertheless argues that he is not bound by the earlier-filed litigation because his participation in *Netbula-Sun* case was only in a "representative capacity." *See* Opposition at 10:19-11:5 (citing, *inter alia*, Restatement (Second) Judgments § 36). It is true, that the Restatement says that "[a] party appearing in an action in one capacity, individual or representative, is not *thereby* bound by or entitled to the benefits of the rules of *res judicata* in a subsequent action in which he appears in another capacity." Restatement (Second) Judgments § 36 (emphasis added). All this means, however, is that privity is not established *merely* by the fact that a party appeared in successive actions in different capacities.

Plaintiff, however, would misread this principle to override every other established basis for finding privity (*e.g.*, to mean that an owner of a corporation who participates in litigation on behalf of his company can never be in privity with his company for related claims). Plaintiff

provides no support for this proposition, and it would conflict with the endless number of cases in which a company representative who participated in earlier litigation on behalf of the company is barred from bringing claims that were (or should have been) brought by the company in the first instance. *See, e.g.*, *In re Teltronics Services, Inc.*, 762 F.2d 185, 191 (2d Cir. 1985) ("A judgment against a corporation bars later litigation on the same cause of action by an officer, director, or shareholder of the corporation if the individual participated in and effectively controlled the earlier case."); *see also In re Gottheiner*, 703 F.2d 1136, 1139-40 (9th Cir. 1983) (affirming dismissal of claim brought by sole shareholder of company that had brought an earlier lawsuit, even *without* evidence that the shareholder had "actually controlled the prior litigation and had a direct financial interest in the outcome of that lawsuit"); *cf. Jacobs v. Patent Enforcement Fund, Inc.*, 230 F.3d 565, 569 (2d Cir. 2000) (holding that district court erred in permitting sole shareholder and president of defendant company to intervene: his "undisputed total control over [the company's] corporate affairs, any misconduct involved in [the company's] failure to defend itself would be [his] own fault").

Nor does it matter that Plaintiff now wants to pursue a copyright application that he has filed in his own name, but that has not resulted in a registration.[3] The fact that Plaintiff is in privity with Netbula is a complete answer. As a party in privity, Dr. Yue has no more right to split claims based on the same transaction than does Netbula alone. Indeed, Plaintiff does not dispute that the claim on his alleged individual copyright could have been brought in the first action if he desired to do so, as Netbula itself has alleged that it "has been and still is the holder of the exclusive rights under the Copyright Act to reproduce, adapt, perform, distribute, display, exhibit, and license the reproduction, adaptation, performance, distribution, display, exhibition, and other use *of its RPC technology and products* . . . ." *Netbula-Sun* FAC ¶ 69 (emphasis added). And even if Dr. Yue, rather than Netbula, was the ultimate owner of this registration, had he wanted to assert a claim in the copyright he has now applied for, he had to bring them in the

---

[3] Plaintiff does not even attempt to dispute that, absent a registration, he lacks any claim to assert in his purported individual copyright. Motion to Dismiss at 13:23-14:4. This forms an alternative basis to dismiss Plaintiff's individual claim, though it should not be the only basis relied upon by the Court, or Dr. Yue could try to file a third action should a registration ever issue.

same single action. Given that the copyright is purportedly in *pre-July 1996* code, there was certainly no impediment to having registered it and pursued that claim in the first action rather than strategically holding it back to file a second one.

### IV. LEAVE TO AMEND THE COMPLAINT IS NOT APPROPRIATE

As explained in *Adams*, when faced with a duplicative complaint, a district court has three options: (1) consolidate both actions; (2) stay the later-filed action; or (3) dismiss the later-filed action, with or without prejudice. *See* 487 F.3d at 688, 692. As explained in their opening brief, Defendants respectfully submit that the only appropriate course of action is to dismiss this action with prejudice. *See* Motion to Dismiss at 22:7-24:21. Staying this action serves no purpose since the dispositive issue (license) has already been determined in the first action. Consolidating these actions also serves no legitimate purpose, since it could merely allow Plaintiff to relitigate that issue, and to avoid the results in the prior action by failing timely to amend therein. Having ignored *Adams* throughout his opposition, Plaintiff does not explain why this case should not be dismissed or why the Court should instead choose one of the other options set forth in *Adams*. Nor does he provide any explanation why he could not have timely amended, as the rules of practice require, in the *Netbula–Sun* action, rather than seeking to commence a new action after summary judgment in the first.

