**United States District Court**
For the Northern District of California

1

2

3

4

5

6

7

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

10

11   DONGXIAO YUE,                                              No. C07-05850 MJJ

12              Plaintiff,                          **ORDER GRANTING DEFENDANTS'
                                                     MOTION TO DISMISS**
13      v.

14   STORAGE TECHNOLOGY CORPORATION,

15              Defendant.
                                                   /
16

17                              **INTRODUCTION**

18          Before the Court is Defendants Storage Technology Corporation (StorageTek), Sun

19   Microsystems, Inc., ("Sun"), Michael Melnick ("Melnick"), Julie DeCecco ("DeCecco"), Michael P.

20   Abramovitz ("Abramovitz"), Lisa K. Rady ("Rady") and Jonathan Schwartz's ("Schwartz")

21   (collectively, "Defendants") Motion to Dismiss.  (Docket No. 35.)  Plaintiff Dongxiao Yue ("Yue")

22   opposes the Motion and filed a Motion Strike Portions of Defendant's Motion to Dismiss, which

23   Defendants opposed in their Reply brief.  For the following reasons, the Court **GRANTS**

24   Defendants' Motion.

25                           **FACTUAL BACKGROUND**

26          Beginning in 1994, Plaintiff Yue developed technology he later named PowerRPC and ONC

27   RPC (collectively, "PowerRPC").  (*See* First Amended Complaint ("FAC") ¶ 1.)  Plaintiff Yue

28   formed Netbula, LLC ("Netbula") in July 1996 to market PowerRPC.  (*See id.*)  PowerRPC software

     contains: (1) a software development kit ("SDK") that consists of software tools used by

United States District Court

For the Northern District of California

1   programmers to create applications that use RPC technology; and (2) supporting programs

2   ("Supporting Programs") that consist of software programs and components that can be used by

3   applications developed with ONC RPC or PowerRPC. (*Id.* ¶ 17.)

4          Plaintiff, on his own and through Netbula, has filed numerous actions to vindicate his rights.

5   First, Netbula brought an action against Bindview Development Corporation ("*Netbula-Bindview*"),

6   an entity that is not a Defendant in this action.[1]  (*See Netbula, LLC v. Bindview Development Corp.*,

7   No. 06-0711MJJ.)  Then, on December 4, 2006 Netbula filed an action ("*Netbula-Sun*") against Sun,

8   StorageTek, International Business Machines Corporation ("IBM"), EMC Corporation ("EMC") and

9   Darden Restaurants ("Darden").  (*See Netbula, LLC v. Storage Technology Corp.*, Case No. CV 06-

10  7391MJJ.)  In *Netbula-Sun*, Netbula alleged that the defendants engaged in: (1) copyright

11  infringement, (2) intentional fraud, (3) breach of contract, (4) statutory unfair competition under

12  California Business & Professions Code Section 17200 *et seq.*; and (5) equitable accounting and

13  imposition of a constructive trust.  (*See* No. CV 6-7391MJJ, Complaint, Docket No. 15.)  In

14  September 2007, while a Motion for Summary Judgment was pending in the *Netbula-Sun* case,

15  Netbula assigned to Plaintiff all exclusive copyrights in the versions of PowerRPC created before

16  January 1, 2007.  (FAC ¶ 3.)  Netbula's counsel moved to withdraw from the action and substitute

17  Yue as a *pro se* plaintiff.  The Court did not grant Plaintiff's request to proceed *pro se* because, inter

18  alia, he could not, as a *pro se* litigant, represent the rights of the entity.

19         After a hearing, the Court granted the *Netbula-Sun* defendants' motion for summary

20  judgment.  The Court found that the defendants' use of Netbula's software was within the scope of

21  the license agreements entered into in 2000 and 2004 by Netbula and StorageTek, which therefore

22

23         [1]  The Court takes judicial notice of matters in the public record, here documents filed with and by the Court, in the
    other actions filed by Plaintiff and/or Netbula insofar as they aid the Court in resolution of this matter. *See MGIC Indem.*
24  *Corp. v. Weisman,* 803 F.2d 50, 504 (9th Cir. 1986) (taking judicial notice of other court documents filed in the public
    record); *Day v. Moscow*, 955 F.2d 807, 811 (2d Cir. 1992) (explaining that a court may take judicial notice of its own
25  records).
           Plaintiff, in his Motion to Strike, argues that the Court may not take judicial notice of documents filed in the
26  *Netbula-Bindview* matter.  Plaintiff also agues that the Court should strike portions of Defendants' Motion which reference
    this case.  The Court, however, does not rely on matters presented in *Netbula-Bindview* to resolve this Motion.  The Court
27  simply recognizes the existence of this case.  In any event, Plaintiff does not cite any authority for the proposition that the
    Court cannot take judicial notice of matters in the public record, here a case on the Court's docket.  The Court therefore
28  denies Plaintiff's Motion to Strike.

