LAURENCE F. PULGRAM (CSB NO. 115163)
*lpulgram@fenwick.com*
JEDEDIAH WAKEFIELD (CSB NO. 178058)
*jwakefield@fenwick.com*
ALBERT L. SIEBER (CSB NO. 233482)
*asieber@fenwick.com*
LIWEN A. MAH (CSB NO. 239033)
*lmah@fenwick.com*
FENWICK & WEST LLP
555 California Street, 12th Floor
San Francisco, CA  94104
Telephone:     (415) 875-2300
Facsimile:      (415) 281-1350

Attorneys for Named Defendants
SUN MICROSYSTEMS, INC.,
MICHAEL MELNICK, JULIE DECECCO,
MICHAEL P. ABRAMOVITZ,
LISA K. RADY, and JONATHAN SCHWARTZ

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| DONGXIAO YUE,<br><br>        Plaintiff,<br><br>v.<br><br>STORAGE TECHNOLOGY CORPORATION, a Delaware corporation; SUN MICROSYSTEMS, INC., a Delaware corporation; MICHAEL MELNICK, an individual; JULIE DECECCO, an individual; MICHAEL P. ABRAMOVITZ, an individual; LISA K. RADY, an individual; JONATHAN SCHWARTZ, an individual; and DOES 1-1000, inclusive,<br><br>        Defendant. | Case No.  C-07-05850-MJJ<br><br>**NOTICE OF MOTION AND MOTION FOR ATTORNEYS' FEES AND COSTS [17 U.S.C. § 505]**<br><br>Date:      April 22, 2008<br>Time:     9:30 a.m.<br>Dept:     TBD<br>Judge:   TBD |

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

# TABLE OF CONTENTS

**Page(s)**

NOTICE OF MOTION AND MOTION .................................................................................. 1

MEMORANDUM OF POINTS AND AUTHORITIES ........................................................ 1

I.     INTRODUCTION ...................................................................................................... 1

II.    ISSUE PRESENTED .................................................................................................. 3

III.   FACTUAL BACKGROUND ..................................................................................... 3

       A.    History Of This Case ...................................................................................... 3

       B.    Plaintiff's History Of Harassing Litigation .................................................. 5

IV.    ARGUMENT .............................................................................................................. 7

       A.    Defendants Are The Prevailing Parties ......................................................... 8

       B.    Each Of The Ninth Circuit Factors Supports An Award Of Attorneys' Fees .......... 9

             1.    Defendants' Degree of Success in This Action Was Total ........................ 9

             2.    Plaintiff's Lawsuit Was Both Legally and Factually Unreasonable .......... 9

                   a.    Plaintiff's Lawsuit Was Legally Unreasonable ............................. 9

                   b.    Plaintiff's Lawsuit Was Factually Unreasonable ........................ 12

       C.    Plaintiff's Duplicative Lawsuit Was Improperly Motivated And Otherwise
             Harassing And Vexatious ............................................................................. 13

       D.    An Award Of Attorneys' Fees To Defendants Would Further The Purposes
             Of The Copyright Act .................................................................................. 14

       E.    Plaintiff Is Not Entitled To Leniency Based On His *Pro Se* Status ..................... 15

       F.    Defendants' Attorneys' Fees Are Reasonable .............................................. 17

       G.    Defendants Also Seek An Award Of Other Costs ....................................... 19

V.     CONCLUSION .......................................................................................................... 19

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Adams v. Cal. Dep't of Health Servs.*,
  487 F.3d 684 (9th Cir. 2007) .................................................................................. 9, 10

*Amadasun v. Dreamworks, LLC*,
  359 F. Supp. 2d 1367 (N.D. Ga. 2005) ........................................................................ 16

*Baker v. Urban Outfitters, Inc.*,
  431 F. Supp. 2d 351 (S.D.N.Y. 2006) ..................................................................... 13, 14

*Broadcast Music, Inc. v. Niro's Palace, Inc.*,
  619 F. Supp. 958 (N.D. Ill. 1985) ............................................................................... 11

*Chivalry Film Prods. v. NBC Universal, Inc.*,
  2007 U.S. Dist. LEXIS 86889 (S.D.N.Y. Nov. 7, 2007) ......................................... 16, 17

*Entm't Research Group v. Genesis Creative Group*,
  122 F.3d 1211 (9th Cir. 1997) ................................................................................ 7, 13

*Ets-Hokin v. Skyy Spirits*, Inc.,
  323 F.3d 763 (9th Cir. 2003) ...................................................................................... 17

*Fantasy, Inc. v. Fogerty*,
  94 F.3d 553 (9th Cir. 1996) .......................................................................................... 8

*Fogerty v. Fantasy, Inc.*,
  510 U.S. 517 (1994) ........................................................................................... 8, 9, 15

*Frank Music Corp. v. Metro-Goldwyn-Mayer Inc.*,
  886 F.2d 1545 (9th Cir. 1989) ..................................................................................... 18

*Graham-Humphreys v. Memphis Brooks Museum of Art, Inc.*,
  209 F.3d 552 (6th Cir. 2000) ....................................................................................... 16

*Harrison Music Corp. v. Tesfaye*,
  293 F. Supp. 2d 80 (D.D.C. 2003) ............................................................................... 17

*MacNeil v. United States*,
  508 U.S. 106 (1993) .................................................................................................... 17

*Nat'l Football League v. Prime Time 24 Joint Venture*,
  131 F. Supp. 2d 458 (S.D.N.Y. 2001) ......................................................................... 19

*Netbula, LLC v. BindView Development Corporation, et al.*,
  Case Number C-06-00711-MJJ-WDB ............................................................. 1, 4, 5, 11

*Netbula, LLC v. Greenwich Capital Markets, Inc.*,
  Case Number C-06-07143-MJJ ...................................................................................... 5

*Netbula, LLC v. Storage Technology Corporation, Sun Microsystems, Inc., et al.*,
  Case Number C-06-07391-MJJ .............................................................................. passim

*Ninox TV Ltd. v. Fox Entm't Group, Inc.*,
  80 U.S.P.Q.2D (BNA) 1467 (S.D.N.Y. 2006) ................................................................ 9

*Perfect 10, Inc. v. CCBill LLC*,
  488 F.3d 1102 (9th Cir. 2007) ............................................................................... 8, 9, 14

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1

## TABLE OF AUTHORITIES
### (continued)

2
Page(s)

3

*Riviera Distribs. v. Jones*,
   Case Nos. 06-2043, 06-3692, __ F.3d __, 2008 U.S. App. LEXIS 3498 (7th

4
   Cir. Feb. 20, 2008) ............................................................................................... 9, 15

5
*Robinson v. Lopez*,
   69 U.S.P.Q.2d (BNA) 1241 (C.D. Cal. 2003) .......................................................... 8

6
*Traditional Cat Ass'n, Inc. v. Gilbreath*,
   340 F.3d 829 (9th Cir. 2003) .................................................................................. 18

7

8
*Truesdell v. S. Cal. Permanente Medical Group*,
   293 F.3d 1146 (9th Cir. 2002) ............................................................................... 13

9
*Twentieth Century Fox Film Corp. v. Entm't Distrib.*,
   429 F.3d 869 (9th Cir. 2005) ................................................................................. 19

10
*Yankee Candle Co. v. Bridgewater Candle Co., LLC*,
   140 F. Supp. 2d 111 (D. Mass. 2001) .................................................................... 15

11
**STATUTES**

12
17 U.S.C. § 505 ............................................................................................................. 1, 7

