DONGXIAO YUE
2777 ALVARADO ST., SUITE C
SAN LEANDRO, CA 94577
Telephone:  (510) 396-0012
Facsimile:  (510) 291-2237
E-Mail:  ydx@netbula.com

*Pro Se*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DONGXIAO YUE, <br><br> Plaintiff, <br><br> v. <br><br> Storage Technology Corporation, et al., <br><br> Defendants. | Case No. C07-05850-MJJ <br> C07-05850-MJJ <br> **DECLARATION OF DONGXIAO YUE STATING FACTS AND REASONS FOR THE BELIEF THAT JUDGE MARTIN J. JUDGE JENKINS HAS PERSONAL BIAS, PREJUDICE AGAINST HIM** <br><br> [ 28 U.S.C. § 144, § 455, Civ. L.R. 3-15] |

I, DONGXIAO YUE, declare:

1.  I am the *pro se* plaintiff in the instant case. I make this declaration in support of the motion to disqualify Judge Martin J. Jenkins ("Judge Jenkins") from the instant case pursuant to 28 U.S.C. § 144 and Civil Local Rule 3-15 of the Northern District of California.

2.  I have personal knowledge of the facts I am about to state and, if called on to do so, I could competently testify to those facts.

-1-

Case No. C07-05850-MJJ        28 U.S.C. § 144 DECLARATION

3. In June 2007, I wrote a blog article which criticized an order of a Magistrate Judge. On August 28, 2007, Netbula's former counsel talked to a magistrate judge for extended time and then immediately told me the stuff I wrote blew my case. She specifically told me what the magistrate judge told her: my blog article had offended Judge Jenkins. Netbula's former counsel also told me that she got a hint that an adverse ruling against Netbula had already been in place because of the offending blog.

4. On August 31, 2007, Judge Jenkins signed an order that dismissed Netbula's copyright, contract and fraud claims against Symantec defendants despite the fact that defendants made vast number of copies of PowerRPC software for years without paying anything. In his order, Judge Jenkins ignored key evidence. Such omitted evidence included BindView's disclosure letter to Symantec, which stated that BindView did not pay licenses fees and owed Netbula license fees. I later filed a motion seeking to unseal part of this disclosure letter in the name of "public interest."

5. On October 22, 2007, pursuant to FRCP 24(a) and the Copyright Act, acting *pro se*, I filed a motion to intervene and for copyright injunction in the *Netbula v. SUN* (C06-07391) case, alleging irreparable harm from defendants' ongoing infringement of the copyrights I personally owned, based on newly discovered evidence.

6. On October 23, 2007, SUN defendants filed a motion for summary judgment. However, their motion was based on a fabricated or phantom declaration -- they had not been able to locate the declarant – Michael Melnick -- to review his declaration.

7. During this time, Defense counsel Laurence Pulgram sent numerous emails directly to me, discussing the substantive issues in the *Netbula v. SUN* (C06-07391-MJJ) case. In an October 25, 2007 email to me, Mr. Pulgram talked about Netbula's former counsel's motion to withdraw

-2-

from the C06-07391-MJJ case, Netbula's motion to substitute party, Netbula's TRO and SUN's motion for summary judgment. In subsequent emails, Mr. Pulgram talked about issues such as Michael Melnick's declaration and Netbula's intended use of certain evidence, etc. Netbula's then counsel told me that defense counsel's direct communication to me on the *Netbula v. SUN* matter was willful violation of attorney ethics.

8.   Since Mr. Pulgram was freely communicating to me on the Netbula matter, on October 26, 2007, I sent the following email to Mr. Pulgram:

> Dear Mr. Pulgram, Mr. Wakefield, Mr. Mah and Mr. Sieber,
> I am writing to seek a stipulation regarding Netbula's substitution of party as to the copyright claim filed in the Nebula v. StorageTek case. As the copyright owner of the relevant software and related claims, I am about to assert additional claims against StorageTek. This can be done via an amended complaint in the C06-07391-MJJ case, or I can file a new separate infringement action and move to relate/consolidate the new action to the current action.
>
> For judicial economy, I think it's far efficient for you to stipulate to the substitution of party by replacing Dongxiao Yue as the copyright plaintiff in the C06-07391-MJJ case.
>
> If you do not stipulate to the substitution, I will commence the new action next week.

Mr. Pulgram responded to the above email as follows.

> Mr. Yue,
> I will confer with my client and respond to you next week.
> Laurence Pulgram

9.   Both Netbula and I fully informed Judge Jenkins about my intention to file a separate action the *Netbula v. SUN* complaint in court filings. See Document No. 91, p.4:10-18 (filed on October 30, 2007); Document No. 98, p.3:11-19 and Document No. 99, pp.4:23-5-18 (filed on

-3-

Case No. C07-05850-MJJ                                    28 U.S.C. § 144 DECLARATION

November 5, 2007) of the *Netbula v. SUN* case (C06-07391-MJJ). I also filed with the Court the emails communications between Mr. Pulgram and me.

10.  Originally, I promised to Mr. Pulgram that I would file my action against SUN/StorageTek in the first week of November 2007. Because of Mr. Pulgram's email about the possibility of reaching a stipulation and his legal advice, I delayed the filing of my case against SUN/StorageTek. SUN later declined to stipulate to the substitution of party.

11.  On November 19, 2007, as I previously informed SUN/StorageTek and Judge Jenkins what I would have to do, I filed a separate case against SUN, alleging 10 counts of infringement of three copyrights I personally owned. The *Yue v. SUN* (Case No. C07-05850) case was assigned to another judge.

12.  On October 26, 2007, SUN filed two "administrative" motions. One sought to vacate the hearing of my motion to intervene and for copyright injunction. The other asked Judge Jenkins to consider the "phantom" declaration. I filed opposition to defendants' motion to vacate the hearing of my motion and asked the Court to disqualify Pulgram for his unprofessional conduct.

13.  On October 31, 2007, Judge Jenkins held a telephonic hearing on defendants' "administrative motions". I was not given any notice about this hearing and was not allowed to participate. Following the hearing, on November 2, 2007, Judge Jenkins signed an order which stated the following:

> Defendants' Motion for Administrative Relief to Vacate Hearing on Non-Party Dongxiao Yue's Request for Injunctive Relief and Impoundment [Docket Nos. 80-81] is hereby GRANTED. The Motion of DongxiaoYue to Intervene and Join as Plaintiff; for Injunctive Relief; and for Copyright Impoundment [Docket Nos. 68-72] will be taken off calendar.

-4-

Case No. C07-05850-MJJ                                                                 28 U.S.C. § 144 DECLARATION

14.     I then mailed a request for a tape recording of the telephonic hearing and was told by the clerk of the court that no court reporter was present and no audio recording was made.

15.     On November 20, 2007, Netbula's former counsel and I went to the court for the hearings scheduled that day. The first hearing was about Netbula's motion to substitute party. Netbula's former counsel, Ms. Brillet, was arguing for Netbula. I wasn't saying anything. Then Judge Jenkins asked me: "Are you Mr. Yue?" I said "Yes". Then Judge Jenkins told me that I "should cease and desist" from filing papers before the court. Judge Jenkins further stated that even if I became a party in the *Netbula v. SUN* case, "it still would not give [Yue] authority to do so, to file pleadings in the matter." The following was the exchange (from the hearing transcript).

> THE COURT: ... AND I WILL ALSO SAY MR. YUE DOES NOT PRESENTLY HAVE ANY RIGHT TO FILE ANYTHING BEFORE THE COURT. YOU DON'T. ARE YOU MR. YUE?
>
> MR. YUE: YES.
>
> THE COURT: ...-- LISTEN AND HEAR ME CLEARLY. YOU SHOULD CEASE AND DESIST FROM DOING SUCH UNTIL YOU ARE AUTHORIZED TO DO SO... AND EVEN IF I WERE TO GRANT THIS MOTION, IT STILL WOULD NOT GIVE YOU AUTHORITY TO DO SO, TO FILE PLEADINGS IN THE MATTER... YOU WILL REMAIN.
>
> MR. YUE: WHAT'S THE COURT'S LEGAL RATIONALE FOR THAT?
>
> THE COURT: THAT IS THE RATIONALE, AND THAT'S THE STATEMENT.
>
> MR. YUE: FOLLOWING RULES OF CIVIL PROCEDURE –
>
> THE COURT: MR. YUE, I AM GOING TO HAVE YOU TAKEN OUT IF YOU DON'T BE QUIET.

17.     Also at the November 20, 2007 hearing, Judge Jenkins coached SUN's lawyer to attack my ownership of the assigned copyrights. The following is from the transcript:

-5-

> THE COURT: BUT YOU DON'T ARGUE THAT THE ASSIGNMENT IS NOT VALID, RIGHT?
>
> MR. PULGRAM: EXCUSE ME?
>
> THE COURT: YOU DON'T ARGUE THE ASSIGNMENT IS NOT VALID?
>
> MR. PULGRAM: THERE IS SOME LAW TO THAT EFFECT, YOUR HONOR.
>
> THE COURT: BUT IT'S NOT BEFORE ME. I HAVEN'T SEEN THAT IN YOUR PAPERS.
>
> …
>
> THE COURT: THAT'S WHAT I AM SUGGESTING TO YOU. SO TO DENY THE MOTION MEANS THAT HE'S NOT SUBSTITUTED IN AS A PARTY?

18. Judge Jenkins denied Netbula's request to substitute or join me as a copyright plaintiff in the *Netbula v. SUN* case, thus prevented me from protecting my copyrights in that case.

19. At the November 20, 2007 hearing of SUN's motion to intervene and modify BindView protective order, Judge Jenkins forbade me to argue about my opposition, and refused to hear my motions. The following is the exchange at the end of the hearing:

> MR. YUE: YOUR HONOR, MAY I, FOR THE RECORD? AM I UNDERSTANDING CORRECTLY THAT MY MOTION TO INTERVENE AND –
>
> THE COURT: NOT ON TODAY.
>
> MR. YUE: -- HOLDING COUNSEL IN CONTEMPT –
>
> THE COURT: LET ME SUGGEST, IT'S NOT ON TODAY BECAUSE YOU CAN'T MAKE SUCH A MOTION YET. SO IT'S NOT ON TODAY.
>
> MR. YUE: I WAS MOVING AS A THIRD PARTY, JUST AS SUN DEFENSE COUNSEL.
>
> THE COURT: RIGHT.

-6-

Case No. C07-05850-MJJ    28 U.S.C. § 144 DECLARATION

> MR. YUE: BUT I WAS A PRO SE.
>
> THE COURT: IT WASN'T ON TODAY.
>
> MR. YUE: WAS THE REASON VACATING MY MOTION BECAUSE I AM A PRO SE LITIGANT?
>
> THE COURT: NO, IT JUST WASN'T -- IT DIDN'T HIT MY CALENDAR TODAY. THAT'S IT.

20. Also on November 20, 2007, Judge Jenkins and SUN defense counsel made it clear that the *Netbula v. SUN* case **only** deals with **one** copyright that was alleged in the complaint (quoting transcript):

> THE COURT: IS THIS THE ONLY COPYRIGHT AT ISSUE –
>
> MR. PULGRAM: YES.

Thus, the intellectual properties in the *Yue v. SUN* case were never part of the *Netbula v. SUN* case. In fact, they were precluded from the *Netbula v. SUN* case.

21. On December 14, 2007, the hearing of SUN's motion for summary judgment in the *Netbula v. SUN* case was held before Judge Jenkins. At the end of the hearing, SUN's attorney made an oral request to delay answering my lawsuit in the *Yue v. SUN* case, which was presided over by a different judge. Judge Jenkins immediately granted SUN's motion and asked the parties to stipulate to a new date. When I, the *pro se* plaintiff in the *Yue v. SUN* case, attempted to raise objections, Judge Jenkins forbade me to speak. Later, when Judge Jenkins came back into the court and learnt that I refused to stipulate to a change of date, he said that he would just order that SUN's motion to be granted.

-7-

Case No. C07-05850-MJJ                          28 U.S.C. § 144 DECLARATION

22. On December 17, 2007, I sent a letter to Judge Jenkins, stating that the circumstances and apparent bias and require that Judge Jenkins disqualify himself from the cases I am a party.

23. In November 2007, I mailed a complaint against Judge Jenkins to the Ninth Circuit. The complaint alleges, *inter alia*, that Judge Jenkins retaliated against me due to the blog article I wrote and persisted in his retaliation. My complaint described in detail the events surrounding the blog and how I came to know that there was retaliation. I complained that Judge Jenkins should have recused himself from the *Netbula v. SUN* case but failed to do so. I also complained about the not-to-file order. I further complained that Judge Jenkins ignored Mr. Laurence Pulgram's unethical conduct. Judge Jenkins and Judge Walker received a copy of my complaint.

24. In the exhibits to my complaint about Judge Jenkins, I attached a letter to former Chief Circuit Judge Schroeder. In that letter, as the assigner of the copyrights, referring to the case in 425 F.3d 1179 (9th Cir. 2005) (suggesting "an order that the district judge compensate the Trust for the damage it suffered"), I wrote: "Who do I ask for compensation for the lost copyright license revenue for my software?" I believe whoever who caused Netbula to lose the license revenue should be liable for the loss.

25. On January 18, 2008, in the *Netbula v. SUN* case, Judge Jenkins granted SUN's motion for summary judgment on the copyright claim. In his order, Judge Jenkins ignored crucial facts, including but not limited to SUN defendants' admissions that they exceeded the license and the license agreement would be terminated upon SUN's acquisition of StorageTek.

26. On February 8, 2008, Judge Jenkins entered an Order denying request for disqualification (Docket No. 142 of the *Netbula v. SUN* case). This Order stated the following in the "FACTUAL BACKGROUND" portion:

-8-

Case No. C07-05850-MJJ                                28 U.S.C. § 144 DECLARATION

> The Court set a dispositive motions deadline in the 2006 case of November 27, 2007. Accordingly, in October 2007 Defendants filed a motion for summary judgment to be heard on that day. Around the same time, the parties filed a flurry of documents with the Court. As is relevant here, Plaintiff sought an order substituting Yue for Plaintiff Netbula, Plaintiff's counsel sought to withdraw as counsel of record and Yue filed his own motion and briefing regarding various matters.
>
> In an October 31, 2007 telephonic conference in which Plaintiff was represented by counsel, the Court, inter alia, rescheduled the Motion for Summary Judgment hearing to December 13, 2007, vacated the hearing noticed by non-party Yue, left Plaintiff's motion to substitute parties on calendar for November 20, 2007 and continued Plaintiff's counsel's motion to withdraw as counsel until after the Court's resolution of the summary judgment motion. Defendants prepared an order reflecting the Court's rulings and the Court signed the order.
>
> On November 20, 2007, the Court held a hearing on Plaintiff's motion to substitute parties. The Court denied the motion on the record and, when Yue attempted to intervene in the proceedings, reminded Yue that he was not yet a party to the action and could not file documents, calendar hearings or speak in court without leave of the Court.
>
> Unbeknownst to the Court, one day prior, Yue, proceeding *pro se*, filed a separate action (the "2007 case") against StorageTek and Sun. In the 2007 case Plaintiff alleges ten claims of copyright infringement. (See Amended Complaint, Docket No. 9.) The 2007 case was originally assigned to Judge Illston who, on December 3, 2007, issued an Order of Referral for the Court to determine if the 2006 and 2007 cases were related.

27. In the ANALYSIS portion of the February 8, 2008 order, Judge Jenkins stated:

> Yue alleges that his postings on an internet blog were known by the Court and influenced the Court's ultimate rulings on this matter. Yue's allegations consist solely of conclusions and are not sufficiently definite and particular to convince a reasonable person that bias exists. See Sykes, 7 F.3d at 1338. There is also no factual support for this assertion in the record or in the Court's own experience.
> 
> ...
> 
> During the November 20, 2007 hearing, the Court instructed Yue that he could not file motions, notice hearing dates, or speak in court unless he had leave of court or until he was given permission to represent himself. During the December 14, 2007 hearing, the Court again admonished Yue

-9-

Case No. C07-05850-MJJ                                28 U.S.C. § 144 DECLARATION

for attempting to speak without leave of Court. Insofar as Yue's rights as
a Plaintiff in the 2007 case were concerned, the Court granted Yue leave
to participate appropriately.

28.   In the November 20, 2007 hearing, Netbula's former counsel had the following exchange with Judge Jenkins (quoting from transcript):

> MS. BRILLET: YOUR HONOR, MR. YUE IS NOT TRYING TO
> ASSERT THE RIGHTS OF NETBULA.
>
> THE COURT: I RECOGNIZE THAT.

29.   At the December 14, 2007 hearing of the *Netbula v. SUN* case, Judge Jenkins stated the following about the *Yue v. SUN* case (p.65:3-7 of the transcript):

> Now, there is a related case, and it does strike me that it is related. And
> this may be -- it's not completely overlapping with the present claim.

30.   On January 29, 2008, SUN filed a motion to dismiss the *Yue v. SUN* case on the ground that that case is duplicative of the *Netbula v. SUN* case. On March 4, 2008, Judge Jenkins dismissed the *Yue v. SUN* case and entered final judgment against Yue without a hearing. The final judgment was entered before the all the defendants were served. Against his previous statement that the *Yue v. SUN* case "is not completely overlapping" with the *Netbula v. SUN* claim, Judge Jenkins simply repeated defense counsel Mr. Pulgram's argument that the *Yue v. SUN* case is duplicative of the *Netbula v. SUN* case, even though I had been precluded from participating in the *Netbula v. SUN* case to protect my personal rights. In the dismissal order, Judge Jenkins states:

> Yue-Sun presents the same claims as Netbula-Sun and is effectively
> Plaintiff's attempt to re-litigate issues that have already been presented,
> and determined, by the Court. In addition, given the tactics that Plaintiff
> has pursued, which have ranged from duplicative to nearly vexatious, the

-10-

Court finds that dismissing the action with prejudice is appropriate.

31. Based on the above, I believe in good-faith that Judge Jenkins is biased against me and should recuse himself from the instant action in which I am the *pro se* plaintiff.

32. From February 10 to February 27, I was out of United States. After I returned, I started review the relevant documents and working on the motion for recusal for the instant case.

33. On March 17, 2008, responding to an email from defense counsel, I wrote:

> I received your letter in the mail, and have the following comments.
>
> 1) Your Communications to me about the Netbula v. SUN case
>
> The substantive discussions about the Netbula v. SUN case (C06-07391-MJJ) initiated by Mr. Pulgram are well documented. Mr. Pulgram discussed with me about Mr. Brillet's motion to withdraw, StorageTek's motion for summary judgment, Netbula's use of certain evidence in the litigation, Netbula's motion to substitute party, Michael Melnick's declaration, etc etc. These communications concern the specific issues in the Netbula v. SUN matter, where Netbula was represented by Ms. Brillet at the time.
>
> After Mr. Pulgram already sent me those email communications, I was told by Netbula's then counsel that Mr. Pulgram willfully engaged in direct communication with a represented party, a serious ethical violation (my mentioning of communication from Netbula's counsel is limited and does not waive any privileges, including but not limited to work-product). However, relying on Mr. Pulgram's communications, I believed that Mr. Pulgram would eventually agree to my full participation in the Netbula v. SUN case to assert my copyrights. Because of that, I delayed the filing of the Yue v. SUN case. Originally, I promised to file the Yue v. SUN lawsuit in the first week of November 2007, but because of Mr. Pulgram's communications (including his legal advice), I filed the Yue v. SUN case on November 19, 2007.
>
> 2) Communications to me about my pro se activities
>
> The Court recognized in the November 20, 2007 hearing that I wasn't asserting the rights of Netbula.

-11-

> MS. BRILLET: YOUR HONOR, MR. YUE IS NOT TRYING TO ASSERT THE RIGHTS OF NETBULA.
>
> THE COURT: I RECOGNIZE THAT.
>
> My pro se actions were about my personally owned copyrights, which were not part of the Netbula v. SUN case, as evidenced by the following exchange at the November 20, 2007 hearing.
>
> THE COURT: IS THIS THE ONLY COPYRIGHT AT ISSUE –
>
> MR. PULGRAM: YES.
>
> However, Mr. Pulgram then took the position that I and my personally owned copyrights were fully represented by Ms. Brillet in the Netbula v. SUN case. In his words, Netbula and I are privies on all matters. Of course, I will dispute that because I was precluded from the Netbula v. SUN case. But at least from Mr. Pulgram view, Netbula and I are the same, therefore, even in the pro se matters, Mr. Pulgram stated that my interest was represented by Ms. Brillet in the Netbula v. SUN matter.
>
> In addition, ABA rules state that a lawyer should not offer legal advice to an unrepresented party. It makes sense, because you are my opponents' attorney, not my attorney.
>
>
> 3) Fenwick & West, LLP's role in the Netbula v. Distinct trademark lawsuit
>
> In the Netbula v. Distinct case, Netbula accused Distinct of trademark infringement. One of the allegations was that Distinct embedded the JavaRPC name in Distinct's web pages. An attorney at Fenwick & West acted as an early neutral evaluator in that case. Netbula submitted confidential settlement documents to that Fenwick attorney. I also recall talking to that Fenwick attorney about JavaRPC, in confidence. Now, on behalf of SUN, you counter-claimed against me for trademark infringement on the ground that I used the JavaRPC name. I think Fenwick should disqualify itself from the trademark case because it has previously received confidential information on related matters.

34. The email above was sent to Laurence Pulgram, Jed Wakefield, Liwen Mah and Albert Sieber.

Case No. C07-05850-MJJ                               28 U.S.C. § 144 DECLARATION

I declare under penalty of perjury of the laws of the State of California and the federal laws that forgoing declaration is true and correct to the best of my knowledge. This declaration was executed in San Leandro, California, on March 18, 2008.

*/s/ DONGXIAO YUE*

-13-

Case No. C07-05850-MJJ                                    28 U.S.C. § 144 DECLARATION