FILED

CO APR -1 PM 2:20

ῃ  ϊ     

1  DONGXIAO YUE
   2777 ALVARADO ST., SUITE C
2  SAN LEANDRO, CA 94577
   Telephone:    (510) 396-0012
3  Facsimile:    (510) 291-2237
4  E-Mail:       ydx@netbula.com

5  *Pro Se*

6

7

8                    UNITED STATES DISTRICT COURT

9                    NORTHERN DISTRICT OF CALIFORNIA

10 | DONGXIAO YUE, | Case No. C07-05850-MJJ-EDL |
11 | Plaintiff, | **PLAINTIFF'S OPPOSITION TO** |
12 | | **DEFENDANTS' MOTION** |
   | v. | **FOR ATTORNEYS' FEES AND COSTS** |
13 | | |
14 | STORAGE TECHNOLOGY | [17 U.S.C. § 505] |
15 | CORPORATION, a Delaware corporation; SUN MICROSYSTEMS Inc., a Delaware | Date: April 22, 2008 or otherwise ordered Time: 9:00 a.m. |
16 | corporation; Michael Melnick, an individual; Julie DeCecco, an individual; Michael P. | Dept: Courtroom E, 15th Floor Judge: Hon. Elizabeth D. Laporte |
17 | Abramovitz, an individual; Lisa K. Rady, an individual; Jonathan Schwartz, an individual; | |
18 | and DOES 1-1000, inclusive, | |
19 | | |
20 | Defendants. | |

21

22

23

24

25

26

27

28                                                -1-

INTRODUCTION ........................................................................................................ 4

FACTUAL BACKGROUND .......................................................................................... 5

    The Instant Case ..................................................................................................... 5

    Procedural History and the Parties' Conduct ........................................................... 9

ARGUMENT ................................................................................................................ 17

I.    Defendants did not prevail on any of the copyright claims ........................... 17

II.   Awarding attorneys' fees and cost to defendants would be damaging
     to the protection of copyrights in the U.S. and abroad .................................. 18

    A.   Frivolousness & Objective Unreasonableness ..................................... 19

    B.   Motivation ........................................................................................... 23

    C.   The Purpose of Copyright Act ............................................................. 24

    D.   Other Factors ....................................................................................... 25

III.  No fees should be awarded to defendants because the alleged
     infringement happened before the registration of copyright .......................... 27

CONCLUSION .............................................................................................................. 28

## Cases

*Adams v. Cal. Dep't of Health Servs.*,
   487 F.3d 684 (9th Cir. 2007) ................................................................................ 20

*Bridgeport Music v. Rhyme Syndicate Music*,
   376 F.3d 615, 628 (6th Cir. 2004) ......................................................................... 25

*Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.*,
   532 U.S. 598, 603-05 (2001) ................................................................................ 18

*Fogerty v. Fantasy, Inc.*,
   510 U.S. 517 (1994) ....................................................................................... 19, 27

*Harris Custom Builders, Inc. v. Hoffmeyer*,
   140 F.3d 728, 730 (7th Cir. 1998) ......................................................................... 17

*Kourtis v. Cameron*,
   419 F.3d 989 (9th Cir. 2005) ................................................................................ 19

-2-

1    *Perfect 10 v. Ccbill LLC.*,
       488 F.3d 1102 (9th Cir. 2007) .................................................................................. 25

2

3    *Richards v. Jefferson County*,
       517 U.S. 793, 794, 116 S.Ct. 1761, 135 L.Ed.2d 76 (1996) ..................................... 20

4    *The Traditional Cat Ass'n, Inc. v. Gilbreath*,
       340 F.3d 829, 834 (9th Cir. 2003) ............................................................................ 17

5

6    *Torres-Negrón v. J & N Records*,
       504 F.3d 151 (1st Cir. 2007) ..................................................................................... 17

7

8

9                                   <u>Statutes</u>

10    17 U.S.C. § 412.............................................................................................................. 27

11    17 U.S.C. § 505.............................................................................................................. 17

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-3-

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

### INTRODUCTION

3

4

5

6

Plaintiff Dongxiao Yue ("Yue") is the author of PowerRPC software. In July 1996, he founded software company Netbula, LLC ("Netbula") to market the PowerRPC software. Yue did not assign his copyrights in the code written before July 1996 to Netbula.

7

8

9

10

11

12

13

14

15

16

17

18

In 2000, a large company named Storage Technology Corporation ("StorageTek") bought 1000 licenses for distributing the PowerRPC runtime software with StorageTek's LibAttach and other products. In March 2004, defendant Lisa Rady wrote in an internal email stating: "we have exceeded the 1,000 distributions that we had right to with Netbula." Later in 2004, Michael Melnick, the defendant, on behalf of StorageTek, purchased another 1000 licenses for the 2003 version of PowerRPC runtime. In a June 2005 email exchange, after learnt that StorageTek exceeded 2000 distributions of PowerRPC, Michael Melnick warned his colleagues in an internal email: "The number that Holly has provided and thought it may be low causes quite a problem for you. We have only made 2 purchases for the rights to distribute a total of 2000 licenses." Subsequently, Yue found that StorageTek made over 7000 distributions and sold unlimited licenses of PowerRPC.

19

20

21

22

23

24

25

26

27

Yue filed the instant 10-count copyright action against Storage Technology Corporation ('StorageTek"), Sun Microsystems, Inc. ("SUN") and five individuals for infringing three copyrights he personally owned. The Judge, Martin J. Jenkins, stated that this case "is not completely overlapping with" the related *Netbula v. SUN* case. However, after receiving Yue's complaint against him, Judge Jenkins dismissed the copyright claim in the *Netbula v. SUN* case and concluded that Netbula and Yue are privies in the two cases, and the two cases are duplicative. Without a hearing, Judge Jenkins dismissed the instant with prejudice and entered final judgment

28

-4-

1    the same day. Yue filed a Motion for Relief from Judgment Pursuant to FRCP 60(b) and a Motion

2    to Disqualify Defense counsel.

3       SUN, StorageTek and Mr. Schwartz are now seeking over \$90,000.00 in attorneys' fees and

4    costs under 17 U.S.C. § 505.

## FACTUAL BACKGROUND

### The Instant Case

8       Of the three copyrights allegedly infringed by defendants, one covers the code Yue wrote as an

9    individual before he founded Nebula, LLC ("Netbula"). Yue has always owned this copyright.

10   The two other copyrights were assigned from Netbula to Yue on September 26, 2007, before the

11   instant suit was filed on November 19, 2007. There is a pending related case, *Netbula v. SUN*, et al.

12   (Case No. C06-07391-MJJ, the "*Netbula v. SUN*" case, also known as the "*Netbula v. STK*" case),

13   but none of the three copyrights in the instant action was part of the *Netbula v. SUN* case.

14

15       The instant action alleges 10-counts of copyright infringement, many of them arise from

16   transactions not mentioned in the *Netbula v. SUN* case.

17       The following table shows some but not all of the differences of the *Netbula v. SUN* and the

18   instant *Yue v. SUN* case. The paragraph numbers in the table are from the First Amended

19   Complaint ("FAC").

20

| Transactional Nucleus of Facts in the Yue v. SUN Action | In Netbula v. SUN Complaint? | Considered by Netbula v. SUN Summary Judgment ruling? |
|---|---|---|
| ¶40. Lisa K. Rady (manager of LibAttach): "As you can see, we have exceeded the 1,000 distributions that we had right to with Netbula.... I think it is obvious that engineering has not and did not monitor the distributions on this product. | No | No. |

28                                                    -5-

| | | |
|---|---|---|
| ¶40. Melnick: The agreement is specific to platform (Win NT and 95/98 platforms) types of Netbula software (PowerRPC SDK). This concerns me greatly as we have already told them we are no longer shipping it with our product. | No. | No. |
| ¶51. Melnick: As for Sun, it should be completed by the end of summer... The only thing that you and I may have to do is for you to allow assignment of the agreement to Sun. The agreements calls [*sic*] for your approval. I assume you would sallow [*sic*] this as if you did not the agreement would be terminated. | No. | No. |
| ¶52. Melnick: The number that Holly has provided and thought it may be low causes quite a problem for you. We have only made 2 purchases for the rights to distribute a total of 2000 licenses. | No. | No. |
| ¶64. after Michael Abramovitz learned of the dispute between Netbula and SUN/StorageTek, he and potentially other StorageTek employees, presumably under direction of SUN's managing agents, systematically erased the Netbula SDK software from their computers, thus destroying part of the evidence. | No. | No. |
| ¶85-86. multiple groups in StorageTek and SUN had copied and used the NT SDK, without internal control of the copying...many StorageTek employees, including Anton Vatcky and Scott Painter, made numerous copies of the NT SDK onto many computers without licenses, in violation of Plaintiff's copyright in the NT SDK. | No. | No. |
| ¶88-90. StorageTek developed REELS, LibAttach and LibAttach Integrators' Kit products with unauthorized copies of the NT SDK...The REELS, LibAttach and LibAttach Integrators' Kit products developed with unauthorized copies of NT SDK were thus infringing derivative works of Plaintiff's copyrighted software. | No. | No. |

-6-

| | | |
|---|---|---|
| ¶93-95. The 2000 Agreement was restricted to the Windows NT/98/95 operating systems. StorageTek's engineers and managers knew the 2000 Agreement was for Windows NT/98/95 only. In March 2004, Michael Melnick wrote in an internal email stating that the 2000 Agreement was specific to Windows NT and 95/98 platforms). In July 2005, Michael Melnick acknowledged that the 2000 Agreement was for Windows NT/98/95 only. Lisa Rady and Michael Abramovitz also knew that the PowerRPC software on the CD StorageTek received was for Windows Nt/98/95 only...Defendants developed LibAttach and LibAttach Integrators' Kit software for Windows 2000 with the NT SDK, without a license for Windows 2000...numerous third parties also used the LibAttach Integrators' Kit to create derivative works for unauthorized platforms. | Partial | Partial. |
| ¶98-99. Defendants, and each of them, made, offered to sell, sold, and/or distributed copies of the infringing derivative works of the NT SDK, or contributed to these activities. | No. | No. |
| ¶101-104. StorageTek knew it only had the right to distribute 1000 copies under the 2000 Agreement...StorageTek further violated Plaintiff's copyright by granting "floating" licenses which permitted its customers to make unlimited number of copies of Plaintiff's software...Lisa Rady wrote the following about LibAttach: "There is no license key in the product, and it is apparent that the software has been copied, uncontrolled, for several years" and "engineering has not and did not monitor the distributions." Defendants thus further violated Plaintiff's copyright by willfully failing to monitor the copying of Plaintiff's software and willfully permitting others to make unauthorized copies. | No. | No. |
| ¶109. multiple StorageTek or SUN employees, including Abramovitz, had copied the 2003 SDK on multiple computers, without internal control of inside copying, violating Plaintiff's copyright in the 2003 SDK. | No. | No. |

-7-

| | | |
|---|---|---|
| ¶111-114. StorageTek developed LibAttach and LibAttach Integrators' Kit products with unauthorized copies of the 2003 SDK...The LibAttach and LibAttach Integrators' Kit products developed with unauthorized copies of 2003 SDK were thus infringing derivative works of Plaintiff's copyrighted software. | No. | No. |
| ¶116-120. Defendants distributed more than 1000 copies of the 2004 Runtime, without the proper licenses and in violation of Plaintiff's "2K4 copyright." Defendants further violated Plaintiff's copyright by willfully failing to monitor the copying of Plaintiff's software and willfully permitting others to make unauthorized copies...numerous third parties also used the infringing LibAttach Integrators' Kit which contained the 2004 Runtime to create derivative works without authorization. | No. | No. |
| Defendants knew that each copy of Plaintiff's software required a license. Defendants offered to sell unlimited licenses for LibAttach software which contained Plaintiff's copyrighted software, in violation of Plaintiff's copyright. Defendants sold unlimited licenses for LibAttach software which contained Plaintiff's copyrighted software to multiple customers, in violation of Plaintiff's copyright. | Partial | No. |
| Both the 2000 Agreement and 2004 Agreement were not transferable. Michael Melnick, representing StorageTek, stated that the agreements were not transferable and "would be terminated" upon SUN's acquisition of StorageTek... Defendants continued to use, copy, distribute, offer to sell and sell LibAttach and LibAttach Integrator's Kit software (which contained Plaintiff's software) after StorageTek became a subsidiary of SUN. | No. | Partial (the Court did not consider the effect of termination) |

-8-

OPPOSITION TO DEFENDANTS' MOTION FOR FEES

1    **Procedural History and the Parties' Conduct**

2    The following facts are taken directly from the declaration of Dongxiao Yue ("Yue Decl.")

3    dated March 26, 2008 in support of Plaintiff's Motion for Relief from Judgment Pursuant to FRCP

4    60(b).

5

6    In January 2006, Netbula filed a copyright infringement action against Symantec Corporation

7    ("Symantec") et al (Case No. C06-0711-MJJ, the "*Symantec* case"), alleging the infringement of

8    PowerRPC software published in 1996 (the "1996 Copyright"). The Symantec defendants were

9    represented by Fenwick & West, LLP ("Fenwick").

10    In December 2006, Netbula filed another copyright action against Storage Technology

11    Corporation ("StorageTek"), Sun Microsystems, Inc. ("SUN") et al. (Case No. C07-07391-MJJ,

12    the "*Netbula v. SUN* case") alleging infringement of the 1996 Copyright. SUN is also represented

13    by Fenwick.

14

15    In the course of the *Symantec* case, around July 2007, defense counsel Laurence Pulgram

16    pointed out that Yue personally owned the copyright of the PowerRPC code Yue wrote before he

17    founded Netbula and raised the issue on conflicting ownership of copyrights. Yue Decl., at ¶ 5. As

18    Mr. Pulgram wrote in one of the motions he filed in the instant C07-05850 case:

19    > As to Yue's allegation that he began developing the software at issue
20    > before he established Netbula in 1996, **there is a common question of**
         **whether Yue or Netbula holds the copyrights in the software, and**
21    > **what parts are owned by each.**

22    Docket No. 22 of the instant case, p.3:23-26 (emphasis added).

23    Yue then contacted the U.S. Copyright Office regarding the situation and spoke with a person

24    of the Copyright Office. Based on suggestions of the Copyright Office, Netbula submitted a Form

25

26    CA to the Copyright Office, stating that the 1996 Copyright was a derivative work of unpublished

27

28    -9-

work written by Yue. Netbula also transferred the copyrights for the code created before January 2007 back to Yue on September 26, 2007. *Id.* at ¶ 6.

On August 28, 2007, Yue was informed that a blog he wrote offended Judge Jenkins. *Id.*, at ¶ 7. On August 31, 2007, Judge Jenkins signed an order that dismissed Netbula's copyright, contract and fraud claims against Symantec defendants in the *Netbula v. Symantec* case. In his order, Judge Jenkins ignored key evidence, including a disclosure letter which stated that defendants did not pay licenses fees and owed Netbula license fees. Yue later filed a motion to intervene and unseal part of this disclosure letter in the *Symantec* case.

Because of the transfer of the copyright interests, on October 1, 2007, Netbula field a motion to substitute Yue as the party as to the copyright claim in the *Netbula v. SUN* case pursuant to FRCP 25(c). On October 11, 2007, on the eve of scheduled dispositive motions, Netbula's former counsel, Vonnah M. Brillet ("Ms. Brillet") filed a motion to withdraw from the *Netbula v. SUN* case. Yue attempted to secure new counsel for Netbula but was unable to do so. *Id.* at ¶¶ 9-10.

On October 22, 2007, pursuant to FRCP 24(a) and the Copyright Act, acting *pro se*, Yue filed a motion to intervene and join as a party and for copyright injunction in the *Netbula v. SUN* (C06-07391) case, alleging irreparable harm from defendants' ongoing infringement of the copyrights Yue personally owned, based on newly discovered evidence. In his argument for the 4-prong test for intervention of right, Yue stated:

> because of the timing in the case, Dr. Yue's property rights are in danger of being lost. Defendants are planning to have their summary judgment motions heard before November 27, 2007, but Netbula's motion to substitute Dr. Yue as the plaintiff as to the copyright claim won't be heard until November 20, 2007, which is the same day when Netbula's counsel's motion to withdraw will be heard. Ms. Brillet's tight schedule makes it near impossible for her to give the needed attention for the expected summary judgment hearing. This situation leaves Dr. Yue's interest with little representation.

-10-

1  Yue's Motion to Intervene and Join, Docket No. 68 of the C06-07391-MJJ case, pp.16:24-17:3.

2  On October 23, 2007, SUN defendants filed a motion for summary judgment. However, their

3  motion was based on a fabricated or phantom declaration – they had not been able to locate the

4  declarant – Michael Melnick -- to review his declaration. *Id.* at ¶¶ 10-11.

5

6  During this time, Defense counsel Laurence Pulgram sent numerous emails directly to Yue,

7  discussing the substantive issues in the *Netbula v. SUN* (C06-07391-MJJ) case. In an October 25,

8  2007 email to Yue, Mr. Pulgram talked about Netbula's former counsel's motion to withdraw

9  from the C06-07391-MJJ case, Netbula's motion to substitute party, Netbula's TRO and SUN's

10  motion for summary judgment. In his emails to Yue, Mr. Pulgram specifically stated that SUN

11  would oppose Netbula's motion to substitute party and that "Ms. Brillet remains counsel of record,

12  and her opposition to the summary judgment on behalf of Netbula is due in the ordinary course."

13  In subsequent emails, Mr. Pulgram talked about issues such as Michael Melnick's declaration and

14  In subsequent emails, Mr. Pulgram talked about issues such as Michael Melnick's declaration and

15  Netbula's intended use of certain evidence, etc. Netbula's former counsel told Yue that defense

16  counsel's direct communication to Yue on the *Netbula v. SUN* matter constituted willful violation

17  of attorney ethics. *Id.* at ¶¶ 12-13, 31.

18  Since Mr. Pulgram was freely communicating to Yue on the Netbula matter, on October 26,

19  2007, Yue sent the following email to Mr. Pulgram:

20

21  Dear Mr. Pulgram, Mr. Wakefield, Mr. Mah and Mr. Sieber,
I am writing to seek a stipulation regarding Netbula's substitution of party

22  as to the copyright claim filed in the Nebula v. StorageTek case. As the
copyright owner of the relevant software and related claims, I am about

23  to assert additional claims against StorageTek. This can be done via an
amended complaint in the C06-07391-MJJ case, or I can file a new

24  separate infringement action and move to relate/consolidate the new
action to the current action.

25

26  For judicial economy, I think it's far efficient for you to stipulate to the
substitution of party by replacing Dongxiao Yue as the copyright plaintiff

27  in the C06-07391-MJJ case.

28  -11-

Case No. C07-05850-MJJ-EDL                                    OPPOSITION TO DEFENDANTS' MOTION FOR FEES

1
2    If you do not stipulate to the substitution, I will commence the new action
     next week.
3

4    Mr. Pulgram responded to the above email as follows.

5        Mr. Yue,
         I will confer with my client and respond to you next week.
6        Laurence Pulgram

7

8        Subsequently, Mr. Pulgram communicated with Yue on Yue's then prospective lawsuit

9    against SUN. Mr. Pulgram advised Yue on matters of service, temporary restraining order, etc. *Id.*

10   at ¶¶ 14, 31.

11       On October 26, 2007, SUN filed two "administrative" motions. One sought to vacate the

12   hearing of Yue's motion to intervene in the *Netbula v. SUN* case pursuant to FRCP 24(a) and for

13   copyright injunction. The other asked Judge Jenkins to consider the "fabricated" declaration. Yue
14
     filed oppositions to both motions and asked the Court to disqualify Pulgram for his unprofessional
15

16   conduct.

17       On October 31, 2007, Judge Jenkins held a telephonic hearing on defendants' "administrative

18   motions". Yue was not given any notice about this hearing and was not allowed to participate. Yue

19   was later informed that Mr. Laurence Pulgram advised Judge Jenkins that Yue should be excluded

20   from the telephonic conference. Following the hearing, on November 2, 2007, Judge Jenkins

21   signed an order which stated the following:
22
         Defendants' Motion for Administrative Relief to Vacate Hearing on Non-
23       Party Dongxiao Yue's Request for Injunctive Relief and Impoundment
         [Docket Nos. 80-81] is hereby GRANTED. The Motion of DongxiaoYue
24       to Intervene and Join as Plaintiff; for Injunctive Relief; and for Copyright
         Impoundment [Docket Nos. 68-72] will be taken off calendar.
25

26

27
                                        -12-
28

1    Yue then mailed a request for a tape recording of the telephonic hearing and was told by

2  the clerk of the court that no court reporter was present and no audio recording was made.

3    On October 31, 2007, Mr. Pulgram stated that he was willing to accept service on behalf of

4  SUN for certain types of filings. *Id.* at ¶¶ 16-18, 31.

5

6    Both Netbula and Yue fully informed Judge Jenkins about Yue's intention to file a

7  separate action the *Netbula v. SUN* complaint in court filings. See Document No. 91, p.4:10-18

8  (filed on October 30, 2007); Document No. 98, p.3:11-19 and Document No. 99, pp.4:23-5-18

9  (filed on November 5, 2007) of the *Netbula v. SUN* case. Yue also filed with the Court the emails

10  communications between Mr. Pulgram and Yue. *Id.* at ¶ 22.

11

12    On November 19, 2007, as Yue previously informed SUN/StorageTek and Judge Jenkins,

13  Yue filed a separate case against SUN, alleging 10 counts of infringement of three copyrights he

14  personally owned. The *Yue v. SUN* (Case No. C07-05850) case was assigned to another judge.

15    On November 20, 2007, Netbula's former counsel and Yue went to the court for the hearings

16  scheduled that day. At the very beginning of the hearing, Judge Jenkins asked Yue: "Are you Mr.

17  Yue?" Yue said "Yes". Then Judge Jenkins told Yue that he "should cease and desist" from filing

18  papers before the court. Judge Jenkins further stated that even if Yue became a party in the

19  *Netbula v. SUN* case, "it still would not give [Yue] authority to do so, to file pleadings in the

20

21  matter." The following was the exchange afterwards (verbatim from the hearing transcript).

22

23
     MR. YUE: WHAT'S THE COURT'S LEGAL RATIONALE FOR
     THAT?

24
     THE COURT: THAT IS THE RATIONALE, AND THAT'S THE
25   STATEMENT.

26   MR. YUE: FOLLOWING RULES OF CIVIL PROCEDURE –

27

28                                    -13-

1    THE COURT: MR. YUE, I AM GOING TO HAVE YOU TAKEN OUT
     IF YOU DON'T BE QUIET.
2

3    Yue Decl., at ¶¶ 24-25.

4    Also at the November 20, 2007 hearing, Judge Jenkins coached SUN's lawyer to attack Yue's

5
     ownership of the assigned copyrights. The following is from the transcript:
6

7         THE COURT: BUT YOU DON'T ARGUE THAT THE ASSIGNMENT
8         IS NOT VALID, RIGHT?

9         MR. PULGRAM: EXCUSE ME?

10        THE COURT: YOU DON'T ARGUE THE ASSIGNMENT IS NOT
          VALID?
11

12        MR. PULGRAM: THERE IS SOME LAW TO THAT EFFECT, YOUR
          HONOR.
13
          THE COURT: BUT IT'S NOT BEFORE ME. I HAVEN'T SEEN THAT
14        IN YOUR PAPERS.
15        ...
          THE COURT: THAT'S WHAT I AM SUGGESTING TO YOU. SO TO
16        DENY THE MOTION MEANS THAT HE'S NOT SUBSTITUTED IN
          AS A PARTY?
17

18    Judge Jenkins denied Netbula's request to substitute or join as a copyright plaintiff in the

19    *Netbula v. SUN* case, thus prevented Yue from protecting his copyrights in that case.

20    At the hearing of SUN's motion to intervene and modify a protective order in the *Netbula v.*

21
      *Symantec* case, Judge Jenkins forbade Yue to argue about his opposition, and refused to hear
22

23    Yue's motions.

24    Also on November 20, 2007, Judge Jenkins and SUN made it clear that the *Netbula v. SUN* case

25    **only** deals with **one** copyright that was alleged in the complaint (quoting transcript):

26
          THE COURT: IS THIS THE ONLY COPYRIGHT AT ISSUE –
27

28                                          -14-

Case No. C07-05850-MJJ-EDL                OPPOSITION TO DEFENDANTS' MOTION FOR FEES

1    MR. PULGRAM: YES.

2    In November 2007, Yue mailed a complaint against Judge Jenkins to the Ninth Circuit,

3    alleging, *inter alia*, that Judge Jenkins retaliated against Yue due to the blog article Yue wrote and

4    persisted in his retaliation. Yue's complaint described in detail the events surrounding the blog and

5    
6    how he came to know that there was retaliation. Yue complained about Judge Jenkins's failure to

7    recuse himself from the *Netbula v. Symantec and Netbula v. SUN* case. Yue also complained about

8    Judge Jenkins's not-to-file order which Yue alleged was a violation of his due process. Yue

9    further complained that Judge Jenkins issued an *ex parte* order in favor of defendants, threatened

10   to take Yue out for merely attempting to make a legal argument, coached Mr. Laurence Pulgram

11   to make argument against Yue and ignored Mr. Laurence Pulgram's unethical conduct.

12   
13   Copies of Yue's complaint were sent to Judge Jenkins on December 17, 2007.  In the

14   exhibits to his complaint, Yue attached a letter to former Chief Circuit Judge Schroeder. In that

15   letter, Yue indicated that, the person who was responsible for Netbula's loss of uncollected license

16   revenue in the *Netbula v. Symantec* case should be held liable. Yue Decl., at ¶¶ 34-35.

17   
18   On December 17, 2007, Yue sent a letter to Judge Jenkins, stating that the circumstances and

19   apparent bias and require that Judge Jenkins disqualify himself from the cases in which Yue is a

20   party.

21   On February 8, 2008, Judge Jenkins entered an Order denying request for disqualification in

22   the *Netbula v. SUN* docket. This Order stated the following in the "FACTUAL BACKGROUND"

23   portion:

24   
25   On November 20, 2007, the Court held a hearing on Plaintiff's motion to
     substitute parties. The Court denied the motion on the record and, when
     Yue attempted to intervene in the proceedings, reminded Yue that he was
26   not yet a party to the action and could not file documents, calendar
     hearings or speak in court without leave of the Court.
27   

28   -15-

Case No. C07-05850-MJJ-EDL                      OPPOSITION TO DEFENDANTS' MOTION FOR FEES

1

2    Unbeknownst to the Court, one day prior, Yue, proceeding *pro se*, filed a
     separate action (the "2007 case") against StorageTek and Sun. In the
3    2007 case Plaintiff alleges ten claims of copyright infringement. (See
     Amended Complaint, Docket No. 9.) ...

4
     In the ANALYSIS portion of the February 8, 2008 order, Judge Jenkins stated:
5

6        During the November 20, 2007 hearing, the Court instructed Yue that he
         could not file motions, notice hearing dates, or speak in court unless he
7        had leave of court or until he was given permission to represent himself.
         During the December 14, 2007 hearing, the Court again admonished Yue
8        for attempting to speak without leave of Court.

9
     In the November 20, 2007 hearing, Netbula's attorney, Vonnah M. Brillet, had the following
10

11   exchange with Judge Jenkins (quoting from transcript):

12       MS. BRILLET: YOUR HONOR, MR. YUE IS NOT TRYING TO
         ASSERT THE RIGHTS OF NETBULA.
13
         THE COURT: I RECOGNIZE THAT.
14

15   At the December 14, 2007 hearing of the *Netbula v. SUN* case, Judge Jenkins stated the

16   following about the *Yue v. SUN* case (p.65:3-7 of the transcript):

17       Now, there is a related case, and it does strike me that it is related. And
         this may be -- it's not completely overlapping with the present claim.
18

19   On December 14, 2007, when SUN made an oral motion for the instant *Yue v. SUN* case,

20   Judge Jenkins forbade Yue – the *pro se* plaintiff -- to speak, and just ordered that SUN's motion to

21   be granted.

22   On January 18, 2008, in the *Netbula v. SUN* case, Judge Jenkins granted SUN's motion for

23   summary judgment on the copyright claim. In his order, Judge Jenkins ignored crucial facts,
24
     including but not limited to SUN defendants' admissions that they exceeded the license and the
25
26   license agreement would be terminated upon SUN's acquisition of StorageTek.

27

28                                          -16-

Case No. C07-05850-MJJ-EDL                    OPPOSITION TO DEFENDANTS' MOTION FOR FEES

1   On January 29, 2008, SUN filed a motion to dismiss the *Yue v. SUN* case on the ground that

2   that case is duplicative of the *Netbula v. SUN* case.

3   On March 4, 2008, Judge Jenkins dismissed the *Yue v. SUN* case and entered final judgment

4   against Yue without a hearing. Against his previous statement that the *Yue v. SUN* case "is not

5   completely overlapping" with the *Netbula v. SUN* claim, Judge Jenkins simply repeated defense

6   counsel Mr. Pulgram's argument that the *Yue v. SUN* case is duplicative of the *Netbula v. SUN*

7

8   case, even though Yue had been precluded from participating in the *Netbula v. SUN* case to

9   protect his personal rights. In the dismissal order, Judge Jenkins states:

10              Yue-Sun presents the same claims as Netbula-Sun and is effectively
                Plaintiff's attempt to re-litigate issues that have already been presented,
11              and determined, by the Court. In addition, given the tactics that Plaintiff
                has pursued, which have ranged from duplicative to nearly vexatious, the
12              Court finds that dismissing the action with prejudice is appropriate.

13

14                                        **ARGUMENT**

15          **I.      Defendants did not prevail on any of the copyright claims**

16      To seek attorneys' fee under 17 U.S.C. § 505, defendants must be a prevailing party on the
17
18   copyright claims. Only fees and costs attributable to the defense of the copyright claim are

19   awardable under Copyright Act. See *Harris Custom Builders, Inc. v. Hoffmeyer*, 140 F.3d 728,

20   730 (7th Cir. 1998) ("In the present case, what the district court relied on was that the award [of

21   attorneys' fees] was for work done on the copyright claims only, not on any of [the defendant's]

22   counterclaims . . . . The court's conclusion that fees could be awarded only for the copyright claim

23   . . . is correct."). "[T]he defendants can only recover fees attributable to the copyright claims." *The*

24   *Traditional Cat Ass'n, Inc. v. Gilbreath*, 340 F.3d 829, 834 (9th Cir. 2003).

25      In the recent *Torres-Negrón v. J & N Records,* 504 F.3d 151 (1st Cir. 2007) decision, the first
26
27   circuit held:

28                                          -17-

Case No. C07-05850-MJJ-EDL                    OPPOSITION TO DEFENDANTS' MOTION FOR FEES

1
2
3
4
5
6
7

> The Supreme Court has defined a "prevailing party" as one who has "prevailed on the merits of at least some claims," *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598, 603-05 (2001). [defedant] cannot qualify as a prevailing party because it has not received a judgment on the merits. See 4-14 M. Nimmer & D. Nimmer, Nimmer on Copyright § 14.10[B] ("[S]ince the Supreme Court's decision in [Buckhannon], it has been held that a prevailing party can only be one who 'secure[d] a judgment on the merits or a court-ordered consent decree.'"... **We have made no ruling on [plainitff's] claims of infringement. Therefore, [defendant] has not prevailed on the merits of the copyright infringement allegations and is not entitled to a fee award under the statute.**

8
9

*Id.* at 164 (emphasis added).

10       Here, like the *Torres* case, the Court made no ruling on plaintiff's 10 counts of copyright

11   infringement. Defendants did not do work on the copyright claims. Instead, the Court dismissed

12   the case on the ground that Plaintiff is in privity of Netbula, and the instant action is duplicative of

13   the *Netbula v. SUN* action. But, even the summary judgment order as to the single copyright claim

14   in the *Netbula v. SUN* case is not final. Therefore, defendants have not won any copyright claims

15   and they are not prevailing parties under the Copyright Act.

16       The fact is: Plaintiff and Plaintiff's copyrights are explicitly precluded from the *Netbula v.*
17
18   *SUN* case by SUN defendants and Judge Jenkins, and the 10 counts of infringement of Plaintiff's

19   copyrights were never litigated on their merits anywhere.

20   **II. Awarding attorneys' fees and cost to defendants would be damaging to the protection of copyrights in the U.S. and abroad**
21
22       The concept of intellectual property is a key feature of western civilization. Protection of

23   intellectual property is a part of U.S. foreign policy[1]. The facts alleged in the instant case are plain

24   copyright infringement – defendants knowingly pirated plaintiff's software and make massive

25   number of unauthorized copies without license. Defendants knew they are wrong. Lisa Rady,

26   ─────────────
27   [1] See e.g., http://usinfo.state.gov/ei/economic_issues/intellectual_property.html

28                                        -18-

1  Michael Melnick and Michael Abramovitz all admitted in their internal communications that

2  StorageTek only had the right to distribute 2000 copies and they knew they exceeded that right.

3  This is no different from someone buying the license for 1(one) copy of Microsoft Windows but

4  distribute 10 copies.

5

6  Throwing out Yue's claims against defendants is grave injustice and damaging to the

7  protection of intellectual property. Awarding attorneys' fees to defendants would be administering

8  further injustice and wrong.

9  Plaintiff is an individual from China. Defendants SUN and StorageTek are large U.S.

10 corporations. But SUN and StorageTek have substantial operations in China too. SUN's

11 executives travel frequently to China to promote their products. It will be to their own detriment to

12 see intellectual property protection weakened in their homeland.

13

14 Assuming arguendo, that defendants won any copyright claims, Plaintiff will apply the non-

15 exclusive factors identified in *Fogerty v. Fantasy, Inc.*, 510 U.S. 517 (1994), and show that

16 awarding fees to defendants would be inconsistent with "the purpose of the Copyright Act." *Id.* at

17 *534 (fn.19)*.

18 **A. Frivolousness & Objective Unreasonableness**

19 **1. Legal Reasonableness**

20 In the case of *Kourtis v. Cameron*, 419 F.3d 989 (9th Cir. 2005), a copyright owner sued the

21 same defendants on identical cause of actions years after the first suit was final. The district court

22 found that the second suit was duplicative of the first. The Ninth Circuit reversed. It noted "the

23 weighty due process considerations that make adequacy of representation the *sine qua non* of any

24 privity relationship" and "adequate representation is a due process prerequisite to precluding a

25 litigant from his day in court if he was not a party to the earlier litigation." *Id.* at 1001 (fn.5).

26

27

28

-19-

First, Defendants cite *Adams v. Cal. Dep't of Health Servs.*, 487 F.3d 684 (9th Cir. 2007). That case relied on the *Kourtis v. Cameron* decision, which stated that

> the Supreme Court has repeatedly emphasized that "it would violate the Due Process Clause . . to bind litigants to a judgment rendered in an earlier litigation to which they were not parties and in which they were not adequately represented." *Richards v. Jefferson County*, 517 U.S. 793, 794, 116 S.Ct. 1761, 135 L.Ed.2d 76 (1996).

*Kourtis*, at 996.

The procedural history in this case is clear. Plaintiff was summarily denied the right to intervene or join in the *Netbula v. SUN* case to protect his personal copyrights. The 1996 Copyright was "THE ONLY COPYRIGHT AT ISSUE" in the *Netbula v. SUN* case. The three copyrights alleged in the instant action (the 2000 and 2K4 Copyrights and the pre-Netbula copyright) were never part of the *Netbula v. SUN* case. SUN made every effort to prevent the three copyrights from being litigated in the *Netbula v. SUN* case by precluding Yue from participating in that case. Also, four of the individual defendants haven't been served.

Yue did not have his day in court to protect his copyrights. In fact, he asked for that basic right and was summarily denied that right.

SUN stated that "there is a common question of whether Yue or Netbula holds the copyrights in the software, and what parts are owned by each." Thus, according to SUN, there is a conflicting claim on the copyrights by Netbula and Yue. Under *Kourtis,* conflicting claims on copyright precludes finding of any privity relationship.

Second, SUN's claim that the summary judgment order Netbula v. SUN case resolved all the claims in the instant *Yue v. SUN* case is misplaced. A careful reading of Judge Jenkins's Order showed that he did not address most of the counts of infringement in the instant *Yue v. SUN* case. As stated in the FACTUAL BACKGROUND section, many the transactions from which the

-20-

1  claims arise were not part of the *Netbula v. SUN* case. Judge Jenkins noted during the December

2  14, 2007 hearing that the Yue v. SUN case "is not completely overlapping with" the *Netbula v.*

3  *SUN* case. For instance, in the summary judgment order in the *Netbula v. SUN* case, in the section

4  on the SDK license, Judge Jenkins wrote: "Plaintiff offers these communications, however, to

5
   show that StorageTek *distributed* software for users on unlicensed platforms." Docket 138 of the
6

7  *Netbula v. SUN* case, p.9:8-9. However, such distribution on unlicensed platforms was not

8  analyzed for infringement claims in that summary judgment order. Count III and IV of the instant

9  are about acts in which "StorageTek *distributed* software for users on unlicensed platforms."

10  Third, SUN's defense counsel's direct communication to Yue on the *Netbula v. SUN* case and

11  their legal advice to Yue on the *Yue v. SUN* case were highly unethical.

12
   As Judge Jenkins wrote: "During the November 20, 2007 hearing, the Court instructed Yue
13

14  that he could not file motions, notice hearing dates, or speak in court unless he had leave of court

15  or until he was given permission to represent himself."

16  On December 5, 2007, replying to an email from Mr. Pulgram, Plaintiff wrote:

17        It was clear that Judge Jenkins did not intend to handle the disputes about
          the other copyrights which I personally owned. The 7391 case was about
18        the 1996 copyright only, which covers the code I wrote from July 24,
          1996 to Sep 1, 1996 -- as Mr. Pulgram correctly pointed out in several
19        occasions. I am attaching the Nov 20, 2007 transcript for you to review.

20
          As Netbula stated in its motion to substitute party as to the copyright
21        claim, I sought a stipulation for the substitution with an eye to amending
          the complaint. SUN vehemently opposed my proposal, forcing me to file
22        a separate action as I foretold you. Even after the Yue case was filed,
          SUN persisted its opposition to my substitution or joinder as a party in
23        the 7391 case, and Judge Jenkins agreed with SUN and issued a "cease
24        and desist" order.

25
   In response, Mr. Laurence Pulgram urged Yue to file a motion on the *Netbula v. SUN* docket
26

27  to relate the cases. Mr. Pulgram, as if he was speaking for the Court, wrote: "I do not know why it

28                                                    -21-

Case No. C07-05850-MJJ-EDL                      OPPOSITION TO DEFENDANTS' MOTION FOR FEES

1  would be assumed, without more, that this [cease and desist] order precludes filings that

2  specifically relate to claims as to which Dr. Yue actually is a party." Yue Decl., at ¶ 31.

3  **2. Factual Reasonableness**

4  Defendants allege that Yue's complaint is factually unreasonable because the records in the

5
6  *Netbula v. SUN* case show that the alleged infringement stopped sometime in late 2005. This

7  allegation that infringement stopped is unfounded. There is no solid evidence establishing their

8  assertion that they stopped the infringement at any time. All defendants presented were hearsay

9  statements not subject to any cross-examination. In fact, in the exhibit attached to Yue's motion to

10 intervene and for injunctive relief filed in the *Netbula v. SUN* case, Yue attached evidence

11 showing ongoing infringement as recent as October 2007.

12 Defendants rely on Mr. Michael Abramovitz's declaration, however, as shown in the *Netbula*

13
14 *v. SUN* case in Docket No. 100, Mr. Abramovitz's under oath deposition testimony was self-

15 inconsistent and he lacked knowledge about StorageTek's copying/distribution activities.

16     Q  What kind of -- well, was there any kind of control in terms of the inside
    copying? Was there some kind of a list that was maintained at StorageTek of
17     who actually made a copy of the program for their computer?

18     A  I don't know.

19     Q  Who would know that?

20     A  I don't know.

21 Abramovitz Depo., pp.18:15-19:3.
22

23     Q  Did StorageTek or its resellers sell any REELs licensed software after
    February 1st, 2001?
24     A  I don't know.
25

26 Abramovitz Depo., pp.26:18-20.

27

28                         -22-

1       Q  Okay.  Although you're in the engineering group, did you deal with any kind of licensing issues with the programs?

2

3       A  No.

4  Abramovitz Depo., p.30:22-25.

5       Q  Did ISVs have the right to further distribute the LibAttach programs to

6       their customers?

7       A  I don't know.

       ...

8       Q  Okay.  Who were the StorageTek people responsible for monitoring and

9       accounting for LibAttach licenses?

       A  I don't know.

10

11  Abramovitz Depo., pp.41:17-42:19.

12       Q  Okay.  I apologize.  It was my understanding  that you said that you

13       stopped using it in -- there was LibAttach from mid-2001 to 2006, and

14       you said it was no longer used after 2006.

15       A  It was in 2006 that we discontinued its use.

16       Q  When in 2006?

17       A  It would have been fourth quarter calendar year '06.

18       I'm sorry.  It was '05. It was '05.

19  Abramovitz Depo., pp.15:18-25.

20  Thus, Mr. Abramovitz admitted under cross-examination that he has no knowledge about the

21  internal control of the SDK, no involvement in licensing, and he does not even know who have the

22  knowledge. Yet, remarkably, Mr. Abramovitz, a low level engineer, stated in his declaration that

23  he knew that SUN and StorageTek employees stopped copying or distributing PowerRPC

24  sometime in late 2005. There is question of credibility about Mr. Abramovitz's declaration under

25  any standard in any part of the world.

26

27  **B. Motivation**

28                              -23-

Defendants alleged that the instant litigation was "improperly motivated and otherwise harassing and vexatious." They make various accusations without showing the complete procedural history. All Plaintiff has tried to do is to protect his personal intellectual property rights granted by the U.S. Constitution and the Copyright Act. It was defense counsel who raised the issue of conflicting ownership of copyrights and challenged the validity of the copyrights. It was defense counsel who pointed that Yue owned the copyrights of the pre-Netbula code.

Plaintiff attempted to intervene and join as a copyright plaintiff in the *Netbula v. SUN* case pursuant to FRCP 24(a). That attempt was blocked by an *ex parte* order that vacated the hearing of Plaintiff's motion. Plaintiff's motion to substitute or join as a party in the *Netbula v. SUN* case was also opposed by SUN. Plaintiff sought to reach a stipulation with defendants on the issue of substitution for judicial economy. But, SUN refused to stipulate and forced Yue to file a separate action. There is no need to repeat the whole procedural history, Yue did everything reasonably and fully informed the court and SUN about his actions in protecting his copyrights.

In addition, at the November 20, 2007 hearing, SUN's defense counsel, Mr. Pulgram gave a copy of the 1996 Copyright certificate and made it clear to the Court that that copyright is "THE ONLY COPYRIGHT AT ISSUE" in the *Netbula v.SUN* case, which leaves Plaintiff's other copyrights unrepresented in that case.

The only thing Yue did not do is giving up his constitutionally protected rights facing SUN's intimidation. Yue did not surrender his rights when SUN made the initial intimidation back in 2006 and will not give in when he is denied basic due process.

## C. The Purpose of Copyright Act

"[I]t generally does not promote the purposes of the Copyright Act to award attorney fees to a prevailing defendant when the plaintiff has advanced a reasonable, yet unsuccessful claim."

-24-

1  *Bridgeport Music v. Rhyme Syndicate Music*, 376 F.3d 615, 628 (6th Cir. 2004).  See also, *Perfect*

2  *10 v. Ccbill LLC.*, 488 F.3d 1102 (9th Cir. 2007) (denying attorney's fees and costs because

3  "Perfect 10's legal claims are not frivolous or objectively unreasonable.").

4       In the instant case, the 10 counts of copyright infringement alleged in the FAC are plain

5
   software piracy. Those acts are simply wrongful theft of Plaintiff's intellectual property.
6

7  Defendants failed to show any of the 10 counts of infringement was insufficient for stating a

8  copyright claim. Defendants failed to show any of the 10 counts of infringement was legally or

9  objectively unreasonable.

10  **D. Other Factors**

11

12  **1.  No attorneys' fees should be awarded to defendants because of their misrepresentation, deceptive and unethical conduct led to the judgment**

13
      In the instant case, SUN obtained the judgment through a series of deceptive, prejudicial and
14
   unethical conduct as well as misrepresentations to the Court.
15

16       SUN's counsel, Mr. Pulgram engaged in extensive direct communications to Yue regarding

17  the *Netbula v. SUN* case. He talked about various substantive matters in the *Netbula v. SUN* case

18  and proposed then entered a stipulation with Yue on service by email. Relying on Mr. Pulgram's

19
   communications on the Netbula matter, Yue believed that Mr. Pulgram would eventually agree to
20
   Yue's full participation in the *Netbula v. SUN* case to assert his copyrights. When Yue asked about
21

22  filing a new lawsuit against SUN, Mr. Pulgram stated that he would confer with his client,

23  indicating the willingness to consider a cooperative approach in the related litigations.  Before the

24  instant *Yue v. SUN* action was filed, Mr. Pulgram offered Yue legal advice on these matters. He

25  stated that he would accept service of Yue's TRO application by email.

26

27

28                                             -25-

Case No. C07-05850-MJJ-EDL                    OPPOSITION TO DEFENDANTS' MOTION FOR FEES

1   However, in his later representations to the Court, Mr. Pulgram made every attempt to
2   preclude Yue from the *Netbula v. SUN* case. During the October 31, 2007 telephonic hearing, Mr.
3   Pulgram advised Judge Jenkins that Yue should be disallowed. That hearing was about SUN's
4   motion to vacate the hearing of Yue's motion to intervene in the *Netbula v. SUN* case. As a result,
5
6   Mr. Pulgram enjoyed an *ex parte* telephonic conference with Judge Jenkins, resulting in an order
7   that vacated the hearing of Yue's motion to intervene and join as a party in the *Netbula v. SUN*
8   case. Essentially, SUN communicated with Yue directly via Mr. Pulgram on the Netbula litigation
9   and drew from Yue substantive information about Netbula's and Yue's work-product. Then after
10  such unethical and prejudicial conduct, it turned around and said that Yue could not join the
11  *Netbula v. SUN* case after all. SUN's conduct forced Yue to file the instant action to protect his
12  personally owned copyrights.
13
14      SUN's motion to dismiss was full of misrepresentations of both law and fact. However, as
15  Mr. Pulgram is a licensed attorney and an officer of the Court, his representations were more
16  readily trusted and relied upon by the Court. Plaintiff is a *pro se* litigant. In court filings, Mr.
17  Pulgram attacked *pro se* litigants on the ground that "[a *pro se*] wants to be free of the ethical
18  restraints to which attorneys are bound."

19      Plaintiff planned to argue against these misrepresentations at the hearing scheduled on
20  March 4, 2008 himself. However, relying on SUN's misrepresentations, Judge Jenkins vacated
21
22  the hearing, and ruled against Yue, the *pro se* Plaintiff, directly. Thus, Yue lost the opportunity to
23  shatter SUN's misrepresentations and expose SUN's misconduct in a hearing. The Dismissal
24  Order is thus a direct result of SUN's misconduct.

25
26  **2.  No fees should be awarded to defendants because Judge Jenkins had an interest in ruling
       against Plaintiff**
27

28                                              -26-

Case No. C07-05850-MJJ-EDL                    OPPOSITION TO DEFENDANTS' MOTION FOR FEES

Before he received a copy of Yue's complaint, Judge Jenkins stated that the *Yue v. SUN* case "[is] not completely overlapping with the [*Netbula v. SUN case*]." He also recognized that "Mr. Yue is not trying to assert the rights of Netbula."

Judge Jenkins seems to have a tendency to assign nefarious intent to Yue's actions without basis. He talks about Yue's "nearly vexatious" "tactics", however, such accusations were based on a selective or even distorted view of the procedural history. At every step, Yue acted according to the rules and made every effort to seek the most judicially economical way to protect his personal property rights.

As stated in Yue's Motion for Disqualification of the Assigned Judge, Judge Jenkins realized or should have realized that he had an interest in ruling against Yue on all of his copyrights and copyright claims. In his letter to former Chief Circuit Judge Schroeder, Yue made it clear that he would seek compensation from whoever caused the loss of the copyright license fees in the *Netbula v. Symantec* case, and his understanding was that Judge Jenkins ruled against Netbula out of retaliation.

## 3. Defendants' fee and cost requests are grossly unreasonable

Defense counsel made an argument that Yue is in privity of Netbula, and they billed their clients over \$90,000. While SUN and Mr. Schwartz can afford those fees, Plaintiff believes that they are very unreasonable.

## III. No fees should be awarded to defendants because the alleged infringement happened before the registration of copyright

"The legislative history of § 505 provides no support for treating prevailing plaintiffs and defendants differently with respect to the recovery of attorney's fees." *Fogerty v. Fantasy, Inc.*, 510 U.S. 517 (1994). The factors in determining attorneys' fees ward must be "faithful to the

-27-

1  purposes of the Copyright Act and are applied to prevailing plaintiffs and defendants in an
2  evenhanded manner." *Id.* at 534 n.19.

3      Under 17 U.S.C. § 412, "no award of statutory damages or of attorney's fees, as provided by
4
   sections 504 and 505 shall be made for" "any infringement of copyright commenced after first
5
   publication of the work and before the effective date of its registration." The plain language of the
6
7  Copyright Act suggests that the fee award section (§ 505) does not apply when the alleged
8  infringement commenced before the effective date of registration. Otherwise, prevailing
9  defendants and plaintiffs would be treated differently with respect to the recovery of attorney's
10 fees.

11     In the instant case, the effective dates of the two registrations were in October 2006 and
12
   December 2006, respectively. The alleged infringement commenced before October 2006.
13
14 Therefore, the defendants are not permitted from seeking fees and costs under the Copyright Act.

15                                    **CONCLUSION**

16     For the sake of Copyright protection in the U.S. and fundamental justice, Plaintiff requests that
17 the Court deny Defendants' Motion for Attorney's Fees and Costs.

18

19     Respectfully submitted,
20

21

22     Dated: April 1, 2008
23

24                                              DONGXIAO XUE (*Pro Se*)
25

26

27
                                    -28-
28