LAURENCE F. PULGRAM (CSB NO. 115163)
*lpulgram@fenwick.com*
JEDEDIAH WAKEFIELD (CSB NO. 178058)
*jwakefield@fenwick.com*
ALBERT L. SIEBER (CSB NO. 233482)
*asieber@fenwick.com*
LIWEN A. MAH (CSB NO. 239033)
*lmah@fenwick.com*
FENWICK & WEST LLP
555 California Street, 12th Floor
San Francisco, CA 94104
Telephone:  (415) 875-2300
Facsimile:   (415) 281-1350

Attorneys for Named Defendants
SUN MICROSYSTEMS, INC.,
MICHAEL MELNICK, JULIE DECECCO,
MICHAEL P. ABRAMOVITZ,
LISA K. RADY, and JONATHAN SCHWARTZ

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| DONGXIAO YUE,<br><br>             Plaintiff,<br><br>v.<br><br>STORAGE TECHNOLOGY CORPORATION, a Delaware corporation; SUN MICROSYSTEMS, INC., a Delaware corporation; MICHAEL MELNICK, an individual; JULIE DECECCO, an individual; MICHAEL P. ABRAMOVITZ, an individual; LISA K. RADY, an individual; JONATHAN SCHWARTZ, an individual; and DOES 1-1000, inclusive,<br><br>             Defendants. | Case No.  C-07-05850-MJJ (EDL)<br><br>**REPLY IN SUPPORT OF DEFENDANTS' MOTION FOR ATTORNEYS' FEES AND COSTS**<br><br>Date:    TBD<br>Time:   TBD<br>Dept:    TBD<br>Judge:  TBD |

REPLY IN SUPPORT OF DEFENDANTS'
MOTION FOR ATTORNEYS' FEES AND
COSTS                                                                                                      C-07-05850-MJJ (EDL)

**TABLE OF CONTENTS**

Page

I. INTRODUCTION .................................................................................................. 1

II. ARGUMENT ......................................................................................................... 5

   A. PLAINTIFF'S CLAIM THAT DEFENDANTS ARE NOT "PREVAILING PARTIES" IS NOT CONSISTENT WITH SUPREME COURT AND NINTH CIRCUIT PRECEDENT ..................................... 5

   B. PLAINTIFF'S APPLICATION OF THE *FOGERTY* FACTORS FAIL TO SET FORTH ANY BASIS FOR THE DENIAL OF ATTORNEYS' FEES ......... 8

   C. DEFENDANTS ARE ENTITLED TO ATTORNEYS' FEES UNDER THE COPYRIGHT ACT EVEN THOUGH PLAINTIFF WOULD NOT BE ENTITLED TO STATUTORY DAMAGES AND ATTORNEYS' FEES ............................................................................................................... 13

   D. DEFENDANTS FEES ARE REASONABLE, AND CONTINUE TO INCREASE DUE TO PLAINTIFF'S FRIVOLOUS NEW FILINGS ................. 14

III. CONCLUSION .................................................................................................... 15

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

REPLY IN SUPPORT OF DEFENDANTS'
MOTION FOR ATTORNEYS' FEES AND          -i-                    C-07-05850-MJJ (EDL)
COSTS

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Adams v. Cal. Dep't of Health Servs.*,
    487 F.3d 684 (9th Cir. 2007),
    *cert. denied*, 128 S. Ct. 807 (2007) ............................................................................ 7, 8, 9, 10

*Assessment Techs. of Wi, LLC v. Wire Data, Inc.*,
    361 F.3d 434 (7th Cir. 2004) .................................................................................................. 12, 14

*Baker v. Urban Outfitters, Inc.*,
    431 F. Supp. 2d 351 (S.D.N.Y. 2007) .................................................................................. 6, 14, 15

*Bell Atl. Corp. v. Twombly*,
    127 S. Ct. 1955 (2007) .................................................................................................................. 11

*Buckhannon Bd. & Care Home v. W. Va. Dep't of Health & Human Res.*,
    532 U.S. 598 (2001) ................................................................................................................... 5, 6

*Carbonell v. INS*,
    429 F.3d 894 (9th Cir. 2005) ................................................................................................. 5, 6, 7

*Earth Flag Ltd. v. Alamo Flag Co.*,
    154 F. Supp. 2d 663 (S.D.N.Y. 2001) ............................................................................................ 10

*Fantasy, Inc. v. Fogerty*,
    94 F.3d 553 (9th Cir. 1996) ..................................................................................................... 8, 11

*Fantasy, Inc. v. LaFace Records*,
    Case No. CV 98-0856, 1998 U.S. Dist LEXIS 20931
    (E.D. Cal. Nov. 12, 1998) ............................................................................................................... 9

*Garcia-Goyco v. Law Envtl. Consultants, Inc.*,
    428 F.3d 14 (1st Cir. 2005) ............................................................................................................. 8

*InvesSys, Inc. v. McGraw-Hill Cos., Ltd.*,
    369 F.3d 16 (1st Cir. 2005) ...................................................................................................... 7, 10

*Kourtis v. Cameron*,
    419 F.3d 989 (9th Cir. 2005) .......................................................................................................... 8

*Livingston v. Morgan*,
    Case No. C-06-2389-MMC, 2007 U.S. Dist. LEXIS 55605
    (N.D. Cal. July 5, 2007) ................................................................................................................ 14

*Milton H. Greene Archives, Inc. v. Julien's Auction House, LLC*,
    2007 U.S. Dist. LEXIS 96378
    (C.D. Cal. Dec. 20, 2007) ............................................................................................................. 13

*O'Well Novelty Co. v. Offenbacher, Inc.*,
    52 U.S.P.Q.2d (BNA) 1020 (D. Md. 1999)
    *aff'd*, 55 U.S.P.Q.2D (BNA) 1828 (4th Cir. 2000) ....................................................................... 13

*Perfect 10, Inc. v. CCBill LLC*,
    488 F.3d 1102 (9th Cir. 2007) ....................................................................................................... 10

*Riviera Distributors v. Jones*,
    __ F.3d __, 2008 U.S. App. LEXIS 3498
    (7th Cir. Feb. 20, 2008) .......................................................................................................... 5, 6, 7

REPLY IN SUPPORT OF DEFENDANTS'
MOTION FOR ATTORNEYS' FEES AND                    -ii-                    C-07-05850-MJJ (EDL)
COSTS

**TABLE OF AUTHORITIES**
**(continued)**

**Page(s)**

*Robinson v. Lopez*,
    69 U.S.P.Q.2d (BNA) 1241
    (C.D. Cal. 2003) .................................................................................................. 8, 13

*Shloss v. Sweeney*,
    515 F. Supp. 2d 1083 (N.D. Cal. 2007 ........................................................................ 5

*Teevee Toons, Inc. v. Overture Records*,
    501 F. Supp. 2d 964 (E.D. Mich 2007) ...................................................................... 14

*Torres-Negron v. J & N Records*,
    504 F.3d 151 (1st Cir. 2007) .................................................................................. 5, 6

*Walton v. Eaton Corp.*,
    563 F.2d 66 (3d Cir. 1977) ...................................................................................... 10

*Women's Health Center v. Codispoti*,
    63 F.3d 863 (9th Cir. 1995) ....................................................................................... 9

*Zuk v. Eastern Pa. Psychiatric Inst. of the Medical College*,
    103 F.3d 294 (3d Cir. 1996) .................................................................................... 11

**STATUTES**

17 U.S.C. § 412(2) ............................................................................................................ 14

28 U.S.C. § 1927 ............................................................................................................... 14

**OTHER AUTHORITIES**

4 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright*
    § 14.10[A], at 14-174 & n.3 (rev. 2006) ................................................................... 13

6 William F. Patry, *Patry on Copyright*
    § 22:204, at 22-456 (rev. 2008) ................................................................................ 13

6 William F. Patry *Patry on Copyright*
    § 22:211, at 22-478 (rev. 2008) .................................................................................. 5

6 William F. Patry, *Patry on Copyright*
    § 22:211, at 22-480 (rev. 2008) .................................................................................. 7

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

## I. INTRODUCTION

Defendants' motion for attorneys' fees is the result of a copyright lawsuit that Plaintiff Dongxiao Yue ("Yue," or "Plaintiff") was specifically warned against bringing, and that the Court has concluded should never have been brought. Even though his company, Netbula, was represented by counsel in a pending case involving the same set of facts, Plaintiff chose to pursue a duplicative action, claiming once again that the **same** Defendants (Sun and StorageTek) exceeded the scope of the **same** licenses (the 2000 and 2004 agreements) and infringed the copyrights in the **same** software (Netbula's "PowerRPC" program) as alleged in *STK I*. Having brought this action, which was doomed from the outset, he proceeded to litigate in a fashion that did nothing to advance his case but placed a heavy burden on both Defendants and the Court. He resisted having *STK I* and *STK II* related, sought a default after being ordered not to, and even continued to press the case after the Court ruled that Defendants' use of the software was within the scope of the 2000 and 2004 license agreements, and thus not infringing. Even now that judgment has been entered, he presses on. He has now not only filed a Rule 60(b) Motion, but two motions for disqualification, attacking both defense counsel and the Honorable Martin J. Jenkins, arguing that they engaged in unethical conduct, and even conspired against him. These utterly frivolous filings have forced Defendants to incur significant additional fees, and Plaintiff should be ordered to pay them.

Plaintiff opposes Defendants' motion for attorneys' fees with a series of arguments that at best are simply wrong, and at worst are completely untethered to the law and facts. Plaintiff's argument that defendants are not "prevailing parties" is inconsistent with Supreme Court and Ninth Circuit precedent. His application of the *Fogerty* factors fails to set forth any basis for the denial of attorneys' fees. And his argument that *Defendants* are not entitled to their fees under the copyright act because *Netbula* was late in obtaining its registrations, and consequently would be barred from recovering *its* attorneys' fees, is contrary to both the text of Section 412 of the Copyright Act and the policy underlying it. Beyond these unavailing positions, Plaintiff's opposition contains arguments based on Plaintiff's due process rights, vague references to the importance of intellectual property protection, and even international relations between the

REPLY IN SUPPORT OF DEFENDANTS'
MOTION FOR ATTORNEYS' FEES AND                   -1-                   C-07-05850-MJJ (EDL)
COSTS

United States and China. In light of these wide-ranging arguments, it is helpful, yet again, to step back and recap what this case is really about.

In 1996, Plaintiff Dongxiao Yue created a Limited Liability Company called Netbula, LLC. *STK I* Docket No. 98 [Reply in Support of Motion to Substitute Party at 2:21-24]. Netbula was, and still is, a software company. It granted licenses to customers to use its software, and was paid in return. *STK I* Docket No. 102 [Declaration of Dongxiao Yue in Opposition to Defendants' Motion for Summary Judgment ¶ 9]. In 2000 and 2004, Netbula granted licenses to Defendant StorageTek to develop software using Netbula's program, and to distribute products containing that software. Plaintiff—the 100% owner and sole employee of Netbula—negotiated and executed both of these license agreements on behalf of his company. *Id.* ¶ 17; *see also STK II* Docket No. 43 [Opposition to Motion to Dismiss at 5:11-12 ("Netbula is wholly-owned by Plaintiff.")].

Later, StorageTek and Netbula had a disagreement about how much money was owed under the Agreements. In late 2006, Netbula initiated a lawsuit ("*STK I*") on behalf of his company against StorageTek and Sun (which had acquired StorageTek). But Netbula did not just sue for money owed under the contract. It sued for copyright infringement, too, arguing that Defendants had exceeded the scope of the licenses. *See STK I* Docket Nos. 1, 15 [Complaint; First Amended Complaint].

At all times in *STK I*, Netbula has claimed infringement of a single copyright, the NETBULA POWERRPC registration ("POWERRPC"), attached to both the original and first amended complaint. *Id.* By the time it filed its lawsuit, Netbula had already sought additional registrations covering the very same software licensed to StorageTek and, in fact, these registrations both issued, in Netbula's name, before Netbula filed its amended complaint as a matter of right. *See STK II* Docket No. 1 [Complaint ¶ 2 & Exs. A-B]. Nothing precluded Netbula from suing on these registrations as well, though there would have been no particular advantage in doing so. The issue, after all, was whether Defendants' use of the software was outside the scope of the licenses—a question that is unaffected by the number of copyright registrations Netbula holds on that software.

REPLY IN SUPPORT OF DEFENDANTS'
MOTION FOR ATTORNEYS' FEES AND        -2-                    C-07-05850-MJJ (EDL)
COSTS

1   For whatever reason, Netbula did not include these additional registrations in its original complaint, or in its amended complaint, or seek leave to file a second amended complaint to add these additional registrations at any point in *STK I*. In short, Netbula—at all times represented by counsel—could have attempted to assert these additional copyrights at any point. It did not. Netbula also did not name, or seek leave to name, as additional defendants those parties it believed also responsible for the alleged infringement. Again, it could have done so, but did not.

The case proceeded according to the pleadings. Yue, the only person through which Netbula could act, participated and controlled all aspects of the *STK I* litigation.[1] Meanwhile, in accordance with the Court's scheduling orders, the *STK I* Defendants diligently prepared a summary judgment motion on the core issue in that case—whether their use of Netbula's software was within the scope of the licenses. At the request of Netbula's counsel, Netbula was provided additional time to respond to the Motion, and it filed a thorough opposition. It submitted a declaration from Plaintiff, which attached and cited the "newly discovered evidence" that Plaintiff now claims was never considered. *STK I* Docket No. 102 [Declaration of Dongxiao Yue in Opposition to Defendants' Motion for Summary Judgment]. But the Court *did* consider Netbula's arguments and extrinsic evidence—it simply found that the evidence did not create a genuine issue of material fact. The Court agreed that Netbula's remedy (if any) for StorageTek's use of the software it licensed is under the terms of license agreements entered into by Netbula and executed by Plaintiff. Netbula remains free to pursue its case; its claims for breach of contract, fraud, and unfair competition remain in *STK I*, which is pending before this Court.

Rather than take the required procedural steps to have all claims arising from StorageTek's use of Netbula's software heard in the *STK I* action, shortly before the deadline for filing dispositive motions in *STK I*, Plaintiff began the worst sort of tactical maneuvering.

---

[1] All of the non-attorney declarations filed by Netbula in that action were by Plaintiff. *See, e.g.*, *STK I* Docket No. 102 [Declaration of Dongxiao Yue in Opposition to Defendants' Motion for Summary Judgment]. Dr. Yue was also deposed by Sun during *STK I*, and Dr. Yue was present at both of the depositions of Sun witnesses taken by Netbula. *See STK I* Docket No. 102 [Declaration of Dongxiao Yue in Opposition to Defendants' Motion for Summary Judgment ¶¶ 4, 86]; *Netbula-Sun* Docket No. 107 Ex. 44 [30(b)(6) Deposition of Michael Abramovitz (Oct. 23, 2007), at p.3].

REPLY IN SUPPORT OF DEFENDANTS' MOTION FOR ATTORNEYS' FEES AND COSTS     -3-     C-07-05850-MJJ (EDL)

1  Plaintiff executed a collusive assignment of the copyrights between himself and his company.
2  *See STK II* Docket No. 1 [Complaint Ex. C].  Netbula's counsel admitted, and the Court found,
3  what was already then obvious:  This assignment was entered into at least in part by Plaintiff's
4  desire to bring Netbula's then-pending copyright claims in his own name, on a *pro se* basis.
5  *STK I* Docket No. 139 [Transcript of November 20, 2007 at 10:21-11:12, 16:20-17:1].  Netbula
6  filed a motion to substitute parties, which was denied without prejudice by the Court in light of
7  clear law prohibiting assignments that would result in a company's claims being prosecuted by a
8  *pro se* individual, and in view of the late stage of the case.  *STK I* Docket No. 56.  Netbula, the
9  only plaintiff in *STK I*, did not seek an immediate appeal, and it has not sought to renew its
10 substitution motion.  Indeed, Netbula took no further action in the case other than to oppose
11 Defendants' motion for summary judgment.  Thus, there is no due process concern here—
12 Plaintiff has had his day in Court through his wholly-owned company, Netbula, and its counsel.
13      Nevertheless, Plaintiff steadfastly refused to accept that that he was not the plaintiff in
14 *STK I*.  In that case, he filed a series of *pro se* motions and oppositions even before the motion for
15 substitution was heard.  When these attempts to litigate Netbula's claims *pro se* were
16 appropriately rebuffed, he threatened Defendants with a second lawsuit over the same facts.  He
17 ultimately filed it, ignoring warnings about the consequences and pleas that he confer with
18 counsel before doing so.  Now, unable to accept that his claims and actions are contrary to law,
19 Plaintiff has mounted a series of spurious attacks against both Defendants' counsel and the
20 presiding judge in both *STK I* and *STK II*.
21      The end result of Plaintiff's obstinacy is that Defendants have incurred and are continuing
22 to this day to incur substantial attorneys' fees in responding to a duplicative, unnecessary
23 copyright action and the myriad motions Plaintiff chooses to file, none of which impose any cost
24 on him. Under the circumstances and the governing legal standards, an award of attorneys' fees is
25 entirely warranted.
26
27
28

REPLY IN SUPPORT OF DEFENDANTS'
MOTION FOR ATTORNEYS' FEES AND    -4-    C-07-05850-MJJ (EDL)
COSTS

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

## II. ARGUMENT

### A. PLAINTIFF'S CLAIM THAT DEFENDANTS ARE NOT "PREVAILING PARTIES" IS NOT CONSISTENT WITH SUPREME COURT AND NINTH CIRCUIT PRECEDENT

Plaintiff first disputes that Defendants are prevailing parties in this action, even though this Court ordered his claims dismissed with prejudice on the ground that his copyright claims should have been brought, if at all, in the earlier-filed *STK I* case, in which summary judgment has been granted on Netbula's copyright claim. *See* Opposition at 17:17-18:19. Plaintiff's argument that this relief is insufficient to render Defendants prevailing parties ignores *Riviera Distributors v. Jones*, __ F.3d __, 2008 U.S. App. LEXIS 3498 (7th Cir. Feb. 20, 2008), a case discussed at length in Defendants' opening brief; *Buckhannon Bd. & Care Home v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598 (2001), the Supreme Court case on which *Riviera* relied; and related Ninth Circuit authority also discussing *Buckhannon*, particularly *Carbonell v. INS*, 429 F.3d 894 (9th Cir. 2005). From these authorities, the standard for prevailing party status is straightforward: a "prevailing party" must (1) achieve a material alteration of the legal relationship of the parties (2) which alteration is judicially sanctioned. *Shloss v. Sweeney*, 515 F. Supp. 2d 1083, 1085 (N.D. Cal. 2007) (citing *Carbonell*, 429 F.3d at 897-98). This standard applies equally in the copyright realm as any other. *See id.* at 1085-86.[2] It is met here: the Court's Order dismissing this action establishes that Plaintiff cannot bring successive, harassing copyright lawsuits against Defendants over the license agreements that are the heart of both this lawsuit and the earlier *STK I* case.

Plaintiff relies on *Torres-Negron v. J & N Records*, 504 F.3d 151 (1st Cir. 2007), for the proposition that a copyright defendant does not qualify as a prevailing party where there has not been a finding of non-infringement. *See* Opposition at 17:26-18:15 (citing *Torres-Negron*, 504 F.3d at 164). This case is inconsistent with *Riviera*, *Buckhannon*, *Carbonell* and a host of copyright cases around the country awarding defendants their attorneys' fees for outcomes that do not involve a determination of non-infringement. *See, e.g.*, *Riviera*, 2008 U.S. App. LEXIS at *3-

---

[2] *See also* 6 William F. Patry, *Patry on Copyright* § 22:211, at 22-478 (rev. 2008) ("The Copyright Act does not define prevailing party, and thus general principles of law apply.").

REPLY IN SUPPORT OF DEFENDANTS'
MOTION FOR ATTORNEYS' FEES AND                -5-                C-07-05850-MJJ (EDL)
COSTS

*8 (ordering district court to award attorneys' fees to defendant following dismissal of claims in successive action that should have been brought to attention of independent software expert under agreement between the parties); *Baker v. Urban Outfitters, Inc.*, 431 F. Supp. 2d 351, 363-64 (S.D.N.Y. 2007) (awarding defendant attorneys' fees after it admitted infringement but successfully limited the amount of damages available to plaintiff).

The issue presented in *Torres-Negron* was whether the court had subject-matter jurisdiction over the plaintiff's claim. The district court ultimately determined that it did not, because there was no *bona fide* registration in the allegedly copyrighted work at issue in that case, and on that basis affirmed the denial of defendant's motion for attorneys' fees. 504 F.3d at 163-64. To get there, the First Circuit read *Buckhannon* in a way that is inconsistent with controlling Ninth Circuit authority, as well as the text of *Buckhannon* itself. Specifically, the *Torres-Negron* court wrote that "[t]he Supreme Court has defined a 'prevailing party' as one who has 'prevailed on the merits of at least some claims,'" and that accordingly defendant "cannot qualify as a prevailing party because it has not received a judgment on the merits." 504 F.3d at 164 (quoting and citing *Buckhannon*, 532 U.S. at 603-05). This is an all too narrow view of what *Buckhannon* deems sufficient to establish "prevailing party" status. As explained by the Ninth Circuit in *Carbonell*, the Supreme Court identified "judgment on the merits" as an *example* of the forms of judicial action that could render a litigant a prevailing party "and, thereby, made it clear that litigants could also qualify for prevailing party status if they achieved other types of relief." 429 F.3d at 898; *see generally id.* at 898-99 (identifying other forms of relief short of final judgment on the merits that established prevailing party status and noting that "the vast majority of other circuits" reject the view that the First Circuit espoused in *Torres-Negron*).

The virtues of *Carbonell*, and the drawbacks of *Torres-Negron*, are illuminated by the facts of this case. Defendants moved to dismiss a copyright action in the most efficient manner possible—by relying on clear and controlling Ninth Circuit precedent regarding duplicative lawsuits. *See generally* Docket No. 35 [Motion to Dismiss]; *Adams v. Cal. Dep't of Health*

*Servs.*, 487 F.3d 684 (9th Cir. 2007), *cert. denied*, 128 S. Ct. 807 (2007).[3] Refusing to recognize this disposition as a basis for statutory attorneys' fees would create the perverse incentive to defend actions in a wasteful manner designed to achieve a "judgment on the merits"—in this circumstance, by encouraging Defendants to accede to Plaintiff's improper attempt to maintain a separate lawsuit over the same set of facts in *STK I*, requiring the Court's oversight of both, and then moving for summary judgment on the grounds already set forth (and ultimately adopted by the Court) in *STK I*—that the use was within the scope of the licenses at issue in both *STK I* and *STK II*. *See* 6 William F. Patry, *Patry on Copyright* § 22:211, at 22-480 (raising concern that narrow view of "prevailing party" status "creates a disincentive for the successful party to resolve the matter"). Furthermore, the standard urged by Plaintiff, requiring a finding of non-infringement before a copyright defendant could achieve prevailing party status, would effectively shield plaintiffs (like him) who file complaints so unreasonable that they are dismissed long before a court or jury makes ultimate findings of infringement or non-infringement. This, thankfully, is not the law.

An earlier panel of the First Circuit appears to have recognized this fact, noting in *InvesSys, Inc. v. McGraw-Hill Cos., Ltd.*, 369 F.3d 16 (1st Cir. 2005), that

> a copyright case may turn solely on a question of fact such as whether the defendant copied a protected work or stumbled on the same jingle by chance. Or a copyright case might be won because the defendant failed to answer the complaint or be lost because of a discovery violation by the plaintiff—civil procedure questions in which copyright law plays no part. Yet in both sets of cases, surely the winner could claim attorney's fees and costs (subject as always to the trial court's discretionary judgment).

*Id.* at 20 (affirming award of attorneys' fees to prevailing defendant). Under this approach—which is consistent with *Carbonell* and *Riviera*—Defendants are prevailing parties entitled to attorneys' fees under the Copyright Act.

---

[3] Of course, Defendants' attempt to minimize the costs and burdens of protracted litigation was thwarted by Plaintiff's conduct in litigation both before and after Defendants filed their motion for attorneys' fees and costs. *See* Motion for Attorneys' Fees at 4:9-5:14; Section II.D, *infra*.

REPLY IN SUPPORT OF DEFENDANTS'
MOTION FOR ATTORNEYS' FEES AND                -7-                C-07-05850-MJJ (EDL)
COSTS

B.  **PLAINTIFF'S APPLICATION OF THE *FOGERTY* FACTORS FAIL TO SET FORTH ANY BASIS FOR THE DENIAL OF ATTORNEYS' FEES**

Much of the remainder of Plaintiff's Opposition consists of his analysis of each of the *Fogerty* factors. Opposition at 19:20-25:9. A finding in Defendants' favor as to even one of these factors is sufficient to support an award of attorneys' fees. *See Robinson v. Lopez*, 69 U.S.P.Q.2d (BNA) 1241 (C.D. Cal. 2003) (citing, *inter alia*, *Fantasy, Inc. v. Fogerty*, 94 F.3d 553, 558 (9th Cir. 1996)); *see also, e.g.*, *Garcia-Goyco v. Law Envtl. Consultants, Inc.*, 428 F.3d 14, 20-22 (1st Cir. 2005) (affirming award of attorneys' fees to prevailing defendants who had obtained non-exclusive licenses in plaintiff's work where copyright claim was "objectively weak," even in the absence of a finding on other *Fogerty* factors).

Plaintiff begins by apparently arguing that his duplicative lawsuit was legally reasonable because (1) he is not actually in privity with his wholly-owned company; and (2) *STK I* did not address arguments that he wished to raise regarding alleged infringement resulting from StorageTek's use of Netbula's software. With respect to the first argument, this Court found privity between Plaintiff and Netbula on two grounds: (1) Plaintiff was Netbula's assignee, and (2) Plaintiff was virtually represented in *STK I* as a result of his "intertwined" relationship with Netbula, the company he founded and operates. *See* Order Granting Motion to Dismiss at 6:12-22. In rebuttal, Plaintiff glancingly refers to *Adams*, the controlling authority, but argues that dismissal of this case was inappropriate under *Kourtis v. Cameron*, 419 F.3d 989 (9th Cir. 2005). *See* Opposition at 19:20-20:22. In his Opposition to Defendants' Motion to Dismiss, however, Plaintiff, then represented by counsel, did not even cite *Kourtis*, and for good reason: *Kourtis* contributes nothing to his cause. In the course of exploring the outer limits of the concept of "virtual representation," *Kourtis* reaffirms the very bases on which this Court found privity in this action. *See* 419 F.3d at 996-97 (affirming that "a close relationship, substantial participation, and tactical maneuvering [in earlier litigation] all support participated a finding of virtual representation," including situations in which a senior corporate officer was involved in earlier proceedings by his company); *id.* at 996 (assignor-assignee relationship establishes privity).

*Adams* itself recognized *Kourtis* ultimate holding: that no virtual representation existed

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

where an agency relationship existed, but the interests of the parties were adverse. *Adams*, 487 F.3d at 998. Plaintiff identifies no conflict between himself and his company, a fictional legal entity that he alone created and controls. Indeed, it was on the basis of *Plaintiff's* lengthy declaration that Netbula (unsuccessfully) opposed summary judgment on its copyright claims. Any recovery by Netbula in *STK I* would be belong solely to Plaintiff, its sole owner. Simply put, Plaintiff and Netbula are not adverse by any stretch of the imagination.

Plaintiff also argues that his lawsuit is not duplicative because this Court's order in *STK I* granting Defendants' Motion for Summary Judgment "did not address most of the counts of infringement" alleged in this case. Opposition at 20:24-25. Plaintiff points to a statement by Judge Jenkins made when ordering *STK I* and *STK II* related, in which Judge Jenkins commented that STK I was "not completely overlapping." Plaintiff misses the point completely. The test for duplicativeness does not ask whether the claims are "completely overlapping," but rather whether a claim "should have been brought" in earlier litigation. *Adams*, 487 F.3d at 689.[4] To the extent that Netbula did not raise certain theories of infringement in *STK I* over Defendants' alleged infringing use of Netbula's software, Plaintiff was not entitled to bring a second action to raise them for the first time. Had Netbula (and its counsel) thought such additional theories meritorious, they could have and should have timely amended the complaint accordingly. This,

---

[4] In the same vein, Plaintiff, quoting the transcript of the November 20, 2007 hearing in *STK I*, writes that "[t]he 1996 Copyright was 'THE ONLY COPYRIGHT AT ISSUE' in the *Netbula v. Sun* case," as if this should somehow change the result in this case. *See* Opposition at 9:10; *see also id.* at 14:24-15:1. This statement was true—at that time, and at all times thereafter, Netbula had asserted infringement against the *STK I* Defendants based on a single copyright registration. It never asserted the additional copyright registrations that Plaintiff ultimately asserted in *STK II*, even though one of these registrations issued, in Netbula's name, before Netbula filed its original complaint and the other (again, in Netbula's name) before Netbula filed its amended complaint as a matter of right, and even though they covered the same software Netbula had licensed to StorageTek. They were not in STK I – but under *Adams*, they *should have been*.

Netbula's failure to assert these copyrights in *STK I* does not render Plaintiff's subsequent lawsuit non-duplicative. The Court expressly addressed this point in its order granting Defendants' motion to dismiss: "Plaintiff's allegation that the same conduct violated his interest in different copyrights, 'does not mean that the underlying right is different in this suit.'" Order Granting Motion to Dismiss at 5:1-2 (quoting *Fantasy, Inc. v. LaFace Records*, Case No. CV 98-0856, 1998 U.S. Dist LEXIS 20931, at *13 (E.D. Cal. Nov. 12, 1998); citing *Women's Health Center v. Codispoti*, 63 F.3d 863, 868 (9th Cir. 1995)). The question that matters is whether the additional alleged copyrights should have been asserted in the earlier case. This Court has already decided that issue.

REPLY IN SUPPORT OF DEFENDANTS' MOTION FOR ATTORNEYS' FEES AND COSTS   -9-   C-07-05850-MJJ (EDL)

1  too, is a clear lesson from *Adams*. *Id.* at 693-94 (noting that it is "immaterial" that plaintiff in a

2  successive action failed to amend his earlier complaint to allege additional facts or theories);

3  *Walton v. Eaton Corp.*, 563 F.2d 66, 71 (3d Cir. 1977) ("[T]the court must insure that the plaintiff

4  does not use the incorrect procedure of filing duplicative complaints for the purpose of

5  circumventing the rules pertaining to the amendment of complaints."), *quoted and cited with*

6  *approval in Adams*, 487 F.3d at 688.

7  In short, Plaintiff's arguments suggesting that his lawsuit was "legally reasonable"

8  (whether honestly held or not)[5] are misplaced. His lawsuit was, in fact, objectively unreasonable.

9  This alone strongly supports an award of attorneys' fees. *See, e.g.*, *Perfect 10, Inc. v. CCBill*

10 *LLC*, 488 F.3d 1102, 1120 (9th Cir. 2007) (test of reasonableness is objective); *InvesSys*, 369

11 F.3d at 20-21 (affirming award of attorneys' fees for prevailing defendant where plaintiff's

12 lawsuit was objectively weak); *Earth Flag Ltd. v. Alamo Flag Co.*, 154 F. Supp. 2d 663, 689

13 (S.D.N.Y. 2001) ("Failing to award attorneys' fees to defendants . . . would invite others to bring

14 similarly unreasonable actions without fear of any consequences.").

15 Next, Plaintiff argues that his decision to name Sun's CEO, Jonathan Schwartz, and its

16 Assistant General Counsel, Julie DeCecco, as co-defendants was justified. Opposition at 22:4-

17 23:26. To get there, he quotes portions of the deposition testimony of Michael Abramovitz out of

18 context and then attempts to disguise the crucial point raised in Defendants' opening brief—that

19 Mr. Abramovitz personally removed the allegedly infringed Netbula software in late 2005. *See,*

20 *e.g.*, *STK I* Docket No. 65 [Declaration of Michael Abramovitz in Support of Defendants' Motion

21 for Summary Judgment or Summary Adjudication of License Issues ¶ 9]. Plaintiff's concerns

22 regarding Mr. Abramovitz's credibility aside, Plaintiff still fails to set forth any factual basis for

23 naming two of Sun's high-level officers as Defendants in this action, and thereby reveals that his

24 serious allegations are nothing more than speculation offered in the face of evidence to the

---

[5]  Plaintiff is not an unsophisticated litigant, having initiated five lawsuits in this district raising issues related to Netbula's license agreements either through his company or in his own name. Tellingly, he has demonstrated an ability to grasp arguments originally raised by defendants in these various actions and adopt them as his own whenever he perceives a benefit in doing so. *See* Section II.C, *infra*.

REPLY IN SUPPORT OF DEFENDANTS'
MOTION FOR ATTORNEYS' FEES AND          -10-                    C-07-05850-MJJ (EDL)
COSTS

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1  contrary.  Persisting in claims against them would be sanctionable under Rule 11 and would fail
2  to meet even notice pleading standards.  *See, e.g.*, *Zuk v. Eastern Pa. Psychiatric Inst. of the*
3  *Medical College*, 103 F.3d 294, 299 (3d Cir. 1996) ("[D]iscovery is not intended as a fishing
4  expedition permitting the speculative pleading of a case first and then pursuing discovery to
5  support it; the plaintiff must have some basis in fact for the action."); *Bell Atl. Corp. v. Twombly*,
6  127 S. Ct. 1955, 1965 (2007) ("Factual allegations must be enough to raise a right to relief above
7  the speculative level.")[6]

8        Plaintiff's final arguments regarding the *Fogerty* factors are a hodgepodge of arguments
9  related to due process and his rights under the Constitution.  To get there, Plaintiff recites a
10 procedural history that is simply not supported by the record in this case.  Indeed, while Plaintiff
11 argues that Court "ignored crucial facts" in ruling against him, it is Plaintiff who ignores the facts
12 of this case.  For example, Plaintiff dedicates over three pages of his Opposition to a spreadsheet
13 purportedly showing "differences" between the *STK I* and *STK II* cases.  But he fails to mention
14 that the allegations identified in the table were presented in opposition to Defendants' summary
15 judgment motion in *STK I*,[7] and *were* considered by the Court, which ruled that such extrinsic
16 evidence "did not illuminate the meaning of the contract at the time of contracting."  *STK I*
17 Docket No. 138 at 11:5-21.  Plaintiff further asserts that "on the eve of scheduled dispositive
18 motions," Netbula's former counsel, Ms. Brillet, filed a motion to withdraw, and that Yue
19 "attempted to secure new counsel but was unable to do so."  Opposition at 10:12-15.  He also
20 cites one of his own filings, in which he asserted that "Ms. Brillet's tight schedule makes it near
21 impossible for her to give the needed attention for the expected summary judgment hearing."  *Id.*
22 at 10:22-27.  But Plaintiff fails to mention that the Court's Order of November 2, 2007 ensured
23 that Netbula's counsel would remain in the case through summary judgment, and granted her an
24 extension of time to prepare the opposition.  *STK I* Docket No. 94.  Plaintiff further complains

---

[6]  It is notable that Netbula, represented by counsel and thus perhaps more cognizant of ethical limitations on pleading, did not name Mr. Schwartz or Ms. DeCecco as additional co-defendants in *STK I* and at no point sought leave to add them.

[7]  For a more detailed discussion of this point, see the table provided with Defendants' Motion to Dismiss, which compares allegations in the *STK II* complaint with allegations submitted in opposition to the summary judgment motion in *STK I*.

REPLY IN SUPPORT OF DEFENDANTS'
MOTION FOR ATTORNEYS' FEES AND          -11-                    C-07-05850-MJJ (EDL)
COSTS

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

that the Court conducted a conference in *STK I* without his attendance on October 31, but he neglects to mention that Netbula's counsel *was* on that call. *Id.*

In the end, Plaintiff does not explain how any particular order of this Court violated his rights, and he could not do so—every single order rejecting his right to pursue personally claims related to the alleged infringement of Netbula's software was compelled by the case law. Plaintiff also argues that attorneys' fees are inappropriate in this case because of alleged "deceptive, prejudicial and unethical conduct" by Defendants, as well as misrepresentations by them to the Court. Opposition at 25:14-15. He further claims that no fees should be awarded because Judge Jenkins was biased against him. *Id.* at 27:1-16. Both arguments are offensive as well as frivolous, and in no way supported by the record.[8] In all events, Plaintiff is free to try his bias and conspiracy arguments at the Ninth Circuit. But the fact that he personally believes the Court got it wrong, contrary to all the authorities cited by Defendants to date, is not a basis to deny Defendants' motion for attorneys' fees incurred in the successful defense of a $20 million copyright infringement lawsuit.

Prior orders of this Court (and, indeed, those of the Ninth Circuit) have been insufficient to convince Plaintiff of the wrongness of his positions. Defendants in this action have borne the brunt of what this Court has already described as his "nearly vexatious" conduct. *See* Order Granting Motion to Dismiss at 7:10. Since that order dismissing his case with prejudice, Plaintiff has filed no fewer than three additional motions in this action: a Motion to Disqualify Defendants' Counsel, a Motion for Relief from Judgment Pursuant to Rule 60(b), and a Motion to Disqualify Assigned Judge. *STK II* Docket Nos. 58, 63, 65. Attorneys' fees, left to the Court's ample discretion, are the only remaining check on his conduct, and are necessary to compensate Defendants—a software licensee and its privies—for defending against this misguided copyright action. *Assessment Techs. of Wi, LLC v. Wire Data, Inc.*, 361 F.3d 434, 437 (7th Cir. 2004) ("[W]ithout the prospect of . . . an award [of attorneys' fees], the party might be forced into a

---

[8] Plaintiff raised both arguments in support of his Motion for Relief from Judgment Pursuant to Rule 60(b), and they will be addressed in full according to the briefing schedule established for that Motion.

REPLY IN SUPPORT OF DEFENDANTS'
MOTION FOR ATTORNEYS' FEES AND        -12-        C-07-05850-MJJ (EDL)
COSTS

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1  nuisance settlement . . . ."); *Milton H. Greene Archives, Inc. v. Julien's Auction House, LLC*,

2  2007 U.S. Dist. LEXIS 96378, at *16 (C.D. Cal. Dec. 20, 2007) (noting "strong presumption" in

3  favor of award of attorneys' fees to prevailing defendants, because defendants "by definition

4  receive[] not a small award but no award" for prevailing on their claims).

## C. DEFENDANTS ARE ENTITLED TO ATTORNEYS' FEES UNDER THE COPYRIGHT ACT EVEN THOUGH PLAINTIFF WOULD NOT BE ENTITLED TO STATUTORY DAMAGES AND ATTORNEYS' FEES

7  Plaintiff raises one final argument. He claims that because he would not be entitled to

8  attorneys' fees because the registrations alleged in the complaint were not timely filed under

9  Section 412, Defendants are also not entitled to attorneys' fees under the statute either. *See*

10 Opposition at 27:22-28:14. He cites no authority for this proposition, and he could not, because

11 every court to have addressed this issue disagrees with him. *See, e.g.*, *O'Well Novelty Co. v.*

12 *Offenbacher, Inc.*, 52 U.S.P.Q.2d (BNA) 1020 (D. Md. 1999) (plaintiff did not cite, "and the

13 court's independent research did not reveal, a case that holds that because a copyright owner

14 delayed obtaining a registration, and was consequently barred from recovering attorneys' fees,

15 that a prevailing defendant sued by that copyright owner should likewise suffer the consequences

16 of the copyright holder's delay"), *aff'd*, 55 U.S.P.Q.2D (BNA) 1828, at *23-*24 (4th Cir. 2000)

17 (unpublished opinion); *see also, e.g.*, *Robinson v. Lopez*, 69 U.S.P.Q.2d (BNA) 1241 (C.D. Cal.

18 2003) (awarding defendant attorneys' fees under Section 505 even though plaintiff would not

19 have been eligible for fees because of untimely registration of his copyright).

20 Leading copyright commentators are in accord. *See* 4 Melville B. Nimmer & David

21 Nimmer, *Nimmer on Copyright* § 14.10[A], at 14-174 & n.3 (rev. 2006); 6 William F. Patry,

22 *Patry on Copyright* § 22:204, at 22-456 (rev. 2008) ("Very infrequently, the argument is

23 advanced by a losing plaintiff that defendant cannot be awarded its attorneys' fees because the

24 work was not registered within three months from the date of first publication. This profoundly

25 ignorant argument should be met with Rule 11 sanctions.").

26 This outcome is compelled by both the text of the statute and the policy underlying it.

27 Section 412 provides that "no award of statutory damages or of attorney's fees . . . shall be made

28 for . . . *any infringement of copyright* commenced after first publication of the work and before

REPLY IN SUPPORT OF DEFENDANTS'
MOTION FOR ATTORNEYS' FEES AND                    -13-                    C-07-05850-MJJ (EDL)
COSTS

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

the effective date of its registration, unless such registration is made within three months after the first publication of the work." 17 U.S.C. § 412(2) (emphasis added). By its terms, then, the statute prohibits an award of attorneys' fees based on untimely registrations only upon a finding of infringement. This is consistent with copyright policy. The purpose of Section 412 is to provide an incentive to copyright owners to register their works promptly. *Teevee Toons, Inc. v. Overture Records*, 501 F. Supp. 2d 964, 967 (E.D. Mich 2007); *Livingston v. Morgan*, Case No. C-06-2389-MMC, 2007 U.S. Dist. LEXIS 55605, at *13-*14 (N.D. Cal. July 5, 2007). The rule proposed by Plaintiff would turn this policy on its head, by creating a powerful *disincentive* to early registration: by delaying registration, copyright owners could shield themselves against the only protection offered defendants who are forced to fend off unmeritorious lawsuits. *See Assessment Techs.*, 361 F.3d at 437 (without availability of attorneys' fees, prevailing defendants "might be forced into a nuisance settlement or deterred altogether from enforcing his rights").

Instead of helping him, Plaintiff's admission that he would not be entitled to attorneys' fees or statutory damages in this action underscores the frivolousness of his complaint, *in which he sought such items in the prayer for relief.* See Complaint Prayer for Relief ¶¶ 8, 11; FAC Prayer for Relief ¶¶ 8, 11. Plaintiff has long been aware of the applicable law regarding the availability of attorneys' fees and statutory damages, *see, e.g.*, *BindView* Docket No. 17 [Defendants' Motion to Dismiss and to Strike], but nevertheless persisted in claiming them in successive lawsuits (including this one) so long as he perceived some potential benefit in doing so. Now, when he (incorrectly) perceives a benefit in disavowing his entitlement to attorneys' fees, he quickly concedes the point. This approach to litigation not only supports an award of fees under the Copyright Act, but would be independently sanctionable. *See, e.g.*, *Baker v. Urban Outfitters, Inc.*, 431 F. Supp. 2d 351, 363-64 (S.D.N.Y. 2007) (awarding sanctions under 28 U.S.C. § 1927 where plaintiff's complaint sought attorneys' fees and statutory damages even though the facts alleged in the complaint disclosed that his registrations were untimely).

### D. DEFENDANTS FEES ARE REASONABLE, AND CONTINUE TO INCREASE DUE TO PLAINTIFF'S FRIVOLOUS NEW FILINGS.

In their opening brief and the supporting declaration of Jedediah Wakefield, Defendants

identified the significant fees spent defending this case. Motion at 18:5-16. Plaintiff dedicates only two sentences to challenging the reasonableness of Defendants' fees, but in doing so still manages to mischaracterize the facts, stating that "[d]efense counsel made an argument that Yue is in privity of Netbula, and they billed their clients over $90,000." Opposition at 27:18-20. As Plaintiff knows, Defendants were forced to do far more than argue privity, as evidenced by the time records previously submitted. Plaintiff does not take issue with Defendants' position that these specific activities were necessary to the defense of the case. Instead, Plaintiff makes the cavalier argument that "Sun and Schwartz can afford those fees," proving once again that he has no compunction about inflicting needless expenses on those he perceives as having deep pockets. Plaintiff's suggestion that Defendants' financial condition excuses his unmeritorious lawsuit further demonstrates the necessity of an award in this case. *See, e.g.*, *Baker*, 431 F. Supp. 2d at 359 ("[A]n award of costs and fees is crucial here, so as to deter this plaintiff, and other similarly situated plaintiffs, from bringing unreasonable claims based on a cost/benefit analysis that tells such plaintiffs that they can score big if they win and that there will be no adverse consequences if they lose.").

Nowhere in his Opposition does Plaintiff assert that *he* cannot afford such fees. And Plaintiff was on notice of the significant fees that would be awarded in a case such as this, in view of the prior order that Netbula pay defendants $20,000 in prevailing party fees in connection with a single Rule 11 motion. *BindView* Docket No. 193.

Nevertheless, since the filing of Defendants' fees motion, Plaintiff's regrettable conduct has continued. As a result of his recently filed 60(b) Motion and Disqualification motions, Defendants continue to incur significant fees, over $40,000 since filing their opening brief, and will incur more until the Court rules on this motion.[9] *See* Reply Declaration of Jedediah Wakefield in Support of Motion for Attorneys' Fees ¶¶ 3-5 & Ex. 1.

### III. CONCLUSION

For the foregoing reasons and the reasons stated in their opening papers, Defendants

---

[9] Defendants expect to submit a further declaration outlining these fees after briefing and argument on Plaintiff's latest motions are complete.

REPLY IN SUPPORT OF DEFENDANTS'
MOTION FOR ATTORNEYS' FEES AND          -15-                    C-07-05850-MJJ (EDL)
COSTS

respectfully request that their Motion for Attorneys' Fees and Costs be granted, and that they be awarded fees and costs to be determined at the conclusion of briefing and argument on this Motion, but in an amount not less than $134,000.

Dated: April 8, 2008                     FENWICK & WEST LLP


By:   /s/ JEDEDIAH WAKEFIELD
          Jedediah Wakefield

Attorneys for Named Defendants
SUN MICROSYSTEMS, INC.,
MICHAEL MELNICK, JULIE DECECCO,
MICHAEL P. ABRAMOVITZ,
LISA K. RADY, and JONATHAN SCHWARTZ

25689/00405/LIT/1283361.2