LAURENCE F. PULGRAM (CSB NO. 115163)
*lpulgram@fenwick.com*
JEDEDIAH WAKEFIELD (CSB NO. 178058)
*jwakefield@fenwick.com*
ALBERT L. SIEBER (CSB NO. 233482)
*asieber@fenwick.com*
LIWEN A. MAH (CSB NO. 239033)
*lmah@fenwick.com*
FENWICK & WEST LLP
555 California Street, Suite 1200
San Francisco, CA 94104
Telephone: (415) 875-2300
Facsimile: (415) 281-1350

Attorneys for Named Defendants
SUN MICROSYSTEMS, INC.,
MICHAEL MELNICK, JULIE DECECCO,
MICHAEL P. ABRAMOVITZ,
LISA K. RADY, and JONATHAN SCHWARTZ

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| DONGXIAO YUE,<br><br>            Plaintiff,<br><br>v.<br><br>STORAGE TECHNOLOGY CORPORATION, a Delaware corporation; SUN MICROSYSTEMS, INC., a Delaware corporation; MICHAEL MELNICK, an individual; JULIE DECECCO, an individual; MICHAEL P. ABRAMOVITZ, an individual; LISA K. RADY, an individual; JONATHAN SCHWARTZ, an individual; and DOES 1-1000, inclusive,<br><br>            Defendants. | Case No. C-07-05850-JW<br><br>**OPPOSITION TO MOTION TO DISQUALIFY DEFENSE COUNSEL**<br><br>Date:        TBD<br>Time:        TBD<br>Courtroom:  8, 4th Floor<br>Judge:       Honorable James Ware |

1

**TABLE OF CONTENTS**

2

**Page**

3    I.   INTRODUCTION ........................................................................................................... 1

4    II.  FACTUAL BACKGROUND ....................................................................................... 3

5         A.   Plaintiff's Copyright Lawsuits ......................................................................... 3

6         B.   Yue's *Pro Se* Activities in *STK I* and *BindView* ...................................... 4

7         C.   The Communications At Issue ......................................................................... 5

8         D.   The Early Neutral Evaluation in Netbula v. Distinct .................................... 8

9         E.   Plaintiff's History of Harassing Tactics ....................................................... 9

10   III. ARGUMENT .............................................................................................................. 11

11        A.   Jurisdiction After Notice of Appeal ............................................................. 11

12        B.   Legal Standard for Disqualification ............................................................. 11

13        C.   Fenwick Was Permitted—And Indeed, Required—To Communicate With
               Plaintiff In Matters As To Which He was Not Represented ........................ 12

14        D.   Although Not Required, the Communications in Connection With *STK I*
15             Had the Consent of Netbula's Counsel ....................................................... 14

16        E.   Defendants' Counsel Did Not Improperly Provide "Legal Advice." ......... 15

17        F.   Assuming (Contrary to Fact) That the Communications Had Been
18             Improper, They Would Not Warrant Disqualification ................................ 17

19        G.   The Service by a Former Fenwick Partner as a Neutral in an Unrelated
20             ENE Does Not Warrant Disqualification .................................................... 19

21             1.   This Case and *Netbula v. Distinct* Are Not Substantially Factually
22                  Related ............................................................................................... 19

23             2.   The Neutral and Any Information He Obtained Were Effectively
24                  Screened from Fenwick ..................................................................... 21

25             3.   Plaintiff's Disqualification Motion Should Be Denied In View of
                    Plaintiff's Extreme Delay ................................................................. 21

26   IV.  CONCLUSION .......................................................................................................... 22

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Colyer v. Smith,*
50 F. Supp. 2d 966 (C.D. Cal. 1999).................................................................................. 15

*Cont'l Ins. Co. v. Superior Court,*
32 Cal. App. 4th 94 (1995) ............................................................................................... 18

*Gregori v. Bank of America,*
207 Cal. App. 3d 291 (1989)............................................................................... 11, 12, 18

*In re County of Los Angeles,*
223 F.3d 990 (9th Cir. 2000)............................................................................... 19, 20, 21

*In re Does,*
891 F.2d 1407 (9th Cir. 1989) .......................................................................................... 11

*In re Marvel,*
251 B.R. 869 (Bankr. N.D. Cal. 2000),
*aff'd,* 265 B.R. 605 (N.D. Cal. 2001) ............................................................................... 12

*La Jolla Cove Motel & Hotel Apartments, Inc. v. Superior Court,*
121 Cal. App. 4th 773 (2004) ........................................................................................... 14

*Marcum v. Channel Lumber Co.,*
Case No. CV-94-2637-SC, 1995 U.S. Dist. LEXIS 3799
(N.D. Cal. Mar. 27 1995) ........................................................................................... 17, 18

*Mills Land & Water Co. v. Golden West Refining Co.,*
186 Cal. App. 3d 116 (1986) *(superseded by statute)*................................................ 14, 15, 18

*Molski v. Evergreen Dynasty Corp.,*
500 F.3d 1047 (9th Cir. 2007).................................................................................... 16, 17

*Optyl Eyewear Fashion Int'l Corp. v. Style Cos.,*
760 F.2d 1045 (9th Cir. 1985)........................................................................................... 12

*River West Inc. v. Nickel,*
188 Cal. App. 3d 1297 (1987)........................................................................................... 22

*State Comp. Ins. Fund v. WPS, Inc.,*
70 Cal. App. 4th 644 (1999)............................................................................................. 15

*Terrebonne, Ltd. v. Murray,*
1 F. Supp. 2d 1050 (E.D. Cal. 1998)................................................................................ 13

*United States v. Lopez,*
4 F.3d 1455 (9th Cir. 1993)............................................................................................... 13

*Visa U.S.A., Inc. v. First Data Corp.,*
241 F. Supp. 2d 1100 (N.D. Cal. 2003) ...................................................................... 11, 12

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1

**TABLE OF AUTHORITIES**
**(continued)**

2

**Page(s)**

3
**RULES**

4
ABA Model Rules of Prof'l Conduct R. 4.3 cmt. 1 ....................................................... 16

5
ABA Model Rules of Professional Conduct 4.3 ............................................... 15, 16, 17

6
ABA Model Rules of Professional Conduct 4.3 cmt. 2 ............................................... 16

7
California Rules of Professional Conduct 2-100 ............................................... passim

8
California Rules of Professional Conduct 2-100(A) ..................................................... 14

9
California Rules of Professional Conduct 7-103 (repealed 1989) ............................... 14

10
Civil Local Rule 11-4 ................................................................................................... 12

11
Civil Local Rule 6-3(a)(2) .............................................................................................. 6

12

13

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

OPPOSITION TO MOTION FOR
DISQUALIFICATION
-iii-
CASE NO.  C-07-05850-JW

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1    Defendants Sun Microsystems, Inc., Michael Melnick, Julie DeCecco, Michael P.

2    Abramovitz, Lisa K. Rady, and Jonathan Schwartz (collectively, "Defendants") respectfully

3    submit their Opposition to Plaintiff Dongxiao Yue's ("Yue," or "Plaintiff") Motion to Disqualify

4    Defense Counsel Fenwick & West LLP ("Fenwick").

5                          **I.    <u>INTRODUCTION</u>**

6        On March 4, 2008, the Court granted Defendants' Motion to Dismiss this case with

7    prejudice, noting that Plaintiff's tactics had "ranged from the duplicative to the nearly vexatious,"

8    and entered judgment in Defendants' favor.  While the case should now be over, Plaintiff's

9    regrettable tactics continue.  In addition to his improper attempt to re-argue the case through a

10   Rule 60(b) Motion, Plaintiff has sought to attack both defense counsel and the Honorable Martin

11   J. Judge Jenkins, arguing that both the formerly assigned judge and Fenwick engaged in unethical

12   conduct, and even conspired against him.  Like many of his filings before, Plaintiff's Motion for

13   Disqualification of Defense Counsel is without merit.  But the Court need not get to the merits, in

14   view of Plaintiff's recent filing of a notice of appeal.  If Plaintiff hopes to reverse the judgment

15   based on the supposedly improper conduct of the Court and defense counsel, the appropriate

16   forum to do so now is the Ninth Circuit.

17       Even if the Court were to consider the merits of Plaintiff's Motion, it would properly be

18   denied.  The Motion is based on two arguments, neither of which warrant disqualification.

19   Plaintiff first complains that Defendants' counsel violated the "relevant rules of professional

20   conduct" by communicated with him directly, in violation of the prohibition of contact with a

21   represented party.  But the "relevant rule"—Rule 2-100 of the California Rules of Professional

22   Conduct—prohibits only communications with represented parties concerning the subject matter

23   of their representation, and without the consent of the party's counsel.  The e-mail

24   communications Plaintiff attaches occurred either (i) in this action, in which Plaintiff purports to

25   appear without counsel and in his individual capacity, or (ii) in connection with other cases

26   brought by Plaintiff's company, Netbula, LLC, in which Plaintiff also participated or attempted to

27   participate in his individual capacity, unrepresented by counsel.  Moreover, counsel for Netbula

28   received the e-mail communications in real time, and not only raised no objection, but facilitated

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1  and encouraged direct communications between Fenwick and Plaintiff.  Thus, setting aside the

2  fact that communications concerning separate lawsuits do not form a basis for disqualification in

3  this lawsuit, there simply has been no prohibited communication with Plaintiff—in this case or

4  any others.  Plaintiff knows this, having previously complained about Fenwick's communications

5  to the California State Bar—which investigated his allegations and promptly closed its file.

6      Even assuming (contrary to fact) that certain communications were prohibited, Plaintiff

7  has failed to make any coherent claim of prejudice or continuing effect in this lawsuit.  Indeed,

8  Plaintiff's only claim of prejudice from the communications—that he was somehow duped into

9  believing he would be allowed to pursue Netbula's copyright claims *pro se* in the first *Storage*

10  *Technology* case—is belied by the very communications attached to his declaration.  In all events,

11  the alleged "misconduct" has no continuing effect in this or any other action Plaintiff is pursuing

12  in this District.

13      Plaintiff next argues that Fenwick should be disqualified because a former Fenwick

14  attorney served as a volunteer evaluator in the Court's Early Neutral Evaluation program in 2002.

15  That argument also fails, for at least three reasons.  First, that case was unrelated to the present

16  controversy.  Second, the Fenwick attorney who volunteered as a neutral in that case left Fenwick

17  years before this case arose, and any documents created in connection with the ENE were

18  transferred with him.  Thus, Fenwick has no confidential information concerning that ENE, and

19  the lawyers on this case have effectively been screened from any information about it.  As such,

20  under the very authority relied on by Plaintiff, disqualification is not appropriate here.  Third,

21  Fenwick & West has been representing Sun in *STK I* since 2006, and filed Sun's trademark

22  counterclaims in January 2007.  Plaintiff's failure to raise this purported basis for disqualification

23  in the intervening 15 months bars his claim for disqualification now.

24      Regrettably, this motion is just the latest in a long string of filings by Plaintiff and his

25  company aimed at needlessly multiplying the proceedings and increasing expenses.  Plaintiff's

26  latest maneuver, aimed at gaining a tactical advantage by stripping Defendants of their chosen

27  counsel that has been successful in defeating his multiple lawsuits, should be rejected.

28

OPPOSITION TO MOTION FOR
DISQUALIFICATION                      -2-                    CASE NO.  C-07-05850-JW

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

## II.   FACTUAL BACKGROUND

**A.   Plaintiff's Copyright Lawsuits.**

Plaintiff Dongxiao Yue and the software company he owns, Netbula LLC, have filed a series of lawsuits in this District alleging copyright infringement and seeking tens of millions of dollars from Netbula's customers. *Netbula, LLC v. BindView Development Corporation et al.*, Case No. C06-00711-JW (the "*BindView*" action) was followed by *Netbula, LLC v. Greenwich Capital Markets, Inc.*, Case No. C06-07143-MJJ. This was followed by a third filing, *Netbula, LLC v. Storage Technology Corporation, Sun Microsystems, Inc., et al.*, Case No. C06-07391-JW (the "*STK I*" action), and this lawsuit (the "*STK II*" action). Most recently, he filed a fifth lawsuit, *Yue v. Chordiant Software Inc., et al.,* Case Number C08-0019-JW.

Fenwick has served as counsel for the defendants in four of these five actions. In 2007, Fenwick successfully moved for summary judgment on Netbula's copyright infringement claims against Symantec Corporation, BindView Development Corporation, and Eric J. Pulaski (CEO of BindView). *BindView* Docket No. 288. In January 2008, The Court granted Fenwick's summary judgment motion brought on behalf of Storage Technology Corporation, Darden Restaurants, EMC Corporation and Sun Microsystems, Inc. *STK I* Docket No. 138. In granting summary judgment in *STK I*, the Court found that Defendants' use of Netbula's software was within the scope of license agreements entered into in 2000 and 2004 by Netbula and StorageTek, which therefore precluded claims for copyright infringement.

While the Motion for Summary Judgment was pending, Plaintiff (who had assigned Netbula's copyrights to himself during *STK I*), filed the *STK II* action, arguing that the same defendants (Sun and StorageTek) exceeded the scope of the same licenses (the 2000 and 2004 licenses), and infringed copyrights in the same software (Netbula's "PowerRPC" software) as in the *STK I* case. Plaintiff later amended his complaint to include individual Sun and StorageTek personnel, including Sun's CEO and in-house counsel. Fenwick successfully moved to dismiss this case on the grounds that it was duplicative, and the Court entered judgment in Defendants' favor on March 4, 2008. *STK II* Docket Nos. 51, 52. Plaintiff filed a Notice of Appeal from that Judgment, as well as certain Orders entered in this case, on April 1, 2008. *STK II* Docket No. 72.

**B.**    **Yue's *Pro Se* Activities in *STK I* and *BindView*.**

Yue's present motion is based in part on communications occurring in connection with the *STK I* case. Although Netbula was represented by counsel in that case, Yue participated or attempted to participate in his individual capacity and without counsel, both in *STK I* and the related *BindView* case. Declaration of Jedediah Wakefield in Support of Opposition to Motion to Disqualify Defense Counsel ("Wakefield Decl.") ¶¶ 6-10. For example:

On October 9, 2007, Yue filed, appearing *pro se*, a motion to intervene in his individual capacity in the *BindView* case, ostensibly to "enforce" a protective order and preclude use in the subsequent *STK I* case of materials Netbula produced in *BindView*. Even though Yue had not been previously a party to the *BindView* litigation, Yue brought that motion individually and without representation by counsel [*BindView* Docket No. 307];

On October 22, 2007, Yue filed, in his individual capacity and appearing *pro se*, a motion to intervene in *STK I,* seeking a preliminary injunction and impoundment of Sun's property [*STK I* Docket No. 68];

On October 30, 2007, in *STK I*, Yue filed, in his individual capacity and appearing *pro se*, an Opposition to Defendants' Motion for Administrative Relief for consideration of a declaration that had been filed about eight hours late [*STK I* Docket No. 90]. Prior to that, from October 25 through October 30, 2007, Yue had threatened (again in his individual capacity) to file a motion to strike, a motion for sanctions, and an "emergency motion for an integrity hearing," relating to Defendants' summary judgment motion [Wakefield Decl. ¶¶ 17-18, 23 & Exs. 6-7, 10];

On November 5, 2007, Yue attempted to substitute himself, *pro se*, as "counsel" for himself as an individual cross-defendant, in lieu of counsel Vonnah M. Brillet, who had previously appeared for Yue individually in his capacity as a cross Defendant on Sun's trademark claims in the *STK I* case [*STK I* Docket No. 95];

On November 19, 2007, Yue, in his individual capacity and appearing *pro se*, filed this separate action, *STK II*, in which Yue claimed to own personally (independent from Netbula) certain copyrights Yue wished to enforce [*STK II* Docket No. 1]; and

Prior to that filing, Yue had been threatening, *pro se* and in his individual capacity, to

1    bring such claims since October 2007 [*e.g.*, Declaration of DongxiaoYue in Support of Motion to

2    Disqualify Defense Counsel ("Yue Decl.") Ex. B; Wakefield Decl. ¶ 14 & Ex. 5].

3    **C.    The Communications At Issue.**

4         In support of his motion, Yue attaches four e-mail communications, all of which pertain to

5    Plaintiff's *pro se* activities. Wakefield Decl. ¶¶ 6-10. From the time that Plaintiff began

6    appearing in his individual capacity and *pro se*, Fenwick had several e-mail communications with

7    him. While Netbula was represented by counsel, Plaintiff as an individual was not, and there

8    needed to be some communication with him while he was representing himself. *Id.* Thus, these

9    communications concerned matters in which Plaintiff was unrepresented.

10        Moreover, Defendants confirmed with both Plaintiff and Ms. Brillet, Netbula's counsel at

11   the time, that Yue was not represented. After receiving notice that Yue had filed a motion to

12   intervene and enforce a protective order in the *BindView* case, Defendants' counsel wrote to Ms.

13   Brillet in an October 16, 2007 e-mail to request service of the papers, and noting that direct

14   communication with Yue would be needed if Yue were attempting to represent himself: "If

15   Mr. Yue is now attempting to represent himself as an individual in his effort to intervene,

16   unrepresented by counsel, then *we may need to speak with him directly*. Please provide your

17   instructions in this regard." Wakefield Decl. ¶ 12 & Ex. 3 (emphasis added). Ms. Brillet did not

18   respond. Later, however, after Plaintiff e-mailed Fenwick on October 26, 2007, threatening to

19   file a new lawsuit as a *pro se* plaintiff, Fenwick replied, copying Ms. Brillet, and confirming

20   Plaintiff's status as an unrepresented party:

21           I am responding to you individually, and copying Netbula's
             counsel, because I understand that you are threatening to file a new
22           action in your individual capacity, in which you are, and intend to
             remain, unrepresented by counsel. If I am incorrect in these
23           assumptions, I request that you and/or Ms. Brillet advise me.

24   Wakefield Decl. ¶ 21 & Ex. 9. Neither Ms. Brillet nor Plaintiff advised otherwise. Wakefield

25   Decl. ¶ 21. Quite the opposite: Ms. Brillet—who received instantaneous copies of the e-mails in

26   question—not only failed to object to any of the communications, but encouraged them, going so

27   far as to arrange for a direct telephone conference between Yue and opposing counsel. *Id.* ¶ 15.

28   Thus, these communications were not only with an *unrepresented* party, but had the *consent* of

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1    Netbula's counsel for good measure.

2        Even a cursory examination of the exhibits to Plaintiff's Motion confirms this.  Plaintiff's

3    Exhibit A is an October 25, 2007 e-mail concerning Yue's *pro se* motion seeking to intervene as

4    an individual and asking for a preliminary injunction and impoundment.  Defendants believed

5    that his motion had not been properly served, was untimely, and should be taken off calendar.

6    Pursuant to Civil L.R. 6-3(a)(2), Sun was required to request a stipulation from Plaintiff before

7    asking the court to take his motion off calendar.  Accordingly, Fenwick requested such a

8    stipulation, with copies to Ms. Brillet, before filing Defendants' motion.  *See* Yue Decl. Ex. A.

9    Fenwick also made clear at the time that Defendants opposed Plaintiff's request to intervene and

10   substitute as a party.[1]  *Id.*

11       Plaintiff's assertion that Exhibit B to his motion represents an improper communication

12   with a represented party is even more perplexing.  Prior to that e-mail, on October 26, 2007, Yue

13   (unsolicited by Fenwick) had e-mailed Fenwick to argue that Defendants should have cited

14   certain extrinsic evidence that he thought was relevant in their summary judgment motion in the

15   *STK I* case.  Wakefield Decl. ¶ 18 & Ex. 7.  That day, Fenwick responded directly to Ms. Brillet,

16   asking that she advise Yue to refrain from such communications.[2]  *Id.*  After Yue kept

17   communicating on these subjects, Fenwick sent the October 31, 2007 e-mail shown in Yue

18   Declaration Exhibit B to Ms. Brillet, with a *copy* to Yue, asking again that Brillet instruct Yue not

19   to communicate with Fenwick in matters other than those in which he was acting *pro se*.  Thus,

20   far from representing a prohibited communication, Exhibit B shows Defendants' responsible

21   efforts to respond to Yue's *pro se* individual activities while avoiding communicating with him

22   regarding the substantive merits of the summary judgment motion against Netbula.[3]

23       The third e-mail attached to Plaintiff's motion concerned this case, which Plaintiff filed as

24   _____

25   [1] Ms. Brillet never responded.  Yue refused the stipulation, and Sun filed its motion.  Wakefield
     Decl. ¶ 16.  The Court granted Sun's motion to take his motion off calendar on October 31, 2007.
26
     [2] As discussed below, Ms. Brillet was copied on this e-mail.

27   [3] Fenwick did communicate with him about the timeliness of a declaration supporting that
     motion, because Plaintiff was threatening to and ultimately did file, in his *pro se,* individual
28   capacity, an opposition to the administrative motion to have the declaration considered.

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1    a *pro se* litigant.  *See* Yue Decl. Ex. C.  On October 29, 2007, two days before that e-mail was

2    sent, Mr. Pulgram had responded to Yue's threat to file a separate lawsuit.  In his e-mail, Mr.

3    Pulgram's cautioned that Defendants would seek the expenses incurred in defending this

4    duplicative lawsuit, and repeatedly implored Yue to get a lawyer:

5         We therefore suggest that you consider the consequences very
          seriously before filing such inappropriate pleadings--and ***obtain the***
6         ***advice of qualified counsel before you do so***.  Magistrate Judge
          Chen's ruling should have demonstrated that filing unwarranted
7         motions is a serious matter and has very real consequences.

8         I realize, of course, that I cannot keep you from filing with the
          Court whatever it is that you choose to file.  It only costs a few
9         hundred dollars to commence a lawsuit that could cost thousands to
          defend, and which Sun would seek to recover from you personally
10        thereafter.  ***I therefore reiterate the importance of your obtaining***
          ***counsel*** as to all the consequences before you act.
11

12   Wakefield Decl. ¶ 22, Ex. 9 (emphasis added).  Two days later, Yue sent an e-mail to Fenwick

13   saying he was proceeding to file the instant lawsuit, "possibly along with an application for TRO,"

14   and asking Mr. Pulgram if he would accept service by e-mail.  It is that e-mail, and Mr. Pulgram's

15   response, that are attached as Exhibit C to Plaintiff's Motion for Disqualification.  Mr. Pulgram's

16   response, copied to Ms. Brillet, first noted that "I am responding to you personally on the

17   understanding that you are acting in your individual capacity and unrepresented by counsel."

18   Mr. Pulgram then agreed to accept service of a TRO, but would not accept service of the summons

19   and complaint.  Wakefield Decl. ¶ 24.  Mr. Pulgram also reiterated the point he had made to

20   Plaintiff and Netbula's counsel in his October 29 email: that Defendants would seek to recover

21   from Plaintiff personally.  *Id.*

22        The fourth and final communication Plaintiff identifies—Exhibit D to Yue's declaration—

23   was a response to an e-mail from Yue about Defendants' Administrative Motion to consider

24   whether the *STK I* and *STK II* cases should be related.  In Yue's original e-mail, Yue had

25   complained that Sun should not have filed the related case motion:

26        I have filed a Petition with the Ninth Circuit, which seeks to vacate
          the various orders and reinstate my access to the district court
27        provided by the equal protection clause of the US constitution.

28        Until CA9 rules on my petition, I won't be able to file anything on

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1
2
3

> Judge Jenkins's docket to oppose SUN's administrative motions. SUN knows that I can't file an opposition at this point, therefore, ***its motion to relate cases is prejudicial to my case (Yue v. STK) by design***.

4
5
6

> To avoid further complications, ***I request SUN defendants to withdraw their motion to relate cases or delay it until the Ninth Circuit rules on my Petition, so that I can respond to your motion. Otherwise, SUN's unseemly "related case motion"*** would generate unnecessary burden for the courts.

7

> Again, my request is simple: wait till the Ninth Circuit makes the decision.

8

> Any attempt to be clever will be unwise.

9  *See* Wakefield Decl. ¶ 25, Ex. 11 (emphasis added).  Mr. Pulgram responded to Yue's assertion

10  that the related case motion was improper, and to Yue's claim that Sun had filed its motion to

11  prejudice Yue's lawsuit.  *Id*.  Mr. Pulgram, responding to both Netbula's counsel and Plaintiff,

12  pointed out that Netbula was free to raise the points Plaintiff had raised.  *Id*.  Ms. Brillet never

13  responded, and Netbula never filed a response to the administrative motion.  *Id*.[4]

14  **D.**    **The Early Neutral Evaluation in Netbula v. Distinct.**

15      In 2002, Netbula sued a software company called Distinct Corporation.  *See Netbula, LLC*

16  *v. Distinct Corporation*, C-02-1253 JL (N.D. Cal.) (the "*Distinct*" case); Wakefield Decl.¶ 2 &

17  Ex. 1 (attaching Complaint).  Based on a review of the docket in that case, it is apparent that the

18  *Distinct* case was unrelated to the present copyright lawsuit against Sun, its officers and its

19  employees.  The *Distinct* lawsuit did not involve claims of copyright infringement or breach of

20  license.  It did not involve any claims that Netbula or Yue had infringed trademarks.  Rather, it

21  involved Netbula's claims that Distinct infringed the trademarks "Netbula" and "PowerRPC," by

22  virtue of Defendant's inclusion of those marks as "metatags" on its website, as well as the use of

23  those marks in Internet keyword advertising.  *Distinct* Complaint ¶ 34.  The only trademarks

24  identified in the *Distinct* Complaint were "NETBULA" and "POWERRPC," which Netbula

25  referred to collectively as the "Netbula/PowerRPC Marks" throughout the complaint.  *Id.* ¶ 10.

26  In its answer, Distinct argued that its use of the marks "NETBULA" and "POWERPC"

27
28
_____

[4] The Ninth Circuit petition for writ of mandamus to which Yue's e-mail refers was summarily denied.  *See infra*.

1    constituted fair use.  *See* Wakefield Decl. ¶ 2 & Ex. 2 (Answer, Third Affirmative Defense).  The

2    answer, like the complaint, made no mention of the mark "JAVARPC," which is the subject of

3    Sun's counterclaims in *STK I*.  *See generally id.*

4          Plaintiff now claims that Defendants should be disqualified because in 2002, Claude

5    Stern, then a Fenwick partner, volunteered his time to conduct an Early Neutral Evaluation of the

6    *Distinct* litigation as part of the Court's ADR program.  *See* Motion to Disqualify Defense

7    Counsel ("Motion to Disqualify") at 3:19-25.  Mr. Stern left Fenwick in approximately June 2003,

8    more than three years before Plaintiff initiated his lawsuit against Sun.  Wakefield Decl. ¶ 3.

9    Fenwick's records indicate that any records related to that ENE were transferred to Mr. Stern

10   shortly thereafter.  *Id.* ¶ 4.  Thus, any information that Mr. Stern received in his capacity as a

11   neutral was effectively screened off from the Fenwick lawyers working on this case—and indeed,

12   from all of Fenwick & West—well before this case existed.

13   **E.**    **Plaintiff's History of Harassing Tactics**

14         Regrettably, this is not the first time the Court and various defendants have been burdened

15   by Plaintiff's unreasonable conduct (either in his individual capacity or through Netbula) in

16   copyright cases in this District.  For example:

17         On December 14, 2007, after ordering the *STK I* and *STK II* cases related, the Court

18   ordered that no responsive pleadings would be due in *STK II* until the impact of the summary

19   judgment motion in *STK I* was known.  The Court specifically admonished Plaintiff that no

20   default would be entered in this case.  Plaintiff willfully defied that order, filing a motion for

21   default judgment against Defendants Sun and StorageTek.  *See STK I* Docket Nos. 13-14.  The

22   Court rejected Plaintiff's motion, as well as Plaintiff's attempted excuses for his conduct, finding

23   that "Plaintiff clearly understood the Court's order" not to seek a default, by his motion had

24   "multiplied the proceedings in this case unnecessarily" and that his motion itself was "untimely

25   and unnecessary."  *STK II* Docket No. 41 [Order Denying Motion for Default Judgment at 4:11-

26   12, 4:23-24].

27         In *BindView*, Netbula—at Plaintiff's direction—moved for Rule 11 sanctions against

28   Fenwick.  The motion was so lacking in merit that Magistrate Judge Chen not only denied it, but

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1    also awarded *Defendants* in that case $20,000 in attorneys' fees for having to respond to it. *See*

2    *BindView* Docket Nos. 103, 128, 193.

3         In *STK I*, nearly a year after Netbula's unsuccessful TRO Application,[5] Plaintiff

4    individually filed a "Motion to Intervene and Join as Plaintiff, for Injunctive Relief, and for

5    Copyright Impoundment," asking again for preliminary relief, while the motion to substitute him

6    as a party for the copyright claims was still pending. *STK I* Docket No. 68. This procedurally

7    improper motion was subsequently ordered off-calendar by the Court. *STK I* Docket No. 94.

8         Also in *STK I*, Plaintiff filed a *pro se* opposition to Defendants' motion to modify the

9    protective order entered in the *BindView* case, which Defendants filed to avoid duplicative and

10   protracted discovery and allow the use of relevant materials produced in the *BindView* case in

11   *STK I*. His opposition was made in the face of clear authority encouraging such modifications.

12   *See Netbula-BindView* Docket No. 303-308. When the Court entered its order allowing such

13   modification, *see Netbula-BindView* Docket No. 326, Plaintiff appealed—only to have that appeal

14   dismissed *sua sponte* by the Ninth Circuit for lack of jurisdiction after the record was compiled.

15   *See Chordiant* Docket No. 27 [Request for Judicial Notice Ex. B].

16        Plaintiff petitioned to the Ninth Circuit for an emergency stay of the summary judgment

17   hearing in *STK I* and requested assignment to a new judge, claiming that Judge Jenkins was

18   biased. *Id.* Ex. B. After the writ petition was denied, Plaintiff further petitioned for a "reasoned

19   decision" (ostensibly to prepare for his Petition to the United States Supreme Court)—to which

20   the Ninth Circuit responded with an order denying that request, and ordering that he not file any

21   other papers in that matter. *Id.*

22        Plaintiff filed a frivolous complaint against Fenwick with the State Bar, which was

23   summarily rejected. *See STK II* Docket No. 36 [Declaration of Albert L. Sieber in Support of

24   Motion to Dismiss ¶ 6 & Ex. E].

25        Plaintiff has complained to other judges of this Court, the Ninth Circuit, and Congress

26   about the Court's alleged bias. *STK I* Docket No. 129 [Letter Brief by Dongxiao Yue Regarding

27   _____

28   [5] *See STK I* Docket No. 18 [Reporter's Transcript of Proceedings Held on December 5, 2006].

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1   Motion for Summary Judgment and Relating Cases], *STK II* Docket No. 11 (same).  Judge

2   Jenkins, having reviewed Plaintiff's submissions to the Court, found no grounds for recusal,

3   stating that "[e]ven if Yue's letter sufficed to raise issues of the Court's bias and prejudice, Yue's

4   contentions are not substantiated or meritorious."  *STK I* Docket No. 143.  Nevertheless, Plaintiff

5   has now filed new motions to disqualify Judge Jenkins in this case and the related *Chordiant* case,

6   based on a rehashing of the same baseless arguments.  *Chordiant* Docket No. 37; *STK II* Docket

7   No. 58.

8          In dismissing Yue's complaint in this action, the Court noted that Plaintiff's conduct was

9   "nearly vexatious."  *See* Order Granting Motion to Dismiss at 7:10.  Undeterred, as always, by

10  such admonitions, Plaintiff pressed ahead, filing the current baseless motion for disqualification.

## III.   ARGUMENT

### A.   Jurisdiction After Notice of Appeal.

13         At the outset, there is a question as to whether this Court retains jurisdiction over

14  Plaintiff's Motion now that he has filed a notice of appeal.  *See STK II* Docket No. 72.  In general,

15  "filing of a notice of appeal confers jurisdiction on the court of appeals and divests the district

16  court of control over those aspects of the case involved in the appeal," except for "collateral"

17  matters, such as motions for attorneys' fees, that are not related to the merits of the underlying

18  appeal.  *In re Does*, 891 F.2d 1407, 1413 (9th Cir. 1989), *disapproved of on other grounds*,

19  *Church of Scientology v. United States*, 506 U.S. 9 (1992).  In both his Motion to Disqualify and

20  his Motion for Relief for Judgment, Plaintiff makes it apparent that he believes the judgment

21  against him was entered in whole or in part on Fenwick's alleged unethical conduct and thus this

22  motion is anything but "collateral."  The Ninth Circuit is the appropriate forum for his

23  disqualification argument, as it considers the judgment as a whole.

### B.   Legal Standard for Disqualification.

25         Motions to disqualify counsel are strongly disfavored.  *Visa U.S.A., Inc. v. First Data*

26  *Corp.*, 241 F. Supp. 2d 1100, 1103 (N.D. Cal. 2003) (quoting *Gregori v. Bank of America,* 207

27  Cal. App. 3d 291, 300-301 (1989), for the proposition that "[m]otions to disqualify counsel often

28  pose the very threat to the integrity of the judicial process that they purport to prevent"); *In re*

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1    *Marvel,* 251 B.R. 869, 871 (Bankr. N.D. Cal. 2000) ("A motion for disqualification of counsel is

2    a drastic measure which courts should hesitate to impose except when of absolute necessity.

3    They are often tactically motivated; they tend to derail the efficient progress of litigation."), *aff'd,*

4    265 B.R. 605 (N.D. Cal. 2001). Accordingly, "such requests 'should be subjected to particularly

5    strict judicial scrutiny.'" *Visa U.S.A.*, 241 F. Supp. 2d at 1104 (quoting *Optyl Eyewear Fashion*

6    *Int'l Corp. v. Style Cos.,* 760 F.2d 1045, 1050 (9th Cir. 1985)).

7         In reviewing a motion to disqualify counsel, the district court must make "a reasoned

8    judgment and comply with the legal principles and policies appropriate to the particular matter at

9    issue." *Gregori*, 207 Cal. App. 3d at 300 (internal quotation marks and alterations omitted). The

10   district court is permitted to resolve disputed factual issues in deciding a disqualification motion

11   and must make findings supported by substantial evidence. *Visa U.S.A.*, 241 F. Supp. 2d at 1104.

12   **C.    Fenwick Was Permitted—And Indeed, Required—To Communicate With Plaintiff**

13        **In Matters As To Which He was Not Represented.**

14        The Northern District of California has adopted the California Rules of Professional

15   Conduct ("CRPC"), and attorneys practicing in this court are required to adhere to those

16   standards, as articulated in the rules and court decisions interpreting them. *Visa USA*, 241

17   F. Supp. 2d at 1103; Civ. L.R. 11-4.

18        In pertinent part, CRPC 2-100 provides:

19             While representing a client, a member shall not communicate
               directly or indirectly about the subject of the representation with a
20             party the member knows to be represented by another lawyer in the
               matter, unless the member has the consent of the other lawyer.

21

22   Here, Yue complains that Defendants' counsel should not have communicated with him in

23   connection with the *STK I* matter, since he was the principal of Netbula. But direct

24   communication with Yue were entirely appropriate, in view of his *pro se* activities in both the

25   *BindView* case and the *STK I* action. As detailed above, while Netbula was represented in *STK I*,

26   Yue—in his individual capacity and without counsel—had, *inter alia*, sought to intervene; filed a

27   motion for preliminary injunction and "copyright impoundment;" filed a motion in a related case

28   to intervene and "enforce" a protective order; directly requested a stipulation allowing him to

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1   substitute as a party; threatened to move to strike Defendants' pleadings, seek sanctions, and file

2   an "emergency motion for an integrity hearing;" filed an opposition to Defendants' Motion for

3   Administrative Relief (to prevent consideration of a declaration); and threatened to (and

4   eventually did) file this separate action.  Thus, while Netbula was represented by Ms. Brillet, Yue

5   as an individual *pro se* litigant was not, and there needed to be some communication with him

6   while he was representing himself.  As CRPC 2-100 does not bar counsel's direct

7   communications with an unrepresented party, the communications here were not prohibited.

8        Moreover, as discussed above, and as evidenced by the e-mails attached to Plaintiff's

9   Motion, in instances in which Fenwick communicated with Plaintiff concerning Plaintiff's efforts

10  to appear in his individual capacity and *pro se* in the *STK I* case, Fenwick simultaneously sent

11  copies of e-mails to Netbula's counsel.  Yue Decl. Ex. A; Wakefield Decl. ¶¶ 12, 15-16, 19, 21,

12  24-25 & Exs. 9, 11.  Fenwick specifically confirmed that Yue was *not* represented in claims and

13  arguments he was attempting to make in his individual capacity.  *Id.* ¶ 12, 21 & Exs. 3, 9.  Given

14  that Yue insisted on pursuing his individual appearances *pro se*, there was nothing improper about

15  communications with him.

16       Plaintiff incorrectly asserts that *United States v. Lopez*, 4 F.3d 1455 (9th Cir. 1993), and

17  *Terrebonne, Ltd. v. Murray*, 1 F. Supp. 2d 1050 (E.D. Cal. 1998), are "similar cases where an

18  attorney communicated with a represented party without authorization"  But these cases—neither

19  of which involved communication with *pro se* litigants—are remarkably dissimilar to the present

20  lawsuit.  In *Lopez*, a prosecutor not only communicated with a represented criminal defendant

21  about a plea agreement, but gained permission to do so by *materially misleading a magistrate*

22  *judge*: "The district court found that [the prosecutor] materially misled the magistrate judge

23  regarding the facts surrounding Lopez's request to speak directly with the prosecutor."  4 F.3d at

24  1462.  And *Terrebonne* involved a sanctions award against attorneys who had obtained

25  information about an adversary's intentions under false pretenses, *without disclosing who they*

26  *represented*. *Id.* at 1072.  Plaintiff cites no authority holding that counsel are prohibited from

27  communicating about ongoing litigation with their clients' *pro se* adversaries.

28

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1

2

**D.        Although Not Required, the Communications in Connection With *STK I* Had the Consent of Netbula's Counsel.**

3

4

5

Even if Yue had not been inundating Defendants with filings and communications as an unrepresented litigant, the communications pertaining to *STK I* would not run afoul of Rule 2-100 for another reason—they had the consent of Netbula's counsel at the time.

6

7

8

9

10

11

CRPC 2-100 permits communications with a represented party concerning the subject matter of the representation with the "consent of the other lawyer."  Former California Rule of Professional Conduct 7-103 required the "express consent" of the opposing attorney, but in enacting Rule 2-100, the California State Bar removed the "express consent" requirement, changing the Rule's language to require only "consent."  *Compare* Cal. R. Prof'l Conduct 2-100(A) *with* Former Cal. R. Prof'l Conduct 7-103 (repealed 1989).

12

13

14

15

16

17

18

Here, Ms. Brillet's consent to direct communications with Yue is evident.  As discussed above, after it had become clear that Yue was proceeding in his individual capacity and without counsel, Fenwick wrote to Yue, copying Ms. Brillet, and confirmed that Yue was not represented: "I understand that you are threatening to file a new action in your individual capacity, in which you are, and intend to remain, unrepresented by counsel.  If I am incorrect in these assumptions, *I request that you and/or Ms. Brillet advise me*."  Wakefield Decl. ¶ 21 & Ex. 9.  Ms. Brillet did not correct Fenwick's assumptions or raise any objection.

19

20

21

22

23

Thereafter, although she was copied on numerous communications between Fenwick and Yue, she never objected, complained or raised the slightest concern to Defendants.  *See* Yue Decl. Ex. A; Wakefield Decl. ¶¶ 12, 15-16, 21 & Ex. 9.  To the contrary, she actively encouraged and facilitated further direct communications during a December 6, 2007 telephone conference that she attended.  *Id.* ¶ 15.

24

25

26

27

In *Mills Land & Water Co. v. Golden West Refining Co.*, 186 Cal. App. 3d 116 (1986)*), superseded by statute as stated in La Jolla Cove Motel & Hotel Apartments, Inc. v. Superior Court*, 121 Cal. App. 4th 773 (2004), the court, explaining the rationale behind Rule 2-100, observed:

28

Fenwick & West LLP
Attorneys At Law
San Francisco

1
2
3

> If a party's counsel is present when an opposing attorney communicates with a party, counsel can easily correct any element of error in the communication or correct the effect of the communication by calling attention to counteracting elements which may exist.

4   *Id.* at 130 (internal quotation marks omitted).  In essence, Netbula's counsel was present for all of

5   the electronic communications with Yue in connection with the *STK I* case, and she was

6   physically present and on the call during the parties' telephone conference.  If she did not consent

7   to the communications and wished to object, or wished to clarify or correct anything said by

8   Plaintiff, she had every opportunity to intervene and do so.  Since she instead actively encouraged

9   direct communications, there was no violation of CRPC 2-100.  Under the circumstances,

10  granting disqualification would encourage counsel to sit by idly during repeated direct

11  communications with their clients, only to turn around later to seek disqualification for improper

12  tactical purposes.

13  **E.      Defendants' Counsel Did Not Improperly Provide "Legal Advice."**

14          Plaintiff also asserts that Defendants' counsel should be disqualified on the grounds that

15  "Mr. Pulgram's emails were "disguised as legal advice."  However, none of the communications

16  Plaintiff cites can reasonably be construed as providing legal advice.  And Plaintiff cites no

17  authority for the proposition that the California Rules of Professional Conduct prohibit an

18  attorney from discussing the merits of a lawsuit brought by a litigant who has elected to proceed

19  *pro se*.  Instead, Plaintiff relies on Model Rules of Professional Conduct R. 4.3, which provides:

20  "The lawyer shall not give legal advice to an unrepresented person, other than the advice to

21  secure counsel, if the lawyer knows or reasonably should know that the interests of such a person

22  are or have a reasonable possibility of being in conflict with the interests of the client."

23          California has not adopted the ABA Model Rules.  In *State Comp. Ins. Fund v. WPS, Inc.*,

24  70 Cal. App. 4th 644 (1999), the court held that the ABA Model Rules "do not establish ethical

25  standards in California . . . and have no legal force of their own."  *Id.* at 655-56; *see also Colyer v.*

26  *Smith*, 50 F. Supp. 2d 966, 972 (C.D. Cal. 1999) (where local rules incorporated California Rules

27  of Professional Conduct, not Model Code and Models Rules, arguments based on the latter

28  "inapplicable").  Even if ABA Model Rule 4.3 were considered for guidance here, the

communications at issue are not the type Rule 4.3 was ever intended to prohibit.  As the ABA

explains in the comments to Rule 4.3, "[a]n unrepresented person, particularly one not

experienced in dealing with legal matters, might assume that a lawyer is disinterested in loyalties

or is a disinterested authority on the law even when the lawyer represents a client."  ABA Model

Rules of Prof'l Conduct R. 4.3 cmt. 1.  The comments also note that "whether a lawyer is giving

impermissible advice may depend on the experience and sophistication of the unrepresented

person, as well as the setting in which the behavior and comments occur."  ABA Model Rules of

Prof'l Conduct R. 4.3 cmt. 2.

　　　Here, the communications were unmistakably adversarial, and were with a sophisticated

(albeit misguided) serial litigant.  Yue does not allege, nor can he based on the record in this case,

that he assumed Mr. Pulgram was disinterested in loyalties, was somehow representing Yue, or

that Yue accepted or relied on what he thought was "legal advice."  During the course of these

communications, Yue was threatening to seek sanctions against Fenwick, to strike pleadings, to

oppose motions, and to file an "emergency motion for an integrity hearing."  He had accused

Fenwick of concealing key facts, accused Fenwick of willfully violating a protective order, and

had accused defense counsel of prejudicing his case "by design."  Wakefield Decl. ¶¶ 18, 25 &

Exs. 7, 11; *BindView* Docket No. 307.  Under the circumstances, Yue obviously understood he

was communicating with an adversary, not an advisor.

　　　The one case cited by Plaintiff in support of his "legal advice" argument, *Molski v.

Evergreen Dynasty Corp.,* 500 F.3d 1047 (9th Cir. 2007), stands in stark contrast to the present

facts.  In *Molski,* a disabled restaurant patron had sued a restaurant owner alleging accessibility

violations under the Americans with Disabilities Act ("ADA").  *Id.* at 1050-51.  The district court

had noted what it characterized as an "astonishing" letter plaintiff's counsel had sent to other

defendants in like cases.  *Id.* at 1053.  The letter described itself as "friendly advice," and

proceeded to try to convince defendants—often small ethnic restaurants "viewed as easy prey for

coercive claims"—to settle without consulting counsel.  *Id.* at 1053, 1060.  The letter warned that

defense counsel would embark on a "billing expedition" and that the defendant's money would be

best spent on settlement and remediation of the ADA violations, rather than hiring a defense

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1   attorney. *Id.*   The District Court in *Molski* declared plaintiff a vexatious litigant, and also

2   sanctioned the law firm that represented him by requiring it to obtain leave of court before filing

3   any ADA claim.[6]

4        On appeal, the Ninth Circuit affirmed, finding that the law firm's filing of numerous false

5   complaints supported the imposition of sanctions. *Id.* at 1063.  The Ninth Circuit expressly did

6   *not* rely on the possible ethical violations in connection with the letter, and did *not* decide whether

7   such violations had occurred.  *Id.* at 1064 & n.7.  The court commented, however, that the firm's

8   decision to send the letters "was, at best, a questionable exercise of professional judgment" and

9   noted that the letter might violate Rule 4.3 of the ABA Model Rules of Professional Conduct.  *Id.*

10  at 1063.

11       The contrast between the letter in *Molski* and the communications here is striking.  In

12  *Molski*, the law firm sent letters claiming to offer "advice" and warning *against* hiring counsel.

13  In this case, Mr. Pulgram stated just the opposite: that Plaintiff *should* seek the advice of qualified

14  counsel before filing a frivolous lawsuit, and that the consequences of acting *without counsel*

15  exposed Plaintiff to great personal loss.  *See, e.g.*, Wakefield Decl. ¶¶ 21-22, Ex. 9.  These

16  communications were responsible efforts by counsel faced with a deluge of unreasonable,

17  frivolous and harassing filings by a *pro se* litigant determined to multiply the proceedings.

18  **F.**   **Assuming (Contrary to Fact) That the Communications Had Been Improper, They**
         **Would Not Warrant Disqualification.**
19

20       As discussed above, Plaintiff's Motion fails for the simple reason that there has been no

21  violation of any ethics rules.  However, assuming *arguendo* that a violation had occurred, a

22  violation of CRPC 2-100 would not serve as grounds for disqualification unless the misconduct

23  would "have a continuing effect on the judicial proceedings before the court."  *Marcum v.*

24  *Channel Lumber Co.*, Case No. CV-94-2637-SC, 1995 U.S. Dist. LEXIS 3799, at *4 (N.D. Cal.

25  Mar. 27 1995).  If, on the other hand, the court's purpose is to punish a transgression which has

26  no substantial continuing effect on the judicial proceedings to occur in the future, disqualification

27

28  ───────────────────
    [6] Notably, the case did not involve or discuss disqualification of counsel.  *Id.*

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1   is not proper.  *Id.* at *4-*5.  "'Only conduct that *will* have a continuing effect, not *might* have a

2   continuing effect, justifies disqualification.  Disqualification must be *necessary*.'"  *Id.* (quoting

3   *Mills Land*, 186 Cal. App. 3d at 134 (emphases in original)); *see also Gregori,* 207 Cal. App. 3d

4   at 308-09 (noting that purpose of a disqualification order must be prophylactic, not punitive, and

5   "[d]isqualification is inappropriate . . . simply to punish a dereliction that will likely have no

6   substantial continuing effect on future judicial proceedings.").

7       In *Marcum*, a case arising out of an employment dispute and breach of a related settlement

8   agreement, Plaintiff's attorney was alleged to have initiated and engaged in a conversation with

9   an individual who was both a named defendant and president of defendant Channel Lumber.  *Id.*

10  at *1-*2.  The court, assuming that defendants could prove a violation of Rule 2-100, nevertheless

11  denied Defendants' motion for disqualification.  *Id.* at *2.  The court found that defendants had

12  not proven that the attorney's alleged misconduct "will have a continuing effect on the judicial

13  proceedings before the court."  *Id.*  The court noted that the affidavit describing the

14  communication revealed that the substance of the conversation was not prejudicial:  "Nothing was

15  discussed which could not have been learned through interrogatories, depositions, etc."  *Id.* at *5.

16  Even though the lawsuit had been discussed, and defendant had "stated his position in the case

17  regarding his justification for firing plaintiff" the court found that "[n]othing in the conversation

18  revealed information which would confer an unfair advantage to the plaintiff."  *Id.*; *see also*

19  *Cont'l Ins. Co. v. Superior Court*, 32 Cal. App. 4th 94, 116-17 (1995) ("ultimate purpose" of rule

20  against communications with represented parties "is to preserve the confidentiality of attorney-

21  client communications").

22      Here, Plaintiff makes no showing that anything privileged or remotely prejudicial was

23  disclosed during his communications with Fenwick.  His declaration is completely devoid of facts

24  from which the Court could find a continuing adverse effect in this lawsuit.  And his arguments

25  claiming prejudice are conclusory, unreasonable on their face, and unsupported by the evidence.

26  Plaintiff does not claim—nor can he—that any factual information not otherwise available to

27  Defendants was revealed, or that any attorney-client confidences were sought or disclosed.

28  Rather, he essentially argues that because counsel talked to him directly, he thought he would be

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1   free to personally litigate against StorageTek in *STK I*: "Mr. Pulgram's direct communications to

2   Yue on numerous substantive issues in the *Netbula v. StorageTek* case led Yue to believe that

3   StorageTek would deal with Netbula directly via its principal, instead of through counsel." *See*

4   Motion to Disqualify at 4:9-12.

5        The Court need read no further than the exhibits to Yue's motion to see the folly of this

6   position. *See* Yue Declaration Ex. A (e-mail in which Defendants' counsel stated "as you no

7   doubt anticipated, ***we oppose your request to intervene and your request to substitute in as a***

8   ***party***"); *id.* Ex. B (e-mail in which Defendants' counsel asked Netbula's counsel to "[p]lease

9   advise Dr. Yue to stop contacting us directly about matters regarding which he is not individually

10  a party").

11  **G.    The Service by a Former Fenwick Partner as a Neutral in an Unrelated ENE Does**

12  **Not Warrant Disqualification.**

13       Plaintiff's argument that Fenwick must be disqualified from representing Yue's opponents

14  because of a former Fenwick partner's service as a neutral in an unrelated lawsuit is wrong on the

15  facts and the law.  Indeed, the case Plaintiff relies on for this point, *In re County of Los Angeles,*

16  223 F.3d 990 (9th Cir. 2000), found that disqualification was not warranted, even when assuming

17  that the former matter and current case were substantially related.  Here, the matters are unrelated.

18       **1.    This Case and *Netbula v. Distinct* Are Not Substantially Factually Related.**

19       *County of Los Angeles* makes clear that, as a threshold inquiry, the Court must determine

20  whether the cases are "substantially factually related." *Id.* at 994.  As the Judge Kozinski

21  observed:

22              Presuming that [the neutral] learned confidential information as a
                settlement judge in [the former matter], it doesn't follow that any of
23              that information pertains to [the current matter].  Then the two
                cases involve different parties and/or different incidents,
24              disqualification of the former judge and his law firm is appropriate
                only if the two cases are "substantially factually related."
25

26  *Id.*  The Ninth Circuit explained the "substantially factually related" standard as follows: "If there

27  is a reasonable probability that confidences were disclosed [in an earlier representation] which

28  could be used against the client in [a] later, adverse representation, a substantial relation between

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1   the two cases is presumed.  This inquiry calls for a "careful comparison between the factual

2   circumstances and legal theories of the two cases."  *Id.*

3       Here, a review of the pleadings in the *Distinct* case reveals that it was unrelated to the

4   present action.  *See* Wakefield Decl. ¶ 2 & Exs. 1-2.  In *Distinct,* Netbula claimed that Distinct

5   infringed the trademarks "Netbula" and "PowerRPC," by virtue of Defendant's inclusion of those

6   marks as "metatags" on its website, as well as the use of those marks in Internet keyword

7   advertising.  *Id.*  Distinct was not alleged to be a Netbula licensee, and was not alleged to have

8   made unauthorized copies of any Netbula software.  There were no copyright claims or

9   counterclaims.  This lawsuit, on the other hand, is exclusively copyright, and contains no

10  trademark claims or counterclaims.  Rather, it hinges on how StorageTek used licensed software,

11  and its use of that software was outside the scope of Plaintiff's license agreements.

12      There are trademark counterclaims in *STK I,* but even as to that case, the mere presence of

13  the same form of intellectual property protection does not render the cases "substantially factually

14  related."  The only trademarks identified in the *Distinct* complaint were "Netbula" and

15  "PowerRPC," which Netbula referred to collectively as the "Netbula/PowerRPC Marks"

16  throughout the complaint.  Wakefield Decl. ¶ 2 & Ex. 1.  In its answer, Distinct argued that its use

17  of the marks "Netbula" and "PowerRPC" constituted fair use.  *Id.* ¶2 & Ex. 2.  The answer, like

18  the complaint, made no mention of the mark "JavaRPC," the Netbula trademark on which Sun

19  bases its infringement claims in *STK I.  STK I* does not involve any claims involving the

20  trademarks "Netbula" or "PowerRPC."  It does not involve Distinct Corporation, or its website or

21  advertising.  Sun's trademark counterclaims will turn on whether there is a likelihood of

22  confusion between Sun's famous Java mark and Netbula's JavaRPC mark—a factual issue having

23  nothing to do with the facts of the *Distinct* case.[7]

24      Plaintiff's argument that both cases involve plaintiff's PowerRPC product is a sweeping

25  generalization that is wholly unpersuasive in determining whether the cases are substantially

26  factually related.  And Plaintiff's self-serving declaration, in which he claims to have bared his

27  soul and revealed confidential information about his products, does not change this.  Again,

28  _____

[7] Tellingly, Netbula—represented by counsel—has not sought disqualification in the *STK I* case.

Fenwick & West LLP
Attorneys At Law
San Francisco

1    *County of Los Angeles* is instructive.  There, the Ninth Circuit found that the district court *erred*

2    by inquiring whether confidential information actually passed from the parties to the neutral: "As

3    this case demonstrates, memories as to what transpired during these off-the-record proceedings

4    are likely to be dim, making the fact-finding process highly perilous." *Id.* at 993 & n.2.  Thus, the

5    relevant inquiry is not whether Yue, *three years* into litigation in which Fenwick represented his

6    adversaries, and over *five years* after the ENE in the *Distinct* case, had a sudden recollection of

7    his alleged conversation with Mr. Stern.  Rather, the "substantially factually related" test is an

8    objective one, under which Plaintiff's claims fail.

9        **2.    The Neutral and Any Information He Obtained Were Effectively Screened**
         **from Fenwick.**
10

11        In *County of Los Angeles*, the Ninth Circuit was unable to determine from the record

12   whether the prior and current matters were substantially factually related, but for the purposes of

13   its analysis assumed that they were.  It still found that disqualification was not warranted.  In that

14   case, the former neutral (a retired judge who had presided over settlement discussions in a case

15   involving claims against the same defendants) was a *current partner* at the firm representing

16   Plaintiff.  *Id.* at 992.  Nevertheless, because measures had been put in place to screen the lawyers

17   working on the case from information the ex-judge might have obtained, disqualification was not

18   warranted.  *Id.* at 996.

19        Here, the lawyer who served as a neutral, and his files, were long gone well before this

20   case began.  Wakefield Decl. ¶¶ 3-4.  Thus, Fenwick had no confidential information obtained

21   through the ENE, and the lawyers on this case have effectively been screened from any

22   information about it.  As such, under the very authority relied on by Plaintiff, disqualification is

23   not appropriate here.

24        **3.    Plaintiff's Disqualification Motion Should Be Denied In View of Plaintiff's**
         **Extreme Delay.**
25

26        Finally, Plaintiff's lengthy delay in raising this issue underscores its tactical nature.

27   Plaintiff argues that Fenwick should be disqualified from any matter against Yue "about

28   PowerRPC and JavaRPC" because those products were allegedly the subject of the *Distinct*

Fenwick & West LLP
Attorneys At Law
San Francisco

1    Litigation.  But as Plaintiff knows, Fenwick has been representing Plaintiff's opponents in cases

2    involving PowerRPC for two years.  *See, e.g.*, *BindView* Docket No. 5 [Stipulation to Extend

3    Time to Respond to Complaint filed April 12, 2006 (identifying Fenwick as counsel)].  And

4    Fenwick filed counterclaims on behalf of Sun for Netbula and Yue's infringing "JavaRPC" mark

5    in January 2007.  In view of this extreme and unreasonable delay, Plaintiff has waived the right to

6    seek disqualification.  *See River West Inc. v. Nickel*, 188 Cal. App. 3d 1297, 1313 (1987) (former

7    client's lengthy delay in making motion to disqualify was so unreasonable and resulted in such

8    prejudice that implied waiver was found; delay not excused by attempt to obtain disciplinary

9    sanctions from the State Bar).  Although this case was filed more recently, it is apparent that

10   Plaintiff seeks disqualification based on perceived conflicts in *STK I,* in which the *Distinct* issue

11   was never raised.  Disqualification in a newer duplicative action, after allowing defense counsel

12   to engage in countless hours of litigation effort in the original lawsuit, would merely reward

13   Plaintiff's tactical scheme, and impose severe prejudice on Defendants.  *Id.* at 1313

14   (disqualification after plaintiff's counsel engaged in thousands of hours of litigation would

15   impose prejudice "in more than time and dollars expended")

16                              **IV.    <u>CONCLUSION</u>**

17        For the foregoing reasons, Defendants respectfully request that the Court deny Plaintiff's

18   Motion for Disqualification of Defense Counsel.

19                                        Respectfully submitted,

20   Dated: April 9, 2008
                                          FENWICK & WEST LLP

21

22                                        By: <u>    /s/ Jedediah Wakefield    </u>

23                                                 Jedediah Wakefield

24                                        Attorneys for Named Defendants
                                          SUN MICROSYSTEMS, INC.,
25                                        MICHAEL MELNICK, JULIE DECECCO,
                                          MICHAEL P. ABRAMOVITZ,
26                                        LISA K. RADY, and JONATHAN SCHWARTZ

27   25689/00405/LIT/1283258.2

28

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO