LAURENCE F. PULGRAM (CSB NO. 115163)
*lpulgram@fenwick.com*
JEDEDIAH WAKEFIELD (CSB NO. 178058)
*jwakefield@fenwick.com*
ALBERT L. SIEBER (CSB NO. 233482)
*asieber@fenwick.com*
LIWEN A. MAH (CSB NO. 239033)
*lmah@fenwick.com*
FENWICK & WEST LLP
555 California Street, Suite 1200
San Francisco, CA  94104
Telephone: (415) 875-2300
Facsimile:  (415) 281-1350

Attorneys for Named Defendants
SUN MICROSYSTEMS, INC.,
MICHAEL MELNICK, JULIE DECECCO,
MICHAEL P. ABRAMOVITZ,
LISA K. RADY, and JONATHAN SCHWARTZ

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| DONGXIAO YUE,<br><br>            Plaintiff,<br><br>v.<br><br>STORAGE TECHNOLOGY CORPORATION, a Delaware corporation; SUN MICROSYSTEMS, INC., a Delaware corporation; MICHAEL MELNICK, an individual; JULIE DECECCO, an individual; MICHAEL P. ABRAMOVITZ, an individual; LISA K. RADY, an individual; JONATHAN SCHWARTZ, an individual; and DOES 1-1000, inclusive,<br><br>            Defendants. | Case No. C-07-05850-JW<br><br>**DECLARATION OF JEDEDIAH WAKEFIELD IN SUPPORT OF OPPOSITION TO MOTION TO DISQUALAIFY DEFENSE COUNSEL**<br><br>Date:         TBD<br>Time:        TBD<br>Courtroom: 8, 4th Floor<br>Judge:       Hon. James Ware |

*Fenwick & West LLP*
*Attorneys At Law*
*San Francisco*

I, Jedediah Wakefield, declare as follows:

1.      I am an attorney admitted to practice before this Court, and I am a partner at the law firm of Fenwick & West LLP ("Fenwick"), counsel for Defendants Sun Microsystems, Inc., Michael Melnick, Julie DeCecco, Michael P. Abramovitz, Lisa K. Rady, and Jonathan Schwartz. I have personal knowledge of the facts set forth in this declaration, and if called to do so I could and would testify competently to the same.

**The Early Neutral Evaluation in _Netbula, LLC v. Distinct Corp._**

2.      Attached hereto as **Exhibit 1** and **Exhibit 2**, respectively, are true and correct copies of the Complaint and Answer filed in _Netbula, LLC v. Distinct Corporation_, Case No. C-02-1253-JL (N.D. Cal.) (the "_Distinct_" case).  According to these pleadings, the _Distinct_ lawsuit did not involve the claims Netbula has asserted in this case: copyright infringement, fraud, and breach of Netbula's license agreements.  It also did not involve any claims that Netbula or Dr. Yue had infringed trademarks.  Rather, it involved Netbula's claims that Distinct infringed the trademarks "Netbula" and "PowerRPC," by virtue of Defendant's inclusion of those marks as "metatags" on its website, as well as the use of those marks in Internet keyword advertising.

3.      Plaintiff claims that Fenwick should be disqualified in this case because in 2002, Claude Stern, then a Fenwick partner, served as a neutral in an Early Neutral Evaluation ("ENE" of the _Distinct_ litigation as part of the Court's ADR program.  Neither I nor anyone who has worked on this case, or the other cases in which Fenwick has represented defendants in copyright lawsuits brought by Dr. Yue or Netbula, performed any work or had any communications with Mr. Stern relating to the ENE.

4.      Mr. Stern left Fenwick in approximately June 2003, more than three years before Plaintiff initiated his lawsuit against Sun.  Fenwick's records indicate that any files related to that ENE were transferred to Mr. Stern shortly thereafter.  Neither I nor anyone working on this case accessed those records, nor could we, as they were not here.  I have not spoken with Mr. Stern about the ENE, nor, to the best of my knowledge, have any Fenwick attorneys done so.  Thus, any information that Mr. Stern received in his capacity as a neutral was effectively screened off from the Fenwick lawyers working on this case—and indeed, from all of Fenwick & West—well

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1    before this case existed.

2    **Plaintiff's *Pro Se* Status in This Case**

3        5.      Plaintiff Dongxiao Yue ("Yue," or "Plaintiff") filed this action ("*STK II*") *pro se*.

4    Plaintiff's company, Netbula, LLC ("Netbula"), has never been a party in this case.  On January

5    28, 2008, Plaintiff filed a notice of substitution of counsel and proposed order naming Elena

6    Rivkin as counsel of record, which was entered the following day.  *See* Docket Nos. 34-35.  On

7    February 21, 2008, Plaintiff filed a second notice of substitution of counsel, this time seeking to

8    return to *pro se* status.  Docket No. 47.  On March 10, 2008, Plaintiff filed a "Re-Notice of Pro Se

9    Appearance" reaffirming that Ms. Rivkin no longer representing him.  Docket No. 56.  The three

10   motions Plaintiff filed thereafter were all on a *pro se* basis.  *See* Docket Nos. 58, 63, 65.

11   **Plaintiff's *Pro Se* Activities in Related Cases.**

12       6.      Plaintiff's motion to disqualify Fenwick is based in part on communications

13   occurring in connection with the related case of *Netbula, LLC v. Storage Technology Corp.*, Case

14   No. 06-07391-JW (N.D. Cal.) ("*STK I*").  Netbula was represented by counsel in *STK I*.

15   However, as I will discuss in more detail below, Dr. Yue participated or attempted to participate

16   in his individual capacity and without counsel, both in *STK I* and the related case of *Netbula, LLC*

17   *v. BindView Development Corp.*, Case No. 06-0711-MJJ-WDB (N.D. Cal.) ("*BindView*").

18       7.      On October 9, 2007, Dr. Yue filed a *pro se* motion to intervene in his individual

19   capacity in the *BindView* case, ostensibly to "enforce" a protective order and preclude use in the

20   subsequent *STK I* case of materials Netbula had produced in *BindView*.  Even though Dr. Yue had

21   not previously been a party to the *BindView* litigation, Dr. Yue brought that motion individually

22   and without representation by counsel.  *See BindView* Docket No. 307.

23       8.      On October 22, 2007, Dr. Yue filed, in his individual capacity and appearing *pro*

24   *se*, a motion to intervene in *STK I,* seeking a preliminary injunction and impoundment of Sun's

25   property. *See STK I* Docket No. 68.

26       9.      On October 30, 2007, in *STK I*, Dr. Yue filed, in his individual capacity and

27   appearing *pro se*, an Opposition to Defendants' Motion for Administrative Relief for

28   consideration of a declaration (filed about 8 hours late) in support of Defendants' Motion for

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1   Summary Judgment.  *STK I* Docket No. 90.  Prior to that, from October 25 through October 30,

2   2007, he had threatened to file a motion to strike, a motion for sanctions, and an "emergency

3   motion for an integrity hearing," all relating to Defendants' summary judgment motion in *STK I*.

4       10.    On November 5, 2007, Dr. Yue attempted to substitute himself, *pro se*, as

5   "counsel" for himself as an individual cross-defendant, in lieu of counsel Vonnah M. Brillet, who

6   had previously appeared for Dr. Yue individually in the *STK I* case. *STK I* Docket No. 95.

7       11.    On November 19, 2007, Dr. Yue, in his individual capacity and appearing *pro se*,

8   filed the present action, in which he claimed to own personally (independent from Netbula)

9   certain copyrights he wished to enforce. *STK II* Docket No. 1.  Even before his complaint, Dr.

10  Yue had been threatening, *pro se* and in his individual capacity, to bring this separate lawsuit

11  since October 2007.

12  **Direct Communications With Plaintiff**

13      12.    On October 16, 2007, after receiving electronic notification that Dr. Yue had filed

14  a motion to intervene and enforce a protective order in the *BindView* case, Mr. Pulgram wrote to

15  Vonnah Brillet, counsel of record for Netbula in *STK I* at the time, to request service of the

16  papers.  In that e-mail, he noted that direct communication with Dr. Yue would be needed if Dr.

17  Yue were attempting to represent himself, stating: "If Mr. Yue is now attempting to represent

18  himself as an individual in his effort to intervene, unrepresented by counsel, then *we may need to*

19  *speak with him directly*.  Please provide your instructions in this regard" (emphasis added).  A

20  true and correct copy of Mr. Pulgram's October 16, 2007 e-mail to Ms. Brillet is attached hereto

21  as **Exhibit 3**.  I was "cc'd" on that e-mail.   I understand that Ms. Brillet never responded.

22      13.    Instead, the next day, October 17, 2007, Dr. Yue e-mailed Mr. Pulgram, our

23  colleagues Liwen Mah and Albert Sieber, and me, with copies of his motion to intervene and

24  motion to enforce.  A true and correct copy of Dr. Yue's e-mail (without the attachments) is

25  attached hereto as **Exhibit 4**.

26      14.    On October 26, 2007, Dr. Yue e-mailed us again, this time seeking a stipulation to

27  allow him to substitute as Plaintiff and assert additional claims against StorageTek.  Dr. Yue

28  concluded his e-mail by writing: "If you do not stipulate to the substitution, I will commence the

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1  new action next week." Dr. Yue's e-mail was cc'd to Netbula's counsel, Vonnah Brillet. A true

2  and correct copy of Dr. Yue's October 26, 2007 e-mail is attached hereto as **Exhibit 5**.

3      15.    Ms. Brillet, as a recipient of the electronic communications in question,

4  presumably received instantaneous copies of them. However, at no time did she object to me or

5  anyone at Fenwick regarding the direct communications with Dr. Yue. Instead, she encouraged

6  them. For instance, after I had repeatedly sought to meet and confer with her concerning certain

7  discovery matters in the *STK I* case, she told me she was not authorized to do so, but later advised

8  that she would get Dr. Yue and have him talk to me directly. She did just that, bringing Dr. Yue

9  to her office, putting him on a speaker phone, and having him discuss the case with me directly

10  while she was present.

11      16.    After Dr. Yue filed his October 22, 2007 motion to intervene in *STK I*, seeking a

12  preliminary injunction and impoundment of Sun's property [*STK I* Docket No. 68], Defendants

13  believed that the motion had not been properly served, was untimely, and should be taken off

14  calendar. Pursuant to Civil L.R. 6-3(a)(2), On October 25, 2007, my colleague Mr. Pulgram

15  contacted Dr. Yue to request a stipulation to take that motion off calendar, before asking the court

16  to do so. Exhibit A to Dr. Yue's declaration in support of the instant motion contains a copy of

17  that e-mail, in which Mr. Pulgram also stated that Defendants would not agree to Plaintiff's

18  request to intervene and substitute in as a party. The e-mail was copied to Ms. Brillet. I

19  understand that she never responded. Dr. Yue refused the stipulation, and Sun filed its motion on

20  October 26, 2007.  The Court granted Sun's motion to take Dr. Yue's motion off calendar on

21  October 31, 2007.

22      17.    In response to Mr. Pulgram's October 25 e-mail, Dr. Yue sent an e-mail (also on

23  October 25, 2007) that raised the issue of the timeliness of a declaration filed by Defendants in

24  connection with their summary judgment motion. In it, Dr. Yue wrote: "SUN's refusal to

25  withdraw that motion may be my basis for a motion for sanctions." A true and correct copy of Dr.

26  Yue's October 25, 2007 e-mail is attached hereto as **Exhibit 6**.

27      18.    On October 26, 2007, Dr. Yue (unsolicited by Fenwick) e-mailed us to argue that

28  Defendants should have cited certain extrinsic evidence that he asserted was relevant to

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1    Defendants' summary judgment motion in the *STK I* case.  In that e-mail, Dr. Yue threatened to

2    file a motion to strike.  Ms. Brillet was copied on this e-mail.  That day, Mr. Pulgram responded

3    directly to Ms. Brillet, asking that she advise Dr. Yue to refrain from such communications.  A

4    true and correct copy of Mr. Pulgram's October 26, 2007 e-mail to Ms. Brillet (with confidential

5    information redacted) is attached hereto as **Exhibit 7**.

6          19.    After Dr. Yue kept communicating on these subjects, Fenwick sent an October 31,

7    2007 e-mail (attached as Exhibit B to Dr. Yue's Declaration) to Ms. Brillet, this time with a *copy*

8    to Dr. Yue, asking again that Ms. Brillet instruct him not to communicate with Fenwick in matters

9    other than those in which he was acting *pro se.*

10         20.    On October 27, 2008, Dr. Yue wrote an e-mail addressing the administrative

11   motion filed by Defendants in *STK I* regarding Dr. Yue's *pro se* motion for a preliminary

12   injunction.  In it, he stated that he (not Netbula) intended to file an opposition.  He filed the

13   Opposition on October 30, 2007.  Dr. Yue also again threatened to file a separate action against

14   Defendants Sun and StorageTek.  A true and correct copy of Dr. Yue's October 27, 2008 e-mail

15   is attached hereto as **Exhibit 8**.

16         21.    Based on Dr. Yue's threat to file a new lawsuit as a *pro se* plaintiff, Mr. Pulgram

17   replied to Dr. Yue in an October 29, 2007 e-mail, copying Ms. Brillet, and confirming Dr. Yue's

18   status as an unrepresented party:

19             I am responding to you individually, and copying Netbula's counsel,
               because I understand that you are threatening to file a new action in your
20             individual capacity, in which you are, and intend to remain, unrepresented
               by counsel.  If I am incorrect in these assumptions, I request that you
21             and/or Ms. Brillet advise me.

22   Neither Ms. Brillet nor Plaintiff advised that Mr. Pulgram, me, or anyone at Fenwick that we

23   were incorrect in assuming that Dr. Yue was threatening to take action in his individual capacity,

24   and was unrepresented by counsel.  A true and correct copy of Mr. Pulgram's October 29, 2007 e-

25   mail is attached hereto as **Exhibit 9**.

26         22.    In that  e-mail, Mr. Pulgram cautioned that Defendants would seek the expenses

27   incurred in defending this duplicative lawsuit, and repeatedly implored Yue to get a lawyer:

28

1
2
3
4

We therefore suggest that you consider the consequences very seriously before filing such inappropriate pleadings--and obtain the advice of qualified counsel before you do so.  Magistrate Judge Chen's ruling should have demonstrated that filing unwarranted motions is a serious matter and has very real consequences.

5
6
7
8

I realize, of course, that I cannot keep you from filing with the Court whatever it is that you choose to file.  It only costs a few hundred dollars to commence a lawsuit that could cost thousands to defend, and which Sun would seek to recover from you personally thereafter.  I therefore reiterate the importance of your obtaining counsel as to all the consequences before you act.

9
10
11
12
13

23.     Dr. Yue responded on October 30, 2007 with a lengthy e-mail, in which he threatened to file "an emergency motion for an integrity hearing" for Defendants' failure to cite allegedly relevant extrinsic evidence in connection with their summary judgment motion.   A true and correct copy of Dr. Yue's October 30, 2008 e-mail (with confidential information redacted) is attached hereto as **Exhibit 10**.

14
15
16
17
18
19
20
21
22

24.     The third e-mail attached to Plaintiff's motion (Exhibit C to his declaration) concerned this case, which Plaintiff filed as a *pro se* litigant.  In that e-mail, Plaintiff personally sought Defendants' stipulation to accept service by e-mail of a separate complaint and possibly TRO application.  In response, Mr. Pulgram sent an e-mail, copied to Ms. Brillet, which first noted "I am responding to you personally on the understanding that you are acting in your individual capacity and unrepresented by counsel."  He then agreed to accept service of a TRO, but noted that Plaintiff would need to serve properly a new summons and complaint.  Mr. Pulgram also reiterated the point he had made to Plaintiff and Netbula's counsel in his October 29 e-mail shown in Exhibit 9: that Defendants would seek to recover from Plaintiff personally.

23
24
25
26
27

25.     The last communication Plaintiff identifies—Exhibit D to Yue's declaration— was a response to an e-mail from Dr. Yue about Defendants Administrative Motion to consider whether the *STK I* and *STK II* cases should be related.  In a December 5 e-mail (of which Dr. Yue only includes a portion in his declaration), he had complained that Sun should not have filed the related case motion, and made a request that Sun withdraw that motion:

28

I have filed a Petition with the Ninth Circuit, which seeks to vacate the

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

various orders and reinstate my access to the district court provided by the equal protection clause of the US constitution.

Until CA9 rules on my petition, I won't be able to file anything on Judge Jenkins's docket to oppose SUN's administrative motions. SUN knows that I can't file an opposition at this point, therefore, its motion to relate cases is prejudicial to my case (Yue v. STK) by design.

To avoid further complications, I request SUN defendants to withdraw their motion to relate cases or delay it until the Ninth Circuit rules on my Petition, so that I can respond to your motion. Otherwise, SUN's unseemly "related case motion" would generate unnecessary burden for the courts.

Again, my request is simple: wait till the Ninth Circuit makes the decision.

Any attempt to be clever will be unwise.

A true and correct copy of Dr. Yue's December 5 e-mail is attached hereto as **Exhibit 11**. In his response, shown in Exhibit D to Dr. Yue's declaration, Mr. Pulgram responded to Yue's assertion that the related case motion was improper, and to Yue's claim that Sun had filed its motion to prejudice Yue's lawsuit. *Id.* Mr. Pulgram, responding to both Netbula's counsel and Plaintiff, pointed out that Netbula was free to raise the points Plaintiff had raised. *Id.* To my knowledge, Ms. Brillet never responded. Netbula never filed a response to the administrative motion.

I declare under penalty of perjury that the foregoing is true and correct.

Executed in San Francisco on April 9, 2008.


/s/  JEDEDIAH WAKEFIELD
Jedediah Wakefield

25689/00405/LIT/1283560.2

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

# EXHIBIT 1



1  NEIL A. SMITH (No. 63777)
   JIN H. KIM (No. 208676)
2  HOWARD, RICE, NEMEROVSKI, CANADY,
        FALK & RABKIN
3  A Professional Corporation
   Three Embarcadero Center, 7th Floor
4  San Francisco, California 94111-4065
   Telephone:   415/434-1600
5  Facsimile:   415/217-5910

6  Attorneys for Plaintiff
   NETBULA, LLC.

7

8                 UNITED STATES DISTRICT COURT

9              NORTHERN DISTRICT OF CALIFORNIA

10                    OAKLAND DIVISION

11  NETBULA, LLC., a California limited        No.
    liability company,
12
                    Plaintiff,                 COMPLAINT FOR FEDERAL AND
13                                             STATE UNFAIR COMPETITION,
         v.                                    TRADEMARK INFRINGEMENT AND
14                                             FALSE ADVERTISING OVER THE
    DISTINCT CORPORATION, a California         INTERNET AND INTERFERENCE
15  corporation                                WITH PROSPECTIVE ECONOMIC
                                               ADVANTAGE
16                  Defendant.

17

18

19

20

21

22

23

24

25

26

27

28

    COMPLAINT FOR TRADEMARK INFRINGEMENT, UNFAIR COMPETITION AND FALSE ADVERTISING
    WD 030402/4-14/70502/Y7/968981/v1

1   Netbula, LLC., ("Plaintiff") by and for its complaint against Defendant alleges as
2   follows:

3

4                                   **PARTIES**

5       1.    Netbula, LLC is a California limited liability company with its principal place of
6   business in Alameda County, California, doing business in this district.

7       2.    Upon information and belief, Defendant Distinct Corporation ("Defendant") is a
8   California corporation at 3315 Almaden Expressway, San Jose, California, and does
9   business within this judicial district.

10

11                                  **JURISDICTION**

12      3.    This action arises under the Trademark and Unfair Competition laws of the
13  United States. Accordingly, this court has jurisdiction over the subject matter of this action
14  pursuant to 15 U.S.C. §1121, 28 U.S.C. §1331 and 28 U.S.C. §1338(a), and supplemental
15  and pendant jurisdiction under 28 U.S.C. §1367 and §1338(b) over all state law claims
16  asserted herein, in that said claims are joined with substantial and related claims under the
17  Trademark Laws of the United States.

18      4.    This action arises out of wrongful acts committed by the Defendant in this
19  judicial district and on the Internet which subjects it to personal jurisdiction here. Because a
20  substantial part of the events giving rise to the action occurred in this judicial district, venue
21  is proper in this district pursuant to 28 U.S.C. §1391(b)(2).

22

23                          **INTRADISTRICT ASSIGNMENT**

24      5.    Pursuant to Local Rule 3-2(e), this case is properly assigned to the Oakland
25  Division of this district insofar as the action arises in the County of Alameda.

26

27                                  **BACKGROUND**

28      6.    Plaintiff has been and is now engaged in providing computer software for

COMPLAINT FOR TRADEMARK INFRINGEMENT, UNFAIR COMPETITION AND FALSE ADVERTISING
WD 030402/4-1470502/Y7/968981/v1                    -1-

HOWARD
RICE
NEMEROVSKI
CANADY
FALK
& RABKIN
A Professional Corporation

1    developing network and Internet applications and services related thereto.  Plaintiff's main

2    products are Remote Procedure Call ("RPC") computer software development tools for

3    Windows, UNIX and Java platforms.  These RPC software development tools are used to

4    generate communication codes that allow software applications on computers linked to a

5    network to communicate with other computers linked to the same network. Put simply, RPC

6    software development tools make communication across a large network of computers in

7    remote locations, possible.

8        7.    Customers of Plaintiff's software products typically pay Plaintiff for developer

9    licenses, runtime licenses and support/maintenance contracts.  The developer license gives a

10   programmer the right to use the RPC tools to develop RPC applications; the runtime license

11   allows the customer to distribute the communication code and supporting programs of the

12   RPC framework to end user machines; the support/maintenance contracts provide for

13   technical support and maintenance for the duration of the developer and runtime licenses.

14       8.    Since Plaintiff began offering its RPC software development tools, including

15   Netbula RPC and PowerRPC, for licensing, it has acquired many US and international

16   customers, including Citicorp, Ericsson, FedEx, Intel, Hewlett-Packard, Merrill Lynch,

17   Samsung and Sony.

18       9.    Upon information and belief, Defendant is also engaged in providing computer

19   software for developing network and Internet applications.  Defendant offers for licensing a

20   program called Distinct RPC, which offers very similar functionalities as Plaintiff's Netbula

21   RPC.  Because both Distinct RPC and Netbula RPC are based on Sun's Open Network

22   Computing RPC standards, these two technologies are almost interchangeable, and

23   competitive.

24       10.   Since 1996, Plaintiff has used the trademark and trade name "Netbula" and the

25   trademark "PowerRPC" in association with computer software for developing network and

26   Internet applications marketed in California and in interstate commerce throughout the

27   United States.  The Netbula trademark and trade name and the PowerRPC trademark are

28   referred to collectively as the "Netbula/PowerRPC Marks."


HOWARD
RICE
NEMEROVSKI
CANADY
FALK
& RABKIN
A Professional Corporation

COMPLAINT FOR TRADEMARK INFRINGEMENT, UNFAIR COMPETITION AND FALSE ADVERTISING
WD 030402/4-147.0502/Y7/968981/v1                    -2-

1    11.  Plaintiff has registered the domain name netbula.com, corresponding to its

2    trademark and trade name.

3    12.  Plaintiff has used the Netbula/PowerRPC Marks to identify Plaintiff, and to

4    identify and distinguish Plaintiff's business, and Plaintiff's products, and to distinguish

5    Plaintiff's products from all other goods and services of the same class, and Plaintiff has

6    acquired substantial goodwill through the use of its Netbula/PowerRPC Marks.

7    13.  Since at least at early as 1996, Plaintiff has continued to use its

8    Netbula/PowerRPC Marks in California and in interstate commerce in the United States, and

9    in foreign commerce with the United States.

10   14.  Plaintiff has been and still is the owner of the Netbula/PowerRPC Marks.

11

12                **BACKGROUND FACTS REGARDING THE INTERNET**

13   15.  The Internet is an international computer "super-network" of thousands of

14   computer networks globally and is used by hundreds of millions of individuals, corporations,

15   organizations, and educational institutions worldwide.

16   16.  Users of the Internet can access each other's computers, communicate directly

17   with each other (by means of electronic mail or "e-mail"), and access various types of data

18   and information by, *e.g.*, browsing or surfing.

19   17.  Many of the computers that are part of the Internet store information in files

20   known as web sites that are located in that part of the Internet known as the World Wide

21   Web.  A web site is a collection of electronic documents on a host or server computer

22   accessible on the Internet and may include text, graphics, sound and/or video.  Often, a web

23   site includes a number of individual screens referred to as web pages.

24   18.  As the Internet's World Wide Web has become large and millions of web pages

25   connected thereto have become accessible on the Internet, the need developed for a way to

26   locate desired material on web pages on the Internet.

27   19.  Searching the material on the Internet for web sites of interest to a user of the

28   Internet is performed by commercial "search engines," which are connected to the Internet.

HOWARD
RICE
NEMEROVSKI
CANADY
FALK
& RABKIN
A Professional Corporation

1    These search engines use "spiders" (special software programs) to automatically search out

2    and identify new web sites, and then they index the contents of the web sites for ease of

3    identification. Examples of such search engines are Alta Vista, LookSmart and Google. A

4    user looking for a particular company or product brand web site or a particular subject will

5    access one of the search engines via the Internet and then input desired search terms. The

6    search engine then returns with results in the form of a display of addresses of, and easy

7    "links" to, web sites that meet the search request or criteria.

8        20.    Web sites are built and programmed to display content such as text and graphics

9    using a web page special programming language such as "hypertext markup language"

10    (HTML). HTML allows the web site designer to create a field of keywords in the hidden

11    code of each web page, which is frequently referred to as a "meta field." A meta field

12    includes words or tags that are embedded in the HTML code language and therefore

13    invisible to the viewer. When a search engine executes a search at the request of a user, it

14    scans the visible text of the web site, as well as the HTML code, including the hidden meta

15    field or "meta tags," for matches to the word(s) or name(s) provided by the user requesting a

16    search. Each web site that includes matching information is catalogued and indexed for

17    access by the user, and displayed to the user in a search engine report weighted and in the

18    order of importance to the request for a search made by the user. These web sites found and

19    displayed by the search engine are provided to the user in a sometimes numbered report list

20    in the order of their importance as judged by the search engines' recognition of the search

21    term(s) in the web pages, including within their meta tags.

22        21.    Since its inception in 1996, Plaintiff has offered and continues to offer its goods

23    to California residents and to others throughout the United States and the world under the

24    Netbula/PowerRPC Marks, and uses the Marks on the Internet.

25        22.    On information and belief, on or beginning sometime in 2001, and well after

26    Plaintiff's use of its Netbula/PowerRPC Marks, Defendant modified several of its Internet

27    web pages on its web site by copying and using in the meta field of Defendant's web pages,

28    Plaintiff's Netbula/PowerRPC Marks, in order to sell Defendant's products in competition

HOWARD
RICE
NEMEROVSKI
CANADY
FALK
FRABKIN

1   with Plaintiff and/or to attract users searching for Plaintiff or Plaintiff's products to

2   Defendant's website and products.

3       23.   The Internet search engine Google provides an AdWords Advertising Program

4   whereby an advertiser, such as Defendant, can purchase the exclusive rights to place its own

5   advertisement prominently on the search reports provided to users of the Internet who enter

6   the requested term in their search requests.

7       24.   In the ordinary case, a user of the Internet searches the Internet by typing a term

8   known as a "keyword" into a search engine. The search engine uses a mathematical formula

9   to generate a list of web pages containing (or relevant to) that term. When an advertiser has

10  paid the search engine, in this case, Google, for keyword targeting, the search engine will

11  display the advertisement requested by the advertiser directly alongside the search results.

12  Google's AdWords Advertising Program is described on the Google website at

13  http://adwords.google.com.

14      25.   Upon information and belief, Defendant purchased or ordered from Google

15  through Google's AdWords Advertising Program, and possibly from other search engines,

16  the exclusive rights to display, for a time, or for a number of display impressions, based

17  upon a commitment to pay, placement of Defendant's advertising for Defendant's directly

18  competitive Internet software tools products, specifically when the Internet user enters in the

19  Google search engine a search request for one or more of Plaintiff's trademarks or trade

20  name.

21      26.   Plaintiff's trademarks and trade name represent, identify and stand for Plaintiff,

22  and Plaintiff's products in the Internet marketplace. However, Defendant used Plaintiff's

23  trademarks, trade name and product trademark in commerce by having purchased exclusive

24  rights to display advertising only for Defendant's competitive products each time a user

25  enters into the search request Plaintiff's trademarks or trade name.

26      27.   When the target keyword is a term that is used in a generic fashion, such as

27  "automobile" to trigger advertisements for cars, the practice has no trademark implications.

28  However, if the keyword is a trademark or trade name that identifies Plaintiff or Plaintiff's

HOWARD
RICE
NEMEROVSKI
CANADY
FALK
& RABKIN
A Professional Corporation

products in the marketplace, as here, then Defendant's display of an advertisement for Defendant's competitive products is likely to, and does, trade upon the value and recognition of Plaintiff's trademarks and trade name, and is likely to cause confusion, mistake or deception as users search for information or websites concerning Plaintiff, using Plaintiff's trademarks or trade name.

28.   Defendant's purchase of the rights to Plaintiff's trademarks and trade name as an exclusive key word on at least one, and possibly other search engines, allows Defendant to unfairly trade upon the reputation, recognition and desire of the public to obtain information about Plaintiff and Plaintiff's products, and to unfairly obtain access to Plaintiff's customers and potential customers, and thus represents a false representation and a false designation of origin under the Lanham Act, unfair competition with Plaintiff under Federal and California law, and trademark and trade name infringement under California law.   Defendant's purchase of Plaintiff's trademarks and trade name as an exclusive key word on a search engine further interferes with the business relationship and potential business relationship between Plaintiff and its customers and potential customers who, Plaintiff asserts, are searching for information about Plaintiff and Plaintiff's products on the Internet search engines.

29.   Upon information and belief, Defendant knew or should have known about the trademarks and trade name of Plaintiff, in that Plaintiff is a direct and active competitor of Defendant, and knew or should have known that its actions would likely cause consumers seeking Plaintiff or Plaintiff's products, or to purchase Plaintiff's products, or obtain information about Plaintiff's products, would likely believe that Defendant's products were the same as, or should be substituted for Plaintiff's products, or that Defendant's products are made by, sponsored by or affiliated with Plaintiff or Plaintiff's products.

30.   Upon information and belief, Defendant was aware in contracting for exclusive rights to display advertising for Defendant's competitive products to users of the Internet who enter Plaintiff's trademarks and trade name, that the purchase of Plaintiff's trademarks and trade name as keywords by Defendant for the advertising of Defendant's products in

HOWARD
RICE
NEMEROVSKI
CANADY
FALK
&RABKIN
A Professional Corporation

1   response to inquiries for Plaintiff's trademarks and trade name, would likely trade on the

2   goodwill of Plaintiff's trademarks and trade name, and allows Defendant to "reap what it has

3   not sown" in taking advantage of the goodwill of Plaintiff's trademarks and trade name as

4   identifying Plaintiff and Plaintiff's products in the marketplace.

5       31.   After Defendant's purchase of advertising keywords on the Google search engine

6   using Plaintiff's trademarks and tradename, Plaintiff posted a notice advising Defendant, as

7   a competitor, of the unfairness of Defendant's marketing strategy. Upon information and

8   belief, Defendant learned of such concerns of Plaintiff, but did not stop its illegal and unfair

9   practice. Accordingly, Plaintiff has been forced to file this lawsuit against Defendant for

10  Defendant's unfair competition.

11

12                          **COUNT I**
    **(Violation of Section 43(A) of The Lanham Act)**

13

14      32.   Plaintiff realleges and incorporates by reference paragraphs 1-31 above.

15      33.   This claim arises under Section 43(a) of the Lanham Act (15 U.S.C. §1125(a)).

16      34.   Upon information and belief, in 2001, over five (5) years after Plaintiff began use

17  of its Netbula/PowerRPC Marks, Defendant, without consent or license from Plaintiff,

18  infringed the Netbula/PowerRPC Marks and unfairly competed with Plaintiff (1) by copying

19  such marks into its advertising on the Internet by adopting and copying them into their

20  hidden code or metatags within its Internet web pages on the Internet World Wide Web, on

21  which web sites Defendant advertises and offers for sale products that directly compete with

22  Plaintiff's products and (2) by purchasing them as keywords for advertisements for

23  Plaintiff's competitive products in an Internet search.

24      35.   Defendant's use of the terms Netbula and PowerRPC as metatags or hidden codes

25  in its Internet advertising and Defendant's purchase of them as exclusive keywords, is likely

26  to cause confusion, mistake, and deception, and will continue to cause confusion, mistake

27  and deception in violation of 15 U.S.C. §1125.

28      36.   Plaintiff has used its Netbula/PowerRPC Marks to distinguish its products, and to

HOWARD
RICE
NEMEROVSKI
CANADY
FALK
& RABKIN
*A Professional Corporation*

1  identify its business in the marketplace, and Plaintiff has acquired substantial goodwill

2  through the use of its Netbula/PowerRPC Marks.

3      37.  Plaintiff's Netbula/PowerRPC Marks are inherently distinctive.

4      38.  Plaintiff's Netbula/PowerRPC Marks identify Plaintiff and Plaintiff's business as

5  the source of Plaintiff's computer software for developing network and Internet applications

6  and services related thereto.

7      39.  Plaintiff's use of Netbula/PowerRPC Marks preceded Defendant's infringing uses

8  of the trademarks and trade name.

9      40.  Defendant's use of Plaintiff's Netbula/PowerRPC Marks allows Defendant to

10  trade upon Plaintiff's goodwill and reputation.  Defendant uses these Marks for directly

11  competitive products.

12      41.  Defendant used Plaintiff's Netbula/PowerRPC Marks as meta tags in its Internet

13  World Wide Web page(s), to the benefit and profit of Defendant, in competition with

14  Plaintiff, and to trade upon the goodwill and reputation of Plaintiff and Plaintiff's products

15  in the marketplace and to interfere with attempts by Plaintiff's customers and prospective

16  customers to access Plaintiff's information about Plaintiff's products.

17      42.  As a result of Defendant's acts of trademark infringement, trade name

18  infringement and unfair competition, Defendant has profited and benefited in the

19  marketplace, at the expense of and injury to Plaintiff.

20      43.  Upon information and belief, as a result of Defendant's acts in copying and using

21  Plaintiff's Netbula/PowerRPC Marks in its World Wide Web pages on the Internet,

22  Defendant was able to obtain higher placement and recognition in several Internet search

23  engines, to the detriment of Plaintiff and the benefit and unjust enrichment and profit of

24  Defendant.

25      44.  Attached as Exhibit A is a copy of internal portions of the Internet World Wide

26  Web pages which are not visible to the users, which has been printed out from the hidden

27  text on one of the Internet addresses for Defendant's products on the Internet World Wide

28  Web. The printout of the World Wide Web page shows the use of Plaintiff's trademark and

HOWARD
RICE
NEMEROVSKI
CANADY
FALK
& RABKIN
A Professional Corporation

1  trade name Netbula and Plaintiff's trademark PowerRPC in the meta tags in the programmed

2  text of Defendant's World Wide Web sites.

3      45.   Attached as Exhibit B is a copy of a later example of a Google search engine

4  display provided in response to a request for a search for Plaintiff's Netbula/ PowerRPC

5  Marks. Others were provided in the past.

6      46.   Plaintiff and Defendant are longstanding competitors, and, upon information and

7  belief, Defendant is familiar with certain of Plaintiff's products and familiar with the

8  Netbula/PowerRPC Marks used by Plaintiff in connection with Plaintiff's products.

9      47.   Upon information and belief, Defendant was fully aware of Plaintiff's

10  Netbula/PowerRPC Marks, and the use thereof by Plaintiff to identify Plaintiff and

11  Plaintiff's products in the marketplace in which the parties compete, when Defendant

12  committed its acts of infringement in willful and flagrant disregard of Plaintiff's lawful

13  rights.

14      48.   Upon information and belief,  Defendant has caused and continues to cause

15  confusion and mistake and intends to deceive buyers and prospective buyers of Plaintiff's

16  products into believing that Defendant's products are associated with Plaintiff, and that

17  Defendant's products were approved or authorized by Plaintiff or otherwise connected with

18  Plaintiff.

19      49.   Defendant's use of the Netbula/PowerRPC Marks in its hidden code or metatags

20  in its Internet World Wide Web pages and purchase of them as target keywords constitutes

21  acts in violation of 15 U.S.C. Section 1125(a), in that such use falsely represents that

22  Defendant's products are produced by, marketed by, sponsored by, approved by, or licensed

23  by Plaintiff or otherwise associated with Plaintiff.

24      50.   Defendant's use of the Netbula/PowerRPC Marks in its hidden code or meta tags

25  in its Internet World Wide Web pages, or keyword purchase thereof, constitutes acts in

26  violation of 15 U.S.C. Section 1125(a) in that such use represents a false designation of

27  origin and/or a false representation to members of the public using the Internet.

28      51.   As a result of Defendant's unlawful conduct, Plaintiff has been and continues to

HOWARD
RICE
NEMEROVSKI
CANADY
FALK
RABKIN

1   be substantially and irreparably harmed.  If Defendant's unfair competition is permitted to

2   continue, further damage and irreparable injury will be sustained by Plaintiff, and others will

3   be encouraged to, or induced to, infringe Plaintiff's Netbula/PowerRPC Marks.  Through

4   such unfair use of Plaintiff's Netbula/PowerRPC Marks, the value of Plaintiff's trademarks

5   and trade name will be destroyed, for which Plaintiff cannot be adequately compensated at

6   law.

7          52.   Defendant has derived unlawful gains and profits from its infringement of

8   Plaintiff's Netbula/PowerRPC Marks, and Defendant thereby has caused loss and damage to

9   Plaintiff, Plaintiff's goodwill, trademarks and trade name.   As a proximate result of

10  Defendant's infringement, Plaintiff has suffered and is likely to suffer injury to its business,

11  goodwill, reputation, and profit, all to its damage, and in an amount not yet fully ascertained,

12  but believed to be in excess of $100,000.00.

13         53.   This is an exceptional case of false designation of origin and false representation,

14  and Plaintiff is entitled to recover its reasonable attorneys fees and costs, and three times its

15  actual damages, pursuant to 15 U.S.C. Section 1117 of the Lanham Act.

16

17                        **COUNT II**
                 **(Unfair Competition Under California Law)**

18

19         54.   Defendant realleges and incorporates by reference paragraphs 1-53 above.

20         55.   This claim arises under Sections §17200 *et seq.* of the California Business and

21  Professions Code.

22         56.   Defendant's use of Plaintiff's Netbula/PowerRPC Marks constitutes unfair

23  competition in violation of California law.

24         57.   Upon information and belief, Defendant's unfair competition practices in the use

25  of the terms Netbula and PowerRPC have been willful and have been committed with the

26  intent of injuring and interfering with Plaintiff's business for the benefit of Defendant and

27  Defendant's business.

28         58.   Upon information and belief, Defendant's use of the Netbula/PowerRPC Marks

HOWARD
RICE
NEMEROVSKI
CANADY
FALK
& RABKIN
A Professional Corporation

1  has deceived Plaintiff's customers and potential customers into believing that Defendant's

2  products and Plaintiff's products are related and/or that Defendant's products are affiliated

3  with, associated with, and sold and/or licensed by Plaintiff and/or that Plaintiff's products

4  are affiliated with, associated with, and sold and/or licensed by Defendant.

5     59.   As a direct and proximate result of Defendant's acts of unfair competition,

6  Defendant has profited, and Plaintiff has lost business and has suffered injury and loss to its

7  trademarks, trade name, goodwill, profits and business.

8     60.   Defendant's acts of unfair competition against Plaintiff, if they continue, will

9  cause further injury and loss to Plaintiff, will continue unless enjoined by this Court.

10

11                          **COUNT III**

12            **(Trade Name Infringement Under California Law)**

13     61.   Defendant realleges and incorporates by reference paragraphs 1-60 above.

14     62.   This claim arises under Sections 14400 *et seq.* of the California Business and

15  Professions Code.

16     63.   Defendant's use of the trade name, Netbula, of Plaintiff constitutes trade name

17  infringement in violation of California law.

18     64.   Upon information and belief, Defendant's practices in the use of Plaintiff's trade

19  name Netbula have been willful and have been committed with the intent of injuring and

20  interfering with Plaintiff's business for the benefit of Defendant and Defendant's business.

21     65.   Upon information and belief, Defendant's use of the trade name Netbula is likely

22  to deceive or confuse customers and/or potential customers, or has confused or has deceived

23  Plaintiff's customers and potential customers into believing that Defendant's products and

24  Plaintiff's products are one and the same, and/or that Defendant's products are affiliated

25  with, associated with, and sold and/or licensed by Plaintiff and/or that Plaintiff's products

26  are affiliated with, associated with, and sold and/or licensed by Defendant.

27     66.   As a direct and proximate result of Defendant's acts of trade name infringement,

28  Defendant have profited, and Plaintiff has lost, or is likely to lose, business and has suffered

HOWARD
RICE
NEMEROVSKI
CANADY
FALK
& RABKIN
A Professional Corporation

COMPLAINT FOR TRADEMARK INFRINGEMENT, UNFAIR COMPETITION AND FALSE ADVERTISING
WD 030402/4-1470502/Y7/968981/v1                    -11-

1     injury and loss to its trademarks, trade name, goodwill, profits and business.

2        67.   Defendant's acts of trademark infringement against Plaintiff, if they continue,

3     will cause further injury and loss to Plaintiff.

4

5                                    **COUNT IV**

6               **(False Advertising on The Internet Under California Law)**

7        68.   Plaintiff realleges and incorporates by reference paragraphs 1-67 above.

8        69.   This claim arises under Sections 17500 *et seq.* of the California Business and

9     Professions Code.   Section 17500 of California Business and Professions Code was

10     specifically amended to include false or misleading statements over the Internet.

11        70.   Defendant's use of Plaintiff's Netbula/PowerRPC Marks constitutes the use of

12     false and/or misleading statements over the Internet in violation of §17550 *et seq.* of

13     California Business and Professions Code.

14        71.   Upon information and belief, Defendant's practices in the use of the terms

15     Netbula and PowerRPC have been willful and have been committed with the intent of

16     injuring Plaintiff's business for the benefit of Defendant and Defendant's business.

17        72.   Upon information and belief, Defendant's use of the marks Netbula and

18     PowerRPC on the Internet has deceived, or is likely to deceive, customers and potential

19     customers of Plaintiff and the public into believing that Defendant's products and Plaintiff's

20     products are one and the same, and/or that Defendant's products are affiliated with,

21     associated with, and sold and/or licensed by Plaintiff and/or that Plaintiff's products are

22     affiliated with, associated with, and sold and/or licensed by Defendant.

23        73.   As a direct and proximate result of Defendant's acts of advertising on the

24     Internet, Plaintiff has lost business and has suffered injury and loss to its trademarks, trade

25     name, goodwill, profits and business.

26        74.   Defendant's acts of false advertising, if they continue, will cause further injury

27     and loss to Plaintiff.

28

HOWARD
RICE
NEMEROVSKI
CANADY
FALK
& RABKIN
A Professional Corporation

**COUNT V**
**(Intentional Interference with Prospective Economic Advantage)**

75.    Plaintiff realleges and incorporates by reference paragraphs 1-74 above.

76.    Plaintiff has valid existing and/or prospective economic interest in its relationships with its actual and prospective customers, and its reputation within the software development community.

77.    Upon information and belief, Defendant knew of these existing and/or prospective economic relationships and of the resulting actual or potential benefits to the Plaintiff, including actual or potential increases in Plaintiff's income.

78.    Defendant's use of Plaintiff's Netbula/PowerRPC Marks as metatags and Defendant's purchase of Plaintiff's Marks Netbula/PowerRPC as keywords, interfere with Plaintiff's prospective economic relationships.

79.    Plaintiff has been and will continue to be damaged by Defendant's illegal uses of Plaintiff's Netbula/PowerRPC Marks to interfere with Plaintiff's economic advantage. Defendant has interfered with, and unless enjoined therefrom by this court, will continue to interfere with Plaintiff's existing and prospective relationships with its actual and prospective customers and by unfair and unlawful means divert the benefit of such use and relationships to the economic advantage of Defendant.

WHEREFORE, Plaintiff prays for relief as follows:

1.    Defendant, its officers, agents, servants, employees, Internet webmasters, attorneys, parents, distributors, subsidiaries and related companies and all persons acting for, with, by, through or under it, or them, and its Internet service providers with notice of the court's Order by personal service, electronic mail, or otherwise, and each of them, be temporarily, preliminarily and thereafter permanently enjoined and restrained from:

(a)    using in any manner the Netbula and PowerRPC Marks of Plaintiff, or any other term or terms likely to cause confusion therewith, within its Internet web pages, directory, or other such computer code, as the name of its Web site service, or within buried

1   code words or meta tags, on its home page, product page or any other Web page, or in

2   connection with the retrieval of data or information by Internet search engines, or on any

3   goods or services, or in connection with the promotion of its goods, services, or Web site or

4   services, so long as such goods or services do not emanate from or originate with Plaintiff;

5        (b)   using in any manner the Netbula and PowerRPC Marks in connection with

6   its Internet web pages, or its goods or services, in such a manner that is likely to create the

7   erroneous belief that said web pages, goods or services are authorized by, sponsored by,

8   licensed by or are in some way associated or connected with Plaintiff;

9        (c)   disseminating, using or distributing any Web site pages, advertising or

10  Internet code words, keywords, or titles, or any other promotional materials whose

11  appearance so resembles Plaintiff's trademarks, trade name or intellectual property, as to

12  create a likelihood of confusion, mistake or deception;

13       (d)   otherwise engaging in any other acts or conduct which would cause

14  consumers to erroneously believe that Defendant's web pages, goods or services are

15  somehow sponsored by, authorized by, licensed by, or in any other way associated with

16  Plaintiff.

17  2.   Defendant, its officers, agents, servants, employees, Internet webmasters,

18  attorneys, parents, distributors, subsidiaries and related companies, and all persons acting

19  for, with, by, through or under it, or them, and its Internet service providers, with notice of

20  the court's Order by personal service, electronic mail, or otherwise, and each of them, be

21  temporarily, preliminarily and thereafter permanently enjoined and restrained from using the

22  Netbula/PowerRPC Marks and from otherwise diluting the distinctive quality of the

23  Netbula/PowerRPC Marks.

24  3.   Defendant be directed to delete from its computer files, Internet web pages,

25  menus, hard drives, servers, diskettes and backups, or keyword buys or request from any

26  search engines, the name or marks Netbula and PowerRPC, and any copy, simulation,

27  variation or colorable imitations thereof, and any use of Netbula and PowerRPC or any other

28  false references to Plaintiff or Plaintiff's products or trademarks or trade name of Plaintiff.

HOWARD
RICE
NEMEROVSKI
CANADY
FALK
& RABKIN
A Professional Corporation

1    4.    Defendant be required to delete or deliver up to Plaintiff to be held for

2    destruction, at the conclusion of this action, any and all computer software, Internet server or

3    computer memory, diskettes or the like, packaging, labels, sales material, press releases,

4    promotional material, advertising material, stationary, plates, and other materials bearing

5    Netbula/PowerRPC Marks or any copy, simulation, variation or colorable imitation of the

6    Netbula and PowerRPC names.

7    5.    Defendant immediately cease using, in hidden code, metatags or as keywords on

8    the Internet or otherwise, the Netbula/PowerRPC Marks, and that Defendant take whatever

9    steps and acts as may be necessary for the purpose of deleting the hidden code or metatags

10    from its Internet web pages or from Internet search engines.

11    6.    Within 24 hours of entry of an Order of the court, Defendant delete all references

12    used in any manner in visible or hidden code or text web pages, metatags, keywords or

13    introductory or other web site material, all use of the words Netbula and PowerRPC.

14    7.    That Defendant be ordered to notify in writing and direct to all publishers of

15    directories or lists, including all Internet search engines, in which its use of the Netbula and

16    PowerRPC words or name appears, in relationship to Defendant, or was ordered by

17    Defendant, to delete all references to these names from its public or private databases, search

18    engine directories, directory assistance and from all future directories in which said words or

19    name is to appear, and to delete all forwarding or "cache memory" or storage mechanisms

20    referencing such name, and that Defendant shall notify its customers, subscribers and

21    correspondents who have done business or communicated with it, during the period that it

22    has used the name or mark Netbula and PowerRPC on its Internet Web site or in its metatags

23    or hidden code, or as keywords in search engines, that it does not do business under these

24    names.

25    8.    Defendant shall immediately notify in writing and direct all publications or

26    search engines in which any advertisements or other references to its business under the

27    mark or web pages, where the Netbula and/or PowerRPC mark and name is scheduled to

28    appear, to cancel all advertisements and references using the marks and names.

COMPLAINT FOR TRADEMARK INFRINGEMENT, UNFAIR COMPETITION AND FALSE ADVERTISING

9.    Defendant shall file with the court and serve upon Plaintiff's counsel, within thirty (30) days after entry of Judgment, a report in writing under oath setting forth in detail the manner and form in which it has complied with the requirements of the Injunction and Order of the court.

10.    Defendant be required to account for and pay over to Plaintiff all damages sustained by Plaintiff, the amount of which cannot be calculated at this time.

11.    Defendant be required to account for and pay over to Plaintiff all profits realized by Defendant by reason of its unlawful acts alleged herein, and that such amounts be trebled, as provided by law.

12.    Defendant be required to pay Plaintiff punitive damages as may be permitted by law or in the discretion of the court.

13.    Defendant be required to post any Order of the court on its Internet World Wide Web sites, and give notice thereof to its correspondents, members and subscribers.

14.    Plaintiff have such other and further relief as the court may deem appropriate to prevent the public from deriving the erroneous impression that any goods or services provided by or promoted by Defendant are authorized by Plaintiff or related in any way to Plaintiff, its products or services, or the Netbula and PowerRPC Marks.

DATED: May 12, 2002.

> NEIL A. SMITH
> JIN H. KIM
> HOWARD, RICE, NEMEROVSKI, CANADY,
>     FALK & RABKIN
> A Professional Corporation
>
> By: _____
>           NEIL A. SMITH
>
> Attorneys for Plaintiff NETBULA, LLC.

HOWARD
RICE
NEMEROVSKI
CANADY
FALK
& RABKIN
A Professional Corporation

www.onc-rpc-xdr[I]

```
<html>
<head>

            <title>RPC XDR for Windows, Java, C++, Delphi&trade;</title>
            <META name="Keywords" CONTENT="rpc, RPC, xdr, XDR, ONC, RPC/XDR,
XML, Noblenet, Netbula, PowerRPC, JavaRPC, JRPC, DCE, DCOM, IDL, Client, Server,
Unix, Linux, Solaris">
            <META name="Description" content="Port your rpc legacy applications
to windows with Distinct ONC RPC for Java, Delphi, C and C++. Download FREE TRIAL">


        <meta http-equiv="Content-Type" content="text/html; charset=windows-1252">


        <script>asp_pvisited="1";</script>
        <script src=/aspinclude/ie4.js></script>

        <link rel="stylesheet" href="/distinct.css">


</head>
<body bgcolor="#FFFFFF" text="#000000" link="#00529E" vlink="#000088"
alink="#00529E" leftmargin="0" topmargin="0" marginwidth="0" marginheight="0">


        <table ID="totop" CLASS="floatnav" width="100">
        <tr><td>
            <a HREF="#" onmouseover="imenushow(event);"
onmouseout="starthide()">Instant menu</a>
        </td></tr>
        </table>

<table cellpadding="0" cellspacing="0" border="0" width="100%">
<tr>
<td rowspan="3" height="148" width="165"><a
href="http://www.distinct.com/index.asp"><img width="165" src="/images/rpc.gif"
border="0" alt="onc"></a></td>
            <td background="/images/shadow90.gif"  height="90"><h1 align="center">RPC /
XDR Toolkits</h1></td>
            <td height="90"><a href="http://www.askcody.com/support/newsletter.asp"><img
src="/images/rpc-toolkit.gif" border="0" WIDTH="144" HEIGHT="90" alt="xdr"></a></td>
</tr>
<tr>
            <td height="21" align="center" bgcolor="#9CCFFF">
<script>
tmi1=new Array();
tmi2=new Array();
for(var i=0;i<6;i++)
{
        tmi1[i]=new Image();
        tmi1[i].src="/images/menu"+(i+1)+".gif";
        tmi2[i]=new Image();
        tmi2[i].src="/images/menu"+(i+1)+"_over.gif";
}
function tmoverout(i,o)
{
        s="document.tmi"+i+".src=tmi"+o+"["+(i-1)+"].src";
        eval(s);
}
</script>
<a href="http://www.distinct.com/products/index.asp"
onclick="this.href+=(this.href.indexOf('?')&gt;0)?'&amp;js=on':'?js=on'"><img
border="0" name="tmi1" src="/images/menu1_over.gif"></a><a
href="http://www.distinct.com/downloads/freetrials/index.asp"
onclick="this.href+=(this.href.indexOf('?')&gt;0)?'&amp;js=on':'?js=on'"
```

Page 1

# EXHIBIT 2

ORIGINAL

1   JENNIFER LEE TAYLOR (BAR NO. 161368)
    JOHN KELLEY (BAR NO. 194073)
2   MORRISON & FOERSTER LLP
    425 Market Street
3   San Francisco, California 94105-2482
    Telephone: (415) 268-7000
4   Facsimile: (415) 268-7522

5   Attorneys for Defendant
    DISTINCT CORPORATION

6

7

**FILED**

APR 2 9 2002

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

8                   UNITED STATES DISTRICT COURT

9                  NORTHERN DISTRICT OF CALIFORNIA

10                     SAN FRANCISCO DIVISION

11

12   NETBULA, LLC., a California limited liability       No.        C 02-1253 JL
     company,
13
                        Plaintiff,              **ANSWER OF DEFENDANT**
14                                              **DISTINCT CORPORATION TO**
         v.                                     **COMPLAINT FOR TRADEMARK**
15                                              **INFRINGEMENT; UNFAIR**
     DISTINCT CORPORATION, a California          **COMPETITION; TRADE NAME**
16   corporation,                               **INFRINGEMENT; FALSE**
                                                **ADVERTISING ON THE INTERNET;**
17                      Defendant.              **AND INTENTIONAL**
                                                **INTERFERENCE WITH**
18                                              **PROSPECTIVE ECONOMIC**
                                                **ADVANTAGE**
19

20

21

22

23

24

25

26

27

28

ANSWER OF DEFENDANT DISTINCT CORPORATION
CASE NO. C02-1253 JL

1      Defendant Distinct Corporation answers the Complaint of Plaintiff Netbula, LLC and alleges

2   as follows:

3                                    **PARTIES**

4      1.   Defendant is without knowledge or information sufficient to form a belief as to the truth

5   of the allegations in Paragraph 1, and on that basis denies those allegations.

6      2.   Defendant admits that it is incorporated in California, that its principal place of business

7   is at 3315 Almaden Expressway, San Jose, California, and that it does business within this judicial

8   district.

9                                   **JURISDICTION**

10     3.   Paragraph 3 contains conclusions of law to which no response is required. To the extent

11  a response is required, Defendant denies the allegations contained in Paragraph 3, except admits that

12  the Complaint purports to state causes of action for trademark infringement under the Lanham Act,

13  unfair competition under California law, trade name infringement under California law, false

14  advertising on the Internet under California law, and intentional interference with prospective

15  economic advantage.

16     4.   Defendant admits that its principal place of business is located within this judicial district

17  and that it does business within this judicial district. The balance of the allegations contained in

18  Paragraph 4 are conclusions of law to which no response is required. To the extent a response is

19  required, Defendant denies the balance of the allegations contained in Paragraph 4.

20                          **INTRADISTRICT ASSIGNMENT**

21     5.   Paragraph 5 contains conclusions of law to which no response is required. To the extent

22  a response is required, Defendant denies the allegations contained in Paragraph 5.

23                                  **BACKGROUND**

24     6.   Defendant is without knowledge or information sufficient to form a belief as to the truth

25  of the allegations contained in Paragraph 6, and on that basis denies those allegations.

26     7.   Defendant is without knowledge or information sufficient to form a belief as to the truth

27  of the allegations contained in Paragraph 7, and on that basis denies those allegations.

28                                        1

ANSWER OF DEFENDANT DISTINCT CORPORATION
CASE NO. C02-1253 JL

1        8.   Defendant is without knowledge or information sufficient to form a belief as to the truth

2  of the allegations contained in Paragraph 8, and on that basis denies those allegations.

3        9.   Defendant admits that it provides computer software for developing network and Internet

4  applications and that it offers for licensing a program called Distinct RPC based on Sun's Open

5  Network Computing RPC standards.  Defendant denies the balance of the allegations contained in

6  Paragraph 9.

7       10.   Defendant is without knowledge or information sufficient to form a belief as to the truth

8  of the allegations contained in Paragraph 10, and on that basis denies those allegations.

9       11.   Defendant is without knowledge or information sufficient to form a belief as to the truth

10  of the allegations contained in Paragraph 11, and on that basis denies those allegations.

11       12.   Defendant is without knowledge or information sufficient to form a belief as to the truth

12  of the allegations contained in Paragraph 12, and on that basis denies those allegations.

13       13.   Defendant is without knowledge or information sufficient to form a belief as to the truth

14  of the allegations contained in Paragraph 13, and on that basis denies those allegations.

15       14.   Defendant is without knowledge or information sufficient to form a belief as to the truth

16  of the allegations contained in Paragraph 14, and on that basis denies those allegations.

17                **BACKGROUND FACTS REGARDING THE INTERNET**

18       15.   Defendant admits that the Internet is used by hundreds of millions of individuals,

19  corporations, organizations, and educational institutions worldwide.  Defendant is without knowledge

20  or information sufficient to form a belief as to the truth of the remainder of the allegations contained

21  in Paragraph 15, and on that basis denies those allegations.

22       16.   Defendant admits that users of the Internet can communicate with each other via

23  electronic mail and that they have access to various types of data and information.  Defendant is

24  without knowledge or information sufficient to form a belief as to the truth of the remainder of the

25  allegations contained in Paragraph 16, and on that basis denies those allegations.

26       17.   Defendant admits that a web site is a collection of electronic documents on a host or

27  server computer accessible to others via the Internet.  Defendant further admits that web sites may

28                          2

1   include text, graphics, sound and/or video and that individual screens on a web site are referred to as

2   web pages. Defendant is without knowledge or information sufficient to form a belief as to the truth

3   of the remainder of the allegations contained in Paragraph 17, and on that basis denies those

4   allegations.

5       18.   Defendant admits that millions of web pages connected to the Internet have become

6   accessible on the Internet and that a need has developed for a way to locate desired material on web

7   pages on the Internet. Defendant is without knowledge or information sufficient to form a belief as to

8   the truth of the remainder of the allegations contained in Paragraph 18, and on that basis denies those

9   allegations.

10       19.   Defendant admits that search engines are used to search the Internet and that examples

11   of search engines are Alta Vista, LookSmart and Google. Defendant further admits that users looking

12   for information will access one of the search engines and input desired search terms and that the

13   search engine will display the results in the form of links to web sites that meet the search criteria.

14   Defendant is without knowledge or information sufficient to form a belief as to the truth of the

15   remainder of the allegations contained in Paragraph 19, and on that basis denies those allegations.

16       20.   Defendant admits that web sites are built and programmed to display content such as

17   text and graphics using programming language such as hypertext markup language (HTML) and that

18   there is a meta field in each web site. Defendant further admits that when a search engine executes a

19   search, it scans the visible text of the web site, the HTML code, and the meta field. Defendant is

20   without knowledge or information sufficient to form a belief as to the truth of the remainder of the

21   allegations contained in Paragraph 20, and on that basis denies those allegations.

22       21.   Defendant is without knowledge or information sufficient to form a belief as to the truth

23   of the allegations contained in Paragraph 21, and on that basis denies those allegations.

24       22.   Defendant admits that in connection with a planned comparative advertising section of

25   its web site, it listed a number of terms in its meta field, including Netbula and PowerRPC, to draw

26   Internet users to the web site so that they could view the planned comparative advertising section.

27   Defendant further admits that after it decided not to proceed with the comparative advertising section

28                                  3

1    of the web site, it neglected to remove the terms Netbula and PowerRPC from its meta field until it

2    was served with the complaint in this action. Defendant further admits that it would have removed

3    the terms Netbula and PowerRPC from its meta field if it had been contacted by Plaintiff prior to the

4    filing of this lawsuit. Defendant is without knowledge or information sufficient to form a belief as to

5    the truth of the remainder of the allegations contained in Paragraph 22, and on that basis denies those

6    allegations.

7        23.    Defendant admits that Google provides an AdWords Advertising Program whereby

8    advertisers can sign up to have their advertisements displayed when Internet users conduct searches

9    for particular terms. Defendant is without knowledge or information sufficient to form a belief as to

10    the truth of the remainder of the allegations contained in Paragraph 23, and on that basis denies those

11    allegations.

12        24.    Defendant admits that Google's AdWords Advertising Program is described on the

13    Google web site at http://adwords.google.com. Defendant is without knowledge or information

14    sufficient to form a belief as to the truth of the remainder of the allegations contained in Paragraph

15    24, and on that basis denies those allegations.

16        25.    Defendant admits that for several months in 2001 it arranged through Google's

17    AdWords Advertising Program for one of its advertisements to be displayed when Internet users

18    conducted searches with the terms Netbula and Power RPC. Defendant further admits that it ceased

19    use of Netbula and PowerRPC as key words for advertisements in November 2001, months prior to

20    the filing date of this lawsuit and without receiving any request or notice from Plaintiff. Defendant is

21    without knowledge or information sufficient to form a belief as to the truth of the remainder of the

22    allegations contained in Paragraph 25, and on that basis denies those allegations.

23        26.    Defendant denies the allegations contained in Paragraph 26.

24        27.    Defendant denies the allegations contained in Paragraph 27.

25        28.    Defendant denies the allegations contained in Paragraph 28.

26        29.    Defendant denies the allegations contained in Paragraph 29.

27        30.    Defendant denies the allegations contained in Paragraph 30.

28

4

ANSWER OF DEFENDANT DISTINCT CORPORATION
CASE NO. C02-1253 JL

1    31.    Defendant denies that it learned of Plaintiff's concerns regarding its use of Google's

2    AdWords Advertising Program or its use of Netbula and PowerRPC in its meta field prior to the

3    filing of this lawsuit. Defendant further denies that Plaintiff was forced to file this lawsuit; Plaintiff

4    chose to sue Defendant without giving any notice to Defendant of its concerns.

5                                    **COUNT I**

6                    **(Violation of Section 43(a) of The Lanham Act)**

7    32.    Defendant incorporates by reference its responses of paragraphs 1 through 31 of this

8    Answer.

9    33.    Paragraph 33 contains conclusions of law to which no response is required.

10    34.    Defendant denies the allegations contained in Paragraph 34.

11    35.    Defendant denies the allegations contained in Paragraph 35.

12    36.    Defendant denies the allegations contained in Paragraph 36.

13    37.    Defendant denies the allegations contained in Paragraph 37.

14    38.    Defendant denies the allegations contained in Paragraph 38.

15    39.    Defendant denies the allegations contained in Paragraph 39.

16    40.    Defendant denies the allegations contained in Paragraph 40.

17    41.    Defendant denies the allegations contained in Paragraph 41.

18    42.    Defendant denies the allegations contained in Paragraph 42.

19    43.    Defendant denies the allegations contained in Paragraph 43.

20    44.    Defendant admits that Exhibit A to the complaint is a copy of a portion of the meta field

21    portion of Defendant's web site. Defendant is without knowledge or information sufficient to form a

22    belief as to the truth of the remainder of the allegations contained in Paragraph 44, and on that basis

23    denies those allegations.

24    45.    Defendant denies the allegations contained in Paragraph 45.

25    46.    Defendant denies the allegations contained in Paragraph 46.

26    47.    Defendant denies the allegations contained in Paragraph 47.

27    48.    Defendant denies the allegations contained in Paragraph 48.

28                                        5

ANSWER OF DEFENDANT DISTINCT CORPORATION
CASE NO. C02-1253 JL

1                                    **COUNT IV**

2                    **(False Advertising on the Internet Under California Law)**

3        68.   Defendant incorporates by reference its responses of paragraphs 1 through 67 of this

4   Answer.

5        69.   Paragraph 69 contains conclusions of law to which no response is required.

6        70.   Defendant denies the allegations contained in Paragraph 70.

7        71.   Defendant denies the allegations contained in Paragraph 71.

8        72.   Defendant denies the allegations contained in Paragraph 72.

9        73.   Defendant denies the allegations contained in Paragraph 73.

10       74.   Defendant denies the allegations contained in Paragraph 74.

11                                    **COUNT V**

12                **(Intentional Interference with Prospective Economic Advantage)**

13       75.   Defendant incorporates by reference its responses of paragraphs 1 through 74 of this

14   Answer.

15       76.   Defendant denies the allegations contained in Paragraph 76.

16       77.   Defendant denies the allegations contained in Paragraph 77.

17       78.   Defendant denies the allegations contained in Paragraph 78.

18       79.   Defendant denies the allegations contained in Paragraph 79.

19                                **AFFIRMATIVE DEFENSES**

20        Without conceding that any of the following must be pled by way of affirmative defense or

21   that Plaintiff does not have the burden of proving the issue as part of its affirmative case, Defendant

22   pleads the following as affirmative defenses:

23                            **FIRST AFFIRMATIVE DEFENSE**

24        Plaintiff is not the owner of a valid and protectable mark.

25                           **SECOND AFFIRMATIVE DEFENSE**

26        Defendant has not knowingly or intentionally waived any applicable affirmative defenses and

27   reserves the right to assert and rely on such other applicable affirmative defenses as may become

28                                        7

ANSWER OF DEFENDANT DISTINCT CORPORATION
CASE NO. C02-1253 JL

1    available or apparent during discovery proceedings. Defendant further reserves the right to amend its

2    answer and/or affirmative defenses accordingly and/or to delete affirmative defenses that it

3    determines are not applicable during the course of subsequent discovery.

4                          **THIRD AFFIRMATIVE DEFENSE**

5        Defendant's use of the "Netbula" and "PowerRPC" names constitutes fair use.

6                          **FOURTH AFFIRMATIVE DEFENSE**

7        To the extent that the Court determines Plaintiff's "Netbula" and "PowerRPC" designations to

8    be valid and protectable, there is no likelihood of confusion, mistake or deception because, among

9    other things, Plaintiff's Power RPC mark is weak as it has coexisted and continues to coexist with

10    names and marks used by third parties which contain the term RPC, and the respective services

11    offered by Plaintiff and Defendant under each respective designations are substantially distinct.

12                          **FIFTH AFFIRMATIVE DEFENSE**

13        To the extent that the Court determines Plaintiff's "Netbula" and "PowerRPC" designations to

14    be valid and protectable, there is no likelihood of confusion, mistake or deception as evidenced by,

15    among other things, the lack of actual confusion as to the source of services offered.

16                          **SIXTH AFFIRMATIVE DEFENSE**

17        The Complaint, and each of its purported causes of action, fails to state facts sufficient to

18    constitute a cause of action against Defendant.

19                          **SEVENTH AFFIRMATIVE DEFENSE**

20        Plaintiff's Complaint, and each of the purported causes of action asserted against Defendant,

21    is barred by Plaintiff's failure to mitigate.

22                          **EIGHTH AFFIRMATIVE DEFENSE**

23        While denying generally and specifically each and every allegation that Plaintiff has suffered

24    any loss or damage, Defendant is informed and believes, and on that ground alleges, that each and

25    every purported claim for equitable relief asserted in Plaintiff's claim is barred because Plaintiff has

26    adequate remedies at law.

27

28                                    8

1    **NINTH AFFIRMATIVE DEFENSE**

2    While denying generally and specifically each and every allegation that Plaintiff has suffered

3    any loss or damage, Defendant is informed and believes, and on that ground alleges, that Plaintiff's

4    Complaint, and each of the purported causes of action asserted against Defendant, is barred, in whole

5    or in part, because Plaintiff has not suffered any compensable damage.

6    **PRAYER FOR RELIEF**

7    WHEREFORE, Defendant prays as follows:

8    1.    That the Court declare that Plaintiff is not the owner of a valid and protectable trademark

9    in the designations "Netbula" or "PowerRPC";

10    2.    That the Court declare that Defendant's use of the "Netbula" and "PowerRPC" names

11    constitutes fair use;

12    3.    To the extent that the Court determines Plaintiff's "Netbula" and "PowerRPC"

13    designations to be valid and protectable marks, that the Court declare that there is no likelihood of

14    confusion, mistake or deception;

15    4.    That Plaintiff take nothing by reason of the Complaint, and that judgment be entered for

16    Defendant;

17    5.    That Defendant be awarded its costs of the suit herein; and

18    6.    For any other such further relief as this Court deems proper.

19

20    Dated: April 29, 2002        JENNIFER LEE TAYLOR
                                  JOHN KELLEY
21                                MORRISON & FOERSTER LLP

22

23                                By: _____

24                                    Jennifer Lee Taylor

25                                    Attorneys for Defendant
                                      DISTINCT CORPORATION

26

27

28                                            9

ANSWER OF DEFENDANT DISTINCT CORPORATION
CASE NO. C02-1253 JL

1          **PROOF OF SERVICE BY MAIL**

2

3          I am employed with the law firm of Morrison & Foerster LLP, whose address is 425 Market
Street, San Francisco, California, 94105; I am not a party to the within cause; I am over the age of
4    eighteen years and I am readily familiar with Morrison & Foerster's practice for collection and
processing of correspondence for mailing with the United States Postal Service and know that in the
5    ordinary course of Morrison & Foerster's business practice the document(s) described below will be
deposited with the United States Postal Service on the same date that it is placed at Morrison &
6    Foerster with postage thereon fully prepaid for collection and mailing.

7          I further declare that on the date hereof I served a copy of:

8          **ANSWER OF DEFENDANT DISTINCT CORPORATION TO COMPLAINT FOR
TRADEMARK INFRINGEMENT; UNFAIR COMPETITION; TRADE NAME
9          INFRINGEMENT; FALSE ADVERTISING ON THE INTERNET; AND
INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC
10         ADVANTAGE**

11   on the following by placing a true copy thereof enclosed in a sealed envelope addressed as follows
for collection and mailing at Morrison & Foerster LLP, 425 Market Street, San Francisco,
12   California, 94105:

13   **Neil A. Smith, Esq.**
     **Howard, Rice, Nemerovski, Canady,**
14       **Falk & Rabkin**
15   **Three Embarcadero Center, 7th Floor**
     **San Francisco, CA 95111-4065**

16

17         I declare under penalty of perjury under the laws of the State of California that the above is
true and correct.

18

19         Executed at San Francisco, California, this 29th day of April, 2002.

20   _____          _____

21          Lucia M. Sario                       (signature)
                (typed)

22

23

24

25

26

27

28

# EXHIBIT 3

## Albert Sieber

| | |
|---|---|
| **From:** | Laurence Pulgram |
| **Sent:** | Tuesday, October 16, 2007 3:27 PM |
| **To:** | 'Vonnah Brillet' |
| **Cc:** | Jedediah Wakefield |
| **Subject:** | FW: Activity in Case 3:06-cv-00711-MJJ Netbula, LLC v. Bindview Development Corporation et al Certificate of Service |

Ms. Brillet,

We received notice from the court of multiple filings today, including a certificate of service, by Mr. Yue. As he has generally been a represented party in this matter, we are communicating with you as his counsel in furtherance of our ethical obligations. We have not been served with these papers, and are concerned that we are not receiving these documents. If Mr. Yue is now attempting to represent himself as an individual in his effort to intervene, unrepresented by counsel, then we may need to speak with him directly. Please provide your instructions in this regard.

In all events, we need to be served with the documents that were represented to have been served on us.

Sincerely,
Laurence Pulgram

**From:** ECF-CAND@cand.uscourts.gov [mailto:ECF-CAND@cand.uscourts.gov]
**Sent:** Tuesday, October 16, 2007 3:11 PM
**To:** efiling@cand.uscourts.gov
**Subject:** Activity in Case 3:06-cv-00711-MJJ Netbula, LLC v. Bindview Development Corporation et al Certificate of Service

**This is an automatic e-mail message generated by the CM/ECF system. Please DO NOT RESPOND to this e-mail because the mail box is unattended.**
**\*\*\*NOTE TO PUBLIC ACCESS USERS\*\*\* You may view the filed documents once without charge. To avoid later charges, download a copy of each document during this first viewing.**

<div align="center">

U.S. District Court
Northern District of California
**Notice of Electronic Filing or Other Case Activity**

</div>

NOTE: Please read this entire notice before calling the Help Desk. If you have questions, please email the Help Desk by replying to this message; include your question or comment along with the original text.

Please note that these Notices are sent for all cases in the system when any case activity occurs, regardless of whether the case is designated for e-filing or not, or whether the activity is the filing of an electronic document or not.

If there are **two** hyperlinks below, the first will lead to the docket and the second will lead to an e-filed document.
*If there is no second hyperlink, there is no electronic document available .*

See the FAQ posting 'I have a Notice of Electronic Filing that was e-mailed to me but there's no hyperlink...' on the ECF home page at https://ecf.cand.uscourts.gov for more information.

The following transaction was received from entered on 10/16/2007 3:10 PM and filed on 10/15/2007

**Case Name:**      Netbula, LLC v. Bindview Development Corporation et al
**Case Number:**    3:06-cv-711
**Filer:**          Dongxiao Yue
**WARNING: CASE CLOSED on 09/24/2007**
**Document Number:** 311(No document attached)

**Docket Text:**
CERTIFICATE OF SERVICE by Dongxiao Yue re [308] Declaration in Support, [309] Exhibits, [307] Memorandum in Opposition, [307] MOTION to Intervene MOTION for Protective Order MOTION to Unseal Document, [310] Exhibits (slh, COURT STAFF) (Filed on 10/15/2007)

**3:06-cv-711 Notice has been electronically mailed to:**

Vonnah M Brillet    brilletlaw@yahoo.com

Gary Scott Fergus    gfergus@ferguslegal.com

David M. Lacy Kusters    dlacykusters@fenwick.com

Liwen Arius Mah    lmah@fenwick.com, docketcalendarrequests@fenwick.com

Mary Elizabeth Milionis    MMilionis@Fenwick.com, NCarroll@Fenwick.com

Laurence F. Pulgram    lpulgram@fenwick.com, rlopez@fenwick.com

Albert L. Sieber    asieber@fenwick.com, irubel@fenwick.com

Jedediah Wakefield    jwakefield@fenwick.com, irubel@fenwick.com, jphan@fenwick.com, kragab@fenwick.com, rjones@fenwick.com, rtauben@fenwick.com

**3:06-cv-711 Notice has been delivered by other means to:**

Dongxiao Yue
2777 Alvarado Street
Suite C
San Leandro, CA 94577

# EXHIBIT 4

**Jedediah Wakefield**

| | |
|---|---|
| **From:** | ydx@netbula.com |
| **Sent:** | Wednesday, October 17, 2007 12:01 AM |
| **To:** | Laurence Pulgram; Jedediah Wakefield; Albert Sieber; Liwen Mah |
| **Cc:** | yuedongxiao@gmail.com |
| **Subject:** | PDF files for Yue's motion to enforce protective order |

**Attachments:** c06-0711-mjj-yue-motion-to-enforce-filed.pdf; c06-0711-mjj-yue-decl-support-motion-to-enforce.pdf; c06-0711-mjj-yue-motion-to-enforce-EXHIBIT-a-f–print.pdf; c06-0711-mjj-yue-motion-to-enforce-EXHIBIT GJ-print.pdf

   

c06-0711-mjj-yuc06-0711-mjj-yuc06-0711-mjj-yuc06-0711-mjj-yu
e-motion-to-enf..e-decl-support-..e-motion-to-enf..e-motion-to-enf..

                                                    Dear Mr. Pulgram, Mr. Wakefield, Mr.
Sieber and Mr. Mah,

You may have received notices from ECF that I filed a motion yesterday to intervene and to
enforce the protective order in the BindView matter, and to oppose SUN, EMC and DARDEN's
motion to modify the same.

A copy of the papers was mailed to you via priority mail on October 15, 2007. I am
attaching the PDFs, as I realized that since my brief was filed on paper, it takes some
time for it to show up online.

Kind regards,

Don Yue


--------------------

                                                                        ♪

                                            1

# EXHIBIT 5

**Jedediah Wakefield**

| | |
|---|---|
| **From:** | ydx@netbula.com |
| **Sent:** | Friday, October 26, 2007 11:56 AM |
| **To:** | Laurence Pulgram |
| **Cc:** | ydx@netbula.com; brilletlaw@yahoo.com; Jedediah Wakefield; Albert Sieber; Liwen Mah; yuedongxiao@gmail.com; davideiseman@quinnemanuel.com |
| **Subject:** | Netbula's motion for substitution of party as to the copyright claim |

Dear Mr. Pulgram, Mr. Wakefield, Mr. Mah and Mr. Sieber,

I am writing to seek a stipulation regarding Netbula's substitution of party as to the copyright claim filed in the Nebula v. StorageTek case. As the copyright owner of the relevant software and related claims, I am about to assert additional claims against StorageTek. This can be done via an amended complaint in the C06-07391-MJJ case, or I can file a new separate infringement action and move to relate/consolidate the new action to the current action.

For judicial economy, I think it's far efficient for you to stipulate to the substitution of party by replacing Dongxiao Yue as the copyright plaintiff in the C06-07391-MJJ case.

If you do not stipulate to the substitution, I will commence the new action next week.

Kind regards,

Don Yue


-------------------

# EXHIBIT 6

**Jedediah Wakefield**

| | |
|---|---|
| **From:** | ydx@netbula.com |
| **Sent:** | Thursday, October 25, 2007 2:48 PM |
| **To:** | Laurence Pulgram |
| **Cc:** | ydx@netbula.com; brilletlaw@yahoo.com; Jedediah Wakefield; Albert Sieber; Liwen Mah; yuedongxiao@gmail.com; davideiseman@quinnemanuel.com |
| **Subject:** | Re: Re: RE: PDF files for Dongxiao Yue's motion for injunctive relief |

Dear Mr. Pulgram,

I found it hard to believe that you were asking me to withdraw or delay a motion for injunctive relief which has already been scheduled by the court staff. That is simply not something I can do.

However, I do suggest SUN withdraw its untimely motion for summary judgment. I really don't see how defendants can argue around that untimeliness -- Mr. Melnick's declaration was quite material to SUN's motion , it is 25 pages. SUN filed it after a deadline SUN had known for many months.

Please let me know if SUN stipulate to withdraw its untimely motion for summary judgment motion. SUN's refusal to withdraw that motion may be my basis for a motion for sanctions.

Kind regards,

Don Yue




-----------------------
"Laurence Pulgram" <LPulgram@Fenwick.com>:
Mr. Yue,

So you are refusing the proposed stipulation?

Laurence Pulgram

Sent from my GoodLink synchronized handheld (www.good.com)

 -----Original Message-----
From:     ydx@netbula.com [mailto:ydx@netbula.com]
Sent: Thursday, October 25, 2007 02:13 PM Pacific Standard Time
To:    Laurence Pulgram
Cc:   ydx@netbula.com; brilletlaw@yahoo.com; Jedediah Wakefield; Albert Sieber; Liwen Mah;
yuedongxiao@gmail.com; davideiseman@quinnemanuel.com; brilletlaw@yahoo.com;
yuedongxiao@gmail.com
Subject:    Re: RE: PDF files for Dongxiao Yue's motion for injunctive relief

Dear Mr. Pulgram,

Whether my motion to intervene and for injunctive relief was proper is to be determined by the court. I certainly anticipated your oppositions.

As for the timeliness of my motion, I believe we should check against the local rules -- my motion was filed on Oct 22, 2007, 36 days before the hearing. Timeliness is not an issue here. Your objection seems to be one on the manner of service. You can certainly raise that in your opposition, if any.

I noticed that Mr. Melnick's declaration in support of SUN's summary judgment motion was

filed on October 24, 2007. This makes SUN's motion plainly untimely, and should be subject to Civil Local Rule 1-4. Judge Jenkins denied Netbula's motion for summary judgment motion for being untimely in the Netbula v. BindView case. I doubt the Judge will apply the rule differently to SUN.

There may be difference of opinion on various issues, I believe it would not be productive for us to argue such matters out of court.

Kind regards,

.

Don Yue

------------------------
"Laurence Pulgram" :
Mr. Yue,

Your e-mail below was received.

We continue to believe that your entire filing of the Motion to Intervene and for Preliminary Injunction was untimely.  When you do not efile (which results in immediate electronic service), you must serve in accordance with the rules, which requires additional days be added for any filing other than by hand delivery.  You did not comply. We received your entire filing only two days after the due date for hand service.

In any event, we believe that because you are not a party to the Netbula v. Storage Tek matter, because Netbula has not moved for a preliminary injunction, and because your motion is almost a year after the unsuccessful request for a TRO, it is not appropriate to require Defendants to respond to such a major request for substantive relief--for a preliminary injunction--until after the propriety of your participation in this action is first determined.  I would also note that, apart from your reliance on an asserted presumption of irreparable harm (which is not applicable here), you have provided no explanation of any injury that you would face from delaying the hearing on the PI motion until after your participation in this case has been determined.
Accordingly, we request that you stipulate with Defendants that your motion to intervene be heard on November 27 (notwithstanding improper service), but that the motion for preliminary injunction be scheduled to be briefed and heard only if you are then permitted to intervene or substitute.  Please advise by close of business today if you are agreeable to this procedure.

I would also note that, as you no doubt anticipated, we oppose your request to intervene and your request to substitute in as a party.  We also oppose Ms. Brillet's request to withdraw as counsel prior to determination of the long-scheduled summary judgment motion that is to
be heard on November 27 pursuant to the Court's scheduling order.   We
do not believe that it is appropriate for Netbula's rights to be pursued other than through counsel of record (as required by law), and we do not believe that a purported assignment of rights to you personally, a year into the litigation, changes those result. Ms. Brillet remains counsel of record, and her opposition to the summary judgment motion on behalf of Netbula is due in the ordinary course.

The foregoing is without waiver of any rights, including our rights to assert that the motion for a preliminary injunction is sanctionable.

Please advise whether or not you are agreeable to the stipulation proposed above for the orderly consideration of the issue of intervention first, and preliminary injunction only if you thereafter become a party.

Sincerely,

Laurence Pulgram
Fenwick & West LLP
555 California Street, 12th Fl.
San Francisco, CA 94104
Phone 415-875-2390
Fax 415-281-1350
lpulgram@fenwick.com

```
-----Original Message-----
From: ydx@netbula.com [mailto:ydx@netbula.com]
Sent: Thursday, October 25, 2007 11:46 AM
To: ydx@netbula.com
Cc: Laurence Pulgram; Jedediah Wakefield; Albert Sieber; Liwen Mah; yuedongxiao@gmail.com;
brilletlaw@yahoo.com; yuedongxiao@gmail.com
Subject: Re: PDF files for Dongxiao Yue's motion for injunctive relief
```

Dear Counsel,

I received an auto-response from Mr. Wakefield, indicating the email is working. No
further confirmation is necessary.

Kind regards,

Don Yue

------------------------
ydx@netbula.com:

Dear Mr. Pulgram, Mr. Wakefield, Mr. Mah and Mr. Sieber,

I just received a forwarded message from Ms. Brillet a few minutes ago in which Mr.
Pulgram allege that I did not serve you the papers I filed with the court on October 22,
2007.

As shown in the attached certificate of service, I mailed you the copies of the documents
on October 22, 2007 (via priority mail). Also on October 22, 2007, I emailed
MJJPDf@cand.uscourts.gov the PDF files for the documents I filed on that day and I
received acknowledgment of the receipt from the court stating the PDFs were "forwarded to
the appropriate chambers for processing." Since the case is a e-filing case, service
should be done via the ECF system. Additionally, October 22,
2007 was 36 days before the hearing date, I gave defendants more time than the required
35-day lead time.

I also noticed that defendants filed their summary judgment motion at mid-night of October
23, 2007. One of the documents was filed on October 24, 2007, which was 34 days before the
hearing date and was untimely. I reserve the right to strike that document as untimely and
strike all documents reference that untimely document.

Mr. Pulgram alleged that I did not serve him the documents on October 23, 2007 at the end
of Michael Abramovitz deposition. First, I have no obligation to serve defendants multiple
times (I don't have extra hard copies anyway). Second, I came to the deposition when it
was already finished -- quite unexpectedly, and the defendants were asking me to stipulate
to the use of certain documents marked as CONFIDENTIAL in my deposition -- with the court
reporter being held up and the time was about 30 minutes past lunch time. Defendants
provided no prior notice for their planned use of the documents -- which was questionable
by itself. I was totally unprepared for what defendants were trying to do, my attention
was primarily on defendants' last minute request to use of those documents for their
summary judgment motions to be filed that night.

After the stipulation on the documents was made and the parties concluded the deposition,
I immediately went back to check what those exhibits really were and to check Netbula's
TRO papers, which Mr.
Pulgram claimed to have included the 2004 agreement. When I came back out, Mr. Pulgram
already left.

I emailed all of you the papers for my motion to enforce protective order in the BindView
matter on October 16, 2007, but I received no response from any of you, making me wonder
whether the email communication channel was working. In any case, my contact information
is available on the court docket, you could have simply emailed me or called me.

As a courtesy, I am attaching the PDF documents with this email.

Please respond to confirm yourself receipt of this message. If I do not receive a
confirmation by 1:00 pm, I will telephone Mr. Wakefield just to verify if you received
this email.

3

Kind regards,

Don Yue
Intervenor in the Netbula v. StorageTek case

-------------------

Attachment: c06-07391-mjj-yue-motion-for-injunction-cert-of-svc.pdf
Content-type: application/pdf
Content-transfer-encoding: base64
Content-disposition: attachment;
filename="c06-07391-mjj-yue-motion-for-injunction-cert-of-svc.pdf"

Attachment: c06-07391-MJJ-Yue-motion-for-preliminary-injunction.pdf
Content-type: application/pdf
Content-transfer-encoding: base64
Content-disposition: attachment;
filename="c06-07391-MJJ-Yue-motion-for-preliminary-injunction.pdf"

Attachment: c06-07391-mjj-Yue-motion-for-preliminary-injunction-decl.pdf
Content-type: application/pdf
Content-transfer-encoding: base64
Content-disposition: attachment;
filename="c06-07391-mjj-Yue-motion-for-preliminary-injunction-decl.pdf"

Attachment:
c06-07391-MJJ-Yue-motion-for-preliminary-injunction-decl-ex-A-J.pdf
Content-type: application/pdf
Content-transfer-encoding: base64
Content-disposition: attachment;
filename="c06-07391-MJJ-Yue-motion-for-preliminary-injunction-decl-ex-A-J.pdf"

Attachment:
c06-07391-MJJ-Yue-motion-for-preliminary-injunction-decl-ex-K-S.pdf
Content-type: application/pdf
Content-transfer-encoding: base64
Content-disposition: attachment;
filename="c06-07391-MJJ-Yue-motion-for-preliminary-injunction-decl-ex-K-S.pdf"

Attachment: c06-07391-MJJ-Yue-motion-for-preliminary-injunction-PO.pdf
Content-type: application/pdf
Content-transfer-encoding: base64
Content-disposition: attachment;
filename="c06-07391-MJJ-Yue-motion-for-preliminary-injunction-PO.pdf"

-------------------
-------------------------------------------
IRS Circular 230 Disclosure:  To ensure compliance with requirements imposed by the IRS,
we inform you that any U.S. federal tax advice in this communication (including
attachments) is not intended or written by Fenwick & West LLP to be used, and cannot be
used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii)
promoting, marketing, or recommending to another party any transaction or matter addressed
herein.
-------------------------------------------
ATTENTION:
The information contained in this message may be legally privileged and confidential.  It
is intended to be read only by the individual or entity to whom it is addressed or by
their designee. If the reader of this message is not the intended recipient, you are on
notice that any distribution of this message, in any form, is strictly prohibited.

If you have received this message in error, please immediately notify the sender and/or
Fenwick & West LLP by telephone at (650) 988-8500 and delete or destroy any copy of this
message.

--------------------

--------------------

# EXHIBIT 7

**Jedediah Wakefield**

| | |
|---|---|
| **From:** | Laurence Pulgram |
| **Sent:** | Friday, October 26, 2007 11:27 AM |
| **To:** | brilletlaw@yahoo.com |
| **Cc:** | Jedediah Wakefield; 'David Eiseman' |
| **Subject:** | FW: SUN's motion for summary judgment |

Dear Ms. Brillet:

As you know, we have received the e-mail below from Mr. Yue.  It is not addressed to any matter as to which he is appearing as an individual--it is addressed to the pending motion for summary judgment against Netbula.

Mr. Yue is not a party to this lawsuit and Netbula is represented by counsel.  We are happy to discuss any concerns Netbula has with Netbula's counsel.  We will not engage in discussions with Mr. Yue about subjects that do not relate to his individual attempts to intervene.

As to the substantive points below, despite the integrated nature of the agreement Netbula is free to attempt to introduce extrinsic evidence that it contends is admissible and relevant to the issues presented in its Opposition.  Netbula is also free to make arguments concerning the drafter of the agreements, subject of course to the requirements of Rule 11.

We do wish to remind you and Netbula that Mr. Yue and Netbula entered into an agreement no later than October 26, 2005 that communications between Netbula and Sun would be confidential and inadmissible in any proceedings.  The communications identified below include such confidential and inadmissible materials.   We expect Netbula to abide by its agreement, and we request that you communicate this to Mr. Yue.

Sincerely,

Laurence Pulgram

-----Original Message-----
From: ydx@netbula.com [mailto:ydx@netbula.com]
Sent: Friday, October 26, 2007 10:47 AM
To: Laurence Pulgram
Cc: ydx@netbula.com; brilletlaw@yahoo.com; Jedediah Wakefield; Albert Sieber; Liwen Mah; yuedongxiao@gmail.com; davideiseman@quinnemanuel.com
Subject: Re: SUN's motion for summary judgment

Dear Mr. Wakefield, Mr. Pulgram, Mr. Mah and Mr. Sieber,

I did a brief review of your motion for summary judgment in the SUN case, not withstanding the fact that your motion is procedurally untimely, your motion CONCEALED key facts and admissible evidence pertinent to the infringement claim.

Regarding whether the 2000 Netbula-StorageTek agreement (2000 Agreement) and the 2004 Netbula-StorageTek agreement are for pre-paid licenses, you failed to inform the court about the admissions or prior inconsistent statements by StorageTek.



REDACTED

Lisa Rady, the Program Manager for LibAttach wrote in March 2004:

"As you can see, we have exceeded the 1,000 distributions that we had right to with Netbula…. I think it is obvious that engineering has not and did not monitor the distributions on this product."

In response, Mike Melnick wrote:

"The agreement is specific to platform (Win NT and 95/98 platforms) types of Netbula software (PowerRPC SDK). This concerns me greatly as we have already told them we are no longer shipping it with our product."

In June 2005, Holly Wagner wrote:

"The SAP query I ran this morning shows 2,386 models shipped. This number is low due to the fact that the query does not have the capability of pulling the client feature quantities that were released in November of last year."

In response, Mike Melnick wrote:

"The number that Holly has provided and thought it may be low causes quite a problem for you. We have only made 2 purchases for the rights to distribute a total of 2000 licenses."

The above is just a few examples of admissions by StorageTek.

As you know, StorageTek (Mike Melnick) drafted some key parts of the 2000 Agreement (the payment terms). The interpretation of the agreement will be construed against the drafter. It is thus important for you, as officers of the Court, to fully inform the court about such admissions and prior inconsistent statements so the Court can properly rely on your representations to make a ruling, that will become the law of the United States. You, as officers of the Court, are duty-bound to tell the whole truth to the Court.

As I indicated in my previous emails, I will move to strike Mike Melnick's declaration which was filed on October 24, 2007 (34 days before hearing date) as untimely, and move to strike any document filed by defendants referencing that declaration.

I suggest you write a letter to Judge Jenkins to inform the Court about your omission of key facts. Your refusal to do so may be served as evidence that you intentionally concealed the above and other facts from the Court.


Kind regards,

Don Yue


--------------------

# EXHIBIT 8

**Jedediah Wakefield**

| | |
|---|---|
| **From:** | ydx@netbula.com |
| **Sent:** | Saturday, October 27, 2007 9:18 AM |
| **To:** | Albert Sieber |
| **Cc:** | brilletlaw@yahoo.com; Jedediah Wakefield; Albert Sieber; Liwen Mah; yuedongxiao@gmail.com; davideiseman@quinnemanuel.com; ydx@netbula.com; brilletlaw@yahoo.com; Laurence Pulgram |
| **Subject:** | Re: Defendants' Administrative Motion |

Dear Mr. Sieber and Mr. Pulgram,

I believe SUN's administrative motion is improper. SUN's purported administrative motion was actually an opposition to my motion to intervene and opposition to Netbula's prior motion to substitute plaintiff. It was just disguised as a motion on "miscellaneous administrative matters."

I will file an opposition to the purported administrative motion.

On Friday, October 26, 2007, I emailed Mr. Pulgram about reaching a stipulation on the substitution of party (Dongxiao Yue to replace Netbula as to copyright claim), for the benefit of judicial economy. Mr. Pulgram responded, saying that he would confer with his client and get back to me. In view of your position demonstrated in your "administrative motion," I assume that no such stipulation can be reached. Accordingly, as I indicated in my Friday email, I shall file a separate action against STK/SUN next week, and possibly an application for TRO to go along with it.

I understand defendants' desire to prevent me --the copyright owner - from intervening. Netbula's counsel is withdrawing, another victory for Fenwick & West seems so close, yet so far. But, I should remind you, although you have an obligation to your clients, you have a higher duty to the Court. As officers of the Court, you must tell the whole truth, so the Court can rely on your representations and make rulings that will become the laws of the United States on fundamental intellectual property issues. So I renew my previous request that defense counsel address to the Court about SUN/STK's admissions and prior inconsistent statements, which were omitted in defendants' motion for summary judgment.

Kind regards,

Don Yue


------------------------
"Albert Sieber" <ASieber@Fenwick.com>:

Dr. Yue:

Please find attached
a motion for administrative relief filed in the Sun case.

Regards,
Albert


Albert L. Sieber |
Fenwick & West LLP
<?xml:namespace prefix = st1 ns =
"urn:schemas-microsoft-com:office:smarttags" />555 California Street, 12th Floor | San
Francisco, CA 94104
(415) 875-2414 | Fax: (415)
281-1350 | asieber@fenwick.com

------------------------------------------

IRS Circular 230 Disclosure: To ensure compliance with requirements imposed by the IRS, we inform you that any U.S. federal tax advice in this communication (including attachments) is not intended or written by Fenwick & West LLP to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing, or recommending to another party any transaction or matter addressed herein.

------------------------------------------

ATTENTION:
The information contained in this message may be legally privileged and confidential.  It is intended to be read only by the individual or entity to whom it is addressed or by their designee. If the reader of this message is not the intended recipient, you are on notice that any distribution of this message, in any form, is strictly prohibited.

If you have received this message in error, please immediately notify the sender and/or Fenwick & West LLP by telephone at (650) 988-8500 and delete or destroy any copy of this message.

Attachment:
Content-Type: text/plain;
       charset="us-ascii"
Content-Transfer-Encoding: quoted-printable

Attachment: Motion [FILED].pdfMotion [FILED].pdf
Content-Type: application/octet-stream;
       name="Motion [FILED].pdf"
Content-Transfer-Encoding: base64
Content-Description: Motion [FILED].pdf
Content-Disposition: attachment;
       filename="Motion [FILED].pdf"

Attachment: Sieber Decl. [FILED].pdfSieber Decl. [FILED].pdf
Content-Type: application/octet-stream;
       name="Sieber Decl. [FILED].pdf"
Content-Transfer-Encoding: base64
Content-Description: Sieber Decl. [FILED].pdf
Content-Disposition: attachment;
       filename="Sieber Decl. [FILED].pdf"

-------------------

# EXHIBIT 9

## Jedediah Wakefield

| | |
|---|---|
| **From:** | Laurence Pulgram |
| **Sent:** | Monday, October 29, 2007 4:35 PM |
| **To:** | 'ydx@netbula.com' |
| **Cc:** | brilletlaw@yahoo.com; Jedediah Wakefield; Albert Sieber; Liwen Mah; yuedongxiao@gmail.com; davideiseman@quinnemanuel.com |
| **Subject:** | RE: Netbula's motion for substitution of party as to the copyright claim |

Dear Mr. Yue,

I am responding to you individually, and copying Netbula's counsel, because I understand that you are threatening to file a new action in your individual capacity, in which you are, and intend to remain, unrepresented by counsel. If I am incorrect in these assumptions, I request that you and/or Ms. Brillet advise me.

As promised, this is my response to your request for a stipulation that you be allowed to join as a party plaintiff in the Netbula v. StorageTek action. Sun's position is as follows.

First, we do not believe that you are an appropriate plaintiff to enforce Netbula's copyrights. Our position in this regard will be fully spelled out in our filing on Tuesday opposing your request to be substituted as a plaintiff in the Sun action. (We have cited a couple of cases in the MAR filed on Friday, but that is just to advise the court of the issue, not to argue it in full). To the extent that you are not an appropriate plaintiff in the existing action by Netbula against Sun, you would be equally inappropriate in any new action that you may intend to file as Netbula's assignee.

Second, in the event that the Court disagrees with Sun's position in this regard and concludes that you could be an appropriate plaintiff, in that situation it would be highly inappropriate for you to commence a separate lawsuit about the same subject. You have already attempted to substitute in the Sun action, and to intervene there. Commencing a separate lawsuit would unnecessarily proliferate litigation, at least if the claims that you wish to raise are of a subject matter and causes of action duplicative of the existing action. Sun cannot imagine just what claims it is that you wish to add, and therefore cannot tell you whether or not they must be joined in the present lawsuit (assuming that you are entitled individually to raise such claims at all, which we believe we are not). Therefore, please advise what those purportedly new claims would be, so I can respond to them. Indeed, it is customary, before requesting a party's consent to amendment of claims, to provide a copy of the proposed amendments.

Third, before you commence any threatened new action, it is incumbent upon you to wait until Judge Jenkins has ruled on your pending requests for intervention and substitution. It is wholly inappropriate in such circumstances to commence yet another action after having presented the currently pending motions to Judge Jenkins. Further, any effort to seek a TRO or other preliminary relief in a second action would be entirely inappropriate, given not only the ruling on the TRO by Judge Zimmerman, but also the fact that you have personally already requested preliminary relief in your now pending motion to intervene in the existing Sun case. We therefore suggest that you consider the consequences very seriously before filing such inappropriate pleadings--and obtain the advice of qualified counsel before you do so. Magistrate Judge Chen's ruling should have demonstrated that filing unwarranted motions is a serious matter and has very real consequences.

I realize, of course, that I cannot keep you from filing with the Court whatever it is that you choose to file. It only costs a few hundred dollars to commence a lawsuit that could cost thousands to defend, and which Sun would seek to recover from you personally thereafter. I therefore reiterate the importance of your obtaining counsel as to all the consequences before you act.

Sincerely,

Laurence Pulgram

-----Original Message-----

From. ydx@netbula.com [mailto:ydx@netbula.com]
Sent: Friday, October 26, 2007 11:56 AM
To: Laurence Pulgram
Cc: ydx@netbula.com; brilletlaw@yahoo.com; Jedediah Wakefield; Albert Sieber; Liwen Mah;
yuedongxiao@gmail.com; davideiseman@quinnemanuel.com
Subject: Netbula's motion for substitution of party as to the copyright claim

Dear Mr. Pulgram, Mr. Wakefield, Mr. Mah and Mr. Sieber,

I am writing to seek a stipulation regarding Netbula's substitution of party as to the
copyright claim filed in the Nebula v. StorageTek case. As the copyright owner of the
relevant software and related claims, I am about to assert additional claims against
StorageTek. This can be done via an amended complaint in the C06-07391-MJJ case, or I can
file a new separate infringement action and move to relate/consolidate the new action to
the current action.

For judicial economy, I think it's far efficient for you to stipulate to the substitution
of party by replacing Dongxiao Yue as the copyright plaintiff in the C06-07391-MJJ case.

If you do not stipulate to the substitution, I will commence the new action next week.

Kind regards,

Don Yue


-------------------

# EXHIBIT 10

**Jedediah Wakefield**

| | |
|---|---|
| **From:** | ydx@netbula.com |
| **Sent:** | Tuesday, October 30, 2007 11:49 PM |
| **To:** | Laurence Pulgram |
| **Cc:** | ydx@netbula.com; brilletlaw@yahoo.com; stacymonahan@quinnemanuel.com; Jedediah Wakefield; Albert Sieber; Liwen Mah; yuedongxiao@gmail.com; davideiseman@quinnemanuel.com |
| **Subject:** | Re: RE: Netbula's motion for substitution of party as to the copyright claim |

Dear Messrs. Pulgram, Wakefield, Eiseman, Sieber and Mah,

The basic concept of copyright is that it is a personal property, and I am the owner of the property in dispute. I have the right to protect that property.

Anyway, I renew my request to the defense lawyers here, as officers of the court, to tell the whole truth in your representation to the Court -- now that I am involved, I will make sure that the relevant facts are presented to the trier of fact. You should do the same, as you have a duty to the Court. If you do not do it soon, I may have to file an emergency motion for an integrity hearing.

Some of the relevant facts not mentioned in Mr. Wakefield's brief are listed below:



Lisa Rady, the Program Manager for LibAttach wrote in March 2004:

"As you can see, we have exceeded the 1,000 distributions that we had right to with Netbula…. I think it is obvious that engineering has not and did not monitor the distributions on this product."

In response, Mike Melnick wrote:

"The agreement is specific to platform (Win NT and 95/98 platforms) types of Netbula software (PowerRPC SDK). This concerns me greatly as we have already told them we are no longer shipping it with our product."

In June 2005, Holly Wagner wrote:

"The SAP query I ran this morning shows 2,386 models shipped. This number is low due to the fact that the query does not have the capability of pulling the client feature quantities that were released in November of last year."

In response, Mike Melnick wrote:

"The number that Holly has provided and thought it may be low causes quite a problem for you. We have only made 2 purchases for the rights to distribute a total of 2000 licenses."

The above is just a few examples of admissions by StorageTek.

As you know, StorageTek (Mike Melnick) drafted some key parts of the 2000 Agreement (the payment terms). The interpretation of the agreement will be construed against the drafter. It is thus important for you, as officers of the Court, to fully inform the court about such admissions and prior inconsistent statements so the Court can properly rely on your

representations to make a ruling, that will become the law of the United States. You, as officers of the Court, are duty-bound to tell the whole truth to the Court.

As I suggested in my previous emails, you should write a letter to Judge Jenkins to inform the Court about your omission of key facts. Your refusal to do so may be served as evidence that you intentionally concealed the above and other facts from the Court.

Kind regards,

Don Yue


------------------------
"Laurence Pulgram" <LPulgram@Fenwick.com>:
Dear Mr. Yue,

I am responding to you individually, and copying Netbula's counsel, because I understand that you are threatening to file a new action in your individual capacity, in which you are, and intend to remain, unrepresented by counsel.  If I am incorrect in these assumptions, I request that you and/or Ms. Brillet advise me.

As promised, this is my response to your request for a stipulation that you be allowed to join as a party plaintiff in the Netbula v. StorageTek action.  Sun's position is as follows.

First, we do not believe that you are an appropriate plaintiff to enforce Netbula's copyrights. Our position in this regard will be fully spelled out in our filing on Tuesday opposing your request to be substituted as a plaintiff in the Sun action.  (We have cited a couple of cases in the MAR filed on Friday, but that is just to advise the court of the issue, not to argue it in full).  To the extent that you are not an appropriate plaintiff in the existing action by Netbula against Sun, you would be equally inappropriate in any new action that you may intend to file as Netbula's assignee.

Second, in the event that the Court disagrees with Sun's position in this regard and concludes that you could be an appropriate plaintiff, in that situation it would be highly inappropriate for you to commence a separate lawsuit about the same subject.  You have already attempted to substitute in the Sun action, and to intervene there.  Commencing a separate lawsuit would unnecessarily proliferate litigation, at least if the claims that you wish to raise are of a subject matter and causes of action duplicative of the existing action.  Sun cannot imagine just what claims it is that you wish to add, and therefore cannot tell you whether or not they must be joined in the present lawsuit (assuming that you are entitled individually to raise such claims at all, which we believe we are not). Therefore, please advise what those purportedly new claims would be, so I can respond to them.  Indeed, it is customary, before requesting a party's consent to amendment of claims, to provide a copy of the proposed amendments.

Third, before you commence any threatened new action, it is incumbent upon you to wait until Judge Jenkins has ruled on your pending requests for intervention and substitution. It is wholly inappropriate in such circumstances to commence yet another action after having presented the currently pending motions to Judge Jenkins.  Further, any effort to seek a TRO or other preliminary relief in a second action would be entirely inappropriate, given not only the ruling on the TRO by Judge Zimmerman, but also the fact that you have personally already requested preliminary relief in your now pending motion to intervene in the existing Sun case.
We therefore suggest that you consider the consequences very seriously before filing such inappropriate pleadings--and obtain the advice of qualified counsel before you do so. Magistrate Judge Chen's ruling should have demonstrated that filing unwarranted motions is a serious matter and has very real consequences.

I realize, of course, that I cannot keep you from filing with the Court whatever it is that you choose to file.  It only costs a few hundred dollars to commence a lawsuit that could cost thousands to defend, and which Sun would seek to recover from you personally thereafter.  I therefore reiterate the importance of your obtaining counsel as to all the consequences before you act.

Sincerely,

Laurence Pulgram

-----Original Message-----
From: ydx@netbula.com [mailto:ydx@netbula.com]
Sent: Friday, October 26, 2007 11:56 AM
To: Laurence Pulgram
Cc: ydx@netbula.com; brilletlaw@yahoo.com; Jedediah Wakefield; Albert Sieber; Liwen Mah;
yuedongxiao@gmail.com; davideiseman@quinnemanuel.com
Subject: Netbula's motion for substitution of party as to the copyright claim

Dear Mr. Pulgram, Mr. Wakefield, Mr. Mah and Mr. Sieber,

I am writing to seek a stipulation regarding Netbula's substitution of party as to the
copyright claim filed in the Nebula v. StorageTek case.
As the copyright owner of the relevant software and related claims, I am about to assert
additional claims against StorageTek. This can be done via an amended complaint in the
C06-07391-MJJ case, or I can file a new separate infringement action and move to
relate/consolidate the new action to the current action.

For judicial economy, I think it's far efficient for you to stipulate to the substitution
of party by replacing Dongxiao Yue as the copyright plaintiff in the C06-07391-MJJ case.

If you do not stipulate to the substitution, I will commence the new action next week.

Kind regards,

Don Yue

-------------------
------------------------------------------
IRS Circular 230 Disclosure:  To ensure compliance with requirements imposed by the IRS,
we inform you that any U.S. federal tax advice in this communication (including
attachments) is not intended or written by Fenwick & West LLP to be used, and cannot be
used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii)
promoting, marketing, or recommending to another party any transaction or matter addressed
herein.
------------------------------------------
ATTENTION:
The information contained in this message may be legally privileged and confidential.  It
is intended to be read only by the individual or entity to whom it is addressed or by
their designee. If the reader of this message is not the intended recipient, you are on
notice that any distribution of this message, in any form, is strictly prohibited.

If you have received this message in error, please immediately notify the sender and/or
Fenwick & West LLP by telephone at (650) 988-8500 and delete or destroy any copy of this
message.

-------------------

# EXHIBIT 11

**Jedediah Wakefield**

| | |
|---|---|
| **From:** | ydx@netbula.com |
| **Sent:** | Wednesday, December 05, 2007 11:53 AM |
| **To:** | Laurence Pulgram; brilletlaw@yahoo.com; stacymonahan@quininemanuel.com; davideiseman@quinnemanuel.com; Jedediah Wakefield; Albert Sieber; Liwen Mah; ydx@netbula.com |
| **Subject:** | Yue's position on Sun's related case motion |
| **Attachments:** | C06-07391-2007-11-20-hearing-transcript-on-motion-to-subst-party.pdf |



C06-07391-2007
11-20-hearing-t...

                    Dear Defense Counsel,

I received notification from Mr. Mah with SUN's related case motion attached. SUN's
current position is inconsistent with its previous position and Judge Jenkins's decisions
at the Nov 20, 2007 hearing.

It was clear that Judge Jenkins did not intend to handle the disputes about the other
copyrights which I personally owned. The 7391 case was about the 1996 copyright only,
which covers the code I wrote from July 24, 1996 to Sep 1, 1996 -- as Mr. Pulgram
correctly pointed out in several occasions. I am attaching the Nov 20, 2007 transcript for
you to review.

As Netbula stated in its motion to substitute party as to the copyright claim,  I sought a
stipulation for the substitution with an eye to amending the complaint. SUN vehemently
opposed my proposal, forcing me to file a separate action as I foretold you. Even after
the Yue case was filed, SUN persisted its opposition to my substitution or joinder as a
party in the 7391 case, and Judge Jenkins agreed with SUN and issued a "cease and desist"
order.

Originally, I contemplated about filing a related case motion. However, the situation has
changed. Judge Jenkins made it quite clear that he does not want to hear from me, whether
it is a legal argument or presentation of facts.

I have filed a Petition with the Ninth Circuit, which seeks to vacate the various orders
and reinstate my access to the district court provided by the equal protection clause of
the US constitution.

Until CA9 rules on my petition, I won't be able to file anything on Judge Jenkins's docket
to oppose SUN's administrative motions. SUN knows that I can't file an opposition at this
point, therefore, its motion to relate cases is prejudicial to my case (Yue v. STK) by
design .

To avoid further complications, I request SUN defendants to withdraw their motion to
relate cases or delay it until the Ninth Circuit rules on my Petition, so that I can
respond to your motion. Otherwise, SUN's unseemly "related case motion" would generate
unnecessary burden for the courts.

Again, my request is simple: wait till the Ninth Circuit makes the decision.

Any attempt to be clever will be unwise.


Sincerely,

Dongxiao Yue

--------------------