DONGXIAO YUE
2777 ALVARADO ST., SUITE C
SAN LEANDRO, CA 94577
Telephone: (510) 396-0012
Facsimile: (510) 291-2237
E-Mail: ydx@netbula.com

*Pro Se*

FILED
APR 17 2008
RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DONGXIAO YUE,<br><br>　　　　Plaintiff,<br><br>v.<br><br>Storage Technology Corporation, et al.,<br><br>　　　　Defendants.<br>------<br>DONGXIAO YUE,<br><br>　　　　Plaintiff,<br><br>v.<br><br>Chordiant Software, Inc., et al., | Case Nos. C07-05850-JW<br>　　　　　　C08-0019-JW (related case)<br><br>**PLAINTIFF'S CONSOLIDATED REPLY IN SUPPORT OF MOTION TO DISQUALIFY DEFENSE COUNSEL FENWICK & WEST, LLP**<br><br>[Civil Local Rule 11-4, 11-6]<br><br>Date: June 9, 2008<br>Time: 9:00 AM<br>Dept: 8, 4th Floor<br>Judge: Honorable James Ware |

-1-

Case Nos. C07-05850-JW, C08-0019-JW　　　　CONSOLIDATED REPLY ISO MOTION TO DISQUALIFY DEFENSE COUNSEL

# TABLE OF CONTENTS

INTRODUCTION .................................................................................................................... 3

BACKGROUND ..................................................................................................................... 3

ARGUMENT 5

    I.    Fenwick must be disqualified because it received related information from Yue in confidence ................................................................................................ 5

        1.    The *Yue v. SUN* case and the *Netbula v. Distinct* case are substantially factually related ................................................................ 5

        2.    An unverifiable claim of screening cannot relieve Fenwick from its ethical obligations of confidentiality and loyalty ...................................... 6

        3.    Defense counsel's excuse of delay by Plaintiff is unavailing ...................... 7

    II.    Mr. Pulgram Communicated Directly to Yue on Netbula Matters Represented by Attorney Ms. Vonnah M. Brillet Without Her Authorization ......................................................................................................... 8

    III.    Mr. Pulgram Should be Disqualified for Offering Legal Advices to an Unrepresented Party ....................................................................................... 10

CONCLUSION ..................................................................................................................... 13

## Cases

*Crane v. State Bar*,
    30 Cal.3d 117 (1981) .................................................................................................. 10

*Hitachi, Ltd. v. Tatung Co.*,
    419 F. Supp.2d 1158 (N.D.Cal. 2006) ........................................................................ 6

*Levi Strauss & Co. v. Abercrombie & Fitch Trading Co.*
    No. C 07-03752 JSW (N.D.Cal. 10-29-2007) ............................................................ 8

*Molski v. Mandarin Touch Restaurant*,
    359 F. Supp.2d 924 (C.D.Cal. 2005) ........................................................................ 12

*River West, Inc. v. Nickel*,
    188 Cal. App. 3d 1297, 1311 *(1987)* ......................................................................... 8

communicating to Yue about Netbula's FRCP 25(c) motion. The rest of the email was plainly about Netbula's case, which was represented by Ms. Brillet.

On the same day, Mr. Pulgram sent the following email to Yue about SUN's summary judgment motion in the *Netbula v. SUN* case.

> Dear Mr. Yue:
> Your claim that a single declaration, filed a few hours after midnight, precludes consideration of the summary judgment motion that was timely filed, and that you had been aware was coming for eight months, is untenable. The "25 pages" of materials in the declaration consisted of two pages of text, the two underlying contracts already of record in this action, two emails produced to Netbula long ago, and blank page separators. I cannot imagine that you would claim prejudice, but if you do, I would be happy to afford you nine additional hours to submit a declaration. Sun will not withdraw its motion.
> Laurence Pulgram

Since Mr. Pulgram was freely communicating to Yue on the Netbula matter, on October 26, 2007, Yue sent an email to Mr. Pulgram about filing a new action based on the copyrights Yue personally owned. Mr. Pulgram responded to the above email as follows.

> Mr. Yue,
> I will confer with my client and respond to you next week.
> Laurence Pulgram

On October 31, 2007, Mr. Pulgram sent the following email to Ms. Brillet and Yue.

> We do not intend to address Dr. Yue with respect to such matters, as Netbula is represented by counsel.
> However, Dr. Yue's reference below to a December 16, 2005 letter from Sun threatens, for a second time, to breach the express agreement of confidentiality that Sun required before the settlement discussions of which it is a part. His reference to his desire to use extrinsic evidence to interpret the license agreements has also previously been addressed. This suggests that you may not have transmitted to him the attached prior response, as we requested.

-9-

Case Nos. C07-05850-JW, C08-0019-JW    CONSOLIDATED REPLY ISO MOTION TO DISQUALIFY DEFENSE COUNSEL

The message above shows that Mr. Pulgram knowingly communicated to Yue about the *Netbula v. SUN* case. He says he should not communicate to Yue, nevertheless, he sends the email directly to Yue, in an attempt to suppress certain evidence in Netbula's case.

Ms. Brillet never authorized or consent to such direct communications. In fact, Ms. Brillet stated such direct communications were willful violation of attorney ethics. Yue Decl., at ¶20. Defense counsel alleged that Ms. Brillet actively encouraged the direct communications on December 6, 2007[6]. This allegation is soundly refuted by Ms. Brillet. See, Brillet Decl., at ¶¶ 1-5. On December 6, 2007, Yue spoke with Mr. Wakefield about the *pro se* Petition for Writ of Mandamus Yue filed in the Ninth Circuit[7]. In addition, all the email communications quoted above were made before December 6, 2007.

Mr. Pulgram initiated the direct communications with Yue on substantive matter represented by Ms. Brillet, and he persisted on making such direct communications even after Ms. Brillet questioned him about such communications. Under such circumstances, Mr. Pulgram should be disqualified or otherwise sanctioned. See, e.g., *Crane v. State Bar*, 30 Cal.3d 117 (1981) (attorney was suspended because of letter sent by his staff to a represented party).

### III. Mr. Pulgram Should be Disqualified for Offering Legal Advices to an Unrepresented Party

Mr. Pulgram sent numerous legal advices on cases in which Yue is a *pro se* plaintiff or litigant. For instance, on October 29, 2007, he wrote to Yue:

---

[6] Plaintiff noted that in his declaration, Mr. Wakefield placed the December 6, 2007 event before October 22, 2007 and omitted the date. See Wakefield Declaration at ¶ 15.

[7] Mr. Wakefield filed a declaration about this conversation on the docket of the *Netbula v. SUN* case. See, Declaration of Jedediah Wakefield dated December 10, 2007, Docket No. 127 of the C06-7391-JW case, p.2:15-23.

-10-

Case Nos. C07-05850-JW, C08-0019-JW | CONSOLIDATED REPLY ISO MOTION TO DISQUALIFY DEFENSE COUNSEL

> First, we do not believe that you are an appropriate plaintiff to enforce Netbula's copyrights. Our position in this regard will be fully spelled out in our filing on Tuesday opposing your request to be substituted as a plaintiff in the Sun action. (We have cited a couple of cases in the MAR filed on Friday, but that is just to advise the court of the issue, not to argue it in full). To the extent that you are not an appropriate plaintiff in the existing action by Netbula against Sun, you would be equally inappropriate in any new action that you may intend to file as Netbula's assignee.
>
> Second, in the event that the Court disagrees with Sun's position in this regard and concludes that you could be an appropriate plaintiff, in that situation it would be highly inappropriate for you to commence a separate lawsuit about the same subject. You have already attempted to substitute in the Sun action, and to intervene there. Commencing a separate lawsuit would unnecessarily proliferate litigation, at least if the claims that you wish to raise are of a subject matter and causes of action duplicative of the existing action. Sun cannot imagine just what claims it is that you wish to add, and therefore cannot tell you whether or not they must be joined in the present lawsuit (assuming that you are entitled individually to raise such claims at all, which we believe we are not). Therefore, please advise what those purportedly new claims would be, so I can respond to them. Indeed, it is customary, before requesting a party's consent to amendment of claims, to provide a copy of the proposed amendments.
>
> Third, before you commence any threatened new action, it is incumbent upon you to wait until Judge Jenkins has ruled on your pending requests for intervention and substitution. It is wholly inappropriate in such circumstances to commence yet another action after having presented the currently pending motions to Judge Jenkins. Further, any effort to seek a TRO or other preliminary relief in a second action would be entirely inappropriate, given not only the ruling on the TRO by Judge Zimmerman, but also the fact that you have personally already requested preliminary relief in your now pending motion to intervene in the existing Sun case.
>
> We therefore suggest that you consider the consequences very seriously before filing such inappropriate pleadings--and obtain the advice of qualified counsel before you do so. Magistrate Judge Chen's ruling should have demonstrated that filing unwarranted motions is a serious matter and has very real consequences.

-11-

Case Nos. C07-05850-JW, C08-0019-JW

CONSOLIDATED REPLY ISO MOTION TO DISQUALIFY DEFENSE COUNSEL

> I realize, of course, that I cannot keep you from filing with the Court whatever it is that you choose to file. It only costs a few hundred dollars to commence a lawsuit that could cost thousands to defend, and which Sun would seek to recover from you personally thereafter. I therefore reiterate the importance of your obtaining counsel as to all the consequences before you act.

The email above again contained many issues that were represented by Ms. Brillet – such as Netbula's motion to substitute party and SUN's opposition.

On Yue's effort to protect his personally owned copyrights, Mr. Pulgram's message mirrors the letter in *Molski v. Mandarin Touch Restaurant*, 359 F. Supp.2d 924 (C.D.Cal. 2005) in many aspects. Even the threat of attorneys' fees is similar. In *Molski*, the attorneys advised the unrepresented defendant that it would be very expensive to retain attorneys to defend the prospect lawsuit. Here, Mr. Pulgram advised Yue that SUN will spend a lot of attorneys' fees and seek them from Yue.

Mr. Pulgram's conduct, coupled with his advice to Judge Martin J. Jenkins to exclude Yue from the October 31, 2007 hearing of SUN's administrative motion to vacate the hearing of Yue's motion to intervene and join as a party in the *Netbula v. SUN* case, was highly prejudicial.

Plaintiff will give another example of Mr. Pulgram's legal advice to Yue in matters where Yue is an unrepresented party.

Judge Jenkins stated in one of his orders:

> During the November 20, 2007 hearing, the Court instructed Yue that he could not file motions, notice hearing dates, or speak in court unless he had leave of court or until he was given permission to represent himself.[8]

---

[8] During the December 14, 2007 hearing, Yue attempted to object to SUN's oral motion for the instant *Yue v. SUN* case, which was then presided over by Judge Illston.

-12-

Case Nos. C07-05850-JW, C08-0019-JW                     CONSOLIDATED REPLY ISO MOTION TO
                                                           DISQUALIFY DEFENSE COUNSEL

Given the existence of such an order[9], on December 5, 2007, Mr. Pulgram sent Yue an email, asking Yue to file a motion in the *Netbula v. SUN* case. Mr. Pulgram wrote:

> Judge Jenkins' order that Dr. Yue not file papers... I do not know why it would be assumed, without more, that this order precludes filings that specifically relate to claims as to which Dr. Yue actually is a party.

As the hearing transcript shows, Judge Jenkins recognized that Yue was not trying to assert the rights of Netbula. But Judge Jenkins made it clear that Yue was not "given permission to represent himself." Remarkably, Mr. Pulgram re-interpreted Judge Jenkins's order for Yue. Mr. Pulgram's invitation for Yue to file a motion on the *Netbula v. SUN* docket was asking Yue to violate an explicit court order, which may result in contempt proceedings against Yue. Mr. Pulgram's misleading legal advice to Yue was highly prejudicial.

Due to page limit, Plaintiff is unable to analyze all the communications to Yue from Mr. Pulgram on substantive matters represented by Netbula's former counsel Vonnah M. Brillet, and Mr. Pulgram's legal advice to Yue where he is an unrepresented party. Plaintiff can provide additional supporting documents if the Court requires him to do so.

## CONCLUSION

Plaintiff has been severely prejudiced by defense counsel's breach of confidence and trust, direct communications on matters represented by counsel and "legal advice" on matters where Plaintiff was unrepresented. Plaintiff respectfully asks the Court to disqualify defense counsel from the instant cases and the related cases.

---

[9] At the November 20, 2007 hearing, Judge Jenkins did not indicate that Yue could request leave of court to file motions.

-13-

Case Nos. C07-05850-JW, C08-0019-JW        CONSOLIDATED REPLY ISO MOTION TO DISQUALIFY DEFENSE COUNSEL

1  Respectfully submitted,

3  Dated: April 17, 2008

   DONGXIAO YUE (*Pro Se*)

-14-

Case Nos. C07-05850-JW, C08-0019-JW          CONSOLIDATED REPLY ISO MOTION TO
                                             DISQUALIFY DEFENSE COUNSEL