1  LAURENCE F. PULGRAM (CSB NO. 115163)
   *lpulgram@fenwick.com*
2  JEDEDIAH WAKEFIELD (CSB NO. 178058)
   *jwakefield@fenwick.com*
3  ALBERT L. SIEBER (CSB NO. 233482)
   *asieber@fenwick.com*
4  LIWEN A. MAH (CSB NO. 239033)
   *lmah@fenwick.com*
5  FENWICK & WEST LLP
   555 California Street, 12th Floor
6  San Francisco, CA  94111
   Telephone:     (415) 875-2300
7  Facsimile:     (415) 281-1350

8  Attorneys for Defendants
   SUN MICROSYSTEMS, INC., MICHAEL
9  MELNICK, JULIE DECECCO, MICHAEL P.
   ABRAMOVITZ, LISA K. RADY, and
10 JONATHAN SCHWARTZ

11

12 DONGXIAO YUE
   2777 ALVARADO ST., SUITE C
   SAN LEANDRO, CA 94577
13 Telephone:     (510) 396-0012
   Facsimile:     (510) 291-2237
14 E-Mail:        ydx@netbula.com

15 Plaintiff (*Pro Se*)

16

17                      UNITED STATES DISTRICT COURT

18                    NORTHERN DISTRICT OF CALIFORNIA

19                              SAN JOSE DIVISION

| | |
|---|---|
| 20  DONGXIAO YUE, | Case No.  C-07-05850 JW |
| 21              Plaintiff, | **JOINT CASE MANAGEMENT CONFERENCE STATEMENT (CONFERENCE SCHEDULED FOR MAY 5, 2008)** |
| 22  v. | |
| 23  STORAGE TECHNOLOGY CORPORATION, et al., | |
| 24              Defendants. | Date:    May 5 2008<br>Time:    10:00 A.M.<br>Dept:    8<br>Judge:   Hon. James Ware |
| 25 | |
| 26 | |
| 27 | _____<br>Trial Date:  No date set |
| 28 | |

Pursuant to the Court's April 16, 2008 Order setting a Case Management Conference on May 5, 2008, Plaintiff Netbula, LLC ("Netbula") and Defendants Sun Microsystems, Inc. ("Sun")[1], individual Sun employees or officers Michael Melnick, Julie DeCecco, Michael P. Abramovitz, Lisa K. Rady, and Jonathan Schwartz (collectively, " Sun Individual Defendants") jointly submit the following statement.

## CURRENT POSTURE

As the parties have not reached agreement on a description of the status of the present case, the parties submit separate descriptions below.

## Plaintiff's Description

Plaintiff offers the following description of the instant case.

**A.   Factual background**

**1.   Yue's PowerRPC software**

Yue began developing the PowerRPC software in 1994. In July 1996, when the software is near completion, Yue founded a company named Netbula, LLC ("Netbula") to market PowerRPC. PowerRPC consists of many programs, program modules and source code files. The PowerRPC software contained two parts: (1) the "Software Development Kit" ("SDK") that consists of the software tools which allow programmers to create applications based on PowerRPC technology, including the "powerrpc.h", "pwrpcapi.h", "pwrpc32.lib", "pwrpc32.dll" and other files; and (2) the "runtime software" that consists of files providing the core remote call functionality to applications developed with PowerRPC , including the "pwrpc32.dll", "pmapsvc.exe", "portmap.exe" and other program files. Yue has always owned the copyrights of the PowerRPC software created before July 1996. Some of the software source code has Yue's personal copyright notices. Yue owns the copyrights of the derivative works by a written assignment executed in September 2007. The pre-Netbula work Yue created has a pending registration at the Copyright Office.

---

[1] Storage Technology ("StorageTek") was acquired by and became part of Sun Microsystems.

### 1. Plaintiff's RPC software licenses

A purchaser of PowerRPC software must buy one type of license (an "SDK" license) for each computer programmer who will use the PowerRPC SDK files to develop RPC applications. A purchaser must also buy a separate server or client license for the right to copy the runtime software files, also including the "pwrpc32.dll" file. Each SDK license and runtime license (server or client) is only granted for a single computer and might only be granted for use in one specific operating system environment, for example, "Windows Server 2003" but not "Windows Vista", depending upon the specific license grant. A server runtime license costs about $800 per server machine. The client runtime licenses were sold in "packs" of different sizes. A 20-pack client runtime license, which granted a customer the right to use the runtime software for client application on twenty (20) computers, cost about $1000. The PowerRPC portmapper program—pmapsvc.exe—was sometimes licensed at standalone basis at the price of $100 per copy.

### 2. Yue's interaction with StorageTek

`In 2000, StorageTek purchased 1000 licenses for PowerRPC runtime and 8 developer licenses from Netbula. In 2004, StorageTek purchased 1000 runtime licenses for a newer version of PowerRPC. In 2005, Plaintiff discovered that StorageTek had exceeded the license limits, including selling unlimited licenses. In December 2006, Netbula sued StorageTek and SUN for copyright infringement. In the related *Netbula v. StorageTek* lawsuit (Case no. C06-07391), Yue filed a motion to intervene and join as a party to protect his personally owned copyrights. StorageTek's counsel Laurence Pulgram sent numerous emails to Yue on various issues.

### B. The Procedural History of the Instant Case

The hearing of Yue's motion to intervene and join the *Netbula v. StorageTek* case was vacated in a telephone hearing from which Yue was excluded. Afterwards, as he previously informed SUN and the Court in multiple occasions, Yue filed the instant *Yue v. StorageTek* action on November 19, 2007, alleging 10 counts of willful infringement of the copyrights he personally

owned. Most of the infringing acts alleged in the instant case were not part of the *Netbula v. StorageTek* case. The copyrights involved are also different. The next day, November 20, 2007, the former Judge, Martin J. Jenkins issued a "cease and desist" order that forbade Yue from filing papers in the *Netbula v. StorageTek* case.

Yue then filed a Petition for Writ of Mandamus to vacate Judge Jenkins's "cease and desist" order and filed complaints against Judge Jenkins at the Ninth Circuit. In the November 20, 2007 hearing, defense counsel stated that Netbula's 1996 copyright was "the only copyright at issue" in the *Netbula v. StorageTek* case. In a court filing, Laurence Pulgram wote that "there is a common question of whether Yue or Netbula holds the copyrights in the software, and what parts are owned by each.[2]" In a hearing held on December 14, 2007, Judge Jenkins stated that the instant *Yue v. StorageTek* case "is not completely overlapping with" the related *Netbula v. StorageTek* case. Later, the Ninth Circuit sent a copy of Yue's complaint to Judge Jenkins. Judge Jenkins then dismissed the instant case with prejudice on March 4, 2008.

Yue disputes the numerous factual and legal contentions raised by Defendants in this Joint Case Management Statement. Yue believes that such contentions should be the subject of various pending motions, including the Rule 60(b) motion.

### Defendants' Description

**1.    Introduction**

With the exception of Defendants' pending motion for attorneys' fees (which has been referred to Magistrate Judge Laporte), this is over*. **It has been dismissed with prejudice, judgment has been entered in Defendants' favor, and the case is currently on appeal to the Ninth Circuit.*** Nevertheless, Plaintiff persists in pursuing it in this Court as well, having filed not only a baseless Rule 60(b) motion to set aside the Judgment, but motions to disqualify both the formerly assigned judge and defense counsel.

In view of Plaintiff's filing of a notice of appeal, and the Ninth Circuit's Issuance of

---

[2] Docket No. 22 of the instant case, p.3:23-26.

1  Mandate on April 22, the Court need not address these issues. In general, "filing of a notice of
2  appeal confers jurisdiction on the court of appeals and divests the district court of control over
3  those aspects of the case involved in the appeal," except for "collateral" matters, such as motions
4  for attorneys' fees, that are not related to the merits of the underlying appeal. *In re Does*, 891
5  F.2d 1407, 1413 (9th Cir. 1989, *disapproved of on other grounds*, *Church of Scientology v.*
6  *United States*, 506 U.S. 9 (1992). In both his Motion to Disqualify and his Motion for Relief for
7  Judgment, Plaintiff makes it apparent that he believes the judgment against him was entered in
8  whole or in part on Fenwick's alleged unethical conduct and thus this motion is anything but
9  "collateral." The Ninth Circuit is the appropriate forum for his disqualification argument, as it
10 considers the judgment as a whole. Similarly, the Court need not address the Rule 60(b) Motion.
11 *See Gould v. Mutual Life Ins. Co.*, 790 F.2d 769, 772 (9th Cir. 1986) ("The proper procedure,
12 once an appeal has been taken, is to ask the district court whether it wishes to entertain the [Rule
13 60(b] motion, or to grant it, and then move this [appeals] court, if appropriate, for remand of the
14 case.") (internal quotation marks omitted); *see also Chaganti v. i2 Phone Int'l, Inc.*, Case No. C-
15 04-987-VRW, 2007 U.S. Dist. LEXIS 66766 (N.D. Cal. Aug. 30, 2007) (striking plaintiff's
16 motion brought under Rule 60(b) filed shortly before notice of appeal because court was without
17 jurisdiction to consider it).

18     **2.     Procedural History**

19     On March 4, 2008, the Court granted Defendants' Motion to Dismiss with prejudice and
20 entered judgment in Defendants' favor. The Court concluded that this case (which Defendants
21 will refer to as "*STK II")*, presented the same claims as the *Netbula v. StorageTek* case("*STK I*")
22 and was effectively Plaintiff's attempt to re-litigate issues that had already been presented to, and
23 determined by, the Court. The Court found that dismissal with prejudice was appropriate "given
24 the tactics that Plaintiff has pursued, which have ranged from duplicative to nearly vexatious."
25 Docket No. 51.
26     This case was unquestionably duplicative of Netbula's earlier suit, was filed for no
27 legitimate purpose, and was pursued long after the Court had ruled that the copyright claims
28 against Defendants had no merit. Plaintiff's company, Netbula LLC, had originally sued

JOINT CASE MANAGEMENT CONFERENCE STATEMENT     -4-     CASE NO. C-07-05850 JW

1  Defendants Sun Microsystems ("Sun") and Storage Technology Corporation (StorageTek") in
2  2006, claiming that their use of Netbula software exceeded the scope of licenses granted to
3  StorageTek in 2000 and 2004.  Plaintiff's second lawsuit asserted essentially the same copyright
4  claims.  It is a copyright lawsuit that Plaintiff was specifically warned against bringing, and that
5  the Court has concluded should never have been brought.  Even though his company, Netbula,
6  was represented by counsel in a pending case involving the same set of facts, Plaintiff chose to
7  pursue a duplicative action, claiming once again that the **same** Defendants (Sun and StorageTek)
8  exceeded the scope of the **same** licenses (the 2000 and 2004 agreements) and infringed the
9  copyrights in the **same** software (Netbula's "PowerRPC" program) as alleged in *STK I*.

10  Having brought this action, which was doomed from the outset, he proceeded to litigate in
11  a fashion that did nothing to advance his case but placed a heavy burden on both Defendants and
12  the Court.  He resisted having *STK I* and *STK II* related, sought a default after being ordered not
13  to, and even continued to press the case after the Court ruled that Defendants' use of the software
14  was within the scope of the 2000 and 2004 license agreements, and thus not infringing.  Even
15  now that judgment has been entered, he presses on.  He has now not only filed a Rule 60(b)
16  Motion, but two motions for disqualification, attacking both defense counsel and the Honorable
17  Martin J. Jenkins, arguing that they engaged in unethical conduct, and even conspired against
18  him.

19  **2.    The Earlier Lawsuit and Plaintiff's Attempt to Re-litigate It.**

20  In 1996, Plaintiff Dongxiao Yue created a Limited Liability Company called Netbula,
21  LLC.  *STK I* Docket No. 98 [Reply in Support of Motion to Substitute Party at 2:21-24].  Netbula
22  was, and still is, a software company.  It granted licenses to customers to use its software, and
23  was paid in return.  *STK I* Docket No. 102 [Declaration of Dongxiao Yue in Opposition to
24  Defendants' Motion for Summary Judgment ¶ 9].  In 2000 and 2004, Netbula granted licenses to
25  Defendant StorageTek to develop software using Netbula's program, and to distribute products
26  containing that software.  Plaintiff—the 100% owner and sole employee of Netbula—negotiated
27  and executed both of these license agreements on behalf of his company.  *Id.* ¶ 17; *see also STK*
28  *II* Docket No. 43 [Opposition to Motion to Dismiss at 5:11-12 ("Netbula is wholly-owned by

JOINT CASE MANAGEMENT CONFERENCE STATEMENT -5- CASE NO. C-07-05850 JW

1   Plaintiff.")].

2   Later, StorageTek and Netbula had a disagreement about how much money was owed
3   under the Agreements. In late 2006, Netbula initiated the STK I lawsuit against StorageTek and
4   Sun (which had acquired StorageTek). But Netbula did not just sue for money owed under the
5   contract. It sued for copyright infringement, too, arguing that Defendants had exceeded the scope
6   of the licenses. *See STK I* Docket Nos. 1, 15 [Complaint; First Amended Complaint].

7   At all times in *STK I*, Netbula claimed infringement of a single copyright, the NETBULA
8   POWERRPC registration ("POWERRPC"), attached to both the original and first amended
9   complaint. *Id.* By the time it filed its lawsuit, however, Netbula had already sought *additional*
10  registrations covering the very same software licensed to StorageTek and, in fact, these
11  registrations both issued, in Netbula's name, before Netbula filed its amended complaint as a
12  matter of right. *See STK II* Docket No. 1 [Complaint ¶ 2 & Exs. A-B]. Nothing precluded
13  Netbula from suing on these registrations as well, though there would have been no particular
14  advantage in doing so. The issue, after all, was whether Defendants' use of the software was
15  outside the scope of the licenses—a question that is unaffected by the number of copyright
16  registrations Netbula holds on that software.

17  For whatever reason, Netbula did not include these additional registrations in its original
18  complaint, or in its amended complaint, or seek leave to file a second amended complaint to add
19  these additional registrations at any point in *STK I*. In short, Netbula—at all times represented by
20  counsel—could have attempted to assert these additional copyrights at any point. It did not.
21  Netbula also did not name, or seek leave to name, as additional defendants those parties it
22  believed also responsible for the alleged infringement. Again, it could have done so, but did not.

23  Rather than take the required procedural steps to have all claims arising from
24  StorageTek's use of Netbula's software heard in the *STK I* action, shortly before the deadline for
25  filing dispositive motions in *STK I*, Plaintiff began the worst sort of tactical maneuvering.
26  Plaintiff executed a collusive assignment of the copyrights between himself and his company.
27  *See STK II* Docket No. 1 [Complaint Ex. C]. Netbula's counsel admitted, and the Court found,
28  what was already then obvious: This assignment was entered into at least in part by Plaintiff's

JOINT CASE MANAGEMENT CONFERENCE STATEMENT — -6- — CASE NO. C-07-05850 JW

desire to bring Netbula's then-pending copyright claims in his own name, on a *pro se* basis. *STK I* Docket No. 139 [Transcript of November 20, 2007 at 10:21-11:12, 16:20-17:1]. Netbula filed a motion to substitute parties, which was denied without prejudice by the Court in light of clear law prohibiting assignments that would result in a company's claims being prosecuted by a *pro se* individual, and in view of the late stage of the case. *STK I* Docket No. 56. Netbula, the only plaintiff in *STK I*, did not seek an immediate appeal, and it has not sought to renew its substitution motion. Indeed, Netbula took no further action in the case other than to oppose Defendants' motion for summary judgment. Thus, there is no due process concern here—Plaintiff has had his day in Court through his wholly-owned company, Netbula, and its counsel.

Nevertheless, Plaintiff steadfastly refused to accept that that he was not the plaintiff in *STK I*. In that case, he filed a series of *pro se* motions and oppositions even before the motion for substitution was heard. When these attempts to litigate Netbula's claims *pro se* were appropriately rebuffed, he threatened Defendants with a second lawsuit over the same facts. He ultimately filed it, ignoring warnings about the consequences and pleas that he confer with counsel before doing so. Now, unable to accept that his claims and actions are contrary to law, Plaintiff has mounted a series of spurious attacks against both Defendants' counsel and the presiding judge in both *STK I* and *STK II*.

The end result of Plaintiff's obstinacy is that Defendants have incurred and are continuing to this day to incur substantial attorneys' fees in responding to a duplicative, unnecessary copyright action and the myriad motions Plaintiff chooses to file, none of which impose any cost on him.

**PENDING MOTIONS.**

Yue has filed three motions in this action: a Motion for Disqualification of Assigned Judge, a Motion to Disqualify Opposing Counsel (Fenwick & West), and a Motion for Relief from Judgment Pursuant to Rule 60(b).

After the reassignment of this case to the Honorable James Ware, Yue has re-noticed the Motion to Disqualify Opposing Counsel. As suggested by the Court's Notice on April 21, 2008, Yue intends to re-notice and re-file the Rule 60(b) motion and request the Court to entertain the

1  motion. If the Court intends to entertain the Rule 60(b) motion, Plaintiff will request the Ninth
2  Circuit to remand the case.

### A.  Plaintiff

Plaintiff moved to disqualify defense counsel on several ethical grounds, including that a Fenwick partner served as Early Neutral in the *Netbula v. Distinct* dispute, and Yue provided confidential information to that Fenwick partner. Defense counsel has indicated that they will file supplemental brief to address Plaintiff's reply brief. Yue has requested Defense counsel to provide him a copy of such supplemental brief. If the Court allows such supplemental brief by defense counsel to be filed, Plaintiff requests that he be given the opportunity to file further response.

### B.  Defendants' Position

Currently Yue's Motion to Disqualify Opposing Counsel is set for hearing on July 7, 2008. Defendants contend that Plaintiff's Reply Brief in support of its motion to disqualify counsel raises a number of entirely new (and false) factual allegations as the basis to attempt to challenge Fenwick & West's continued representation in the Chordiant and StorageTek cases. Defendants intend to seek leave to file a supplemental brief to address points and new factual matters that Yue raised in his reply.

Defendants on March 18, 2008 filed a motion for attorneys' fees, which was subsequently referred to the Honorable Elizabeth Laporte. The motion is fully briefed. Prior to the reassignment of this case, the parties stipulated that Defendants' motion for attorney fees should be set for hearing no sooner than when Plaintiff's motions are heard. However, given the current schedule, Defendants intend to request that Judge Laporte reset the hearing on the attorneys' fees motion for the next available hearing date.

### C.  Plaintiff's contentions about April 24, 2008 conference

Plaintiff alleges that at the FRCP Rule 26(f) conference on April 24, 2008, Defense counsel Jedediah Wakefield threatened to incur large amount of attorney's fees and seek them from Yue, causing serious "personal financial stability" (quote) issues for him. Yue immediately warned Mr. Wakefield for making such statement. Based on Mr. Wakefield's stated intentions,

JOINT CASE MANAGEMENT CONFERENCE STATEMENT    -8-    CASE NO. C-07-05850 JW

Plaintiff believes that Sun Microsystems is intentionally incurring unreasonable amount of attorney's fees and use the threat of attorney's fees to force Plaintiff to forgo his intellectual property rights, consistent with Julie DeCecco's intimidations against Yue made in June 2006. Plaintiff believes that SUN's conduct may constitute RICO violations. Plaintiff also believes that Defendants failed to comply with Civil Local Rule 54-6 in their fee motions.

### D.   Defendants' position about April 24, 2008 conference

Defendants dispute Yue's characterization in the above paragraph regarding the April 24, 2008 conference, as well as Yue's conclusions.

## PARTIES NOT YET SERVED

Plaintiff has not served the following defendants:

Michael Melnick, Julie DeCecco, Michael P. Abramovitz, Lisa K. Rady.

## REMAINING ISSUES

The case has been dismissed with prejudice. Accordingly, Defendants contend that Yue should not propound, and Defendants should have no obligation to respond to, any discovery requests from Yue. Defendants contend that Yue is not entitled to burden Defendants with further discovery. Defendants believe that, other than the pending motions discussed above, there are no remaining issues before this Court.

Yue believes the following issues to still be in dispute.

### A.   Factual issues that Yue believes are disputed.

- The number of programmers who used the PowerRPC SDK software to develop StorageTek products and the number of computers on which the SDK were installed;
- The types of operating systems StorageTek developed applications for using PowerRPC software;
- The names and description of StorageTek software products that StorageTek developed with PowerRPC;
- How PowerRPC was used in StorageTek products;
- The identities of the third parties (such as StorageTek customers) which acquired PowerRPC software or its derivative software from StorageTek;
- The terms and conditions under which defendants allowed third parities to copy or

JOINT CASE MANAGEMENT CONFERENCE STATEMENT               -9-                    CASE NO. C-07-05850 JW

distribute PowerRPC software or its derivative software;

- The ways defendants allowed others to distribute and copy PowerRPC software or its derivative work, such as web download and CD-ROM distribution, and whether there were any restrictions on the copying and distribution;

- The number of copies defendants has allowed others to copy or make use of the PowerRPC software in server applications;

- The number of copies defendants has allowed others to copy or make use of the PowerRPC software in client applications;

- Whether defendants knew it needed server and client runtime licenses for using or distributing PowerRPC software;

- Defendants' general policy and control regarding software licenses;

- STORAGETEK's policy, control and mechanisms in monitoring its distribution of its products;

- Whether there are other persons who can be held liable for the infringement and additional recovery of damages;

- What's the functionality of the STORAGETEK applications and how they are used in STORAGETEK's customers' business;

- Whether STORAGETEK applications contain source code from or generated by PowerRPC software;

- Defendants' communications about PowerRPC;

- Whether and when STORAGETEK stopped using PowerRPC software;

- What STORAGETEK profits can be attributed directly to PowerRPC software;

- What defendants' profits can be attributed indirectly to PowerRPC software;

- What interest rate should be applied to damages.

### B.  Legal issues that Yue believes are disputed.

- Whether Fenwick & West should be disqualified because of its role as an Early Neutral in the Netbula v. Distinct dispute;

- Whether Laurence Pulgram should be disqualified for the alleged unethical conduct;

- Whether judgment should be vacated;

- Whether Defendants' Fee Motion failed to comply with Civil Local Rule 54-6.

1

2  Dated: April 25, 2008                    FENWICK & WEST LLP

3                                           By:

4                                               /s/ Jedediah Wakefield

5                                           Jedediah Wakefield

6                                           Attorneys for the named Defendants:

7                                           SUN MICROSYSTEMS, INC., MICHAEL
                                            MELNICK, JULIE DECECCO, MICHAEL P.
8                                           ABRAMOVITZ, LISA K. RADY, and
                                            JONATHAN SCHWARTZ \
9

10 Dated: April 25, 2008                    By:

11                                              /s/ Dongxiao Yue

12                                          Plaintiff DONGXIAO YUE

13                                          *In propria persona*

JOINT CASE MANAGEMENT CONFERENCE STATEMENT      -11-      CASE NO. C-07-05850 JW

## **ATTORNEY ATTESTATION**

Pursuant to General Order 45, I hereby attest that that concurrence in the filing of this document has been obtained from the signatories indicated by a "conformed" signature (/S/) within this e-filed document.

/S/ JEDEDIAH WAKEFIELD

Jedediah Wakefield

25689/00405/LIT/1284437.2