1  DONGXIAO YUE
   2777 ALVARADO ST., SUITE C
2  SAN LEANDRO, CA 94577
   Telephone:    (510) 396-0012
3  Facsimile:    (510) 291-2237
   E-Mail:       ydx@netbula.com
4
5  *Pro Se*

6

7

8                UNITED STATES DISTRICT COURT

9              NORTHERN DISTRICT OF CALIFORNIA

10 DONGXIAO YUE,                          Case No. C07-05850-JW

11              Plaintiff,                **PLAINTIFF'S AMENDED NOTICE OF
                                          MOTION AND MOTION FOR RELIEF
12       v.                               FROM JUDGMENT PURSUANT TO
                                          FRCP 60(b)**
13
                                          [FRCP 60(b)(3),60(b)(6)]
14 STORAGE TECHNOLOGY
   CORPORATION, a Delaware corporation;
15 SUN MICROSYSTEMS Inc., a Delaware
   corporation; Michael Melnick, an individual;   Date:   July 7, 2008
16 Julie DeCecco, an individual; Michael P.       Time:   9:00 A.M.
   Abramovitz, an individual; Lisa K. Rady, an    Dept:   Courtroom 8
17 individual; Jonathan Schwartz, an individual;  Judge:  Hon. James Ware
   and DOES 1-1000, inclusive,
18
19
                Defendants.
20

21

22

23

24

25

26

27
                              -1-
28

Case No. C07-05850-JW                              MOTION FOR 60(b) RELIEF

1

TABLE OF CONTENTS

2

NOTICE OF MOTION AND MOTION................................................................3

3

SUMMARY .............................................................................................4

4

FACTUAL BACKGROUND...........................................................................4

5

    The Instant Case ................................................................................4

6

    The Parties' Conduct ...........................................................................4

7

ARGUMENT............................................................................................15

8

9      1.   Judgment should be vacated because of misrepresentation, deceptive
           conduct and misconduct by the opposing party ...........................15

10

11     2.   Judgment should be vacated because Judge Jenkins should have been
           disqualified under 28 U.S.C. § 455 .............................................19

12

13     3.   The Judgment should be vacated because of the manifest injustice of
           the result ...........................................................................21

14

CONCLUSION..........................................................................................25

15

<u>Cases</u>

16

*Davis v. Board of Sch. Comm'rs of Mobile County,*
    517 F.2d 1044, 1051 (5th Cir. 1975) ........................................................20

17

18

*De Saracho v. Custom Food Machinery, Inc.,*
    206 F.3d 874, 880 (9th Cir. 2000) ..........................................................16

19

*Kourtis v. Cameron,*
    419 F.3d 989 (9th Cir. 2005) ..........................................................18, 22

20

21

*Liljeberg v. Health Services Acquisition Corp.,*
    486 U.S. 847, 100 L. Ed. 2d 855, 108 S. Ct. 2194 (1988) ......................19

22

23

24

25

26

27

28

-2-

                                    

**AMENDED NOTICE OF MOTION AND MOTION**

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that *pro se* Plaintiff, Dongxiao Yue ("Yue" or "Plaintiff"), pursuant to Federal Rule of Civil Procedure 60(b), hereby moves for an Order to grant relief from the Order granting Motion to Dismiss (the "Dismissal Order") and the final Judgment. The hearing of this FRCP 60(b) motion is set on July 7, 2008, at 9:00 AM in Courtroom 8, 4th Floor at the San Jose Division of the Northern District of California, before U.S. District Judge Honorable James Ware.

This motion is based upon this Amended Notice, the following Points and Authorities, the Declaration of Dongxiao Yue ("Yue Decl.") filed concurrently, the papers on file in this matter, and such further evidence and argument as may be presented to the Court at or before the hearing.

-3-

Case No. C07-05850-JW

## MEMORANDUM OF POINTS AND AUTHORITIES

### SUMMARY

Yue is the owner and founder of software company Netbula, LLC ("Netbula"). Yue filed the instant 10-count copyright action based on alleged infringement of three copyrights he personally owned. The former Judge, Martin J. Jenkins, stated that this case "is not completely overlapping with" the related *Netbula v. SUN* case. After Judge Jenkins received Yue's complaint against him, Judge Jenkins concluded that Netbula and Yue are privies in the two cases, and the two cases are duplicative. Without a hearing, Judge Jenkins dismissed the instant with prejudice and entered final judgment on the same day.

Now, Plaintiff seeks relief from final judgment under FRCP 60(b), because of defense counsel's misconduct and other manifest injustice permeated in the proceedings.

### FACTUAL BACKGROUND

#### The Instant Case

Of the three copyrights allegedly infringed by defendants, one covers the code Yue wrote as an individual before he founded Nebula, LLC ("Netbula"). Yue has always owned this copyright. The two other copyrights were assigned from Netbula to Yue on September 26, 2007. There is a pending related case, *Netbula v. SUN*, et al. (Case No. C06-07391-MJJ, the "*Netbula v. SUN*" case), but none of the three copyrights in the instant action was part of the *Netbula v. SUN* case.

The instant action alleges 10-counts of copyright infringement, many of them arise from transactions not mentioned in the *Netbula v. SUN* case.

#### The Parties' Conduct

The following facts are taken directly from the declaration of Dongxiao Yue dated March 26, 2008, filed concurrently.

-4-

In January 2006, Netbula filed a copyright infringement action against Symantec Corporation ("Symantec") et al (Case No. C06-0711-MJJ, the "*Symantec* case"), alleging the infringement of PowerRPC software published in 1996 (the "1996 Copyright"). The Symantec defendants were represented by Fenwick & West, LLP ("Fenwick").

In December 2006, Netbula filed another copyright action against Storage Technology Corporation ("StorageTek"), Sun Microsystems, Inc. ("SUN") et al. (Case No. C07-07391-MJJ, the "*SUN* case") alleging infringement of the 1996 Copyright. SUN is also represented by Fenwick.

In 2002, Fenwick served as an Early Neutral Evaluator in a trademark case in which Netbula sued a company for infringement of the PowerRPC mark. In the ENE session, Yue provided information about PowerRPC to Fenwick, in confidence. The details are in Yue's Motion to Disqualify Defense Counsel, filed concurrently.

In the course of the *Symantec* case, around July 2007, defense counsel Laurence Pulgram pointed out that Yue personally owned the copyright of the PowerRPC code Yue wrote before he founded Netbula. Yue Decl., at ¶ 5. As Mr. Pulgram wrote in one of the motions he filed in the instant C07-05850 case:

> As to Yue's allegation that he began developing the software at issue before he established Netbula in 1996, there is a common question of whether Yue or Netbula holds the copyrights in the software, and what parts are owned by each.

Docket No. 22 of the instant case, p.3:23-26.

Yue then contacted the U.S. Copyright Office regarding the situation and spoke with a person of the Copyright Office. The Copyright Office staff suggested various actions. Based on these suggestions, Netbula submitted a Form CA to the Copyright Office, stating that the 1996

-5-

1  Copyright was a derivative work of unpublished work written by Yue. Netbula also transferred the

2  copyrights for the code created before January 2007 back to Yue on September 26, 2007. *Id.* at ¶ 6.

3      In June 2007, Yue wrote a blog article which criticized an order of a magistrate judge in that

4  case. On August 28, 2007, immediately after talking to a magistrate judge, Netbula's former

5  counsel told Yue the stuff he wrote blew his case. She specifically told Yue what the magistrate

6  judge told her: Yue's blog article had offended Judge Jenkins. Netbula's former counsel also told

7  Yue that she got a hint that an adverse ruling against Netbula had already been in place. *Id.*, at ¶ 7.

8

9      On August 31, 2007, Judge Jenkins signed an order that dismissed Netbula's copyright,

10  contract and fraud claims against Symantec defendants in the *Netbula v. Symantec* case. In his

11  order, Judge Jenkins ignored key evidence, including a disclosure letter which stated that

12  defendants did not pay licenses fees and owed Netbula license fees. Yue later filed a motion to

13  intervene and unseal part of this disclosure letter in the *Symantec* case.

14

15      Because of the transfer of the copyright interests, on October 1, 2007, Netbula field a motion

16  to substitute Yue as the party as to the copyright claim in the *Netbula v. SUN* case pursuant to

17  FRCP 25(c). On October 11, 2007, on the eve of scheduled dispositive motions, Netbula's former

18  counsel, Vonnah M. Brillet ("Ms. Brillet") filed a motion to withdraw from the *Netbula v. SUN*

19  case. Yue attempted to secure new counsel for Netbula but was unable to do so. *Id.* at ¶¶ 9-10.

20      On October 22, 2007, pursuant to FRCP 24(a) and the Copyright Act, acting *pro se*, Yue filed

21  a motion to intervene and for copyright injunction in the *Netbula v. SUN* (C06-07391) case,

22  alleging irreparable harm from defendants' ongoing infringement of the 1996 Copyright and other

23  copyrights Yue personally owned, based on newly discovered evidence. In his argument for the 4-

24  prong test for intervention of right, Yue stated:

25

26          ...As a result of the copyright assignment and related claims, Netbula has
             filed a motion to substitute Dr. Yue as the plaintiff for the copyright

27

28

-6-

claim pursuant to FRCP 25(c).

> However, because of the timing in the case, Dr. Yue's property rights are in danger of being lost. Defendants are planning to have their summary judgment motions heard before November 27, 2007, but Netbula's motion to substitute Dr. Yue as the plaintiff as to the copyright claim won't be heard until November 20, 2007, which is the same day when Netbula's counsel's motion to withdraw will be heard. Ms. Brillet's tight schedule makes it near impossible for her to give the needed attention for the expected summary judgment hearing. This situation leaves Dr. Yue's interest with little representation.

Yue's Motion to Intervene, Docket No. 68 of the C06-07391-MJJ case, pp.16:24-17:3.

On October 23, 2007, SUN defendants filed a motion for summary judgment. However, their motion was based on a fabricated or phantom declaration – they had not been able to locate the declarant – Michael Melnick -- to review his declaration. *Id.* at ¶¶ 10-11.

During this time, Defense counsel Laurence Pulgram sent numerous emails directly to Yue, discussing the substantive issues in the *Netbula v. SUN* (C06-07391-MJJ) case. In an October 25, 2007 email to Yue, Mr. Pulgram talked about Netbula's former counsel's motion to withdraw from the C06-07391-MJJ case, Netbula's motion to substitute party, Netbula's TRO and SUN's motion for summary judgment. In his emails to Yue, Mr. Pulgram specifically stated that SUN would oppose Netbula's motion to substitute party and that "Ms. Brillet remains counsel of record, and her opposition to the summary judgment on behalf of Netbula is due in the ordinary course." In subsequent emails, Mr. Pulgram talked about issues such as Michael Melnick's declaration and Netbula's intended use of certain evidence, etc. Netbula's former counsel told Yue that defense counsel's direct communication to Yue on the *Netbula v. SUN* matter constituted willful violation of attorney ethics. *Id.* at ¶¶ 12-13, 31.

Since Mr. Pulgram was freely communicating to Yue on the Netbula matter, on October 26, 2007, Yue sent the following email to Mr. Pulgram:

-7-

1

Dear Mr. Pulgram, Mr. Wakefield, Mr. Mah and Mr. Sieber,
I am writing to seek a stipulation regarding Netbula's substitution of party

2

as to the copyright claim filed in the Nebula v. StorageTek case. As the
copyright owner of the relevant software and related claims, I am about

3

to assert additional claims against StorageTek. This can be done via an
amended complaint in the C06-07391-MJJ case, or I can file a new

4

separate infringement action and move to relate/consolidate the new

5

action to the current action.

6

For judicial economy, I think it's far efficient for you to stipulate to the
substitution of party by replacing Dongxiao Yue as the copyright plaintiff

7

in the C06-07391-MJJ case.

8

If you do not stipulate to the substitution, I will commence the new action

9

next week.

10

11

Mr. Pulgram responded to the above email as follows.

12

Mr. Yue,
I will confer with my client and respond to you next week.

13

Laurence Pulgram

14

15

Subsequently, Mr. Pulgram communicated with Yue on Yue's then prospective lawsuit

16

against SUN. Mr. Pulgram advised Yue on matters of service, temporary restraining order, etc. *Id.*

17

at ¶¶ 14, 31.

18

On October 26, 2007, SUN filed two "administrative" motions. One sought to vacate the

19

hearing of Yue's motion to intervene in the *Netbula v. SUN* case pursuant to FRCP 24(a) and for

20

copyright injunction. The other asked Judge Jenkins to consider the "fabricated" declaration. Yue

21

filed oppositions to both motions and asked the Court to disqualify Pulgram for his unprofessional

22

23

conduct.

24

On October 31, 2007, Judge Jenkins held a telephonic hearing on defendants' "administrative

25

motions". Yue was not given any notice about this hearing and was not allowed to participate. Yue

26

was later informed that Mr. Laurence Pulgram advised Judge Jenkins that Yue should be excluded

27

28

-8-

from the telephonic conference. Following the hearing, on November 2, 2007, Judge Jenkins

signed an order which stated the following:

> Defendants' Motion for Administrative Relief to Vacate Hearing on Non-Party Dongxiao Yue's Request for Injunctive Relief and Impoundment [Docket Nos. 80-81] is hereby GRANTED. The Motion of Dongxiao Yue to Intervene and Join as Plaintiff; for Injunctive Relief; and for Copyright Impoundment [Docket Nos. 68-72] will be taken off calendar.

Yue then mailed a request for a tape recording of the telephonic hearing and was told by

the clerk of the court that no court reporter was present and no audio recording was made.

Originally, Yue promised to Mr. Pulgram that he would file his action against

SUN/StorageTek in the first week of November 2007. Because of Mr. Pulgram's email about the

possibility of reaching a stipulation on the issue of additional claims and his legal advice, Yue

delayed the filing of Yue case against SUN/StorageTek. On October 31, 2007, Yue communicated

with Mr. Pulgram about Yue's action against SUN, and Mr. Pulgram stated that he was willing to

accept service on behalf of SUN for certain types of filings. *Id.* at ¶¶ 16-18, 31.

Both Netbula and Yue fully informed Judge Jenkins about Yue's intention to file a

separate action the *Netbula v. SUN* complaint in court filings. See Document No. 91, p.4:10-18

(filed on October 30, 2007); Document No. 98, p.3:11-19 and Document No. 99, pp.4:23-5-18

(filed on November 5, 2007) of the *Netbula v. SUN* case. Yue also filed with the Court the emails

communications between Mr. Pulgram and Yue. *Id.* at ¶ 22.

On November 19, 2007, as Yue previously informed SUN/StorageTek and Judge Jenkins,

Yue filed a separate case against SUN, alleging 10 counts of infringement of three copyrights he

personally owned. The *Yue v. SUN* (Case No. C07-05850) case was assigned to another judge.

On November 20, 2007, Netbula's former counsel and Yue went to the court for the hearings

scheduled that day. At the very beginning of the hearing, Judge Jenkins asked Yue: "Are you Mr.

-9-

Yue?" Yue said "Yes". Then Judge Jenkins told Yue that he "should cease and desist" from filing

papers before the court. Judge Jenkins further stated that even if Yue became a party in the

*Netbula v. SUN* case, "it still would not give [Yue] authority to do so, to file pleadings in the

matter." The following was the exchange afterwards (verbatim from the hearing transcript).

> MR. YUE: WHAT'S THE COURT'S LEGAL RATIONALE FOR THAT?
>
> THE COURT: THAT IS THE RATIONALE, AND THAT'S THE STATEMENT.
>
> MR. YUE: FOLLOWING RULES OF CIVIL PROCEDURE –
>
> THE COURT: MR. YUE, I AM GOING TO HAVE YOU TAKEN OUT IF YOU DON'T BE QUIET.

Yue Decl., at ¶¶ 24-25.

Also at the November 20, 2007 hearing, Judge Jenkins coached SUN's lawyer to attack Yue's

ownership of the assigned copyrights. The following is from the transcript:

> THE COURT: BUT YOU DON'T ARGUE THAT THE ASSIGNMENT IS NOT VALID, RIGHT?
>
> MR. PULGRAM: EXCUSE ME?
>
> THE COURT: YOU DON'T ARGUE THE ASSIGNMENT IS NOT VALID?
>
> MR. PULGRAM: THERE IS SOME LAW TO THAT EFFECT, YOUR HONOR.
>
> THE COURT: BUT IT'S NOT BEFORE ME. I HAVEN'T SEEN THAT IN YOUR PAPERS.
> …
> THE COURT: THAT'S WHAT I AM SUGGESTING TO YOU. SO TO DENY THE MOTION MEANS THAT HE'S NOT SUBSTITUTED IN AS A PARTY?

-10-

1    Judge Jenkins denied Netbula's request to substitute or join as a copyright plaintiff in the

2    *Netbula v. SUN* case, thus prevented Yue from protecting his copyrights in that case.

3    At the hearing of SUN's motion to intervene and modify BindView protective order, Judge

4    Jenkins forbade Yue to argue about his opposition, and refused to hear my motions. The following

5    is the exchange at the end of the hearing:

6

7              MR. YUE: YOUR HONOR, MAY I, FOR THE RECORD? AM I
              UNDERSTANDING CORRECTLY THAT MY MOTION TO
8              INTERVENE AND –

9              THE COURT: NOT ON TODAY.

10             MR. YUE: -- HOLDING COUNSEL IN CONTEMPT –

11
              THE COURT: LET ME SUGGEST, IT'S NOT ON TODAY BECAUSE
12             YOU CAN'T MAKE SUCH A MOTION YET. SO IT'S NOT ON
              TODAY.
13
              MR. YUE: I WAS MOVING AS A THIRD PARTY, JUST AS SUN
14             DEFENSE COUNSEL.

15             THE COURT: RIGHT.
16
              MR. YUE: BUT I WAS A PRO SE.
17
18             THE COURT: IT WASN'T ON TODAY.

19             MR. YUE: WAS THE REASON VACATING MY MOTION
              BECAUSE I AM A PRO SE LITIGANT?
20
21             THE COURT: NO, IT JUST WASN'T -- IT DIDN'T HIT MY
              CALENDAR TODAY. THAT'S IT.
22

23    Also on November 20, 2007, Judge Jenkins and SUN made it clear that the *Netbula v. SUN*
24
     case **only** deals with **one** copyright that was alleged in the complaint (quoting transcript):
25
26             THE COURT: IS THIS THE ONLY COPYRIGHT AT ISSUE –

27             MR. PULGRAM: YES.
                                            -11-
28

Thus, the intellectual properties in the *Yue v. SUN* case were never part of the *Netbula v. SUN* case. In fact, they were explicitly precluded from the *Netbula v. SUN* case.

On December 14, 2007, the hearing SUN's motion for summary judgment in the *Netbula v. SUN* case was held before Judge Jenkins. At the end of the hearing, SUN's attorney made an oral request to delay answering Yue's lawsuit in the *Yue v. SUN* case, which was presided over by a different judge. Judge Jenkins immediately granted SUN's motion and asked the parties to stipulate to a new date. When Yue, the *pro se* plaintiff in that case, attempted to raise objections, Judge Jenkins forbade Yue to speak. Later, when Judge Jenkins came back into the court and learnt that Yue refused to stipulate to a change of date, he said that he would just order that SUN's motion to be granted.

In November 2007, Yue mailed a complaint against Judge Jenkins to the Ninth Circuit, alleging, *inter alia*, that Judge Jenkins retaliated against Yue due to the blog article Yue wrote and persisted in his retaliation. Yue's complaint described in detail the events surrounding the blog and how he came to know that there was retaliation. Yue complained about Judge Jenkins's failure to recuse himself from the *Netbula v. Symantec and Netbula v. SUN* case. Yue also complained about Judge Jenkins's not-to-file order which Yue alleged was a violation of his due process. Yue further complained that Judge Jenkins issued an *ex parte* order in favor of defendants, threatened to take Yue out for merely attempting to make a legal argument, coached Mr. Laurence Pulgram to make argument against Yue and ignored Mr. Laurence Pulgram's unethical conduct.

Copies of Yue's complaint against Judge Jenkins were sent to Judge Jenkins on December 17, 2007.

-12-

1    In the exhibits to his complaint, Yue attached a letter to then Chief Circuit Judge

2  Schroeder. In that letter, Yue indicated that, the person who was responsible for Netbula's loss of

3  uncollected license revenue in the *Netbula v. Symantec* case should be held liable. Yue Decl., at ¶¶

4  34-35.

5

6    On December 17, 2007, Yue sent a letter to Judge Jenkins, stating that the circumstances and

7  apparent bias and require that Judge Jenkins disqualify himself from the cases in which Yue is a

8  party.

9    On February 8, 2008, Judge Jenkins entered an Order denying request for disqualification in

10  the *Netbula v. SUN* docket. This Order stated the following in the "FACTUAL BACKGROUND"

11  portion:

12

13    The Court set a dispositive motions deadline in the 2006 case of
     November 27, 2007. Accordingly, in October 2007 Defendants filed a
14    motion for summary judgment to be heard on that day. Around the same
     time, the parties filed a flurry of documents with the Court. As is relevant
15    here, Plaintiff sought an order substituting Yue for Plaintiff Netbula,
     Plaintiff's counsel sought to withdraw as counsel of record and Yue filed
16    his own motion and briefing regarding various matters.

17    In an October 31, 2007 telephonic conference in which Plaintiff was
     represented by counsel, the Court, inter alia, rescheduled the Motion for
18    Summary Judgment hearing to December 13, 2007, vacated the hearing
     noticed by non-party Yue, left Plaintiff's motion to substitute parties on
19    calendar for November 20, 2007 and continued Plaintiff's counsel's
     motion to withdraw as counsel until after the Court's resolution of the
20    summary judgment motion. Defendants prepared an order reflecting the
     Court's rulings and the Court signed the order.
21

22    On November 20, 2007, the Court held a hearing on Plaintiff's motion to
     substitute parties. The Court denied the motion on the record and, when
23    Yue attempted to intervene in the proceedings, reminded Yue that he was
     not yet a party to the action and could not file documents, calendar
24    hearings or speak in court without leave of the Court.
25

26    Unbeknownst to the Court, one day prior, Yue, proceeding *pro se*, filed a
     separate action (the "2007 case") against StorageTek and Sun. In the
27    2007 case Plaintiff alleges ten claims of copyright infringement. (See

28                                            -13-

1   Amended Complaint, Docket No. 9.) The 2007 case was originally
2   assigned to Judge Illston who, on December 3, 2007, issued an Order of
    Referral for the Court to determine if the 2006 and 2007 cases were
3   related.

4   In the ANALYSIS portion of the February 8, 2008 order, Judge Jenkins stated:

5       Yue alleges that his postings on an internet blog were known by the
        Court and influenced the Court's ultimate rulings on this matter. Yue's
6       allegations consist solely of conclusions and are not sufficiently definite
        and particular to convince a reasonable person that bias exists. See Sykes,
7       7 F.3d at 1338. There is also no factual support for this assertion in the
8       record or in the Court's own experience.
            …
9       During the November 20, 2007 hearing, the Court instructed Yue that he
        could not file motions, notice hearing dates, or speak in court unless he
10      had leave of court or until he was given permission to represent himself.
        During the December 14, 2007 hearing, the Court again admonished Yue
11      for attempting to speak without leave of Court. Insofar as Yue's rights as
12      a Plaintiff in the 2007 case were concerned, the Court granted Yue leave
        to participate appropriately. Furthermore, Yue does not allege, nor could
13      a reasonable person find, that the Court admonished Yue because of bias
        toward him, rather than because of the panoply of legal rules, precedent
14      and relevant case management concerns governing the myriad issues
15      raised by Yue's conduct.

16

17      In the November 20, 2007 hearing, Netbula's attorney, Vonnah M. Brillet, had the following

18  exchange with Judge Jenkins (quoting from transcript):

19      MS. BRILLET: YOUR HONOR, MR. YUE IS NOT TRYING TO
20      ASSERT THE RIGHTS OF NETBULA.

21      THE COURT: I RECOGNIZE THAT.

22      At the December 14, 2007 hearing of the *Netbula v. SUN* case, Judge Jenkins stated the

23  following about the *Yue v. SUN* case (p.65:3-7 of the transcript):

24      Now, there is a related case, and it does strike me that it is related. And
25      this may be -- it's not completely overlapping with the present claim.

26

27

28                                      -14-

Case No. C07-05850-JW                                    MOTION FOR 60(b) RELIEF

1    On January 18, 2008, in the *Netbula v. SUN* case, Judge Jenkins granted SUN's motion for

2    summary judgment on the copyright claim. In his order, Judge Jenkins ignored crucial facts,

3    including but not limited to SUN defendants' admissions that they exceeded the license and the

4    license agreement would be terminated upon SUN's acquisition of StorageTek.

5    On January 29, 2008, SUN filed a motion to dismiss the *Yue v. SUN* case on the ground that

6

7    that case is duplicative of the *Netbula v. SUN* case. On the issue of Yue's pre-Netbula copyrights,

8    SUN stated:

9           This gambit will not work; these alleged pre-July 1996 materials provide
            no basis for allowing this suit to proceed. As an initial matter, actual
10          registration—not just a pending application—is a prerequisite to filing
            suit.
11

12   SUN's motion to dismiss, Docket No. 35, pp.18:23-19:4.

13   On March 4, 2008, Judge Jenkins dismissed the *Yue v. SUN* case and entered final judgment

14   against Yue without a hearing. Against his previous statement that the *Yue v. SUN* case "is not

15   completely overlapping" with the *Netbula v. SUN* claim, Judge Jenkins simply repeated defense

16   counsel Mr. Pulgram's argument that the *Yue v. SUN* case is duplicative of the *Netbula v. SUN*

17   case, even though Yue had been precluded from participating in the *Netbula v. SUN* case to

18

19   protect his personal rights. In the dismissal order, Judge Jenkins states:

20          Yue-Sun presents the same claims as Netbula-Sun and is effectively
            Plaintiff's attempt to re-litigate issues that have already been presented,
21          and determined, by the Court. In addition, given the tactics that Plaintiff
            has pursued, which have ranged from duplicative to nearly vexatious, the
22          Court finds that dismissing the action with prejudice is appropriate.

23

24

25                              **ARGUMENT**

26   **1.  Judgment should be vacated because of misrepresentation, deceptive conduct and
         misconduct by the opposing party**

27

28                                   -15-

1    A Court may relieve a party from a final judgment or order for the following reason: "fraud

2 (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing

3 party" Federal Rule of Civil Procedure 60(b)(3). "To prevail, the moving party must prove by

4 clear and convincing evidence that the verdict was obtained through fraud, misrepresentation, or

5 other misconduct and the conduct complained of prevented the losing party from fully and fairly

6 presenting the defense." *De Saracho v. Custom Food Machinery, Inc.*, 206 F.3d 874, 880 (9th Cir.

7 2000).

8

9    In the instant case, SUN obtained the judgment through a series of deceptive, prejudicial and

10 unethical conduct as well as misrepresentations to the Court.

11    SUN's counsel, Mr. Pulgram engaged in extensive direct communications to Yue regarding

12 the *Netbula v. SUN* case. He talked about various substantive matters in the *Netbula v. SUN* case

13 and proposed then entered a stipulation with Yue on service by email.

14

15    Relying on Mr. Pulgram's communications on the Netbula matter, Yue believed that Mr.

16 Pulgram would eventually agree to Yue's full participation in the *Netbula v. SUN* case to assert his

17 copyrights.

18    When Yue asked about filing a new lawsuit against SUN, Mr. Pulgram stated that he would

19 confer with his client, indicating the willingness to consider a cooperative approach in the related

20 litigations.

21

22    Before the instant *Yue v. SUN* action was filed, Yue asked Mr. Pulgram about issues of service

23 and temporary restraining order in the expected new action, Mr. Pulgram offered Yue legal advice

24 on these matters. He stated that he would accept service of Yue's TRO application by email.

25    Despite Netbula's former counsel's comment that Mr. Pulgram willfully violated attorney

26 ethics by communicating directly to Yue, based on the communications and legal advices from Mr.

27

28                                          -16-

Pulgram, Yue considered Mr. Pulgram to be friendly. Although Mr. Pulgram worked for the opposing party and must say things for his client, Yue thought that Mr. Pulgram recognized Yue's personal intellectual property rights in the litigations. Yue reckoned that, otherwise, Mr. Pulgram would have not communicated so freely with Yue.

However, in his later representations to the Court, Mr. Pulgram made every attempt to preclude Yue from the case. During the October 31, 2007 telephonic hearing, Mr. Pulgram advised Judge Jenkins that Yue should be disallowed. That hearing was about SUN's motion to vacate the hearing of Yue's motion to intervene in the *Netbula v. SUN* case. As a result, Mr. Pulgram enjoyed an *ex parte* telephonic conference with Judge Jenkins, resulting in an order that vacated the hearing of Yue's motion to intervene and join as a party in the *Netbula v. SUN* case.

Essentially, SUN communicated with Yue directly via Mr. Pulgram on the Netbula litigation and drew from Yue substantive information about Netbula's and Yue's work-product. Then after such unethical and prejudicial conduct, it turned around and said that Yue and Netbula were the same after all.

SUN's motion to dismiss was full of misrepresentations of both law and fact. For instance, Mr. Pulgram made a table showing the similarities of the *Netbula v. SUN* case and *Yue v. SUN* case and then concluded that the cases are duplicative. But the dissimilarities are what mattered, the *Yue v. SUN* case alleged 10-counts of infringement based on 10 types of infringing acts, most of them are not addressed in the *Netbula v. SUN* case. Mr. Pulgram wrote that "actual registration—not just a pending application—is a prerequisite to filing suit." Mr. Pulgram omitted that in this judicial district, it was well established that one could file a lawsuit with a pending application. Judge Patel ruled on this very issue in the *Napster* case, in which Mr. Pulgram was defense counsel. In the *Netbula v. Symantec* case, the parties had extensive briefing on this very issue.

-17-

1  According to Fenwick's own material, one "[g]enerally can file suit on a copyright registration

2  application". *"Copyright Infringement Litigation With Some Asides on Software Copyright*

3  *Litigation"*[1], Fenwick & West LLP.

4        SUN also stated in its Motion to Dismiss that:

5
         Netbula'scounsel admitted that this assignment was motivated at least in
6        part by Dr. Yue's desire to pursue Netbula's infringement claims *pro se,*
         *see Netbula-Sun* Docket No. 139 [Transcript of Proceedings Held
7        November 20, 2007 at p.11:9-10]

8  Docket No. 35, p.9:22-25.

9        The above statement is a plain mischaracterization of the record. Netbula's former counsel

10 made no such statement. In fact, the following exchange at that hearing shows the exact opposite.

11       MS. BRILLET: YOUR HONOR, MR. YUE IS NOT TRYING TO
         ASSERT THE RIGHTS OF NETBULA.
12

13       THE COURT: I RECOGNIZE THAT.

14       Mr. Pulgram also argued that Yue was virtually represented in the *Netbula v. SUN* case, in

15 spite of his own observation that "there is a … question of … what parts [of the software] are

16 owned by each" and his own effort which precluded Yue from the *Netbula v. SUN* case. See

17
   *Kourtis v. Cameron*, 419 F.3d 989 (9th Cir. 2005) (conflicting claims on copyright precludes
18
   finding of privity and "weighty due process considerations that make adequacy of representation
19
   the *sine qua non* of any privity relationship.").
20

21       The misrepresentations SUN made in its Motion to Dismiss (Docket No. 35) and the Reply

22 Brief (Docket No. 46) were so pervasive Plaintiff could not possibly list all of them here given the

23 page limit.

24       As Mr. Pulgram is a licensed attorney and an officer of the Court, his representations were
25

26 [1] http://www.fenwick.com/docstore/Publications/IP/Copyright_Infringement_Litigation.pdf
          (last accessed on March 25, 2008)
27

28                                        -18-

more readily trusted and relied upon by the Court. Plaintiff is a *pro se* litigant. In court filings, Mr. Pulgram attacked *pro se* litigants on the ground that "[a *pro se*] wants to be free of the ethical restraints to which attorneys are bound."

Plaintiff planned to argue against these misrepresentations at the hearing scheduled on March 4, 2008 himself.  However, relying on SUN's misrepresentations, Judge Jenkins vacated the hearing, and ruled against Yue, the *pro se* Plaintiff, directly. Thus, Yue lost the opportunity to shatter SUN's misrepresentations and expose SUN's misconduct in a hearing. The Dismissal Order is thus a direct result of SUN's misconduct and Plaintiff is entitled to 60(b0(3) relief.

**2.  Judgment should be vacated because Judge Jenkins should have been disqualified under 28 U.S.C. § 455**

Federal Rule of Civil Procedure 60(b)(6) permits a Court to vacate a judgment for "any other reason that justifies relief."   The U.S. Supreme Court has held that Rule 60(b)(6) relief was available to a litigant against whom judgment was entered by a Judge who had improperly refused to recuse himself in the proceeding. *Liljeberg v. Health Services Acquisition Corp.*,486 U.S. 847, 100 L. Ed. 2d 855, 108 S. Ct. 2194 (1988).

At the hearing of December 14, 2007, Judge Jenkins forbade Yue to speak and then granted SUN's motion which allowed SUN to delay answering the complaint in the instant *Yue v. SUN*. On December 17, 2007, Yue sent a letter to Judge Jenkins (the "Letter to the Judge") on the docket of the instant case (Docket No. 11).   This letter raised the issues of apparent bias and prejudice and cited relevant rules on mandatory disqualification.

Yue filed a complaint against Judge Jenkins in the Ninth Circuit, alleging that, *inter alia*, (1) Judge Jenkins was retaliating against Yue due to a blog he wrote; (2) Judge Jenkins issued *ex parte* orders against Yue; (3) Judge Jenkins denied Yue due process by issuing a "not-to-file" order without legal basis; (4) Judge Jenkins ignored Mr. Pulgrams unethical conduct; (5) Judge

-19-

MOTION FOR 60(b) RELIEF

Jenkins coached Mr. Pulgram to attack the validity of copyright assignment; (6) Judge Jenkins threatened to take Yue out for attempting to make legal argument; (7) Judge Jenkins failed to recuse himself. Attached to the complaint was Yue's letter to the former Chief Judge of the Ninth Circuit, in which Yue indicated that the person responsible for Netbula's loss of revenue in the *Netbula v. Symantec* case should be held accountable for such losses. Judge Jenkins received a copy of Yue's complaint on or after December 17, 2007.

Judge Jenkins refused to disqualify himself by his order of February 8, 2008 in the *Netbula v. SUN* case. First, he stated that Yue did not file a motion and affidavit. However, no motion is required to precipitate a Judge's recusal under 28 U.S.C. § 455. *Davis v. Board of Sch. Comm'rs of Mobile County*, 517 F.2d 1044, 1051 (5th Cir. 1975). Second, Judge Jenkins stated the facts alleged in the Letter to the Judge were insufficient. However, in the complaint Yue filed with the Ninth Circuit, he alleged great details about the extra-judicial blog and retaliation. In that complaint, Yue gave the name of the magistrate judge and the names of the two attorneys who learnt about the retaliation from the magistrate judge, and Yue's conversation with the magistrate.

As the U.S. Supreme Court stated in *Liljeberg*:

> The very purpose of §455(a) is to promote confidence in the judiciary by avoiding even the **appearance** of impropriety whenever possible. See S. Rep. No 93-419, at 5; H. R. Rep. No. 93-1453, at 5. Thus, it is critically important in a case of this kind to identify the facts that might reasonably cause an objective observer to question Judge Collins' impartiality.

The facts Yue alleged in his complaint against Judge Jenkins, if proven, would establish that the Judge is biased against him. There was an appearance of bias. Therefore, Judge Jenkins should have been disqualified under §455(a).

The allegations in Yue's complaint can find parallels in the decision by the Committee to Review Circuit Council Conduct Disability Order of the Judicial Conference (the "Committee") of

-20-

MOTION FOR 60(b) RELIEF

1  the United States in case No. 98-372-001, including acts "issuing rulings as part of an improper

2  vendetta or some other illicit or vindictive motive." In No. 88-372-001 (1988), the Committee

3  affirmed a reprimand of a district judge for stating that he would not permit the complainant to

4  practice in his courtroom. In No. 95-372-001, a district judge threatened to imprison complainant

5  for "simply expressing [complaint's] legal opinions" and "deliberately delayed issuing an order."

6  The Breyer Committee Report[2] states that a not-to-file order against a non-party may not be

7

8  merits-related.

9      The Motion to Dismiss was about whether Yue could prosecute infringement of his personally

10  owned copyrights. Part of the complaint Yue had against Jenkins was that the Judge issued an *ex*

11  *parte* order that vacated hearing of Yue's motion and issued the order that forbade Yue to speak

12  and file papers without legal basis. A ruling against Yue on the Motion to Dismiss on the issue of

13  privity can be used as justification of the Judge's "not-to-file" order and *ex parte* order. Thus,

14  Judge Jenkins had an interest in the outcome of the Motion to Dismiss, such interest required his

15  disqualification under 28 U.S.C. § 455(b).

16

17      Before he received a copy of Yue's complaint, Judge Jenkins stated that the *Yue v. SUN* case

18  "[is] not completely overlapping with the [*Netbula v. SUN case*]." He also recognized that "Mr.

19  Yue is not trying to assert the rights of Netbula." But, the Dismissal Order concluded the exact

20  opposite.

21      In addition, as stated in Yue's Motion for Disqualification of the Assigned Judge, Judge

22  Jenkins also had an interest in ruling against Yue on all of his copyrights and copyright claims.

23

24  **3.  The Judgment should be vacated because of the manifest injustice of the result**

25      The three copyrights alleged in the instant action (the 2000 and 2K4 Copyrights and the

26  ───────────────

[2] http://www.supremecourtus.gov/publicinfo/breyercommitteereport.pdf

27

28
MOTION FOR 60(b) RELIEF

pre-Netbula copyright) were never part of the *Netbula v. SUN* case. The 1996 Copyright was

"THE ONLY COPYRIGHT AT ISSUE" in the *Netbula v. SUN* case. SUN made every effort to

prevent the three copyrights from being litigated in the *Netbula v. SUN* case by precluding Yue

from participating in that case. Also, four of the individual defendants haven't been served. In

addition, the *Yue v. SUN* case involves different transactions.

The facts in the case are plain. It is a simple case of right and wrong. Throwing out Yue's

claims against defendants would be grave injustice and damaging to the protection of intellectual

property in the U.S. and abroad. See *Kourtis v. Cameron*, 419 F.3d 989 (9th Cir. 2005)

(conflicting claims on copyright precludes finding of privity and "weighty due process

considerations that make adequacy of representation the *sine qua non* of any privity

relationship.").

The following table shows some of the differences of the *Netbula v. SUN* and the instant

*Yue v. SUN* case.

| Transactional Nucleus of Facts in the Yue v. SUN Action | In Netbula v. SUN Complaint? | Considered by Netbula v. SUN Summary Judgment ruling? |
|---|---|---|
| ¶40. Lisa K. Rady (manager of LibAttach): "As you can see, we have exceeded the 1,000 distributions that we had right to with Netbula.... I think it is obvious that engineering has not and did not monitor the distributions on this product. | No | No. |
| ¶40. Melnick: The agreement is specific to platform (Win NT and 95/98 platforms) types of Netbula software (PowerRPC SDK). This concerns me greatly as we have already told them we are no longer shipping it with our product. | No. | No. |
| ¶51. Melnick: As for Sun, it should be completed by | No. | No. |

-22-

| | | |
|---|---|---|
| the end of summer… The only thing that you and I may have to do is for you to allow assignment of the agreement to Sun. The agreements calls [*sic*] for your approval. I assume you would sallow [*sic*] this as if you did not the agreement would be terminated. | | |
| ¶52. Melnick: The number that Holly has provided and thought it may be low causes quite a problem for you. We have only made 2 purchases for the rights to distribute a total of 2000 licenses. | No. | No. |
| ¶64. after Michael Abramovitz learned of the dispute between Netbula and SUN/StorageTek, he and potentially other StorageTek employees, presumably under direction of SUN's managing agents, systematically erased the Netbula SDK software from their computers, thus destroying part of the evidence. | No. | No. |
| ¶85-86. multiple groups in StorageTek and SUN had copied and used the NT SDK, without internal control of the copying…many StorageTek employees, including Anton Vatcky and Scott Painter, made numerous copies of the NT SDK onto many computers without licenses, in violation of Plaintiff's copyright in the NT SDK. | No. | No. |
| ¶88-90. StorageTek developed REELS, LibAttach and LibAttach Integrators' Kit products with unauthorized copies of the NT SDK…The REELS, LibAttach and LibAttach Integrators' Kit products developed with unauthorized copies of NT SDK were thus infringing derivative works of Plaintiff's copyrighted software. | No. | No. |
| ¶93-95. The 2000 Agreement was restricted to the Windows NT/98/95 operating systems. StorageTek's engineers and managers knew the 2000 Agreement was for Windows NT/98/95 only. In March 2004, Michael Melnick wrote in an internal email stating that the 2000 Agreement was specific to Windows NT and 95/98 platforms). In July 2005, Michael Melnick acknowledged that the 2000 Agreement was for | Partial | Partial. |

-23-

| | | |
|---|---|---|
| Windows NT/98/95 only. Lisa Rady and Michael Abramovitz also knew that the PowerRPC software on the CD StorageTek received was for Windows Nt/98/95 only…Defendants developed LibAttach and LibAttach Integrators' Kit software for Windows 2000 with the NT SDK, without a license for Windows 2000…numerous third parties also used the LibAttach Integrators' Kit to create derivative works for unauthorized platforms. | | |
| ¶98-99. Defendants, and each of them, made, offered to sell, sold, and/or distributed copies of the infringing derivative works of the NT SDK, or contributed to these activities. | No. | No. |
| ¶101-104. StorageTek knew it only had the right to distribute 1000 copies under the 2000 Agreement…StorageTek further violated Plaintiff's copyright by granting "floating" licenses which permitted its customers to make unlimited number of copies of Plaintiff's software…Lisa Rady wrote the following about LibAttach: "There is no license key in the product, and it is apparent that the software has been copied, uncontrolled, for several years" and "engineering has not and did not monitor the distributions." Defendants thus further violated Plaintiff's copyright by willfully failing to monitor the copying of Plaintiff's software and willfully permitting others to make unauthorized copies. | No. | No. |
| ¶109. multiple StorageTek or SUN employees, including Abramovitz, had copied the 2003 SDK on multiple computers, without internal control of inside copying, violating Plaintiff's copyright in the 2003 SDK. | No. | No. |
| ¶111-114. StorageTek developed LibAttach and LibAttach Integrators' Kit products with unauthorized copies of the 2003 SDK…The LibAttach and LibAttach Integrators' Kit products developed with unauthorized copies of 2003 SDK were thus infringing derivative works of Plaintiff's copyrighted software. | No. | No. |

-24-

| | | |
|---|---|---|
| ¶116-120. Defendants distributed more than 1000 copies of the 2004 Runtime, without the proper licenses and in violation of Plaintiff's "2K4 copyright." Defendants further violated Plaintiff's copyright by willfully failing to monitor the copying of Plaintiff's software and willfully permitting others to make unauthorized copies…numerous third parties also used the infringing LibAttach Integrators' Kit which contained the 2004 Runtime to create derivative works without authorization. | No. | No. |
| Defendants knew that each copy of Plaintiff's software required a license. Defendants offered to sell unlimited licenses for LibAttach software which contained Plaintiff's copyrighted software, in violation of Plaintiff's copyright. Defendants sold unlimited licenses for LibAttach software which contained Plaintiff's copyrighted software to multiple customers, in violation of Plaintiff's copyright. | Partial | No. |
| Both the 2000 Agreement and 2004 Agreement were not transferable. Michael Melnick, representing StorageTek, stated that the agreements were not transferable and "would be terminated" upon SUN's acquisition of StorageTek… Defendants continued to use, copy, distribute, offer to sell and sell LibAttach and LibAttach Integrator's Kit software (which contained Plaintiff's software) after StorageTek became a subsidiary of SUN. | No. | Partial (the Court did not consider the effect of termination) |

## CONCLUSION

Plaintiff requests relief under FRCP 60(b)(3) because of SUN and its attorneys' misconduct and misrepresentations; Plaintiff requests relief under FRCP 60(b)(6) because of Judge Jenkins's refusal to disqualify himself and the manifest injustice in the decision.

-25-

1   Respectfully submitted,

2

3   Dated: April 30, 2008

4

5

6               DONGXIAO YUE (*Pro Se*)

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-26-