| | |
|---|---|
| 1 | LAURENCE F. PULGRAM (CSB NO. 115163) |
| | *lpulgram@fenwick.com* |
| 2 | JEDEDIAH WAKEFIELD (CSB NO. 178058) |
| | *jwakefield@fenwick.com* |
| 3 | LIWEN A. MAH (CSB NO. 239033) |
| | *lmah@fenwick.com* |
| 4 | FENWICK & WEST LLP |
| | 555 California Street, Suite 1200 |
| 5 | San Francisco, CA 94104 |
| | Telephone: (415) 875-2300 |
| 6 | Facsimile: (415) 281-1350 |

Attorneys for Named Defendants
SUN MICROSYSTEMS, INC.,
MICHAEL MELNICK, JULIE DECECCO,
MICHAEL P. ABRAMOVITZ, LISA K. RADY,
JONATHAN SCHWARTZ, CHORDIANT
SOFTWARE, INC., DEREK P. WITTE,
STEVEN R. SPRINGSTEEL, and OLIVER WILSON

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| DONGXIAO YUE,<br><br>    Plaintiff,<br>v.<br><br>STORAGE TECHNOLOGY CORPORATION, a Delaware corporation; SUN MICROSYSTEMS, INC., a Delaware corporation; MICHAEL MELNICK, an individual; JULIE DECECCO, an individual; MICHAEL P. ABRAMOVITZ, an individual; LISA K. RADY, an individual; JONATHAN SCHWARTZ, an individual; and DOES 1-1000, inclusive,<br><br>    Defendants. | Case No. C-07-05850-JW and<br>Case No. C-08-00019-JW<br><br>**DEFENDANTS' CONSOLIDATED SUPPLEMENTAL BRIEF IN OPPOSITION TO MOTIONS TO DISQUALIFY DEFENSE COUNSEL**<br><br>Date: June 30, 2008<br>Time: 9:00 a.m.<br>Courtroom: 8, 4th Floor<br>Judge: Honorable James Ware |
| DONGXIAO YUE,<br><br>    Plaintiff,<br>v.<br><br>CHORDIANT SOFTWARE, INC., a Delaware corporation; DEREK P. WITTE, an individual; STEVEN R. SPRINGSTEEL, an individual; and OLIVER WILSON, an individual,<br><br>    Defendants. | |

# TABLE OF CONTENTS

| | Page |
|---|---:|
| INTRODUCTION | 1 |
| ARGUMENT | 3 |
| I. AN EX-FENWICK ATTORNEY'S SERVICE AS AN EARLY NEUTRAL EVALUATOR IN AN UNRELATED LAWSUIT DOES NOT SUPPORT DISQUALIFICATION | 3 |
|     A. Notwithstanding Plaintiff's New Mischaracterizations of *Netbula v. Distinct*, The Cases Are Not Substantially Related | 3 |
|     B. Even if *Netbula v. Distinct* Were Substantially Related to the Present Cases, Current Fenwick Attorneys Would Not Be Presumed to Possess Confidential Information from an Ex-Fenwick Attorney | 6 |
|     C. Permitting Disqualification After Plaintiff's Unreasonable Delay Would Cause Extreme Prejudice. | 10 |
| II. NOTWITHSTANDING YUE AND BRILLET'S NEW DECLARATIONS, THE COMMUNICATIONS BETWEEN YUE AND FENWICK DO NOT FORM A BASIS FOR DISQUALIFICATION | 11 |
| CONCLUSION | 14 |
| APPENDIX A — TIMELINE OF NETBULA LITIGATION | 15 |

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*County of Los Angeles*,
    223 F.3d 990 (9th Cir. 2000) ................................................................................................ 9

*Elan Transdermal Ltd. v. Cygnus Therapeutic Sys.*,
    809 F. Supp. 1383 (N.D. Cal. 1992) ..................................................................................... 8

*Goldberg v. Warner/Chappel Music, Inc.*,
    125 Cal. App. 4th 752 (2005) .................................................................................... 7, 8, 10

*Hitachi, Ltd. v. Tatung. Co.*,
    419 F.Supp.2d 1158 (N.D. Cal. 2006) .............................................................................. 9, 10

*Marcum v. Channel Lumber Co.*,
    Case No. CV-94-2637-SC, 1995 U.S. Dist. LEXIS 3799
    (N.D. Cal. Mar. 27 1995) .................................................................................................... 13

*Merle Norman Cosmetics, Inc. v. Kemper*,
    856 F.2d 98 (9th Cir. 1988) ................................................................................................... 6

*River West Inc. v. Nickel*,
    188 Cal. App. 3d 1297 (1987) ............................................................................................ 11

**RULES**

ABA Model Rule of Professional Conduct 1.10(b) ..................................................................... 8

ABA Model Rule of Professional Conduct 1.12 ........................................................................ 10

California Rule of Professional Conduct 3-310(E) .................................................................... 10

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

SUPPLEMENTAL BRIEF IN OPPOSITION TO
MOTIONS FOR DISQUALIFICATION
-ii-
CASE NO. C-07-05850-JW and
CASE NO. C-08-00019-JW

Named Defendants in the above-captioned matters submit this Consolidated Supplemental Brief in Opposition to Plaintiff Dongxiao Yue's ("Yue," or "Plaintiff") Motions to Disqualify Defense Counsel Fenwick & West LLP ("Fenwick").

**INTRODUCTION**

In Plaintiff's Consolidated Reply, Plaintiff introduces several new legal arguments and factual allegations purporting to justify stripping Defendants of their chosen counsel who has represented them the last eighteen months in a series of related cases. As with his original arguments, each of Plaintiff's new allegations fails to meet the burden of justifying the drastic measure Plaintiff seeks.

*First*, Plaintiff offers new arguments as to how *Netbula v. Distinct*—the 2002 case in which an ex-Fenwick lawyer volunteered to conduct an ENE—is supposedly "substantially factually related" to the current lawsuits. But Plaintiff's new allegations, including his claims that *Netbula v. Distinct* involved copyright claims, are demonstrably false. The only *mention* of a copyright dispute in *Netbula v. Distinct* was a reference to an unrelated, short-lived squabble that Distinct and Netbula had resolved two years before *Netbula v. Distinct* was ever filed. The prior squabble was only mentioned in *Netbula v. Distinct* not as a cause of action, but as part of Distinct's false advertising counterclaims—which pointed out that Netbula had falsely claimed that a letter Netbula sent during the earlier squabble was somehow connected to the unrelated trademark lawsuit filed against Distinct years later. Ironically, Plaintiff now apparently hopes to capitalize on having been caught in a lie by Distinct, suggesting that because Distinct based its false advertising cause of action on the fact that *Netbula v. Distinct* was *unrelated* to the earlier copyright dispute, the case therefore "involved" a copyright dispute. By Plaintiff's reasoning, if a party points out that a matter neither looks nor walks nor quacks like a duck, it therefore "involves" a duck.

*Second*, Plaintiff introduces a new—and fundamentally misguided—legal argument in support of his imputed disqualification theory, arguing that because current Fenwick attorneys overlapped with Mr. Stern in 2002 and 2003, they are legally presumed to have shared confidences with him concerning his evaluation of the *Distinct* case. This argument profoundly

SUPPLEMENTAL BRIEF IN OPPOSITION TO MOTIONS FOR DISQUALIFICATION -1- CASE NO. C-07-05850-JW and CASE NO. C-08-00019-JW

misunderstands the law of imputed disqualification. Under governing California authority, where an *attorney* has presumed possession of confidential information, the attorney's *former* firm is *not* automatically disqualified. Rather, Plaintiff must prove that the firm's current attorneys actually possess confidential information. Plaintiff has failed to show that any Fenwick attorney learned confidential information concerning the ENE from Mr. Stern—who was under strict confidentiality obligations under Court's ADR local rules. Plaintiff's motion fails for this independent reason as well: even if one assumed the prior *Distinct* case was substantially related to the present case (which it is not), no knowledge could be imputed to attorneys not involved in the ENE.

*Third*, Plaintiff introduces new arguments in an attempt to justify his delay in raising the ENE issue, and to gloss over the significant prejudice that Defendants would suffer if forced to start over with new counsel at this late stage. Hoping to excuse his years of delay, Plaintiff now declares that he had a recent epiphany while "flipping through some old files," suddenly recognizing that the ENE had occurred at Fenwick. Declaration of Dongxiao Yue in Support of Reply Brief For Motion to Disqualify Defense Counsel ("Yue Reply Decl.") at ¶ 14. But Plaintiff fails to mention that his company, Netbula, was represented by the same attorney, Neil Smith, now of Sheppard Mullin, in both the *Bindview* case and the *Distinct* ENE. Smith—as Netbula's legal representative in the first case filed against a Fenwick client, and who personally had his deposition taken at Fenwick's offices in that case on two occasions—was undoubtedly aware that he was dealing with the same Fenwick & West. And in all events, Plaintiff admits that he personally recognized the issue in June or July of 2007, but offers no justification for failing to seek disqualification for another nine months. Plaintiff's argument that no prejudice would result from disqualification ignores defense counsel's significant investment of time during that period, to say nothing of the thousands of hours spent defending directly related cases against Netbula's copyright infringement, fraud, and breach of contract claims since 2006. It is precisely because of Fenwick's long track record of successfully defending against Plaintiff's claims that Plaintiff now seeks to disqualify the firm. But precisely because of that hard-fought experience and deep knowledge of Plaintiff's tactics, Defendants would be severely prejudiced by having to start over

with new counsel now.

*Fourth*, Yue introduces new allegations of supposedly improper communications between Fenwick and Plaintiff, coupled with new declarations from Yue and Netubla's former counsel, Vonnah Brillet. Yet these declarations offer nothing to support disqualification. Ms. Brillet now concedes that she received the emails about which Yue now complains, but she does not refute the fact that she never complained to Fenwick that the emails were improper in any respect. Even now, she does not claim that they are. Similarly, while Yue's declaration now introduces a hearsay allegation that Ms. Brillet told him that the communications were "willful violation of attorney ethics," Ms. Brillet's declaration, and the contemporaneous emails, say nothing of the sort. Neither Ms. Brillet, nor any of Netbula or Yue's subsequent counsel, has ever sought to disqualify Fenwick.

In the end, neither Yue nor Ms. Brillet's declarations change the facts: all of the communications concerned matters in which Yue was proceeding or attempting to proceed *pro se*, and they were sent with the knowledge and at least implicit approval of Netbula's counsel. And in all events, as these new allegations do nothing to show a continuing effect in the *STK II* or *Chordiant* case, Plaintiff's Motion to Disqualify Defense Counsel must be denied.

## ARGUMENT

### I. AN EX-FENWICK ATTORNEY'S SERVICE AS AN EARLY NEUTRAL EVALUATOR IN AN UNRELATED LAWSUIT DOES NOT SUPPORT DISQUALIFICATION

#### A. Notwithstanding Plaintiff's New Mischaracterizations of *Netbula v. Distinct*, The Cases Are Not Substantially Related.

In Plaintiff's Reply, Plaintiff significantly mischaracterizes the *Netbula v. Distinct* lawsuit, hoping to manufacture a factual connection between that matter and the current lawsuits, when in reality the cases are unrelated. Most significantly, Plaintiff now contends that the "*Netbula v. Distinct* case also involved copyright dispute." Reply at 5:15-16. It absolutely did not.

In support of his new argument, Plaintiff cites to a document request that referred to Paragraph 13 of Distinct's Supplemental Counterclaims. Yet Plaintiff fails to attach or cite anything in the *Netbula v. Distinct* record—and for good reason. *The only mention of a copyright*

*dispute in the Distinct case was a reference to an unrelated disagreement that Distinct and Netbula had resolved over 2 years before the Distinct case was ever filed. See* Supplemental Declaration of Jedediah Wakefield In Opposition to Motion to Disqualify Defense Counsel ("Supp. Wakefield Decl."), ¶¶ 4-5, Ex. B;[1] *see also* Timeline attached hereto as Appendix A.

In that earlier, separate dispute, Distinct had sent a letter accusing Netbula of copyright infringement in connection with Netbula's "JavaRPC" product.[2] Defending itself against that accusation, Netbula responded in an October 1999 letter by denying any wrongdoing and stating "we will not tolerate any unlawful activity that was designed to destroy our hard work, our intellectual property and our reputation." *Id.*, ¶ 5. Distinct apparently dropped the issue after that exchange. *Id.*

Over two years later, Netbula filed its unrelated trademark complaint against Distinct. Wakefield Decl., Ex. 1, Supp. Wakefield Decl., Ex. A. At the time, Netbula claimed on its website to have warned Distinct in 1999 that it would "not tolerate" interference with its rights. Supp. Wakefield Decl., ¶ 5, Ex. B (Distinct Supplemental Counterclaims, ¶¶ 12-13. Distinct rightly claimed that this was false and misleading, because the letter was about the earlier, unrelated copyright dispute that had long since been resolved, and had nothing to do with the *Netbula v. Distinct* case. *Id*. As Distinct put it at paragraph 13 of its counterclaims:

> Netbula does not explain that it sent the October 1999 letter two years earlier *in response to a demand letter* that Distinct sent to Netbula regarding Netbula's infringing activity. The letter was Netbula's attempt to defend itself when accused of copyright infringement and has no relationship with the current dispute whatsoever. By referencing the October 1999 letter at the beginning of the discussion of the current lawsuit, Netbula wrongly misleads the public into believing that Netbula complained about Distinct's allegedly infringing activities in 1999, and that Distinct ignored Netbula's complaint for over two years. Moreover, Netbula's inclusion of the information in the October 1999 letter in its posting about the current lawsuit will cause the public to conclude that Netbula directly contacted Distinct prior to filing the lawsuit regarding the trademark issues, which is not true.

---

[1] Citations to the original declaration of Jedediah Wakefield in Support of Opposition to Motion to Disqualify Defense Counsel, *Yue v. StorageTek* Docket No. 79, will use the reference "Wakefield Decl." Citations to the Supplemental Declaration of Jedediah Wakefield will use the reference "Supp. Wakefield Decl."

[2] JavaRPC is *not* at issue in any of Netbula's claims against Sun or Chordiant, and was not at issue in the *Distinct* lawsuit). Supp. Wakefield Decl., ¶ 5.

1  *Id.* (emphasis in original). After the ENE, Distinct was granted leave to file its counterclaims—
2  over Netbula's objection that the claims were "futile." *Id.*, ¶ 6, Ex. C. Shortly thereafter, the
3  *Netbula v. Distinct* case was dismissed. *Id.*, Ex. A.

Thus, *Netbula v. Distinct* simply was not, by any stretch of the imagination, a copyright case. The only reason Distinct referred to the 1999 copyright dispute was to point out that Netbula (through Yue) had misleadingly suggested to the public that the 1999 dispute and the 2002 disputes were related, when they were not. Remarkably, even though he was caught in this misrepresentation, Plaintiff now seeks to capitalize on it with a further distortion of the facts. Plaintiff's mischaracterization of the *Netbula v. Distinct* case is emblematic of his willingness to stretch reality to accomplish his tactical objectives.

Plaintiff also claims (again citing nothing in the record) that *Netbula v. Distinct* "was closely related to the market value of PowerRPC and JavaRPC, the licensing of these technologies and the RPC software market in general." Reply at 5:7-14. Plaintiff's new arguments find no support in the pleadings in the *Distinct* case. In its Complaint against Distinct, Netbula claimed that Distinct used the words "Netbula" and "PowerRPC" in metatags and as keywords to direct customers to its website. Wakefield Decl., Ex. 1. Distinct, in turn, responded that Netbula had mischaracterized the parties' discussions, and used Distinct's name improperly. Supp. Wakefield Decl., Ex. B. These claims are not at issue in either the *Yue v. Sun* or *Yue v. Chordiant* case, which involve no trademark or false advertising claims whatsoever.[3]

Yue also hopes to convince the Court that the current lawsuits are related to *Netbula v. Distinct*, because defense counsel asked questions about the *Distinct* case in Netbula's lawsuit against BindView and Symantec. But given the broad scope of permissible discovery, the fact that questions were asked about a separate lawsuit during a deposition does not make that case "substantially related" to anything. And Plaintiff's bald assertion that "Mr. Wakefield deposed Yue at great length about copyright and trademark dispute between Netbula and Distinct, involving both PowerRPC and JavaRPC" (Reply at 6:6-10) is wrong on all points. First, as

---

[3] In his Motion to Disqualify in the *Chordiant* case, Plaintiff did not even raise the *Netbula v. Distinct* ENE issue; it appeared for the first time in his "Consolidated Reply."

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1  discussed above, there was no "copyright and trademark dispute," but rather (1) a copyright
2  dispute in 1999, and (2) an unrelated trademark lawsuit in 2002. Second, while Yue says the
3  examination was "at great length," in truth the questioning comprised roughly 12 out of over 880
4  pages of transcripts. Moreover, the only substantive examination was about the 1999 letters
5  between Netbula and Distinct, *not* about the trademark suit, filed years later, that went to ENE.
6  Supp. Wakefield Decl., ¶ 7, Ex. D.

To recap: The *Netbula v. Distinct* complaint raised the issue of whether using a competitors' name to direct people to a website is trademark infringement. It did not address the "market value" of "technology" or "the RPC software market," as Plaintiff (citing no evidence whatsoever) now contends. Reply at 5:8-11. Neither party accused the other of copyright infringement, or of breaching a license agreement. At the broadest possible level, the two cases "involved" Netbula and its products, but such an abstract connection is far from the "substantial factual relation" that Plaintiff bears the burden of proving here. *See, e.g.*, *Merle Norman Cosmetics, Inc. v. Kemper*, 856 F.2d 98, 100-101 (9th Cir. 1988) (upholding denial of motion to dismiss; trademark matters not substantially related to antitrust claims regarding distribution system for cosmetics company, since nature of trademark work would not require attorneys to obtain confidential information that would be used in the antitrust action).

**B. Even if *Netbula v. Distinct* Were Substantially Related to the Present Cases, Current Fenwick Attorneys Would Not Be Presumed to Possess Confidential Information from an Ex-Fenwick Attorney.**

In his Reply, Plaintiff does not dispute that Claude Stern, the lawyer who conducted the ENE in the *Distinct* lawsuit, was long gone from Fenwick before the instant lawsuits were filed. Plaintiff also fails to refute the declaration from counsel that *no Fenwick lawyers* possess or have access to any confidential information about Netbula's 2002 trademark dispute. Instead, Plaintiff relies on a misguided argument that because certain Fenwick lawyers overlapped with Mr. Stern, all Fenwick lawyers are and forever will be conclusively presumed to possess all information Mr. Stern has ever possessed. *See* Reply at 7:3-13 (arguing that "there was nothing in 2002-2003 to rebut the presumption of shared confidences among Mr. Wakefield, Ms. Ellerbach and Claude Stern.") But there is no such presumption, and Plaintiff's understanding of the law of imputed

disqualification is fundamentally flawed. Governing California authority makes clear that a law firm does *not* have imputed knowledge of confidential information when the individual lawyer presumed to have that information no longer works there.

*Goldberg v. Warner/Chappel Music, Inc.*, 125 Cal. App. 4th 752 (2005) is on point. In *Goldberg*, the California Court of Appeals considered—and rejected —the argument on which Plaintiff's disqualification motion rests. In *Goldberg,* Eugene Salomon, then a lawyer at the firm of Mitchell Silberberg & Knupp LLP (MS & K), had given advice to plaintiff Ilene Goldberg concerning the terms of her employment contract with her employer Warner/Chappel Music, Inc. *Id.* at 754-55. The advice occurred during a consultation at MS & K in May 1997. *Id.* at 756. In October 2000, Salomon left MS & K. *Id.* at 757. In 2003, Goldberg filed suit against Warner for wrongful termination. *Id.* at 756. Goldberg moved to disqualify MS & K from representing Warner, arguing that Salomon's presumed knowledge of a former client's confidences should automatically cause vicarious disqualification of MS & K, even though Salomon had left MS & K well before the underlying lawsuit. *Id.* at 755. The Court rejected this argument, agreeing with the trial court that "an attorney's presumed possession of confidential information concerning a former client should not automatically cause the attorney's former firm to be vicariously disqualified where the evidence establishes that no one other than the departed attorney had any dealings with the client or obtained confidential information." *Id*. *Goldberg's* explanation is instructive on this point:

> [A]t some point, it ceases to make sense to apply a presumption of imputed knowledge as a lawyer moves from firm to firm. Salomon, while at MS & K, gave advice to Golberg concerning the terms of her contract with Warner. We agree with the trial court that, despite the informality, an attorney-client relationship existed between them. Moreover, if Salmon were still practicing at MS & K, MS & K would likely have to be disqualified from the current litigation because there would be no practical way of ensuring that, despite his best intentions, Salomon would not let slip some confidential information he may not even be aware that he possesses. *But Salomon is no longer with MS& K. We need not be concerned that he will inadvertently pass on confidential information to his colleagues in the future because he is no longer there* "in the lunch room" as the trial court said. It was appropriate under the circumstances for the trial court to make an assessment of whether Salomon actually passed on confidential information. Since the court found he had not, there was no basis for disqualification.

1    *Id.* at 762.

2    In rejecting imputed disqualification of an entire firm based on its ex-attorney's presumed knowledge, the court rejected the reasoning of *Elan Transdermal Ltd. v. Cygnus Therapeutic Sys.*, 809 F. Supp. 1383 (N.D. Cal. 1992), a patent case that involved disqualification of a firm that had merged with, but then "de-merged" from, a firm doing patent work for the defendant. *Goldberg*, 125 Cal. App. 4th at 764-65. The *Goldberg* court distinguished *Elan*, but also found that to the extent it found a "conclusive presumption" of shared confidences with former attorneys, *Elan* had "misconstrued California law." *Goldberg*, 125 Cal. App. 4th at 764-65. Again, the *Goldberg* court's explanation is instructive:

> If an attorney worked on a matter "substantially related" to the matter in which he or she seeks to represent a party adverse to a former client, the presumption is conclusive that the *attorney* is possessed of confidential information that would impact the present matter. Where the tainted attorneys and nontainted attorneys are working together at the same firm, there is not so much a conclusive presumption that confidential information has passed as a pragmatic recognition that the confidential information will work its way to the nontainted attorneys at some point. When, however, the relationship between the tainted attorneys and nontainted attorneys is in the past, there is no need to rely on the fiction of imputed knowledge to safeguard client confidentiality . . . ."

Goldberg, *Id*. at 765 (*emphasis in original, internal quotations omitted*).[4]

Under *Goldberg*, Plaintiff's new disqualification theory fails. The only lawyer who worked on the ENE was Mr. Stern, and he has not worked at Fenwick in years. There is no risk that he will inadvertently pass information to Fenwick attorneys. Thus, the relevant inquiry is whether Mr. Stern in fact passed on material, confidential information to Fenwick—something he absolutely did not do. See Wakefield Decl., ¶¶ 3-4, Declaration of Connie Ellerbach in

---

[4] The Court's view in *Goldberg* was also in line with the ABA Model Rules of Professional Conduct, which, although not binding, may be consulted when a matter is not addressed by the California Rules. *Id.* Model Rule 1.10(b) provides:

> When a lawyer has terminated an association with a firm, the firm is not prohibited from thereafter representing a person with interests materially adverse to those of a client represented by the formerly associated lawyer and not currently represented by the firm, unless (1) the matter is the same or substantially related to that in which the formerly associated lawyer represented the client; and (2) any lawyer remaining in the firm has [protected] information . . . that is material to the matter.

*Goldberg* at 765.

1  Opposition to Motion for Disqualification, ¶ 2, Declaration of Laurence Pulgram in Opposition to

2  Motion for Disqualification, ¶ 2; Declaration of Claude Stern in Opposition to Motion for

3  Disqualification, ¶¶ 4-7. Indeed, the Northern District's ADR Local Rules in effect in 2002—like

4  the rules today—imposed confidentiality on all participants in ENE proceedings, including

5  evaluators, and prohibited disclosure to anyone not involved in the litigation. Supp. Wakefield

6  Decl., ¶ 9, Ex. E (2002 ADR L.R. 5-12).

7  In the end, Plaintiff can point to no evidence that any Fenwick lawyer learned anything

8  confidential about the *Netbula v. Distinct* case. Thus, his motion to disqualify on the basis of that

9  ENE rests entirely on a fiction of imputed knowledge—a fiction that California law does not

10 recognize.

11  Plaintiff's reliance on *Hitachi, Ltd. v. Tatung. Co.*, 419 F.Supp.2d 1158 (N.D. Cal. 2006)

12 is also unavailing. Importantly, the Court in *Hitachi* did not rule that ethical screening was

13 impermissible when an attorney at a firm had served briefly as a *neutral* in a related case—such

14 screening being the solution approved of in *In re County of Los Angeles*, 223 F.3d 990, 995-96

15 (9th Cir. 2000). Rather, the court in *Hitachi* concluded that "even if the Court were to accept a

16 more flexible approach to the use of ethical walls, in the particular circumstances of this case the

17 screening procedures utilized in this case are insufficient . . . ." *Id.* at 1165. The "particular

18 circumstances" in *Hitachi* were nothing like the present actions. In *Hitachi*, an attorney working

19 at the firm retained to defend a patent litigation had personally represented the plaintiff in a

20 "nearly identical" patent litigation involving the *same* patents, the accused devices in the prior

21 action operated *virtually identically* to the accused products in later action, the attorney had billed

22 a significant amount of time on earlier matter, and there were only six intellectual property

23 attorneys in the office handling current action. *Id.* at 1164-65. In contrast, no Fenwick attorney

24 represented Netbula or Yue, and Mr. Stern worked only briefly to provide an early neutral

1  evaluation, and the matters are tangentially related at best.[5]

2  **C. Permitting Disqualification After Plaintiff's Unreasonable Delay Would Cause Extreme Prejudice.**

3

4  Plaintiff next attempts to excuse his years of delay in raising the ENE issue, by declaring

5  that he happened to be "flipping through some old files," and suddenly recognized that the ENE

6  had occurred at Fenwick. Yue Reply Decl. at ¶ 14. But Plaintiff fails to mention that Neil Smith,

7  now of Sheppard Mullin, represented Netbula in both the *Distinct* case, in which Smith attended

8  the ENE at Fenwick's offices, and in the *Bindview* case, in which he personally filed the action,

9  participated in settlement negotiations with Fenwick lawyers, and later had his deposition taken

10  on two occasions at Fenwick's offices. Supp. Wakefield Decl., ¶ 8. Mr. Smith was undoubtedly

11  aware that he was dealing with the same Fenwick. Yet he, as counsel to Netbula, never raised the

12  issue of any purported relationship of the *Distinct* matter and Netbula's subsequent copyright

13  infringement claims that Fenwick defended.

14  Moreover, even Yue admits that he personally recognized the Fenwick ENE connection in

15  June or July of 2007. Reply at 7:14-15. Yet he failed to seek disqualification until March 2008.

16  In those intervening months, Fenwick attorneys invested tremendous time and effort on the

17  present cases. Wakefield Reply Decl., ¶ 11. Between July 2007 and March 2008, Fenwick

18  attorneys and paralegals spent over 1600 hours on the *STK I* and *STK II* cases. *Id.* During this

19  time, Fenwick attorneys analyzed voluminous documentation, interviewed witnesses and

20  prepared for depositions, took Yue's deposition, and conducted extensive legal research and

---

[5] While *Hitachi* was decided under California Rule of Professional Conduct 3-310(E), which applies to a lawyer's successive representation of *clients*, the California Rules of Professional Conduct are silent on the issue of conflicts relating to neutrals in an ADR setting. Under the circumstances, courts applying California law may look to the ABA Model Rules. *See Goldberg*, 125 Cal. App. 4th at 755. ABA Model Rule 1.12 that a lawyer shall not represent anyone "in connection with a matter in which the lawyer participated personally and substantially" as a third-party neutral, without consent. However, it makes clear that screening the disqualified lawyer is an appropriate solution: "no lawyer in a firm with which that lawyer is associated may knowingly undertake or continue representation in the matter unless: (1) ***the disqualified lawyer is timely screened from participation in the matter and is apportioned no part of the fee therefrom***" and (2) written notice is promptly given to the parties and ay appropriate tribunal to enable them to ascertain compliance with the provisions of this rule." (emphasis added). Under this Rule, even if Mr. Stern were still at Fenwick (which he is not), and even if this were the *same* matter as the *Netbula v. Distinct* case (which it isn't), screening from participation in the current matter would be an appropriate solution.

analysis, culminating in the successful summary judgment motion on Netbula's copyright claims. *Id.* And over the life of the copyright cases Fenwick has defended against Netbula and Yue—cases the Court has deemed to be related—Fenwick attorneys have spent over 8,000 hours.[6] *Id.* They have worked closely with technical experts and taken expert discovery. *Id.* They understand and are familiar with the technical nature of Netbula's software, the peculiar operations of his business, his use of assumed names in his business operations, the tortured history of his copyright registrations, and the details of Plaintiff's licensing scheme. *Id.* Forcing defendants to obtain new counsel now would impose precisely the sort of extreme prejudice under which disqualification is improper. *River West Inc. v. Nickel*, 188 Cal. App. 3d 1297, 1313 (1987) (where counsel engaged in over 3,000 hours of litigation effort, and there was presumably substantial work product in counsel's hands, "the law must assume an implied waiver of the right to disqualify [counsel]."

Plaintiff undoubtedly would like nothing more than to deprive Defendants of the benefit of this extensive knowledge and work product, and to force Defendants to incur even more unnecessary fees as new counsel work to understand the exceedingly complex record of these related cases. But having sat on his hands for years while Fenwick worked extensively on the successful defense of these related cases, Plaintiff is estopped from seeking disqualification based on the ENE issue now.

## II. NOTWITHSTANDING YUE AND BRILLET'S NEW DECLARATIONS, THE COMMUNICATIONS BETWEEN YUE AND FENWICK DO NOT FORM A BASIS FOR DISQUALIFICATION

Plaintiff's Reply also introduces new allegations of supposedly improper communications between Fenwick and Plaintiff, coupled with new declarations from Yue and Netubla's former counsel, Vonnah Brillet. The facts alleged in these new declarations, as with Yue's original allegations, do not warrant disqualification.

Ms. Brillet's declaration fails to rebut any of the points raised in Defendants' Opposition.

---

[6] Recognizing the close relationship between the issues in the *Bindview* case and the current cases, the Court not only deemed the cases related, but has already modified the Protective Order in the *Bindview* case to permit use of discovery taken by Fenwick in the that case in the present action. Case C-060cv-00711-MJJ, Docket 326.

| | |
|---|---|
| 1 | She does not deny that Yue was not only threatening to file *STK II*, but was proceeding or |
| 2 | attempting to proceed *pro se* in *STK I* as well, including (1) filing a motion to intervene, (2) |
| 3 | seeking a preliminary injunction, (3) threatening to bring a sanctions motion and demand an |
| 4 | "integrity hearing," and (4) filing a *pro se* opposition to Defendants' administrative motion |
| 5 | concerning the summary judgment motion. Wakefield Decl., ¶¶ 5-11. She does not deny |
| 6 | receiving all of the emails regarding these matters, and failing to complain that they were |
| 7 | improper in any way. |
| 8 | In her declaration, Ms. Brillet now claims to have spoken with defense counsel regarding |
| 9 | the communications with Yue, and to have been "assured that all such communications were |
| 10 | restricted to matters in which Yue was a *pro se* litigant." But he was a *pro se* litigant in *STK I*, |
| 11 | and she does not contend that any communications with Yue were unrelated to his *pro se* |
| 12 | activities. Further, it is undisputed that Ms. Brillet was copied on every communication at issue |
| 13 | between Fenwick and Yue pertaining to *STK I*—all of which were emails, and none of which |
| 14 | were oral. She was thus always able to assess the propriety of every communication, and whether |
| 15 | it was restricted to a *pro se* role. She never once complained otherwise. Further, while her |
| 16 | declaration states that she did not "encourage" direct communications, she now admits "I could |
| 17 | have worded it differently to avoid any confusion." Supplemental Wakefield Decl.,¶12, Ex. F |
| 18 | (May 27, 2008 Brillet email). |
| 19 | There is also a stunning disconnect between what Ms. Brillet is willing to say in her |
| 20 | declaration, and what Yue *claims* she told him. In his new declaration, Yue submits hearsay that |
| 21 | Ms. Brillet "stated that Mr. Pulgram willfully violated attorney ethics." Yet Ms. Brillet's |
| 22 | testimony says nothing of the sort. Yue further claims that Mr. Pulgram gave "advice to Judge |
| 23 | Martin J. Jenkins to exclude Yue" during an October 31, 2007 hearing. Reply at 12:14-15. But |
| 24 | Ms. Brillet, who actually participated in that hearing, says nothing of the sort, nor could she |
| 25 | truthfully do so. Supp. Wakefield Decl. ¶ 13. |
| 26 | In the end, neither Yue nor Ms. Brillet's declarations change the facts: the |
| 27 | communications concerned issues as to which Yue was proceeding or attempting to proceed *pro* |
| 28 | *se*, and they were received—without any objection—by Netbula's legal counsel. The "examples" |

of supposedly improper communications Yue provides in his Reply confirm this. For instance, while Plaintiff now claims that communications concerning his efforts to substitute as Plaintiff in *STK I* were improper (Reply at 8:23-9:1), he forgets that in his *pro se* capacity, he had personally sought a stipulation from counsel allowing him to substitute as Plaintiff. See Wakefield Decl. Ex. 5 (October 26, 2007 Yue email stating "For judicial economy, I think it's far efficient [sic] for you to stipulate to the substitution of party by replacing Dongxiao Yue as the copyright plaintiff in the C06-07391-MJJ case. If you do not stipulate to the substitution, I will commence the new action next week.").[7] Similarly, Yue's complaint about an October 25, 2007 communication concerning Sun's summary judgment motion (Reply 9:3-12) overlooks the fact that Yue—not Netbula—had personally threatened to bring a *motion for sanctions* unless Sun withdrew that motion. See Wakefield Decl., ¶17, Ex. 6. Yue also threatened a motion to strike and to request an "emergency motion for integrity hearing," and later, Yue, acting *pro se*, filed an opposition to Sun's motion to have the summary judgment declaration considered. Wakefield Decl., ¶ 9, *STK I* Docket 90. Finally, the October 31, 2007 email Yue now cites concerned Yue's threat to breach a confidentiality agreement in one of his *pro se* filings. Reply at 9:19-25. These communications all concerned Yue's *pro se* activities, and were entirely appropriate.

In all events, these new allegations do nothing to show a *continuing effect* in the *Yue v. StorageTek* or *Yue v. Chordiant* case. *Marcum v. Channel Lumber Co.*, Case No. CV-94-2637-SC, 1995 U.S. Dist. LEXIS 3799, at *4 (N.D. Cal. Mar. 27 1995) (disqualification not proper to punish a transgression which has no substantial continuing effect on the judicial proceedings to occur in the future). The examples of supposed prejudice Plaintiff cites in his Reply are unavailing. Yue argues that Defendants' warning that they would seek attorneys' fees "was highly prejudicial" (Reply at 12:14-16), but he fails to explain how. As is evident by the record, Plaintiff was undeterred by any admonitions from defense counsel or the Court. Similarly, Plaintiff now claims to have been prejudiced by an email from Mr. Pulgram, sent to both Ms.

---

[7] This email was sent to Laurence Pulgram, and copied to Vonnah Brillet, shortly before noon on October 26, 2007. Wakefield Decl., Ex. 11. Ms. Brillet, evidently recognizing that this was yet another attempt by Yue to proceed *pro se*, did not intervene or indicate in any way that she was representing Yue with respect to his attempt to secure a stipulation, or his alternative threat to bring a separate action.

1 Brillet and Plaintiff, which stated "I do not know why it would be assumed, without more, that
2 this order precludes filings that specifically relate to claims as to which Dr. Yue actually is a
3 party," Mr. Pulgram was asking Yue to file a motion, and "violate an explicit court order, which
4 may result in contempt proceedings against Yue." Yue's claim that this "advice" was "highly
5 prejudicial" is absurd—neither he, nor Ms. Brillet, filed the motion that he claims Mr. Pulgram
6 "asked" him to file, and there was no "violation of an explicit order" or "contempt proceeding" as
7 a result of anything Fenwick did.

In the end, even if Plaintiff could show some transgression in the communications in question—which he cannot—his failure to identify a substantial continuing effect is fatal to his motion. Under the circumstances, granting Plaintiff's motion would merely undermine the integrity of the judicial process that such motions are meant to protect.

## **CONCLUSION**

For the foregoing reasons, and the reasons provided in Defendants Opposition Brief, Defendants respectfully request that the Court deny Plaintiff's Motion for Disqualification of Defense Counsel.

Dated: June 3, 2008

Respectfully submitted,

FENWICK & WEST LLP

By: ___/s/ Jedediah Wakefield___
Jedediah Wakefield

Attorneys for Named Defendants
SUN MICROSYSTEMS, INC.,
MICHAEL MELNICK, JULIE DECECCO,
MICHAEL P. ABRAMOVITZ, LISA K.
RADY, JONATHAN SCHWARTZ
CHORDIANT SOFTWARE, INC., DEREK P.
WITTE, STEVEN R. SPRINGSTEEL, and
OLIVER WILSON

# APPENDIX A — TIMELINE OF NETBULA LITIGATION

| | |
|---|---|
| 1999 | ***Distinct v. Netbula*:** Distinct writes letter accusing Netbula of copying code for Java-based product. In October 1999, Yue sends letter denying infringement and stating "we will not tolerate any unlawful activity that was designed to destroy our hard work, our intellectual property and our reputation." No action filed. <br><br> *See* Supp. Wakefield Decl., Ex. B (Distinct Suppl. Counterclaims, ¶¶ 12-13). |
| March 2002 | ***Netbula v. Distinct*, No. C-02-1253-JL:** Netbula—represented by Neil Smith, now of Sheppard Mullin—sues Distinct for using its name and trademark in "metatags" and Internet keyword ads. *Neither party asserts claims for copyright infringement* In November 2002, Claude Stern, then at Fenwick, conducts ENE. <br><br> In January 2003, Distinct is granted leave to file supplemental counterclaims for false advertising. In supplemental counterclaims, Distinct complains that Netbula's inclusion of the information in the October 1999 letter, above, in Internet posting about the 2002 lawsuit is misleading. Case dismissed after settlement conference before Judge Spero. <br><br> *See* Supp. Wakefield Decl., ¶¶ 3-6, Exs A-C. |
| January 2006 | ***Netbula, LLC v. BindView Development Corp.*, Case No. 06-0711-MJJ-WDB:** Netbula sues BindView, Symantec and others for allegedly making unauthorized copies of PowerRPC software. Fenwick represents Defendants. Netbula—again represented by Neil Smith—does not allege any conflict resulting from the earlier ENE. <br><br> Fenwick conducts extensive discovery on the authorship and originality of PowerRPC. Court grants summary judgment on copyright, breach of contract and fraud claims. Case dismissed. |
| December 2006 | ***Nebula v. StorageTek, Sun* ("*STK I*"):** Netbula sues Sun and others for allegedly making unauthorized copies of PowerRPC software. Court finds case related to *BindView*. Sun and other defendants obtain summary judgment on Plaintiff's copyright claim. <br><br> Fenwick represents Defendants. Netbula—represented by counsel—has not moved for disqualification. |
| November 2007 | ***Yue v. StorageTek, Sun* ("*STK II*"):** Yue files duplicative lawsuit against Sun, StorageTek for copyright infringement. Fenwick represents Defendants. Motion to dismiss granted, judgment entered for Defendants. Plaintiff has appealed, filed motion to disqualify Judge Jenkins, motion to disqualify defense counsel, and 60(b) motion. |
| January 2008 | **Yue v. Chordiant:** Yue files copyright infringement lawsuit against Chordiant for allegedly making unauthorized copies of PowerRPC software. Fenwick represents Defendants. Court rules that Chordiant and *STK I* cases are related. |