DONGXIAO YUE
2777 ALVARADO ST., SUITE C
SAN LEANDRO, CA 94577
Telephone:     (510) 396-0012
Facsimile:     (510) 291-2237
E-Mail:        ydx@netbula.com

*Pro Se*

**FILED**

JUN 2 6 2008

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

DONGXIAO YUE,

          Plaintiff,

    v.

Storage Technology Corporation, et al.,

          Defendants.

-----------------------------------------------------

DONGXIAO YUE,

          Plaintiff,

    v.

Chordiant Software, Inc., et al.,

Case Nos. C07-05850-JW and
        C08-0019-JW

**PLAINTIFF'S CONSOLIDATED REPLY
TO DEFENDANTS' SUPPLEMENTAL
BRIEF IN SUPPORT OF PLAINTIFF'S
MOTIONS TO DISQUALIFY DEFENSE
COUNSEL FENWICK & WEST, LLP
AND LAURENCE PULGRAM**

Date: June 30, 2008
Time:  9:00 AM
Dept: 8, 4th Floor
Judge: Honorable James Ware

-1-

1    Plaintiff files this Reply Brief in response to Defendants' Consolidated Supplemental Brief

2    filed on June 24, 2008. Defendants have previously represented to the Court that Plaintiff could

3    file a further reply. This Reply Brief is supported by the declaration of Dongxiao Yue ("Yue June

4    26 Decl."), and Plaintiff's Request for Judicial Notice of Defense Counsel's Admissions ("RJN"),

5    which are being filed concurrently. This Reply is necessary to expose some of Defense Counsel's

6

7    false or misleading representations to the Court and help ensure the integrity of the judicial

8    process. Due to the time constraint, Plaintiff will only address some of the issues raised in

9    Defendants' Supplemental Brief.

10                              **BACKGROUND**

11    Partly on the ground that "Yue and Netbula provided information to Fenwick & West in

12    confidence during the ENE session about PowerRPC and JavaRPC", in March 2008, Plaintiff filed

13    a motion to disqualify Defense Counsel in the *Yue v. StorageTek* (No. C07-05850-JW) case

14    ("*StorageTek*"). Case C07-05850-JW, Docket No. 65, p.4:18-19 (Plaintiff's motion to disqualify).

15

16    Defense Counsel, in their opposition, claimed that "that[ *Distinct*] case was unrelated to the

17    present controversy." Docket No. 78 of the *StorageTek* case, p.6:15-16.

18    In response, Plaintiff quoted Defense Counsel's own words which stated that *Distinct* case

19    is highly relevant to the related cases. Docket No. 84 of the *StorageTek* case, pp.5:6-6:9.

20    Plaintiff also refuted Defense Counsel's other contentions, mostly by offering their own

21

22    words against them. See Docket No. 85 of the *StorageTek* case, at ¶¶ 11-12, 20.

23    Subsequently, Defense Counsel filed an administrative motion to file a supplemental brief,

24    claiming that Plaintiff "ambushed" them. Defendants submitted four witnesses. Plaintiff requested

25    to take the deposition of Claude M. Stern, the Early Neutral in the *Distinct* case, and the three

26                                   -2-

27
28

1  Fenwick attorneys. Defendants opposed the request to take the deposition of Claude M. Stern, et al.

2  The Court granted Defendants' motion for leave to file the supplemental brief on June 24, 2008.

3                                      **ARGUMENT**

4  **1. Defense Counsel Made Misrepresentations and Showed a Lack of Candor Before the
5       Court**

6      After being caught making false or misleading representations to the Court, in their

7  Supplemental Brief, Defense Counsel again alleges that *Distinct* case is unrelated to the instant

8  cases. They even accuse Plaintiff of "further distortion of the facts." Defendants' Supplemental

9  Brief, p. 5:7-8. This is quite remarkable, because Plaintiff was merely offering Defense Counsel's
10
    own word against them. Defense Counsel told those words to Judge Jenkins and Judge Brazil. The
11
12  Court and the parties relied on Defense Counsel's prior representations. See below.

13     In the *Netbula v. BindView Development Corporation* case (C06-0711-MJJ-WDB), Defense

14  Counsel made the following Document Request, which they later filed with the Court:

15
16  <u>**DOCUMENT REQUEST NO. 22**</u>

17       All DOCUMENTS CONCERNING alleged copyright infringement by NETBULA,

18  including but not limited to DOCUMENTS CONCERNING accusations by DISTINCT that

19  NETBULA was engaged in copyright infringement, as set forth in Paragraph 13 of Defendant

20  Distinct Corporation's Supplemental Counterclaims, *Netbula, LLC v. Distinct Corp.*, Case No. C-
    02-1253-JL (N.D. Cal.).
21
22  Dated: October 12, 2006                    FENWICK & WEST LLP

23                                             By: _____
24                                                   Jedediah Wakefield

25

26                                             -3-

27  _____
    Case Nos. C07-05850-JW, C08-0019-JW        PLAINTIFF'S REPLY TO DEFENDANTS'
28                                              SUPPLEMENTAL BRIEF RE DISQUALIFICATION

1  Case C06-0711-MJJ-WDB, Doc. No. 62, p.57:1-13, exhibit 8 to the declaration of Wakefield in

2  support of defendants' motion for sanctions.

3      Defense Counsel later filed with the Court a letter Mr. Wakefield wrote, which stated in part:

4
5          Netbula has produced a single document, a letter sent by counsel for
           Distinct Corporation ("Distinct") alleging that PowerRPC infringed
6          Distinct's copyright…

7  Case C06-0711-MJJ-WDB, Doc. No. 85, p.40, exhibit E to the declaration of Albert Sieber in

8  support of defendants' motion for sanctions.

9      In another motion for sanctions in the BindView case, Defense Counsel stated:

10         Defendants noted in their March 9 letter that Netbula had apparently
11         failed to produce **highly relevant** documents related to **a previous
           intellectual property dispute between Netbula and a third party
12         named Distinct Corporation** ("Distinct") that were specifically called
           for by Document Request No. 22. In its February 28 production,
13         Netbula had produced a document in response to this request—a letter
           from **Distinct accusing Netbula's PowerRPC software of copyright
14         infringement** and demanding a response. See **Sieber Reply Decl. ¶ 7.**

15 Case C06-0711-MJJ-WDB, Doc. No. 112, pp.13:26-14:5, Defendants' "Reply Brief In Support of

16 Motion to Enforce Prior Court Order and For Sanctions", filed by Jed Wakefield (emphasis added).

17
18     Albert Sieber, in his supporting declaration, stated,

19         Netbula had produced only a single document in response to Document
           Request 22, seeking all documents concerning alleged copyright
20         infringement by Netbula, and **specifically documents related to
           allegations of infringement made by Distinct Corporation** ("Distinct").
21         The only document produced by Netbula in its February 28 production
           was a letter from Distinct alleging that Netbula was infringing its
22         copyright, in which Distinct demanded response from Netbula.

23 Case C06-711-MJJ-WDB, Doc. No. 113-1, p.3:21-25, Sieber declaration at ¶ 7(emphasis added).

24
25     For the Court's convenience, Plaintiff has extracted the relevant pages from the above

   court filings and attached as exhibits to the Request for Judicial Notice.
26                                        -4-

27 Case Nos. C07-05850-JW, C08-0019-JW            PLAINTIFF'S REPLY TO DEFENDANTS'
                                                  SUPPLEMENTAL BRIEF RE DISQUALIFICATION
28

1    Relying on Defense Counsel's representations about the "highly relevant" *Distinct*

2  documents regarding "copyright infringement" of "PowerRPC", Judge Brazil granted Defendants'

3  motion, in part.

4    Now, Defense Counsel tells the Court a different story: they now say the *Distinct* case is

5  completely irrelevant to the instant cases.

6

7    By falsely representing the facts to the Court, Defense Counsel has severely prejudiced and

8  is continuing to prejudice Plaintiff. Such unethical conduct should be stopped.

9    **2. Defense Counsel's Deep Knowledge of the Distinct Case is Unexplained**

10    Plaintiff did not have a copy of *Distinct*'s supplemental counter-claim. Yue June 26 Decl.

11  at ¶¶ 6-8. Now, in order to avoid being disqualified, Defense Counsel produced many documents

12  from the *Distinct* case, one of purported to be a "true and correct copy" of the *Distinct*

13  supplemental counter-claim (see Exhibit B to the Supp. Declaration of Wakefield). However,

14  Defense Counsel made no attempt to authenticate this document with personal knowledge and

15  chain of custody. Plaintiff cannot verify that the *Distinct* counter-claim document presented by

16

17  Fenwick is authentic. *Id.* at ¶ 9.

18    **3. Claude M. Stern's Declaration Shows Probable Sharing of Confidences**

19    Claude M. Stern served as the Early Neutral in the *Netbula v. Distinct* dispute. As a

20  witness on the *Netbula v. Distinct* ENE question, Mr. Stern states the following:

21

22    ***As far as I can recall***, I did not discuss or disclose any confidential
     information concerning the *Netbula v. Distinct* case to anyone at
23    Fenwick…

24    …I have asked my secretary Dandra Nichols to conduct a search of the
     file database reflecting what files I brought with me from Fenwick &
25    West to Quinn Emanuel. I have been informed by Sandra and believe that
     we have no file at Quinn Emanuel relating to the *Netbula v. Distinct* ENE.
26
                                    -5-

27 
PLAINTIFF'S REPLY TO DEFENDANTS'
                                    SUPPLEMENTAL BRIEF RE DISQUALIFICATION
28

1

2

3

> Based on this information, I have concluded that I destroyed the *Netbula v. Distinct* file either before I left Fenwick & West or shortly thereafter. Since I was the sole neutral in the *Netbula v. Distinct* matter, it would not have been my practice to leave that file at Fenwick & West upon my departure from that firm.

4

C07-05850-JW, Doc. No., 119, Claude Stern Decl. at ¶¶ 5-6 (emphasis added).

5

6

7

8

9

10

   Regarding discussing or disclosing confidences about the *Distinct* case, Mr. Stern is unwilling to make a definitive statement. He qualified his statement with "as far as I can recall", subject to his limitations of his memory. Mr. Stern made no assertion that he instituted an ethical-wall to protect the ENE files. This means that the confidential information he obtained had probably been shared within Fenwick, either intentionally or accidentally.

11

12

13

14

15

16

17

18

   Regarding the confidential ENE documents, Mr. Stern was basically making a string of deductions: his secretary told him that no ENE files were found in his "file database", relying on the truth of this statement by the secretary, he concluded that he destroyed the *Netbula v. Distinct* ENE files before or after he left Fenwick. Such possible inferences derived from hearsay are not evidence. Mr. Stern did not even allege that "the file database" is the only possible place to search for such documents. Since Mr. Stern admitted that he basically lost track of the ENE files, it is entirely possible that Mr. Stern left the ENE files at Fenwick but forgot that he did.

19

20

21

22

   Mr. Stern also does not aver that no electronic or hard copies of the ENE files had been made when he was at Fenwick. Thus, it is possible that copies of these files were left in Fenwick's offices or computers.

23

24

**4. The Sharing Of Confidences within Fenwick While Mr. Stern Was There Is Presumed**

   Defendants now rely on *Goldberg v. Warner/Chappell Music, Inc.*, 125 Cal.App.4th 752

25

26

(2005) for the argument that the presumption of shared confidences can be rebutted. *Goldberg* can

27

28

-6-

1  be distinguished because in that case there was only an "informal and brief" meeting between the

2  attorney and the client. In *Goldberg[1]*, the court noted that:

3

4       "The evidence is undisputed that [MS&K] and Salomon never opened a
     file for Ms. Goldberg. They never billed her. There are no notes or

5       records in their files about the meeting and no documents were prepared.
     No telephone calls were made. It was simply a meeting late one afternoon

6       where Ms. Goldberg and Mr. Salomon sat down and discussed the
     meaning of the employment contract she was being offered and what

7       provisions she might request. ... There is no evidence that Mr. Salomon
     talked to anyone about this matter when he was with [MS&K]. And more

8       importantly, he had left the firm approximately three years before this
     matter began. There is no fear of him talking about the case in the lunch

9       room, or having his files seen by other members of the firm, as he is no

10       longer there."

11  *Id.* at 758. The *Goldberg* court concluded that "[i]t was appropriate ***under the circumstances*** for

12  the trial court to make an assessment of whether Salomon actually passed on confidential

13  information." *Id.* at 762 (emphasis added).

14

15       The circumstances of instant case are qualitatively different. Mr. Stern opened files on the

16  *Netbula v. Distinct* ENE. He prepared documents, arranged multiple phone calls, made reports.

17  The ENE was very formal and lasted from the morning to the afternoon. There were

18  communications with Mr. Stern regarding the *Distinct* case before and after the ENE. Mr. Stern's

19  secretary at Fenwick was closely involved in the ENE. Mr. Stern obtained confidential documents

20  from Netbula and Yue. He also obtained confidences from Yue about PowerRPC and JavaRPC

21

22  ---

23  [1] The facts in the instant case are closer to those in the case of *In Re CHARLISSE C.*, 149 Cal.App.4th 1554
(2007). In that case, the California Court of Appeal reversed a disqualification order, primarily relying on
*Goldberg*. "If the attorney or attorneys who personally would be disqualified have left the firm, then

24  disqualification of the firm may not be required." *Id.* at 1570. However, the Supreme Court of California
granted certiorari on July 18, 2007, thus making *Goldberg* a questionable authority.

25

26

27  Case Nos. C07-05850-JW, C08-0019-JW      PLAINTIFF'S REPLY TO DEFENDANTS'
    SUPPLEMENTAL BRIEF RE DISQUALIFICATION

28

1    copyright and trademark issues in private discussions. Yue June 26 Decl. ¶¶10-16. Around that

2    time, Mr. Jed Wakefield was working closely with Mr. Stern on similar cases. Mr. Stern did not

3    claim to maintain any ethical-wall back then. Now, Mr. Stern can not find the *Netbula v. Distinct*

4    ENE files. And Fenwick & West seems to possess every document from that dispute.

5
          Under these circumstances, it is conclusively presumed that Mr. Stern shared the
6
      confidences with others at Fenwick, including other attorneys and secretaries, while he was at
7
8     Fenwick. Even if this presumption is rebuttable, there was nothing to rebut the presumption. The

9     other Fenwick attorneys and employees who were working with Mr. Stern had presumptively

10    shared the confidences and became "tainted". These "tainted" people could not suddenly become

11    "untainted" simply because Mr. Stern left Fenwick.

12
          On June 3, 2008, Fenwick & West presented the declarations of four witnesses, including
13
      the declaration of Mr. Stern, attempting to show that there was no actual sharing of confidences.
14
15    The next day, June 4, 2008, Plaintiff noticed them for depositions about the *Distinct* ENE and

16    "[f]acts alleged in deponent's declaration or other submissions to the U.S. District Court in

17    opposition to Plaintiff's motion to disqualify Fenwick & West, LLP." (See deposition notices

18    attached to Doc. No. 110).  However, these four witnesses refused to be cross-examined by

19    deposition as permitted by FRCP 43 (c).
20
          Mr. Stern stated that he left Fenwick in 2003. His declaration listed Defense Counsel as his
21
22    contacts. Plaintiff sent a deposition notice for Mr. Stern on June 4, 2008, via Defense Counsel.

23    Now, Defense Counsel states that they had no intention to forward the deposition notice to Mr.

24    Stern. Yue June 26 Decl. at ¶18.

25          Essentially, Defense Counsel is hiding their key witness – Mr. Stern.

26                                                    -8-

27    | Case Nos. C07-05850-JW, C08-0019-JW | PLAINTIFF'S REPLY TO DEFENDANTS' |
28    |                                     | SUPPLEMENTAL BRIEF RE DISQUALIFICATION |

### 5.    There Was No Extreme Prejudice to Defendants

Fenwick does not provide the number of hours for the instant C07-05850-JW and C08-0019-JW cases, but it claims in their Supplemental Brief that they should not be disqualified because they already billed over 8000 hours of attorney time on their other clients in the related cases. These hours translate into large amount of fees. But Fenwick & West cannot ethically and conscientiously profit by taking advantage of the confidences acquired in the *Distinct* ENE and at the expense of Plaintiff's property rights. As shown above, Fenwick & West attorneys have already taken advantage of their knowledge of the *Distinct* case, by making the representations before Judge Brazil and Judge Jenkins that Distinct accused PowerRPC of copyright infringement. Yue June 26 Decl. ¶¶2-9; RJN, Ex. A-E. It will be unfair for Fenwick & West to continue taking advantage of Plaintiff in the instant cases, armed with the confidences Fenwick & West presumably obtained from the *Distinct* ENE. They profited enough at Plaintiff's expense already.

Allowing Fenwick to continue to oppose Plaintiff will severely damage litigants' confidence and trust in the ADR process and the judicial process in general. As courts recognize:

> The paramount concern [in disqualification proceedings] must be to preserve public trust in the scrupulous administration of justice and the integrity of the bar. The important right to counsel of one's choice must yield to ethical considerations that affect the fundamental principles of our judicial process. Such important ethical considerations include the attorney's duties of confidentiality and loyalty.

*Med-Trans, v. City of CA.*, 156 Cal.App.4th 655, 664 (2007) (internal citations omitted).

Plaintiff informed Fenwick & West about the grounds of disqualification – the *Distinct* ENE – in July 2007. Fenwick & West should have disqualified itself since then. "The rule is designed not alone to prevent the dishonest practitioner from fraudulent conduct," but also to keep honest attorneys from having to choose between conflicting duties, or being tempted to reconcile

-9-

1   conflicting interests, rather than fully pursuing their clients' rights. (*Anderson v. Eaton* (1930) 211

2   Cal. 113, 116 [293 P. 788].)

3       **6.    Defense Counsel's "Substantial Continuing Effect" Argument on Mr.**
            **Pulgram's Communications Fails**
4

5       Defense Counsel makes the point that Yue sent emails to them. They failed to

6   acknowledge that Laurence Pulgram initiated such direct communications on substantive Netbula

7   matters on October 25, 2007. All subsequent communications were the result of Mr. Pulgram's

8   first email.

9

10      By initiating direct communication with Yue on Netbula's matters and maintaining such

11  communications for extended periods, and by making various legal advices to Yue, Mr. Pulgram

12  has gained large amount of work-product from Yue. In various court papers, Mr. Pulgram used the

13  information he gained from such direct communications against Netbula and Yue, while

14  disparaging Yue's *pro se* status and touting his attorney ethics. The damage Mr. Pulgram inflicted

15  on Yue's cases has long lasting effects. In similar cases, attorneys were suspended.

16  Disqualification of Mr. Pulgram and his law firm is the minimum sanction that should be imposed.

17                                    **CONCLUSION**

18      For the foregoing reasons and reasons stated in Plaintiff's previous papers, Plaintiff

19  respectfully requests that the Court disqualify Fenwick & West LLP and Laurence Pulgram.

20

21      Respectfully submitted,

22  Dated: June 26, 2008

23

24

25  DONGXIAO YUE (*Pro Se*)

26

27                                        -10-

28

Case Nos. C07-05850-JW, C08-0019-JW            PLAINTIFF'S REPLY TO DEFENDANTS'
                                               SUPPLEMENTAL BRIEF RE DISQUALIFICATION

Case Nos. C08-0019-JW, C07-05850-JW (N.D. Cal)

Dongxiao Yue v. Chordiant Software, Inc., et al.
Dongxiao Yue v. Storage Technology Corp., et al.

## CERTIFICATE OF SERVICE

I, Dongxiao Yue, with address at 2777 Alvarado Street, Suite C, San Leandro, CA 94577, declare:

On June 26, 2008, I caused a copy of the following documents described as:

1) **PLAINTIFF'S CONSOLIDATED REPLY TO DEFENDANTS' SUPPLEMENTAL BRIEF IN SUPPORT OF PLAINTIFF'S MOTIONS TO DISQUALIFY DEFENSE COUNSEL FENWICK & WEST, LLP AND LAURENCE PULGRAM**

2) **DECLARATION OF DONGXIAO YUE IN SUPPORT OF REPLY TO DEFENDANTS' SUPPLEMENTAL BRIEF IN SUPPORT OF MOTION TO DISQUALIFY DEFENSE COUNSEL**

3) **PLAINTIFF'S REQUEST FOR JUDICIAL NOTICE OF DEFENSE COUNSEL'S ADMISSIONS IN THEIR PRIOR FILINGS WITH THE COURT IN SUPPORT OF PLAINTIFF'S MOTION TO DISQUALIFY DEFENSE COUNSEL FENWICK & WEST, LLP AND LAURENCE PULGRAM**

to be served on all interested parties in said cause, by delivering a true copy as follows:

____  **(By Mail)**   By placing the document(s) listed above in a sealed envelope with postage thereon fully prepaid, in the United States mail at San Leandro, California addressed as set forth below.

X  **(By E-Mail)**   By emailing the document(s) listed above in PDF format to the attorneys listed below pursuant to an agreement to service by email:

"Laurence Pulgram" <LPulgram@Fenwick.com>,  "Jedediah Wakefield" <JWakefield@Fenwick.com>, "Liwen Mah" <LMah@fenwick.com>
Attorneys for Chordiant Software, Inc. (C08-0019-JW) and Storage Technology Corporation, Sun Microsystems, Inc, Jonathan Schwartz (C07-05850-JW), et al.

I declare under penalty of perjury that the foregoing is true and correct and that this declaration was executed on June 26, 2008, at San Leandro, California.

Dongxiao Yue