DONGXIAO YUE
2777 ALVARADO ST., SUITE C
SAN LEANDRO, CA 94577
Telephone:   (510) 396-0012
Facsimile:   (510) 291-2237
E-Mail:      ydx@netbula.com

*Pro Se*

**FILED**

JUL 8 - 2008

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DONGXIAO YUE,<br><br>Plaintiff,<br><br>v.<br><br>STORAGE TECHNOLOGY CORPORATION, a Delaware corporation; SUN MICROSYSTEMS Inc., a Delaware corporation; Michael Melnick, an individual; Julie DeCecco, an individual; Michael P. Abramovitz, an individual; Lisa K. Rady, an individual; Jonathan Schwartz, an individual; and DOES 1-1000, inclusive,<br><br>Defendants. | Case No. C07-05850-JW-EDL<br><br>**DECLARATION OF DONGXIAO YUE IN SUPPORT OF PLAINTIFF'S REPLY IN SUPPORT OF MOTION TO STRIKE DEFENDANTS' MOTION FOR ATTORNEYS' FEES AND COSTS (DOCKET NO. 53) FOR FAILURE TO COMPLY WITH CIVIL LOCAL RULE 54-6**<br><br>[Civil Local Rules 54-6, 1-4]<br><br>Date: July 22, 2008<br>Time: 9:00 a.m.<br>Dept: Courtroom E, 15th Floor<br>Judge: Hon. Elizabeth D. Laporte |

I, DONGXIAO YUE, declare:

1.      I am the *pro se* plaintiff in the above captioned case. I make this declaration in support of Plaintiff's Reply Brief in Support of Motion to Strike Defendants' Motion for Attorneys' Fees.

2.      I have personal knowledge of the facts I am about to state and, if called on to do so, I could competently testify to those facts.

-1-

3. On February 14, 2007, there was a hearing about BindView Corporation's motion for sanctions in the related *Netbula v. BindView* case (C06-0711-MJJ-WDB) before Magistrate Judge Wayne D. Brazil. Attached Exhibit A is the excerpts from the hearing transcript. At the hearing, Judge Brazil admonished Mr. Wakefield:

> If you had a -- if you had a good reason to believe that you could -- if you knew there were no janitors, you could maybe craft a document request that is on its face this broad. But if you're really looking for people who might know something that might be relevant to the case, you probably ought to put in categories of employees. Anyway.
>
> It does make us worry. It does make us worry on this side of the aisle about what exactly is driving these kind of disputes, these kind of disputes. And what it makes us worry about is that the profits per partner need to be $900,000, and this is a piece of the process. I get to write a letter about once a week to the other side that's messing up, and I charge for that. And I get to write 70 document demands initially. Then the judge chews me out. Then I write less than 50, some of which are pretty damn broad. And that's how we get $900,000 per partner.
>
> That's what we see from this side, and that's what we worry about. And it's our job to say, gee, is this the way the business ought to be run? And let me be a little more expansive about this.
>
> Most litigants cannot come here because the profit per partner is $900,000 a year.

4. In an email I sent to Defense Counsel at 1:06 PM, April 24, 2008, I wrote the following:

> SUN and Jonathan Schwartz's fee motions are procedurally improper and should be denied. Please consult the FRCP and the Local Rules. The local rules also say that an attorney's failure to follow local rules may be sanctionable.

5. In late afternoon that day, Defense Counsel and I held a telephonic Rule 26(f) conference for the instant case. During the conference, I reiterated my position to Mr. Jed Wakefield that Defendants' Motion for Attorney's Fees failed to follow the Local Rules. Mr.

-2-

Case No. C07-05850-JW-EDL    YUE DECL ISO MOTION TO STRIKE FOR FAILURE TO COMPLY WITH LOCAL RULE 54-6

Wakefield replied that he read my above referenced email but had no idea about which rule I was talking about. I then told Mr. Wakefield to go the Court's web site and read Civil Local Rule 54-6. Mr. Wakefield checked the Local Rule and became audibly excited. He stated to me that Defendants would incur large amount of attorney's fees and then seek it from me, causing "serious repercussions for your personal financial stability."

6. In the related *Netbula v. BindView* case (C06-0711-MJJ-WDB), Defense Counsel filed several briefs and declarations with the Court, claiming that a prior dispute between Netbula, LLC and its competitor Distinct Corporation was highly relevant and that the *Netbula v. Distinct* dispute involved alleged copyright infringement by PowerRPC. These representations made by Defense Counsel were included in Plaintiff's Request for Judicial Notice (Doc. No. 122) in the instant C07-05850-JW case.

7. For instance, Mr. Wakefield wrote in a brief in support of BindView's motion for sanctions (Doc. No. 112 of the C06-0711-MJJ-WDB case, pp.13:26-14:7 [Def. Brief in Support of Motion to Enforce Prior Court Order and For Sanctions (filed by Wakefield)]):

> Defendants noted in their March 9 letter that Netbula had apparently failed to produce highly relevant documents related to a previous intellectual property dispute between Netbula and a third party named Distinct Corporation ("Distinct") that were specifically called for by Document Request No. 22. In its February 28 production, Netbula had produced a document in response to this request—a letter from Distinct accusing Netbula's PowerRPC software of copyright infringement and demanding a response. See Sieber Reply Decl. ¶ 7.

8. Relying on Defense Counsel's representations above, Judge Brazil granted BindView's motion in part. Defense counsel now claims that the *Netbula v. Distinct* dispute is irrelevant to the instant cases and "there was no 'copyright and trademark dispute'" in that case. Defendants Supplemental Brief in Opposition to Motion to Disqualify Defense Counsel, Doc. No. 116, p.6:1.

-3-

9. Mr. Claude M. Stern, a former Fenwick & West attorney, served as the Early Neutral Evaluator in the *Netbula v. Distinct* dispute. The confidential ENE session was held at Defense Counsel's office.

10. On June 27, 2008, Mr. Stern telephoned me. Mr. Stern told me that he was willing to have his deposition taken regarding the confidential ENE files in the *Netbula v. Distinct* dispute. Mr. Stern suggested the location of his deposition and some available dates, and asked me to contact Defense Counsel to arrange a suitable deposition date agreeable to the parties.

11. On June 30, 2008, I emailed Defense Counsel to arrange the deposition of Mr. Stern. In an email response, Mr. Wakefield stated that he would object to the deposition of Mr. Stern. I then informed Mr. Wakefield by email that Mr. Stern was a third party and Defendants had no standing to object to a deposition the deponent had agreed to. I also suggested to Mr. Wakefield that the parties should work out a solution and not burden the Court with such dispute.

12. Despite my effort to resolve the dispute regarding the Stern deposition without involving the Court, Mr. Wakefield filed a three-page letter brief to the Court (Doc. No. 125).

13. In opposition to Plaintiff's motion to disqualify Fenwick & West, Defense Counsel declared that they had billed their clients over 8000 hours.

I declare under penalty of perjury of the laws of the State of California and the federal laws that forgoing declaration is true and correct to the best of my knowledge. This declaration was executed in San Leandro, California, on July 8, 2008.

*[signature]*
DONGXIAO YUE

# EXHIBIT A

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BEFORE THE HONORABLE WAYNE D. BRAZIL, JUDGE

| | |
|---|---|
| NETBULA, LLC, ) | |
| ) | |
| PLAINTIFF, ) | |
| ) | |
| VS. ) | NO. C 06-0711 MJJ |
| ) | |
| BINDVIEW DEVELOPMENT ) | |
| CORPORATION, ET AL., ) | PAGES 1 - 29 |
| ) | |
| DEFENDANTS, ) | OAKLAND, CALIFORNIA |
| ) | WEDNESDAY, FEBRUARY 14, 2007 |

**TRANSCRIPT OF PROCEEDINGS**

APPEARANCES:

FOR PLAINTIFF:           THE LAW OFFICE OF VONNAH M. BRILLET
                         2777 ALVARADO STREET, SUITE E
                         SAN LEANDRO, CALIFORNIA  94577
                    BY:

FOR DEFENDANTS:          FENWICK & WEST
                         555 CALIFORNIA STREET, SUITE 1200
                         SAN FRANCISCO, CALIFORNIA  94104
                    BY:  JEDEDIAH WAKEFIELD, ATTORNEY AT LAW

REPORTED BY:             RAYNEE H. MERCADO, CSR NO. 8258

**RAYNEE H. MERCADO, CSR, RMR, CRR, FCRR (510) 451-8404**

1   MR. WAKEFIELD: I WAS, YOUR HONOR.

2   THE COURT: OKAY. AND THEY SAID -- THEY SAY THEY
3   PRODUCED A BUNCH OF DOCUMENTS, SHOWED, DISCLOSED, OFFERED FOR
4   YOU GUYS TO KEEP. NO, NO, WE DON'T WANT THEM PIECEMEAL. WE
5   WANT THE WHOLE 9 YARDS, OTHERWISE WE DON'T GET PAID ENOUGH
6   MONEY.

7   MR. WAKEFIELD: ACTUALLY, OTHERWISE, WE DON'T KNOW
8   WHAT THE TERMS ARE.

9   THE COURT: NO, NO, NO. NO. SORRY.

10   WE HAVE TO KNOW THE NAME AND JOB OF EVERY SINGLE
11   EMPLOYEE SINCE 1996 TO DO OUR JOB IN THIS CASE, RIGHT? ISN'T
12   THAT -- ISN'T THAT THE FIRST REQUEST FOR DOCUMENTS YOU MADE?

13   MR. WAKEFIELD: I SUSPECT THE ANSWER IS GOING TO BE
14   TWO OR THREE PEOPLE. WE WANT TO KNOW -- WE HAVE QUESTIONS ABOUT
15   THE ORIGINALITY OF THIS PRODUCT AND -- WHICH IS DERIVED FROM SUN
16   MICROSYSTEMS FREE SOFTWARE.

17   THE COURT: SO THERE WERE NO JANITORS, NO OTHER
18   PEOPLE LIKE THAT?

19   MR. WAKEFIELD: WITHIN NETBULA?

20   THE COURT: YEAH.

21   MR. WAKEFIELD: I -- I'VE SEEN ONE DOCUMENT
22   INDICATING THERE MIGHT HAVE BEEN ONE OTHER PERSON THERE, BUT I
23   BELIEVE THE ANSWER IS GOING TO BE ONE PERSON.

24   THE COURT: UH-HUH. WELL, IF YOU HAD A -- IF YOU HAD
25   A GOOD REASON TO BELIEVE THAT YOU COULD -- IF YOU KNEW THERE

1  WERE NO JANITORS, YOU COULD MAYBE CRAFT A DOCUMENT REQUEST THAT
2  IS ON ITS FACE THIS BROAD.  BUT IF YOU'RE REALLY LOOKING FOR
3  PEOPLE WHO MIGHT KNOW SOMETHING THAT MIGHT BE RELEVANT TO THE
4  CASE, YOU PROBABLY OUGHT TO PUT IN CATEGORIES OF EMPLOYEES.
5  ANYWAY.
6              IT DOES MAKE US WORRY.  IT DOES MAKE US WORRY ON THIS
7  SIDE OF THE AISLE ABOUT WHAT EXACTLY IS DRIVING THESE KIND OF
8  DISPUTES, THESE KIND OF DISPUTES.  AND WHAT IT MAKES US WORRY
9  ABOUT IS THAT THE PROFITS PER PARTNER NEED TO BE $900,000, AND
10 THIS IS A PIECE OF THE PROCESS.  I GET TO WRITE A LETTER ABOUT
11 ONCE A WEEK TO THE OTHER SIDE THAT'S MESSING UP, AND I CHARGE
12 FOR THAT.  AND I GET TO WRITE 70 DOCUMENT DEMANDS INITIALLY.
13 THEN THE JUDGE CHEWS ME OUT.  THEN I WRITE LESS THAN 50, SOME OF
14 WHICH ARE PRETTY DAMN BROAD.  AND THAT'S HOW WE GET $900,000 PER
15 PARTNER.
16             THAT'S WHAT WE SEE FROM THIS SIDE, AND THAT'S WHAT WE
17 WORRY ABOUT.  AND IT'S OUR JOB TO SAY, GEE, IS THIS THE WAY THE
18 BUSINESS OUGHT TO BE RUN?  AND LET ME BE A LITTLE MORE EXPANSIVE
19 ABOUT THIS.
20             MOST LITIGANTS CANNOT COME HERE BECAUSE THE PROFIT
21 PER PARTNER IS $900,000 A YEAR.  THIS IS A MIRAGE OF AN
22 INSTITUTION FOR EVERYBODY EXCEPT GENERAL MOTORS.  AND THAT'S
23 SHAMEFUL TO OUR SOCIETY.  SO THAT'S -- THAT'S THE CONTEXT HERE.
24 AND LAWYERS WHO DON'T DO WHAT THEY'RE SUPPOSED TO DO, WHO MAKE
25 PROMISES, WHO DON'T DISCLOSE THE DOCUMENTS ARE ALSO A SOURCE OF

```
 1   SHAME TO THIS INSTITUTION AND THE SYSTEM OF CIVIL JUSTICE.
 2           NOW, HAVE YOU PRODUCED THE DOCUMENTS THAT SUPPORT
 3   OR -- OR ARE THE BASIS FOR THE DAMAGES CALCULATION?
 4           MS. BRILLET:  NOT ALL OF THEM, YOUR HONOR.
 5           THE COURT:  WHY?
 6           MS. BRILLET:  I HAVE ONLY PRODUCED THE ONES THAT I
 7   JUST GAVE TO -- THAT I GAVE TO COUNSEL WITH THE 763.  AND,
 8   ACTUALLY, THE PROBLEM --
 9           THE COURT:  NO, WHY -- ANSWER MY QUESTION.
10           MS. BRILLET:  I'M SORRY.
11           THE COURT:  WHY HAVE YOU NOT PRODUCED ALL THE
12   DOCUMENTS THAT FORM A BASIS FOR THE DAMAGES CALCULATION?
13           MS. BRILLET:  WELL, YOUR HONOR, WE DON'T HAVE
14   DOCUMENTS.
15           THE COURT:  I'M NOT -- I'M TALKING ABOUT YOU.  YOU.
16   YOU.  YOUR BASIS.  YOUR -- I'M NOT TALKING ABOUT HIS THAT HE
17   HASN'T GIVEN YOU YET.  I'M TALKING ABOUT YOURS.
18           NOW, YOU HAVE, PRESUMABLY, INFORMATION ABOUT PAST --
19   THE VOLUME OF HOW MANY OF THESE WIDGETS -- AND I DON'T KNOW WHAT
20   THE REAL STUFF IS -- GOES OUT INTO THE REAL WORLD.  YOU'VE GOT
21   HOW MUCH OF THIS.  AND I ASSUME WHEN YOU GET TO TRIAL, YOU'RE
22   NOT GOING TO BE ABLE TO SAY, WELL, WE WOULD HAVE SOLD EVERY
23   PRODUCT THAT THEY SOLD.  I MEAN, THAT'S A NON SEQUITUR.
24           YOU GOT TO PROVE, AND ONE WAY YOU PROVE THAT YOUR
25   CAPACITY TO SELL AND THE LIKELIHOOD YOU WOULD HAVE SOLD -- NOT
```