IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| YUE,<br><br>        Plaintiff,<br><br>   v.<br><br>STORAGE TECHNOLOGY CORPORATION, et al.,<br><br>        Defendants.<br>_____/ | No. C-07-05850 JW (EDL)<br><br>**REPORT AND RECOMMENDATION REGARDING ATTORNEY'S FEES** |

## I. BACKGROUND

Plaintiff Dangxiao Yue filed this lawsuit on November 19, 2007, alleging that Defendants Storage Technology Corporation and Sun Microsystems, Inc. infringed two copyrights that had been assigned to him by his company Netbula. On December 10, 2007, Plaintiff filed an amended complaint to add various employees and officers of Defendants including Sun's CEO and Assistant General Counsel. On December 14, 2007, the Court ordered that no responsive pleadings would be due until such time as the Court set a date at the upcoming status conference. Despite this order, Plaintiff filed a motion for default judgment, which the Court denied. See Docket No. 41.

The Court dismissed the case with prejudice on the ground that it was duplicative of an earlier filed lawsuit initiated by Netbula, and entered judgment on March 4, 2008. See Docket No. 51 (March 4, 2008 Order). Specifically, the District Court noted that Plaintiff, on his own and through Netbula, had filed multiple actions to vindicate his rights. In an earlier case, Netbula v. Sun,

06-07391 MJJ ("Netbula-Sun")[1], Netbula alleged copyright infringement, intentional fraud, breach of contract, unfair competition under California state law, and equitable accounting and imposition of a constructive trust. Id. at 2. In that case, the Court granted Defendants' motion for summary judgment based on its determination that Defendants' use of Netbula's software was within the scope of the 2000 and 2004 license agreements between Netbula and StorageTek.

In determining that this action was duplicative of Netbula-Sun, the District Court found that this case presented the same claims already asserted. In fact, many of the allegations in the complaint that Plaintiff claimed constituted additional facts in this case were a verbatim restatement of Yue's declaration presented in opposition to the Netbula-Sun defendants' motion for summary judgment. Id. at 4. In addition, the Court granted summary judgment on the merits of claims in Netbula-Sun that were now presented in this case. Finally, the Court found that the two actions involved infringement of the same rights. Even though Plaintiff claimed that Defendants' use of software impacted additional copyrights, Netbula should have asserted violations of those copyrights in Netbula-Sun, rather than filing this subsequent lawsuit. Id. at 5.

The Court also found that there was privity among the successive parties, as StorageTek and Sun were both Defendants in the original action, and the five individuals named were employees of those entities. Id. at 5-6. In addition, because Yue is the founder and president of Netbula, and Netbula assigned all of its copyrights to Yue, Yue was an assignee in privity with Netbula. Id. at 6. The Court further found that Plaintiff entered into this assignment at least in part due to his desire to bring Netbula's then pending copyright claims in his own name, on a pro se basis. See Netbula-Sun Docket No. 139 at 10-11, 16-17 (Nov. 20, 2007 Tr.). In dismissing the action, the Court noted that Plaintiff's tactics "have ranged from duplicative to nearly vexatious." March 4, 2008 Order at 7. On April 1, 2008, Plaintiff filed an appeal of the March 4, 2008 Order and judgment to the Ninth Circuit Court of Appeals. See Docket No. 72.

In March 2008, Defendants moved for attorney's fees. That motion was referred to this

---

[1] Netbula also filed an action entitled Netbula LLC v. Bindview Development Corp., No. 06-711 MJJ ("Netbula-Bindview") against Bindview, an entity that is not a Defendant in this action. Netbula v. Greenwich Capital Markets, Inc., 06-7143 and Yue v. Chordiant Software, Inc., 08-0019, are also related to this action.

2

Court for a report and recommendation.[2] After Defendants moved for fees, Plaintiff moved for relief from judgment and to disqualify defense counsel. See Docket Nos. 53, 63, 65. Plaintiff also moved to disqualify the Honorable Martin Jenkins post judgment. Docket No. 58. This was not the first time Plaintiff attempted to avoid Judge Jenkins in this case, as he also sought leave to oppose Sun's earlier motion to relate this case to Netbula-Sun. Judge Jenkins related the two suits on December 14, 2007. See Docket No. 19. Plaintiff wrote another letter to Judge Jenkins in this case, noting that he had complained to the Ninth Circuit and to Congress about the Judge's bias against him. See Docket No. 11. He also filed an emergency motion to disqualify Judge Jenkins and to have a new judge appointed in the Netbula-Sun case, and wrote to Judge Jenkins accusing him of bias. See Netbula-Sun Docket Nos. 129, 142. Judge Jenkins denied that request on February 8, 2008. Docket No. 142.

On April 9, 2008, after Judge Jenkins left the federal bench to join the California Court of Appeal, the case was reassigned to Judge Ware. See Docket No. 76. On June 16, 2008, Plaintiff moved to strike Defendants' Motion for Attorney Fees and Costs for failure to comply with Civil Local Rule 54-6 which requires counsel for the respective parties to meet and confer for the purpose of resolving all disputed issues related to attorney fees prior to making a motion for award of attorney fees. On July 24, 2008, Judge Ware denied Plaintiff's motion for relief from judgment, denied Plaintiff's motion to disqualify counsel, and denied Plaintiff's motion for disqualification of the assigned judge.

**II.    DISCUSSION**

    **A.    Legal Standard**

The Copyright Act provides for an award of reasonable attorney's fees to the prevailing party as part of costs. 17 U.S.C. § 505. "An award of attorney's fees to a prevailing defendant that furthers the underlying purposes of the Copyright Act is reposed in the sound discretion of district courts," and this discretion is not "cabined by a requirement of culpability on the part of the losing party." Entm't Research Group v. Genesis Creative Group, 122 F.3d 1211, 1228-29 (9th Cir. 1997)

---

[2] While the hearing was originally scheduled for April 22, 2008, the parties stipulated to continue the hearing until after the pending motions for relief from judgment and disqualification were heard.

3

1  (citation omitted). Courts have wide latitude to exercise this discretion, and are guided by several
2  non-exclusive factors: "(1) the degree of success obtained; (2) frivolousness; (3) motivation; (4) the
3  objective unreasonableness of the losing party's factual and legal arguments; and (5) the need, in
4  particular circumstances, to advance considerations of compensation and deterrence." Id. at 1229.
5  These factors are "not exclusive and need not all be met;" awards to prevailing defendants are within
6  a court's discretion if they further the purposes of the Copyright Act. Robinson v. Lopez, 2003 U.S.
7  Dist. LEXIS 24382 (C.D. Cal. 2003) (quoting Fantasy, Inc. v. Fogerty, 94 F.3d 553, 558 (9th Cir.
8  1996)).

9  Generally, in determining an appropriate fee, the court begins by calculating "the number of
10 hours reasonably expended on the litigation multiplied by a reasonable hourly rate." Hensley v.
11 Eckerhart, 461 U.S. 424, 433 (1980). The party seeking attorney's fees bears the burden of
12 producing evidence supporting the hours worked and a reasonable rate; the district court may reduce
13 the award accordingly if insufficient evidence is produced. Id. The district court may also exclude
14 compensation for time that was "not reasonably expended" in the case. Id. at 434 (court may deny
15 compensation for "hours that are excessive, redundant, or otherwise unnecessary"). In copyright
16 cases, the moving party bears "the burden of showing the time spent and that it was reasonably
17 necessary to the successful prosecution of their copyright claims." Frank Music Corp. v.
18 Metro-Goldwyn-Mayer, Inc., 886 F.2d 1545, 1557 (9th Cir. 1989).

19 **B.     Motion for Fees**
20     **1.     Whether the Ninth Circuit Factors Support An Award of Attorney's Fees**

21 Awarding fees here is consistent with purposes of the Copyright Act, as such an award
22 protects Defendants from wasting resources on duplicative actions. See Riviera Distribs. v. Jones,
23 517 F.3d 926, 929 (7th Cir. 2008) ("This case turns out to be an especially good candidate for fee
24 shifting under § 505, because it was filed in the teeth of an agreement not to sue. Riviera and
25 Midwest have been at each others' throats for years, and this is the second suit based on
26 fundamentally the same claim of infringement. Eventually the first suit was settled."). In addition,
27 Plaintiff's complaint did not raise a novel issue of law or fact or an objectively reasonable claim, as
28 the same basic claims had already been previously rejected by the District Court.

4

1    Furthermore, Defendants are the prevailing parties. They obtained a dismissal of the entire
2 action with prejudice and an entry of judgment thereon. The District Court also denied Plaintiff's
3 motion for relief from judgment. Defendants' degree of success in the action was total, as they
4 established that Plaintiff could not assert new copyrights against Defendants for their use of
5 Netbula's software pursuant to licenses, the subject of the prior suit. This factor supports an award
6 of fees.

7    Plaintiff's lawsuit was also objectively unreasonable. In granting the motion to dismiss, the
8 District Court recognized that the caselaw clearly prevented a party or those in privity from bringing
9 a separate action involving the same subject matter against the same defendants in a different action.
10 See March 4, 2008 Order at 3-6 (quoting relevant case law including Adams v. Cal. Dep't of Health
11 Servs., 487 F.3d 684 (9th Cir. 2007)). As discussed above, the Court found that the cases presented
12 the same claims and involved infringement of the same rights. The Court found that Plaintiff and
13 Netbula were in privity on two separate and independent grounds: that Plaintiff was an assignee;
14 and that Plaintiff was virtually represented in Netbula's case as a result of his intertwined
15 relationship with Netbula. See id. at 6.[3]

16    In addition, the District Court's previous order in Netbula-Sun granting Defendants' motion
17 for summary judgment established that Defendants' use of Netbula's PowerRPC software was
18 licensed and did not constitute infringement. See Jan. 18, 2008 Summary Judgment Order. The
19 Court had already determined as a matter of law that the license between Netbula and StorageTek
20 foreclosed a claim of copyright infringement. In addition, defense counsel warned Plaintiff that
21 before filing an entirely new and separate infringement action, he should meet and confer with
22 counsel because the action was duplicative, advising that Sun would seek to recover attorney's fees.
23 See Wakefield Decl. Ex. A.

---

[3] While the Supreme Court recently disapproved of the doctrine of preclusion by virtual representation, see Taylor v. Sturgell, 128 S. Ct. 2161, 2173 (June 12, 2008), it noted that non-parties to the prior litigation may be precluded under certain recognized exceptions, including substantive legal relationships such as that of assignee and assignor, and the assumption of control over the earlier litigation. Here, the District Court found privity based on assignment. In addition, Yue appears to have assumed control over the earlier litigation.

5

1      As to factual reasonableness, Plaintiff alleged claims against Sun's officers based on
2 communications between them and Plaintiff in 2006. However, Plaintiff knew from the factual
3 record in <u>Netbula-Sun</u> that the allegedly infringing acts stopped in late 2005. For example, he was
4 present at the deposition where Sun's Rule 30(b)6 witness testified that it removed the allegedly
5 infringing Netbula software in late 2005. See <u>Netbula-Sun</u> Docket No. 107, Ex. 44 at 3. While Yue
6 argues that the evidence shows ongoing infringement as recently as 2007, he does not state how the
7 individual defendants are connected to such alleged ongoing infringement. While Yue attacks
8 Abramovitz's credibility, he does not offer any factual basis for naming the particular two high level
9 officers in this action, revealing that the allegations against them are speculative.

10     As to motivation and harassment, it is difficult to discern Plaintiff's motive, but the number
11 of motions and appeals filed in his various cases, coupled with the fact that this case was duplicative
12 and the District Court noted that his conduct is "nearly vexatious," favors awarding fees. In
13 particular, the number of unsuccessful motions for recusal and for relief from judgment indicates
14 that Plaintiff filed repetitive motions that lacked merit, which only served to increase fees.

15     In addition, Plaintiff's pro se status does not warrant leniency here, where Plaintiff has
16 received much education throughout the multiple cases that he and Netbula have litigated. He also
17 has had counsel at times in this litigation and Netbula is still represented by counsel in <u>Netbula-Sun</u>.
18 As to Plaintiff's allegations of bias on the part of Judge Jenkins, Yue sets forth no factual basis for
19 them. <u>See</u> Opp. at 27.

20     Finally, Plaintiff also argues that attorney's fees should not be awarded because the alleged
21 infringement commenced before the effective date of copyright registration. Opp. at 28. Plaintiff
22 cites no support for this argument, and the authority is to the contrary. In fact, one treatise author
23 has explained that: "Very infrequently, the argument is advanced by a losing plaintiff that defendant
24 cannot be awarded its attorney's fees because the work was not registered within three months from
25 the date of first publication. This profoundly ignorant argument should be met with Rule 11
26 sanctions. . . . Both of the circuits to have had the misfortune to have the argument presented have
27 correctly rejected it." William F. Patry, <u>Patry on Copyright</u> § 22:204 (2008); <u>see also</u> <u>O'Well
28 Novelty Co. v. Offenbacher, Inc.</u>, No. 99-1949, 2000 WL 1055108, at *7 (4th Cir. 2000) ("it simply

6

defies logic to conclude that an unsuccessful plaintiff's additional failure timely to register its copyright serves to bar a court from awarding attorney fees to the prevailing defendant")). If the court makes a finding of noninfringement, "there appears to be no requirement that the work be registered in order to award attorney's fees to a prevailing defendant." Melville B. Nimmer and David Nimmer, Nimmer on Copyright, 14.10[A] n.3, Matthew Bender, 2007; see also, Robinson v. Lopez, 2003 U.S. Dist. LEXIS 24382, at *11-12, 69 U.S.P.Q.2D (BNA) 1241 (C.D. Cal. 2003) (awarding defendant attorney's fees under Section 505 even though plaintiff did not register the work at issue with the Copyright Office). For the above reasons, an award of fees is proper.

### 2. Reasonableness of Fees

Defendants seek fees and costs in excess of $92,000 as of their opening brief, and over $134,000 as of the reply brief. On July 24, 2008, Defendants submitted a supplemental declaration stating that over $87,000 in additional fees had been incurred since April 8, 2008, when the reply brief was filed. See Supplem. Wakefield Decl. ¶ 2.

The first amended complaint in this case lists ten claims, all for copyright infringement. Therefore, there is no need to apportion copyright versus non-copyright claims. The hourly rates charged by Fenwick range from $245 per hour to $690 per hour. These rates are comparable to other full service Bay Area law firms, Wakefield Decl. ¶ 4, and are reasonable.

The expenses include time reviewing the two complaints, participating in case management activities, assessing issues pertaining to service, reviewing the motion for default, researching and analyzing and drafting the motion to dismiss and reply, working on plaintiff's motion to strike, communication with clients and Mr. Yue and opposing counsel, and work on the fees motion. It does not include time spent preparing the motion for sanctions. The time outlined in the April 8, 2008 declaration in support of the reply brief includes time spent opposing Plaintiff's motion for disqualification of counsel and motion for relief from judgment, as well as the fees reply. The time outlined in the latest declaration includes, but is not limited to, time spent meeting and conferring and preparing a joint case management statement, attending a case management conference, preparing a supplemental brief regarding Plaintiff's motion for disqualification of counsel, opposing Plaintiff's motion to take counsel's depositions, attending the June 30, 2008 hearing, opposing

Plaintiff's motion to strike Defendants' motion for attorney's fees, and attending the hearing on the motion for fees. The Court finds that the above fees are reasonable. However, the Court notes that a few of the tasks performed by Jedediah Wakefield, a partner at Fenwick – such as reviewing standing orders and conducting legal research – could have been performed by an associate at a lower billing rate. However, such tasks only comprise a minor part of the billing activities. Accordingly, the Court finds that the fees should be reduced by $3000.

On occasion, some courts have considered reducing the amount of attorney's fees awarded against a plaintiff of limited financial resources. See, e.g., Chivalry Film Productions v. NBC Universal, Inc., 2007 WL 4190793, *3-4 (S.D.N.Y. Nov. 27, 2007) (finding that although plaintiff's pro se status does not preclude an award of fees against him, his financial resources are not altogether irrelevant); see also Rasmussen v. General Growth Properties, Inc., 2005 WL 3334752, *6 (D. Utah Dec. 7, 2005) (limiting the amount of recoverable attorney's fees to $1,000 because although fees were warranted, plaintiff proceeded pro se and was of admittedly limited resources). However, all the other factors in this case strongly favor awarding fees here and Plaintiff did not make the argument in his papers or provide specific information when the Court asked about his financial resources at the hearing. Accordingly, the Court does not find that a reduction on this basis is warranted.

### 3. Other Costs

The prevailing party in a copyright infringement action is also entitled to recover out of pocket expenses incurred by the attorney and passed on to the client. Twentieth Century Fox Film Corp. v. Entm't Distrib., 429 F.3d 869, 885 (9th Cir. 2005) (holding "that district courts may award otherwise non-taxable costs, including those that lie outside the scope of § 1920, under § 505"). The costs listed in the spreadsheet of $4853.30 (including legal research and courier fees), which are included in the above totals, are recoverable.

### C. Motion to Strike

Plaintiff has filed a motion to strike Defendants' Motion for Attorney Fees and Costs for failure to comply with Civil Local Rule 54-6(b), which requires that "counsel for the respective parties must meet and confer for the purpose of resolving all disputed issues relating to attorney's

8

1  fees before making a motion for award of attorney fees." See Docket No. 113. Plaintiff argues that
2  Defendants' non-compliance with the rule resulted in severe prejudice to him because he lost the
3  opportunity to contest the fees request in a live conference, and that the just remedy for Defendants'
4  non-compliance is to strike their motion for attorney's fees. Plaintiff's argument lacks merit for
5  several reasons.

6  District courts within the Ninth Circuit have granted attorney's fees to plaintiffs despite a
7  plaintiff's failure to comply with Local Rule 54-6 meet and confer requirement. See May v.
8  Metropolitan Life Ins. Co, No. C 03-5056CW, 2005 WL 839291, at *1 (N.D. Cal., April 7, 2005)
9  (granting plaintiff's motion for attorney's fees where the defendant opposed the plaintiff's motion
10 for attorney fees and costs on the basis the plaintiff's motion failed to comply with L. R. 54-6, but
11 where the plaintiff's counsel had expected the meet-and-confer process to take place at a later date
12 within the deadline and where surreply suggested that complying with meet and confer requirement
13 would be futile). Where parties have failed to comply with a requirement to meet and confer
14 pursuant to other local rules, courts have held that this failure should not serve as a basis to deny a
15 motion and have considered whether resolution is possible in determining whether to order the
16 parties to meet and confer. See, e.g., Thomas v. Baca, 231 F.R.D. 397, 404 (C.D. Cal. 2005) (where
17 defense counsel argued that plaintiffs' counsel failed to meet and confer prior to the filing of motion
18 for class certification as required by local rule, the court noted that it "is not persuaded that this fact,
19 if true, should serve as a basis to deny the motion," noting that it did not appear "that any informal
20 resolution of this motion is possible"). Here, ordering the parties to meet and confer would similarly
21 be futile. After Defendants filed their motion for fees, during a call with Defense counsel, Plaintiff
22 stated that he would have disputed the fees from the outset (Wakefield Decl. at 2 ¶ 3) and protested
23 that he was not given the chance to dispute them within the statutory time limit. Defendants also
24 note that Plaintiff generally refused to discuss what issues might be resolved at a meet and confer.
25 See Walefield Decl. at 1-2 (Wakefield to Yue: "I asked whether there were any particular items
26 about which you believed a meet and confer to resolve disputed issues would be appropriate. You
27 refused to discuss the subject"). In addition, Yue discussed fees with defense counsel in an April 24,
28 2008 phone call, albeit one that took place after the motion for fees was filed.

9

The language of Local Rule 54-6 is somewhat ambiguous as to its application to pro se litigants. Defendants argue that they need not comply since that rule only refers to counsel and does not specify pro se litigants, in contrast to Civil Local Rules that make it clear when counsel or pro se parties are to confer. See Civil L.R. 30-1 ("the noticing party must confer about the scheduling of the deposition with opposing counsel or, if the party is pro se, the party"). Given both the ambiguity of the rule and the futility of a meet and confer conference, striking Defendants' motion for fees is not warranted.

## III.   CONCLUSION

Accordingly, the Court recommends that the District Court award the Defendants fees and costs in the amount of $219,949.90 (total fees requested less $3000). Any party may serve and file specific written objections to this recommendation within ten (10) business days after being served with a copy. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); Civil Local Rule 72-3. Failure to file objections within the specified time may waive the right to appeal the District Court's order.

**IT IS SO RECOMMENDED.**

Dated: August 6, 2008

ELIZABETH D. LAPORTE
United States Magistrate Judge

10

UNITED STATES DISTRICT COURT

FOR THE

NORTHERN DISTRICT OF CALIFORNIA

YUE et al,

        Plaintiff,

  v.

STORAGE TECHNOLOGY CORPORATION
et al,

        Defendant.
                                         /

Case Number: CV07-05850 JW

**CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.

That on August 6, 2008, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office.

Dongxiao Yue
2777 Alvarado Street
Suite C
San Leandro, CA 94577

Dated: August 6, 2008

                                         Richard W. Wieking, Clerk

                                         By: Lili M. Harrell, Deputy Clerk