1    DONGXIAO YUE
     2777 ALVARADO ST., SUITE C
2    SAN LEANDRO, CA 94577
     Telephone:    (510) 396-0012
3    Facsimile:    (510) 291-2237
     E-Mail:    ydx@netbula.com
4
5    Self-Represented

6

7

8                    UNITED STATES DISTRICT COURT

9                  NORTHERN DISTRICT OF CALIFORNIA

10                                    Case Nos. C07-05850-JW-EDL

11
     DONGXIAO YUE,
12
                    Plaintiff,        **NOTICE OF MOTION AND MOTION
13                                    FOR *DE NOVO* DETERMINATION OF
           v.                        DEFENDANTS' MOTION FOR
14                                    ATTORNEY'S FEES**

15   STORAGE TECHNOLOGY               **AND**
     CORPORATION, a Delaware corporation;
16   SUN MICROSYSTEMS Inc., a Delaware   **OBJECTIONS TO THE
     corporation; Michael Melnick, an individual;   RECOMMENDATION AND REPORT OF
17   Julie DeCecco, an individual; Michael P.   THE MAGISTRATE JUDGE ON THE
     Abramovitz, an individual; Lisa K. Rady, an   AWARD OF ATTORNEY'S FEES AND
18   individual; Jonathan Schwartz, an individual;   COSTS**
     and DOES 1-1000, inclusive,
19
20                                    Time: 9:00 AM
                    Defendants.        Date:  November 3, 2008
21                                    Dept: 8, 4th Floor
                                      Judge: The Honorable James Ware
22

23

24

25

26

27
28

# TABLE OF CONTENTS

NOTICE OF MOTION & MOTION FOR *DE NOVO* DETERMINATION &
 OBJECTIONS ............................................................................................... 1

FACTUAL BACKGROUND ....................................................................................... 1

RELEVANT PROCEDURAL BACKGROUND ................................................... 3

GENERAL OBJECTIONS ........................................................................................... 6

      Objection 1: Catch-22 is Impermissible ............................................................ 6

      Objection 2: Defendants are not Prevailing Parties for the Purpose of Section 505
 of the Copyright Act ....................................................................... 7

      Objection 3: The Magistrate Judge Did Not Consider the Pivotal Criterion Required
 by the Ninth Circuit for Awarding Fees under the Copyright Act ......................... 8

      Objection 4: The Court Lacked Jurisdiction to Adjudge the Reasonableness of the
 Copyright Claims Post-Judgment because Judge Jenkins Did Not Make
 Such Findings ......................................................................... 8

      Objection 5: Legal Fees on Collateral Matters are not Awardable under the
 Copyright Act ........................................................................... 9

      Objection 6: Post-Judgment Legal Fees are not Awardable under the Copyright Act ....... 10

      Objection 7: "Fees upon fees" are not Awardable under the Copyright Act..................... 10

      Objection 8: The Magistrate Did Not Make a Lodestar Analysis..................................... 10

      Objection 9: Block Billing Made it Impossible to Determine the Reasonableness of
 Fees ...................................................................................... 11

SPECIFIC OBJECTIONS (Nos. 10 to 29) ...................................................... 12

CONCLUSION AND MOTION FOR DE NOVO DETERMINATION.................................. 25

# TABLE OF AUTHORITIES

<u>Cases</u>

*Adams v. Cal. Dep't of Health Servs.*,
    487 F.3d 684 (9th Cir. 2007) ...................................................................... 16

*Berkla v. Corel Corp.*,
    302 F.3d 909 (9th Cir. 2002) ....................................................................... 8

*Blum v. Stenson*,
    465 U.S. 886, 895 n. 11 (1984)..................................................................... 10

*Brayton Purcell Llp v. Recordon & Recordon*,
    487 F. Supp.2d 1124 (N.D.Cal. 2007)........................................................... 10

*Buckhannon Bd. & Care Home, Inc. v. W. Vir. Dep't of Health & Human Res.*,
    532 U.S. 598, 603-04 (2001) ........................................................................ 7

*Cancio v. Financial Credit Network, Inc*,
    2005 US DIST LEXIS 13626 at 16 (N D Cal 2005)....................................... 24

*Chalmers v. City of Los Angeles*,
    796 F.2d 1205, 1210-11 (9th Cir. 1985)......................................................... 10

*Chase Manhattan Bank, N.A. v. Celotex Corp.*,
    56 F.3d 343, 346 (2nd Cir. 1995)................................................................... 20

*Cho v. Superior Court*,
    39 Cal.App.4th 113 (1995) ............................................................................ 22

*Erickson v. Pardus*,
    127 S. Ct. 2197, 2200 (2007)......................................................................... 21

*Fantasy, Inc. v. Fogerty*,
    94 F.3d 553, 558 (9th Cir. 1996).................................................................... 8

*Fields-D'arpino v. Restaurant Associates*,
    39 F.Supp.2d 412(S.D.N.Y. 1999).................................................................. 22

*Hensley v. Eckerhart*,
    461 U.S. 424, 436 (1983)............................................................................... 10

*Hewitt v. Helms*,
    482 U.S. 755, 760 (1987)............................................................................... 7

*Identity Arts v. Best Buy Enterprise Services Inc.*,
    No. C 05-4656 PJH. (N.D.Cal. 3-26-2008) .................................................. 10

-ii-

OBJECTIONS TO ATTORNEY'S FEES RECOMMENDATION
AND REQUEST FOR DE NOVO DETERMINATION

*In Re McBryde*,
   117 F.3d 208, 225 (fn.11) (5th Cir. 1997) ................................................................ 12

*International Union of Petroleum & Indus. Workers v. Western Indus. Maint., Inc.*,
   707 F.2d 425, 428 (9th Cir. 1983) ........................................................................... 9

*Jacobsen v. Katzer*,
   2008-1001 (Fed. Cir. 8-13-2008) ............................................................................ 19

*Jacobsen v. Katzer*,
   No. 06-CV-01905 JSW, 2007 WL 2358628 (N.D. Cal. Aug. 17, 2007) ................ 19

*Jordan v. Multnomah County*,
   815 F.2d 1258, 1262 (9th Cir. 1987) ...................................................................... 10

*Kourtis v. Cameron*,
   419 F.3d 989 (9th Cir. 2005) ............................................................................ 16, 20

*Liljeberg v. Health Services Acquisition Corp.*,
   486 U.S. 847, 100 L. Ed. 2d 855, 108 S. Ct. 2194 (1988) .................................... 22

*McKenzie Const. v. St. Croix Storage Corp.*,
   961 F.Supp. 857 (V.I. 1997) ................................................................................... 22

*MDY Industries, Llc v. Blizzard Entertainment, Inc.*,
   No. CV-06-2555-PHX-DGC (Ariz. 7-14-2008) ................................................... 19

*Meza v. General Battery Corp.*,
   908 F.2d 1262 (5th Cir. 1990) ................................................................................ 20

*Molski v. Evergreen Dynasty*,
   500 F.3d 1047, 1059 (9th Cir. 2007) ...................................................................... 14

*Molski v. Evergreen Dynasty.*,
   521 F.3d 1215, 1220-22 (9th Cir. 2008) ................................................................ 15

*Perfect 10 v. Ccbill LLC.*,
   488 F.3d 1102 (9th Cir. 2007) .................................................................................. 7

*Petroleum Sales, Inc. v. Valero Refining Co. — Calif.*,
   No. C 05-3526 SBA. (N.D.Cal. 9-11-2007) .......................................................... 11

*Polar Bear Productions, Inc. v. Timex Corp.*,
   384 F.3d 700, 709 (9th Cir. 2004) ......................................................................... 19

*Poly Software Intern., Inc. v. Su*,
   880 F. Supp. 1487(Utah 1995) ............................................................................... 22

*Rhodes v. Robinson*,
   380 F.3d 1123, 1129 (9th Cir. 2004) ....................................................................... 7

-iii-

OBJECTIONS TO ATTORNEY'S FEES RECOMMENDATION
AND REQUEST FOR DE NOVO DETERMINATION

*Screenlife Establishment v. Tower Video, Inc.*,
    868 F. Supp. 47, 50 (S.D.N.Y. 1994) ........................................................................... 7

*Taylor v. Sturgell*,
    128 S. Ct. 2161 (June 12, 2008) ................................................................................... 17

*Torres-Negrón v. J & N Records*,
    504 F.3d 151, 164 (1st Cir. 2007) ................................................................................. 7

*Triple Tee Golf, Inc. v. Nike, Inc.*,
    NO. 4:04-CV-302-A. (N.D.Tex. 8-10-2007) ............................................................... 14

*U.S. v. City and County of San Francisco*,
    699 F. Supp. 762 (N.D. Cal. 1988) ............................................................................. 11

*United States v. Heath*,
    103 F. Supp. 1, 2 (D. Haw. 1952) ............................................................................... 12

-iv-

NOTICE OF MOTION & MOTION FOR *DE NOVO* DETERMINATION & OBJECTIONS

TO ALL PARTIES AND THEIR COUNSEL**:**

Please take notice that at 9:00AM, on November 3, 2008 before U.S. District Judge the Honorable James Ware at the San Jose Division of the Northern District of California, pursuant to FRCP 72(b), 28 U.S.C. 636(b)(1), Civ. L.R. 72-3 and Civ. L.R. 7-2, copyright owner, *pro se* plaintiff Dongxiao Yue ("Dr. Yue" or "Yue"), will move the Court for *de novo* determination of Defendants' motion for attorneys' fees and costs [Docket No. 53], which the court referred to Magistrate Judge Laporte. Plaintiff respectfully objects to the Magistrate Judge's Report and Recommendation to award $219,949.90 to copyright Defendants Sun Microsystems, Inc. and StorageTek et al. under Section 505 of the Copyright Act [Docket No. 142]. Yue's motion for *de novo* determination of Defendants' motion for attorneys' fees and costs is based upon the this notice, the 29 objections presented below, the Court's record and the Declaration of Dongxiao Yue ("Yue Decl."), filed concurrently.

## FACTUAL BACKGROUND

Since 1994, Yue, a Chinese software developer, had been developing software named "PowerRPC." In July 1996, Yue founded the company "Netbula, LLC" ("Netbula"). This case involves the copyright of the code Yue wrote before Netbula came to exist, with U.S. registration number TXu 1-576-987 ("the `987 Copyright)[1]. Yue always owned this copyright[2].

In 2000, StorageTek purchased eight (8) PowerRPC SDK licenses and 1000 runtime licenses. Yue delivered PowerRPC to StorageTek on a CD with license information printed on it: "8

---

[1] This copyright has effective date of November 27, 2007. Yue Decl. at ¶12, Ex.D. However, when Yue filed the First Amended Complaint ("FAC") on December 10, 2007, he had not yet received the certificate of registration.

[2] The other two copyrights litigated in this case were assigned to Yue in September 2007, with registration numbers TX 6-437-847 (the "`847 Copyright") and TX 6-491-697 (the "`697 Copyright"). None of the `987, `847 and `697 copyrights was involved in related *Netbula-Sun* case (Case No. C06-07391), where "the only copyright at issue" was the one with Registration No. TX 6-211-063 (the "`063 Copyright). Defendants question whether Yue or Netbula owns the rights of the `063 Copyright.

-1-

1  Developers 1000 runtime". This information was also embedded in the software and would be

2  displayed on the computer screen when a user ran the software.

3      Soon afterward, StorageTek falsely claimed that it stopped using or distributing PowerRPC. In

4  fact, it developed many products with PowerRPC and far exceeded the number of licenses. One

5  StorageTek product that incorporated PowerRPC is the "LibAttach" software. Lisa K. Rady, the

6  StorageTek program manager for the LibAttach software, wrote in an internal email:

7          As you can see, we have exceeded the 1,000 distributions that we

8          had right to with Netbula…. I think it is obvious that engineering

9          has not and did not monitor the distributions on this product.

10  In the responding email, Michael Melnick, another StorageTek manager, wrote:

11          The agreement is specific to platform (Win NT and 95/98 platforms)

12          types of Netbula software (PowerRPC SDK). This concerns me
            greatly...

13      At the time of these emails, StorageTek already developed LibAttach by using PowerRPC

14  on Windows 2000 – an unlicensed platform. StorageTek also sold unlimited licenses which

15  allowed StorageTek customers to make unlimited copies of PowerRPC for unlimited concurrent

16  use. StorageTek also granted its customers "floating" licenses, which limited the number of

17  concurrent users but permitted unlimited number of copies of PowerRPC. StorageTek only

18  purchased eight (8) SDK licenses in 2000. But more than eight users had used PowerRPC SDK on

19  multiple computers. See, Counts I-V of the First Amended Complaint ("FAC").

20      In 2004, StorageTek decided to upgrade PowerRPC. Concealing the fact that it had

21  exceeded the licenses, StorageTek purchased one (1) PowerRPC SDK license and 1000 runtime

22  licenses for a newer version of PowerRPC. Again, StorageTek distributed more than 1000 copies

23  of the newer version of the PowerRPC, sold unlimited licenses and "floating" licenses. See,

24  Counts V-IX of the FAC.

25

26                                          -2-

27

28

In mid 2005, Yue started to suspect that StorageTek might have made unauthorized copying of PowerRPC. In mid 2005, right before it was acquired by Sun, StorageTek finally admitted that it had distributed at least 7455 copies of PowerRPC. Yue later discovered evidence of infringement on a far larger scale and continuing infringement as recent as late 2007.

In December 2006, Netbula filed a civil action against StorageTek and Sun, alleging infringement of the `063 Copyright, fraud, breach of contract and unfair competition (Case No. C-06-07391, N.D. Cal, the "*Netbula-Sun*" case). Sun counter-claimed Yue personally for allegedly infringing the Java trademark.

## RELEVANT PROCEDURAL BACKGROUND

On October 22, 2007, acting *pro se*, Yue filed a FRCP 24(a) motion to intervene and join as a party in *Netbula-Sun*, requesting injunctive relief due to ongoing infringement of Yue's personally owned copyrights. *Netbula-Sun* was then presided over by Judge Jenkins and no dispositive motion was pending. Yue's motion was set for hearing on November 27, 2007.

The next day, on October 23, 2007, Netbula deposed Michael Abramovitz, a FRCP 30(b)(6) witness offered by Sun. After the deposition, Sun filed a motion for summary judgment.

Netbula and Yue informed the District Court that Yue would have to assert his own claims against Sun, multiple times[3]. They suggested that the most efficient approach was for Yue to join *Netbula-Sun*; the alternative would be for him to file a separate action.

Yue sought a stipulation from Sun for him to join *Netbula-Sun*. Sun refused. Instead, Sun filed an "administrative" request to vacate the hearing of Yue's rule 24(a) motion to join *Netbula-Sun* and Yue's motion for injunctive relief. On October 31, 2007, in a hearing without Yue's participation, Judge Jenkins granted Sun's request and vacated the hearing of "Non-Party Dongxiao Yue's" motions. After his effort to join *Netbula-Sun* blocked, on November 19, 2007,

---

[3] See, e.g., Document No. 91, p.4:10-18 (filed on October 30, 2007); Document No. 98, p.3:11-19 and Document No. 99, pp.4:23-5-18 (filed on November 5, 2007) of *Netbula-Sun*.

-3-

OBJECTIONS TO ATTORNEY'S FEES RECOMMENDATION
AND REQUEST FOR DE NOVO DETERMINATION

Yue filed the instant *Yue v. Sun* case ("*Yue-Sun*" or "*Yue*", Case No. C07-05850), alleging ten (10) counts of willful copyright infringement. The case was assigned to District Judge the Honorable Susan Illston.

The following day, November 20, 2007, at a hearing in *Netbula-Sun*, Judge Jenkins ordered Yue to "cease and desist" from filing pleadings or speaking in court. The Judge and the parties also made it clear that "the only copyright at issue" in *Netbula-Sun* was the `063 copyright. Judge Jenkins also suggested Sun to question the validity of the assignment of the `063 copyright, so "he is not substituted in as a party" in *Netbula-Sun*. See Doc. No. 64. Sun then filed a motion to relate *Yue-Sun* to *Netbula-Sun*[4]. Because motion papers for relating the cases must be filed in the earlier case ---*Netbula-Sun*, Yue did not file any response to Sun's motion to relate the cases in light of the "cease and desist" order. On December 10, 2007, Yue filed the First Amended Complaint ("FAC"), alleging willful direct and/or secondary infringement by five individual defendants.

Sun's motion for summary judgment in the *Netbula-Sun* case was heard on December 14, 2007. At the hearing, Judge Jenkins re-iterated that Yue – the *pro se* plaintiff in *Yue-Sun* -- may not speak to him. As to *Yue-Sun*, the Judge stated that "it's not completely overlapping with the present [*Netbula-Sun*] claim." As to Netbula's copyright claim in *Netbula-Sun*, Judge Jenkins stated: "this claim may survive." See, Exhibit B to the Declaration of Yue (transcript).

On December 17, 2007, Yue wrote a letter to Judge Jenkins, again seeking clarification on whether he was allowed to file papers before the Judge. Yue wrote, if permitted, he would file a "response" to Sun's motion to relate *Yue-Sun* to *Netbula-Sun*.

On January 2, 2008, Yue moved before Judge Illston for default judgment against Sun and StorageTek. Sun filed an opposition. Yue filed a reply brief on January 8, 2008. The next day, on January 9, 2008, a backdated order was entered to relate *Yue-Sun* to *Netbula-Sun*. On January 10,

---

[4] Sun's counsel asked Yue to file a motion in *Netbula-Sun* to relate the cases. Yue declined to do so because of the "cease and desist" order.

Case No. C07-05850-JW                OBJECTIONS TO ATTORNEY'S FEES RECOMMENDATION
                                     AND REQUEST FOR DE NOVO DETERMINATION

2008, the Executive Committee of the Court reassigned *Yue-Sun* to Judge Jenkins. On January 18, 2008, Judge Jenkins granted Sun's motion for summary judgment as to the copyright claim in *Netbula-Sun*.

On January 28, 2008, attorney Elena Rivkin noticed her appearance as counsel for Yue in *Yue-Sun*. On February 21, 2008, Yue filed a motion to proceed as a *pro se* plaintiff again.

On March 4, 2008, Judge Jenkins dismissed the instant case with prejudice and entered final judgment against Yue. Judge Jenkins also denied Yue's request to proceed *pro se*.

On March 10, 2008, Yue filed a motion to disqualify Fenwick & West, LLP ("Fenwick") in the related *Yue v. CSI* case (Case No. C08-0019-JW). Yue had complained about Fenwick's apparent conflict of interest and unprofessional conduct since 2007. This disqualification motion was later consolidated with a motion to disqualify Fenwick in *Yue-Sun*.

On March 18, 2008, Yue filed a motion in the *Yue v. CSI* case and *Yue-Sun* to disqualify Judge Jenkins under 28 U.S.C. §144 etc. Pursuant to Civ. L.R. 3-15, Yue requested the Clerk to refer the motion to a randomly assigned judge for determination. On the same day, Sun filed a motion for attorney's fees, seeking $92,000 in fees and costs. On March 21, 2008, Judge Jenkins referred the attorney's fees motion to Magistrate Judge Elizabeth D. Laporte.

On March 26, 2008, Yue filed a motion for relief from judgment under FRCP 60(b). On April 1, 2008, Yue filed an opposition to Sun's motion for attorney's fees and a notice of appeal. On April 8, 2008, Sun filed a reply brief to Yue's opposition to the motion for attorney's fees, seeking $134,000 in fees and costs.

On April 9, 2008, this case was reassigned to U.S. District Judge the Honorable James Ware.

On June 16, 2008, Yue filed a motion to strike Sun's motion for attorney's fees for its counsel's failure to comply with Civil Local Rule 54-6, which states that Counsel must meet and confer to resolve fee disputes. Sun never attempted to discuss its fee demand with Yue before filing the motion.

-5-

OBJECTIONS TO ATTORNEY'S FEES RECOMMENDATION
AND REQUEST FOR DE NOVO DETERMINATION

1    On July 22, 2008, the hearing of Sun's fee motion and Yue's motion to strike was held before

2    Judge Laporte. Yue argued the motions himself. On July 23, 2008, the Court signed an order that

3    "allows Elena Rivkin Franz to withdraw as counsel of record" for Yue and "[s]ubstituting

4    Dongxiao Yue as new counsel of record, *in propria persona*" in this case. Doc. No. 136.

5    On July 23, 2008, Sun filed a declaration stating that an additional $87,000 in fees had been

6    incurred. On July 24, 2008, Judge Ware denied the motion to disqualify Judge Jenkins as moot;

7    denied the rule 60(b) motion for lack of jurisdiction; denied the motion to disqualify Fenwick.

8    On August 6, 2008, Magistrate Judge Laporte recommended that Sun be awarded

9    $219,949.90 in attorney's fees and costs under §505 of the Copyright Act.

10   **OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

11   For the following reasons, Plaintiff respectfully objects to the Magistrate Judge's report and

12   recommendation.

13   **GENERAL OBJECTIONS**

14   **Objection 1: Catch-22 is Impermissible**

15   To protect his copyrights, Yue first attempted to join *Netbula-Sun*; Sun opposed Yue's

16   joinder request and the Court vacated Yue's request to join; since he could not join *Netbula-Sun*,

17   Yue filed a separate action; then Sun alleged that Yue was virtually represented in *Netbula-Sun*,

18   therefore *Yue-Sun* was duplicative and must be dismissed. No matter what he did, Yue could not

19   have his day in court to protect his copyrights. This is a classic trap:

20       There was only one catch and that was Catch-22, which specified that a
21       concern for one's own safety in the face of dangers that were real and
         immediate was the process of a rational mind. Orr was crazy and could
22       be grounded. All he had to do was ask; and as soon as he did, he would
         no longer be crazy and would have to fly more missions. Orr would be
23       crazy to fly more missions and sane if he didn't, but if he was sane he had
         to fly them. If he flew them he was crazy and didn't have to; but if he
24       didn't want to he was sane and had to. Yossarian was moved very deeply
         by the absolute simplicity of this clause of Catch-22 and let out a
25

26                                          -6-

27
28

1    respectful whistle.

2    "That's some catch, that Catch-22," he observed.
3    "It's the best there is," Doc Daneeka agreed.

4    *Rhodes v. Robinson*, 380 F.3d 1123, 1129 (9th Cir. 2004) (quoting Joseph Heller, Catch-22, at 47

5    (6th ed. 1976)). Catch-22 is a trap with no way out. In this case, Yue could not have his day in

6    court to litigate the merits of his copyright claims no matter what he did. Such Catch-22 scheme is

7    impermissible, and Sun's tactics must fail.

8    **Objection 2: Defendants are not Prevailing Parties for the Purpose of Section 505 of the Copyright Act**

9        A defendant may be deemed the "prevailing party" under the Copyright Act when it

10   successfully defends against the significant claims "actually litigated" in the action. *Screenlife*

11   *Establishment v. Tower Video, Inc*., 868 F. Supp. 47, 50 (S.D.N.Y. 1994). See also, *Torres-Negrón*

12   *v. J & N Records,* 504 F.3d 151, 164 (1st Cir. 2007) ("We have made no ruling on [plainitff's]

13   claims of infringement. Therefore, [defendant] has not prevailed on the merits of the copyright

14   infringement allegations and is not entitled to a fee award under the statute."). See also,

15   *Buckhannon Bd. & Care Home, Inc.* v. *W. Vir. Dep't of Health & Human Res.*, 532 U.S. 598, 603-

16   04 (2001) ("Our '[r]espect for ordinary language requires that a plaintiff receive at least some

17   relief on the merits of his claim before he can be said to prevail.'" (citing *Hewitt v. Helms*, 482

18   U.S. 755, 760 (1987)).

19       This makes sense. Without a ruling on the merits of the copyright claims, it would be

20   impossible to apply the *Fogerty* factors (such as frivolousness and objective unreasonableness)

21   and to determine whether awarding fees would be faithful to the purpose of the Copyright Act. See,

22   *Perfect 10 v. Ccbill LLC.*, 488 F.3d 1102 (9th Cir. 2007) (denying attorney's fees and costs

23   because "Perfect 10's legal claims are not frivolous or objectively unreasonable.").

24       Defendants obtained final judgment in their favor solely on "virtual representation"

25   theories that were recently disapproved by the U.S. Supreme Court in *Taylor v. Sturgell*. In this

26                                                        -7-

27   _____

28   Case No. C07-05850-JW                        OBJECTIONS TO ATTORNEY'S FEES RECOMMENDATION
                                                    AND REQUEST FOR DE NOVO DETERMINATION

case and the related *Netbula-Sun* case, Sun and StorageTek have not obtained *final judgment on the merits* of any of the copyright claims. The factual allegations and merits of the ten (10) claims in the instant *Yue-Sun* case were not analyzed in the dismissal order. Therefore, Defendants were not prevailing parties *for the purpose of Section 505 of the Copyright Act*.

**Objection 3**: **The Magistrate Judge Did Not Consider the Pivotal Criterion Required by the Ninth Circuit for Awarding Fees under the Copyright Act**

In *Berkla v. Corel Corp.*, 302 F.3d 909 (9th Cir. 2002), Corel Corp successfully defended a copyright infringement claim. On whether Corel should be awarded attorney's fees under the Copyright Act, the Ninth Circuit held:

> courts **may not** rely on the Lieb factors if they are not `faithful to the purposes of the Copyright Act.' Faithfulness to the purposes of the Copyright Act is, therefore, the pivotal criterion." *Fantasy, Inc. v. Fogerty,* 94 F.3d 553, 558 (9th Cir. 1996).

*Berkla,* 302 F.3d at 922-923. In denying fees award to the prevailing defendant, the Ninth Circuit held that while the defendant did not technically infringe copyright, its conduct "nevertheless constituted a highly questionable business practice" and "*[i]t would be inconsistent with the Copyright Act's purposes to endorse [defendant's] improper appropriation of [plaintiff's] product by awarding fees.*" *Berkla,* 302 F.3d at 923 (emphasis added).

*Berkla* is unambiguous in holding that awarding fees to a prevailing defendant who engaged in questionable business practice would be inconsistent with the purpose of the Copyright Act. The facts alleged in the FAC include deceptive, fraudulent and oppressive conduct, destruction of evidence and misappropriation of Plaintiff's software. Awarding fees to Defendants would thus be endorsing highly questionable business practice.

**Objection 4: The Court Lacked Jurisdiction to Adjudge the Reasonableness of the Copyright Claims Post-Judgment because Judge Jenkins Did Not Make Such Findings**

In the dismissal order, Judge Jenkins did not make a finding of fact or law on the merits of 10 infringement claims in *Yue-Sun*. The instant *Yue-Sun* case was dismissed solely on the ground of non-party preclusion by virtual representation.

-8-

In their motion for attorney's fees, Sun argued extensively on the merits of the copyright claims. For instance, citing Michael Abramovitz's declaration made in *Netbula-Sun*, they claimed that Sun ceased the alleged infringement in late 2005; they say therefore Yue's claims were objectively unreasonable. Yue refuted Abramovitz's declaration with Abramovitz's own deposition testimony. Sun then switched to the allegations against Schwartz, knowing that Yue had no chance to respond further.

But, in any case, Judge Jenkins's dismissal order did not reach the substantive issues of the copyright claims. The 10 infringement claims accused Defendants of very specific unlawful acts. There was no ruling that decided that any of the 10 claims failed to state a claim for copyright infringement. There was no discovery, no adversarial process taken to determine validity of the claims and truthfulness of the facts.

Because the case is on appeal, the District Court does not have jurisdiction to decide any substantive issues (such as objective unreasonableness of the claims) that had not been resolved before judgment. As stated above, the dismissal order was solely grounded on the theory of virtual representation. No determination on the merits of the 10-count infringement claims was ever made. Plaintiff will be glad to have a chance to litigate the merits of these claims, if he is allowed to do so following proper procedures.

**Objection 5: Legal Fees on Collateral Matters are not Awardable under the Copyright Act**

"Under the American rule, absent contractual or statutory authorization, a prevailing litigant ordinarily may not collect attorneys' fees". *International Union of Petroleum & Indus. Workers v. Western Indus. Maint., Inc.*, 707 F.2d 425, 428 (9th Cir. 1983). Defendants requested fees for the work related to the motion to disqualify Judge Jenkins and the motion to disqualify Fenwick & West. The motion to disqualify the judge was made pursuant to 28 U.S.C. §§ 144 and 455. The motion to disqualify Fenwick was based on the rules of professional conduct and Fenwick's apparent conflict of interest and direct communications to Yue on Netbula matters.

-9-

OBJECTIONS TO ATTORNEY'S FEES RECOMMENDATION
AND REQUEST FOR DE NOVO DETERMINATION

These collateral matters were separate from and independent of the merits of the case. In fact, both disqualification motions were originally filed in the *Yue v. CSI* case and were later cross-filed in *Yue-Sun*. Defendants cited no authority to show that the fees arising under the rules of professional conduct and 28 U.S.C. 144 and 455 are awardable under the Copyright Act[5].

**Objection 6: Post-Judgment Legal Fees are not Awardable under the Copyright Act**

Final judgment in the case was entered on March 4, 2008. The action had been terminated. Therefore, there had been no longer a "civil action" under the Copyright Act pending before the District Court. *Brayton Purcell Llp v. Recordon & Recordon*, 487 F. Supp.2d 1124 (N.D.Cal. 2007). The post-judgment matters did not arise under the Copyright Act and related fees are not awardable under the Copyright Act. Yue did not even have a chance to contest these additional fees --- defendants simply submitted supplemental declarations with additional fees demands.

**Objection 7: "Fees upon fees" are not Awardable under the Copyright Act**

Over $60,000 of the Defendants' fees was for preparing and filing their motion for attorney's fees. Such "fees upon fees" were not authorized by the Copyright Act. See, e.g., *Identity Arts v. Best Buy Enterprise Services Inc.*, No. C 05-4656 PJH. (N.D.Cal. 3-26-2008) (Doc.167) ("defendants have not submitted any controlling authority regarding the availability of fees upon fees vis-a-vis the Copyright Act specifically. Accordingly, the court declines to award such fees.")

**Objection 8: The Magistrate Did Not Make a Detailed Lodestar Analysis**

Defendants requested over $220,000.00 in attorneys fees. About $150,000.00 of which was incurred after the case was terminated. In computing an award, the Court should provide a "detailed account of how it arrives at appropriate figures for `the number of hours reasonably expended' and `a reasonable hourly rate.'" *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983). Determining a reasonable hourly rate is a critical inquiry. *Jordan v. Multnomah County*, 815 F.2d 1258, 1262 (9th Cir. 1987) (citing *Blum v. Stenson*, 465 U.S. 886, 895 n. 11 (1984)). The Court

---

[5] If Defendants allege these motions were frivolous, fees were available under FRCP 11 or 28 U.S.C. § 1927.

-10-

OBJECTIONS TO ATTORNEY'S FEES RECOMMENDATION
AND REQUEST FOR DE NOVO DETERMINATION

1  may not merely refer to the rates actually charged to the prevailing party. *Chalmers v. City of Los*

2  *Angeles*, 796 F.2d 1205, 1210-11 (9th Cir. 1985). As for the number of hours, only hours found to

3  have been reasonably expended may be allowed. *Hensley*, 461 U.S. at 434. The fee applicant must

4  justify her claim by submitting detailed time records. *U.S. v. City and County of San Francisco*,

5  699 F. Supp. 762 (N.D. Cal. 1988). The documentation submitted should be sufficient to satisfy

6  the Court that the hours expended were actual, non-duplicative and reasonable, and to apprise the

7  Court of the nature of the activity and the claim on which the hours were spent. See *Hensley*, 461

8  U.S. at 437. The Magistrate Judge made no lodestar analysis to determine the reasonable rates of

9  and reasonable hours spent by the attorneys. For instance, Pulgram's rate increased from $625 per

10 hour in December 2007 to $690 per hour in January 2008. Why the two different rates were

11 reasonable were not analyzed. Also, as Yue pointed out at the hearing before Magistrate Judge

12 Laporte, many of the fee entries did not make sense, such as an entry for negotiating a protective

13 order and entries about conferring with "counsel for Plaintiff" while Plaintiff was a *pro se*. See,

14 Yue Decl., Ex.C (transcript).

15 **Objection 9: Block Billing Made it Impossible to Determine the Reasonableness of Fees**

16         In Defendants' fee schedule, there were numerous entries where an attorney billed many

17 hours (up to 11.30 hours a day) in a single time slot, without providing the details. See **Objection**

18 **28** below for some examples. "[B]lock billing — the lumping together of multiple tasks in a single

19 time entry — makes it impossible to determine the reasonableness of the time spent on each task."

20 *Petroleum Sales, Inc. v. Valero Refining Co. — Calif.*, No. C 05-3526 SBA. (N.D.Cal. 9-11-2007)

21 (Doc. No. 143).  In *Petroleum Sales*, Judge Armstrong ruled:

22         five problematic instances of block billing are the entries by Esmaili for
        4.3 hours on May 1, 2006; 4.5 hours on June 15, 2006; 2.4 hours on
23         August 8, 2006; 5 hours on August 9, 2006; and 6.9 hours on August 10,
        2006. The Court will therefore exclude the total of this time (23.1 hours)
24         from the lodestar.

25 *Id*. at p.12. Accordingly, Sun's block billing entries should be excluded.

26                                              -11-

27

28

**SPECIFIC OBJECTIONS (Nos. 10 to 29)**

In addition to the general objections above, Plaintiff raises the following specific objections to the Recommendation of the Magistrate Judge ("RMJ").

**RMJ at p.1:20-22: "**On December 14, 2007, the Court ordered that no responsive pleadings would be due until such time as the Court set a date at the upcoming status conference. Despite this order, Plaintiff filed a motion for default judgment, which the Court denied."

**Objection 10**: On December 14, 2007, *Yue-Sun* had not yet been reassigned to Judge Jenkins. The Executive Committee reassigned the case to Judge Jenkins after the completion of the briefing of the motion for default. "[T]he structure of the federal courts does not allow one judge of a district court to rule directly on the legality of another district judge's judicial acts or to deny another district judge his or her lawful jurisdiction." *In Re McBryde*, 117 F.3d 208, 225 (fn.11) (5th Cir. 1997). "No express or implied power is granted a chief judge to affect administratively, directly or indirectly, litigation assigned to and pending before another judge of the court." *United States v. Heath*, 103 F. Supp. 1, 2 (D. Haw. 1952). The situation was at least confusing to Yue.

**RMJ at p.2:3-5:** "In that case, the Court granted Defendants' motion for summary judgment based on its determination that Defendants' use of Netbula's software was within the scope of the 2000 and 2004 license agreements between Netbula and StorageTek."

**Objection 11:** The summary judgment order in *Netbula-Sun* only addressed three narrow issues: (1) the number of users of the SDK; (2) the excess distribution of the PowerRPC runtime; (3) the non-assignment clause of the agreement. That order did not address other infringement claims. For more detailed analysis of the *Netbula-Sun* order, see **Objection 22** below. In addition, the fraud, contract and unfair competition claims are ongoing in *Netbula-Sun*.

**RMJ at p.2:6-7: "**In determining that this action was duplicative of Netbula-Sun, the District Court found that this case presented the same claims already asserted."

**Objection 12**: Plaintiff created a large table showing the differences between the two cases. These differences were not analyzed in the RMJ.

-12-

OBJECTIONS TO ATTORNEY'S FEES RECOMMENDATION
AND REQUEST FOR DE NOVO DETERMINATION

**RMJ at p.2:7-10**: "In fact, many of the allegations in the complaint that Plaintiff claimed constituted additional facts in this case were a verbatim restatement of Yue's declaration presented in opposition to the Netbula-Sun defendants' motion for summary judgment."

**Objection 13**: Yue's declaration in *Netbula-Sun* was not a complaint. The declaration could not be used to assert additional claims. Yue's declaration had 88 paragraphs, with 45 exhibits, providing a lot of detail about Sun's infringing activities and fraudulent conduct. The *Netbula-Sun* court only made reference to paragraphs 35, 40, 49 and Exhibit 13 (a release note of LibAttach Software) of Yue's declaration[6]. The only references to Yue's declaration in the *Netbula-Sun* summary judgment order were made in the following context:

> StorageTek purchased at least one more license. (See Yue Decl., ¶¶ 35, 49; Defs.' Mem. of P. & A. at 23.)

> Plaintiff's evidence consists of "release notes" regarding StorageTek's LibAttach 1.1 software, which state that this software supports Windows 2000 systems, purportedly showing that it was developed for Windows 2000. (Yue Decl. ¶ 40; Exh. 13)

**RMJ at p.2:10-11**: "In addition, the Court granted summary judgment on the merits of claims in Netbula-Sun that were now presented in this case."

**Objection 14**: The *Yue-Sun* case had 10 counts of infringement claims. The comparison table in Yue's opposition brief showed that most of the claims were not in the *Netbula-Sun* case. In addition, the *Yue-Sun* case is about infringement of different intellectual property rights owned by Yue and not in *Netbula-Sun*. On December 14, 2007, Judge Jenkins clearly stated that *Yue-Sun* "is not completely overlapping with [*Netbula-Sun*]." Although Judge Jenkins granted summary judgment as to the copyright claim in *Netbula-Sun* on January 18, 2008, he made no decision on the merits of the 10 infringement claims in *Yue-Sun*.

---

[6] Paragraph 35 was about the 2000 purchase order with which StorageTek purchased 8 developer licenses and 1000 runtime licenses. Paragraph 40 was about the release notes for LibAttach. Paragraph 49 was about Lisa Rady's email sating she had PowerRPC software on a CD.

OBJECTIONS TO ATTORNEY'S FEES RECOMMENDATION
                                                AND REQUEST FOR DE NOVO DETERMINATION

**RMJ at p.2:10-15**: "Finally, the Court found that the two actions involved infringement of the same rights. Even though Plaintiff claimed that Defendants' use of software impacted additional copyrights, Netbula should have asserted violations of those copyrights in Netbula-Sun, rather than filing this subsequent lawsuit."

**Objection 15**: *Yue-Sun* involved the infringement of the `987, `847 and `697 copyrights by different types of infringing activities. The Magistrate Judge overlooked the following:

(1) The `987 Copyright was always owned by Yue. Netbula never had any standing to sue for this copyright. See, e.g., *Triple Tee Golf, Inc. v. Nike, Inc.*, NO. 4:04-CV-302-A. (N.D.Tex. 8-10-2007) (the corporation plaintiff had no standing to sue on copyright owned by its founder Jack Gillig).

(2) After Netbula transferred the `847 and `697 copyrights to Yue in September 2007, it lost standing on these two copyrights. So Yue sought to join *Netbula-Sun*.

(3) Judge Jenkins and Sun specifically constrained the *Netbula-Sun* case to the `063 Copyright. The `063 Copyright was "the only copyright at issue" in the *Netbula-Sun* case. The `987, `847 and `697 copyrights were precluded from *Netbula-Sun* **after** *Yue-Sun* was filed.

(4) Yue was excluded from *Netbula-Sun* before and after *Yue-Sun* was filed (Catch-22).

**RMJ at p.2:19-20**: "The Court further found that Plaintiff entered into this assignment at least in part due to his desire to bring Netbula's then pending copyright claims in his own name, on a pro se basis."

**Objection 16**: There is no evidence that the purpose of the assignment of the `847 and `697 copyrights to Yue was for the purpose of bringing the action *pro se*. Yue had original ownership of the `987 Copyright. That copyright alone gave him the standing to prosecute his own copyright claims without any assignment, *pro se*[7] or otherwise.

**RMJ at p.2:21-23**: "In dismissing the action, the Court noted that Plaintiff's tactics have ranged from duplicative to nearly vexatious."

---

[7] Proceeding *pro se* is a statutory right granted by the judiciary act of 1789, and "is a right of high standing, not simply a practice to be honored or dishonored by a court depending on its assessment of the desiderata of a particular case.." *O'reilly v. New York Times Co.*, 692 F.2d 863, 867 (2nd Cir. 1982).

-14-

OBJECTIONS TO ATTORNEY'S FEES RECOMMENDATION
AND REQUEST FOR DE NOVO DETERMINATION

**Objection 17**: The range of "from duplicative to nearly vexatious" was not precisely defined. There is a qualitative difference between "litigious" and "vexatious." The heart of the vexatious litigant analysis is to inquire whether the district court made "`substantive findings as to the frivolous or harassing nature of the litigant's actions.'" *Molski v. Evergreen Dynasty*, 500 F.3d 1047, 1059 (9th Cir. 2007) (per curium) (imposing pre-filing requirement for filing 400 lawsuits on near identical injuries). But, see also, *Molski v. Evergreen Dynasty*., 521 F.3d 1215, 1220-22 (9th Cir. 2008), for the dissenting opinion by Judge Kozinski and four circuit judges. At every step, Yue followed the court orders, the rules and the controlling authorities. The Court has not identified a single incident where Yue filed a frivolous paper or acted in a harassing manner.

**RMJ at p.3:3-5**: "This was not the first time Plaintiff attempted to avoid Judge Jenkins in this case, as he also sought leave to oppose Sun's earlier motion to relate this case to Netbula-Sun."

**Objection 18**: A litigant should not care who the judge is, but what the law is. But, when a judge orders a litigant to "cease and desist" from filing papers, it was impossible for that litigant to meaningfully proceed before the judge. Judge Jenkins "instructed Yue that he could not file motions, notice hearing dates, or speak in court unless he had leave of court or until he was given permission to represent himself." Doc. No. 142, *Netbula-Sun* (Feb 8, 2008). How can a litigant present his case when the judge refuses to accept his papers or listen to his arguments?

Yue did not oppose relating *Yue-Sun* to *Netbula-Sun* and he never indicated that he would oppose relating *Yue-Sun* to *Netbula-Sun*. In all his papers, he stated that he would file a "response" if he was permitted to do so. A response is not necessarily an opposition. This distinction is important: all Yue wanted was to make sure that he could have his day in court once the case was reassigned to Judge Jenkins.

**RMJ at p.4:26-28**: "In addition, Plaintiff's complaint did not raise a novel issue of law or fact or an objectively reasonable claim, as the same basic claims had already been previously rejected by the District Court."

-15-

1   **Objection 19**: The *Yue-Sun* case was filed on November 19, 2008. The summary judgment in

2   *Netbula-Sun* was issued on January 18, 2008, two months later. Yue could not possibly predict the

3   outcome of Sun's summary judgment motion back in 2007. All facts and known caselaws pointed

4   to the conclusion that Sun's conduct was plain software piracy. Yue could not be charged with the

5   duty to predict the Court's ruling from the parties' papers either.   After the completion of the

6   briefing on the summary judgment motion in *Netbula-Sun*, on December 14, 2007, Judge Jenkins

7   specifically stated that the *Netbula-Sun* copyright claim "may survive." Even after the summary

8   judgment order in *Netbula-Sun*, Yue had no reason to believe that *Yue-Sun* would be dismissed

9   because Judge Jenkins stated that *Yue-Sun* is not completely overlapping with *Netbula-Sun*.

10          There were 10 copyright infringement claims in this case. Judge Jenkins had not made a

11  finding on whether Plaintiff's complaint raised novel issue of law or fact or an objectively

12  reasonable claim. Yue didn't have the chance to litigate the claims on the merits. The Court does

13  not have jurisdiction to make such conclusions on the merits now when the case is on appeal.

14  **RMJ at p.5:1-5**: "Defendants' degree of success in the action was total, as they established that
    Plaintiff could not assert new copyrights against Defendants for their use of Netbula's software
15  pursuant to licenses, the subject of the prior suit."

16  **Objection 20**: The summary judgment order in *Netbula-Sun* was not final and it only covered

17  certain narrow issues. To permanently extinguish Yue's copyright claims and declare Sun's

18  conduct protected by the copyright law, there must be judgment on the merits. The *Yue-Sun*

19  dismissal order did not make any finding on the merits of the 10 infringement claims.

20  **RMJ at p.5:7-15**: "Plaintiff's lawsuit was also objectively unreasonable.  In granting the motion
21  to dismiss, the District Court recognized that the caselaw clearly prevented a party or those in
    privity from bringing a separate action involving the same subject matter against the same
22  defendants in a different action. See  March 4, 2008 Order at 3-6 (quoting relevant case law
    including <u>Adams v. Cal. Dep't of Health Servs.</u>, 487 F.3d 684 (9th Cir. 2007))."
23

24  **Objection 21**: The *Adams* case was distinguishable from this case. In *Adams*, **the same party-**

25  **plaintiff** filed a second suit against the same defendants while the first case is pending. In this case,

26  a **non-party** to *Netbula-Sun* filed the second suit. Moreover, the *Adams* case was not a copyright

                                            -16-

27

case. As cited in Plaintiff's briefs, the controlling authority for this situation is *Kourtis v. Cameron*, 419 F.3d 989 (9th Cir. 2005) (no privity relationship between an employer and an employee who filed successive copyright lawsuits). In *Kourtis*, a second copyright owner sued the same defendants on the same copyright years after the first suit adjudicated that the defendants did not infringe that copyright. Even though the *Kourtis* plaintiff was closely involved in the first suit and was deposed as a witness in the first suit, the Ninth Circuit found the second suit not precluded by the first one. In addition, the U.S. Supreme Court has recently disapproved the "virtual representation" grounds of non-party preclusion in *Taylor v. Sturgell*, 128 S. Ct. 2161 (June 12, 2008).

**RMJ at p.5:16-22**: "In addition, the District Court's previous order in Netbula-Sun granting Defendants' motion for summary judgment established that Defendants' use of Netbula's PowerRPC software was licensed and did not constitute infringement.  See Jan. 18, 2008 Summary Judgment Order.  The Court had already determined as a matter of law that the license between Netbula and StorageTek foreclosed a claim of copyright infringement."

**Objection 22**:  Judge Jenkins did not make a broad holding that "the license between Netbula and StorageTek foreclosed a claim of copyright infringement." A licensee infringes when its copying exceeds the scope of a license. Whether defendants copied the PowerRPC software without a license or the copying exceeded the scope of a license is a factual inquiry. In the January 18, 2008 summary judgment order, Judge Jenkins decided the following issues:

*(1) The User Count for the SDK license*

The SDK licenses were purchased pursuant to a written purchase agreement drafted by defendant Michael Melnick. The agreement stated in part:

> NETBULA grants STORAGETEK, a … license for use by STORAGETEK's employees, consultants and subsidiaries for up to ONE user(s), **for each of the licenses purchased**, to use the PowerRPC SDK Product under Windows NT and 95/98 platforms; **each user can only use the software on one computer**….

> The license is not transferable without written permission of Nebula…

-17-

> Payment. You agree to pay NETBULA the amounts set forth in Exhibit C in full payment for the rights and licenses granted…

On the number of users, Judge Jenkins wrote:

> First, turning to the number of users, both the 2000 and 2004 Agreements state that one user may use each of the licenses purchased. This provision does not limit how the software may be used… the limitation on the number of users is a separate contractual promise, or covenant, that does not limit or condition the use of the license. Therefore, because this provision is not a limitation on the scope of the license, Plaintiff is not entitled to a copyright infringement claim on this issue.

Plaintiff could not find any prior authority which held that a "one user on one computer' restriction "does not limit or condition the use of the license." Thus, Judge Jenkins's January 18, 2008 order established a new precedent unknown to Yue when he filed the instant action in 2007. Even so, Judge Jenkins's conclusion was a narrow one. In fact, in the same section of the order, Judge Jenkins recognized that the platform restrictions "to use the PowerRPC SDK Product under Windows NT and 95/98 platforms" did "limit the scope of the license itself." Regarding the StorageTek's emails indicating they developed software for Windows 2000, Judge Jenkins wrote that "Plaintiff offers these communications… to show that StorageTek distributed software for users on unlicensed platforms," leaving such acts open for infringement claims.

The Yue-Sun action, filed two months **before** that order, alleged different infringing activities. On the infringement of the SDK, the *Yue-Sun* complaint alleged that Sun/StorageTek infringed the SDK copyright by exceeding both the number of users and the number of computers. Moreover, the *Yue-Sun* complaint alleged that Sun/StorageTek destroyed evidence of the infringement by erasing the contents of computers. Counts I, II, III, V and VII of the FAC.

### (2) The Excess Distribution of PowerRPC

The 2000 agreement stated that StorageTek "shall pay Netbula …for the right to distribute up to 1000 units of software containing the Supporting Programs." Netbula offered StorageTek to purchase additional licenses. Sun and StorageTek admitted that the agreement was a "prepayment"

-18-

agreement. The licenses were not unlimited but counted. Mr. Melnick wrote in an internal email: "The number that Holly has provided and thought it may be low causes quite a problem for you. We have only made 2 purchases for the rights to distribute a total of 2000 licenses." The situation is no different from a bookstore (Netbula) offering customers (StorageTek) to buy books (licenses). One who pays for one copy of a book but takes home two copies commits theft. "Having taken the copyrighted material, [defendant] is in no better position … than an ordinary thief." *Polar Bear Productions, Inc. v. Timex Corp.*, 384 F.3d 700, 709 (9th Cir. 2004).

On exceeding the number of licenses, Judge Jenkins entered summary judgment for Sun in *Netbula-Sun* on the ground that the "prepayment" term is merely a contract covenant. Again, the order established a precedent in copyright law. Recently, the Federal Circuit reversed similar readings of a license agreement in *Jacobsen v. Katzer*, No. 06-CV-01905 JSW, 2007 WL 2358628 (N.D. Cal. Aug. 17, 2007). See, *Jacobsen v. Katzer*, 2008-1001 (Fed. Cir. 8-13-2008) (attribution clause in Artistic License is not an ***independent*** contractual covenant). See also, *MDY Industries, Llc v. Blizzard Entertainment, Inc.*, No. CV-06-2555-PHX-DGC (Ariz. 7-14-2008) (using an automated program to play a licensed computer game constitutes copyright infringement). In any case, *Yue-Sun* involved claims that are different, such as distributing infringing derivative works, issuing floating licenses, fail to comply with the limited distribution clause, inducing infringement by others… See Counts IV, V, VIII and IX of the FAC.

### (3) The Termination of the License Agreement upon Sun's Acquisition of StorageTek

The Netbula-StorageTek agreement was not transferable and was terminated upon Sun's acquisition of StorageTek. In the January 18, 2008 order, Judge Jenkins ruled that "this provision does not limit the scope of the license."  However, in the instant *Yue-Sun* action filed in 2007, Plaintiff contends that the license ceased to exist because it was terminated. A non-existent license does not have a scope. Therefore, the instant action was about the existence of the license, not the scope. The claim was thus different. See Count X of the FAC.

-19-

OBJECTIONS TO ATTORNEY'S FEES RECOMMENDATION
AND REQUEST FOR DE NOVO DETERMINATION

In summary, the January 18, 2008 order only resolved three narrow issues. The *Yue-Sun* case filed in 2007 had 10 counts of infringement that were distinctive from the claims in *Netbula-Sun*.

**RMJ at p.5:20-23**: "In addition, defense counsel warned Plaintiff that before filing an entirely new and separate infringement action, he should meet and confer with counsel because the action was duplicative, advising that Sun would seek to recover attorney's fees."

**Objection 23**: Yue requested Sun to stipulate to Yue's joinder in *Netbula-Sun*. Sun refused to stipulate. Instead, Sun filed a motion to vacate Yue's motion to join *Netbula-Sun*, forcing Yue to file a separate lawsuit. Judge Jenkins later concluded that new lawsuit -- *Yue-Sun* -- was not completely overlapping with *Netbula-Sun*. Yue Decl., at ¶10, Ex. B. Yue had no reason to believe that defense counsel knew better than the judge. Ninth Circuit's controlling authority on successive copyright suits by a non-party seemed to be the case of *Kourtis v. Cameron*, 419 F.3d 989 (9th Cir. 2005). Yue had the right to bring the additional claims on his personally owned `987, `847 and `697 copyrights that were excluded from *Netbula-Sun*.

**RMJ at p.5:25-28:** "While the Supreme Court recently disapproved of the doctrine of preclusion by virtual representation, see Taylor v. Sturgell, 128 S. Ct. 2161, 2173 (June 12, 2008), it noted that non-parties to the prior litigation may be precluded under certain recognized exceptions... Here, the District Court found privity based on assignment. In addition, Yue appears to have assumed control over the earlier litigation."

**Objection 24**: "[P]rivity has shown itself to be an elusive and manipulable concept" and should be only used as "a convenient means of expressing conclusions that are supported by independent analysis." *Meza v. General Battery Corp.*, 908 F.2d 1262 (5th Cir. 1990) (internal quotes and citations removed). Under federal law, "concepts summarized by the term privity are looked to as a means of determining whether the interests of the party against whom claim preclusion is asserted were represented in prior litigation." *Chase Manhattan Bank, N.A. v. Celotex Corp.*, 56 F.3d 343, 346 (2nd Cir. 1995). "Privity may exist for the purpose of determining one legal question but not another depending on the circumstances and legal doctrines at issue." *Id.* Such inquiry avoids the fallacy of circular logic. Yue sued on the `987 Copyright, which he always

-20-

OBJECTIONS TO ATTORNEY'S FEES RECOMMENDATION
AND REQUEST FOR DE NOVO DETERMINATION

owned, Netbula had no standing on sue on it. Though the `847 and `697 Copyrights were assigned,

they were not litigated in *Netbula-Sun* – they were excluded. The `063 copyright was the only one

at issue in *Netbula-Sun*. Judge Jenkins made no finding that Yue assumed control of *Netbula-Sun*.

**RMJ at p.6:1-9**: "As to factual reasonableness, Plaintiff alleged claims against Sun's officers
based on communications between them and Plaintiff in 2006. However, Plaintiff knew from the
factual record in Netbula-Sun that the allegedly infringing acts stopped in late 2005. For example,
he was present at the deposition where Sun's Rule 30(b)6) witness testified that it removed the
allegedly infringing Netbula software in late 2005. See Netbula-Sun Docket No. 107, Ex. 44 at 3.
While Yue argues that the evidence shows ongoing infringement as recently as 2007, he does not
state how the individual defendants are connected to such alleged ongoing infringement. While
Yue attacks Abramovitz's credibility, he does not offer any factual basis for naming the particular
two high level officers in this action, revealing that the allegations against them are speculative."

**Objection 25**: On October 23, 2007, Abramovitz testified about his personal acts of erasing the

PowerRPC software from computers [8]. As cited in Yue's opposition to the fees motion,

Abramovitz admitted having no knowledge about the control and monitoring of the distribution of

PowerRPC within or outside Sun/StorageTek. He did not even know who had that knowledge. He

was a test engineer. Abramovitz only talked about his own actions of removing the software.

Sun's managers, such as DeCecco and Melnick, submitted declarations in *Netbula-Sun*, but none

of them was willing to state that Sun stopped the alleged infringement at any time. Therefore, the

allegation that Sun stopped the alleged infringement in late 2005 was unfounded. The *Netbula-Sun*

Court made no finding of fact that Sun or its customers stopped the alleged infringement anywhere.

The Magistrate Judge stated that although Yue presented evidence that there was

infringement as recent as 2007, his claims against two high-level Sun executives were

"speculative." In the FAC, Yue alleged specific facts that support Schwartz, Melnnick and

DeCecco's liabilities under the copyright law. Moreover, judgment in the case was entered at the

---

[8] Yue did not attend most part of the Abramovitz deposition. When Yue came into the room to discuss
Sun's use of certain confidential documents, the deposition was completed. As alleged in the FAC of *Yue-
Sun*, Yue found evidence of continuing infringement as recent as late 2007.

-21-

1   "motion to dismiss" stage. Under Federal Rule of Civil Procedure 8(a), as long as Yue gave

2   defendants a fair notice of the claim and the ground upon which it rests, "[s]pecific facts are not

3   necessary." *Erickson v. Pardus*, 127 S. Ct. 2197, 2200 (2007). Thus, the FAC satisfied the notice

4   pleading standard.

5       In any case, Judge Jenkins did not rule on any of such substantive issues regarding the

6   sufficiency of the infringement claims or whether they are speculative. The district court did not

7   have jurisdiction to resolve these issues as the case was on appeal.

8   **RMJ at p.6:12-14**: "In particular, the number of unsuccessful motions for recusal and for relief
    from judgment indicates that Plaintiff filed repetitive motions that lacked merit, which only served
9   to increase fees."

10  **Objection 26**: The Court has not identified any of Yue's motions to be frivolous. Yue did not file

11  repetitive motions. The rule 60(b) motion was re-filed because the Court had ordered Yue to do so.

12      As for Plaintiff's motion to disqualify counsel, the Court had narrowed the issues to

13  whether a former Fenwick attorney *presumably* shared confidences within Fenwick on a prior case

14  involving PowerRPC. In similar situations, a law firm is disqualified. See, e.g., *Cho v. Superior*

15  *Court*, 39 Cal.App.4th 113 (1995) (former settlement judge in a related case was hired by the law

16  firm, the law firm was disqualified); *McKenzie Const. v. St. Croix Storage Corp.*, 961 F.Supp. 857

17  (V.I. 1997); *Fields-D'arpino v. Restaurant Associates*, 39 F.Supp.2d 412(S.D.N.Y. 1999); *Poly*

18  *Software Intern., Inc. v. Su*, 880 F. Supp. 1487(Utah 1995).

19      As for the disqualification of the former judge, it was filed on March 18, 2008, under the

20  authority of *Liljeberg v. Health Services Acquisition Corp.*, 486 U.S. 847, 108 S. Ct. 2194 (1988).

21  Judge Ware's finding that the issue was moot due to intervening events does not make the motion

22  frivolous or lacking merit.

23  **RMJ at p.6:15-19**: "In addition, Plaintiff's pro se status does not warrant leniency here, where
24  Plaintiff has received much education throughout the multiple cases that he and Netbula have
    litigated. He also has had counsel at times in this litigation and Netbula is still represented by
25  counsel in Netbula-Sun. As to Plaintiff's allegations of bias on the part of Judge Jenkins, Yue sets
    forth no factual basis for them."

26                                      -22-

27

**Objection 27**: *Yue-Sun* was the first copyright case Yue litigated himself. On March 18, 2008, defense counsel contacted Yue by email stating that Yue was a *pro se* again. Yue Decl. at ¶¶ 3-8. However, as Judge Ware noted in a recent order,

> In the Court's Order Granting Defendants' Motion to Dismiss the STK II [*Yue-Sun*] action, the Court found that the rights of Netbula and Yue are deeply intertwined," and that Dr. Yue could not represent Netbula pro se.

Docket entry 51 states that "The Court DID NOT GRANT plaintiff REQUEST to proceed pro se." Under Civil Local Rule 11-5, an attorney may not withdraw until relieved by court order. It was not until July 23, 2008 that the Court granted attorney Elena Rivkin's motion to withdraw.

As for the allegation of bias of the former judge, Yue supplied certain evidence and indicated that he could provide more confidential documents. Plaintiff does have a constitutional right to have an impartial decision maker to decide his property rights. However, the Court has ruled that issue is moot now. To show that he did not file a baseless disqualification motion under 28 U.S.C. § 144 would require Plaintiff to reopen the issue.

**RMJ at p.7: 10-13**: "Defendants seek fees and costs in excess of $92,000 as of their opening brief, and over $134,000 as of the reply brief. On July 24, 2008, Defendants submitted a supplemental declaration stating that over $87,000 in additional fees had been incurred since April 8, 2008, when the reply brief was filed. The first amended complaint in this case lists ten claims, all for copyright infringement. Therefore, there is no need to apportion copyright versus non-copyright claims. The hourly rates charged by Fenwick range from $245 per hour to $690 per hour. These rates are comparable to other full service Bay Area law firms, Wakefield Decl. ¶ 4, and are reasonable."

**Objection 28**: "Plaintiff's complaint did not raise a novel issue of law or fact." RMJ at p.4:27-28. The Court ruled that the instant action was duplicative of *Netbula-Sun*. No analysis of the merits of the 10-count infringement claims was made. The case was quickly dismissed. No discovery was done. These factors would reasonably suggest that this case should consume very little attorney time.

-23-

OBJECTIONS TO ATTORNEY'S FEES RECOMMENDATION
AND REQUEST FOR DE NOVO DETERMINATION

1    About 30% of the fees requested were the so called "fees upon fees" -- the attorney fees

2  spent on the motion for attorneys' fees. Defense counsel's "fees upon fees" was over $60,000.00

3  (sixty thousand dollars). For instance, on March 4, 2008, Laurence Pulgram spent 1.8 hour

4  conferring with his colleagues and clients on "strategies on potential motion for attorney's fees";

5  March 15 and 16, 2008, Albert Sieber billed $5453 for 13.3 hours of work on drafting motion for

6  attorney's fees; On March 17 and 18, 2008, Wakefield billed $8409.5 for 13.9 hours of work to

7  "draft arguments for fee motion"; April 5 and 6, Sieber billed $4428 for 10.8 hours of work

8  drafting the reply brief for the fee motion; April 7, 2008, Wakefield billed $6292 for 10.4 hours of

9  work for fee motion related work; April 8, 2008, Wakefield, $5082 for 8.4 hours on reply brief for

10 the fee motion and Sieber billed for another 7 hours on the same task the same day. There are

11 many block billing entries with fewer hours, and they add up.

12    The opening brief of Sun's fee motion totaled 19 pages. The argument portion was about 9

13 pages and 4000 words. Of that, about three (3) pages were dedicated to the analysis of two emails

14 between Pulgram and Yue on *Netbula-Sun* matters and one paragraph of the complaint. Defense

15 counsel have previously quoted and analyzed these communications in their motion to dismiss.

16 The rest of the six pages of argument consist of standard arguments for asking fees, mostly

17 repeating their arguments in the motion to dismiss. Defense counsel billed over $22,000.00 for

18 preparing and filing the opening brief.

19    In *Cancio v. Financial Credit Network, Inc*, 2005 US DIST LEXIS 13626 at 16 (N D Cal

20 2005) (Henderson, J), the plaintiff asked $9312.00 for spending 22.65 hours in preparing and

21 filing the fee motion. Because "[t]he issues raised by this fee application are neither novel nor

22 complex" and "[t]he litigation was limited in time and complexity", the court found the "fees on

23 fees" to be too excessive and reduced the amount to about $3000.

24    Unlike *Cancio,* this case was terminated without any ruling on the merits of the 10-count

25 infringement claims, and there was no discovery or planning of discovery. In the more involved

-24-

OBJECTIONS TO ATTORNEY'S FEES RECOMMENDATION
AND REQUEST FOR DE NOVO DETERMINATION

1    and more complex *Cancio*, $9312 of "fees on fees" was excessive and the proper amount should

2    be $3000. Here, the "fees on fees" was over $60,000, twenty (20) times more excessive.

3        *Cancio* was an FDCPA case, "fees upon fees" was allowed. There is no similar allowance

4    of "fees upon fees" under the Copyright Act. Nevertheless, the amount of hours spent on "fees on

5    fees" shows that defense counsel's hourly rate and hours are unreasonable. In addition, Plaintiff

6    re-states Objections 2-9 above, including "block billing" on other tasks.

7    **RMJ at p.8:19-20**: "The prevailing party in a copyright infringement action is also entitled to
     recover out of pocket expenses incurred by the attorney and passed on to the client."

8

9    **Objection 29**: Under the Copyright Act, the decision to award costs is also discretionary and

10   should be made only after the same analysis of the fees award, for which the pivotal criterion is

11   faithfulness to the purposes of the Copyright Act.

12               **MOTION FOR *DE NOVO* DETERMINATION AND CONCLUSION**

13

14       Based on Objections 1-29 above and authorities cited, Plaintiff respectfully disagrees with

     the Magistrate Judge's report and recommendation. Plaintiff requests the District Court to make a

15   *de novo* determination of Defendants' motion for attorneys' fees.

16

17       Respectfully submitted,

18

19   Dated:   August 20, 2008

20

21                                          _____

22                          By:         /S/
                                        DONGXIAO YUE
                                        SELF-REPRESENTED
23

24

25

26                                  -25-

27