DONGXIAO YUE
2777 ALVARADO ST., SUITE C
SAN LEANDRO, CA 94577
Telephone:      (510) 396-0012
Facsimile:      (510) 291-2237
E-Mail:         ydx@netbula.com

SELF-REPRESENTED

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DONGXIAO YUE,<br><br>                    Plaintiff,<br><br>        v.<br><br>STORAGE TECHNOLOGY<br>CORPORATION, a Delaware corporation;<br>SUN MICROSYSTEMS Inc., a Delaware<br>corporation; Michael Melnick, an individual;<br>Julie DeCecco, an individual; Michael P.<br>Abramovitz, an individual; Lisa K. Rady, an<br>individual; Jonathan Schwartz, an individual;<br>and DOES 1-1000, inclusive,<br><br>                    Defendants. | Case No. C07-05850-JW-EDL<br><br>**DECLARATION OF DONGXIAO YUE IN SUPPORT OF MOTIONS FOR *DE NOVO* DETERMINATION AND OBJECTIONS TO MAGISTRATE JUDGE'S RECOMMENDATIONS ON ATTORNEY'S FEES AWARD TO DEFENDANTS AND LOCAL RULE 54-6 COMPLIANCE**<br><br>Time: 9:00 AM<br>Date:  November 3, 2008<br>Dept: 8, 4th Floor<br>Judge: The Honorable James Ware |

I, DONGXIAO YUE, declare:

1.         I am the *pro se* plaintiff in the above captioned case. I make this declaration in support

of the objections to the Magistrate Judge's recommendations on defendants' motion for attorneys'

fees and my motion to strike due to defendants' failure to comply with Civil Local Rule 54-6.

-1-

2.      I have personal knowledge of the facts I am about to state and, if called on to do so, I could competently testify to those facts.

3.      In early February 2008, attorney Elena Rivkin [Franz] was representing Netbula, LLC and me in the *Netbula v. Sun* case (C06-07391-MJJ) and representing me in the *Yue v. Sun* case (C07-05850-MJJ). The parties in the two cases agreed to mediate their disputes. Netbula and I selected three mediators, and offered them to Defendants to choose one.

4.      On February 21, 2008, Elena Rivkin [Franz] filed a motion to withdraw as counsel of record from *Yue-Sun* and substitute myself as counsel.

5.      On March 12, 2008, Sun filed a letter to the Court stating that they had selected a mediator from the ones Plaintiff offered.

6.       On March 18, 2008, I received the following email message from Mr. Wakefield:

> Dear Dr. Yue:
>
> Today we are filing Defendants' motion for attorneys' fees and costs in the Yue v. StorageTek matter, in which you are once again appearing *pro se*. We are writing to address the issue of service. Are you amenable to accepting service electronically (that is, by email) for future filings in this matter?
>
> Sincerely,
>
> Jed Wakefield

7.      I received no prior communications from Mr. Wakefield regarding this case between the time Ms. Rivkin became my attorney and March 18, 2008.

8.      After the Court granted Elena Rivkin Frannz's motion to withdraw from *Yue-Sun* on July 23, 2008, I requested her to forward me all communications defense counsel sent her in the period of March 4, 2008 to March 18, 2008. She informed me that the only communication was an email from Mr. Wakefield dated March 5, 2008 regarding her motion to withdraw and the mediation. She forwarded me this email. Attached Exhibit A is a true copy of this email.

-2-

YUE DECL ISO MOTIONS FOR DE NOVO
                                                    DETERMINATION AND OBJECTIONS

9.      The first time defense counsel and I discussed the meet-and-confer procedure required by Civil Local Rule 54-6 was on April 24, 2008, during a telephone conference call for preparing a joint case management statement. During this conference, I told defense counsel (Jedediah Wakefield and Liwen Mah) that they did not follow the local rules. Mr. Wakefield said that they did not know what rules I was talking about. I then asked them to check Civil Local Rule 54-6 on the court's web site. Mr. Wakefield checked the local rule and became verbally hostile. As a result, the telephone conference ended quite abruptly afterward. More details of the exchange between the parties were described in my declaration dated July 8, 2008 (Docket No. 132).

10.     I was present at the December 14, 2007 hearing of the summary judgment motion in Netbula-Sun. Attached Exhibit B is the excerpts of the hearing transcript.

11.     Attached Exhibit C is the transcript of the hearing held before Magistrate Judge Laporte on July 22, 2008 on Defendants' Motion for Attorney's Fees and Plaintiff's Motion to Strike. However, this transcript does seem to contain some transcription errors.

12.     I recently received the certificate for the registration of the copyright of the PowerRPC software I wrote before July 1996, with registration number TXu 1-576-987, effective date November 27, 2007. Attached Exhibit D is a true copy of the registration. This is one of the copyrights allegedly infringed by defendants in this case.

I declare under penalty of perjury of the laws of the State of California and the federal laws that forgoing declaration is true and correct to the best of my knowledge. This declaration was executed in San Leandro, California, on August 20, 2008.


_____/S/_____
DONGXIAO YUE


-3-

# EXHIBIT A

From: **Jedediah Wakefield** <JWakefield@fenwick.com>
Date: Wed, Mar 5, 2008 at 8:07 PM
Subject: Mediator
To: Elena Rivkin <elena@rivkinlegalgroup.com>
Cc: David Eiseman <davideiseman@quinnemanuel.com>


Elena:

As I mentioned in my voicemail earlier today, Sun is prepared to proceed to mediation before Ms. Millie.  Given your pending motion to withdraw, however, we would like to discuss how to proceed, and what to advise the Court.


Sincerely,


Jed


*******************************
Jedediah Wakefield
Fenwick & West LLP
555 California Street, 12th Floor
San Francisco, CA 94104
phone: 415.875.2331
fax: 415.281.1350
email: jwakefield@fenwick.com

--------------------------------------------
IRS Circular 230  Disclosure:  To ensure compliance with requirements imposed by the IRS, we inform you that any U.S. federal tax advice in this communication (including attachments) is not intended or written by Fenwick & West LLP to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing, or recommending to another party any transaction or matter addressed herein.
--------------------------------------------
ATTENTION:

The information contained in this message may be legally privileged and confidential.  It is intended to be read only by the individual or entity to whom it is addressed or by their designee. If the reader of this message is not the intended recipient, you are on notice that any distribution of this message, in any form, is strictly prohibited.

If you have received this message in error, please immediately notify the sender and/or Fenwick & West LLP by telephone at (650) 988-8500 and delete or destroy any copy of this message.

# EXHIBIT B

Pages 1 - 68

United States District Court

Northern District of California

Before The Honorable Martin J. Jenkins

Netbula, LLC,                )
                             )
            Plaintiff,       )
                             )
    vs.                      )          No. C06-7391 MJJ
                             )
Storage Technology           )
Corporation, et al.,         )          COPY
                             )
            Defendant.       )
_____ )
                             )          San Francisco, California
                             Friday, December 14, 2007

                **Reporter's Transcript Of Proceedings**

**Appearances**:

For Plaintiff:          Law Offices of Vonnah M. Brillet
                        2777 Alvarado Street, Suite E
                        San Leandro, California  94577
                By:  **Vonnah M. Brillet, Esquire**

For Defendant:          Fenwick & West, LLP
                        555 California Street, Suite 1200
                        San Francisco, California  94104
                By:  **Laurence F. Pulgram, Esquire**
                     **Jedediah Wakefield, Esquire**

                        Quinn Emanuel Urquhart
                        Oliver & Hedges
                        50 California Street, 22nd Floor
                        San Francisco, California  94111
                By:  **David Eiseman, Esquire**

Reported By:            *Sahar McVickar, RPR, CSR No. 12963*
                        *Official Reporter, U.S. District Court*
                        *For the Northern District of California*

                (Computerized Transcription By Eclipse)

1  be necessary to prepare those claims for trial and/or

2  dispositive motions.

3           Now, there is a related case, and it does strike me

4  that it is related.  And this may be -- it's not completely

5  overlapping with the present claim.  And that may be -- I may

6  be reading too much, but that may be the reference that

7  Mr. Pulgram made about being sued on an ongoing basis.  It may

8  be derivative from that -- this most recent lawsuit.  If I was

9  a betting person, I would say that is probably the case.

10          So it strikes me they are related, and I will relate

11  them.  The question I have is whether or not that they ought to

12  be part of the mix for the status conference that is going to

13  occur on the date that I'm going to next give you.  Seems to me

14  that it ought to.

15          **MR. WAKEFIELD:**  Um --

16          **THE COURT:**  Any other concerns you have about my

17  plan going forward?

18          **MR. WAKEFIELD:**  Thank you, Your Honor.

19          We do believe that the discussion of the **Yu versus**

20  **Storage Tech** Sun case, the new case, should be included in the

21  status conference.  We have the issue of a responsive pleading

22  due, some disagreement about when that might be due, but it

23  seems to us that it would make sense to have the Court's order

24  on this motion that was before the Court today, since it has

25  such a tremendous impact on what our response will be in that

1  case, given the overlap of claims.  So we propose some

2  scheduling --

3          **THE COURT:**  If you folks could agree to that -- I

4  have everybody here right now, why should they file a

5  responsive pleading that would then have to be redone or

6  amended, depending upon what I do with the issue that is before

7  me now?  Why don't we -- why don't you agree and stipulate that

8  the time required for responsive pleading is extended to at

9  least the status conference?  And that will give me a chance --

10  you are going to all know what the ruling is, what -- this

11  claim may survive.  If it does, then you know that will be in

12  play.  You will know exactly what it is they need to raise

13  denials and/or affirmative defenses with respect to in an

14  answer, and including it could be counter-claims, I just don't

15  know.  But it does make sense.

16          **MR. YU:**  Your Honor, may I say something?

17          **THE COURT:**  You can talk with your lawyer.

18          **MR. YU:**  Because --

19          **THE COURT:**  Mr. Yu, listen to me.  You are not

20  listening.

21          I want to hear what you have to say.  We have to do

22  it in the way that protocol requires.  So if you wanted to talk

23  with your lawyer, I will give you time to do that, and then she

24  can communicate to me, all right?

25          **MS. BRILLET:**  May I?

1    *THE COURT:*  Sure.

2    *MS. BRILLET:*  Thank you.

3    *THE COURT:*  Okay.

4            (off-the-record discussion held/proceedings

5        adjourned at 4:10 p.m.)

6

7                ---o0o---

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

## CERTIFICATE OF REPORTER

I, Sahar McVickar, Official Court Reporter for the United States Court, Northern District of California, hereby certify that the foregoing proceedings were reported by me, a certified shorthand reporter, and were thereafter transcribed under my direction into typewriting; that the foregoing is a full, complete and true record of said proceedings as bound by me at the time of filing. The validity of the reporter's certification of said transcript may be void upon disassembly and/or removal from the court file.

Sahar McVickar, RPR, CSR No. 12963

December 18, 2007

# EXHIBIT C

Pages 1 - 13

United States District Court

Northern District of California

Before The Honorable Elizabeth D. Laporte

Dongxiao Yue,                    )
                                 )
          Plaintiff,             )
                                 )
    vs.                          )          No. C07-5850 JW (EDL)
                                 )
Storage Technology               )
Corporation, et al.,             )
                                 )          COPY
          Defendant.             )
_____  )

San Francisco, California
Tuesday, July 22, 2008

### Reporter's Transcript Of Proceedings

Appearances:

For Plaintiff:            Dongxiao Yue, In Propria Persona
                          2777 Alvarado Street, Suite C
                          San Leandro, California  94577


For Defendant:            Fenwick & West
                          555 California Street, Suite 1200
                          San Francisco, California  94104
                     By:  Jedediah Wakefield, Esquire




Reported By:        Sahar McVickar, RPR, CSR No. 12963
                    Official Reporter, U.S. District Court
                    For the Northern District of California

(Computerized Transcription By Eclipse)

1    <u>Tuesday, July 22, 2008</u>                          <u>9:00 a.m.</u>

2                           P R O C E E D I N G S

3            *THE CLERK:*  Calling civil 07-5857, Dongxiao Yue

4    versus Storage Technology Corporation.

5            *MR. YUE:*  Good morning, Your Honor.

6            Dongxiao Yue, pro se plaintiff.

7            *THE COURT:*  Good morning.

8            *MR. WAKEFIELD:*  Good morning, Your Honor.

9            Jed Wakefield, Fenwick & West, on behalf of

10   defendants.

11           *THE COURT:*  Good morning.

12           All right, now, one preliminary question I have is

13   that Judge Ware apparently has before him a number of motions,

14   including, basically, relief from the judgment.  So -- and, if

15   he were to grant that motion, I don't know that, then, this

16   would be moot, perhaps.  I mean, this is based on the judgment,

17   so, I am wondering if this is premature until he's ruled on it.

18           *MR. YUE:*  The plaintiff filed a motion for the judge

19   to indicate that he will grant the motion, the 60(b) motion.

20   And defendants didn't file any opposition, so plaintiff

21   consider that to be unopposed at this point.

22           *THE COURT:*  Well, I doubt that.

23           *MR. WAKEFIELD:*  Yeah.

24           I believe what Dr. Yue is referring to is a request

25   he made that the Court indicate that it would entertain the

1    motion.

2            **THE COURT:**   Um-hmm.

3            **MR. WAKEFIELD:**   Because, as it stands now, this

4    matter is on appeal, and the District Court --

5            **THE COURT:**   So there is no jurisdiction.

6            **MR. WAKEFIELD:**   -- has no jurisdiction on a 60(b)

7    motion, unless and until the Court indicates it wishes to, and

8    the Ninth Circuit grants remand.

9            We did not respond to Dr. Yue's submission on that

10   point.  We had already argued that there was no jurisdiction,

11   and that the procedure was that if Judge Ware wanted to

12   consider the motion, the procedure was to request remand.  That

13   hasn't happened at this point.

14           We did appear for a hearing.  It was a very crowded

15   calendar before Judge Ware went on -- on -- and was about to

16   become unavailable.  We didn't really address the merits, so we

17   don't really have an indication of what the Court is going to

18   do in that regard.

19           **THE COURT:**   Is it a motion to disqualify him, or

20   retroactively disqualify Judge Jenkins or --

21           **MR. WAKEFIELD:**   It's the latter.  There is a

22   separate motion -- there is a 60(b) motion, which is based on,

23   among other things, allegations of bias by Judge Jenkins.

24   There is a motion to disqualify Fenwick & West, and there a

25   motion to retroactively disqualify Judge Jenkins.

1    **THE COURT:**  Okay.

2         All right, I mean, it would be very unusual for --

3    and I'm taking no position on the merits of this particular

4    motion, but it's somewhat unusual for a judge to grant relief

5    on 60(b) when something is already on appeal or revisit the

6    decisions by the prior judge.  At the same time, though, I just

7    wonder, though, I just wonder though -- it hadn't -- I mean, he

8    hasn't ruled.

9         **MR. WAKEFIELD:**  That's correct.  And it was for that

10   reason that we had stipulated to postpone the hearing on this

11   motion until after that.

12        We were hoping to get an order.  And immediately

13   following that hearing, we had our case management conference

14   in which we expressed the view that it would be helpful to get

15   one, but his calendar is very backed up at the moment.

16        **THE COURT:**  I see.

17        **MR. YUE:**  Your Honor?

18        **THE COURT:**  Yeah?

19        **MR. YUE:**  The procedure is for the plaintiff to move

20   for 60(b) motion in the District Court.  If the judge indicated

21   he would grant the motion, then, I would go to the Ninth

22   Circuit and seek a remand.  So at this point --

23        **THE COURT:**  Right.

24        **MR. YUE:**  You know --

25        **THE COURT:**  I mean, all of that would be very

```
 1   unusual, but it's still a possibility.
 2         Now, let me ask, on -- the Supreme Court recently
 3   ruled on an issue having to do with nonparty preclusion in the
 4   *Taylor versus Sturgell* case; did that in any way affect the
 5   basis for Judge Jenkins' ruling, basically, that there was
 6   preclusion against the plaintiff?  I know he had two bases, one
 7   of which was privity, and I'm not sure that that was affected
 8   at all.  Possibly the intertwining basis was affected.
 9         *MR. WAKEFIELD:*  I'll have to confess that I haven't
10   studied the *Sturgell* decision, but there are multiple grounds
11   on which the *Adams* case from the Ninth Circuit applies on all
12   fours to this case.  There is clear privity between Dr. Yue and
13   the company he owns, and is the sole employee of.
14         *THE COURT:*  And is an assignee.
15         *MR. WAKEFIELD:*  And is an assignee on that, and
16   where he participated in and controlled every stage of the
17   first litigation.
18         If this were a collateral estoppel case, we would be
19   entitled to it.  But, fortunately, we didn't have to go through
20   an entire second litigation and submit summary judgment, again,
21   on the licensed offense, which the Court has ruled, made clear
22   that our clients had every right to use this software under
23   their license agreement.
24         And, it doesn't matter if there are additional
25   copyright registrations from Dr. Yue or his company protecting
```

1  that same licensed software.  It was licensed.  And, if there

2  are contractual remedies, Dr. Yue stands to recover under them

3  as the owner of Netbula, which is, to this day, continuing to

4  pursue its breach of contract claim in the -- in the first

5  case, what we call the STK 1 case.

6              THE COURT:  Um-hmm.

7              MR. YUE:  Your Honor, I think the *Taylor versus*

8  *Sturgill* case did disapprove the legal grounds for precluding

9  me from this litigation.  I was a nonparty to the -- Netbula

10  was a son.  And, the whole ground by Judge Jenkins was the

11  theory of virtual representation.  And, in my papers, I argue

12  that I could not be virtually represented by Netbula because I

13  was already precluded --

14              THE COURT:  Okay.

15              MR. YUE:  -- from that case.

16              THE COURT:  All right.

17              Again, it's going to be up to -- I just raised that

18  question briefly, but that's really an issue right now that's

19  not before me, it's before either the Ninth Circuit or unless

20  the 60(b) motion is granted.

21              So, now, let me ask, on the expenses that are

22  sought, the fees, amount that is sought, 92,000 is the opening

23  brief, 134,000 as reply?  What was that?

24              MR. WAKEFIELD:  It's more than simply the

25  preparation of a motion to dismiss and a reply.  From the

1  outset of this case, Dr. Yue's tactics have required constant

2  response.   Initially, there was refusal to relate the case;

3  that required the parties to address that issue.

4         Then, at a case management conference, where Judge

5  Jenkins orally ruled that the cases were related and that no

6  response would be due from defendants and, specifically

7  admonished Dr. Yue that no default was to be taken, Dr. Yue

8  proceeded to file a motion for default judgment against the

9  defendants.   Defendants were forced to responded to that

10  motion.   There was also a motion to strike that accompanied

11  Dr. Yue's opposition to the motion to dismiss.

12         But, things really got out of hand after we won the

13  case, when there was a motion to disqualify counsel, the motion

14  to disqualify the judge, the motion for 60(b) relief.

15         *THE COURT:*  Okay.

16         And, of course, those haven't been ruled on, so I

17  really can't address this.

18         *MR. WAKEFIELD:*  Right.

19         But, in addition, efforts to depose Fenwick & West

20  attorneys, a motion to do that which required our response,

21  constant threats of sanctions on various matters that required

22  ours response.

23         And so, we submitted the time records.   If this were

24  simply a motion to dismiss, I concede it's a lot of money, but

25  it was much more.

1        **THE COURT:**  Um-hmm.

2        **MR. YUE:**  Your Honor?

3        **THE COURT:**  Yes?

4        **MR. YUE:**  I think, you know, the -- there is a whole

5   confusion about the procedure, procedural history of those

6   cases.  The defendants label me as a vexatious and harassing

7   litigant, but, if you look at the record from the very

8   beginning, what I tried to do is protect my own copyright.

9        The copyrights I created before the formation of the

10  company, the copyright registered under my own name, not owned

11  by Netbula, by my company.  My company had no standing to sue

12  on my copyright.

13       And, defendants misrepresented all these facts to

14  the Court.  From the very beginning, I thought to join the

15  case.  I say, you know, I have this copyright.  And defendants

16  say, already told us that, you know, Netbula didn't own the

17  company, that is their position.  So, I tried to join to case.

18  I tried to join the case, and they opposed it, saying I was --

19  you know, through a hearing that I didn't participate.

20       And then they -- I told them, you know, can you

21  stipulate to my, you know, joinder in this case?  They said no.

22  And I said, you know, in other case, I have to file a separate

23  and also to protect my own copyright.

24       **THE COURT:**  Okay, let me ask:  The rates that you

25  are seeking here, are those the ones that are actually charged

1   to the clients in this case?

2          *MR. WAKEFIELD:*  Yes.  They were not discounted.

3          *THE COURT:*  All right.

4          What are we going to do -- I think it would be

5   premature for me to enter any kind of order until the judge

6   rules on the pending motion, so how do you propose to handle

7   that?

8          *MR. WAKEFIELD:*  One possibility would be a

9   recommended order on fees which would note that it's tentative

10  based on the outcome of that motion.

11         And I suppose an alternate -- an alternative would

12  be to perhaps issue a minute order indicating that Your Honor

13  will defer issuing the order until after Judge Ware has ruled.

14  Regrettably, I think that won't be until the fall based on his

15  current schedule.

16         *THE COURT:*  I guess I would be issuing an R and R,

17  anyway.

18         *MR. WAKEFIELD:*  That was my thought, since it's not

19  going to -- it likely would not become final and will,

20  undoubtedly, if there are any fees awarded, be met with some

21  objection.  I think we would be waiting for Judge Ware to rule,

22  in any event.

23         *THE COURT:*  All right.

24         Are you -- if I were to award fees, are you saying

25  that you don't have the ability to pay?

1    **MR. YUE:**  Your Honor, first, I took, you know, a

2    cursory look at the fee request; many of the entries just

3    doesn't belong to this case.  They are talking about talking to

4    plaintiff's counsel; I was a pro se plaintiff.  So, I don't

5    know -- and I also look at the -- the fee request; for the

6    motion to -- for the attorney fees, they charged $22,000 just

7    for filing a motion for fees.  And, they didn't confer with me,

8    follow the Local Rule 54-6.

9        **THE COURT:**  Yeah.  And --

10       **MR. YUE:**  That's why I filed a motion --

11       **THE COURT:**  Yeah.

12    I wouldn't be inclined to grant the motion to strike

13    because I think there is some ambiguity in the rule as to

14    whether applies to pro se.  I think the Court probably intends

15    that it does, but --

16       **MR. YUE:**  Yeah, they --

17       **THE COURT:**  But it's not -- I can see that it's not

18    as clear as it could have been, because it talks about opposing

19    counsel.

20       **MR. YUE:**  Uh-huh.

21       **THE COURT:**  And doesn't clarify that that included

22    pro se plaintiff.

23       **MR. YUE:**  Yeah.

24       **THE COURT:**  And, I do think that it would have been

25    futile as well, although that, in itself, is really not an

1  excuse, but when you combine those two things, I'm not inclined

2  to grant the motion to strike.

3         But, there are some cases, although they are not

4  binding, lower-level cases which take into account the pro se

5  plaintiff's ability to pay, so I'm asking you what your

6  financial situation is.

7         **MR. YUE:**  Your Honor, they know I don't have the

8  money.  And they threatened from the very beginning that they

9  are going to spend attorney fees and seek every penny from me

10 and causing serious personal financial stability issues for me.

11 That is what Wakefield told me over the phone when I told him

12 that these fee motions did not comply with the Local Rule.

13        **THE COURT:**  Um-hmm.

14        **MR. YUE:**  At that point, he was quite upset.  And

15 that is -- so they have the intention of pro pers to incur more

16 fees and use that as a litigation strategy.

17        As I can see from their fee statement, they have

18 this, you know, analyzing case law and strategies regarding

19 potential motion for attorney fees.

20        **THE COURT:**  Well, they are allowed to bring a

21 motion.  And, the copyright law does provide that prevailing

22 defendants can, under certain circumstances, get fees.

23        But let me ask you:  What about this issue about

24 financial ability to pay?

25        **MR. WAKEFIELD:**  I don't know what Dr. Yue or

1    Netbula's financial resources are.  And, I certainly never said

2    that we intended to incur any unreasonable fees.  But, from the

3    outset of Dr. Yue's threat and initiation of the action, we

4    have cautioned and advised him to seek advisory qualified

5    counsel, because it costs very little for a pro se litigant to

6    initiate a lawsuit, and it costs a great deal to respond.

7            We cautioned him that these fees were significant

8    and could have an adverse affect on him, and that he should

9    take that into account.  At the time, he was threatening yet

10   another motion for sanctions against us for having brought this

11   motion.  And we were hoping to dissuade him from doing so.

12           **THE COURT:**  All right, well, I'm going to take this

13   under submission.

14           Thank you.

15           **MR. WAKEFIELD:**  Thank you, Your Honor.

16           **THE CLERK:**  Court is in recess.

17                   **(Proceedings adjourned at 10:24 p.m.)**

18                                    .

19                              ---o0o---

20

21

22

23

24

25

## CERTIFICATE OF REPORTER

I, Sahar McVickar, Official Court Reporter for the
United States Court, Northern District of California, hereby
certify that the foregoing proceedings were reported by me, a
certified shorthand reporter, and were thereafter transcribed
under my direction into typewriting; that the foregoing is a
full, complete and true record of said proceedings as bound by
me at the time of filing.  The validity of the reporter's
certification of said transcript may be void upon disassembly
and/or removal from the court file.


_____/s/ Sahar McVickar_____

Sahar McVickar, RPR, CSR No. 12963

July 23, 2008

# EXHIBIT D

# Certificate of Registration



This Certificate issued under the seal of the Copyright Office in accordance with title 17, *United States Code*, attests that registration has been made for the work identified below. The information on this certificate has been made a part of the Copyright Office records.

*Marybeth Peters*

Register of Copyrights, United States of America

**Registration Number:**

**TXu 1-576-987**

**Effective date of registration:**

November 27, 2007

## Title

**Title of Work:** YUE PWRPC

**Previous or Alternative Title:** YRPC

## Completion/Publication

**Year of Completion:** 1996

## Author

**Author:** DONGXIAO YUE

**Author Created:** COMPUTER PROGRAM

**Work made for hire:** No

**Domiciled in:** United States

**Year Born:** 1968

**Anonymous:** No              **Pseudonymous:** No

## Copyright claimant

**Copyright Claimant:** DONGXIAO YUE

2777 ALVARADO STREET, SUITE C, SAN LEANDRO, CA, 94577

## Limitation of copyright claim

**Material excluded from this claim:** RPC SRC 4.0

**Previously registered:** No

**New material included in claim:** New computer program text, revisions and additional text of computer program

## Certification

**Name:** DONGXIAO YUE

**Date:** November 15, 2007