Rather, Plaintiff asks for leave to amend his complaint "to correct any deficiencies the Court may find" if the Court is inclined to grant Defendants' Motion to Dismiss. *See* Opposition at 13:19-20. There is no reason to grant such leave here. This motion to dismiss is not based on any "deficiencies" for Plaintiff to address—his complaint clearly establishes that it is duplicative. He is trying to sue for the same events that he already once made the subject of a lawsuit through his company. There is nothing here for Plaintiff to add that could salvage his complaint, and thus no reason to allow leave to amend. That is exactly the lesson of *Adams*—dismissal with prejudice is entirely appropriate where a later-filed action is found to be duplicative. *See* 487 F.3d at 693-94; *see also United Computer Sys. v. AT&T Info. Sys.*, 298 F.3d 756, 766 (9th Cir. 2002) (leave to amend is appropriate upon dismissal of a complaint "only if there is a distinct, cognizable claim

1  that could be stated, consistent with the facts and allegations set forth in the complaint").[4]

2  **V.    PLAINTIFF'S MOTION TO STRIKE PORTIONS OF DEFENDANTS' MOTION TO DISMISS—WHICH APPEARS TO BE A OPPOSITION TO DEFENDANTS' REQUEST FOR JUDICIAL NOTICE—DOES NOTHING TO CHANGE THE RESULT.**

The day before filing his Opposition, Plaintiff filed a noticed Motion to Strike Portions of Defendants' Motion to Dismiss, asking that the Court disregard designated portions of Defendants' Memorandum in support of its Motion to Dismiss. *See* Opposition at 7:7-11; *see also Yue-Sun* Docket No. 42 [Motion to Strike]. The scope of this request is limited. Plaintiff merely requests that the Court strike references to the *Netbula-BindView* case in Defendants' Motion to Dismiss that he contends are not properly the subject of judicial notice. *See* Motion to Strike at 5:22-6:9. Specifically, Plaintiff objects to the following citations contained in Defendant's motion:

1. *Netbula-BindView* Docket No. 257 [Joint Statement of Undisputed Facts for Defendants' Motion for Summary Judgment ("Joint Statement")]. *See* Motion to Dismiss at 5:18-20, 5:22-23, 16:25-17:1. This document was cited simply in support of the proposition that Netbula stipulated that "Mr. Dongxiao Yue is the owner and only employee of Netbula," and that Dr. Yue "[a]t various times . . . used the following titles: President, Chief Officer of Sales and Marketing, Vice President of Sales." Joint Statement at 1:15-18.

2. *Netbula-BindView* Docket No. 238 [Don Yue's Declaration in Opposition to Defendants' Motions for Summary Judgment]. *See* Motion to Dismiss at 17:5-6. This was cited as an example illustrating the point that "[a]ll of the non-attorney declarations filed by Netbula in [the *Netbula-Sun*] (as well as the earlier *Netbula-BindView* Litigation) were by Dr. Yue." *See id.* at 5:24-6:1 & n.5.

3. *Netbula-BindView* Docket Nos. 207, 215, 244 [Motion for Leave to File Second Amended Complaint and related documents]. *See* Motion to Dismiss at 23:4-6 & n.15. This was cited for the proposition that Netbula had "fil[ed] a Motion for Leave to File Second Amended Complaint on June 26, 2007, shortly before the deadline for filing dispositive motions (on July 17, 2007)." *See id.*

---

[4] Plaintiff asks for leniency on the ground that he filed this complaint on a *pro se* basis. Defendants note the irony of this request: Plaintiff collusively assigned Netbula's copyrights to himself at least in part because of his desire to pursue Netbula's claims on a *pro se* basis—an attempted end-run around the rule that corporate entities may only appear through counsel—and now asks for leniency based on his *pro se* status. But as noted in *Graham-Humphreys v. Memphis Brooks Museum of Art, Inc.*, 209 F.3d 552 (6th Cir. 2000), "a willfully unrepresented plaintiff volitionally assumes the risks and accepts the hazards which accompany self-representation." *Id.* at 561 (citing *MacNeil v. United States*, 508 U.S. 106 (1993)). More importantly, no amount of leniency can save Plaintiff's complaint, where it is duplicative as a matter of law. Nor has Plaintiff—now represented by counsel—offered any explanation of *how* he might amend his complaint to get around *Adams*.

4. *Netbula-BindView* Docket Nos. 103, 193, 210 [Motion for Sanctions (Rule 11) and related documents]. *See* Motion to Dismiss at 24:14-16. This document was cited only for the proposition that "Dr. Yue pursued a Rule 11 motions [sic] against Defendants in the *Netbula-BindView* case that resulted in the Court's awarding attorneys' fees in the amount of $20,000 *against Netbula*." *Id.* (emphasis in original).

5. *Netbula-BindView* Docket No. 221-2 [Exhibit A to Declaration of Jedediah Wakefield in Support of Defendants' Motion for Summary Judgment (Excerpts of Deposition of Dongxiao Yue (June 27, 2007), at 59:15-18, 79:19-25)]. This was cited as additional authority in support of Dr. Yue's total control of Netbula.

Plaintiff's motion to strike these references is misguided on several levels:

*First*, Plaintiff agrees that the Court can and should consider matters on file with the Court in the *Netbula-Sun* case. *See* Motion to Dismiss at 4:11-12 ("Plaintiff does not dispute that judicial notice or reference to the information from the related *Netbula-Sun* matter may be used in the Motion to Dismiss."). Reference to these materials alone is more than sufficient to establish the duplicative nature of this second action:

- The two lawsuits share a common transactional nucleus of facts, and seek the same relief. *Compare, e.g.*, *Netbula-Sun* FAC ¶¶ 14, 18-19, 32, 35-36, 39, 73-77 *with Yue-Sun* FAC ¶¶ 13, 17-18, 22, 30, 38-39, 44, 84-86, 88-90, 94-95, 98, 101-03, 108 (comparing underlying facts of alleged infringement); *Netbula-Sun* FAC Prayer for Relief ¶¶ 7-8, 11-12, 15 *with Yue-Sun* FAC ¶ 3-4, 7-9 (seeking identical relief for alleged copyright infringement). Indeed, as noted in Defendants' opening brief, the declaration submitted by Dr. Yue in support of Netbula's Opposition to Defendants' Motion for Summary Judgment is substantially identical to Dr. Yue's complaint in this action—and in many cases, verbatim. *Compare, e.g.*, *Netbula-Sun* Docket No. 102 [Declaration of Dongxiao Yue in Support of Opposition to Defendants' Motion for Summary ¶¶ 19, 21, 42-45, 51, 54, 60-61 *with Yue-Sun* FAC ¶¶ 24, 26, 36-39, 41, 44, 50-51; *see generally* Motion to Dismiss at 9:15-15:17.

- Plaintiff and Netbula are in privity. As set forth in the *Yue-Sun* FAC, on September 26, 2007, Netbula assigned all of its copyrights and related claims for infringement in the PowerRPC product to Dr. Yue "by written assignment, along with all accrued and prospective claims arising from infringement of those copyrights." *Yue-Sun* FAC ¶¶ 3, 16 & Ex. C. The record in the two cases also establishes that Dr. Yue is the founder and owner of Netbula, "essentially, is Netbula," and participated in and controlled the earlier-filed *Netbula-Sun* case. *See* Opposition at 5:11-12 ("Netbula is wholly-owned by Plaintiff."); *Yue-Sun* FAC ¶ 1; *Netbula-Sun* Docket No. 139 [Transcript of Proceedings Held November 20, 2007 at 10:24-25]; *Netbula-Sun* Docket No. 7 [Don Yue's Declaration in Support of Plaintiff's Application for Temporary Restraining Order]; *Netbula-Sun* Docket No. 102 [Declaration of Dongxiao Yue in Support of Plaintiff's Motion to Substitute Party]; *Netbula-Sun* Docket

No. 102 [Declaration of Dongxiao Yue in Opposition to Defendants' Motion for Summary Judgment].[5]

Because the requisite facts are established simply by comparing this lawsuit to materials filed in the *Netbula-Sun* case (which Plaintiff concedes is appropriate), the motion to strike is irrelevant at best.

*Second*, Defendants' motion to dismiss is *not* made solely under Rule 12(b)(6), but also pursuant to the Court's inherent authority to dismiss duplicative lawsuits. *See* Motion to Dismiss at 1:6; *Ellison v. Autozone, Inc.*, Case No. C-06-07522-MJJ, 2007 U.S. Dist. LEXIS 47547, at *3 (N.D. Cal. June 20, 2007) ("District courts have inherent authority to dismiss duplicative cases. . . ."). Accordingly, there is no prohibition on submission of evidence outside the complaint to substantiate the duplicative nature of this action.

*Third*, the Court can consider matters that are subject to judicial notice to decide a Rule 12(b)(6) motion. *Mullis v. United States Bankr. Court*, 828 F.2d 1385, 1388 (9th Cir. 1987) (affirming dismissal of *pro se* complaint under Rule 12(b)(6); "facts subject to judicial notice may be considered on a motion to dismiss"). Plaintiff mischaracterizes Defendants' request for judicial notice when he claims that Defendants seek judicial notice of "the truth of the matter asserted" in each of the documents cited from the *Netbula-BindView* case. *See* Motion to Strike at 5:8-12. With respect to three of the items above (items 2, 3 and 4), Defendants simply seek judicial notice of the existence of the documents themselves, which are publicly available through the court's electronic docket and whose existence cannot be questioned. *See Netbula-BindView* Docket Nos. 103, 193, 207, 210, 215, 238, 244. The Court (as could the public at large[6]) can access each of the documents cited by the Defendants and determine for itself that, for example, Netbula filed a Motion for Sanctions in the *BindView* case, that this Motion was denied, and that

---

[5] As noted above, Plaintiff does not argue that Defendants in the successive actions are not in privity.
[6] Plaintiff makes the puzzling assertion that the records in the *Netbula-BindView* case have been sealed and thus the case is "render[ed] . . . *not public*." *See* Motion to Strike at 3:27-4:2 (emphasis in original); *see also* Motion to Strike at 5:12-15 (claiming that "this Court has issued an order making much of the *Netbula-BindView* [case] not public by having it sealed"). A sliver of the documents in the *Netbula-BindView* case were filed under seal, but none of the documents cited by Defendants were so filed and the case itself of course remains a matter of public record.

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS COMPLAINT   -12-   CASE NO. C-07-05850-MJJ

1  Netbula was ordered to pay $20,000 for bringing its Motion. *Netbula-BindView* Docket Nos.
2  103, 193, 210. Similarly, it cannot be disputed that Plaintiff filed numerous declarations in the
3  *Netbula-BindView* matter, including, for example, a Declaration in Opposition to Defendants'
4  Motions for Summary Judgment in that case. *Netbula-BindView* Docket No. 238. These facts are
5  readily proven by reference to the Court's docket and files, and are thus properly the subject of
6  judicial notice. *See Mullis v. United States Bank. Ct.*, 828 F.2d 1385, 1388 n.9 (9th Cir. 1987)
7  (court can take judicial notice of its own records or those of other courts); *see also, e.g.*, *In re*
8  *Dynamic Random Access Memory Antitrust Litig.*, 516 F. Supp. 2d 1072, 1083 n.3 (N.D. Cal.
9  2007) (granting request for judicial notice of "23 different orders and pleadings that have been
10 entered in various cases throughout the country").

11 What remains, then, are two documents cited for the propositions that Plaintiff is the
12 owner and only employee of Netbula, and that at various times he used the titles President, Chief
13 Officer of Sales and Marketing, and Vice President of Sales to define his relationship with his
14 company. Plaintiff does not (and could not, under Rule 11) dispute the accuracy of these basic
15 points, which were points made either by Plaintiff in his sworn deposition testimony or by his
16 company, Netbula, in a joint filing describing the *undisputed* facts in the *BindView* action. *See*
17 *Netbula-BindView* Docket No. 257 [Joint Statement of Undisputed Facts for Defendants' Motion
18 for Summary Judgment ("Joint Statement")]; *Netbula-BindView* Docket No. 221-2 [Exhibit A to
19 Declaration of Jedediah Wakefield in Support of Defendants' Motion for Summary Judgment
20 (Excerpts of Deposition of Dongxiao Yue (June 27, 2007)]. Indeed, Plaintiff's Opposition to
21 Defendants' Motion to Dismiss concedes one of the very points he seeks to have stricken from
22 Defendants' motion—that Plaintiff is the sole owner of Netbula. *See* Opposition at 5:11-12
23 ("Netbula is wholly-owned by Plaintiff."). To the extent the Court believes that any facts from
24 the *Netbula-BindView* case are necessary to resolution of this motion, the Court may simply ask
25 Plaintiff's counsel at hearing if she disputes the accuracy of any of the salient points.[7]

---

26 [7] Moreover, to the extent that there were any evidence submitted that is not properly subject to judicial notice, the Court could treat the motion as one under Rule 56, and enter summary
27 judgment. Remarkably, although Plaintiff has objected to factual submissions demonstrating his control of Netbula, he does not (and, of course, cannot) dispute the truth of his prior admissions in
28 this regard.

## CONCLUSION

For the foregoing reasons and the reasons stated in their opening papers, Defendants Storage Technology Corp., Sun Microsystems, Inc., Michael Melnick, Julie DeCecco, Michael P. Abramovitz, Lisa K. Rady, and Jonathan Schwartz respectfully request that the Court dismiss this case with prejudice.

Dated: February 19, 2008

FENWICK & WEST LLP

By:     /s/ Laurence F. Pulgram
        Laurence F. Pulgram

Attorneys for the Named Defendants
SUN MICROSYSTEMS, INC.,
STORAGE TECHNOLOGY CORPORATION,
MICHAEL MELNICK, JULIE DECECCO,
MICHAEL P. ABRAMOVITZ,
LISA K. RADY, and JONATHAN SCHWARTZ

25689/00405/LIT/1280148.5