2

United States District Court

For the Northern District of California

1  precluded claims for copyright infringement.

2       While the Motion for Summary Judgment in the *Netbula-Sun* case was pending, Plaintiff

3  filed this action against Sun and StorageTek ("*Yue-Sun*").   Plaintiff later amended his Complaint to

4  include the individual defendants.  (*See* FAC.)  Plaintiff alleges that Defendants' use, beyond the

5  scope of the 2000 and 2004 license agreements entered into by Netbula and StorageTek, amounts to

6  copyright infringement.  (FAC ¶¶ 30, 44.)  Defendants now move to dismiss the *Yue-Sun* case on the

7  ground that it is duplicative of the *Netbula-Sun* case.

8                                    **LEGAL STANDARD**

9       The Ninth Circuit has held that "[d]istrict courts retain broad discretion to control their

10  dockets and in the exercise of that power they may impose sanctions including, where appropriate,

11  default or dismissal." *Adams v. State of California Department of Health Services*, 487 F.3d 684,

12  688 (9th Cir. 2007) (quotations omitted).  In the case of duplicative later-filed actions, "[a]fter

13  weighing the equities of the case, the district court may exercise its discretion to dismiss a

14  duplicative later-filed action, to stay that action pending resolution of the previously filed action, to

15  enjoin the parties from proceeding with it, or to consolidate both actions." *Id.*  To determine if a

16  later-filed action is duplicative, the court examines "whether the causes of action and relief sought,

17  as well as the parties or privies to the action, are the same." *Id.* at 689.

18                                    **ANALYSIS**

19       Defendants contend that this action, *Yue-Sun*, is duplicative of *Netbula-Sun* and seek an order

20  dismissing *Yue-Sun* with prejudice.  The Court first determines if *Yue-Sun* is a duplicative action

21  under *Adams*, then turns to the proper resolution of the matter.

22  **I.      *Yue-Sun* Presents the Same Causes of Action as *Netbula-Sun*.**

23       To determine if the same causes of action are presented by the two actions, the Court applies

24  the familiar transaction test, which was developed in the context of claim preclusion, and looks to

25  four factors:

26       (1) whether rights or interests established in the prior judgment would be destroyed or
         impaired by prosecution of the second action; (2) whether substantially the same
27       evidence is presented in the two actions; (3) whether the two suits involve
         infringement of the same right; and (4) whether the two suits arise out of the same
28       transactional nucleus of facts. The last of these criteria is the most important.

3

**United States District Court**
For the Northern District of California

1  *Adams*, 487 F.3d at 689 (quoting *Costantini v. Trans World Airlines*, 681 F.2d 1199, 1201-02 (9th

2  Cir. 1982) (quotations and citation omitted).

3      Here, it is clear that *Yue-Sun* presents the same claims already asserted in *Netbula-Sun.*

4  Essentially, Plaintiff alleges in each action that StorageTek exceeded the scope of the license

5  agreements and engaged in copyright infringement.  In both actions, the same licensing agreements,

6  one entered into in 2000 and the other entered into in 2004, are at stake.  The additional facts

7  Plaintiff pleads in the *Yue-Sun* Complaint are a regurgitation of the evidence presented by Netbula in

8  opposition to the *Netbula-Sun* defendants' motion for summary judgment.  In fact, much of the *Yue-*

9  *Sun* Complaint is a verbatim restatement of Mr. Yue's declaration presented to the Court in

10  opposition to the *Netbula-Sun* defendants' motion for summary judgment.  It is clear, therefore, that

11  the two actions arise out of the same transactional nucleus of facts - Defendants' license agreements

12  with Netbula and Defendants' use of Netbula's PowerRPC software.

13      Next, in *Netbula-Sun* the Court granted summary judgment on the merits of the claims that

14  are now presented again in *Yue-Sun*, therefore the rights of the defendants in *Netbula-Sun* would be

15  destroyed or impaired by prosecution of *Yue-Sun*.  In addition, presumably the same evidence would

16  be presented in *Yue-Sun* as was presented in *Netbula-Sun*, especially in light of the Complaint's

17  heavy reliance on evidence already presented in the *Netbula-Sun* action.

18      Finally, the two actions involve infringement of the same rights - Plaintiff's rights to the

19  PowerRPC software that he alleges Defendants used in excess of their license agreements.  While

20  Plaintiff argues that there are two copyrights at issue in *Yue-Sun*, both of which were not asserted in

21  *Netbula-Sun*, this distinction does not change the underlying rights at issue.[2]  In both actions,

22  Plaintiff alleges the same use, in excess of the same licenses, of the same software.  The claim that

23  Defendants' infringing use of the PowerRPC software impacted additional copyrights is an attempt

24  to make out a separate claim for the same allegedly infringing use of the same software by

25

26      [2] In *Yue-Sun,* Plaintiff alleges that Defendants' use infringed two copyrights: (1) the "PowerRPC PWRPC32.DLL
27  00-SDK-STK" registered October 3, 2006 with U.S. registration number TX 6-437-847; and (2) the "NETBULA
   POWERRPC 2K4" registered on December 15, 2006 with U.S. registration number TX 6-491-697. (FAC ¶ 2.) Plaintiff also
28  alleges that Defendants infringed Plaintiff's other unpublished works with pending copyright registrations.  (*Id.*) In *Netbula-
   Sun*, the copyright at issue was Netbula's main product, "PowerRPC" (Registration No. TX 6-211-063, registered October
   18, 2005).

**United States District Court**
For the Northern District of California

1  Defendants.  However, Plaintiffs' allegation that the same conduct violated his interest in different

2  copyrights, "does not mean that the underlying right is different in this suit." *Fantasy, Inc. v.*

3  *LaFace Records*, Case No. CV 98-0856, 1998 U.S. Dist. LEXIS 20931, *13 (E.D. Cal. Nov. 12,

4  1998) (finding that breach-of-contract and fraud claims in a later-filed lawsuit vindicated the same

5  rights as were presented in a prior action for violation of federal copyright law); *see also Feminist*

6  *Women's Health Center v. Codispoti*, 63 F.3d 863, 868 (9th Cir. 1995) (holding that a RICO claim

7  in a later-filed action vindicated the same rights as were presented in a prior action for alleged

8  deprivation of constitutional rights).  Instead, if the facts underlying *Netbula-Sun* supported

9  copyright infringement of additional copyrights, Netbula should have asserted violations of those

10  copyrights in *Netbula-Sun* and not by filing a subsequent action.[3]   *See id.* at 694 (holding that

11  dismissal with prejudice is appropriate where the plaintiff in successive actions attempts to

12  "litigat[e] piecemeal . . . issues that could have been resolved in one action") (quoting *Flynn v. State*

13  *Bd. of Chiropractic Exam'rs*, 418 F.2d 668, 668 (9th Cir. 1969)).  In addition, the most important

14  criteria in determining if the actions present the same causes of action is whether the two actions

15  arise out of the same transactional nucleus of facts.   Here, they most certainly do.  The Court

16  therefore finds that *Yue-Sun* and *Netbula-Sun* present the same causes of action. *See id.* at 691

17  (holding that even though the later-filed action involved a violation of a different and distinct right,

18  the fact that the actions arose from a common transactional nucleus of facts was the most important,

19  and most persuasive, factor).

20  **II.     *Yue-Sun* Involves the Same Parties or Privies as *Netbula-Sun*.**

21         Privity among successive parties is the second element used to determine whether a

22  subsequent action is duplicative.  The Ninth Circuit has

23      expanded the concept to include a broader array of relationships which fit under the
24      title of 'virtual representation.'  The necessary elements of virtual representation are
        an identity of interests and adequate representation.  Additional features of a virtual
        relationship include a close relationship, substantial participation, and tactical
25      maneuvering.

26  *Adams*, 487 F.3d at 691 (quotations and citations omitted).

27  _____

28      [3] This is especially true given that Netbula was the author and copyright claimant for both of the two copyrights asserted in *Yue-Sun* and only assigned the copyrights to Yue in September 2007.  Thus, Netbula could have asserted violations of these copyrights in the *Netbula-Sun* action.

5

**United States District Court**
For the Northern District of California

1    Here, Plaintiff's Complaint names StorageTek and Sun, both of which were defendants in the

2  *Netbula-Sun* action.  Plaintiff also, however, brings this action against five individuals who were not

3  named in the *Netbula-Sun* action.  These five individuals are, as Plaintiff alleges, current or former

4  employees of StorageTek or Sun who contributed to the alleged copyright infringement.  (*See* FAC ¶

5  11.)  As employees of StorageTek or Sun, these Defendants were identified in the *Netbula-Sun*

6  action and four of the five provided declarations in support of summary judgment in the *Netbula-Sun*

7  case.  (*See Netbula-Sun*, Docket Nos. 63, 116, 118, 120 (Melnick Decl., Abramovitz Decl., DeCecco

8  Decl., Rady Decl.).)  Thus, the individual Defendants had a sufficient identity of interest and close

9  relationship with StorageTek or Sun such that they were virtually represented in the prior action.

10  *See id.*  (holding that three employees in a later-filed action were virtually represented by their

11  employer in the prior action).

12    In addition, the plaintiffs are different in these two actions.  In *Nebula-Sun*, Netbula

13  represented the copyright claims, although Yue attempted to substitute in as the Plaintiff after

14  Netbula assigned him the copyrights in September 2007.  In *Yue-Sun*, Yue himself is representing

15  the same claims previously brought by Netbula.  In both cases, however, the rights of Netbula and

16  Yue are deeply intertwined.  Yue is the founder and president of Netbula, LLC and thus may be seen

17  as virtually represented in the *Netbula-Sun* action.  In addition, Netbula assigned all of its copyrights

18  prior to January 1, 2007 to Yue.  Therefore, Yue is an assignee and is in privity with Netbula.  *See,*

19  *e.g., Headwaters Inc. v. United States Forest Serv.*, 399 F.3d 1047, 1052-53 (9th Cir. 2005)

20  ("Privity, traditionally, arose from a limited number of legal relationships in which two parties have .

21  . . transferred rights with respect to a particular legal interest, chiefly: [among others,] assignors and

22  assignees . . . .").  Yue and Netbula are, therefore, in privity.

23    In sum, therefore, all of the parties in *Yue-Sun* were either parties in *Netbula-Sun* or were in

24  privity with parties to that action.  The Court, after reviewing this case against the standards set forth

25  in *Adams,* finds that this case is duplicative of *Netbula-Sun* because it presents the same causes of

26  action between the same parties or their privies.

27  **III.    Dismissal Is Appropriate.**

28    The trial court has an "ample" degree of discretion in determining whether to dismiss later-

6

**United States District Court**

For the Northern District of California

1   filed duplicative actions. *Adams*, 487 F.3d at 692 (*quoting Kerotest Mfg. Co. v. C-O-Two Fire*

2   *Equip. Co.*, 342 U.S. 180, 183 (1952)).  In addition, the Ninth Circuit has recognized that

3   "[d]ismissal of the duplicative lawsuit, more so than the issuance of a stay or the enjoinment of

4   proceedings, promotes judicial economy and the 'comprehensive disposition of litigation.'" *Id.*

5   (quoting *Kerotest*, 342 U.S. at 183).

6          Weighing the equities, the Court finds that dismissing *Yue-Sun*, the duplicative action, is well

7   within its discretion and promotes judicial economy and the comprehensive disposition of litigation.

8   *Yue-Sun* presents the same claims as *Netbula-Sun* and is effectively Plaintiff's attempt to re-litigate

9   issues that have already been presented, and determined, by the Court.  In addition, given the tactics

10  that Plaintiff has pursued, which have ranged from duplicative to nearly vexatious, the Court finds

11  that dismissing the action with prejudice is appropriate.

**CONCLUSION**

13         For the foregoing reasons, the Court **GRANTS** Defendants' Motion to Dismiss with

14  prejudice.  The Clerk of the Court is directed to close the file.

16  **IT IS SO ORDERED.**

19  Dated: March 4, 2008

                                            MARTIN J. JENKINS
20                                          UNITED STATES DISTRICT JUDGE

7