28 U.S.C. § 1920 ............................................................................................................. 19

13
**RULES**

14
Civil L.R. 3-12 .................................................................................................................. 4

15
Federal Rule of Civil Procedure 54(d) ............................................................................. 1

16

17

18

19

20

21

22

23

24

25

26

27

28

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

MOTION FOR ATTORNEYS' FEES
AND COSTS
iii
C-07-05850-MJJ

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Fenwick & West LLP
Attorneys At Law
San Francisco

## NOTICE OF MOTION AND MOTION

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that on April 22, 2008, or as soon thereafter as this matter may be heard, in the Courtroom of the Judge to be determined following reassignment of this matter by the Court, Defendants Sun Microsystems, Inc. ("Sun"), Michael Melnick, Julie DeCecco, Michael P. Abramovitz, Lisa K. Rady, and Jonathan Schwartz will and hereby do move the Court, pursuant to 17 U.S.C. § 505 and Federal Rule of Civil Procedure 54(d) for an award of full costs, including attorneys' fees, incurred in the defense of this action. This Motion is made on the grounds that, as the prevailing parties, Defendants should be awarded such fees and other costs following their successful defense of Plaintiff's legally and factually unreasonable copyright infringement action. Defendants' motion is based upon this Notice and Motion and the accompanying Memorandum of Points and Authorities, the accompanying declaration of Jedediah Wakefield and supporting exhibits, the pleadings and other papers on file with the Court in this matter and the related cases of *Netbula, LLC v. Storage Technology Corp.*, Case No. C-06-07391-MJJ (N.D. Cal.) and *Netbula, LLC v. BindView Development Corp.*, Case No. 06-0711-MJJ-WDB (N.D. Cal.), and such further argument and evidence as may be presented at or before the hearing.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION

On March 4, 2008, the Court granted Defendants' Motion to Dismiss with prejudice and entered judgment in Defendants' favor. The Court concluded that this case presented the same claims as the *Netbula v. STK I* case and was effectively Plaintiff's attempt to re-litigate issues that had already been presented to, and determined by, the Court. The Court found that dismissal with prejudice was appropriate "given the tactics that Plaintiff has pursued, which have ranged from duplicative to nearly vexatious." As the prevailing party in this wholly unnecessary and frivolous lawsuit, Defendants now seek their fees and costs under Section 505 of the Copyright Act.

Plaintiff's copyright lawsuit warrants an award of attorneys' fees like few others. It was unquestionably duplicative of Netbula's earlier suit, was filed for no legitimate purpose, and was

pursued long after the Court had ruled that the copyright claims against Defendants had no merit. Plaintiff's company, Netbula LLC, had originally sued Defendants Sun Microsystems ("Sun") and Storage Technology Corporation (StorageTek") in 2006, claiming that their use of Netbula software exceeded the scope of licenses granted to StorageTek in 2000 and 2004. Plaintiff's second lawsuit asserted essentially the same copyright claims. Worse, it came after the close of fact discovery on the copyright issues, after Defendants had moved for summary judgment based on their licenses, and after Plaintiff's previous attempts to substitute himself as plaintiff, intervene, seek a preliminary injunction, and otherwise pursue Netbula's copyright claims in his individual capacity and *pro se* had been squarely rejected by the Court.

Hoping for a "do over" before a different judge, Yue then hatched the idea of filing a separate lawsuit in his individual capacity. For no purpose other than harassment, he also augmented his duplicative complaint to add Sun's CEO, who had nothing to do with the alleged infringement, and a Sun in-house attorney, who likewise had no involvement in any copying or distribution of Netbula code, but rather had the misfortune of having attempted to discuss the matter rationally with Plaintiff. Plaintiff compounded the harm by knowingly violating a Court order and seeking a default, even though the Court had ordered that no response was due and no default would be taken.

It is no excuse that Plaintiff inflicted such needless expenses while appearing *pro se*. Indeed, Plaintiff's collusive "assignment" of Netbula's copyrights to himself was an attempted end-run around the rule that corporate entities must appear through counsel. Having previously pursued the claims through a *represented* corporate entity, Plaintiff cannot shield himself from the consequences of choosing to initiate duplicative claims without counsel. Indeed, when Plaintiff threatened to file his duplicative lawsuit *pro se*, Defendants warned of the consequences, and pleaded with Plaintiff to seek advice of counsel:

> We . . . suggest that you consider the consequences very seriously before filing such inappropriate pleadings—and obtain the advice of qualified counsel before you do so.
>
> I realize, of course, that I cannot keep you from filing with the Court whatever it is that you choose to file. It only costs a few hundred dollars to commence a lawsuit that could cost thousands to

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

MOTION FOR ATTORNEYS' FEES
AND COSTS

2

C-07-05850-MJJ

1  defend, and which Sun would seek to recover from you personally
   thereafter.  I therefore reiterate the importance of your obtaining
2  counsel as to all the consequences before you act.

3  *See* Declaration of Jedediah Wakefield in Support of Motion for Attorneys' Fees ("Wakefield

4  Decl.") ¶ 2 & Ex. A.  Plaintiff ignored this warning and forged ahead with this baseless lawsuit.

5      Moreover, Plaintiff was represented by counsel at the time that Defendants filed their

6  motion to dismiss.  Even then, Plaintiff pressed on with this effort to multiply the proceedings.

7  Plaintiff, represented by counsel, opposed the motion to dismiss and filed a baseless motion to

8  strike (which the Court denied), arguing against all evidence and contrary to controlling Ninth

9  Circuit authority that the case was not duplicative.

10      The right to file a lawsuit, *pro se* or otherwise, does not bring with it the right to waste

11  judicial resources, nor the right to punish victorious defendants by heaping additional attorneys'

12  fees upon them a second time.   Having gratuitously and willfully caused Defendants such

13  expenses, Plaintiff alone should bear the costs.

## II. ISSUE PRESENTED

14

15      1.      Should Defendants be awarded attorneys' fees and other costs under Section 505

16  of the Copyright Act following their successful defense of Plaintiff's legally and factually

17  unreasonable copyright infringement action, especially when the action was improperly motivated

18  and an award of fees would serve the purposes of the Copyright Act?

## III. FACTUAL BACKGROUND

19

20  A.      HISTORY OF THIS CASE

21      Plaintiff Dongxiao Yue ("Plaintiff") filed this lawsuit on November 19, 2007, alleging

22  that Defendants Storage Technology Corporation ("StorageTek") and Sun Microsystems, Inc.

23  ("Sun") had infringed two copyrights that had been assigned to him by his company, Netbula,

24  LLC ("Netbula").  Docket No. 1 [Complaint].  On December 10, Plaintiff filed an amended

25  complaint naming as additional defendants various employees and officers of StorageTek and

26  Sun, including Defendant Jonathan Schwartz (Sun's Chief Executive Officer) and Defendant

27  Julie DeCecco (Sun's Assistant General Counsel).  *See* Docket No. 9-2 [First Amended

28  Complaint].  This action was dismissed with prejudice and judgment entered on March 4, 2008,

MOTION FOR ATTORNEYS' FEES
AND COSTS                              3                    C-07-05850-MJJ

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1    on the ground that it was duplicative of an earlier-filed lawsuit initiated by Netbula, LLC

2    ("Netbula"), a company wholly owned by the Plaintiff.  *See* Docket No. 51 [Order Granting

3    Defendants' Motion to Dismiss].   The virtual identity of the two cases has already been

4    addressed at length in Defendants' motion to dismiss and in the Court's Order dismissing this

5    action, *see* Docket Nos. 35, 51, and need not be revisited here.  Suffice it to say, it was not a close

6    case.  *See, e.g.*, Order Granting Motion to Dismiss at 5:13-15 ("[T]he most important criteria in

7    determining if the actions present the same causes of action is whether the two actions arise out of

8    the same transactional nucleus of facts.  Here, they most certainly do.").

9           Even in the relatively short history of this case, which was improper in its entirety,

10   Plaintiff managed to waste judicial resources and impose unnecessary expenses on Defendants.

11   At the outset, despite the obviously related nature of these cases, Dr. Yue refused to file an

12   Administrative Motion to Consider Whether Case Should Be Related, as required by the Local

13   Rules.  *See* Civil L.R. 3-12.  Rather, Judge Illston—to whom the matter originally had been

14   assigned—*sua sponte* referred the question to Judge Jenkins.  *See* Docket No. 5.  One day later,

15   unaware of Judge Illston's referral, and in compliance with Civ. L.R. 3-12, Sun filed its own

16   motion to consider whether the two cases should be related. *See STK I* Docket No. 123.  Ignoring

17   the unquestionable overlap between the cases (and his prior representation that he would seek to

18   consolidate or relate the cases), Yue nevertheless sought leave from the Court to file a response to

19   the related case motion, hoping to keep the case from Judge Jenkins, who was by then growing

20   familiar with Plaintiff's tactics.  *See* Docket No. 36 [Declaration of Albert L. Sieber in Support of

21   Motion to Dismiss ¶ 5 & Ex. D (December 6, 2007 Letter to Honorable Martin J. Jenkins)].

22   Judge Jenkins ordered the two suits related on December 14, 2007.  Sun-Netbula Docket No. 135

23   [Order Relating and Order Reassigning Case].[1]

---

24   [1] Plaintiff's commencement of this lawsuit, and then resisting efforts to have it related to *STK I*,
     appears to have been improperly motivated by judge-shopping.  Even before he filed his
25   complaint in this action, Dr. Yue had filed an emergency motion with the Ninth Circuit Court of
     Appeals, seeking to have a new judge appointed to *STK I*, and had written to Judge Jenkins
26   accusing him of bias.  *See STK I* Docket No. 129 [Letter of Dr. Yue to Honorable Martin J.
     Jenkins Regarding Motion for Summary Judgment and Relating Cases at p.1 (citing this Court's
27   order granting summary judgment to defendants in the related *Netbula-BindView* Litigation as
     evidence of bias)]; *STK I* Docket No. 142 [Order Denying Request for Recusal].

28

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1    The Court also ordered on December 14, 2007 that no responsive pleadings would be due

2    and no default judgment entered in this case until the impact of the summary judgment motion in

3    *STK I* was known.  Plaintiff nevertheless filed a motion for default judgment against Defendants

4    Sun and StorageTek, requiring Defendants to incur additional fees preparing a response.  *See*

5    Docket Nos. 13-14.[2]  The Court rejected Plaintiff's motion out of hand, finding that "Plaintiff

6    clearly understood the Court's order" not to take a default, by his motion had "multiplied the

7    proceedings in this case unnecessarily" and that the motion itself was "untimely and

8    unnecessary."  Docket No. 41 [Order Denying Motion for Default Judgment at 4:11-12, 4:23-24].

9    Finally, Plaintiff, now represented by counsel, opposed Defendants' motion to dismiss

10    with arguments wholly contrary to recent, controlling Ninth Circuit authority, and filed a

11    groundless motion to strike evidence from the Court's own records, in the apparent hope of

12    excluding evidence that Netbula and Don Yue are essentially "one and the same."  Docket Nos.

13    42, 43.  These baseless filings necessitated a response, and further increased the fees Defendants

14    were forced to incur.

**B.    PLAINTIFF'S HISTORY OF HARASSING LITIGATION**

16    Regrettably, this is not the first time the Court and various defendants—including

17    Defendants in this action—have been burdened by Plaintiff's unreasonable conduct (either in his

18    individual capacity or through Netbula) in copyright cases in this District.  The Court noted that

19    Plaintiff's conduct in this case and in *STK I* was "nearly vexatious."  *See* Order Granting Motion

20    to Dismiss at 7:10.  His conduct in his other cases is equally troubling.[3]

---

[2] Concurrently with their opposition to the motion for default judgment, Defendants filed a motion for sanctions.  Docket No. 15.  In his opposition to that motion, Plaintiff blatantly misrepresented the record, feigning ignorance of the true meaning of the Court's December 14 Order, requiring Defendants to spend more time and resources setting the record straight.  *See* Docket Nos. 25, 31.  The Court was not fooled by Plaintiff's argument.  Order Denying Motion to Dismiss at 4:19-20 ("Plaintiff clearly understood the Court's order . . .").  Defendants' motion for sanctions was ultimately denied, with the stern warning that Plaintiff should not in the future further multiply the proceedings without a sufficient legal basis.  *Id.* at 5:3-4.  Yet Plaintiff did so one day later, filing a baseless Opposition to Defendants' Motion to Dismiss that ignored controlling Ninth Circuit authority.  *See* Docket No. 43.

[3] Besides the present case, the other cases, all of which have been related and handled by Judge Jenkins, are *Netbula, LLC v. BindView Development Corporation, et al.*, Case Number C-06-00711-MJJ-WDB ("*Netbula-BindView*"); *Netbula, LLC v. Greenwich Capital Markets, Inc.*, Case Number C-06-07143-MJJ; *Netbula, LLC v. Storage Technology Corporation, Sun*

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1    For example, in *Netbula-BindView*, Netbula—at Plaintiff's direction—filed a Rule 11

2   motion against defendants in that action.  The motion was so lacking in merit that Magistrate

3   Judge Chen not only denied it, but also awarded *Defendants* in that case $20,000 in attorneys'

4   fees for having to respond to it.  *See Netbula-BindView* Docket Nos. 103, 128, 193.   In *STK I*,

5   nearly a year after Netbula's unsuccessful TRO Application (*see STK I* Docket No. 18 [Reporter's

6   Transcript of Proceedings Held on December 5, 2006), Plaintiff filed a "Motion to Intervene and

7   Join as Plaintiff, for Injunctive Relief, and for Copyright Impoundment," again on the basis of the

8   purported assignment from Netbula, while Netbula's motion to substitute him as a party for the

9   copyright claims was still pending.  *STK I* Docket No. 68.  This procedurally improper motion

10  was subsequently ordered off-calendar by the Court.  *STK I* Docket No. 94.  Also in *STK I*,

11  Plaintiff filed an opposition to Defendants' motion to modify the protective order entered in the

12  *BindView* case to avoid duplicative discovery and allow the use relevant materials in *STK I*—

13  despite clear authority *encouraging* such modifications.  *See Netbula-BindView* Docket No. 303-

14  308.  When this Court entered its order allowing such modification, *see Netbula-BindView*

15  Docket No. 326, Plaintiff appealed—only to have that appeal dismissed *sua sponte* by the Ninth

16  Circuit for lack of jurisdiction after the record was compiled.  *See Yue-Chordiant* Docket No. 27

17  [Request for Judicial Notice Ex. B].

18    And so and so on:  Plaintiff's petition to the Ninth Circuit for an emergency stay of the

19  summary judgment hearing in *STK I* was summarily denied.  *Id.*  Ex. B.  After the writ was

20  denied, he further petitioned for a "reasoned decision"—to which the Ninth Circuit responded

21  with an order that he not file any other papers in that matter.  *Id.*  Plaintiff has also argued that

22  Judge Jenkins is biased against him, including complaints made to the Ninth Circuit and to

23  Congress.  Docket No. 11 [Letter Brief by Dongxiao Yue Regarding Motion for Summary

24  Judgment and Relating Cases].  And he has filed frivolous complaints against opposing counsel

25  that were promptly rejected by the State Bar.  Docket No. 36 [Declaration of Albert L. Sieber in

26

27  *Microsystems, Inc., et al.*, Case Number C-06-07391-MJJ ("*STK I*"); and *Yue v. Chordiant
    Software, Inc.*, C-08-0019-MJJ ("*Netbula*-Chordiant").  Defendants hereby request judicial notice

28  of the records in these cases.

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1    Support of Motion to Dismiss ¶ 6 & Ex. E].

2          Furthermore, in three of the cases, including this one, Plaintiff has also instituted a

3    practice of suing individual officers of Netbula's licensors—in each case, including the Chief

4    Executive Officers of publicly held companies—based on nothing more than their misfortune of

5    having received communications from Plaintiff purportedly addressing license royalties.  *See,*

6    *e.g.*, *Netbula-BindView* Docket No. 38 [First Amended Complaint ¶ 28, 30, 35-38 (suing the CEO

7    of Defendant BindView Development Corporation, on the basis of three letters sent by Plaintiff to

8    Mr. Pulaski and calls attempting to resolve the royalty dispute)][4]; *Yue-Chordiant* Docket No. 1

9    [Complaint ¶¶ 8, 27, 40 (suing CEO of Defendant Chordiant Software, Inc. on the basis of his job

10   title and his receipt of a letter from Plaintiff that allegedly had the function of informing of the

11   infringement, even though the letter only requested "software usage information" under a license

12   agreement with Netbula)].  This action, however, is arguably the most egregious example—

13   initiating claims against Sun officers and employees even after discovery showed those claims

14   had no merit.  *See* Section IV(B)(2)(b), below.

15                                    **IV. ARGUMENT**

16         The Copyright Act provides for an award of reasonable attorneys' fees "to the prevailing

17   party as part of the costs." 17 U.S.C. § 505.[5]   The Ninth Circuit has identified several non-

18   exclusive factors to guide a district court's discretion whether to award attorneys' fees under

19   Section 505:  "(1) the degree of success obtained; (2) frivolousness; (3) motivation; (4) the

20   objective unreasonableness of the losing party's factual and legal arguments; and (5) the need, in

21   particular circumstances, to advance considerations of compensation and deterrence."  *Entm't*

22   *Research Group v. Genesis Creative Group*, 122 F.3d 1211, 1229 (9th Cir. 1997) (citing *Fogerty*

23   _____

24   [4] The Court ultimately granted summary judgment on Plaintiff's copyright claim in the *BindView* case, as well as Plaintiff's fraud claim against BindView and its former CEO.

25   [5] In full, the statute provides:

26        In any civil action under this title, the court in its discretion may allow the
          recovery of full costs by or against any party other than the United States or an
27        officer thereof.  Except as otherwise provided by this title, the court may also
          award a reasonable attorney's fee to the prevailing party as part of the costs.

28   17 U.S.C. § 505.

     MOTION FOR ATTORNEYS' FEES                    7                      C-07-05850-MJJ
     AND COSTS

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1    *v. Fantasy, Inc.*, 510 U.S. 517, 534 n.19 (1994) ("*Fogerty I*")).  To award fees, not all of these

2    factors must be met, and, indeed, "[c]ourts have awarded costs for copyright claims based on a

3    single factor."  *See Robinson v. Lopez*, 69 U.S.P.Q.2d (BNA) 1241 (C.D. Cal. 2003) (citing, *inter*

4    *alia*, *Fantasy, Inc. v. Fogerty*, 94 F.3d 553, 558 (9th Cir. 1996) ("*Fogerty II*").

5         The Court's analysis of these factors ultimately should be informed by the purposes of the

6    Copyright Act.  *Perfect 10, Inc. v. CCBill LLC*, 488 F.3d 1102, 1120 (9th Cir. 2007) (citing

7    *Fogerty II*, 94 F.3d at 558).  The statute draws no distinction between plaintiffs and defendants,

8    and accordingly "[f]ees are proper under this statute when either successful prosecution or

9    successful defense of the action furthers" those purposes.  *Id.* Ultimately, the district court's

10   decision to grant or deny attorneys' fees is reviewed for an abuse of discretion.  *Id.* at 1109.

11   **A.    DEFENDANTS ARE THE PREVAILING PARTIES**

12        There is no question that Defendants are "prevailing parties" under Section 505.

13   Defendants obtained complete relief in this action, obtaining a dismissal of the entire action *with*

14   *prejudice* and an entry of judgment thereon.  *See* Docket Nos. 51-52 [Order Granting Motion to

15   Dismiss; Judgment].  As a result, Defendants have ensured that they will not be subject to

16   successive copyright lawsuits by Plaintiff (or his company, Netbula) over their licensed use of

17   Netbula's software, and that the Court's granting of summary judgment on the merits in *STK I*

18   will not be subject to further collateral attack.  *See* Order Granting Motion to Dismiss at 4:13-22

19   (dismissing action in part because "[i]n *Netbula-Sun* the Court granted summary judgment on the

20   merits of the claims that are now presented again in *Yue-Sun*, [and] therefore the rights of the

21   defendants in *Netbula-Sun* would be destroyed or impaired by prosecution of *Yue-Sun*.").  In

22   addition, Defendants established that Plaintiff is not entitled to assert new copyrights in Netbula's

23   software in order to revive claims against them.  *See id.* at 5:8-10 ("[I]f the facts underlying

24   *Netbula-Sun* supported copyright infringement of additional copyrights, Netbula should have

25   asserted violations of these copyrights in *Netbula-Sun* and not by filing a subsequent action.").

26        There need not be a finding of non-infringement in order for a defendant to be considered

27   a prevailing party; a court-ordered dismissal with prejudice is more than sufficient.  *See, e.g.*,

28   *Riviera Distribs. v. Jones*, Case Nos. 06-2043, 06-3692, __ F.3d __, 2008 U.S. App. LEXIS 3498

MOTION FOR ATTORNEYS' FEES
AND COSTS                                    8                          C-07-05850-MJJ

1    (7th Cir. Feb. 20, 2008) (ordering district court to award defendant attorneys' fees under

2    Copyright Act where *plaintiff* moved for voluntarily dismissal of claim and district court

3    dismissed the case with prejudice); *see also, e.g.*, *Ninox TV Ltd. v. Fox Entm't Group, Inc.*, 80

4    U.S.P.Q.2D (BNA) 1467, at *3-*4 (S.D.N.Y. 2006) (stipulated dismissal of copyright action with

5    prejudice rendered defendants prevailing parties under Section 505). As explained in *Riviera*, "a

6    litigant 'prevails' (for the purpose of fee-shifting statutes) when it obtains a material alteration of

7    the legal relationship of the parties. A judgment in a party's favor has such an effect." *Id.* at *3

8    (internal quotation marks and citations omitted). Defendants have plainly met this standard.

9    **B.    EACH OF THE NINTH CIRCUIT FACTORS SUPPORTS AN AWARD OF
       ATTORNEYS' FEES**

10

11    **1.    Defendants' Degree of Success in This Action Was Total**

12    As described in Section I, Defendants' success in this case was total. The action was

13    dismissed with prejudice, judgment entered, and Defendants have established that Plaintiff is not

14    entitled to assert new copyrights against Defendants for their use of Netbula's software or

15    otherwise collaterally attack the Court's order on summary judgment in *STK I*. This factor

16    strongly supports an award of attorneys' fees.

17    **2.    Plaintiff's Lawsuit Was Both Legally and Factually Unreasonable**

18    Whether a lawsuit is legally or factually unreasonable is measured by an *objective*

19    standard. *See Fogerty I*, 510 U.S. at 534 n.19; *Perfect 10*, 488 F.3d at 1120. Plaintiff's lawsuit

20    was both factually *and* legally unreasonable under this standard, as explained in the following

21    sections, weighing doubly in favor of fees.

22    **a.    Plaintiff's Lawsuit Was Legally Unreasonable**

23    Plaintiff's duplicative lawsuit was legally unreasonable in at least three important ways:

24    *First*, even a cursory review of the relevant case law—particularly the recent decision by

25    the Ninth Circuit in *Adams v. Cal. Dep't of Health Servs.*, 487 F.3d 684 (9th Cir. 2007), *cert.*

26    *denied*, 128 S. Ct. 807 (U.S. 2007), which this Court recognized as dispositive in granting

27    Defendants' Motion to Dismiss—would have revealed that Plaintiff had no right to bring a

28    second copyright action over the exact same license dispute that had arisen between his company

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

MOTION FOR ATTORNEYS' FEES                      9                    C-07-05850-MJJ
AND COSTS

1   and StorageTek.  Even the superficial differences between the two lawsuits—such as the fact that

2   this second lawsuit was nominally brought by Plaintiff rather than his wholly-owned company,

3   and named additional defendants—were addressed by *Adams*.  *Adams* unequivocally held that

4   plaintiffs and their privies have "no right to maintain two separate actions involving the same

5   subject matter at the same time in the same court and against the same defendant[s]" and their

6   privies.  *Id.* at 688.  Plaintiff's suit was ill-conceived from the get-go.

7       *Second*, Plaintiff acted unreasonably in continuing to prosecute this action even after the

8   Court granted Defendants' Motion for Summary Judgment in *STK I* on January 18, 2008.  *See*

9   *STK I* Docket No. 138 [Order Granting Motion for Summary Judgment].  That Order

10  conclusively established that Defendants' use of Netbula's PowerRPC software was licensed and

11  did not constitute copyright infringement.  *See id.*  At that point, Plaintiff's successive lawsuit—

12  which was premised on the same alleged misuse of Netbula's software—became even more

13  frivolous, because the Court had determined as a matter of law that the license entered into

14  between Netbula and StorageTek foreclosed any claim for copyright infringement against

15  Defendants.  *See id.*; *see also* Order Granting Motion to Dismiss at 4:21-5:1 ("In both actions,

16  Plaintiff alleges the same use, in excess of the same licenses, of the same software.").  At that

17  point, even if Plaintiff had initially believed (albeit incorrectly) that his duplicative suit was

18  reasonably, he should have dismissed his case.

19      *Third*, Plaintiff was *specifically warned* of the consequences of filing this duplicative

20  action.  On October 26, 2007, after Defendants had filed for summary judgment in *STK I*,

21  Plaintiff sent an e-mail to Defendants' counsel announcing his intention to file a second lawsuit

22  against Defendants in his individual capacity if they did not agree to allow him to be named as

23  party-plaintiff in *STK I*.  *See* Wakefield Decl. ¶ 2 & Ex. A.[6]  The e-mail reads in its entirety:

24          I am writing to seek a stipulation regarding Netbula's substitution
            of party as to the copyright claim filed in the Nebula [sic] v.
25          StorageTek case. As the copyright owner of the relevant software
            and related claims, I am about to assert additional claims against
26

27  [6] This e-mail and Defendants' response filed with the Court on December 5, 2007 as part of
    Exhibit B to the Declaration of Dongxiao Yue in Support of Plaintiff's Motion to Substitute Party
28  as to the Copyright Claim in the *STK I* case.  *See STK I* Docket No. 99.

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

StorageTek. This can be done via an amended complaint in the C06-07391-MJJ case, or ***I can file a new separate infringement action and move to relate/consolidate the new action to the current action.***

For judicial economy, I think it's far efficient for you to stipulate to the substitution of party by replacing Dongxiao Yue as the copyright plaintiff in the C06-07391-MJJ case.

***If you do not stipulate to the substitution, I will commence the new action next week.***

*Id.* (emphases added). Defendants' counsel responded to this e-mail by noting that "[c]ommencing a separate lawsuit would unnecessarily proliferate litigation, at least if the claims that you with to raise are of a subject matter and causes of action duplicative of the existing action," and, as noted above, went on to suggest that Plaintiff confer with counsel before filing any new action or risk a motion to recover attorneys' fees:

We . . . ***suggest that you consider the consequences very seriously before filing such inappropriate pleadings—and obtain the advice of qualified counsel before you do so.*** Magistrate Judge Chen's ruling should have demonstrated that filing unwarranted motions is a serious matter and has very real consequences.

I realize, of course, that I cannot keep you from filing with the Court whatever it is that you choose to file. ***It only costs a few hundred dollars to commence a lawsuit that could cost thousands to defend, and which Sun would seek to recover from you personally thereafter.*** I therefore reiterate the importance of your obtaining counsel as to all the consequences before you act.

*Id.* (emphases added).[7] Plaintiff was therefore on notice of the ramifications of his actions, but nevertheless followed through on his threat to file a separate action. This further illustrates the unreasonableness of this lawsuit, and further supports an award of attorneys' fees. *See, e.g.*, *Broadcast Music, Inc. v. Niro's Palace, Inc.*, 619 F. Supp. 958, 964 (N.D. Ill. 1985) (defendant's failure to heed plaintiff's warnings regarding his actions rendered award of attorneys' fees against him appropriate).[8]

---

[7] The mention of "Magistrate Judge Chen's ruling" is a reference to the Rule 11 Motion filed by Netbula at Plaintiff's direction in *Netbula-BindView*. *See* Section III(B), above.

[8] At the time that he threatened to initiate this lawsuit, and at the time he actually filed it, Plaintiff could easily have sought legal counsel, because Netbula was represented by counsel in the *STK I* case. *See also* Section IV(E) below (explaining why Plaintiff's *pro se* status is irrelevant to the Court's analysis of this motion).

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1

**b.    Plaintiff's Lawsuit Was Factually Unreasonable**

2    Plaintiff's lawsuit contains very few differences from *STK I*, and none that render it non-

3    duplicative.  One difference between the two lawsuits is relevant to this motion, however:

4    Plaintiff's decision to name Jonathan Schwartz (Sun's CEO) and Julie DeCecco (Sun's Assistant

5    General Counsel) as additional defendants in the First Amended Complaint.  The allegations

6    against them consist of communications between Plaintiff (in his capacity as Netbula's

7    representative) and Ms. DeCecco and Mr. Schwartz (among others), each of which occurred no

8    earlier than *June 2006*.  *See* Docket No. 9 [First Amended Complaint ("FAC") ¶¶ 60-61].

9    Specifically, Plaintiff alleges that he sent two e-mails to Mr. Schwartz in August and September

10    2006, and that he had a conference call with Ms. DeCecco in June 2006.  *Id.*  These allegations

11    culminate in Plaintiff's baseless allegation that Mr. Schwartz and Ms. DeCecco participated in a

12    scheme of communicating with Plaintiff to allow Sun and/or StorageTek to continue their

13    allegedly infringing activities into 2006 and beyond:

14    
>    [o]n information and belief, *Julie DeCecco and Jonathan Schwartz,*
15    *instead of stopping the infringement, employed delay tactics to*
>    *continue the infringement.* **Schwartz and DeCecco forwarded**
16    **Plaintiff's email messages and related documents to other SUN**
>    **employees (including Melnick) and potentially SUN's outside**
17    **counsel, preparing for lawsuit** *while permitting the infringement*
>    *to continue at SUN and its customers*. . . .

18    *Id.* ¶ 62 (emphases added).

19    These allegations are plainly at odds with the factual record already developed in the *STK*

20    *I* case.  It shows that the allegedly infringing acts by Sun and/or StorageTek (distributing software

21    containing the licensed Netbula code) stopped in late 2005, more than six months before Dr.

22    Yue's communications with Ms. DeCecco and Mr. Schwartz even occurred.  *See STK I* Docket

23    No. 13 [Declaration of Michael Abramovitz in Support of Defendants' Opposition to Application

24    for Temporary Restraining Order and Impoundment ¶ 3]; *STK I* Docket No. 65 [Declaration of

25    Michael Abramovitz in Support of Defendants' Motion for Summary Judgment or Summary

26    Adjudication of License Issues ¶ 9]; Wakefield Decl. ¶ 3, Ex. B [30(b)(6) Deposition of Michael

27

28

MOTION FOR ATTORNEYS' FEES
AND COSTS                                    12                              C-07-05850-MJJ

1    Abramovitz at pp.42:22-47:21 ("Abramovitz Depo.")].  Any claim that Mr. Schwartz or Ms.

2    DeCecco facilitated infringement six month later was absurd.

3         Given the depth of Plaintiff's involvement in *STK I*, there is no question that Plaintiff was

4    well aware of this fact.  He was, for example, present at the deposition where Sun's Rule 30(b)(6)

5    witness testified that the Netbula software that had allegedly been infringed had been removed in

6    late 2005.  *Netbula-Sun* Docket No. 107 Ex. 44 [30(b)(6) Deposition of Michael Abramovitz

7    (Oct. 23, 2007), at p.3].  Plaintiff's decision to include frivolous factual allegations in his

8    complaint, especially after extensive opportunity for discovery to substantiate them, further

9    supports an award of attorneys' fees.  *Entm't Research Group v. Genesis Creative Group*, 122

10   F.3d 1211, 1229 (9th Cir. 1997) (district court did not err in deciding to award attorneys' fees to

11   defendant where there was no evidence to support claims made in complaint after opportunity for

12   discovery); *cf. Truesdell v. S. Cal. Permanente Medical Group*, 293 F.3d 1146, 1553-54 (9th Cir.

13   2002) (upholding sanctions under Rule 11's "objective reasonableness" standard, where

14   complaint included allegations litigant "must have known were false").  Thus, as discussed

15   below, Plaintiff's addition of claims against Mr. Schwartz and Ms. DeCecco was entirely

16   unjustified, and served no purpose other than harassment.

17   **C.    PLAINTIFF'S DUPLICATIVE LAWSUIT WAS IMPROPERLY MOTIVATED
         AND OTHERWISE HARASSING AND VEXATIOUS**

18

19       That Plaintiff included baseless allegations against individuals such as Defendants

20   Schwartz and DeCecco is just another example of his pattern and practice of vexatiously

21   multiplying the proceedings in the five separate actions he has now filed against Netbula's

     licensees either in his personal capacity or in Netbula's name.  *See Baker v. Urban Outfitters,*

22   *Inc.*, 431 F. Supp. 2d 351, 358 (S.D.N.Y. 2006) (noting that while bad faith is not required to

23   award prevailing defendants attorneys' fees under the Copyright Act, a finding of bad faith

24   strongly supports an award of fees, and "[b]ad faith motivation . . . may be inferred from false

25   allegations in the complaint").

26       Plaintiff is not interested in a just and speedy resolution of his copyright claims on the

27   merits.  Rather, his conduct suggests that he is most interested in inflicting as much cost as

28

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1   possible through unnecessary, unfounded motions and other maneuvers against what he considers

2   to be deep-pocketed defendants—a tactic that is singularly inexpensive for a Plaintiff who

3   chooses to proceed *pro se*. *See, e.g.*, Docket No. 27 [Plaintiff's Corrected Opposition to Motion

4   for Sanctions at 6:15-18 (arguing that Plaintiff cannot possibly "harass" Defendant Sun because it

5   has "billions of dollars in shareholder equity")]. Plaintiff's conduct in this case, the underlying

6   *STK I*, and other cases he has filed personally or on Netbula's behalf also strongly support an

7   award of attorneys' fees in this matter. *See, e.g.*, *Perfect 10 v. CCBill LLC*, 481 F.3d 751, 769

8   (9th Cir. 2005) (suggesting that whether plaintiff "is a serial filer of nuisance copyright claims"

9   may be relevant to determination of whether to award defendant attorneys' fees).

10      This Court has already found that Plaintiff's conduct in this case and the underlying *STK I*

11   matter to be "nearly vexatious." Order Granting Motion to Dismiss at 7:10. Plaintiff's course of

12   conduct in the several cases filed by him or his company amply supports this conclusion. *See*

13   Section III(B), above.

14      Plaintiff also sought damages in this action in an amount "likely to exceed $20,000,000."

15   FAC ¶ 80. Regardless of the merits of the complaint or this claim for damages,[9] Defendants—

16   particularly Sun, a publicly-traded company with obligations to its shareholders—were obligated

17   to undertake a vigorous defense of a Plaintiff who declares the stakes so high. Defendants should

18   be compensated for being forced to do so. *See, e.g.*, *Baker*, 431 F. Supp. 2d 351, 359 (S.D.N.Y.

19   2006) (awarding fees where defendant had no choice but to expend resources to defend against

20   exorbitant claim for damages).

21   **D.      AN AWARD OF ATTORNEYS' FEES TO DEFENDANTS WOULD FURTHER
             THE PURPOSES OF THE COPYRIGHT ACT**

22      A duplicative lawsuit, requiring parties to defend repeatedly against the same cause of

23   action, serves no purpose other than to force defendants to spend time and resources combating

24

25   [9] This number, rather arbitrarily, is twice that alleged in *STK I* for the same course of conduct, *see STK I* ¶ 91, and pursuing it was particularly frivolous following the Court's implicit

26   determination in *STK I* that Netbula's damages for StorageTek's use of its software is limited to its contract damages, which would be awarded (if at all) based on a rate of less than $6,000 for

27   each 1,000 copies made. *See STK I* Docket No. 102 [Declaration of Dongxiao Yue in Opposition to Defendants' Motion for Summary Judgment ¶¶ 26, 56 & Exs. 9, 23 (attaching license

28   agreements between Netbula and StorageTek)].

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1  them.  There is certainly no way in which such lawsuits further the purposes of the Copyright Act.

2  The Seventh Circuit recently recognized as much in reversing the district court's decision denying

3  defendants' motion for attorneys' fees after the plaintiff filed a second lawsuit over alleged

4  continuing infringement.  *See Riviera*, 2008 U.S. App. LEXIS at *4-*5 (noting parties "have been

5  at each others' throats for years, and this is the second suit based on fundamentally the same

6  claim of infringement").

7      Relatedly, this case presents no novel or compelling issues of copyright law.  A number of

8  courts have suggested that awards of attorneys' fees are least appropriate in cases brought in an

9  unsettled area of law.  *See, e.g.*, *Yankee Candle Co. v. Bridgewater Candle Co., LLC*, 140 F.

10  Supp. 2d 111, 119 (D. Mass. 2001) (awarding defendant attorneys' fees under Copyright Act; had

11  plaintiff's "complaint raised a novel issue of law or fact, or even put forward claims which could

12  be called objectively reasonable, an award of fees might not serve the purposes of copyright

13  law").  Whether Plaintiff's lawsuit was duplicative presents no novel copyright issues.

14      Finally, the Supreme Court has recognized that copyright defendants might contribute as

15  much to the dissemination of new creative works as copyright plaintiffs.  *See Fogerty I*, 510 U.S.

16  at 526-27.  This is particularly true in the software licensing arena, where companies—such as

17  StorageTek—routinely enter into agreements entitling them to use others' copyrighted works in

18  order to develop new products.  *See* FAC ¶¶ 21-23 (describing StorageTek products that were

19  developed with, or incorporated portions of, software licensed from Netbula).  An award of

20  attorneys' fees would serve the valuable function of protecting licensees who themselves are

21  creating new works from successive lawsuits over the same agreement—injecting some minimal

22  level of predictability over the conduct of disputes over the parties' respective rights and

23  responsibilities.

24  **E.    PLAINTIFF IS NOT ENTITLED TO LENIENCY BASED ON HIS *PRO SE* STATUS**

25      Plaintiff will likely argue that he should be entitled to leniency based on his *pro se* status.

26  In this case, at least, that dog won't hunt.  Courts routinely award attorneys' fees under Section

27  505 against *pro se* plaintiffs so long as the relevant factors support the award.  *See, e.g.*,

28

1  *Amadasun v. Dreamworks, LLC*, 359 F. Supp. 2d 1367 (N.D. Ga. 2005) (awarding attorneys' fees

2  to defendant movie studios against *pro se* plaintiff); *Chivalry Film Prods. v. NBC Universal, Inc.*,

3  2007 U.S. Dist. LEXIS 86889 (S.D.N.Y. Nov. 7, 2007) (collecting cases awarding fees against

4  *pro se* copyright litigants).

5  Moreover, any possible leniency towards Plaintiff as a result of his current *pro se* status is

6  particularly misplaced under the peculiar circumstances of this case. Most significantly,

7  Plaintiff's *pro se* status was a *choice*, the direct result of a collusive assignment between himself

8  and his company, Netbula, motivated at least in part by a desire to relitigate Netbula's claims

9  without using counsel, even though Netbula can only appear through counsel. The Court has

10  already so found in denying Netbula's motion to name Plaintiff as substitute plaintiff in *STK I*.

11  *See* Order Granting Motion to Dismiss at 2:16-18 ("Netbula's counsel moved to withdraw from

12  [*STK I*] and substitute Yue as a *pro se* plaintiff. The Court did not grant Plaintiff's request to

13  proceed *pro se* because, inter alia, he could not, as a *pro se* litigant, represent the rights of the

14  entity."). As Judge Jenkins stated on the record, Dr. Yue "wants to represent himself in this

15  matter . . . . [T]he record is abundantly clear. The inferences are extremely strong that the

16  assignment was made in view of being able to appear before the Court . . . ." *STK I* Docket

17  No. 139 [Transcript of November 20, 2007 at 10:21-11:12, 16:20-17:1].

18  Indeed, rather than wait for the Court to render its decision on his pending motion to

19  substitute for Netbula as plaintiff in *STK I*, Plaintiff filed this action *one day* before the hearing on

20  that motion on November 20, 2007. He filed this action in the face of the substantial authority

21  that had been offered by Defendants on that motion—and ultimately accepted by the Court—that

22  he was not entitled to represent *pro se* claims relating to Netbula's copyrights that Plaintiff had

23  assigned to himself. *STK I* Docket No. 82 [Opposition to Plaintiff's Motions to Substitute and

24  Parties and for Withdrawal of Counsel]. Having deliberately engineered an effort to bring his

25  company's claims *pro se*, and thereby circumvent the rule that companies cannot appear in

26  federal court except through licensed counsel, Plaintiff cannot now claim any special solicitude

27  from such status. *Graham-Humphreys v. Memphis Brooks Museum of Art, Inc.*, 209 F.3d 552

28  (6th Cir. 2000) ("[A] willfully unrepresented plaintiff volitionally assumes the risks and accepts

MOTION FOR ATTORNEYS' FEES
AND COSTS                    16                    C-07-05850-MJJ

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1   the hazards which accompany self-representation." (citing *MacNeil v. United States*, 508 U.S. 106

2   (1993))).

3          Plaintiff's current *pro se* status is especially unpersuasive in resisting this motion for other

4   reasons as well.  *First*, as noted above, Plaintiff had ready access to counsel at the time he

5   collusively assigned himself the copyrights at issue in this case and the *STK I* case and at the time

6   he filed this lawsuit, and indeed throughout the course of this litigation.  This is because Netbula,

7   his company, was (and still is) represented by counsel in *STK I*.  Accordingly, Plaintiff could have

8   sought legal counsel regarding the merits of this second action and its possible consequences.

9   *Second*, again as noted above, he was specifically warned of the consequences of bringing this

10  duplicative action by Defendants' counsel, but nevertheless persisted in bringing his claim.

11  *Third*, Plaintiff was *actually represented by counsel* in this action during the entire briefing

12  schedule on Defendants' dispositive Motion to Dismiss.  *See* Docket Nos. 34-35 [Notice of

13  Substitution of Counsel (filed January 28, 2008); Motion to Dismiss Complaint (filed January 29,

14  2008)].  Plaintiff sought to return to *pro se* status on February 21, 2008, only after filing (through

15  counsel) his baseless opposition, and after Defendants' had filed their reply brief in support of the

16  motion to dismiss.  *See* Docket No. 47-48 [Notice of Substitution of Counsel and Proposed

17  Order].  *Fourth*, he was personally on notice of the facts developed in *STK I* that render his

18  complaint factually unreasonable.  *See* Section IV(B)(2)(b), above.  Under the circumstances,

19  there is no basis to treat Plaintiff differently than any other litigant.[10]

20  F.   **DEFENDANTS' ATTORNEYS' FEES ARE REASONABLE**

21         Once a court determines that an award of attorneys' fees is proper, it must award

22  reasonable attorneys' fees incurred by the prevailing party.  *Traditional Cat Ass'n, Inc. v.*

23

---

24  [10] As noted in *Chivalry Film*, ability to pay might be a relevant consideration in determining the
    amount of attorneys' fees to be awarded.  *See* 2007 U.S. Dist. LEXIS at *10-*11; *see also Ets-*

25  *Hokin v. Skyy Spirits*, Inc., 323 F.3d 763 (9th Cir. 2003) (noting that the "chilling effect . . . on an
    an impecunious plaintiff" might be relevant to a determination of attorneys' fees).  *But see*

26  *Harrison Music Corp. v. Tesfaye*, 293 F. Supp. 2d 80, 85 (D.D.C. 2003) ("The decision to award
    attorney's fees is based on whether imposition of the fees will further the goals of the Copyright

27  Act, not on whether the losing party can afford to pay the fees.").  Plaintiff has never suggested
    that he would lack the financial resources needed to be able pay the reasonable attorneys' fees

28  sought by Defendants' in this action.

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1    *Gilbreath*, 340 F.3d 829, 832 (9th Cir. 2003).  "An award of attorneys' fees should reflect the

2    time that was reasonably necessary to successfully prosecute the copyright claims, including any

3    time spent responding to motion or other actions by the adverse party." *Frank Music Corp. v.*

4    *Metro-Goldwyn-Mayer Inc.*, 886 F.2d 1545, 1557 (9th Cir. 1989).

5            Defendants' counsel has incurred fees and other expenses in excess of  $92,000 in

6    defending Plaintiff's duplicative claims and obtaining the dismissal.  Wakefield Decl., ¶¶5-6, Ex.

7    C.  This includes time spent (1) reviewing and analyzing the two complaints filed in this action,

8    (2) participating in case management activities, including preparation of a case management

9    statement and attending the case management conference, (3) assessing issues pertaining to

10   service of process on the individual defendants under Colorado and California law, (4) reviewing

11   and responding to Plaintiff's Motion for Entry of Default Judgment; (5) researching, analyzing

12   and drafting Defendants' Motion to Dismiss; (6) reviewing Plaintiff's Opposition to Defendants'

13   Motion to Dismiss and researching and preparing a Reply; (7) reviewing Plaintiff's Motion to

14   Strike and researching and preparing a response; (8) communications with clients, Mr. Yue, and

15   opposing counsel; and (9) preparation of the instant motion.  *Id.*  This does not include time spent

16   preparing Defendants' Motion for Sanctions or their Reply in support thereof. *Id.*

17           Defendants' counsel, Fenwick & West LLP, is a firm of over 250 attorneys which

18   specializes in providing legal services for technology companies.  *Id.* ¶ 4.  The firm's Litigation

19   Group has extensive experience and expertise in handling disputes for technology companies in

20   the areas of copyrights, patents, trade secrets, trademarks, securities, antitrust, employment, tax,

21   and complex commercial litigation.  *Id.*  The hourly rates charged by Fenwick are set so as to be

22   comparable to and competitive with rates generally charged by other full service San Francisco

23   Bay Area law firms for attorneys of similar experience, where both Plaintiff and Defendant Sun

24   reside. *Id.*

25           Although the legal issues presented by Plaintiff's lawsuit were not particularly complex,

26   the factual record was.  Furthermore, it was appropriate for Defendants to engage Fenwick to

27   dispose of this action in light of Fenwick's representation of Sun and StorageTek in the

28   underlying *STK I* action, and Fenwick's previous successful defense the related case against

MOTION FOR ATTORNEYS' FEES                    18                      C-07-05850-MJJ
AND COSTS

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1  Symantec, BindView, and BindView's CEO, Eric Pulaski.  A vigorous response to this action

2  was also required, both because Plaintiff had alleged over $20,000,000 in damages, and because

3  securing an early dismissal of this action was crucial in light of Plaintiff's established record of

4  filing baseless motions and otherwise impeding the just and speedy resolutions of actions he

5  initiates.

6  **G.    DEFENDANTS ALSO SEEK AN AWARD OF OTHER COSTS**

7      The prevailing party in a copyright infringement action may recover, in addition to the

8  costs traditionally awarded to litigants under 28 U.S.C. § 1920, the out-of-pocket expenses

9  incurred by its attorney and passed on to the client.  *Twentieth Century Fox Film Corp. v. Entm't*

10  *Distrib.*, 429 F.3d 869, 884-85 (9th Cir. 2005); *Nat'l Football League v. Prime Time 24 Joint*

11  *Venture*, 131 F. Supp. 2d 458, 484 (S.D.N.Y. 2001).  To the extent not awarded as attorneys' fees,

12  Defendants accordingly request a recovery of full costs in the amount of $92,628.40.

13  **V. <u>CONCLUSION</u>**

14      For the foregoing reasons, Defendants respectfully request that their Motion for

15  Attorneys' Fees and Costs be granted, and that they be awarded fees and costs to be determined at

16  the conclusion of briefing an argument on this Motion, but in an amount not less than $92,628.40.

17                          Respectfully

18  Dated: March 18, 2008              FENWICK & WEST LLP

19

20                          By:   /s/ JEDEDIAH WAKEFIELD
                                       Jedediah Wakefield
21

22                          Attorneys for Named Defendants SUN
                            MICROSYSTEMS, INC.,
23                          MICHAEL MELNICK, JULIE DECECCO,
                            MICHAEL P. ABRAMOVITZ,
24                          LISA K. RADY, and JONATHAN SCHWARTZ

25

26

27

28

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

LAURENCE F. PULGRAM (CSB NO. 115163)
*lpulgram@fenwick.com*
JEDEDIAH WAKEFIELD (CSB NO. 178058)
*jwakefield@fenwick.com*
ALBERT L. SIEBER (CSB NO. 233482)
*asieber@fenwick.com*
LIWEN A. MAH (CSB NO. 239033)
*lmah@fenwick.com*
FENWICK & WEST LLP
555 California Street, 12th Floor
San Francisco, CA  94104
Telephone:     (415) 875-2300
Facsimile:     (415) 281-1350

Attorneys for Named Defendants
SUN MICROSYSTEMS, INC.,
MICHAEL MELNICK, JULIE DECECCO,
MICHAEL P. ABRAMOVITZ,
LISA K. RADY, and JONATHAN SCHWARTZ

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| DONGXIAO YUE,<br><br>                    Plaintiff,<br><br>v.<br><br>STORAGE TECHNOLOGY<br>CORPORATION, a Delaware corporation;<br>SUN MICROSYSTEMS, INC., a Delaware<br>corporation; MICHAEL MELNICK, an<br>individual; JULIE DECECCO, an<br>individual; MICHAEL P. ABRAMOVITZ,<br>an individual; LISA K. RADY, an<br>individual; JONATHAN SCHWARTZ, an<br>individual; and DOES 1-1000, inclusive,<br><br>                    Defendant. | Case No.  C-07-05850-MJJ<br><br>**[PROPOSED] ORDER GRANTING<br>DEFENDANTS' MOTION FOR<br>ATTORNEYS' FEES AND COSTS**<br><br>Date:        April 22, 2008<br>Time:        9:30 a.m.<br>Dept:        TBD<br>Judge:       TBD |

*Fenwick & West LLP*
*ATTORNEYS AT LAW*
*SAN FRANCISCO*

1    The Motion of Defendants Sun Microsystems, Inc. Michael Melnick, Julie DeCecco,

2  Michael P. Abramovitz, Lisa K. Rady, and Jonathan Schwartz for attorneys' fees and other costs

3  under Federal Rule of Civil Procedure 54(d) and Section 505 of the Copyright Act came on

4  regularly for hearing on April 22, 2008.  Plaintiff Dongxiao Yue opposed the Motion.

5  Defendants appeared through counsel, and Plaintiff appeared *pro se*.

6    The matter having been submitted, and after considering the Motion, all papers filed in

7  support thereof and in opposition thereto, and the parties' arguments,  IT IS HEREBY

8  ORDERED THAT:

9    Pursuant to Federal Rules of Civil Procedure 54(d) and 17 U.S.C. § 505, Plaintiff is

10  ordered to pay fees and costs to Defendants, by having delivered to the offices of Defendants'

11  counsel of record a certified check in the amount of

12  $_____, within ten days of the date of this Order.

13    **IT IS SO ORDERED**.

14

15

16  Dated: _____, 2008

    _____
    JUDGE OF THE UNITED STATES
17    DISTRICT COURT

18

19  25689/00405/LIT/1282256.1

20

21

22

23

24

25

26

27

28

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO